IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN HERNANDEZ and ROSENDO HERNANDEZ, | ) ) ) ) Case No. 23-cv-01737 |
| *Plaintiffs*, | ) ) Judge Jeremy C. Daniel |
| *v.* | ) ) Magistrate Judge Heather K. McShain |
| REYNALDO GUEVARA, et. al., | ) ) **JURY TRIAL DEMANDED** |
| *Defendants*. | ) ) ) |

## MOTION TO COMPEL DEFENDANTS TO PROCEED WITH THIRD PARTY DEPOSITIONS

Arthur Loevy
Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Annie Prossnitz
Alyssa Martinez
Loevy & Loevy
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (fax)
anand@loevy.com

Daniel J. Stohr
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 726-1180
dan@danstohr.com

**INTRODUCTION**

Plaintiffs Juan and Rosendo Hernandez, by and through their undersigned counsel, respectfully move this Court to: (a) compel Defendants to provide dates of availability for the depositions of Daniel Violante, Jesus Gonzalez, Jose Gonzalez, Juan Cruz, Marybel Arroyo, Nancy Gonzalez, Nelson Pacheco, Jondalyn Fields, and Fred Rock; and (b) affirm that Plaintiffs may question those deponents first at the deposition.

Plaintiffs file this motion with a simple request: to apply the Federal Rules of Civil Procedure in straightforward fashion and permit Plaintiffs to go forward with the depositions of these third party witnesses they prioritized for service, out of the dozens of witnesses in the case.

The central dispute is questioning priority. Plaintiffs' position is that they should get to go first because they subpoenaed and noticed the depositions first. Even if the equities of each witness are considered, they are all witnesses Plaintiffs will call in their case-in-chief, and so Plaintiffs will be prejudiced if they are unavailable for trial and Plaintiffs are forced to present deposition testimony in which Plaintiffs were not able to question the witnesses first. Indeed, at least two of these witnesses are out of state (one out of country), and so without going first Plaintiffs cannot ensure that they have a deposition transcript that could be read coherently to a jury.

There is no basis to switch the order of questioning of these witnesses. Defendants say that "witness alignment" should determine questioning priority, whereby a party should get to depose witnesses that are "hostile" to them. But even that vague criterion does not favor Defendants, as nearly all the others are "hostile" to Plaintiffs: eyewitnesses who identified Plaintiffs in police lineups and testified against them at trial. Regardless, during the conferral process Defendants identified which of the witnesses that Plaintiffs served first they believed they nonetheless should get to question first. They listed only four (Daniel Violante, Nelson Pacheco, Jondalyn Fields, and Fred Rock) of the nine witnesses that Plaintiffs had served. Although that should have presumably narrowed the range of

1

disputes, so that Plaintiffs could go forward with the five remaining depositions while the parties confer about their remaining disputes, Defendants refused to permit the depositions to go forward or to offer dates of availability. The Court should require Defendants to propose dates for the five witnesses over which there is no dispute (Jesus Gonzalez, Jose Gonzalez, Juan Cruz, Marybel Arroyo, Nancy Gonzalez), and resolve on the merits the parties' dispute over the remaining four depositions.

The conferral process on this issue has been lengthy. Plaintiffs have made every effort to confer and reach compromises on both questioning order and timing of these depositions, but those efforts have not succeeded. More than three months after the conferral process began, Defendants keep moving the goalposts, Defendants refuse to propose deposition dates, and depositions are delayed indefinitely. The parties are now at impasse.

## STATEMENT OF FACTS AND LOCAL RULE 37.2 STATEMENT

### A. Plaintiffs serve deposition subpoenas and seek to question those witnesses first based on first service.

This case has been ongoing since March 2023, and discovery commenced thereafter. Dkt. 1. Plaintiffs issued written discovery in July 2023, Defendants issued their own written discovery thereafter, and the parties collectively identified dozens of witnesses on their Rule 26 disclosures in July and August 2023.

