IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUAN HERNANDEZ and ROSENDO HERNANDEZ, | ) ) ) | |
| *Plaintiffs*, | ) ) | No. 1:23-cv-1737 |
| *v.* | ) ) | Hon. Jeremy C. Daniel |
| REYNALDO GUEVARA, *et al.*, | ) ) ) | Magistrate Heather K. McShain |
| *Defendants*. | ) | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANT
CITY OF CHICAGO TO PRODUCE AGREED-UPON DOCUMENTS**

Plaintiffs Juan Hernandez and Rosendo Hernandez, by their attorneys, Loevy & Loevy, respectfully move this Court pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order compelling Defendant City of Chicago to produce documents in response to Plaintiffs' First and Second Sets of Requests for Production. In support, Plaintiffs state as follows:

**INTRODUCTION**

Plaintiffs Juan Hernandez and Rosendo Hernandez bring this Section 1983 action against the City of Chicago, notorious Defendants Reynaldo Guevara and Joseph Miedzianowski, and other police officer defendants who caused them to be wrongfully imprisoned for a collective 50 years for the tragic murder of Jorge Gonzalez. Dkt. 58, Am. Compl. at ¶¶ 1-18. Plaintiffs are just two of a long line of men who suffered the same fate and who have since been exonerated after new evidence surfaced that Defendant Guevara and others from Area Five of the Chicago Police Department framed them for crimes they did not commit. *Id.* at ¶¶ 5-13, 134-165. Plaintiffs allege that Defendants manipulated and coerced false eyewitness identifications (*id*. at ¶¶ 38-58), suppressed exculpatory evidence (*id*. at ¶¶ 88-103), fabricated evidence undermining Plaintiffs'

alibis (*id.* at 88-94, 95-103), and intentionally fabricated an "anonymous" tip inculpating Plaintiffs (*id.* at ¶¶ 45-49). For their parts, Defendant Guevara has consistently taken the Fifth when questioned about his activities as a Chicago police officer in the face of numerous incidents of his misconduct (*id.* at ¶¶ 14, 162), and Defendant Miedzianowski is currently serving a life-time prison sentence for racketeering and operating a drug ring as part of his employment with the Chicago Police Department ("CPD") (*id.* at ¶¶ 59-79).

In this motion, Plaintiffs ask the Court to compel the City of Chicago to produce the following critical materials, or confirm that there are no responsive materials, in response to Plaintiffs' July 20, 2023 First Set of Requests to Produce (Exhibit A) and August 3, 2023 Second Set of Requests to Produce (Exhibit B). The parties met and conferred on outstanding documents not produced by the City and agreed that Defendant City would investigate and produce:

I. Documents relating to any party, witness, witness statement, or witness arrest records—including IR jackets—for Plaintiffs, certain key witnesses, the individuals in the photo arrays, and the fillers in the line-ups (First Request Nos. 15-22). *See* Exhibit C (July 8, 2024 Meet and Confer Memorialization Supplement).

II. Documents relating to any investigations of misconduct by Defendant Officers during their employment with CPD; their employment records; and/or any criminal investigation, arrest, or prosecution of any Defendant Officer (First Request Nos. 10, 26, 27).

III. Documents, such as indexes, sufficient to identity the title or general subject matter of each of the City of Chicago and/or CPD's written policies applicable to any of the Defendant Officers at any time during the Gonzalez murder investigation (First Request No. 41).

IV. Other documents relating to the Gonzalez murder investigation—including emergency transmissions, physical evidence, identification procedure documents (*i.e.*, gang books), maps of relevant CPD facilities, Daily Major Incident Logs, not-yet produced lineup photos, not-yet produced communications with witnesses, gang nickname database documents, telephone control logs, crime lab documentation, and investigative alerts (First Request Nos. 4, 7- 9, 11-13, 25).

V. Documents relating to the criminal prosecution of Defendant Miedzianowski; any investigations by CPD, or any agency of the City of Chicago, into allegations of

        criminal conduct by Defendant Miedzianowski or any other officers who participated in his criminal enterprise; and/or any complaint by former CPD Superintendent Phil Cline regarding Defendant Miedzianowski (Second Request Nos. 1-2, 4-5).

