# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUAN HERNANDEZ and ROSENDO HERNANDEZ, ) ) ) | |
| ) | No. 1:23-cv-1737 |
| *Plaintiffs*, ) ) | |
| ) | Hon. Jeremy C. Daniel |
| *v.* ) ) | |
| ) | Magistrate Heather K. McShain |
| REYNALDO GUEVARA, *et al.*, ) ) | |
| *Defendants*. ) | **JURY TRIAL DEMANDED** |

## PLAINTIFFS' MOTION TO QUASH DEFENDANT OFFICERS' SUBPOENAS

## INTRODUCTION

Plaintiffs Juan Hernandez and Rosendo Hernandez bring this Section 1983 action against the City of Chicago, notorious Defendants Reynaldo Guevara and Joseph Miedzianowski, and other police officer defendants who caused them to be wrongfully imprisoned for a collective fifty years for the tragic murder of Jorge Gonzalez. Dkt. 58, Am. Compl. at ¶¶ 1-18. Plaintiffs are just two of a long line of over forty men who have since been exonerated after new evidence surfaced that Defendant Guevara and others from Area Five of the Chicago Police Department framed them for crimes they did not commit. *Id.* at ¶¶ 5-13, 134-165. For their parts, Defendant Guevara has repeatedly taken the Fifth about his activities as a Chicago police officer in the face of numerous incidents of his misconduct (*id.* at ¶¶ 14, 162), and Defendant Miedzianowski is currently serving a life-time prison sentence for racketeering and operating a drug ring as part of his employment with the Chicago Police Department (*id.* at ¶¶ 59-79).

The current dispute concerns Defendants' subpoenas to the Illinois Department of Corrections ("IDOC") seeking, for the entire 25-year period of each Plaintiff's incarceration, without any limitation by subject matter, (1) all recordings of calls between Plaintiffs and **11 individuals and one university**; and (2) all emails, text messages, e-messages, video-recorded visitations, and videograms between Plaintiffs and **22 individuals**. *See* Exs. A & B.

Defendant Officers articulate the claimed relevance of these materials in the vaguest terms. Plaintiffs attempted to confer with Defendants to see if they could articulate any specific bases to believe their request was anything more than a fishing expedition. They could not. Plaintiffs asked Defendants to narrow their requests so they were tailored to some reasonable timeframe around potentially relevant subject matters or events. But they refused. They simply

1

insisted on pursuing their broad, blanket request for thousands of Plaintiffs' recorded communications while in IDOC custody, without any limitation by subject matter or timeframe.

Plaintiffs respectfully move to quash these subpoenas. After a multi-day evidentiary hearing before Judge Rosado in the Illinois Circuit Court, Plaintiffs' convictions were vacated based on a finding of actual innocence, and several months later they received Certificates of Innocence from the State of Illinois. They suffered innumerable indignities while imprisoned for a crime they did not commit; among them, the total loss of privacy, including the recording of every intimate conversation they had with their loved ones. Defendants' vastly overbroad request would merely compound that injury. It is an unwarranted intrusion into Plaintiffs' personal privacy, and permitting production of these records in their entirety would pose an undue burden that is disproportionate to their potential marginal relevance to the case.

## RELEVANT FACTUAL BACKGROUND

On August 29, 2023, Defendants issued their first set of subpoenas to IDOC requesting any and all records relating to Plaintiffs including, *inter alia*, their entire prison files, including every piece of documentation for each institution in which Plaintiffs were incarcerated. *See* Exs. C & D. Defendants then issued additional subpoenas to IDOC for all of Plaintiffs' medical and mental health records. *See* Exs. E & F. Plaintiffs did not object to these subpoenas, except for call recordings and electronic communications, and thus Defendants obtained Plaintiffs' complete prison files for 25 years each, totaling more than 3,230 pages. They have everything from disciplinary records to commissary deposits to visitor logs to medical records.

