**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN HERNANDEZ and ROSENDO HERNANDEZ, | ) ) ) | |
| | ) | No. 1:23-cv-1737 |
| *Plaintiffs*, | ) ) | |
| | ) | Hon. Jeremy C. Daniel |
| *v.* | ) ) | |
| | ) | Magistrate Heather K. McShain |
| REYNALDO GUEVARA, *et al.*, | ) ) | |
| *Defendants*. | ) | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
TO QUASH DEFENDANTS' SUBPOENAS SEEKING PLAINTIFFS' RECORDED
CALLS, VIDEO RECORDINGS, AND ELECTRONIC COMMUNICATIONS**

Plaintiffs Juan Hernandez and Rosendo Hernandez, by their attorneys, Loevy & Loevy, respectfully submit this reply in support of their motion to quash Defendants' subpoenas seeking their recorded calls, video visits, and all electronic communications, stating in support as follows:

Plaintiffs spent a collective five decades incarcerated for a tragic crime that they did not commit. Those decades were dehumanizing—they enjoyed no privacy or autonomy and had few opportunities for meaningful personal interactions. Phone calls were the primary way to connect with their family and friends. Even though the brothers have been exonerated, released, and certified innocent, Defendants now seek to compound the suffering by encroaching on Plaintiffs' most intimate phone calls while trying to survive their decades of wrongful imprisonment. Where Defendants made a reasonable request—fifteen phone calls between Plaintiff Rosendo Hernandez and a single alibi witness in this case, Plaintiffs agreed to it. But the request for Plaintiff Juan Hernandez is far more expansive, which Defendants now acknowledge seeks 377 calls, amounting to over 77 hours of recorded phone calls. The amount of attorney time needed to review those

calls, alone, will cost tens of thousands of dollars. And as Defendants acknowledge, this is only a portion of their request; they are also seeking to identify additional calls going back at least another five years beyond what is in the call logs they received from IDOC, as well as an unidentified number of Plaintiffs' written communications.

Defendants have failed to present a request that is narrowly tailored to target communications that are likely to be relevant, and they have failed to demonstrate a justification for such an expansive and burdensome request. Under Rules 26 and 45, this Court has authority to quash or otherwise limit Defendants' inquiry to phone calls and other recordings that are proportionate to the needs of the case, and should do so here.

## ARGUMENT

### I. Defendants' response confirms that these phone calls are in service of a fishing expedition.

In their Response to Plaintiffs' Motion to Quash, Defendants concede that there will likely be "irrelevant calls in the *targeted net Defendants have cast.*" Dkt. 132 at 13 (emphasis added). Such an admission confirms what Plaintiffs have maintained from the outset: Defendants seek these prison phone calls and other electronic recordings and communications in the hopes of catching a most unlikely fish—a self-incriminating call. The Seventh Circuit has been clear that this type of fishing expedition is prohibited, and this Court should reject Defendants' attempt here. *E.E.O.C. v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 971 (7th Cir. 1996) ("discovery is not to be used as a fishing expedition"). Defendants fail to demonstrate why these phone calls are relevant, mischaracterize the record and conferral process, make sweeping allegations not even remotely tethered to the facts of the case, and refuse Plaintiffs' proposed commonsense solution to limiting requests to relevant time periods for supposed key witnesses. In doing so, Defendants fail to carry their burden of establishing that the benefit of these recordings' production outweighs the cost.

2

### A. Defendants have failed to demonstrate why these recordings are relevant.

Defendants' primary argument that Plaintiffs' phone calls and other recorded communications are relevant to this litigation is that courts have found such recordings relevant and "outcome determinative" in other cases. These cases and the phone calls in them have no bearing on the particular relevance of the phone calls in this case. For example, Defendants rely on *Harris v. Chicago*, 20-cv-04521 (N.D. Ill. 2021) to support their position, but it is not clear the phone calls were dispositive there. Rather, the case was decided on the undisputed facts in the record that the plaintiff caused his own injury. *See id.* at Dkt. 95-1. Significantly, the *Harris* court confined any phone call production to a "narrowed scope of one month around plaintiff's arrest and one month after plaintiff's trial," given that those were the only calls "reasonably likely to contain relevant conversations about plaintiff's damages and the circumstances of his asserted injury (tied to the circumstances of his arrest)." *See id*. at Dkt. 58.

