IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUAN HERNANDEZ and ROSENDO HERNANDEZ, | ) ) ) | Case No. 23 CV 01737 |
| Plaintiffs, | ) ) | |
| | ) | Hon. Jeremy C. Daniel |
| v. | ) | Magistrate Heather K. McShain |
| | ) | |
| REYNALDO GUEVARA, GERILYNN YANOW, as special representative of the ESTATE OF ERNEST HALVORSEN and ROBERT DEGRAFF, JOSEPH MIEDZIANOWSKI, JOEL BEMIS, ROBERT BIEBEL, and the CITY OF CHICAGO, | ) ) ) ) ) ) ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANTS' MOTION TO COMPEL
DANIEL VIOLANTE TO SIT FOR HIS DEPOSITION**

Defendants Reynaldo Guevara, Geri Lynn Yanow as Special Representative of Ernest Halvorsen (deceased) and Robert DeGraff (deceased), Joseph Miedzianowski, Joel Bemis, Robert Biebel, and the City of Chicago ("Defendants"), by and through their attorneys, respectfully move this Honorable Court compelling Daniel Violante to sit for his deposition. In support thereof, Defendants state as follows:

1.   Plaintiffs Juan and Rosendo Hernandez have brought a twelve-count civil rights complaint against the City of Chicago and six individual Chicago Police Officers—filed on March 21, 2023, (Compl., Dkt. 1), and last amended on September 28, 2023, (1st Am. Compl., Dkt. 58)—for claims arising out of their arrest, prosecution, and conviction for the June 27, 1997, murder of Jorge Gonzalez and attempted murder of Juan Carlos Cruz.

2.   Specifically, Plaintiffs allege they are innocent of the June 27, 1997, shooting and that detectives conspired to frame them for the same. (*See* Dkt. 58.)

3. Daniel Violante has been disclosed by Plaintiffs as a witness in this case with information about "the police investigation that caused Plaintiffs' wrongful prosecution and conviction, witness interviews, lineups, and false documents implicating Plaintiffs in the crime, Plaintiffs' criminal proceedings and the Defendants' misconduct as alleged in the complaint." (*See* Ex. 1, Plaintiffs' 26(a) Discl.) Violante's version of events over what occurred on June 27, 1997, and in the subsequent police investigation has fluctuated over time.

4. Specifically, Daniel Violante, a member of the Maniac Latin Disciples ("MLD") street gang, was with Jorge Gonzalez and his family on June 27, 1997, when Jorge was murdered. On that day, Violante was also shot at before he fled the scene. Violante told police that Plaintiffs were the shooters and identified them in both a photo array and line-up.

5. In 1997 and 1998, Plaintiffs were members of the Spanish Cobras street gang. At the time of Jorge's murder in 1997, the MLDs were a rival gang to, and at war with, the Cobras. At the same time Plaintiffs were incarcerated and awaiting trial for Jorge's murder, a high-ranking MLD, Oscar Soto, was incarcerated for the murder of a Cobra, Miguel Salas. To get charges dropped against Plaintiffs, their parents Esther and Rosendo Sr., conspired with Sheila Soto—the mother of Oscar Soto—to obtain recantations from the witnesses in Plaintiffs' and Soto's cases. As part of this conspiracy, Violante—the only eyewitness to recant his identification of Plaintiffs for the June 27, 1997, shooting—was ordered by two members of his own gang to sign an affidavit stating his initial statements to police were untrue. Violante understood that in exchange for his recantation, recant affidavits would be obtained from the witnesses against Soto.

6. After Cook County State's Attorney's Office discovered that Violante's affidavit was obtained in this scheme, Plaintiffs' parents, Esther and Rosendo Sr., along with a number of members of the Cobras and MLDs, were formally charged with conspiracy, harassing witnesses,

intimidation, obstruction of justice, and subornation of perjury. In those criminal proceedings, Violante renounced the affidavit and testified that his original statement and identifications of Plaintiffs in the shooting of Jorge was true.

7. Then again at Plaintiffs' criminal trials for the murder of Jorge, Violante once more confirmed his original statement to police and his identification of Plaintiffs in the shooting of Jorge as true.

