EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3    JUAN HERNANDEZ and ROSENDO      )  Case No. 23 CV 1737
      HERNANDEZ,                      )
 4                                    )
                        Plaintiffs,   )
 5                                    )
          vs.                         )
 6                                    )
      REYNALDO GUEVARA, et al.,       )  Chicago, Illinois
 7                                    )  April 9, 2025
                        Defendants.   )  10:00 a.m.
 8
              TRANSCRIPT OF PROCEEDINGS - STATUS HEARING
 9            BEFORE THE HONORABLE JEREMY C. DANIEL

10    APPEARANCES:

11    For the Plaintiffs:      LOEVY & LOEVY
                               BY:  MR. STEVEN E. ART
12                                  MR. ANAND SWAMINATHAN
                               311 N. Aberdeen Street
13                             Chicago, Illinois 60607

14    For the Defendant        BORKAN & SCAHILL, LTD.
 Q    Reynaldo Guevara:        BY:  MS. CHRISTIANE E. MURRAY
15                             20 S. Clark Street
                               Chicago, Illinois 60603
16
      For the Defendants       THE SOTOS LAW FIRM, P.C.
17    Ernest Halverson,        BY:  MS. ALLISON L. ROMELFANGER
      Robert DeGraff, and      141 W. Jackson Boulevard
18    Joel Bemis:              Chicago, Illinois 60604

19    For the Defendant        JOHNSON & BELL, LTD.
      Joseph Miedzianowski:    BY:  MR. BRIAN P. GAINER
20                             33 W. Monroe Street
                               Chicago, Illinois 60603
21
      For the Defendant        ROCK FUSCO & CONNELLY LLC
22    City of Chicago:         BY:  MS. EILEEN E. ROSEN
                               333 W. Wacker Drive
23                             Chicago, Illinois 60606

24                             *  *  *  *  *

25              PROCEEDINGS REPORTED BY STENOTYPE
        TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

1    Court Reporter:  KRISTA BURGESON, CSR, RMR, CRR
              219 S. Dearborn Street

2                Chicago, Illinois 60604
              312-435-5567

3                krista_burgeson@ilnd.uscourts.gov

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                (Proceedings heard in open court:)
 2          THE CLERK:  23 C 1737, Hernandez, et al., versus
 3   Guevara, et al., for status.
 4          MR. SWAMINATHAN:  Good morning, Judge.  Anand
 5   Swaminathan for plaintiffs.
 6          MR. ART:  And Steve Art for the plaintiffs, Your
 7   Honor.
 8          THE COURT:  Good morning.
 9          MS. ROSEN:  Good morning, Your Honor.  Eileen Rosen on
10   behalf of defendant, City of Chicago.
11          MS. ROMELFANGER:  Good morning, Your Honor.  Allison
12   Romelfanger on behalf of Bemis, Biebel, and Geri Lynn Yanow.
13          MS. MURRAY:  Good morning, Your Honor.  Christiane
14   Murray on behalf of defendant, Reynaldo Guevara.
15          MR. GAINER:  Good morning.  Brian Gainer on behalf of
16   Joe Miedzianowski, defendant.
17          THE COURT:  Okay.  Welcome, folks.  Feel free to sit
18   at counsel table.  Hopefully we are not here that long, but you
19   may as well be comfortable while you are here.  Just make sure
20   you are close to a microphone when you need to speak.
21          All right.  So I have received your filings and I have
22   had a chance to review them.  My plan is to just go through
23   them one by one and see where things stand.
24          So the first item that the plaintiffs identified dealt
25   with the IR jackets.  Sounds like the City has not been able to
```

1    identify any electronic versions but hasn't completed its

2    investigation.

3           Plaintiffs -- or so it seems like the parties are on

4    the same page with that, correct?

5           MR. ART:  Correct, Your Honor.

6           THE COURT:  All right.

7           Arrest reports, we have got the '96 reports that the

8    City has identified and agreed to produce on a rolling basis.

9           Does that satisfy Item 2 for the plaintiffs?

10           MR. SWAMINATHAN:  Yes, Judge.

11           THE COURT:  Okay.

12           Item 3 is a bit of a mystery with the missing

13    personnel file.

14           Is any intervention needed from me with regard to the

15    attempts to locate and interview the individual who signed out

16    the file?

17           MS. ROSEN:  Not at this time.  We have the identity of

18    the individual, he is retired.  We are trying to make contact

19    with him.

20           THE COURT:  Okay.

21           But at present it is not in the City's possession so

22    it is not something you can produce?

23           MS. ROSEN:  Correct.

24           We are just trying to figure out why -- the point

25    right now is to figure out why it was signed out, and if the

5

1   person knows where it went.

2          THE COURT:  Right.

3          MS. ROSEN:  But it is not in the City's possession.

4          THE COURT:  I would imagine this is a two-pronged

5   issue, one, the City is just looking at its processes for why

6   this hopefully aberration occurred, and two, if you get

7   information about the responsive documents, you will produce

8   it.

9          MS. ROSEN:  Correct.

10         THE COURT:  5 is other complaint register files.

11         MR. SWAMINATHAN:  I think you skipped 4, Judge.

12         THE COURT:  I did.

13         MR. SWAMINATHAN:  Okay.

14         THE COURT:  The complaint register files.

15         MR. SWAMINATHAN:  It looks like for Number 4 they are

16  indicating that there was a -- that that file does not pertain

17  to Miedzianowski, so obviously if that is the case, then so be

18  it.

19         THE COURT:  Right, the file with the different date of

20  birth, social, and details.  Okay.

21         So 4 is resolved, it sounds like, based on the

22  representation concerning the file with the same name.

23         Then 5 is the other complaint register files.  At

24  present -- well, this is the first time Mr. Woodall comes up,

25  and it sounds like the City is looking for the file identified

1    by the plaintiffs, and then indicates that if they are able to

2    locate it they will review it.  I don't know that there is much

3    to do here other than if the City does locate the file, you

4    should notify the plaintiffs that the file exists, and then if

5    there are debates over its relevance, that can be brought to

6    me.

7              MS. ROSEN:  Yes, Judge.

8              The only point I would like to make is that it is

9    plaintiffs' belief that there is a file about this

10   investigation.

11             THE COURT:  Right.

12             MS. ROSEN:  And to date, the City has not located any

13   CR file that fits the description that plaintiffs are

14   providing, which is there was an investigation into whether or

15   not Miedzianowski, Guevara, and/or Woodall, were involved in

16   the murder of this individual.

17             So those are the parameters I am searching for.

18   Obviously that hasn't shown up in Mr. Miedzianowski's CR files,

19   we have produced those, and they are not in Guevara's.

20             THE COURT:  So the process is to review Woodall's to

21   see if --

22             MS. ROSEN:  If we can identify one there.  And then

23   the decision -- and then it relates to whether or not there is

24   a connection between obviously the -- the City's position is if

25   there is no connection between Woodall, Miedzianowski, and

1   Guevara, Woodall is not a defendant here, and then we would

2   have that conversation, I suppose, if there is such a CR.

