**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN HERNANDEZ and ROSENDO HERNANDEZ, | ) ) ) | |
| | ) | No. 1:23-cv-1737 |
| *Plaintiffs*, | ) ) | Hon. Jeremy C. Daniel |
| *v.* | ) ) | Magistrate Heather K. McShain |
| REYNALDO GUEVARA, *et al.*, | ) ) | |
| *Defendants*. | ) | **JURY TRIAL DEMANDED** |

**<u>DEFENDANTS' STATUS REPORT REGARDING DANIEL VIOLANTE</u>**

1. Defendants file this status report to update the Court on the issues surrounding Daniel Violante's deposition.

2. Plaintiffs Juan and Rosendo Hernandez bring a twelve-count civil rights complaint against the City of Chicago and six individual Chicago Police Officers—filed on March 21, 2023, (Compl., Dkt. 1), and last amended on September 28, 2023, (1st Am. Compl., Dkt. 58)—for claims arising out of their arrest, prosecution, and conviction for the June 27, 1997, murder of Jorge Gonzalez and attempted murder of Juan Carlos Cruz. Specifically, Plaintiffs allege they are innocent of the June 27, 1997, shooting and that detectives conspired to frame them for the same. (*See* Dkt. 58.)

3. Daniel Violante has been disclosed by Plaintiffs as a witness in this case with information about "the police investigation that caused Plaintiffs' wrongful prosecution and conviction, witness interviews, lineups, and false documents implicating Plaintiffs in the crime, Plaintiffs' criminal proceedings and the Defendants' misconduct as alleged in the complaint." (*See* Dkt. 185-1.)

4. Specifically, Daniel Violante, a member of the Maniac Latin Disciples ("MLD") street gang, was with Jorge Gonzalez and his family on June 27, 1997, when Jorge was murdered. On that day, Violante was also shot at before he fled the scene. Violante told police that Plaintiffs were the shooters and identified them in both a photo array and line-up.

5. However, Violante's version of events over what occurred on June 27, 1997, and in the subsequent police investigation has changed no less than four different times. Yet, Violante has been indisputably subjected to witness tampering. Specifically, Juan Hernandez and his parents—Esther and Rosendo Sr.—admitted to their involvement in a witness tampering scheme in the underlying criminal case where Violante was pressured by his own gang to sign a recant affidavit. (*See* Dkt. 185 at ¶¶ 4-7.)

6. Arguably, Violante was also subjected to witness tampering in Plaintiffs' post-conviction proceedings. At the direction of Plaintiff, Juan Hernandez, Sam "Spanky" Perez, a former Spanish Cobra member and alleged Fed. R. Civ. P. 404(b) witness against Guevara, "mami,"[1] "Cieto,"[2] and "Flaco,"[3] assisted in attempting to contact Violante. (*See* Dkt. 185-2 at JGS_Hernandez 24852-24859.) Notably, Violante's nickname is "Congo," and in a recorded Illinois Department of Correction prison call, Perez and Juan discuss how they "found Congo" and just need one witness to flip. They further discuss how Violante was likely the best witness to flip because he had already flipped in 1998. (*See id*.)

7. Considering Plaintiffs' disclosures, the fact that Violante was an eyewitness to the underlying shooting, Violante's testimony in the criminal proceedings, and his testimony

---

[1] When using the term "mami" it is believed Juan is referring to his mother, Esther.
[2] Cieto is a former Cobra and friend of Plaintiffs', Luis Torres.
[3] Flaco is believed to be Jose Vela, who was a member of the MLDs.

in the post-conviction proceedings, the parties have been attempting to depose Violante for ***well over a year***.

8.  On August 7, 2023, Plaintiffs served a subpoena with a witness check pursuant to Fed. R. Civ. P. 45 on Daniel Violante for his deposition in the above titled case to proceed on September 21, 2023. (*See* Dkt. 185-3.)

9.  Thereafter, the parties briefed priority over the deposition of Daniel Violante. (Dkt. 83, 89, 93, 95.) This Court subsequently held on January 5, 2024, that Plaintiffs retained the right to question Violante first at his deposition. (Dkt. 98.)

10. Given that Plaintiffs were granted priority over Violante's deposition, Plaintiffs thereafter took lead in coordinating Violante's deposition.

11. The parties have previously agreed to and set the deposition of Daniel Violante no less than 5 different times. This includes:

    a.  The parties agreed to and confirmed June 11, 2024, for Violante's deposition. On June 5, just six days prior to Violante's deposition, counsel for Plaintiffs, Anand Swaminathan, wrote to all counsel stating that Violante was no longer available on June 11 and that Violante had requested to re-set his deposition to June 21 or 24.

    b.  After a back-and-forth between the parties, it was agreed that Violante's deposition would be re-set to July 15, 2024. However, the night before, on July 14, counsel for Plaintiffs Mr. Swaminathan again wrote to all parties that Violante was cancelling his deposition, and requested his deposition be rescheduled to August 9th. No explanation was provided to Defendants as to why Violante was cancelling his deposition at this time.