To ensure that Plaintiffs could timely question critical third-party witnesses that they intend to call in their case-in-chief, Plaintiffs prioritized serving the witnesses with deposition subpoenas. Specifically, months after discovery had commenced—on August 25, August 28, and September 5—Plaintiffs provided Defendants with proper notice of subpoenaed depositions for witnesses Nelson Pacheco, Daniel Violante, Juan Cruz, Jesus Gonzalez, Marybel Arroyo, Nancy Gonzalez, Jose Gonzalez, Jondalyn Fields, and Fred Rock, along with proofs of service. Violante, Cruz, Jesus Gonzalez, Arroyo, Nancy Gonzalez, and Jose Gonzalez are third-party witnesses who participated in line-ups and testified against Plaintiffs in their underlying criminal proceedings, and their testimony

2

was used to convict Plaintiffs prior to the reversal of their convictions. Fields and Rock are third-party witnesses to statements made by Defendants to frame Plaintiffs and have knowledge of Defendants' conduct. Pacheco is an eyewitness who identified the real killer and is critical to Plaintiffs' case-in-chief for demonstrating the identifications of Plaintiffs were false.

Plaintiffs informed Defendants that the noticed dates were placeholders, and that, if Defendants were unavailable, Plaintiffs were willing to work with Defendants to ensure that the depositions took place on dates convenient to the witnesses and all counsel. *See* Group Exhibit 1 (Aug 28 email of A. Swaminathan). Plaintiffs asked Defendants to provide their availability on the subpoenaed dates and provide alternatives as requested. *Id.*

> **B. Defendants lodge an across-the-board objection to all depositions served by plaintiffs in seven Guevara cases and claim "witness alignment" should dictate questioning priority.**

After receiving Plaintiffs' deposition notices, Defendants did not provide their availability or propose alternative dates, as requested. Rather, in early September, Defendants—along with the defendants in other recent Guevara cases (represented by the same sets of counsel for the City and its officers)—lodged an across-the-board objection to all of the depositions subpoenaed and noticed in August and September 2023 by the Guevara plaintiffs in seven cases.[1] The Guevara defendants claimed that the depositions in this case could not go forward because they disputed—across all seven cases—that the plaintiffs were entitled to question first any witnesses they had served and noticed.

At the same time, Defendants in this case and other recent Guevara cases sent out their own deposition notices for additional witnesses (without underlying service of deposition subpoenas). Defendants in this case noticed depositions (without service) for five additional witnesses.[2]

---

[1] The seven Guevara-related lawsuits are for the following plaintiffs: (1) Gamalier Rivera, (2) Eruby Abrego, (3) John Martinez, (4) Juan & Rosendo Hernandez, (5) Edwin Davila, (6) Julio Lugo, and (7) Johnny Flores.
[2] Notably, none of the defendants in any of the seven recent Guevara case have provided any proof of service for any depositions. Thus, Plaintiffs assume that their noticed witnesses have not yet been served.

3

Plaintiffs, along with the other Guevara plaintiffs, explained their position that service of a deposition subpoena determined questioning priority, and that they had served the witnesses first. Group Exhibit 1 (Sept. 5 Email of A. Swaminathan; Sept. 12 Email of A. Swaminathan). Plaintiffs further explained that even if the equities as to each witness were considered individually, they weighed in their favor, as they had (a) served and noticed the depositions first; (b) intended to call those witnesses in their case-in-chief; (c) doing so would aid the jury's comprehension of the evidence at trial should the witnesses become unavailable, and/or (d) the third-party witnesses had given testimony against them in their criminal case, or participated in the police investigation against them.

During the parties' first meet and confer on October 5, Defendants articulated their view that "witness alignment," and not service of a deposition subpoena or notice of a deposition, should dictate questioning priority across all the Guevara cases. Group Exhibit 1 (Oct. 5 Email of A. Swaminathan). Despite repeated requests, Defendants refused to identify which depositions the Guevara plaintiffs served and noticed that Defendants objected to on "witness alignment" grounds, including whether that included some or all of the nine witnesses Plaintiffs have served and noticed first in this case.