VI.    Communications between Defendant Miedzianowski and Raymond Risley (Second Request No. 3).

VII.    All documents produced or exchanged by the parties in *Klipfel, et al. v. Bentsen, et al.*, 1:94-cv-06415 (N.D. Ill.), including pleadings, discovery, and deposition transcripts (Second Request Nos. 6-7).

*See generally* Exhibit D (July 8, 2024 Meet and Confer Memorialization).

      Plaintiffs have been seeking responsive documents for 14 months and cannot afford to allow Defendant City continued latitude to produce materials and respond on its own unspecified timeline. Non-*Monell* fact discovery is currently set to close on October 31, 2024. Not only has Defendant City's delay prejudiced Plaintiffs' ability to conduct follow-up discovery, but it has also impeded Plaintiffs' ability to proceed with the remaining depositions in this case. Certain depositions that have already occurred may also need to be reopened due to new information coming to light as part of the outstanding production. As such, Plaintiffs move this Court to compel the City to provide timely responses as described herein.

## FACTUAL BACKGROUND

      The City's document production in this case has been characterized by unwarranted delay. The City produced only 220 pages of documents with its initial disclosures. By comparison, Plaintiffs produced more than 22,000 pages, commensurate with its discovery obligations in a case concerning decades of criminal, post-conviction, and civil proceedings and addressing serious constitutional violations. Plaintiffs issued their First Set of Requests for Production ("First RFP") on July 20, 2023. Defendant City responded on September 27, 2023 and did not produce any new documents. *See* Exhibit A; Exhibit E (Defendant City's Response to Plaintiffs' First RFP). Plaintiffs then issued their Second Set of Requests for Production

3

concerning Defendant Miedzianowski ("Second RFP") on August 3, 2023 to which the City responded on November 13, 2023. *See* Exhibit B; Exhibit F (Defendant City's Response to Plaintiffs' Second RFP).

It does not appear that the City conducted any investigation into the vast majority of Plaintiffs' requests; the City produced no additional documents in response to any of Plaintiffs' 48 requests in their First RFP and produced 359 pages in response to two of Plaintiffs' seven requests from their Second RFP, and simply stated "investigation continues" 50 separate times in response to Plaintiffs' requests. *See*, *e.g.*, Ex. E; Ex. F. Nor did the City specify the timeline for conclusion of its "investigation" as required by Rule 34(b)(2)(B) ("The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."). *Id*.

Shortly after receiving Defendants' discovery responses, this case—along with several other cases being litigated by the same counsel as here concerning misconduct by Defendant Guevara—stalled due to disagreements about witness priority and who should get to question certain key witnesses first. Dkts. 83-95. This Court ruled on that issue, and the parties again proceeded with document discovery. Dkt. 98. After not receiving any supplemental production or update as to the City's investigations into Plaintiffs' First and Second Requests for Production, Plaintiffs sent a Rule 37 letter on May 7, 2024 outlining the many deficiencies in the City's barebones responses. Plaintiffs' correspondence was detailed and intended to facilitate a substantive meet and confer. *See* Exhibit G (Plaintiffs' Rule 37 Correspondence).

In their letter, Plaintiffs requested that the City produce the outstanding documents or schedule a meet and confer by May 20, 2024. *Id.* That date came and went with no response from Defendant City. Plaintiffs followed up on May 30, 2024 proposing dates to meet and confer

4

or asking for the City to supplement. *See* Exhibit H (Group Email Correspondence) at 15-16. The City responded that it was working on responding to Plaintiffs' letter and that it will "provide a response shortly." *Id.* at 15. A week later, Plaintiffs again emailed Defendant City stating that Plaintiffs cannot "continue to wait for Defendant City to produce what it wants on its own established timeline or rely on assurances that things will be provided 'shortly'"—a common issue between the parties across the Guevara cases. *Id.* at 14-15. Plaintiffs also noted that the City had committed to producing certain documents once a confidentiality protective order was entered in the case. A confidentiality protective order was entered in this case on April 26, 2024, Dkt. 110, but the City made no such supplemental production. Plaintiffs thus requested the City send its response to their letter by June 10, 2024. Ex. H at 14. The City stated it could not have its response by June 10, 2024 and instead offered June 17, 2024. *Id.* at 13. June 17, 2024 came and went with no correspondence or production from the City.