Then, on June 6, 2024, Defendant Officers notified Plaintiffs that they intended to issue two subpoenas to IDOC that requested (a) any and all visitor logs; (b) identifying information for anyone who Plaintiffs attempted to call; and (c) any and all recordings of calls, emails, text

messages, videograms and all other electronic communications between Plaintiffs and 26 individuals. *See* Ex. G; Ex. A; Ex. B. Plaintiffs have no objection to Defendants' request for visitor logs and identifying information, although Plaintiffs note that such documents were previously requested in Defendants' first round of subpoenas.

The only portion of Defendants' subpoenas that Plaintiffs opposed, at issue now, is Defendants' request for thousands of Plaintiffs' recorded phone calls and video calls, and many more emails, text messages and all electronic communications, without subject matter or temporal limitation. Once Defendants sent notice of their subpoenas, Plaintiffs immediately responded that they object to the subpoenas as an intrusion into Plaintiffs' privacy interests, irrelevant, and unduly burdensome. Plaintiffs also objected because the subpoenas seek privileged communications with counsel. Plaintiffs requested that the parties confer.

In total, Defendants sought calls with eleven individuals, as well as the University where Juan's post-conviction attorney worked: (1) Northwestern, (2) Dan Stohr, (3) Jondalyn Fields, (4) Melissa Segura, (5) Randy Liebech, (6) Matt Sopron, (7) Robert Almodovar, (8) Johnny Flores, (9) Bill Dorsch, (10) Luis Torres, (11) Sam Perez, and (12) Alexandria Dones. Defendants' request for Plaintiffs' video calls, e-mails and all other electronic communications included the same twelve individuals and entities, plus the following additional individuals: (13) Rosa Solis, (14) Sophia Solis, (15) Carlos Moises Lopez, (16) Valerie Pinkston, (17) Jennifer Pinkston, (18) Jeanine Gomolinski, (19) Eddie Cabrera, (20) Daniel Violante, (21) Fredrick Rock, (22) Nelson Pacheco, (23) Desiree Dones aka Desiree Bondomo, and (24) Abraham Gutierrez, (25) Hector Vasquez , and (26) Manuel Suastegui.

As discussed below, what was immediately apparent was that many of these witnesses have absolutely no relationship to the facts or circumstances of this case at all. In order to

meaningfully confer about Plaintiffs' privacy, relevance, and burden concerns, Plaintiffs asked Defendant Officers to identify exactly how many calls and electronic messages they were seeking, as it appeared Defendants' requests would cover many thousands of phone calls and other recorded communications. Indeed, based on just IDOC call logs for Plaintiffs for the years 2018 to 2022, Plaintiffs made a combined 15,877 calls.[1]

In response, Defendant Officers indicated that they were seeking just 15 total telephone calls by Rosendo. All of those communications were between Rosendo and a single witness, Luis Torres, who testified as an alibi witness in his criminal case. Although Defendants have not identified any particular reason to believe Rosendo has communicated with Mr. Torres about his case since being incarcerated 25 years ago—and indeed Mr. Torres did not testify in Plaintiffs' post-conviction proceedings in June 2022—this reasonably narrowed request to just over a dozen calls is eminently reasonable. Plaintiffs do not object to the production of those calls.

In the case of Juan Hernandez, however, Defendants have taken a very different approach. They seek a massive volume of potential calls. Defendants first stated they would identify the number of calls they were seeking for Juan Hernandez, but they never did. To this day, it is still unclear what portion of the 12,851 calls on the call log for just 2018 through 2022[2] Defendants are actually seeking. But based on Plaintiffs' investigation, just based on known phone numbers for the twelve individuals and entities in Defendants' subpoena, Defendants seek **over one thousand calls (1,065) listed on the call log from 2018 through 2022**. And critically, Defendants refused to articulate specific reasons to believe that Juan Hernandez had

---

[1] Plaintiff Rosendo Hernandez made 3,026 calls, and Plaintiff Juan Hernandez made 12,851 calls.
[2] Plaintiffs have no knowledge of whether IDOC has retained additional recorded calls prior to 2018. If they exist, Defendants' subpoena seeks those too, which would bring tens of thousands of additional calls into the scope of Defendants' request, and the parties' dispute.