Defendants also turn to *Bishop v. White* for support, though the court there quashed defendants' subpoena to the extent defendants sought thousands of plaintiff's phone calls, finding that the "privacy interest in the calls outweighed the benefit of producing them . . . ." No. 16-cv-6040, 2023 WL 35157, at *6 (N.D. Ill. Jan. 4, 2023). The court only permitted defendants to subpoena recordings of the plaintiff's phone calls in the time near the signing of his recantation affidavit and recanting at trial, thus narrowing the scope substantially. *Id*. at *2. In the third case Defendants cite, *Johnson v. Baltimore Police Department*, the plaintiff provided all the audio recordings, except one. 2022 WL 9976525, at *33 n.50 (D. Md. Oct. 14, 2022). Thus, the burden and privacy analysis were inapplicable.[1] Particularly because, as set forth below, Plaintiffs have

---

[1] Defendants also cite two further cases that are inapposite. There is nothing to support their claim that the plaintiff in *Powell* voluntarily dismissed his case after being confronted with his jail calls—Defendants cite only the docket entry in which the case was dismissed. No. 22-cv-4123 (N.D. Ill. July 5, 2023), Dkt.

3

agreed to the production of a set of calls around the time of each witness's recantation affidavit, post-conviction testimony, or other involvement in the case; that is, the very limitation that *Harris* and *Bishop* ordered.

Defendants also fail to recognize that these cases where the calls were supposedly "outcome determinative" are outliers. As discussed in Plaintiffs' motion, it is well established that the possibility that a prison phone call might reveal relevant information is not sufficient to justify a subpoena. That is the case even if it is narrowed to particular individuals who knew Plaintiffs before or during their incarceration. Dkt. 126 at 12-13. Such an argument that Defendants should be allowed to seek years' worth of Plaintiffs' phone calls and other communications because, in a very small number of the hundreds of other wrongful conviction cases litigated in this courthouse alone (and hundreds more in other districts), some arguably relevant evidence was obtained, is unpersuasive. To the contrary, that Defendants are able to identify so few cases in which anything of any relevance was actually obtained supports Plaintiffs' point: these fishing expeditions rarely result in anything of any relevance, while subjecting the plaintiffs to a severe invasion of all of their most intimate private moments with their friends and loved ones.[2]

Further, though they repeatedly urge that these phone calls and other recordings are "relevant," *see, e.g.*, Dkt. 132 at 4, they fail to connect the calls or other communications to any specific claim or defense at issue in this case. By their definition, every single call with Plaintiffs' friends or other loved ones could be considered relevant for damages purposes. But much more is

---

25. Nor is there any indication on the docket that the plaintiff in *Walker v. City of Chicago* dismissed his case because of prison recordings. No. 21-cv-4231, Dkt. 256-1 at *4 (N.D. Ill. Oct. 21, 2023).

[2] Indeed, Plaintiffs could point to many cases in which the pursuit of such calls proved to be a massive waste of time. *See, e.g.*, *Gonzalez v. Guevara, et al.*, No. 22-cv-6496, Dkt. 109-1 (City of Chicago's compelled response to the plaintiff's interrogatory, conceding that its review of thousands of phone calls resulted in defendants failing to find a single phone call in which the plaintiff said a single incriminating thing at all).

4

needed to justify the incursion on Plaintiffs' privacy interest, as well as the burdensome and cumulative nature of such a request. *See McClendon v. City of Chicago*, 345 F.R.D. 322, 327 (N.D. Ill. 2024) (granting motion to quash phone calls in which the plaintiff had testified he had been framed because the defendants did not "offer[] any specific reasons these calls may be relevant" beyond a general argument that Plaintiff told these individuals about his arrest).

### B. Defendants make grandiose inferences as to why hundreds to thousands of Plaintiffs' calls and communications are relevant.