8. Years later, at the direction of Plaintiff, Juan Hernandez, Sam Perez, also a former Cobra and alleged Fed. R. Civ. P. 404(b) witness against Guevara, (*see* Ex. 1, Plaintiffs' 26(a) Discl.), "mami,"[1] "Cieto"[2] and "Flaco"[3] assisted Juan in attempting to contact Violante. (Ex. 2, J. Hernandez IDOC Call Trans.)[4] After these attempts were made, in Plaintiffs' post-conviction proceedings, Violante recanted again, testifying that his identification of Plaintiffs in the June 27, 1997, shooting was false, and that he never saw the faces of the shooters that night.

9. It is under this backdrop that the parties have been attempting to depose Violante for well over a year. Plaintiffs first obtained service on Violante on August 7, 2023, at his then-girlfriend, Stephanie Haddrill's, home. (Ex. 3, Violante Proof of Serv.)

10. Thereafter, the parties briefed the issue of questioning priority at Violante's deposition. (Dkt. 83, 89, 93, 95.) This Court subsequently held on January 5, 2024, that Plaintiffs retained the right to question Violante first at his deposition. (Dkt. 98.)

---

[1] When using the term "mami" it is believed Juan is referring to his mother, Esther.
[2] Cieto is a former Cobra and friend of Plaintiffs', Luis Torres.
[3] Flaco is believed to be Jose Vela, who was a member of the MLDs and a witness against Soto in 1998.
[4] Violante's nickname is "Congo." Perez and Juan discuss on this call how Plaintiffs "found Congo" and just need one witness to flip. They further discuss how Violante was likely the best witness to flip because he had already flipped in 1998. (*See* Ex. 2 at JGS_Hernandez 24852-24859.)

3

11. Since that time, the parties have been attempting to schedule Violante's deposition for well *over a year*. This includes the following attempts to schedule and confirm Violante's deposition:

   a. The parties agreed to and confirmed June 11, 2024, for Violante's deposition. On June 5, just six days prior to Violante's deposition, counsel for Plaintiffs, Anand Swaminathan, wrote to all counsel stating that Violante was no longer available on June 11 and that Violante had requested to re-set his deposition to June 21 or 24.

   b. After a back-and-forth between the parties, it was agreed that Violante's deposition would be re-set to July 15, 2024. However, the night before, on July 14, counsel for Plaintiffs Mr. Swaminathan again wrote to all parties that Violante was cancelling his deposition, and requested his deposition be rescheduled to August 9th. No explanation was provided to Defendants as to why Violante was cancelling his deposition at this time.

   c. Again, after numerous back-and-forth correspondence between the parties, it was agreed that Violante's deposition would proceed on September 6, 2024. Once more, on September 5, the day before his deposition was to proceed, Violante again cancelled his deposition representing that he and members of his family were ill.

   d. The parties then tried to re-set the deposition for October 2024. However, this date too, fell through.

   e. Then, in November 2024, the parties again spent time negotiating a new date for Violante. At that time, the parties agreed on January 20, 2025, to proceed with Violante's deposition. Plaintiffs cancelled this deposition representing that they were unable to confirm the date with Violante.

      f.    Thereafter, after back-and-forth correspondence between the parties, again, the parties agreed on April 3, 2025, for Violante's deposition. On April 1, Plaintiffs again represented that they had been unable to confirm the date with Violante and the deposition was cancelled.

12.    For the very first time on April 4, 2025, Plaintiffs relayed to Defendants that Plaintiffs were unable to find Violante. Plaintiffs informed Defendants that Violante had been residing with Ms. Haddrill, but at some point, during the scheduling of his deposition, he had moved out of Ms. Haddrill's home.

13.    Defendants have no knowledge of when Plaintiffs first lost contact with Violante. Regardless, Defendants at that time agreed to assist in finding Violante and facilitating his deposition.

14.    Defendants' investigators went out on April 8, 2025, in an attempt to track down Violante. Investigators went to two different addresses associated with Violante's information. Neither address appeared to be Violante's current residence.

15.    Defendants' investigators also went out to try to track down Violante's family members. On April 17, 2025, Defendants' investigators went to two different locations where they received no response from Violante's family members. Defendants' investigators left messages at numbers for Alejandro Violante (brother) and Frederico Violante (father). In addition to leaving Alejandro a message, investigators left a business card on the window of a vehicle registered to Alejandro. As of the date of this motion, Defendants have received no response from Violante's family members.

16. Defendants also called and left a message at Violante's last confirmed, known phone number.[5] As of the date of this motion, Defendants have not received a response.