3           THE COURT:  Right.

4           And I am saying if you identify one that is

5   potentially the one that the plaintiffs have identified, you

6   should notify them that, I found something, but I disagree that

7   it is relevant or related, and then after you folks have that

8   conversation I am happy to weigh in, if I need to.

9           MS. ROSEN:  Understood.

10          MR. SWAMINATHAN:  And I think from plaintiffs'

11  perspective I think the idea is if they are looking at

12  Woodall's collection of CRs, however many that is, that is

13  obviously the place to start and see if there is something

14  there.  Then I think the second idea is there was a substantial

15  criminal prosecution of Mr. Woodall, and is there some location

16  that -- or just to confirm, are we asking at Internal Affairs,

17  or whatever the appropriate place is, to insure that separate

18  and apart from Woodall's CR files specifically, is there some

19  place in which you are retaining information about large

20  criminal investigations, and if so, we would need to know that

21  you at least made an attempt to identify other locations that

22  would reasonably be expected to search, and if it is not there,

23  okay.

24          MS. ROSEN:  To that point, Judge, Woodall was charged

25  Federally, so we have sort of looped back to where we began

1   with Mr. Miedzianowski six months ago, which is that the

2   records that the Chicago Police Department related to any

3   investigation here, and with respect to either

4   Mr. Miedzianowski or Mr. Woodall, would be limited to some sort

5   of administrative investigation, because they did not

6   criminally charge either Mr. Miedzianowski or Mr. Woodall, and

7   the information is -- so there is nowhere for the City to look

8   for criminal prosecution documents, that would be with the

9   Feds.

10          THE COURT:  Right.  And it seems to me that the scope

11  of this request is related to complaint register files.

12          Are plaintiffs saying it is broader than that?

13          MR. SWAMINATHAN:  Well, I think this is a little bit

14  more into Number 9, and I think our view -- because that will

15  talk about the broader set of documents involving Mr. Woodall

16  as related to his involvement in any criminal conspiracy with

17  Guevara and Miedzianowski, including the Garza murder.

18          But I think what we are saying is, generally speaking,

19  we don't know how the City stores these documents, right?  If

20  the complaint register files that would be related to the Garza

21  murder would be in the Woodall collection of CR files, that

22  would be a reasonable place to certainly look.

23          If they would be in a larger repository for the

24  criminal investigations or some internal investigations into

25  Mr. Woodall and the five others who are part of that

1  prosecution, we would want to know that some effort was made to

2  identify that, right?  So that is really what we are saying.

3  Because at the end of the day, we are in the dark.

4          Someone could say, well, I will check the Woodall CR

5  files, but has someone actually inquired to say, well, in the

6  case of a multi-officer prosecution and internal investigation,

7  those would actually be housed in this other place.  Right?  We

8  just need to understand those inquiries have been made.

9          THE COURT:  Have you not deposed the custodian of

10  records to ask how these procedures are conducted with the

11  City?

12          MR. ART:  On that point, Your Honor, our Rule 30(b)(6)

13  depositions in this Guevara case and all of the others are

14  upcoming, so we will ask questions about where that sort of

15  thing is stored certainly in those depositions.  We are not

16  confident based on past depositions on this issue that we will

17  get an answer that somebody knows how an Internal Affairs

18  investigation that is this unique is stored in the City

19  records or transmitted to the Federal Government in a case like

20  this.

21          THE COURT:  And if I understand Ms. Rosen, her point

22  is that the City didn't conduct a criminal investigation.  Have

23  you ask the City if there was an Internal Affairs

24  investigation?

25          MR. ART:  We know that there were internal affairs

1    investigations from what has been produced already, at least as

2    to Mr. Miedzianowski's conduct that became the issue of the

3    criminal Federal prosecution.

4           Mr. Woodall, it appears, was investigated some --

5    about the same conspiracy sometime later.  It is our impression

6    from the files that we have already that Woodall was also

7    investigated at least initially by Internal Affairs in the

8    Chicago Police Department, but we don't see the records of that

9    investigation, and that is why we put requests Number 5 and 9

10    to the City.

11           MS. ROSEN:  Judge, if I could address some of those

12    points.

13           THE COURT:  Yes.

14           MS. ROSEN:  So what we have produced is

15    Mr. Miedzianowski's CR files.  Contained within that CR file is

16    the principal investigation, Internal Affairs investigation,

17    into the conduct that ultimately led to his criminal

18    prosecution.  That turned into an investigation that the Feds

19    took over.  It seemed like it began -- based on the CR, it

20    began as a complaint that was handled internally, and then once

21    it became clear to Internal Affairs that there was criminal

22    conduct implicated, the Feds were brought in, and then the

23    Federal Government took over the prosecution.

24           That CR file is something like 8,000 pages long, we

25    have talked about it before, it has been produced, and it

1 obviously shows the progression to some degree of the criminal

2 prosecution. There is nothing in that CR that indicates any

3 tie to the Garza murder, which is what this is focused on.

4 Then we have produced other CRs, and within those

5 there is a CR that includes allegations against both

6 Mr. Miedzianowski and Mr. Woodall, and it is within that CR

7 that there is a reference to a drug deal, and Mr. Miedzianowski

8 and Mr. Woodall potentially stealing drugs from an impounded

9 car in relation to an arrest. And then the individual's drugs

10 whose they were ends up dead a few weeks later.

11 So in the context of that investigation there is

12 simply a reference to the murder. I don't see anything in that

13 investigation that suggests that either CPD or the Federal

14 Government thought that Miedzianowski or Woodall were involved

15 in the murder, or Guevara, who quite frankly, is not named in

16 any of these CRs.

17 THE COURT: When you are referring to the murder, are

18 we referring to the Garza murder?

19 MS. ROSEN: Correct, the Garza murder.

20 And the Garza murder is, as I understand it, still an

21 unsolved murder. We have through these discussions ordered the

22 investigative file for that to determine and review whether or

23 not there are these connections between the Garza murder and

24 anything at all to do with this case, the underlying case,

25 Mr. Miedzianowski and Mr. Guevara. We don't have it yet.

1    My understanding is plaintiffs have also FOIA'd that

2    file, I don't believe they have it, or they haven't told us.

3    And we are waiting for those documents to see if there is a

4    connection.

5    Plaintiffs are saying there is a connection.  The only

6    connection to my understanding is based on testimony of an

7    individual named Fred Rock who was criminally charged and

8    convicted with Mr. Miedzianowski during that conspiracy,

9    prosecution, and at some point along the way he says,

10   Miedzianowski told him that they did -- they were either

11   involved in the murder or involved in the cover up of this

12   murder.