    c.    Again, after numerous back-and-forth correspondence between the parties, it was agreed that Violante's deposition would proceed on September 6, 2024. Once more, on September 5, the day before his deposition was to proceed, Violante again cancelled his deposition representing that he and members of his family were ill.

    d.    The parties then tried to re-set the deposition for October 2024. However, this date too, fell through.

    e.    Then, in November 2024, the parties again spent time negotiating a new date for Violante. At that time, the parties agreed on January 20, 2025, to proceed with Violante's deposition. Plaintiffs cancelled this deposition representing that they were unable to confirm the date with Violante.

    f.    Thereafter, after back-and-forth correspondence between the parties, again, the parties agreed on April 3, 2025, for Violante's deposition. On April 1, Plaintiffs again represented that they had been unable to confirm the date with Violante and the deposition was cancelled.

12. For the very first time on April 4, 2025, Plaintiffs relayed to Defendants that Plaintiffs were unable to find Violante. Plaintiffs informed Defendants that Violante had been residing with Ms. Stephanie Haddrill, but at some point, during the scheduling of his deposition, he had moved out of Ms. Haddrill's home.

13. Defendants have no knowledge of when Plaintiffs first lost contact with Violante. Regardless, Defendant agreed to assist in finding Violante and facilitating his deposition.

14. Defendants' investigators went out on April 8, 2025, in an attempt to track down Violante. Investigators went to two different addresses associated with Violante's information. Neither address appeared to be Violante's current residence.

15. Defendants' investigators also went out to try to track down Violante's family members. On April 17, 2025, Defendants' investigators went to two different locations where they received no response from Violante's family members. Defendants' investigators left messages at numbers for Alejandro Violante (brother) and Frederico Violante (father). In addition to leaving Alejandro a message, investigators left a business card on the window of a vehicle registered to Alejandro.

16. After unsuccessful attempts to contact Violante, and in an effort to comply with this Court's orders, Defendants moved to compel Violante to sit for his deposition on May 9, 2025. (Dkt. 185.) This Court granted the motion on May 20, 2025. (Dkt. 195.)

17. Defendants called and left numerous messages at Violante's last confirmed, known phone number. The phone number used by Defendants was confirmed by Violante as his phone number under oath at Plaintiffs' post-conviction proceedings. All of these phone calls went unanswered, and Violante never returned any of Defendants' calls.

18. Defendants also attempted to contact Violante at two other phone numbers Defendants found associated with Violante. Both phone numbers belonged to Ms. Haddrill, who informed defense counsel she was no longer in contact with Violante and had no contact information for him.

19. Defendants had information that it was possible Violante was in Denver, Colorado. In May 2025, an investigator went out to a home believed to be a possible address for

Violante. However, after speaking with residents in the home, the residents confirmed Violante did not reside there and that they had no relation to Violante.

20. Since the Colorado lead was a dead end, Defendants sent investigators back out to Alejandro's, Fredrico's, and Ms. Haddrill's home, to see if any of these individuals had contact with Violante and would be able to provide contact information for Violante to the parties.

21. On May 28, 2025, investigators contacted Alejandro. At that time, Alenjandro claimed he was not in touch with his brother but that he believed Violante to still reside in the suburbs. At this time, investigators showed Alejandro the Order compelling Violante to sit for his deposition. However, Alejandro refused to take the Order as it was "not [his] property" and did not belong to him.

22. In June 2025, investigators went out to Ms. Haddrill's home. Ms. Haddrill once again claimed she did not have contact with Violante and had no contact information for him.

23. Also in June 2025, investigators went out again to speak to Alejandro and Frederico. However, at that time, Alejandro became irate with the investigators, refused to speak with them, and claimed to have no information for Violante. Because Alejandro became hostile with Defendants' investigators, Defendants ceased their attempts to get contact information for Violante from Alejandro and Frederico.

24. Defendants also sent copies of the Order compelling Violante to sit for his deposition to the homes of Ms. Haddrill, Alejandro and Frederico. With the Order, Defendants included a cover letter requesting Violante to contact the parties regarding his deposition. (*See* Ex. 1, Violante Corr.) Those letters and correspondence were delivered via FedEx

on June 17, 2025. (*See* Ex. 2, Conf. of Delivery.) To-date Violante has failed to contact any of the parties regarding his deposition.

25. Defendants also conferred with Plaintiffs on numerous occasions, including on July 8, 2025, who informed Defendants they have been unable to locate or contact Violante to-date.

26. As a result, as of the date of this filing, despite significant efforts to locate and serve Violante since April of 2025 when Plaintiffs first advised they had no contact with Violante, Defendants have been unable to locate or contact Violante.

27. Defendants will continue their efforts to attempt to locate Violante and apprise the Court if at any point they are able to locate Violante.