### C. Defendants refuse to proceed with the depositions Plaintiffs served and noticed absent an across-the-board agreement on depositions in all seven Guevara cases.

Defendants refused to proceed with any depositions without a global agreement. E.g., Group Exhibit 1 (Aug. 31, Sep. 8, Sep. 15, Sep. 22 Emails of T. Scahill). The parties thus exchanged emails and conferred for an additional two months. Group Exhibit 1 (Sep. 22 through Dec. 1 Emails). Defendants first insisted on an exchange of lists of served and/or noticed witnesses on which each party claimed questioning priority. Group Exhibit 1 (Sep. 22 Email of T. Scahill). Plaintiffs expressed concern that the exchange would serve only to delay negotiations, but agreed to proceed as Defendants wanted. Group Exhibit 1 (Oct. 5 Email of A. Swaminathan). The parties exchanged lists on October 11. Group Exhibit 1 (Oct. 11 Email of A. Swaminathan; Oct. 11, 2023 Email of A. Romelfanger).

Anticipating more delay, before the parties' conferral Plaintiffs had asked Defendants in

4

advance to "be ready to discuss compromises and agreements to get to resolution, now that the parties have exchanged lists." Group Ex. 1 (Oct. 18 Email of A. Swaminathan). Yet on the call, even though the Guevara plaintiffs proposed trades, the Guevara defendants stated they needed additional time to confer internally before negotiation. Group Ex. 1 (Oct. 20 Email of A. Swaminathan). More than a week passed without Defendants providing dates for another call, despite Plaintiffs' requests. *Id.* (Oct. 26 Email of A. Swaminathan) ("Counsel, we have been extremely patient. By tomorrow, please provide dates you are available early next week.").

On October 27, Defendants finally responded, but rather than offer dates or specific witness compromises, proposed an entirely different process: a draft, during which the parties would alternate requests for depositions that Plaintiffs had prioritized for service, without regard for Plaintiffs' timely service of subpoenas for witnesses key to their case-in-chief, and also without regard for "witness alignment." Group Ex. 1 (Oct. 27, Email of T. Scahill). After additional defense delay (Group Ex. 1 (Oct. 27 Email of T. Scahill to Nov. 7 Email of T. Carney), during a November 7 conference, Plaintiffs objected to the draft proposal as prejudicial, and Defendants finally agreed to commence witness-specific negotiations. Group Ex. 1 (Nov. 8 Email of R. Brown).

Despite repeated requests by Plaintiffs, Defendants did not provide dates of availability for a next conference until November 15. *See* Group Ex. 1 (Nov. 15, Email of T. Carney). The parties conferred on November 16, during which time Plaintiffs proposed certain trades and the parties agreed to exchange written proposals on November 17. Defendants offered a single global resolution in their November 17 proposal. Group Ex. 1 (Nov. 17, Email of T. Scahill). The Guevara plaintiffs provided a comprehensive November 17 proposal that included a global resolution, as well as numerous individual case resolutions, including in this case. *See* Group Ex. 1 (Nov. 17 Email of A. Swaminathan). After multiple requests by the Guevara plaintiffs, the Guevara defendants finally responded on December 1 with a blanket rejection, indicating that they would not agree either to the

5

global or individual proposals, declining to propose any counters, and stating that the parties were at impasse. Group Ex. 1 (Dec. 1 Email of T. Scahill).

> **D. Defendants' own proposals for resolution have not claimed Cruz, Arroyo, N. Gonzalez or either J. Gonzalez for their side, and Defendants' proposal includes a one-for-one exchange in this case that Plaintiffs accepted.**

Notably, none of the parties' proposals have allocated Jesus Gonzalez, Jose Gonzalez, Juan Cruz, Marybel Arroyo, and Nancy Gonzalez. For their part, in each of Defendants' proposals, they have not claimed they should be entitled to question any of them first. *See* Group Ex. 1 (November 17 Email of T. Scahill; Nov. 8 Email of T. Scahill; Oct. 11 Email of A. Romelfanger) (stating only that Defendants wanted questioning priority over Fred Rock, Jondalyn Fields, Nelson Pacheco, and Daniel Violante). So, from Plaintiffs' perspective, there does not appear to be any dispute regarding those five witnesses, and Plaintiffs should be permitted to go forward with those depositions. Yet, Defendants refuse to go forward with their depositions.