Plaintiffs then followed up *again* on June 18, 2024 asking for a date to meet and confer on the outstanding documents. *Id.* at 12-13. The City responded three days later and said it would aim to have a response to Plaintiffs by June 24, 2024 and that it was available to meet and confer June 27 or 28. The parties thus confirmed a meet and confer scheduled for June 28, 2024. *Id.* at 9-12. On June 26, 2024, the City made a supplemental production of 2,602 pages. *Id.* at 9-10. Plaintiffs reviewed those documents to identify which outstanding requests were now satisfied and the numerous requests still unanswered that the parties would discuss during the upcoming meet and confer. However, the morning of the meet and confer, counsel for Defendant City stated they were no longer available for the scheduled time and would be rescheduling. *Id.* at 8.

The parties were finally able to conduct a lengthy meet and confer on July 8, 2024—62 days after Plaintiffs sent their Rule 37 correspondence. *Id.* at 5-7. The parties reached agreement

5

on what documents the City would provide, and Plaintiffs sent a memorialization letter outlining the agreement.[1] Ex. C; Ex. D; Ex. H at 3. During the meet and confer, the City committed to having a supplemental production made the week of July 15, 2024. No such production was made. Plaintiffs' counsel was on trial at the end of July into early August and, immediately after, followed up on the missing documents. Plaintiffs requested that the City produce the outstanding documents by August 23, 2024 or Plaintiffs would seek Court intervention as the ongoing delay was increasingly prejudicing their case. Ex. H at 2. The City responded saying it was now reviewing Plaintiffs' memorialization letter, sent one month previous, and would "provide an update on [] progress next week." *Id.* Plaintiffs responded stating that the City's undue delay—a recurrent issue that the same parties discussed as it pertains to a different case (*Eruby Abrego v. Guevara, et al.*, Case No. 23-cv-1740) *the day before*—has been going on for too long and that "13 months after these discovery requests were propounded, nearly 4 months after Plaintiffs sent their Rule 37 letter, and 7 weeks after we had our meet and confer on these documents, Plaintiffs have yet to receive *any* supplemental production from the City." *Id.* at 1. Plaintiffs notified Defendant City on August 23, 2024 that if it was not able to identify a date certain by which it will produce all of the agreed-upon materials, or, alternatively, to confirm that no responsive materials exist following a diligent investigation, by August 30, 2024, Plaintiffs would be seeking Court intervention. *Id.* As of the date of filing, the City has not responded and no such supplemental production has been made.

Defendant City's tactical delay has unfairly prejudiced Plaintiffs. Defendant Bemis has already been deposed. Defendant Guevara's deposition is scheduled for Monday, September 9,

---

[1] The parties agreed to defer conferral on certain buckets of documents because of the phased discovery schedule in this case and the overarching conversations on electronically stored information happening between the parties across the Guevara cases. There are also interrogatory responses that the City committed to updating pursuant to the outstanding documents being produced in this case. *See* Ex. D at 16-17.

6

2024. Defendant Miedzianowski's deposition—originally scheduled for August 8, 2024 before being rescheduled by his counsel—is forthcoming. Plaintiffs' depositions are now being scheduled for dates next month. Plaintiffs cannot afford to wait indefinitely pursuant to the City's unspecified timeline to receive basic documents. Plaintiffs have now requested the City supplement its production numerous times and no supplemental production has been made. This Court should therefore compel production of the requested materials and order the City to comply with its discovery obligations.

## LEGAL STANDARD

Federal discovery rules are liberal to assist in preparation for trial and aid the search for truth. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009); *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). A party responding to a Rule 34 request must "state whether any responsive materials are being withheld on the basis of that objection" and "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). "The burden rests upon the objecting party to show why a particular discovery request is improper." *Parvati Corp v. City of Oak Forest*, 2010 WL 2836739, at *1 (N.D. Ill. July 19, 2010) (quoting *Kodish*, 235 F.R.D. at 450).

A party may seek an order to compel discovery if an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(1)-(4). If the court grants the motion, then the non-complying party or its attorney or both must pay the moving party's reasonable expenses, including attorneys' fees, unless the non-complying party's position was substantially justified, or an award of expenses would be unjust. Fed. R. Civ. P.