4

communicated about his case with any of the individuals listed in the subpoena in the timeframe from 2018 to 2022 covered in the call logs.

With regard to video calls, emails and other electronic communications, Defendants are seeking all such communications for both Juan and Rosendo. There are likely to be thousands of additional communications by these means. Indeed, there are no known logs of such communications, and Defendants have acknowledged during conferrals that they have no idea how many such communications their request covers. Defendants have not identified any mechanism for limiting any IDOC production to communications with the 25 individuals in their subpoena, or to subject matters with any articulable relevance to this case. Plaintiffs thus requested to confer with Defendants before the subpoenas were issued to hopefully find a compromise rooted in some realistic attempt to identify relevant communications and limit the immense burden of review. *Id.* at 4-6. Defendants refused to discuss any form of compromise. *Id.* at 2. Plaintiffs now respectfully request this Court quash the subpoenas.

## LEGAL STANDARD

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). Production pursuant to subpoena must be "relevant to any party's claim or defense and proportional to the needs of the case." *FireBlok Holdings v. Hilti*, No. 19-cv-50122, 2021 WL 5283946, at *2 (N.D. Ill. Aug. 10, 2021); *Reyes v. Guevara*, 2020 WL 3050230, at *3 (N.D. Ill. 2020) ("[T]he relevance and proportionality limits in Rule 26 . . . apply with equal force to nonparty discovery under Rule 45.").

Rule 45 provides that the court "where compliance is required must quash or modify the subpoena that . . . [1] requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . [2] subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii-

5

iv). A subpoena may subject a person to an "undue burden" if his privacy interests are implicated by the subpoena. *Jump v. Montgomery Cty.*, No. 13-3084, 2015 WL 6558851 (C.D. Ill. Oct. 29, 2015) (subpoena to phone company for customer's phone records posed undue burden to the customer). In evaluating a subpoena's burden, the court will consider factors including "the relevance of the discovery sought, the subpoaening party's need for the documents, the breadth of the request and the burden imposed on the subpoaened party." *Parker v. Four Seasons Hotel, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013) (internal quotations and citation omitted).

## ARGUMENT

Courts have repeatedly held that subpoenas like this one—which indiscriminately seek a party's recorded prison calls—infringe on privacy interests and seek swathes of irrelevant information. These subpoenas constitute a clear fishing expedition, and this Court should therefore quash Defendants' subpoenas.

### I. Plaintiffs Have Standing to Challenge This Subpoena

A party has standing to quash a subpoena directed to a non-party if it implicates the party's privacy interests. *Simon v. Northwestern Univ.*, No. 1:15-cv-1433, 2017 WL 66818, at *2 (N.D. Ill. Jan. 6, 2017). Courts in this district have found that a plaintiff contesting a subpoena that would access his or her recorded phone calls while incarcerated has the "minimal privacy interest necessary to challenge the subpoena," given that phone calls are that person's only means of maintaining relationships with friends and family. *See Gonzalez v. Guevara, et al.,* No. 22-cv-6496, Dkt. 140 (N.D. Ill. Nov. 15, 2023); *DeLeon*, 2020 WL 7059444 at *2; *Bishop v. White*, 2020 WL 6149567, at *3 (N.D. Ill. Oct. 20, 2020)); *Pursley v. City of Rockford*, 2020 WL 1433827, at *2 (N.D. Ill. Mar. 24, 2020); *Simon*, 2017 WL 66818, at *2; *Coleman v. City of Peoria*, 2016 WL 3974005, at *3 (C.D. Ill. July 22, 2016) (prisoners enjoy a privacy interest in

6

their recorded calls since they would reasonably expect access to be limited to prison officers with a bona fide need for such access). Plaintiffs have a clear privacy interest here.