In their response, Defendants cite to Plaintiffs' interrogatory responses stating that they cannot possibly recall every single person that they spoke with about their case over the last 27 years outside of their parents, siblings, and attorneys. Defendants then make the speculative leap that this somehow means that Plaintiffs have had communications with all 26 people that Defendants request recordings for, when only two of those people (Plaintiffs' attorneys) were actually included in the interrogatory response. Defendants are improperly attempting to use this response to cover the fact that neither Plaintiff has ever testified to communicating with any of these individuals about their case—as opposed to some of the cases Defendants cite where access to certain recordings was granted based on the plaintiff testifying that he spoke with the specific individuals requested about his case.

In another mischaracterization to this Court, Defendants claim that Plaintiffs disclosed over 200 witnesses on their Fed. R. Civ. P. 26(a)(1) disclosures, "many who appear in Juan's IDOC records on his Inmate Telephone Number List Requests." Dkt. 132 at 5. Such a claim is grossly misleading. For starters, the vast majority of individuals disclosed on Plaintiffs' 26(a)(1) are 404(b) witnesses, and the parties are in the process of significantly narrowing that list. Between fact witnesses and alibi witnesses, only 17 individuals and six attorneys were identified. Dkt. 132-9 at 3. To the extent Defendants claim "many" of these 200 witnesses appear on Plaintiff Juan

5

Hernandez's number list request, the truth is that merely two fact witnesses, four 404(b) witnesses, and one attorney actually appear on the list. Instead, eight of the individuals for which Defendants request recordings do not appear on any party's 26(a)(1) disclosures (Jennifer Pinkston, Jeanine Gomolinski, Eddie Cabrera, Rady Liebach, Matt Sopron, Dan Stohr, Melissa Segura[3], and Alexandria Dones).

### C. Defendants rejected Plaintiffs' proposal of limiting their requests to certain relevant time periods.

Consistent with past rulings requiring requests for recorded phone calls to be narrowly tailored to key timeframes in the underlying criminal proceedings, see Dkt. 126 at 12-13, including the *Harris* and *Bishop* cases Defendants themselves cite, Plaintiffs offered a proposal wherein Defendants could identify certain time periods relevant to the underlying criminal/post-conviction case (*e.g.*, the thirty days before post-conviction hearing testimony), or time periods in which the witnesses requested took actions relevant to the criminal/post-conviction case (*e.g.*, the thirty days before a witness signed an affidavit or otherwise gave a statement). Plaintiffs would then agree to the production of calls in those time periods, for the list of identified witnesses. Defendants refused that offer and would not even discuss any potential limitation of their subpoena request, which remains unmoored or tailored to relevant time periods in this case.[4] Dkt. 126 at 2-3.

One of the reasons Defendants may have been unwilling to engage in such narrowing is because they know many of the witnesses they have identified had no involvement in Plaintiffs' underlying criminal case, post-conviction proceedings, or this civil action, and do not appear on Plaintiffs' IDOC Call Logs. Thus, any compromise would require acknowledging that their

---

[3] Defendants also attempted to subpoena all of Melissa Segura's files in another Guevara case, *Cruz v. Guevara, et al.*, No. 23-cv-4268, but that subpoena was quashed by Judge Fuentes. *Id.* at Dkt. 260.
[4] Defendants incorrectly claim that Plaintiffs concede any written communication with any of the 26 requested individuals would be "highly relevant."

6

requests could not be narrowly tailored, because they are indeed a clear fishing expedition. This includes [1] Rosa Solis and [2] Sophia Solis (family friends who were alibi witnesses for Plaintiff Juan Hernandez and testified during his trial in November of 2001), [3] Jeanine Gomolinski (an alibi witness for Plaintiff Rosendo Hernandez who, relevantly, did not testify during his trial in 1999), [4] Luis Torrez (a lifelong friend of both Plaintiffs who was an alibi witness for Plaintiff Rosendo Hernandez and testified during his trial in 1999), [5] Carlos Lopez (a lifelong friend of both Plaintiffs who was an alibi witness for Plaintiff Rosendo Hernandez and testified during his trial in 1999), [6] Valerie Pinkston (an alibi witness for Plaintiff Rosendo Hernandez and testified at his criminal trial in 1999), and [7] Jennifer Pinkston (an alibi witness for Plaintiff Rosendo Hernandez who signed an affidavit in 2000). The most recent role any of these witnesses played in Plaintiffs' case was 2001. None of them signed affidavits, testified in Plaintiffs' post-conviction hearing, or had any other involvement in the underlying proceedings at any point during the time period of available calls. Indeed, the IDOC call logs do not reflect any calls with any of these individuals during the relevant time period, further confirming that there is no articulable basis by which Defendants included them in this request.[5] As such, any requests for communications in the 23 years since, not somehow moored in Plaintiffs' criminal proceedings or relevant time periods for this case, would be a clear fishing expedition and a gross invasion into Plaintiffs' privacy—particularly for those who are lifelong friends of Plaintiffs.