17. Defendants also called Ms. Haddrill and left a message requesting any other contact information known to Ms. Haddrill for Violante. To-date Defendants have not received a response from Ms. Haddrill.

18. At this point in time, Defendants believe that Violante is actively avoiding service and/or avoiding his deposition. Violante was properly served with a subpoena by Plaintiffs' counsel. At one point, Violante was communicating with Plaintiffs' counsel about his deposition. And on more than one occasion, Violante cancelled his deposition the day prior to his deposition. At least one of those times was without explanation (to Defendants.)

19. Violante is well aware that the parties have been seeking to complete his deposition. Yet, to Defendants' knowledge, no party has been able to contact Violante since he moved out of Ms. Haddrill's home either in person or by phone.

20. This Court entered an Order on March 19, 2025, ordering the parties to file any motions to compel regarding depositions by today's date, May 9, 2025. (Dkt. 166.)

21. In light of the above history, and in light of the fact that Plaintiffs have been unable to secure Violante's deposition under their subpoena and have yet to file a motion to enforce their subpoena, Defendants now seek this Court's assistance to compel Violante to appear for his deposition on a date prior to the close of fact discovery.

22. Defendants will make all efforts to serve any such order on Violante, including continuing to pursue additional information for Violante from his family members, as well as serving the order with a new (agreed) deposition subpoena via certified mail and hand delivery on

---

[5] Defendants called the same phone number Violante confirmed under oath was his phone number at Plaintiffs' post-conviction proceedings.

6

all Violante's last known addresses and family members, and forwarding the filings via text message to his last known (confirmed) number.

23. The Seventh Circuit has approved the use of certified mail for this purpose. *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012). Specifically, it has found that leaving a subpoena at the residence where its intended recipient is believed to reside is sufficient where such belief is supported by the evidence and the evidence demonstrates that the intended recipient may be evading service. *York Group Inc. v. Wuxi Taihu Tractor Co.*, 632 F.3d 399, 402 (7th Cir. 2011); *see also W. World Ins. Co. v. Frieden*, Case No. 416-CV-4038-SLD-JEH, 2018 WL 9880232, at *2 (C.D. Ill. Jan. 31, 2018) (finding that service by alternate process complies with Illinois law, 735 ILCS 5/2-203.1, which permits a court to order alternative service by "any manner consistent with due process").

24. Furthermore, service of a contempt filing is also permissible by alternate service. *See Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1355 (Fed. Cir. 1998) ("[I]t is well established that formal service is not required in a contempt proceeding."); *see also Fox v. Manhattan Mechanical Services, LLC*, Case No. 19 CV 238, 2021 WL 3603623, at *3-*4 (N.D. Ill., Aug. 13, 2021) (holding subpoena recipient in contempt for failure to comply with document subpoena after being served via certified mail with copies of the Court's Order directing the subpoena recipient to comply with the subpoena by a date certain and copies of the subpoenas); *Cap. Source Fin., LLC v. Delco Oil, Inc.*, 520 F. Supp. 2d 684, 688 (D. Md. 2007) ("Service of process consisting of a motion seeking contempt sanctions is not necessary to create personal jurisdiction over a party already served with a summons.").

25. Defendants first requested Plaintiffs' position regarding a possible joint motion for Rule to Show Cause as to Violante on April 30. On May 8, counsel for Plaintiffs, Steve Art,

7

indicated that Plaintiffs believed a Rule to Show Cause Motion against Violante was premature, as Violante had not yet missed a subpoenaed deposition date and no party had been able to contact him. On May 9, counsel for the Defendant Officers, Allison Romelfanger, agreed with Mr. Art that a Rule to Show Cause Motion was likely not yet ripe, but that Defendants still intended to file a motion given this Court's set deadline.

WHEREFORE, based on the foregoing, Defendants respectfully request that the Court enter an order compelling Violante to appear for his deposition on a date prior to the close of fact discovery, and award any other such relief this Court deems just and proper.