13   So as far as I can tell that seems to be the only

14   connection, although I will say it seems like Mr. Rock has

15   testified most recently that he shared all of this information

16   with AUSA Nettles, who was in charge of the Miedzianowski

17   prosecution, and I guess we will talk about that a little bit

18   later as we get through the list.

19   So we are obviously like investigating these points,

20   but to the extent that our investigation so far doesn't show a

21   tie or a connection between the Garza murder and any defendant

22   in this case, period, so far.

23   So we are obviously continuing to look where we can

24   look, and we will exhaust that, but that is -- that sort of

25   response to what plaintiff's counsel was saying, and also I

1    will say they also seem to believe that the Miedzianowski

2    prosecution and the Woodall prosecution are connected, and

3    those are as best as I can tell from reviewing the docket, the

4    criminal docket, they are different prosecutions, separated by

5    four years involving different criminal defendants.

6          Certainly Mr. Woodall and Mr. Miedzianowski worked

7    together, that is true, but I do not see any connection just by

8    looking at the docket, which is all I have available to me, a

9    connection between the two prosecutions.

10         THE COURT:  Okay.

11         So continue your search and review.  You understand

12   the plaintiffs' concerns.  If this issue comes back up I will

13   simply ask, where did you look, why did you look there, and I

14   suspect at the end of that path there will either be a

15   production or letter stating that you found nothing.

16         Garza murder investigation files, it sounds like the

17   City has agreed to turn that file over.

18         Records division and investigative files, this is

19   Number 7.  The City will request and produce them, if they have

20   them.

21         Item 8, documents related to the investigation.  The

22   City is looking to see if it has any additional documents

23   related to the investigation of Mr. Miedzianowski.

24         MR. SWAMINATHAN:  And our understanding on Number 8,

25   Judge, from our conferrals with the City, is what they have

1    said -- it is a related issue, and what we have said is, you

2    produced a CR file to us, is there anything else out there

3    other than a Miedzianowski file?  Do you have some internal

4    investigations and documents, and our understanding from the

5    City is they have asked that questions and inquired with folks

6    at the City and were told whatever is out there would be in the

7    CR file they produced.  So if that is the answer, so be it.

8    And you know, whatever else you think is out there related to

9    that investigation, you have to ask the Feds, right?  So we

10   understand that to be the answer they are giving us.  And I

11   think with that we have to be satisfied.

12          THE COURT:  Right, and that is the understanding with

13   the caveat that the City says they will take a look at some

14   other places and see what, if anything, they have, which seems

15   to be going -- looking beyond where they would normally would

16   look, which would be the CR file.

17          MS. ROSEN:  Correct, Judge.

18          You know, I have talked to my client and they have

19   told me this is what they have, based on a myriad of different

20   things that have occurred over the last few years.  I am asking

21   them to redouble down their efforts with an understanding that

22   once they tell me they have completed the search, they will

23   have to say they completed the search, and if something -- if

24   that is inaccurate, then there will be problems.

25          So I am just making sure they understand that and

1    exhaust all of the avenues that are available.

2            THE COURT:  Okay.

3            So we get to Item 9, and I will start by asking

4    plaintiffs how Woodall is relevant?

5            MR. ART:  So, in the Miedzianowski criminal

6    conspiracy, Woodall is a co-conspirator, as documented in the

7    Chicago Police Department's own CR files.  So they participate

8    together in the sort of quintessential ripping off a drug

9    dealer in the Garza case and selling those drugs back on the

10   street.  That is the subject matter of the CR that has been

11   produced already, that those two were conspiring together.

12           In addition to that, Fred Rock has testified in this

13   case not only that Miedzianowski told him about involvement in

14   the Garza murder, but that Woodall and Guevara picked him up in

15   a car, told him the facts of the murder, took him to an

16   interview with the FBI, and told him not to tell the FBI

17   anything about the murder.

18           So we think that on the facts developed in this case

19   already, we have a very tight connection between Woodall's

20   prosecution and Miedzianowski's prosecution and Guevara's

21   participation in both.

22           We don't view the two Federal criminal prosecutions as

23   unrelated, and I don't think the Federal Government did at all.

24   The misconduct alleged against Woodall was alleged later in

25   time, but it concerned the exact same drug conspiracy that

1    Miedzianowski had been convicted of and Woodall pleaded to that

2    and I think that the documents in the Federal case show that

3    connection between those two cases including the documents that

4    were filed by the Federal Government at sentencing.

5        I think that -- I think that what we are looking for

6    in these requests is not everything that the City of Chicago

7    has related to Mr. Woodall, it is everything related to

8    Mr. Woodall that references Miedzianowski or Guevara, we have

9    agreed to limit it to that set of things, and everything

10   relating to Woodall and the Garza murder.

11       So we are not trying to do wide ranging discovery

12   here, we are drying to discover very particular Woodall

13   documents that relate to our case.

14       THE COURT:  Okay.

15       Any response to that from any of the defendants?

16       MR. GAINER:  On behalf of Officer Miedzianowski, or

17   Joe Miedzianowski, I don't have a response to that.  I think

18   that accurately characterizes how Mr. Rock testified.  I think

19   what you didn't hear, Judge, is that there is any connection

20   between Woodall or -- any connection between Woodall and the

21   Hernandez brothers, who are the plaintiffs in this case.

22       I understand that Miedzianowski is a defendant and

23   that there is one witness in this case, Fred Rock, who ties him

24   loosely to the Hernandez brothers, or one of the Hernandez

25   brothers, but there is no one who ties Woodall to them, and it

1    seems like in my view the quintessential fishing expedition to

2    try to expand this to another Chicago Police Officer who was

3    convicted of a Federal crime when there really isn't anything

4    that would loop him into this particular case.

5         THE COURT:  Plaintiffs' counsel, remind me in your

6    recitation of the history, you mentioned two folks in a car

7    describing a murder to Rock.  Who were the two people?

8         MR. ART:  Woodall and Guevara.

9         And our contention, Your Honor, is that literally at

10   the same time that the defendants in this case are prosecuting

11   our clients as retaliation for what they perceive, the

12   defendants perceive, to be a drug rip-off deal gone wrong, they

13   are also murdering another drug dealer for a perceived drug

14   deal gone wrong, and they are covering up all of this

15   misconduct when the FBI comes in to investigate the misconduct

16   of these Chicago Police Officers.

17        To say that they are unrelated -- I mean, they are

18   part of the same criminal conspiracy than then gets Federally

19   prosecuted and results in a life sentence, and guilty pleas

20   from other Chicago Police Officers, and all of that is

21   happening at the same moment that our clients are being accused

22   of a crime they didn't commit as retaliation, prosecuted and

23   convicted.

24        So the notion that there is some separation here is

25   just not supported by the factual record, and we are not making

1   suppositions based on what we learned in discovery in a civil

2   case, we are talking about a sprawling Federal investigation

3   and multiple convictions that have been upheld for years.