Dated: July 8, 2025                                    Respectfully submitted,


/s/ Allison L. Romelfanger                             /s/ Christiane Murray
ALLISON L. ROMELFANGER, Atty No.                       CHRISTIANE MURRAY,
6310033                                                Special Assistant Corporation Counsel
Special Assistant Corporation Counsel                  *One of the Attorneys for Reynaldo Guevara*
*One of the Attorneys for Individual Defendants*
                                                       Steven B. Borkan
James G. Sotos                                         Timothy P. Scahill
Josh M. Engquist                                       Emily E. Schnidt
Jeffrey R. Kivetz                                      Misha Itchhaporia
Allison L. Romelfanger                                 Graham P. Miller
Jeffrey Grossich                                       Molly Boekeloo
Kyle T. Christie                                       Christine E. Murray
Special Assistant Corporation Counsel                  Krystal Gonzalez
THE SOTOS LAW FIRM, P.C.                               Andrea Checkai
141 W. Jackson Blvd., Suite 1240A                      Borkan & Scahill, Ltd.
Chicago, IL 60604                                      20 South Clark Street, Suite 1700
Tel: (630) 735-3300                                    Chicago, IL 60603
aromelfanger@jsotoslaw.com                             (312) 580-1030
                                                       mboekeloo@borkanscahill.com

/s/ Theresa Berousek Carney
THERESA BEROUSEK CARNEY                                /s/Lisa McElroy
Special Assistant Corporation Counsel                  LISA MCELROY
*One of the Attorneys for City of Chicago*             Special Assistant Corporation Counsel
                                                       *One of the Attorneys for Miedzianowski*

Eileen E. Rosen
Andrew J. Grill
Austin G. Rahe
Catherine M. Barber
Lauren M. Ferrise
Theresa B. Carney
Kelly A. Krauchun
Rock, Fusco & Connelly
333 West Wacker Drive
Ste 19th Floor
Chicago, IL 60606
312-494-1000
tcarney@rfclaw.com

Brian P. Gainer
Lisa M. McElroy
Johnson & Bell, Ltd.
33 W. Monroe St., Ste. 2700
Chicago, IL 60603
312-372-0770
gainerb@jbltd.com
mcelroyl@jbltd.com

## CERTIFICATE OF SERVICE

I, Allison L. Romelfanger, an attorney, certify under penalty of perjury, pursuant to 28 U.S.C.A. § 1746, that on **Tuesday, July 8, 2025**, I electronically filed the foregoing **DEFENDANTS' STATUS REPORT REGARDING DANIEL VIOLANTE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list.

**_Attorneys for Plaintiff_**
Steven E. Art
Anand Swaminathan
Sean Starr
Annie D. Prossnitz
Jonathan I. Loevy
Arthur R. Loevy
Daniel J. Stohr
Isabella Aguilar
Margaret Gould
Quinn Rallins
Alyssa Martinez
Valarie Barajas
Lilly Dunkin
Marc Motter
Loevy & Loevy
311 North Aberdeen St, 3rd Fl
(312)243-5900
Chicago, IL 60607
steve@loevy.com
anand@loevy.com
sean@loevy.com
prossnitz@loevy.com
jon@loevy.com
arthur@loevy.com
dan@DanStohr.com
aguilar@loevy.com
gould@loevy.com
rallins@loevy.com
alyssa@loevy.com
valerie@loevy.com
dunkin@loevy.com
motter@loevy.com

**Attorney for City of Chicago**
Eileen E. Rosen
Theresa Carney
Catherine Barber

**_Attorney for Reynaldo Guevara_**
Misha Itchhaporia
Graham P. Miller
Emily E. Schnidt
Timothy P. Scahill
Steven B. Borkan
Whitney N. Hutchinson
Molly Boekeloo
Christiane E. Murray
Andrea F. Checkai
Drew Wycoff
Borkan & Scahill, Ltd
20 S. Clark Street, Suite 1700
(312)580-1030
mitchhaporia@borkanscahill.com
gmiller@borkanscahill.com
eschndt@borkanscahill.com
tscahill@borkanscahill.com
sborkan@borkanscahill.com
whutchinson@borkanscahill.com
mboekeloo@borkanscahill.com
cmurray@borkanscahill.com
acheckai@borkanscahill.com
dwycoff@borkanscahill.com

**Attorney for Joseph Miedzianowski**
Brian P. Gainer
Lisa M. McElroy
Johnson & Bell, Ltd
33 W. Monroe, Suite 2700
Chicago, IL 60603
312-372-0770
gainerb@jbltd.com
mcelroyl@jbltd.com

Austin Rahe
Andrew Grill
Lauren Ferrise
Sabrina Scardamaglia
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Floor
Chicago, IL 60606
(312)494-1000
erosen@rfclaw.com
tcarney@rfclaw.com
cbarber@rfclaw.com
arahe@rfclaw.com
agrill@rfclaw.com
lferrise@rfclaw.com
kkrauchun@rfclaw.com
sscardamaglia@rfclaw.com

/s/ Allison L. Romelfanger
ALLISON L. ROMELFANGER, Atty No. 6310033
Special Assistant Corporation Counsel
*One of the Attorneys for Individual Defendants*