Regarding the remaining four witnesses in dispute, Plaintiffs' November 17 proposal included an offer that, for two of the four witnesses Defendants sought to question first, Defendants could go first: Jondalyn Fields and Nelson Pacheco. Plaintiffs sought nothing in exchange; that is, of the five additional witnesses Defendants noticed, Plaintiffs were not seeking to go first with any of them. Instead, to reach a compromise and move forward, Defendants could go first with all five witnesses they noticed (without service), plus two witnesses Plaintiffs served and noticed; and Plaintiffs would go first with the seven remaining witnesses they had noticed and served first, *i.e.*, seven per side. Group Ex. 1 (Nov. 17 Email of A. Swaminathan). Defendants' December 1 email rejected that agreement.

> **E. Defendants have refused to provide a timeline for when they agree depositions can proceed.**

Defendants have also stated vaguely with respect to all depositions, across all the Guevara cases, that they cannot go forward "until we obtain the documents necessary for us to examine these witnesses from entities such as the State's Attorney, defense attorneys, Cook County Clerk and Court

6

Reporters." Group Ex. 1 (Oct. 11 Email of A. Romelfanger). In response, Plaintiffs have repeatedly explained that they were amenable to Defendants' thoughts regarding when to conduct the specific depositions of certain witnesses, but that they would not agree to indefinitely delay all depositions given how long this case has been in discovery, the current discovery deadline, and Defendants' delay in seeking discovery that they now claim is critical to proceed with depositions. To date, Defendants still have not identified specific depositions that they insist should be delayed, or provided particular reasons, or offered their own proposed timeframe for the depositions. Group Ex. 1 (Oct. 13 Email of R. Brown) ("[A]s we have indicated repeatedly, we are willing to work with you as to dates, but we need your cooperation in disclosing availability, regardless of who questions first at the deposition.").

Instead, the Guevara defendants have simply self-helped themselves to a months-long delay in proceeding with depositions. After more than three months of trying to work with Defendants to reach a compromise so these depositions can proceed, the parties are at impasse.[3]

## ARGUMENT

Plaintiffs have served the witnesses at issue first, and to meet their burden are likely to call every one of these witnesses in their case-in-chief. Every legal principle that potentially applies here justifies Plaintiffs questioning these witnesses first. Accordingly, this Court should compel Defendants to provide dates of availability for the depositions of Daniel Violante, Jesus Gonzalez, Jose Gonzalez, Juan Cruz, Marybel Arroyo, Nancy Gonzalez, Nelson Pacheco, Jondalyn Fields, and Fred Rock without further delay; and affirm that Plaintiffs may question those deponents first at the deposition.

**I. Plaintiffs served first and so should be permitted to question these witnesses first.**

Plaintiffs' position is simple: for the witnesses Plaintiffs have prioritized and served first, they should be able to question them first. Courts adjudicating similar disputes have appropriately rewarded

---

[3] This dispute is being litigated across the various cases involving Defendant Guevara that were filed in early 2023, and Plaintiffs' counsel is filing nearly identical motions to this one across those cases.

7

the diligence of the party that has gone out and perfected service of a subpoena on a witness, allowing them to question first. *See, e.g.*, *Occidental Chem. Corp. v. OHM Remediation Services*, 168 F.R.D. 13, 14 (W.D.N.Y. 1996) (holding that where two subpoenas were served, the first served took priority). Plaintiff seeks to apply that simple principle here, and on that basis the motion should be granted.