7

37(a)(5); *see also DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 965 (N.D. Ill. 2021) (levying sanctions against party when it failed to conduct a proper investigation for responsive documents or produce such documents under Rule 37(a)). In ruling on a discovery motion, courts consider "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal quotation omitted).

## DISCUSSION

Defendant City has provided egregiously deficient responses as contemplated by Fed. R. Civ. P. 37(a)(1)-(5). After meeting and conferring on the outstanding documents, the City agreed to produce:

- **Transcripts, recordings, or any emergency transmissions relating to the Gonzalez murder investigation** (First Request No. 4). The City committed to investigating whether it is in possession of responsive documents, when OEMC began recording 911 phone calls, and committed to producing the appropriate retention schedule for such emergency transmissions. *See* Ex. D at 1. The City has not produced anything or apprised Plaintiffs of any such investigation.

- **All physical evidence, and documents that constitute records of physical evidence, related to the Gonzalez murder investigation** (First Request No. 8-9). The City stated that it has additional documents relating to physical evidence at ERPS. The City also represented that it turned over all physical evidence identified within the investigative file to the Cook County State's Attorney's Office around the time of the criminal trial and that it would produce documentation to that effect. *See* Ex. D at 2-3. Nothing has been thus produced.

- **Documents regarding investigations of misconduct committed during the homicide investigation and criminal prosecution of Plaintiffs and all Documents related to any complaint alleging official misconduct on the part of any Defendant Officer during their employment with the Chicago Police Department** (First Request Nos. 10, 26). Prior to the July 8 meet and confer, the City produced some CRs in response to this request. At the meet and confer, the City stated that it had further responsive documents and would produce them early in the week of July 15. The City also agreed to produce the non-privileged documents underlying the Sidley Austin investigation into the corruption of Defendant Guevara as well as the privilege log. The City represented that it

8

would follow up to confirm what procedure was in place in 1997 for cataloguing lawsuits against officers. Lastly, the City committed to confirming whether all the responsive documents were produced. *See* Ex. D at 3, 7. No such production has been made, and the City provided no update on its investigation.

- **Documents relating to any identification procedure conducted in connection with the Gonzalez murder investigation, including gang books** (First Request No. 11). The City committed to investigating whether the gang books from 1994-1999 still exist and producing them if so. If not, the City committed to producing the appropriate retention schedule. *See* Ex. D at 3. No such production has been made.

- **Maps or any other visual depictions of all CPD facilities in which Plaintiffs or any witnesses/suspects were detained, held, interrogated, or questioned in connection with the Gonzalez murder investigation** (First Request No. 12). The City stated it was searching for a map of Area 5 in 1997 and will produce it. *See* Ex. D at 3. No such production has been made.

- **Area 5 Detective Division Daily Major Incident Logs from May 27, 1997 to July 15, 1997** (First Request No. 13). The City stated that it would produce the appropriate retention schedule for Area 5 Detective Division Daily Major Incident Logs. *See* Ex. D at 3-4. No retention schedule has been thus produced.

- **Plaintiffs' arrest records** (First Request Nos. 15-16). The City committed to investigating whether it is in possession of any as-yet unproduced arrest records for Plaintiffs and stated it would produce them. *See* Ex. D at 4. No production or confirmation that there are no further responsive documents has been made.

- **Documents related to witnesses and witness statements, including witness arrest records and IR jackets** (First Request Nos. 17-22). The City agreed to conduct a search for the requested information for parties and witnesses identified by and produce any responsive documentation. *See* Ex. D at 4-5; Ex. C. No such production has been made.

- **Location, movement, assignment, and contact made by each Defendant Officer** during the Gonzalez murder investigation (First Request No. 25). The City agreed to produce the appropriate retention schedule for 1997. *See* Ex. D at 6-7. No such production has been made.

- **All documents relating to the employment of Defendant Officers** (First Request No. 27). The City agreed to confirm whether all of the personnel files were produced and, for those that have not been, to check whether they still exist. *See* Ex. D at 7-8. The City has not produced the retention schedule or apprised Plaintiffs of their investigation.