> II. **Defendants' Subpoenas for Plaintiffs' Phone and Video Calls Improperly Intrude on Their Privacy Interests**

With standing established, a court will weigh "the privacy interests of the person seeking to quash the subpoena against the relevance and the benefit of the information sought." *Rodriguez v. City of Chicago*, 2021 WL 2206164, at *1 (N.D. Ill. June 1, 2021). Plaintiffs retain a privacy interest in the recorded calls and messages with their family, friends, and attorneys. Defendants' subpoenas invade that interest, as they demand the production of *thousands* of phone calls, electronic messages, and video-recorded visitations—perhaps tens of thousands.

Courts in this district have routinely recognized that in civil matters, prisoners have a privacy interest even when they share information on a recorded line. *See Pursley*, 2020 WL 1433827, at *2 ("While inmates would reasonably expect that their phone calls could be accessed by prison officials, they would not reasonably expect that the details of their recorded phone calls would be handed over to civil litigants."); *see also Bishop*, 2020 WL 6149567, at *3; *Simon*, 2017 WL 66818, at *2 ("This court doubts, for example, Simon anticipated his remarks to a friend about the weather, slights uttered in a heated lover's quarrel, or any unrelated conversation ranging from the most benign topics (the former) to the most intimate (the later) would find its way as an exhibit in this lawsuit."); *Coleman*, No. 15-CV-1100, 2016 WL 3974005, at *3 (prisoners enjoy a privacy interest in their recorded calls since they would reasonably expect access to be limited to prison officers with a bona fide need for such access); *Reyes v. Guevara*, 18-cv-1028, 2020 WL 3050230 at *2.

Because of their wrongful prosecutions and convictions, Plaintiffs were deprived of the ability that every free person enjoys to have personal conversations behind closed doors. To

7

maintain their relationships, Plaintiffs and their family, friends, and loved ones were left without an alternative to monitored calls and communications, although they assuredly would have preferred otherwise. Moreover, although Plaintiffs were aware that these communications might be monitored, they never imagined those calls would be heard by anyone other than security personnel.

  Here, many of the witnesses from whom Defendants seek calls and written communications are longtime friends with no relationship to this case other than their support of Juan as he suffered through decades in prison. Alexandria Dones, for example, is someone Juan dated in middle school, and with whom he maintained a friendship as he tried to cope in a prison environment. Randy Liebach was Juan's cellmate for a number of years, and again a source of friendship and support. Matt Sopron was also someone Juan became friends with in prison, who had a shared experience: he was wrongfully convicted and later exonerated, *in a case that had nothing to do with Defendants Guevara, Miedzianowski, or any other Defendants in this case*.

  Imagine if the shoe was on the other foot. The Defendants in this case have no doubt shared their own unvarnished feelings about their experiences at CPD with their family members, and closest friends. Surely, if Plaintiffs were to explore those communications, it is likely there would be information about Defendants' involvement in this investigation, or their memories or opinions at the various points this case was in the news or when they received a copy of the lawsuit; similarly, such communications could contain other information that would contradict their testimony about their practices as officers, or provide relevant evidence related to Plaintiffs' code of silence, failure to supervise, or other *Monell* claims. Yet, no court has ever, or would ever, grant a wrongful conviction plaintiff such unfettered access to thousands of Defendants' innermost thoughts and feelings over decades. Plaintiffs deserve the same treatment.

### III. Defendants Have Not Demonstrated the Relevance of the Recorded Calls, Messages, and Videos They Seek

Defendants have not justified the relevance of the thousands and thousands of communications they seek. At the outset, many of the 25 individuals they have identified have no relationship to this case whatsoever. For example, eight of the 25 individuals are not disclosed in any party's Rule 26(a)(1) disclosures.[3] Nine of the individuals—Randy Liebach, Matt Sopron, Alexandria Dones, Manuel Suastegui, Robert Almodovar, Johnny Flores, Bill Dorsch, Sam Perez and Melissa Segura—are not witnesses to the shooting, or any aspect of the underlying homicide investigation. In other words, they have no personal knowledge related to any of the central issues in this case. Indeed, not one of them is mentioned anywhere in the police files associated with this case, or identified as a witness at any point during the criminal or post-conviction proceedings. Ms. Dones, for example, is Juan's friend going back to when they dated in middle school. The same is true of Randy Liebach and Matt Sopron; as discussed above, they are two human connections Juan made while he was in prison, and two friends he stayed in touch with after they were each released before Juan. During the parties' conferrals, Defendants did not offer any evidence to suggest that Juan communicated with them about the facts of this case.