For other witnesses who did actually testify or provide statements during the post-conviction proceedings, Defendants have made no effort to reasonably tailor their requests to relevant time periods for these witnesses. Instead, they ask for everything IDOC has, without

---

[5] They are presumably still included in the request on the hope that IDOC unearths additional calls from a period between five and ten years ago, or on the hope that there may be written communications with these individuals as requested by Defendants' subpoena (itself pure speculation).

7

limitation to relevant timeframes. This includes: [8] Abraham Gutierrez (signed affidavits in 2000 and 2013 concerning his interactions with Defendant Bemis), [9] Eddie Cabrera (signed an affidavit in 2021 and testified at Plaintiffs' post-conviction hearing in June 2022), *see* Ex. 1 (June 6, 2022 Post-Conviction Hearing Transcript), [10] Fred Rock (signed an affidavit in January 2018 concerning Defendant Miedzianowski's criminal enterprise and his targeting of Plaintiffs, and testified at Plaintiffs' post-conviction hearing in June 2022), *see id.*, [11] Nelson Pacheco (witness to the confession of the true perpetrator, Will Vilaro; signed an affidavit in June 2017; and testified at Plaintiffs' post-conviction hearing in June 2022), *see* Ex. 2 (June 7, 2022 Post-Conviction Hearing Transcript), [12] Desiree Bandomo (witness to the confession of the true perpetrator, Will Vilaro; signed an affidavit in June 2017; and testified at Plaintiffs' post-conviction hearing in June 2022), *see id.*, [13] Jondalyn Fields (lifelong friend of Plaintiff Juan Hernandez, signed an affidavit in January 2018 concerning Defendant Miedzianowski's criminal enterprise, and testified at Plaintiffs' post-conviction hearing in June 2022), *see id.*, [14] Manuel Suastegui (friend of Plaintiff Juan Hernandez, signed affidavit in February 2022, and testified at Plaintiffs' post-conviction hearing in June 2022), *see* Ex. 1*,* and [15] Hector Vazquez (witness to events immediately after the crime, signed an affidavit in 2018, and testified at Plaintiffs' post-conviction hearing in June 2022), *see* Ex. 2. Plaintiffs agree to the production of all calls with these individuals in the thirty days before they signed statements or testified in the post-conviction proceedings, as that is a request that would actually be tailored to relevant time periods, consistent with the caselaw. Defendants have refused this offer. In part, because they know that with the exception of Jondalyn Fields, **none of these individuals appear on Plaintiffs' IDOC Call Logs at all, let alone in time**

**periods around any involvement they had in the proceedings**.[6] And when given the opportunity in their response to actually identify evidence or articulate some basis to believe they had relevant communications in a broader period contained in the IDOC calls, Defendants could offer nothing.

In the case of Jondalyn Fields, Plaintiffs note that she and Plaintiff Juan Hernandez have been friends going back to their childhoods, so there is nothing particularly notable about the fact that she appears on his call logs. In any event, again, Plaintiffs agreed to the production of all calls between her and Juan from the 30 days before she signed an affidavit and before she testified at the post-conviction hearing. This motion was necessitated because Defendants refused that offer and insisted on much more, and so their request should be denied.

Likewise, Defendants also identified [16] Melissa Segura, who wrote an article about Plaintiffs in April of 2018. It is not clear why, in line with case law from this district where courts have granted access to a limited set of narrowly tailored call recordings and communications, requesting records from the 30 days preceding this date would not be sufficient.