Date: May 9, 2025                                    Respectfully submitted,

/s/ Allison L. Romelfanger
ALLISON L. ROMELFANGER
Atty No. 6310033
*One of the Attorneys for Defendants Geri Yanow, as Special Representative of Ernest Halvorsen deceased and Robert DeGraff deceased, Robert Biebel and Joel Bemis*

James G. Sotos
Josh M. Engquist
Jeffrey R. Kivetz
Allison L. Romelfanger
Kyle T. Christie
Jeffrey C. Grossich
Kylie R. Todd
Special Assistant Corporation Counsel
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd, #1240A
Chicago, IL 60604
(630) 735-3300
aromelfanger@jsotoslaw.com

/s/ *Theresa Berousek Carney*
Theresa Berousek Carney
*One of the Attorneys for City of Chicago*

Eileen E. Rosen
Theresa Carney
Catherine Barber
Austin Rahe

Lauren Ferrise
Sabrina Scardamaglia
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Floor
Chicago, IL 60606
(312) 494-1000
kkrauchun@rfclaw.com

/s/ Christiane E. Murray
Christiane E. Murray
*One of the Attorneys for Defendant Reynalda Guevara*

Graham P. Miller
Emily E. Schnidt
Timothy P. Scahill
Steven B. Borkan
Whitney N. Hutchinson
Molly Boekeloo
Christiane E. Murray
Andrea F. Checkai
Drew Wycoff
Borkan & Scahill, Ltd
(312)580-1030
20 S. Clark Street, Suite 1700
Chicago, IL 60603
cmurray@borkanscahill.com

/s/ Lisa M. McElroy
Lisa M. McElroy
*One of the Attorneys for Defendant Joseph Miedzianowski*

Brian P. Gainer
Lisa M. McElroy
Johnson & Bell, Ltd
33 W. Monroe, Suite 2700
Chicago, IL 60603
312-372-0770
mcelroyl@jbltd.com

**CERTIFICATE OF SERVICE**

I certify that on May 9, 2025, I electronically filed the foregoing Defendants' Motion to Compel Daniel Violante to Sit for his Deposition with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list:

*Attorneys for Plaintiff*
Steven E. Art
Anand Swaminathan
Sean Starr
Annie D. Prossnitz
Jonathan I. Loevy
Arthur R. Loevy
Daniel J. Stohr
Isabella Aguilar
Margaret Gould
Quinn Rallins
Alyssa Martinez
Valarie Barajas
Lilly Dunkin
Marc Motter
Loevy & Loevy
311 North Aberdeen St, 3rd Fl
(312)243-5900
Chicago, IL 60607
steve@loevy.com
anand@loevy.com
sean@loevy.com
prossnitz@loevy.com
jon@loevy.com
arthur@loevy.com
dan@DanStohr.com
aguilar@loevy.com
gould@loevy.com
rallins@loevy.com
alyssa@loevy.com
valerie@loevy.com
dunkin@loevy.com
motter@loevy.com

*Attorney for Reynaldo Guevara*
Misha Itchhaporia
Graham P. Miller
Emily E. Schnidt
Timothy P. Scahill
Steven B. Borkan
Whitney N. Hutchinson
Molly Boekeloo
Christiane E. Murray
Andrea F. Checkai
Drew Wycoff
Borkan & Scahill, Ltd
(312)580-1030
20 S. Clark Street, Suite 1700
mitchhaporia@borkanscahill.com
gmiller@borkanscahill.com
eschndit@borkanscahill.com
tscahill@borkanscahill.com
sborkan@borkanscahill.com
whutchinson@borkanscahill.com
mboekeloo@borkanscahill.com
cmurray@borkanscahill.com
acheckai@borkanscahill.com
dwycoff@borkanscahill.com

**Attorney for Joseph Miedzianowski**
Brian P. Gainer
Lisa M. McElroy
Johnson & Bell, Ltd
33 W. Monroe, Suite 2700
Chicago, IL 60603
312-372-0770
gainerb@jbltd.com
mcelroyl@jbltd.com
miltonr@jbltd.com
gavrilenkak@jbltd.com

**Attorney for City of Chicago**

Eileen E. Rosen
Theresa Carney
Catherine Barber
Austin Rahe
Andrew Grill
Lauren Ferrise
Kelly A. Krauchun
Sabrina Scardamaglia
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Floor
Chicago, IL 60606
(312)494-1000
erosen@rfclaw.com
tcarney@rfclaw.com
cbarber@rfclaw.com
arahe@rfclaw.com
agrill@rfclaw.com
lferrise@rfclaw.com
kkrauchun@rfclaw.com
sscardamaglia@rfclaw.com

/s/ Allison L. Romelfanger
ALLISON L. ROMELFANGER
*One of the Attorneys for Defendants Geri Yanow, as Special Representative of Ernest Halvorsen deceased and Robert DeGraff deceased, Robert Biebel and Joel Bemis*