4           So the idea that these are disconnected does not hold

5   any water.

6           THE COURT:  Whose murder were your clients convicted

7   of?

8           MR. SWAMINATHAN:  A man named Jorge Gonzalez, who we

9   don't know to have any connection to the Garza murder.

10          I think the other important aspect of this is quite

11  understandably once they have heard Mr. Rock's testimony and

12  his deposition about Woodall and Guevara and Miedzianowski and

13  all this stuff, they are of course going out to do all kinds of

14  things to develop impeachment evidence and suggest that

15  Mr. Rock's story is crazy and made up, whether that is with

16  regard to Mr. Woodall's involvement, whether that is with

17  regard to the Garza murder, whether that is with regard to Mr.

18  Miedzianowski and Guevara's plan to frame Juan Hernandez, and

19  they say, oh, they are trying to pursue every avenue, this came

20  up so much later, you didn't bring this up for many, many

21  years, all kinds of attacks.  So let's see if we can find other

22  witnesses to say this did not happen, all understandable

23  attempts to develop impeachment evidence as to Mr. Rock's

24  testimony across all these issues.

25          I think what we are saying is, of course they are

1    entitled to do that type of discovery, to try to develop

2    impeachment evidence, but if you are going to do that, we are

3    just as well entitled not only based on direct relevance but

4    based on our ability to develop corroborating evidence, right,

5    as to this witness' testimony, because he is obviously one of

6    the most critical witnesses, and his testimony is the most

7    critical testimony in the case.

8           If the jury credits his testimony, then the plan was

9    to frame these men.  Then everything, including the

10   identifications of our clients by the eyewitnesses, are called

11   into question, right, if there has been a plan all along to

12   frame our clients for the murder.

13          So I think the relevance of Fred Rock is criticality

14   to the case.  Everybody's opinions about his credibility are

15   very, very important, that is why ultimately the subject matter

16   is critical.

17          THE COURT:  So obtaining files related to Woodall in

18   your view would help bolster Rock's credibility?

19          MR. SWAMINATHAN:  Unquestionably.

20          MR. ART:  I will just add to that, Your Honor, that we

21   have discussed with the City that we are taking Woodall's

22   deposition in this case.  We are going to be asking him

23   questions about the subject matter.  There have been no

24   objections to producing him for that deposition.  There is some

25   delay in scheduling that deposition related to health issues.

1  But the idea that we would be permitted to ask him these

2  questions in the deposition but not discover the documents, the

3  narrow set of documents relevant to that deposition, we don't

4  think has a basis under the Federal Rules.

5          MS. ROSEN:  So if I could just address that for a

6  second.

7          The City has already agreed to obtain the Garza murder

8  file and produce it so we can all see what if any evidence is

9  in there that supports any of this.

10         The City has also already agreed to look for any kind

11 of complaint related to -- administrative complaint, CR,

12 related to allegations that Mr. Woodall was involved in the

13 Garza murder.

14         To go beyond that at this point seems like too far

15 afield from what it is that plaintiffs are trying to prove

16 here.  Getting all of the other things that they want, or

17 having the City investigate, seems too far afield, based on the

18 fact that the City has already agreed, based on what their

19 proffer is here, about what they believe to be the connection,

20 which is based solely on the testimony of Fred Rock, and you

21 know, we can debate his credibility, but discrediting the

22 testimony as evidence in the case, the City is agreeing to do

23 that.

24         The City doesn't believe that it should be required to

25 do more than that, certainly not until we get these documents

1   and see if there is anything there.

2          THE COURT:  Okay.

3          So what I am having a tough time understanding is if

4   the City is turning over the other complaint register files, if

5   any, related to the Garza murder, and the Garza murder file, as

6   well as looking to see if there -- as part of the complaint

7   register files whether there were any additional Internal

8   Affairs documents tied to the misconduct by the officers, I am

9   not sure what more plaintiffs are seeking.

10         MR. ART:  The only question -- agreed, Your Honor.

11         The only question we have is in these two narrowed

12   categories, does the City have evidence that Woodall was

13   involved in the Miedzianowski/Guevara conspiracy, that is one.

14   And two, does the City have evidence that Woodall was involved

15   in the Garza murder, that is two.  Does the City have anything

16   else or anywhere else it might search?  If the City's

17   representation is, all of the information we have on that is in

18   the Garza murder file, is in complaint register files, and we

19   will double check the Internal Affairs files, but those are the

20   only places where that information would be stored, then we are

21   satisfied.  The issue for us is we don't know, as my colleague

22   said before, whether there are other repositories of

23   information relating to the investigation of these officers.

24         THE COURT:  Are there?

25         MS. ROSEN:  To my knowledge, no.  It would only be --

1   there is the -- I mean, theoretically, I suppose we could look

2   at this investigative file related to the homicide

3   investigation of Mr. Garza, and theoretically, I suppose there

4   could be information in those documents that none of us have

5   that tie Miedzianowski/Woodall or anybody else, to the murder.

6          The handful of documents that we all already have,

7   which stem from an attachment to a CR file that are a handful

8   of reports, do not suggest in any way, shape, or form, that the

9   criminal investigation was leading to police officers.

10         So obviously once we get that file we -- it will

11  either tell us more about this issue or shut the door on this

12  issue.

13         With respect to the CR, if there is such a CR where

14  there was an administrative investigation into allegations that

15  Chicago Police Officers were in any way, shape, or form,

16  involved in the murder or a cover up of the murder that we have

17  agreed to investigate, and once that -- once that is done, we

18  will presumably know one way or the other if it exists or not.

19  I haven't seen it yet, that doesn't mean they have finished

20  looking, I just haven't seen any CR that ties an administrative

21  investigation to any Chicago Police Officer in connection with

22  the murder.

23         But beyond -- and then beyond that, I would obviously

24  confirm that there wouldn't be any other repositories, my

25  understanding is there wouldn't be any other repositories.  I

1   will reconfirm that.  And then that should theoretically end

2   the inquiry.

3           What Mr. Art started that with though was, any and all

4   documents that the City might have related to a connection

5   between Mr. Miedzianowski and Mr. Woodall, and that is sort of

6   where I get tripped up, because that seems particularly

7   overbroad.

8           Obviously we have already produced as I have said the

9   CR files related to Mr. Miedzianowski.  If Mr. Woodall were

10  also an accused in connection with any of those complaints, his

11  name would show up in those CRs.  So to the extent that that

12  exists, and quite frankly I haven't mined through all of them

13  for that connection, then plaintiffs have it.

14          To the extent that the Federal Government made some

15  connection between Mr. Miedzianowski and Mr. Woodall, that

16  question obviously should be put to the Federal Government.