To be clear, Plaintiffs' position is that service—not notice—should control the sequence of questioning. If notice controlled, then in each case a party could simply send out a notice for all of the important witnesses in the case and go first. Taken to its extreme, it would be a race to see which party was quicker to push "Send" after completing the Rule 26(f) conference, or perhaps which party's packets of email data happened to traverse the internet faster. Or, a party could simply notice as many depositions as it likes and then indefinitely delay (or fail) in serving them, self-helping themselves to delay and/or the strategic sequencing of depositions as they choose.

Both the Federal Rules and caselaw recognize the problem with relying on notice, making clear it is not the favored approach. *See* Fed. R. Civ. P. 26, 1970 Committee Comments ("This new provision is concerned with the sequence in which parties may proceed with discovery and with related problems of timing . . . . A priority rule developed by some courts, which confers priority on the party who first serves notice of taking a deposition, is unsatisfactory in several important respects . . . . Subdivision (d) is based on the contrary view that the rule of priority based on notice is unsatisfactory and unfair in its operation."); *Lumpkin v. Kononov*, 2013 WL 1343666, at *1 (N.D. Ind. 2013) ("Under the federal rules, a discovery priority is not established based upon which party noticed a deposition first."); *U.S. v. Bartesch*, 110 F.R.D. 128, 129 (N.D. Ill.,1986) ("[I]t is clear that the priority rule, which confers priority on the party who first serves notice of taking a deposition, is abolished by Rule 26(d).").

Moreover, Defendants have rejected Plaintiffs' offer—purely for purposes of achieving a global compromise, not based on governing law—that the parties agree that first notice governs deposition priority. Thus, no party argues in this litigation that first notice should dictate.

8

Nevertheless, to the extent courts sometimes look to notice to govern the order of questioning, *see e.g.*, *Tate v. City of Chicago*, No. 18 C 7439, 2020 WL 5800817, at *2 (N.D. Ill. Sept. 29, 2020), Plaintiffs first noticed the depositions of the nine witnesses at issue in this motion. So, applying a criterion based on notice also supports Plaintiffs questioning these third-party witnesses first.

**II. The equities favor Plaintiff questioning these witnesses first.**

Even applying a case-by-case consideration of the equities, Plaintiffs should get to question each of these witnesses first. First, Plaintiffs bear the burden of proof, and intend to call each of these witnesses in their case-in-chief at trial, cross-examining them where necessary about their past statements procured during Defendants' investigation. Federal Rule of Civil Procedure 30(c) dictates that "[t]he examination and cross examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615." Fed. R. Civ. P. 30(c)(1). On this basis alone, Plaintiffs should be permitted to question these witnesses first at a deposition.

Second, Plaintiffs should be allowed to question the witnesses first because it will aid the jury's comprehension of the evidence at trial. In the event that these witnesses are unavailable for trial, their deposition testimony may be read at trial in lieu of live testimony. If Defendants have questioned first, and Plaintiffs second, then the testimony will be backwards and will need to be heavily edited for trial. In such circumstances, judges in this District repeatedly have allowed plaintiffs to question witnesses first, even when they have not first served them or noticed their depositions. *E.g.,* Group Ex. 2, *Walker v. Burge*, No. 21 C 4231 (N.D. Ill.), Dkt. 222 (joint statement of dispute) & Dkt. 223 (Order of July 7, 2023); Group Ex. 3, *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.), Trans. Of March 12, 2013 Hrg. & Dkt. 54 (Order of March 12, 2013). In *Rivera*, Judge Rowland specifically focused on the plaintiff's burden to prove his case and on the importance of the third-party witness at issue over all other collateral issues. *See* Ex. 3, at 14:10-12 (finding that despite the fact defendants first served the deposition subpoena, the Court was "really concerned that [Plaintiff] has the burden [] and [this

9

witness was] going to be probably the most important witness in the case."). Accordingly, even using Defendants' preferred framework for deciding, Plaintiffs would have priority to question these witnesses first.