- **Documents, such as indexes, sufficient to identity the title or general subject matter of each of the City of Chicago and/or Chicago Police Department's written policies applicable to any of the Defendant Officers at any time during the Gonzalez murder**

9

**investigation** (First Request No. 41). The City agreed to produce policy indexes for 1997. Ex. D at 10-11. No such production has been made.

- **As-yet-unproduced documents, including (1) any not-yet produced documentation of requesting photographs for an array or lineup; (2) any not-yet produced documentation of communications between Defendants and any of the six witnesses (Marybel Arroyo, Nancy Gonzalez, Jose Gonzalez, Jesus Gonzalez, Juan Carlos Cruz, and Daniel Violante); (3) pages 1-4 of the gang nickname database (RFC Hernandez 103) (4) any telephone control logs from 1994 to 1999 (and any corresponding retention schedule); (5) any documentation from the crime lab related to this case; and (6) any investigative alert that was made during the course of this investigation** (First Request No. 7). The City agreed to investigate these categories of documents and produce any responsive documents. *See* Ex. D at 2. No such production has been made, nor has the City confirmed that, following a diligent investigation, no responsive documentation exists.

- **Documents relating to the criminal prosecution of Defendant Joseph Miedzianowski, including any documents related to that prosecution provided to the City of Chicago or any of its agencies** (Second Request No. 1). The City stated that it is still investigating whether it has responsive documents to this request. Due to how long discovery has been ongoing, and Defendant Miedzianowski's upcoming deposition, Plaintiffs asked the City to produce all responsive documents by July 19, 2024. *See* Ex. D at 13-14. To date, no supplemental production has been made nor has the City confirmed that, following a diligent investigation, no responsive documentation exists.

- **Documents related to any investigation by CPD, or any agency or department of the City of Chicago, into allegations of criminal conduct by Defendant Miedzianowski** (Second Request No. 2). The City stated that it is still investigating whether it has responsive documents to this request. Due to how long discovery has been ongoing, and Defendant Miedzianowski's upcoming deposition, Plaintiffs asked the City to produce all responsive documents by July 19, 2024. *See* Ex. D at 14. To date, no supplemental production has been made nor has the City confirmed that, following a diligent investigation, no responsive documentation exists.

- **Communications between Defendant Miedzianowski and Raymond Risley** (Second Request No. 3). The City stated that it is still investigating whether it has responsive documents to this request. Due to how long discovery has been ongoing, and Defendant Miedzianowski's upcoming deposition, Plaintiffs asked the City to produce all responsive documents by July 19, 2024. *See* Ex. D at 14. To date, no supplemental production has been made nor has the City confirmed that, following a diligent investigation, no responsive documentation exists.

- **Documents reflecting any kind of complaint by former CPD Superintendent Phil Cline regarding Defendant Miedzianowski** (Second Request No. 4). The City stated that it is still investigating whether it has responsive documents to this request. Due to how long discovery has been ongoing, and Defendant Miedzianowski's upcoming

10

deposition, Plaintiffs asked the City to produce all responsive documents by July 19, 2024. *See* Ex. D at 14-15. To date, no supplemental production has been made nor has the City confirmed that, following a diligent investigation, no responsive documentation exists.

- **Documents related to any investigation to identify other CPD officers who participated, or assisted, in the criminal enterprise Defendant Miedzianowski was convicted of operating—specifically including, but not limited to, any such investigations referencing Defendants Guevara or Bemis** (Second Request No. 5). The City stated that it is still investigating whether it has responsive documents to this request. Due to how long discovery has been ongoing, and Defendant Miedzianowski's upcoming deposition, Plaintiffs asked the City to produce all responsive documents by July 19, 2024. *See* Ex. D at 15. To date, no supplemental production has been made nor has the City confirmed that, following a diligent investigation, no responsive documentation exists.

- **All documents produced or exchanged by the parties in *Klipfel, et al. vs. Bentsen, et al.*, 1:94-cv-06415 (N.D. Ill.), including all pleadings, documents exchanged in discovery, audio and video recordings, wiretap recordings, and all other forms of electronic media (not including attorney-client or work product privileged documents)** (Second Request No. 6). The City stated that it has produced certain non-privileged documents within its possession, custody, and control and that it would follow up and confirm all responsive documents had been produced. Due to how long discovery has been ongoing, and Defendant Miedzianowski's upcoming deposition, Plaintiffs asked the City to produce all responsive documents, or confirm there were no as-yet unproduced responsive documents, by July 19, 2024. *See* Ex. D at 15. To date, no supplemental production has been made nor has the City confirmed that, following a diligent investigation, no responsive documentation exists.