The rest of the witnesses with no connection to the underlying facts of this case (Suastegui, Almodovar, Flores, Dorsch, Perez, and Segura) have only the loosest connection to this case: a general connection to Defendant Guevara. Dorsch is a former detective who courageously blew the whistle on Guevara's misconduct years ago, *in an different case*, and has faced the wrath of Defendants and their counsel ever since, subjected to numerous depositions and hostile examination. Melissa Segura is a BuzzFeed reporter who has written extensively about Guevara's misconduct across numerous cases. And the rest are individuals who either

---

[3] Those eight are Jennifer Pinkston, Jeanine Gomolinksi, Eddie Cabrera, Randy Liebech, Matt Sopron, Dan Stohr, Melissa Segura, and Alexandria Dones.

allege they were wrongfully convicted by Guevara, or were witnesses to Guevara's misconduct; in every instance, their personal knowledge is limited to their experiences in other cases. In addition to their ancillary relationship to this case, Defendants have not identified any evidence to indicate they had relevant phone calls with Juan during the period from 2018 through 2022 covered by the call logs, or that Plaintiffs had any other written communications relevant to this case during the 25 years covered by Defendants' request for all electronic communications.

      The other individuals in Defendants' list are admittedly witnesses in this case, but that is hardly useful because Defendants have not established that there even are any communications between Plaintiffs and most of them. For example, Defendants' list includes Daniel Violante, the eyewitness who recanted his identification of Plaintiffs, as well as Nelson Pacheco, Desiree Bandomo, and Hector Vasquez, individuals who came forward with evidence pointing to a man named Will Vilaro as the real perpetrator. If Juan was communicating with these witnesses about this case, Plaintiffs acknowledge that could be relevant. However, there is no evidence that is the case. Indeed, their numbers do not appear to be in the call logs, and Defendants have excluded them from their request for recorded calls. But they still seek any electronic communications with any of these individuals, but have not demonstrated there is any reason to believe any exist (despite no calls), or even a way to determine that, or to then limit the production to those communications only (rather than collecting all emails, texts and other written communications, and searching the entire collection of highly sensitive and personal communications).

      This same problem is true for the rest of Defendants' requests for video calls, emails, and other electronic communications. Defendants have not produced any logs or other documents that demonstrate they have any means of limiting the production to specific individuals, let alone to the specific periods *within the 25 years covered by their request* in which they have reason to

10

believe there may be relevant communications. Indeed, it bears mentioning: Defendants' insistence on now additionally obtaining all video calls, emails, and all other electronic communications is new, and Plaintiffs' counsel is not aware of a single instance in the hundreds of wrongful conviction cases our firm has litigated in which the defendants have been granted access to such communications. This Court should not be the first.

Finally, that leaves Defendants' request for Juan's recorded calls with Fred Rock and Jondalyn Fields—who provided affidavits during Plaintiffs' post-conviction proceedings about Defendant Guevara's and Miedzianowski's plan to frame Juan for murder. If Defendants had some articulable basis to suggest that Juan was communicating with these witnesses in order to get them to provide affidavits, that may justify a request for all calls during that targeted period. But Defendants have presented no such evidence. Indeed, Rock and Fields provided affidavits in the post-conviction proceedings *in January 2018*, but the log of Juan's recorded calls only goes back to *October 2018*. So, there are no available communications from the months leading up to January 2018, the only time period for which Defendants have reason to believe there may be relevant communications. Put simply, Defendants are relying on conjecture rather than a concrete showing of relevance, and this cannot support the *en masse* production of calls in pursuit of what is plainly a fishing expedition. *See Rodriguez*, 2021 WL 2206164, at *3 ("the criteria for a permissible subpoena in this district require that it be narrowly tailored").