By Defendants' own admission, the only connection that some of the witnesses have to this case is that *they are friends with Plaintiffs and are clients of Loevy & Loevy*. Dkt. 132 at 9. Per their response, the only connection [17] Randy Liebech has to Plaintiffs is that he is friends with Juan and also a client of Loevy & Loevy. *Id.* Following this logic, Defendants could request any communications between Juan Hernandez and his friends or family purely by virtue of knowing him or being represented by Plaintiffs' firm. [18] Matt Sopron is similarly situated, and he wrote a letter in support of Plaintiffs' clemency petition in April 2021. To the extent this Court believes that *any* communications between Plaintiffs and this individual is relevant and within a properly

---

[6] Again, Plaintiffs assume the only reason these individuals are still part of Defendants' request is in the hope that additional IDOC calls from older time periods are unearthed, or that there may be an unknown and unidentified set of written communications between these individuals and Plaintiffs.

tailored scope, that time frame should be limited to the 30 days preceding April 2021 when Mr. Sopron wrote his letter of support.

As further evidence that Defendants' request is pure speculation, Defendants stated in their response that they requested all recordings and communications between Plaintiff Juan Hernandez and Alexandria Dones out of a belief she is related to Desiree Bandomo. Dkt. 132 at 8. Defendants cite no evidence or investigative findings to support such a contention, nor are Plaintiffs aware of any such evidence. Furthermore, Alexandria Dones has never signed a statement, testified, or had any involvement in the criminal or post-conviction proceedings at all. In fact, she is not identified on any party's Rule 26(a)(1) disclosures. This is a perfect example of the intrusiveness of Defendants' ill-conceived requests. Ms. Dones was Juan's childhood friend, and at one point, his middle school girlfriend. They stayed friends through his incarceration. Their communications are personal, and intimate, and there is not a shred of evidence that they are likely to contain anything relevant to this case. Finally, Defendants raise allegations from 1998 of witness tampering by Plaintiffs' parents to somehow justify access to any communications with [19] Daniel Violante and others in the 26 years since. As an initial matter, Defendants never made such a claim during the parties' conferrals, and any such accusations are vehemently disputed. They are also irrelevant: despite claims of tampering, Violante testified against Plaintiffs at their criminal trials in 1999 and 2001. The first time he recanted, admitting that he never actually saw the shooters' faces, was **in a statement to Cook County prosecutors** during their investigation during the post-conviction proceedings. Ex. 3 (CCSAO Investigative Report). To the extent Defendants believe Plaintiff Juan Hernandez improperly influenced Mr. Violante to recant at the 2021 post-conviction hearing, they are just wrong. If Defendants want to test that claim, the evidence of any tampering should be in the calls between Juan and Mr. Violante in the thirty days leading up to that hearing, and Plaintiffs

10

have agreed to the production of such calls. The problem for Defendants is that **there are no calls between the two from that timeframe. In fact, the five years of IDOC call logs do not contain a single call between Plaintiffs and Violante at all.** Defendants gloss over this fact. But what it reveals is that Defendants' claims about witness tampering are a red herring. Overbroad and speculative requests that are not tailored to the case at issue should be quashed. As Defendants made no effort to limit or appropriately tailor their requests to IDOC, and rejected Plaintiffs' attempts to do so, these subpoenas should be quashed.

## II. Defendants' response confirms that these subpoenas are not narrowly tailored.

Defendants erroneously claim that they have "dramatically narrowed their request to only communications with witnesses having the *utmost* relevance to this case." Dkt. 132 at 7. As explained above, requesting all recordings and communications of any kind with 26 different individuals, wherein the only limitation is IDOC's retention policy, is in no way a dramatically tailored request—particularly when eight of the individuals are not even on any party's 26(a)(1) disclosure. Under Defendants' definition, witnesses of the utmost relevance include non-disclosed individuals who are plaintiffs in their own wrongful conviction cases, Plaintiffs' attorneys, Plaintiff Juan Hernandez's middle school girlfriend, a Buzzfeed reporter, a CPD whistleblower cop, and individuals whose last engagement in Plaintiffs' criminal or civil case was more than 20 years ago.