17          And then with respect to any and all investigations

18  the City did related to Mr. Woodall, I have admittedly not done

19  that to determine what it is exactly -- we have some of those

20  files relatedly, but I have not asked the City to provide me

21  with the genesis to the extent that the City has it for the

22  Woodall prosecution, because to me, Mr. Woodall is not a

23  defendant in the case, it was not a discovery request that was

24  tendered originally in connection with the case, and this is

25  sort of like these off shoots of the discovery that has been

24

1   ongoing.  And while I agree that some of this stuff is worth

2   investigating, I don't understand why it is that we should be

3   looking for what the genesis of the Woodall prosecution was

4   that happened four years later.

5          Mr. Hernandez and Mr. Hernandez, both plaintiffs, do

6   not make allegations against Mr. Woodall, so whether or not

7   Miedzianowski and Woodall were involved in the same criminal

8   conspiracy or not, I don't understand why we need to go down

9   the path now of doing this extensive investigation into

10  Mr. Woodall.

11         MR. ART:  Your Honor, the investigation is not

12  extensive, and in the letter we submitted to the Court, in

13  request Number 9, we have said that the request is for

14  documents pertaining to conspiracy allegations against Woodall

15  and his involvement in the Miedzianowski conspiracy that led to

16  both of their prosecutions.

17         The City has just represented on the record that it

18  hasn't even asked the City to provide it documents that explain

19  the origin of Woodall's investigation and prosecution, yet at

20  the same time, the City is representing today to this Court

21  that there is no connection between the two cases.

22         Now, it seems impossible that they can represent there

23  is no connection between the two cases when they have not even

24  asked their client for the documents that would establish the

25  presence or absence of such a connection.

1      THE COURT:  It is not quite accurate.

2      The City can correct me if I am wrong, but my

3  understanding was more akin to it depends on how you look at

4  it.

5      The City's view is we started with the Miedzianowski

6  investigation and looked for any references to Woodall within

7  it and followed those paths, and because of the break in time,

8  the later investigation, if any, of Woodall, they haven't

9  looked at.

10      Is that a more precise --

11      MS. ROSEN:  Yes, yes.

12      THE COURT:  And so it is not as if they haven't done

13  anything.

14      MR. ART:  Understood.

15      THE COURT:  They started with Miedzianowski, because

16  this case relates to him, and so --

17      MR. SWAMINATHAN:  Judge, I think that is quite fair,

18  and I think the idea that it is not about accusing someone

19  saying, you should have done XYZ, understood, but where we are

20  now, based on -- and by the way, we have an answer that does

21  exist in the record, Fred Rock says, I am the person during the

22  course of the Miedzianowski prosecution who told the United

23  States Attorneys about Mr. Woodall's involvement in this as

24  well, and then he became part of this prosecution as well, or a

25  subsequent prosecution.  So there are answers that exist in the

1    record.

2        I think it is reasonable to say at this stage --

3    understood, you asked about Miedzianowski first to the City, we

4    get it.  Where we are today is in the context of all the

5    discussion we are having about Mr. Woodall's CR, connections to

6    this case, et cetera, it is reasonable to go back to the City

7    and say, as we are doing this search for relevant repositories,

8    CRs or otherwise, hey, what is the genesis of the Woodall

9    prosecution or Woodall investigation internally?  Because even

10   getting an answer to that question may be related to the answer

11   to the questions we have been talking about earlier, which is

12   what is the repository in which this stuff would exist.  Is it

13   a CR?  Or is it something else?

14       So I think what we are saying now, and I don't know

15   that we are having any disagreement, the City is saying, okay,

16   we understand, we are going to go ask about the genesis of the

17   Woodall investigation as part of our effort to understand, is

18   the CR all that there is out there, is the Garza investigation

19   all that is out there, and come back to us on these questions

20   it is already answering, that seems like a reasonable thing to

21   do.  Ask the question and let's get to the bottom of this as to

22   whether or not there is anything else out there.  That is all

23   we are asking.

24       THE COURT:  Well, the City's response is a bit more.

25   Before they commit to anything, they want to know what the

1    basis is for the additional work that they would have to do,

2    which leads me to ask, what request are you relying on to

3    support this discovery of Woodall's investigation?

4              MR. ART:  Our position, Your Honor, is that Woodall is

5    a key player in the Miedzianowski drug conspiracy that we have

6    been asking about since the beginning of the case, and it was

7    the subject of our motion to compel.  The City's position was,

8    he wasn't involved, it was something else.  The dispute about

9    the connection is -- it is what the discovery is about.

10             To the extent that Woodall was involved in this

11   Miedzianowski prosecution that we have been talking about all

12   along, participated in it, participated with Guevara in it,

13   told witnesses to lie to the FBI, we think that discovery is

14   relevant to the defendants in our case, not to some side issue

15   we are exploring with Mr. Woodall.

16             THE COURT:  Okay.

17             I think it reasonable for the City to look at the

18   origins of the Woodall investigation and if there is a break

19   between that investigation and the Miedzianowski investigation,

20   we are done, in that looking at the motion to compel, docket

21   Entry 121, Page 3, it is phrased in the context of the

22   Miedzianowski investigation, criminal conduct by defendant

23   Miedzianowski or any other officers who participated in his

24   criminal enterprise.

25             And so the City's concerns that -- regarding Mission

1    Creek here are well taken, and so if there is that break

2    between the two investigations, meaning there was an

3    independent basis of the origin of the Woodall investigation,

4    then that brings this one to a close.

5           Anything else for me to address on 9?

6           MS. ROSEN:  Not from the City.

7           THE COURT:  All right.

8           10 refers to cold case investigations.  The City is

9    continuing to look.

10          11 is a confirmation that the City will provide.

11          12 deals with Touhy requests.  When was the subpoena

12   issued, plaintiffs?

13          MR. ART:  We sent a subpoena and a Touhy request in

14   December, 2024, to the U.S. Attorney's Office and the FBI.  We

15   did not provide notice to the defendants of that.  We did not

16   understand that the Touhy process required notice.

17          The defendants have been engaged in a separate Touhy

18   process with the U.S. Attorney's Office regarding a deposition

19   of AUSA Nettles.

20          We have since provided notice in all 20 pending

21   Guevara civil cases that the request has been made to the U.S.

22   Attorney's Office and to the FBI for limited documents relating

23   to Miedzianowski, Guevara, and the Garza murder, as well as the

24   testimony of Fred Rock.

25          We have been talking with AUSA Hale about that.  They

1    have not produced any documents yet.  They have not committed

2    to produce any documents yet.  But he informed us yesterday

3    that the FBI is conducting a search based on our narrowed

4    requests, and then we will have further conversation with him,

5    not just in this case, but across all the pending civil cases.

6            Our intention, as we described to the United States,

7    is to the extent they have documents they are willing to

8    produce, we will use them across all these cases and we won't

9    be coming back to them in multiple cases.