Indeed, this dispute is being litigated across the various cases involving Defendant Guevara filed in early 2023, and Plaintiffs' counsel is filing nearly identical motions across those cases. Across these cases there are several key third-party witnesses that are out of state or move regularly. Elderly witnesses are also a central concern, as this case arises from a criminal investigation and prosecution that commenced many decades ago. Such witnesses are likely, and in some cases certain, to be unavailable for trial, and thus their deposition testimony will be what the jury hears. In Plaintiffs' experience, a deposition in which Defendants question first, eliciting the witness's testimony after long periods of questioning on background and other extraneous matters, and in non-chronological order, after which Plaintiffs follow up with questions, will create a transcript that is disjointed and confusing to the jury. Plaintiffs would be severely prejudiced, effectively prevented from presenting critical testimony to the jury in a clear and coherent fashion during their case-in-chief.

On the facts of this case, there are several witnesses for whom we know this will be an issue: Nancy Gonzalez lives out of state, and Fred Rock lives out of the county, so it is all but certain that neither of them will be available for trial. Both are witnesses Plaintiffs will call in their case-in-chief. Ms. Gonzalez was the victims' sister, and purportedly identified them in police lineups and testified against them at trial. It is critical to Plaintiffs to be able to present the jury with the unreliability of her identification, including the circumstances in which it occurred. Fred Rock is particularly important to presenting Plaintiffs' theory about why they were wrongfully targeted and framed by Defendants Guevara and Miedzianowski. More specifically, Defendant Miedzianowski is now serving a life sentence in federal prison for running a criminal enterprise out of the Chicago Police Department; the United States' star witness against Miedzianowski was Fred Rock, who had been working with him in

10

the drug trade. Fred Rock has testified that just a few weeks before Plaintiffs were arrested and charged for murder, Defendant Miedzianowski told Defendant Guevara, in the presence of Fred Rock, to frame Juan Hernandez for a murder. Mr. Rock is thus critical to presenting Plaintiffs' theory, and it is critical that Plaintiffs depose him first, because that will almost certainly also be his trial testimony.

Third, in most cases, the witnesses at issue are aligned with Defendants, as they either provided a statement to the police incriminating Plaintiffs, testified against Plaintiffs in their criminal case, or are hostile to Plaintiffs, which are recognized reasons to let Plaintiffs question them first at their depositions. *See Lumpkin v. Kononov*, 2013 WL 1343666, at *1 (N.D. Ind. Apr. 3, 2013) ("[T]he party whose witness is being deposed generally knows what the witness's testimony will be, and the purpose of the deposition is to allow the other side to find out what the witness knows about the matter."). In some cases, the witnesses have recanted their prior statements incriminating Plaintiffs, but that does not alter the equities; Defendants will still use their past statements and testimony to impugn Plaintiffs and use these witnesses to elicit testimony against Plaintiffs. Group Ex. 2 at 15. And again, regardless of whether these witnesses later recanted or not, Plaintiffs will call them in their case-in-chief.

Applying these factors here, the equities also favor Plaintiffs being able to question these witnesses first. The eyewitnesses at the scene of the shooting, Daniel Violante, Juan Cruz, Marybel Arroyo, Nancy Gonzalez, and Jose Gonzalez were all close friends and/or family of the victim. All of them, other than Marybel Arroyo, identified Plaintiffs in police lineups, and testified against Plaintiffs in their criminal proceedings. With the exception of Daniel Violante, none of these witnesses have recanted prior testimony incriminating Plaintiffs, and remain "hostile."[4] Mr. Violante recanted his testimony at Plaintiffs' post-conviction hearing, and thus he has provided testimony both favorable and unfavorable to both sides. And meanwhile he is a critical witness that Plaintiffs will certainly call

---

[4] Defendants appear to concede that Plaintiffs should get to question these witnesses first, other than Daniel Violante, as they did not identify them on their list of witnesses that Plaintiffs had served, that Defendants wanted to question first.

11

in their case-in-chief. If he were to become unavailable, Plaintiffs would be severely prejudiced if they could not preserve his testimony, in an organized and coherent fashion, by conducting an initial trial exam. None of them are related to, or had any prior relationship with, Plaintiffs. Meanwhile, Jondalyn Fields corroborates Rock's testimony about Defendants Guevara and Miedzianowski's plan to frame Plaintiffs, and Pacheco will testify about who the true perpetrator of the crime was. These are all critical witnesses in Plaintiffs' case-in-chief.