- **All depositions and trial transcripts related to *Klipfel, et al. vs. Bentsen, et al.*, 1:94-cv-06415 (N.D. Ill.)** (Second Request No. 7). The City stated that it would follow up and investigate where such documents might be held in the City's Law Department and would confirm whether it possessed any responsive documents. Due to how long discovery has been ongoing, and Defendant Miedzianowski's upcoming deposition, Plaintiffs asked the City to produce all responsive documents by July 19, 2024. *See* Ex. D at 15-16. To date, no supplemental production has been made nor has the City confirmed that, following a diligent investigation, no responsive documentation exists.

Of note, Defendant City committed to investigating whether it is in possession of responsive documents in the above categories during the meet and confer—investigations that it stated it was conducting in its respective September and November 2023 responses to Plaintiffs' discovery requests—which is coming **12 months** after Plaintiffs initially issued those requests.

11

*See generally* Exs. E-F. Such a delay is inappropriate and highly prejudicial to Plaintiffs' ability to conduct discovery. *See Novelty, Inc. v. Mountain View Mktg., Inc*., 265 F.R.D. 370, 376 (S.D. Ind. 2009), *clarified on denial of reconsideration*, No. 107-cv-01229SEBJMS, 2010 WL 11561280 (S.D. Ind. Jan. 29, 2010) ("Unilaterally deciding to conduct a cursory initial search to be followed by 'rolling' productions from subsequent, more thorough, searches is not an acceptable option . . . . Rule 34 guarantees that the requesting party will receive, concurrently with the response, **all** documents reasonably available"); *see also Lava Trading, Inc. v. Hartford Fire Insurance Company*, Case No. 03-cv-7037PKCMHD, 2005 WL 459267, *9–10 (same and imposing sanctions); *Fautek v. Montgomery Ward & Co., Inc.,* Case No. 78-cv-1189, 96 F.R.D. 141, 145 (N.D. Ill. 1982) (holding that if a party does not take "reasonable steps to ensure that [its] responses for production [were] complete and accurate," later supplementation "does not absolve a party who has failed to produce the material in a timely fashion," and sanctions may be appropriate); *Ritacca v. Abbott Labs*., 203 F.R.D. 332, 335 (N.D. Ill. 2001) ("evidence of foot-dragging or [of] a cavalier attitude towards following court orders and the discovery rules" warrants strong action by the Court).

Plaintiffs thus ask the Court to compel the City to produce the outstanding agreed-upon documents, or alternatively, to confirm, following a diligent investigation, that no responsive documents are in the City's possession, custody, or control, so that Plaintiffs can proceed with building their case and complete the remaining depositions. The City agreed to investigate and produce the documents identified below in July 2024, one year after the requests were issued, and its continued non-production of such materials long agreed upon, 14 months after they were originally requested, lacks any justification. The materials have been outstanding for many months and are critical to Plaintiffs' ability to prove their case. The outstanding production is

12

delaying discovery and causing undue harm to Plaintiffs. This Court should order the City to meet its discovery obligations so that the parties can meet their Court-ordered discovery schedule.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs' Motion to Compel and order production by Defendant City of Chicago of the documents described herein, and any other relief this Court deems just.

RESPECTFULLY SUBMITTED,

**JUAN HERNANDEZ & ROSENDO HERNANDEZ**

BY: /s/ Alyssa Martinez
*Attorney for Plaintiffs Hernandez*

Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Alyssa Martinez
Quinn Rallins
LOEVY & LOEVY
311 North Aberdeen St., Third Floor
Chicago, IL 60607
(312) 243-5900
alyssa@loevy.com

## **CERTIFICATE OF SERVICE**

I, Alyssa Martinez, an attorney, certify that on September 6, 2024, I caused the foregoing document to be filed using the Court's CM/ECF System which affected service upon all counsel of record.

/s/ Alyssa Martinez
*One of Plaintiffs' Attorneys*