Such a finding is entirely consistent with repeated rulings in this district quashing the same sort of vastly broad subpoenas for recorded prison calls and communications at issue here. *Simon*, 2017 WL 66818 * 4 (quashing subpoena because defendant failed "to provide sufficient facts for the court to ascertain how all calls placed over the fifteen-year period of Simon's incarceration would either be relevant to the litigation or necessary to defend the claims against

11

him," and that the defendant had failed to provide specific evidence that the calls were relevant to the litigation, such that the subpoena amounted to a "broad fishing expedition."); *Pursley*, 2020 WL 1433827, at **1, 5 (quashing subpoena because defendants' assertion that plaintiff likely discussed his criminal and post-conviction proceedings while incarcerated was insufficient speculation to "allow an unlimited subpoena," and would amount to impermissible "dart throwing."); *Montanez v. Guevara, et al.,* No. 17 CV 4560, Dkt. 158 (N.D. Ill. Feb. 12, 2019) (attached as Exhibit H) (granting motion to quash defendants' subpoena seeking 20 years' worth of plaintiffs' recorded IDOC calls"); *Maysonet v. Guevara*, No. 18 CV 2342, Dkt. 108 (N.D. Ill. Jan. 7, 2020) (attached as Exhibit I) (granting motions to quash subpoena for recorded phone calls); *Ezell v. City of Chicago*, No. 18 CV 1049, Dkt. 230 (N.D Ill. September 2, 2020) (attached as Exhibit J) (granting motions to quash subpoena for years of recorded phone calls, explaining "the subpoenas are so broad and all-encompassing that they are the very definition of a fishing expedition or of throwing darts in the dark"); *c.f. Gonzalez*, Dkts. 140, 170 (court allowed limited initial discovery into IDOC recorded phone calls because the subpoena was narrowly tailored to certain key time frames in plaintiff's underlying criminal case. When defendants requested more expansive discovery on the calls, the court denied it).

### IV. Defendants' Subpoenas Would Pose an Undue Financial and Time Burden on the Parties to this Litigation

If even 1% of the 12,851 calls for Juan Hernandez are responsive to Defendants' subpoena, that's 129 calls. Inmate calls are typically 30 minutes long, and so reviewing that 1% would take 65 hours. Based on Plaintiffs' investigation into phone numbers associated with the individuals in Defendants' subpoena (because Defendants promised to identify how many of Juan's calls they were seeking, but then did not), Defendants request recordings for more than 1,000 calls listed on the 2018 to 2022 call logs. Reviewing those calls would amount to

12

approximately 500 hours. This would completely occupy a full-time associate for over three months. And that does not include the calls requested for Rosendo, the video-recorded visitations and videograms requested for both, and the electronic communications requested for both, which would increase the expenditure of time and money exponentially.[4] Such an enormous cost for both parties outweighs any perceived benefit to Defendants.

Further, fact discovery is set to close in this case on October 31, 2024. To be sure, Defendants have caused numerous delays—including (1) the non-production of documents detailed in Plaintiffs' pending motion to compel against Defendant City, Dkt. 121, and (2) Defendants making no effort to schedule the depositions which this Court in January 2024 ruled they could proceed first for, Dkt. 98—and such additional delay in order to review broad swathes of records that will likely have little to no relevant information should not be invited.

Plaintiffs are eager to comply with this Court's discovery deadline and find resolution after 25 years of wrongful incarceration. Granting such expansive subpoenas would be enormously prejudicial to Plaintiffs. In addition to the enormous emotional cost of having their intimate conversations shared with the very party that tormented them in the first place, they are further prejudiced by the attendant costs and delay associated with Defendants' request. In sum, Plaintiffs' privacy interest in the thousands of calls, videos, and electronic messages requested and the burden this subpoena will impose far outweigh their perceived relevance. *Rodriguez*, 2021 WL 2206164, at *1. This Court should accordingly quash Defendants' subpoenas.

---

[4] And if past is prologue, this will not be Defendants' last request for Plaintiffs' calls. In other cases, like the *Gonzalez* case discussed above, Defendants came back to the court for more.