More bafflingly, 17 months after fact discovery opened in this case, Defendants state they still are not aware of whether IDOC maintains recordings for 5 or 10 years. *Id.* at 11. Defendants have also openly admitted that they are unaware of how many electronic communications and video recordings IDOC is in possession of—despite claiming they would investigate the latter. They do not even know what the policy is for maintaining the video recordings or electronic

communications. By its very nature, such a request for communications is not narrowly tailored. To the contrary, it is a moving target. And so Defendants' claim that they are merely seeking 377 calls is belied by the fact that they are simultaneously hoping to identify hundreds of additional calls from an earlier five year period, and an unidentified collection of written communications as well.[7]

Per the latter, it is also notable that Defendants' response concedes that they are not aware of any means of identifying how many written communications there are with each witness, or to obtain a production of only those communications. In other words, as it stands Defendants' request would likely require the production of all written communications Plaintiffs have ever had with anyone. Likely for this reason, Plaintiffs' counsel is not aware of any instance in which a Court has granted a subpoena for such written communications, and Defendants do not identify any such instance in their response. This Court should not be the first.

### III. Defendants' request would significantly delay discovery.

In addition to mischaracterizing the conferral between the parties on this dispute, granting Defendants such unfettered access to hundreds or thousands of Plaintiffs' call recordings and other communications would significantly delay discovery. Fact discovery is currently set to close on October 31, 2024. Dkt. 101. Discovery has been ongoing for almost eighteen months. Defendants have already signified their intention to request additional time from this Court, Dkt. 132 at 15, likely due to their significant delay in scheduling depositions they were given permission to proceed first with (over Plaintiffs' objection that they would use that direction to prevent those

---

[7] Defendants also take issue with Plaintiffs' calculation of the number of calls they are requesting by distinguishing between "connected" calls and attempted calls. At the end of the day, Defendants are still requesting more than three hundred calls and 77 hours of conversations between Plaintiffs and their support system. They should not be permitted to expand this request to include an unknown number of additional calls going back prior to 2018. For this reason, this Court should limit the range of recordings at issue to the time period provided on the call log by IDOC.

critical depositions from proceeding). Dkt. 98. That is exactly what has happened. Instead, rather than complete necessary depositions, Defendants have focused their efforts on this fishing expedition.

But even at this eleventh hour, they have not articulated a clear theory of their relevance, or a targeted request that would not place a tremendous burden on Plaintiffs to review so many calls. And if past is prologue, this will not be Defendants' last request for calls; in other cases, Defendants keep coming back to the Court for more calls. Indeed, here, even as Defendants represent that they are seeking just 377 completed calls, they are seeking to unearth additional IDOC calls and logs and have requested additional identifying information from Plaintiffs' Call Logs and other visitation requests. Dkt. 126-1 at 5. Plaintiffs are entitled to their day in court, and Defendants' continued delayed tactics in order to scrounge up some piece of evidence to undercut Plaintiffs' claims should not be entertained and certainly are outweighed by Plaintiffs' privacy interest.[8]

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to quash, or in the alternative, limit Defendants' subpoena to relevant time periods for each witness.

RESPECTFULLY SUBMITTED,

**JUAN HERNANDEZ & ROSENDO HERNANDEZ**

BY:  /s/ Alyssa Martinez
*Attorney for Plaintiffs Hernandez*

---

[8] Defendants argue that undue burden cannot be considered when assessing the intrusiveness of a subpoena and whether to quash that subpoena, but Judge McShain ruled in *Gonzalez v. Guevara, et al.* that such a burden is in fact highly relevant and construed plaintiff's motion to quash as a protective order in denying defendants' request for prison call recordings. *See id.* at Dkt. 170.

13

Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Alyssa Martinez
Quinn Rallins
LOEVY & LOEVY
311 North Aberdeen St., Third Floor
Chicago, IL 60607
(312) 243-5900
alyssa@loevy.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Alyssa Martinez, an attorney, certify that on October 21, 2024, I caused the foregoing document to be filed using the Court's CM/ECF System which affected service upon all counsel of record.

/s/ Alyssa Martinez
*One of Plaintiffs' Attorneys*