10           MS. ROMELFANGER:  May I address just one thing, Your

11   Honor?

12           THE COURT:  Yes.

13           MS. ROMELFANGER:  The notice that we got, the

14   subpoenas were not issued in December of 2024.  The Touhy

15   letters that we got were issued in December of 2024, but the

16   subsequent subpoenas that were sent out were not sent out until

17   January of 2025, which was past this Court's order of when

18   subpoenas were allowed to be issued.

19           Rule 45 does require that we get notice before those

20   subpoenas were issued and we were not given notice before those

21   subpoenas were issued.

22           MR. ART:  Your Honor, our understanding from the U.S.

23   Attorney's Office is they don't recognize the subpoenas as

24   legitimate requests for documents.  We sent them Touhy letters

25   in December.  It is not -- I do not have the subpoenas from

1  December in front of me, but the Touhy letters were certainly

2  issued December, 2024.

3        And I should say, Your Honor, we were told by the

4  defendants in our case all along, and you have heard it today,

5  those are documents that the City gave to the U.S. Attorney's

6  Office.  Those are documents that would be in the possession of

7  the Federal Government.  So this is merely an effort to obtain

8  the documents that all parties acknowledge exist but have been

9  provided to the Federal Government.

10        We think that we have done that in a timely way.  We

11  have worked with the government to be very, very narrow in our

12  requests and our understanding is that the search is now on

13  going, and that we will have documents shortly, if the

14  government agrees to provide them.

15        THE COURT:  Right.

16        The concern I have is overtiming.  I set a firm

17  deadline to issue written discovery, including subpoenas, and I

18  have to abide by that.

19        Did you attach the letters and the subpoenas to the

20  letter that you submitted?

21        MR. ART:  Did we -- I am not understanding the Court's

22  question.

23        Did we attach the letter --

24        THE COURT:  In the letter that you submitted to the

25  Court concerning the discovery disputes -- or let me ask a

1    slightly better question.

2         Do I have copies of these letters, Touhy letters, and

3    Touhy related subpoenas?

4         MR. ART:  You do not, Your Honor.

5         I can provide them if the Court wishes.

6         THE COURT:  Did the defendants attach them to your

7    filing?

8         MS. ROSEN:  We did not, Judge, unfortunately.

9         THE COURT:  So fortunately, I never had to deal with

10   Touhy letters when I was in the U.S. Attorney's Office, so I

11   don't know what the Office's policy is, but you need to

12   substantiate your claim that the U.S. Attorney's Office here

13   treats the letter as equivalent to the subpoena.

14        That pre-supposes that I am going to overlook the

15   violation of Rule 45 in the failure to provide notice to the

16   defendants, but while that is technically accurate, plaintiffs'

17   point is well taken here that it was no surprise that parties

18   would request records from the government related to the

19   Miedzianowski investigation and criminal case.

20        And so resolution of 12 really hinges on whether you

21   can substantiate your claim that the U.S. Attorney's Office

22   treats the letter the same as it would a subpoena.

23        MR. SWAMINATHAN:  Should we provide maybe by tomorrow

24   a one- to two-page supplemental letter to you regarding your

25   question of the timing and this issue you have raised?

1        THE COURT:  The timing doesn't seem to be in dispute,

2  December 19th.

3        Do the defendants dispute that they sent these letters

4  on December 19th?

5        MS. ROMELFANGER:  So, Judge, we concede they did send

6  the letters on December 19th.  The subpoenas were not sent

7  until January.

8        THE COURT:  Right.  And you didn't get a copy of

9  either when they were sent?

10        MS. ROMELFANGER:  Correct, like a week or so ago we

11  got the notice.

12        THE COURT:  So the timing isn't in dispute.

13        I think defendant's view is that you should have

14  subpoenaed these records.

15        My view is that if the U.S. Attorney's Office comes

16  back and says, when we get the letter we start the process and

17  we will start turning over the documents, then that I view as a

18  proper -- an actionable discovery request because the party

19  that receives it would take action.

20        If they come back and say, no, we don't do anything

21  until we get the subpoena, or if the letter is just the heads

22  up and a placeholder, but it is not a substitute for a subpoena

23  then you are out of luck and you are out of time, and I will

24  shut that process down as untimely.

25        MR. ART:  Understand, Your Honor.

1          Should we submit that tomorrow?  We can do a one-page

2    letter with authority.

3          THE COURT:  I don't know what it is going to involve.

4    I assume you have got to call someone at the U.S. Attorney's

5    Office and have them -- I don't know if they want to do an

6    affidavit, if they want to do a submission on their own, so I

7    don't know what it will look like, but you should start that

8    process today and get it in as soon as you are able to.  But

9    that is where my ruling is going to hinge.  If that starts the

10   process from the U.S. Attorney's view, then the process will

11   continue.  If it is the subpoenas that start the process, then

12   you are too late.

13         MR. ART:  Very good, Judge.

14         MS. ROMELFANGER:  And Your Honor, can I say one more

15   thing for the record, please?

16         THE COURT:  Yes.

17         MS. ROMELFANGER:  The subpoenas that were sent by the

18   plaintiffs and the Touhy letters were much broader than just

19   the Miedzianowski request.  My understanding from Mr. Art is

20   that has been limited but it included things like, any case

21   where my clients like Halverson and Bemis have acted as a

22   confidential informant which I think is much broader than the

23   Miedzianowski issue.

24         So that was one of the concerns that I raised with the

25   plaintiffs, is that it was much broader than this specific

1   issue in this case, but given Mr. Art's representation that

2   they are narrowing it, then I am fine with that, but to the

3   extent that documents are produced or requested outside of

4   that, then we would still have an issue with regards to the

5   scope of what their actual requests were that we didn't get

6   notice of until a couple weeks ago.

7           THE COURT:  And your theory would be that you could

8   move to quash because --

9           MS. ROMELFANGER:  Correct, Judge, because it is

10  overbroad.

11          Like for instance, any case at all where Mr. Bemis was

12  a confidential informant, I don't find that to be narrow enough

13  to be relevant to the issues of this specific case.

14          THE COURT:  Right.  I am just looking for the

15  rationale in which your clients would have standing to oppose a

16  subpoena issued to someone else.  I am not saying it can't be

17  done, I just want you to provide me with the rationale as to

18  why I should as to why I should do it in this case.

19          MS. ROMELFANGER:  Sure.  And I think one of the

20  attorneys too, Judge, would be privacy and safety issues

21  considering if he did act as a confidential informant in

22  another case, I think that his concern could be privacy and

23  safety in a case like that, if it is not related to this

24  underlying case.

25          THE COURT:  Response from plaintiffs?

1          MR. ART:  Your Honor, I think the procedural point is

2     well taken, but I think I can short circuit it.