Finally, we note that Plaintiffs' and Defendants' counsel in this case have all litigated against each other in many other cases. And it is true that in various cases, the attorneys on both sides of this case have taken the contrary position on this issue. *See, e.g.*, *Reyes v. Guevara*, No. 18 C 1028 (N.D. Ill.) (Dkt. 140) (the law firms representing the Defendants in this case insisting they should get to question first because they subpoenaed the deposition first, and the law firm representing Plaintiff in this case arguing that the equities favored Plaintiff questioning first; Defendants' counsel prevailed); Group Ex. 3, *Rivera v. Guevara*, No. 1:12-cv-04428 (N.D. Ill.) (Dkt. 51 & Trans. of March. 13, 2013 Hrg.) (the law firms representing the Defendants in this case insisting they should get to question first because they subpoenaed the deposition first, Plaintiff's counsel in this case arguing that the equities favored Plaintiff questioning first; Plaintiffs' counsel prevailed); Group Ex. 2, *Walker v. Burge, et al.*, No. 21 C 4231 (N.D. Ill.) (Dkts. 222 & 223) (Defendants' law firm insisting they should get to question first because they communicated an intention to take the deposition first, and Plaintiff's law firm arguing that the equities favored Plaintiff questioning first; Plaintiff's counsel prevailed). This history between counsel merely highlights two points: (1) because counsel for the Guevara plaintiffs and the Guevara defendants have argued that service should be the primary factor in deciding which party gets to question a witness first, as Plaintiffs proposed here, Plaintiffs should get to question these witnesses first; and (2) even applying the equities, Plaintiffs should get to question these witnesses first.

**III. Defendants' proposals are not workable.**

Defendants at one point insisted that the parties simply engage in a back and forth "draft" to pick witnesses; this proposal prejudices Plaintiffs and is unfair. As discussed above, such a process does not follow any of the aforementioned frameworks, and instead throws them all out the window in favor of a tit-for-tat process that will inevitably result in Defendants being able to take depositions first of witnesses that Plaintiff served first, and for whom the equities strongly favor Plaintiffs being able to question first. Plaintiffs prioritized for depositions and move here only with regard to nine third-party witnesses that they intend to call in their case-in-chief. They are all appropriately questioned first by Plaintiffs. Defendants' draft proposal would have allowed Defendants to inevitably ask questions first of witnesses critical to Plaintiff's prosecution that are out of state or are otherwise likely to be unavailable at trial (*e.g.*, Nancy Gonzalez and Fred Rock), which would irredeemably prejudice Plaintiffs in presenting their case to the jury.

Defendants' proposed draft also presupposes that each side would take the same number of depositions, but in these wrongful conviction cases plaintiffs almost always take more depositions because they have the burden of proof and are the ones who need to develop evidence of constitutional misconduct. There are also many categories of witnesses over whom the parties almost never have disputes: for example, defense counsel has historically agreed that plaintiffs can go first with third-party officers with limited involvement in the homicide investigation, and plaintiffs have historically agreed that defendants can go first with defense attorneys and damages witnesses. A draft would merely create more opportunity for gamesmanship. In any event, the Guevara defendants ultimately abandoned this proposal during the parties' conferrals.