### V.     The Subpoena Improperly Seeks Privileged Information

Defendants' subpoenas also directly target privileged communications between Plaintiffs and their post-conviction attorneys, Dan Stohr and Greg Swygert at Northwestern Law School. This is improper, and speaks to Defendants' express desire to use their subpoenas to gain access to an equally sacred category of protected communications: those between attorney and client.

A motion to quash must be granted where the subpoena seeks information protected by a privilege held by the party. *Piercy v. Wilhelmi*, No. 16-MC-1008, 2016 WL 3034149, at *1 (C.D. Ill. May 27, 2016); *United States v. Newell*, 192 F.R.D. 587, 589 (N.D. Ill. 2000); *Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2010 WL 3167277, at *3 (N.D. Ill. Aug. 6, 2010), *aff'd*, 468 F. App'x 960 (Fed. Cir. 2011) (holding that Rule 45 governs the issuance of subpoenas and provides that the court must "must quash or modify a subpoena" that "requires the disclosure of privileged or other protected matter, if no exception or waiver applies.")

The attorney-client privilege protects communications made in confidence by a client to an attorney for the purpose of obtaining legal advice. *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). This privilege applies even to recorded phone calls made from a prisoner to his attorney, if the prisoner has no access to a private, nonrecorded line and intends the communications to be privileged. *See, e.g., United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) (privilege attaches when client intends communications to be confidential); *Simon*, 2017 WL 66818, at *5 (acknowledging that the Seventh Circuit has not decided whether attorney-client privilege applies to recorded prison phone calls, and suggesting attorney-client privilege may apply if there was some "impediment to [the prisoner's] access to unrecorded calls"); *Pursley*, 2020 WL 1433827, at *5 (same). Here, Plaintiff participated in numerous calls

14

with his attorney over the many years he was incarcerated before his conviction was vacated, and he has not waived his privilege over those communications in this civil case.

Additionally, and not surprisingly, the majority of these calls took place from April to July 2020, when legal visits and scheduled legal calls were virtually impossible to conduct during the early months of the Covid-19 pandemic. Defendants now seek to exploit that time when there was a massive impediment to the ability of Plaintiffs to speak to their attorneys by any means other than recorded calls. To allow such a breach when Plaintiffs were in an environment through which recorded calls were the only mechanism by which they could speak with legal counsel would serve to effectively deny an incarcerated individual under such circumstances of their right to counsel and thereby chill their ability to partake in their own proceedings and the justice system at-large. Plaintiffs had significant difficulty accessing any unrecorded line and reasonably expected that their communications with their attorneys would remain private, and this Court should thus quash Defendants' effort to pierce that privilege. *See Gonzalez*, Dkts. 157, 161, 170 (M.J. McShain) (in another Guevara case, the parties briefed Defendants' attempt to get Plaintiff's recorded calls with post-conviction attorneys when the pandemic made scheduling legal calls extremely difficult; the court denied the request).

## CONCLUSION

Defendants had an opportunity to come to Plaintiffs, and eventually this Court, with a narrowly tailored request for a reasonable number of recorded phone calls. With the exception of Defendants' request for fifteen of Rosendo Hernandez's calls, which Plaintiffs do not oppose, Defendants have failed to do so. Accordingly, Plaintiffs respectfully request that this Court quash Defendants' subpoenas.

RESPECTFULLY SUBMITTED,

**JUAN HERNANDEZ & ROSENDO HERNANDEZ**

BY**:**  /s/ Alyssa Martinez
*Attorney for Plaintiffs Hernandez*

Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Alyssa Martinez
Quinn Rallins
LOEVY & LOEVY
311 North Aberdeen St., Third Floor
Chicago, IL 60607
(312) 243-5900
alyssa@loevy.com

**CERTIFICATE OF SERVICE**

I, Alyssa Martinez, an attorney, certify that on September 18, 2024, I caused the foregoing document to be filed using the Court's CM/ECF System which affected service upon all counsel of record.

/s/ Alyssa Martinez
*One of Plaintiffs' Attorneys*