3          We provided the defendants yesterday with the exact

4     language that we provided the government narrowing these

5     requests so that they don't include the information that

6     counsel is talking about.

7          THE COURT:  Okay.

8          MR. ART:  We think they are very narrowly focused on

9     the case, and those are the requests that we are pursuing with

10    the government.

11         THE COURT:  Okay.

12         So I will look for the supplemental filing concerning

13    the U.S. Attorney's Office practices with respect to Touhy

14    requests and the format that they expect to receive them in.

15         And then Number 13 is the interrogatory to defendant

16    Guevara.

17         MR. SWAMINATHAN:  I might be able to short circuit

18    that one, Your Honor.

19         I think in light of your comments earlier, you know,

20    certainly you have indicated -- these were submitted, these

21    interrogatory requests, after Mr. Rock's deposition, so well

22    into 2025, and so I can understand basically in your prior

23    ruling you might say, then they are too late.

24         So I think from our perspective these are questions

25    that Mr. Guevara is going to have to answer.  We asked them

1    after we had Mr. Rock's testimony.  We asked them in this case

2    and in other cases, which are still in written discovery, in

3    fact discovery phases.  In our view it makes sense for him to

4    answer this single interrogatory request here knowing that the

5    answer is almost certainly going to be that he pleads the

6    Fifth, as he has done to all questions, but if Your Honor says

7    it is untimely here, and I go ask it in your other cases, we

8    can live with that.

9            THE COURT:  What does the interrogatory read?

10           MR. ART:  The interrogatory, to paraphrase, asks

11   whether Guevara participated in the murder of Eli Garza in

12   March, 1998, or participated in the cover up of that murder.

13           THE COURT:  And Guevara's objection is primarily that

14   it is untimely?

15           MS. MURRAY:  Correct, Your Honor.

16           We also had additional objections regarding that this

17   is seeking character evidence that would be inadmissible under

18   Federal Rule of Procedure -- or Evidence 404(b).

19           I would also note there has been a lot of assumptions

20   made by the plaintiffs today regarding the connection of

21   Mr. Guevara with Mr. Miedzianowski and Mr. Woodall, and I would

22   state that after extensive Federal investigations, Mr. Guevara

23   was not charged in either of these cases, and so this would be

24   the definition of a fishing expedition.

25           So we would argue that it would be proper if this

1   Court is going to permit plaintiffs to issue this

2   interrogatory, that we have the opportunity to look at the

3   documents that the City has stated that they are looking to

4   produce within the limited scope of what we discussed today.

5           THE COURT:  So, we all know that I like my deadlines,

6   but I also like reasonableness, and if something comes up in a

7   deposition, or in a new document, and a party can tie it back

8   and justify the request based on that new information that

9   wasn't available, I think it is reasonable to be able to yield

10  it.

11          The question I have for plaintiffs is during Rock's

12  testimony is this the first time that you learned of this

13  allegation that Guevara had anything to do with the Garza

14  murder?

15          MR. ART:  Counsel has told me during our

16  meet-and-confers about the issues before the Court that it is

17  in Rock's affidavit submitted in the post-conviction

18  proceedings, his generalized allegation that officers were

19  involved in the Eli Garza murder and cover up.  I think that

20  this is the first time we have testimonial evidence on that

21  subject in the case in this deposition.

22          Obviously this is a deposition of Mr. Rock that we are

23  adjudicating since the beginning of this case and trying to get

24  done prior to other deadlines.  It got scheduled for various

25  reasons, including that it was in Dominica in February of 2025,

1  so after the Court's deadline.  We certainly could have served

2  this interrogatory based on his affidavit beforehand.  I think

3  that if that had happened we would have gotten an objection

4  that we hadn't yet taken Rock's testimony and this was

5  unfounded and we didn't have a basis to ask.

6          So we are kind of stuck between a rock and hard place

7  because of the timing of Rock's deposition here, but the

8  information is in some form in Rock's affidavit that was used

9  in the Hernandez brothers' post-conviction proceedings.

10         THE COURT:  I appreciate that explanation, and based

11  on that explanation, I am going to sustain the objection to the

12  interrogatory.  While I appreciate your sensitivity to the need

13  to have a good faith basis, the affidavit as you describe it

14  would have provided that good faith basis to issue this

15  interrogatory earlier, rationale being, here is an affidavit

16  that names officers, were you one of them.

17         And so because of that, I don't think that this

18  information learned -- while the specific name or the specific

19  link of Guevara to this portion of Rock's affidavit came from

20  the deposition testimony, I don't think anything prevented the

21  plaintiffs from asking this sooner.

22         So that objection is sustained.

23         As far as -- by my count, there are things that the

24  City needs to do with respect to several of the categories,

25  most of which are already captured in the two letters that I

1    received from the parties.  I think the only hard ruling that I

2    have made is that -- and it is not a ruling, it is more of a

3    supplement, is with respect to the Touhy letters, and then the

4    City is going to take a look and see if there is a break

5    between the Miedzianowski and Woodall investigations.

6              Before we break for the day, I do want to talk about

7    where things stand with Monell discovery and the next phases of

8    this case, but I have got two motions to rule on first.  I will

9    take them in order.

10             First is for the deposition of Nelson Pacheco,

11   P-a-c-h-e-c-o.  So this individual is in custody and has been

12   noncompliant; is that my understanding?

13             MS. ROMELFANGER:  Correct, Judge.

14             THE COURT:  You have to help me out here.  It sounds

15   ominous, but I don't mean it in an ominous way, but how far is

16   Cook County willing to go to make him available?

17             MS. ROMELFANGER:  You know, Judge, I actually do not

18   know.

19             So I have been in contact with them again because we

20   have agreed on a date to try to take his deposition again.  I

21   can ask them what they can do.  They have been pretty

22   responsive to me so far.  But I don't know the answer to that

23   question about how far they can go to make him comply.

24             THE COURT:  No one can make him testify.

25             MS. ROMELFANGER:  Yes.

1          THE COURT:  I just mean --

2          Well, I see two options here, right?  One is to issue

3    the order, hold him in contempt, he may be like, geez, I don't

4    care about contempt.  Who knows?  You come across folks like

5    that.  The other option would be to writ him over and conduct a

6    deposition here in open court.

7          MS. ROMELFANGER:  Okay.

8          THE COURT:  And so those are the two options that I

9    see.

10         MS. ROMELFANGER:  Okay.

11         THE COURT:  If you want to check with the County and

12   submit a supplement or let me know your preference, I will of

13   course have to look at the timing of getting him over here, but

14   that is also an option.  We can try to get his testimony here

15   in court, and if he refuses, then it seems like that opens the

16   door as to whether he can testify at all at the trial.

17         So I will enter and continue 169, waiting to hear back

18   from you on which of those two options.