To the extent Defendants wanted to exchange lists and make trades, the Guevara plaintiffs tried that too, over two months, but it did not result in an agreement. In fact, the Guevara plaintiffs' final offer gave the defendants four witnesses they had served and noticed first, in exchange for just two witnesses defendants had noticed (but not served) first; that offer was rejected. Looking at just

13

this case, Plaintiffs agreed to a compromise in which, of the four witnesses they had served and noticed first, that Defendants had indicated that they wanted to question first, they would simply give Defendants two of them: Jondalyn Fields and Nelson Pacheco. In addition, Defendants could go first with all five witnesses they had noticed first, even though it was without service. So, Plaintiffs' offer would have given each side seven witnesses. Nevertheless, Defendants refused that compromise. They have repeatedly moved the goalposts, and ultimately rejected every compromise offered.[5]

It also bears mentioning: the approach Plaintiffs have taken is measured and allows each party to identify critical witnesses and pursue their depositions. Plaintiffs did not go out and serve everyone, or insist they should go first with every critical witness. Likewise, Plaintiffs did not serve and notice these depositions minutes after the start of discovery, but weeks later, over a period of several weeks during which Defendants had every opportunity to do the same thing.[6] Plaintiffs identified a set of key witnesses that they felt were critical to their case (and did not simply notice up others that they wanted to take, but that they could not yet locate for service), and left many other important witnesses in the case that could be served by Defendants if they chose (and indeed, Defendants immediately noticed a number of depositions as soon as they received Plaintiffs' notices and proofs of service).

**IV. Defendants should not be permitted to indefinitely delay depositions.**

Plaintiffs are also concerned that this dispute has become a process of endless delay. Plaintiffs noticed these depositions in August 2023. When Defendants objected, Plaintiffs agreed to confer but repeatedly requested that the process move expeditiously so depositions would not be delayed. Instead, the process has now dragged on for more than three months, as Defendants have

---

[5] That offer remains on the table, and in Plaintiffs' view a fair compromise that should resolve this motion so the parties can proceed with depositions without further delay.

[6] Defendants will likely argue that several weeks passed from the time that Plaintiffs served subpoenas on some of the witnesses, to the time Plaintiffs issued a notice for those witnesses, in some cases resulting in the notice going out after the return date on the subpoena. This is true, but it is of no moment: Plaintiffs made clear that the return dates on the subpoenas were mere placeholders, and that Plaintiffs would of course work with Defendants on identifying mutually agreeable dates, as the parties have always done in these cases.

14

continuously moved the goalposts during the conferral process, preventing the narrowing of disputes but ensuring additional delay. Now, Defendants insist that even when this dispute is resolved, they will not agree to dates for any depositions to proceed while various third-party subpoenas are pending. There is no basis for this sequencing of depositions after Defendants unilaterally decide they are satisfied that they have all the documents they want—particularly when Defendants have had the opportunity to pursue subpoenas for months.

"Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interest of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery." Fed. R. Civ. P. 26(d)(3). Plaintiffs are of course willing to work with Defendants on scheduling, and Plaintiffs assume Defendants will want Plaintiffs' prison files, medical records, and other documents before they take Plaintiffs' depositions, which Plaintiffs will, of course, accommodate. But there is no basis to put off the depositions of third-party witnesses. The fact discovery deadline is May 31, 2024. Plaintiffs have produced the entire set of post-conviction documents in their possession months ago, including entire criminal trial transcripts, police reports, and witness statements. The City has produced its homicide investigation files. There is no reason depositions of third parties cannot proceed. If Defendants had certain documents they wanted via third-party subpoenas, they could have issued those subpoenas many months ago. Instead, Defendants continue to issue new subpoenas as recently as the last few weeks, and now insist they want answers to those subpoenas before depositions go forward. Because of this dispute, no depositions have yet occurred. There is much to do, and we should get started now.

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court compel Defendants to comply with the deposition subpoenas Plaintiffs have served and noticed, permit Plaintiffs to question those witnesses first, and promptly provide dates on which those depositions can proceed.

Respectfully submitted,

/s/ Anand Swaminathan
*One of Plaintiffs' Attorneys*

Arthur Loevy
Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Annie Prossnitz
Alyssa Martinez
Loevy & Loevy
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

Daniel J. Stohr
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 726-1180
dan@danstohr.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certify that on December 6, 2023, I served the foregoing Motion to Compel Defendants to Proceed with Third Party Depositions using the Court's CM/ECF system, which effected service on all counsel of record.

/s/Anand Swaminathan
*One of Plaintiffs' Attorneys*