19         I am happy to enter the order having Cook County give

20   it another shot or jump straight to having him writ over.  He

21   has got no pending Federal case, right?  So I don't have to

22   worry about any anti-shuttling provisions.

23         MS. ROMELFANGER:  Correct, it is just the pending

24   State case.

25         THE COURT:  Yes.

1          The other option would be to writ him over and we do

2   it here.

3          MS. ROMELFANGER:  Okay.  I will check with them,

4   Judge.

5          THE COURT:  All right.

6          The other one is for a similar motion for Mr. Juan

7   Carlos Cruz.

8          My first question is, does he live in Bloomington?

9          MR. ART:  Yes, my understanding is he does.

10          THE COURT:  Is that within 100 miles of this

11  courthouse?

12          MR. ART:  Actually, my understanding is he lives in

13  the suburbs of Chicago, certainly within 100 miles.  I am sorry

14  if I misunderstood the question.

15          THE COURT:  I saw that he wanted the deposition to

16  occur in Bloomington, which made me wonder if he lives in

17  Bloomington, in which case you might have to move to compel in

18  the Central District.

19          MR. ART:  Here is what I can tell the Court.

20          The Court has already ordered him to attend his

21  deposition.  We started his deposition out in the suburbs, I

22  asked him five minutes of questions before he stood up, yelled

23  at is, and walked out.  Since then we have come in, and in a

24  status hearing we have asked the Court to order him again to

25  comply with the deposition subpoena and to show up for his

1   deposition.  We have been trying to get him to do so.  Our

2   understanding is he is still in the suburbs.  He has refused to

3   come downtown to give his deposition.

4           So we think at this point, given that he has already

5   left the deposition, he has ignored the Court's order, that it

6   is time to bring him in in a more concrete fashion.

7           THE COURT:  Okay.  So two concerns on my part.

8           One, I just have to make sure I have jurisdiction over

9   him, and so if he lives within the suburbs here, and is within

10  100 miles, that is an easy yes, I do.  So what I will do is I

11  will enter a rule to show cause requiring Juan Carlos Cruz to

12  appear here in court to explain why he should not be held in

13  contempt.  And I will set that for a date where you folks are

14  prepared to conduct his deposition, and when he shows up, if he

15  shows up, I will say, go out to the attorney/witness room and

16  you have your deposition that day.

17          As you folks probably know, that is the procedure.  I

18  have to follow it.  If he fails to appear and show cause, then

19  I can exercise my contempt power.  And so I need a date for

20  that.

21          MR. ART:  I am looking at the list of depositions we

22  have scheduled in this case, and I am seeing April 27th.  Let

23  me check what April 27th is.

24          MS. MURRAY:  Your Honor, could the parties confer on a

25  date and send an email to your deputy as to what would be

43

1    agreeable for the show cause hearing?

2         THE COURT:  Certainly.

3         And like I said, I will schedule it as a rule to show

4    cause, and when he -- or should he appear, I -- or if he

5    doesn't appear I will issue an arrest warrant, and if he does

6    appear, I will explain to him that the quickest way to

7    discharge the rule to show cause is to go sit for your

8    deposition.

9         MR. ART:  Thank you, Judge.

10        THE COURT:  All right.

11        Anything else that I can address for either side

12   before we get into the long-term schedule?

13        MR. ART:  Nothing from plaintiffs.

14        MS. ROSEN:  Nothing from the defendants.

15        THE COURT:  Okay.

16        I don't think I have set a schedule on Monell

17   discovery; is that right?

18        MR. ART:  That is correct.

19        We discussed it last time, Your Honor, and what we

20   conveyed from the plaintiffs' perspective is that we have done

21   this Monell discovery in a great number of Guevara cases at

22   this point.  We think that we can use the -- all of the

23   documents from that discovery have been produced already.  The

24   interrogatories and City responses in all of those cases are

25   the same.  There is a wealth of Rule 30(b)(6) testimony that we

1    have already agreed with the City will apply in these ongoing

2    Guevara cases.  And there is a very small amount of remaining

3    Rule 30(b)(6) testimony to take that we have been discussing

4    with the City and we are going to conduct imminently, before

5    the end of May, I would say.  And so that will be all of the

6    Monell discovery we need to do to support the Monell theories

7    in this case.

8            Our suggestion from the plaintiffs' side, and we have

9    reached this agreement in other currently pending Guevara

10   cases, is that are the Court set a 90-day schedule for Monell

11   discovery starting right now.  It can run concurrent because

12   there is very little to do with the rest of fact discovery that

13   is ongoing.  And then we would be prepared to move on to the

14   next phase of the case.

15           THE COURT:  Are the defendants in agreement with that?

16           MS. ROSEN:  Based on the representation that they will

17   be seeking no additional documents from the City to support any

18   of the Monell theories, and that the 30(b)(6) testimony that we

19   are discussing applies to this case as well as -- to this case,

20   it will apply to all the others, and that there is nothing new

21   to do, then 90 days is fine with the City.

22           THE COURT:  And is this the type of case where the

23   parties anticipate expert testimony?

24           MS. ROSEN:  Yes.

25           MR. ART:  Yes, Your Honor.

1        THE COURT:  So I will set the 90-day schedule today,

2  and likely a status shortly thereafter at that status.

3  Candidly, we will do one of two things, I will either be

4  hearing a motion for an extension of time or setting a schedule

5  for expert discovery.  So you folks should confer on that

6  beforehand.

7        You should also confer as to whether expert discovery

8  is necessary before dispositive motions or not.  I am an old

9  patent layer, it was always necessary, I don't know if in cases

10  like this it necessarily has to come before dispositive

11  motions.

12        I will tell you folks I do need to update my website,

13  but you get one shot at motions for summary judgment.  You need

14  leave to file prior to the dispositive motion schedule.  And

15  you will get I think it is 30 pages for all of your motions,

16  independent motions, for summary judgment, total.  And the

17  purpose for that is it streamlines things on my end and forces

18  you to focus on what is really at issue.

19        So my website should be updated by the end of the

20  week, but know when thinking summary judgment motions, those

21  will be the limits.  You will get one round.  You will get more

22  pages than the local Rules allow, but you likely won't get a

23  motion to file excess pages granted because you are already

24  getting 15 extra pages, should you choose to use them.

25        So I will put a minute order in that is more of a

1    running check list from me, and I will wait to hear from you

2    for the dates of the Cruz deposition, and I will wait to hear

3    from defendants on the Pacheco deposition and where you want to

4    have that.

5            Thank you.

6            ALL RESPOND:  Thank you, Judge.

7       (Proceedings concluded at 11:09 a.m.)

8

9                                    *  *  *  *  *

10           I certify that the foregoing is a correct transcript

11   of the record of proceedings in the above-entitled matter.

12

13   /s/Krista Burgeson, CSR, RMR, CRR    April 18, 2025
     Official Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25