**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN HERNANDEZ and ROSENDO HERNANDEZ | ) ) | |
| | ) | Case No.    23-cv-1737 |
| *Plaintiffs*, | ) ) | |
| *v.* | ) ) | Hon. Jeremy C. Daniel |
| REYNALDO GUEVARA, GERI LYNN YANOW, as special representative of the ESTATE OF ERNEST HALVORSEN, JOSEPH MIEDZIANOWSKI, JOEL BEMIS, GERI LYNN YANOW, as special representative of the ESTATE OF ROBERT DEGRAFF, ROBERT BIEBEL, and the CITY OF CHICAGO. | ) ) ) ) ) ) ) ) ) ) | Magistrate Heather McShain |

**DEFENDANT MIEDZIANOWSKI'S STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Defendant, JOSEPH MIEDZIANOWSKI, by and through his attorney, Special Assistant Corporation Counsel Brian P. Gainer of Johnson & Bell, Ltd., pursuant to Local Rule 56.1 and Federal Rule of Civil Procedure 56, hereby submits the following statement of undisputed material facts with supporting exhibits in support of his combined motion for summary judgment.

**I.      Jurisdiction and Venue**

1.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and Illinois law.  (**Exhibit A**, Plaintiffs' First Amended Complaint, Complaint, Dkt. #58, ¶19; **Exhibit B,** Defendants' Answer to Plaintiffs' Amended Complaint, Dkt #81, ¶19).

2.      This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 1367.  (**Exhibit A**, Dkt. #58, ¶20; **Exhibit B,** Dkt #81, ¶20).

3.      All events occurred in this District, and therefore venue is proper pursuant to 28 U.S.C. § 1391(b).  (**Exhibit A**, Dkt. #58, ¶21).

1

**II.     Plaintiffs, Juan and Rosendo Hernandez, and Defendant Joseph Miedzianowski.**

4.      In June of 1997, Plaintiff, Juan Hernandez, was living in Chicago, Illinois, in an apartment across the street from Kilbourn Park, in the vicinity of Diversey and Pulaski.  (**Exhibit C,** Juan Hernandez Deposition Transcript, pp. 68:11-70-1).

5.      Juan Hernandez joined the Spanish Cobras street gang in 1994 or 1995, and he was a member of the Spanish Cobras in June of 1997.  (**Exhibit C,** pp. 70:12-78-3).

6.      Juan Hernandez was arrested and charged with the murder of Jorge Gonzalez on June 30, 1997.  (**Exhibit D,** Juan Hernandez Arrest Report, RFC-Hernandez 77).

7.      In June of 1997, Plaintiff, Rosendo Hernandez, Juan's brother, was living with his parents in Chicago, Illinois, in the vicinity of Irving Park and Kenneth.  (**Exhibit E,** Rosendo Hernandez Deposition Transcript, pp. 28:12-29:6).

8.      Rosendo Hernandez joined the Spanish Cobras street gang in 1994, and he was a member of that gang in June of 1997.  (**Exhibit E,** pp. 47:19-49:2; 56:23-60:5).

9.      Rosendo Hernandez was arrested and charged with the murder of Jorge Gonzalez on June 30, 1997.  (**Exhibit F,** Rosendo Hernandez Arrest Report, RFC-Hernandez 79).

10.      Defendant, Joseph Miedzianowski, is a former Chicago police officer who was convicted of multiple federal crimes and sentenced to life in federal prison in *United States of America v. Miedzianowski, et al.,* 98 CR 923, United States District Court, Northen District of Illinois.  (**Exhibit B,** Dkt. 81, ¶¶ 23, 62; **Exhibit G,** *USA v. Miedzianowski* Jury Verdict of April 23, 2001; **Exhibit H,** *USA v. Miedzianowski* Sentencing Order of January 31, 2003; **Exhibit I,** Miedzianowski Deposition Transcript, pp. 15:3-7).

11.      In June of 1997, during the investigation that led to the arrest of the plaintiffs, Miedzianowski was a gang crimes specialist with the Chicago police department, working out of

2

either the Maxwell Street police station, or out of the police station at Homan Square.  (**Exhibit I,** pp. 76:23-77:1; 99:23-101:8; 105:14-106:4; 286:7-11).

### III.    The Investigation of the murder of Jorge Gonzalez.

12.    On June 27, 1997, Jorge Gonzalez was shot and killed at 2208 N. Mobile, Chicago, Illinois.  (**Exhibit A,** Dkt. 58, ¶¶ 29, 33; **Exhibit J,** Chicago police department general offense case report, RFC-Hernandez 143-144).

13.    No Chicago police department document, nor any other record, indicates that Miedzianowski was involved in the initial police response to the Gonzalez murder.  (**Exhibit K**, Chicago police department Investigative File for Gonzalez murder, RFC-Hernandez 1-146; **Exhibit Y,** Thomas Tiderington Deposition Transcript, pp. 264:11-266:22).

14.    The investigation of the Gonzalez murder was assigned to the Area 5 detective division, and Area 5 detectives completed a supplementary report dated June 28, 1997, documenting the facts of the incident, their observations of the evidence, statements of witnesses, and the conditions of the victims.  (**Exhibit L,** Chicago police department Detective Division Supplementary Report, RFC-Hernandez 113-125).

15.    No report from the Detective Division, nor any other record, indicates that Miedzianowski was involved in the Detective Division investigation into the Gonzalez murder.  (**Exhibit K**, RFC-Hernandez 1-146; **Exhibit Y,** pp. 264:11-266:22).

16.    During the investigation, officers conducted a canvass, looking for and interviewing potential witnesses to the shooting, which was documented on a canvass report dated June 28, 1997.  (**Exhibit M,** Chicago police department Detective Division Canvass Report, RFC-Hernandez 107-111).

17. No Chicago police department report, nor any other record, indicates that Miedzianowski was involved in that canvass, or in interviewing anyone, witness or otherwise, in relation to the Gonzalez murder. (**Exhibit K**, RFC-Hernandez 1-146; **Exhibit Y,** pp. 264:11-266:22).

18. The plaintiffs, Juan and Rosendo Hernandez, were arrested for the Gonzalez murder on June 30, 1997. Those arrests and the detectives' investigation are documented in various Chicago police department reports in the Investigative File. (**Exhibit K**, RFC-Hernandez 1-146).

19. Miedzianowski's name does not appear on any report in the investigative file, and there are no department reports, or other records, indicating that Miedzianowski was involved, in any way, in the investigation of the Gonzalez murder, in the identification of the plaintiffs, or in their arrests. (**Exhibit K**, RFC-Hernandez 1-146; **Exhibit Y,** pp. 264:11-266:22).

20. Miedzianowski was not at the crime scene, did not interview witnesses, at the police station or anywhere else, and had no role in the investigation. (**Exhibit I,** pp. 248:18-256:16, 289:19-291:21, 292:20-297:12; **Exhibit K**, RFC-Hernandez 1-146; **Exhibit L,** RFC-Hernandez 113-125; **Exhibit M,** RFC-Hernandez 107-111; **Exhibit Y,** pp. 264:11-266:22).

IV. **The Prosecutions of Rosendo and Juan Hernandez**

21. Rosendo Hernandez's jury trial for the murder of Jorge Gonzalez took place from August 6, 1999, to August 12, 1999, in the Circuit Court of Cook County before the Honorable Lon William Shultz. (**Exhibits N – R,** Transcripts from the criminal trial of Rosendo Hernandez, 97 CR 21329).

22. On August 12, 1999, at the conclusion of the trial, Rosendo Hernandez was found guilty of Aggravated Battery, Attempted Murder, and First-Degree Murder. (**Exhibit R,** pp. 174:3-177:17).

23.     Miedzianowski did not testify at Rosendo Hernandez's trial, nor was his name mentioned on the record at any point during the trial.  (**Exhibits N-R**).

24.     Juan Hernandez's jury trial for the murder of Jorge Gonzalez took place from November 13, 2001, to November 19, 2001, in the Circuit Court of Cook County before the Honorable Lon William Shultz.  (**Exhibits S-W,** Transcripts from the criminal trial of Juan Hernandez, 97 CR 21329).

25.     On November 19, 2001, at the conclusion of the trial, Juan Hernandez was found guilty of Aggravated Battery, Attempted Murder, and First-Degree Murder.  (**Exhibit W,** pp. 232:1-236:20).

26.     Miedzianowski did not testify at Juan Hernandez's trial, nor was his name mentioned on the record at any point during the trial.  (**Exhibits S-W**).

V.     **Post Conviction Proceedings and Fred Rock**

27.     On January 18, 2018, twenty one (21) years after the plaintiffs were arrested, nineteen (19) years after Rosendo Hernandez was convicted, and seventeen (17) years after Juan Hernandez was convicted, Plaintiffs' counsel obtained an affidavit from Fred Rock, a convicted felon arrested with Miedzianowski and charged in criminal case 98 CR 923-11, in the United States District Court, Northen District of Illinois.  (**Exhibit X,** Rock affidavit, Hernandez 2671-2674; *See also,* Dkt. 1, 76, 811 in 98 CR 923-11).

28.     Rock's affidavit is the first time anyone alleged, on the record, that Miedzianowski was, in any way, involved in the investigation, arrest, or prosecution of the plaintiffs.  (**Exhibit X,** ¶¶ 11-18; **Exhibit Y**, pp. 264:11-266:22).

5

29. Specifically, Rock alleged that Miedzianowski wanted to frame, "Poochie," who Rock identified as Juan Hernandez, and that Miedzianowski discussed, with Guevara, "getting," or "framing," "Poochie" because of a dispute over drugs. (**Exhibit X, ¶¶** 11-18).

30. In the affidavit, Rock did not explain whether or how Miedzianowski followed through on these threats and did not refer to any evidence that Miedzianowski was involved, in any way, in the arrest and prosecution of the Hernandez brothers. (**Exhibit X**).

31. Rock did not say anything in his affidavit about Rosendo Hernandez and the affidavit did not contain any allegation that Miedzianowski or Guevara wanted to "frame" Juan or Rosendo Hernandez for a murder. **(Exhibit X).**

32. Rock, in his affidavit, did not allege that "Poochie," Juan Hernandez, Rosendo Hernandez, or anyone else, was "framed" for the murder of Jorge Gonzalez. **(Exhibit X).**

33. Rock did state in the affidavit that he shared this information about Miedzianowski and "Poochie," with Brian Netols, the Assistant United States Attorney who prosecuted Rock and Miedzianowski in 1999. (**Exhibit X, ¶¶** 4-18).

34. Brian Netols testified that Rock never told him about Miedzianowski framing Juan Hernandez, and that if Rock had told him that, such a claim would have become the focus of his investigation into Miedzianowski. (**Exhibit Z,** Netols Deposition Transcript, pp. 51:20-56:15, 65:3-66:5, 67:14-70:10, 70:23-71:16).

35. In March of 2001, when Rock testified against Medzianowski in federal court in case 98 CR 923, Rock acknowledged that his plea agreement with the United States required him to tell the "whole truth" while testifying against Medzianowski so that he could receive a reduced sentence. (**Exhibit AA,** Vol. 1 of Rock Testimony in case 98 CR 923, *USA v. Miedzianowski,* JGS Hernandez 23798-24185, 3873:6-3838:12; **Exhibit FF,** pp. 233:21-239:16).

36. During this testimony, Rock never mentioned anything about "Poochie," Juan Hernandez, Rosendo Hernandez, Reynaldo Guevara, framing anyone with murder, or anything else alleged in the portion of this affidavit regarding Miedzianowski and "Poochie." (**Exhibit AA, Exhibit BB,** Vol. 2 of Rock Testimony in case 98 CR 923, *USA v. Miedzianowski*, **Exhibit X**).

37. On April 18, 2018, Plaintiffs filed a "Joint Amended/Successive Petition for Post-Conviction Relief," in the Circuit Court of Cook County. (**Exhibit CC,** Plaintiffs' Joint Petition, EP Hernandez 034546-034612).

38. On June 6, 2022, Rock testified, remotely from Dominica, at a hearing on that petition in the Circuit Court of Cook County before the Honorable Joanne Rosado. (**Exhibit DD,** Fred Rock's Testimony in 97 CR 21329-01 and 97 CR 21329-02, *People of the State of Illinois v. Juan and Rosendo Hernandez*).

39. In that testimony, Rock claimed that Medzianowski and Guevara discussed, "setting up," or "getting," Juan Hernandez. (**Exhibit DD,** 324:21-326:11, 326:17-329:9, 334:2-337:24, 338:13-339:10).

40. Rock did not hear any specific discussion of "framing" or "getting" Juan Hernandez, or anyone else, for the crime of murder, or any specific crime, prior to the arrest of the Hernandez brothers. (**Exhibit DD**).

41. According to Rock, Miedzianowski later told him that Juan Hernandez had been arrested for a murder near Fullerton and Keeler, but Rock admitted he didn't know anything about the facts of the case for which Juan Hernandez went to jail. (**Exhibit DD**, pp. 349:20-351:8).

42. Neither Miedzianowski, nor anyone else, told Rock that Juan Hernandez was framed for the murder near Fullerton and Keeler, and no one said that Juan Hernandez was framed for the Gonzalez murder. (**Exhibit DD).**

7

43. Rock was not present for any discussion between Miedzianowski and Guevara about what should be done to "get" Juan Hernandez, and Miedzianowski never mentioned Rosendo Hernandez. (**Exhibit DD,** pp. 353:12-357:12).

44. Rock did not provide any testimony about anything Miedzianowski or Guevara, or anyone else, did to follow through on the threat to "frame," or "get" Juan Hernandez, his brother, or anyone else. (**Exhibit DD).**

45. Years later, Rock testified at a deposition in the present case, remotely from Dominica. (**Exhibit EE,** Volume 1 of February 4, 2025, deposition of Fred Rock; **Exhibit FF,** Volume 2 of February 4, 2025, deposition of Fred Rock).

46. Adding more information to a story that has evolved over the years, Rock testified at his deposition that he first met "Poochie," a/k/a Juan Hernandez, in the 1980's, and that "Poochie" was a Spanish Cobra and was in the narcotics business. (**Exhibit EE,** pp. 129:10-132:1).

47. Rock never had a discussion with Juan Hernandez about Miedzianowski. (**Exhibit EE,** pp. 137:25-138:11).

48. Rock claimed he did have a discussion with Medzianowski about Juan Hernandez, and that, because of an alleged "stash house" robbery committed by Hernandez, Medzianowski told Rock, "I have to get that fucker." (**Exhibit EE,** pp. 138:12-145:1).

49. This conversation happened out of the blue while Rock and Miedzianowski were driving through a neighborhood. *Id*.

50. Rock did not ask Miedzianowski what he meant when he said he was going to "get that fucker." (**Exhibit EE,** pp. 144:24-145:1).

51.     Rock claimed that he later met with Miedzianowski and Guevara at the police station at Grand and Central, where they discussed "getting" Juan Hernandez.  (**Exhibit EE,** pp. 145:2-148:3).

52.     Specifically, Rock claimed that he "just walked into the station" to talk to Miedzianowski, who introduced him to Guevara by saying, "this is the head of homicide and he's going to help me get Poochie."  *Id.*

53.     According to Rock, after Miedzianowski said that, Guevara didn't say anything, and Rock left.  (**Exhibit EE,** pp. 147:17-148:17).

54.     The entire discussion lasted five or ten minutes, it occurred out in the open in a police station, and it only consisted of Miedzianowski telling Rock that Guevara was going to help him "get Poochie."  (**Exhibit EE,** pp. 145:2-148:3).

55.     Rock did not ask any questions.  *Id.*

56.     Rock testified about a third conversation with Miedzianowski, again involving Guevara, that occurred at the Maxwell Street police facility.  (**Exhibit EE,** pp. 149:4-153:16).

57.     During that conversation, according to Rock, he picked up a box of bullets from Miedzianowski, he was invited to the back of the station by Miedzianowski, and Miedzianowski told him about a murder near Fullerton and Keeler and said, "I'm going to set up Poochie and his brother."  (**Exhibit EE,** pp. 151:13-153:16).

58.     No one else said anything.  (**Exhibit EE,** pp. 151:13-153:16; 196:12-25).

59.     The three discussions described by Rock in his deposition, one between him and Miedzianowski in a car, one between him, Miedzianowski and Guevara, at Grand and Central, and one between him, Medzianowski, and Guevara, at Maxwell Street, were the only discussions Rock had with Miedzianowski about "Poochie," a/k/a Juan Hernandez.  (**Exhibit EE,** pp161:23-162:19).

9

60. Rock does not know anything about the murder at Fullerton and Keeler that Miedzianowski was supposedly referring to, he does not know the name of the victim, and he never looked into it. (**Exhibit EE,** pp. 163:5-164:11).

61. Miedzianowski never asked Rock to help him in any way in his alleged plan to get "Poochie," and Rock was not expected to do anything. (**Exhibit FF,** pp. 195:9-196:3).

62. The intersection of Fullerton and Keeler, which is where Rock maintains Medzianowski said there was a murder for which the Hernandez brothers would be framed, is more than two miles from the actual location of the Jorge Gonzalez murder, 2208 N. Mobile. (**Exhibit GG,** Google Map of 2208 N. Mobile and intersection of Fullerton and Keeler.

### VI. Medzianowski Testimony

63. Medzianowski testified in his deposition in this matter that he does not know either of the Hernandez brothers and he did not recognize photographs of them. (**Exhibit I,** pp. 13:10-14:24, 243:15-20, 244:8-13, 245:1-246:11).

64. Miedzianowski specifically denied telling Rock anything about "getting" Poochie, because he doesn't know who "Poochie," or Juan Hernandez, is. (**Exhibit I,** pp. 250:9-254:25).

65. Miedzianowski does not know anything about a plot to frame Juan Hernandez or his brother, and he didn't participate in any such plot. (**Exhibit I,** pp. 255:1-256:16).

66. Medzianowski repeatedly denied any knowledge about, or involvement in, the arrest and/or investigation into the brothers and the murder of Jorge Gonzalez. (**Exhibit I,** pp. 248:18-256:16, 289:19-291:21, 292:20-297:12).

### VII. Plaintiffs' Expert, Thomas Tiderington[1]

---

[1] Defendant is not conceding that any of Tiderington's opinions are admissible by citing his testimony in this motion. Defendant is simply pointing out that even Plaintiffs' expert agrees that there is no evidence Miedzianowski was involved in the investigation, arrest, and/or prosecution of the plaintiffs.

67.     Thomas Tiderington, an expert hired by the plaintiffs, authored a report on the investigation, arrest, and prosecution, of the Hernandez brothers.  (**Exhibit HH,** Tiderington report, p. 1).

68.     As part of that report, Tiderington listed the materials he reviewed, which include, the CPD Investigative File, the criminal trial transcripts of Rosendo and Juan Hernandez, depositions, and documents from the criminal case against Medzianowski and others, among other things.  (**Exhibit HH,** Attachment B, pp. 76-80).

69.     Tiderington testified that he has also, over the course of his career, reviewed transcripts of the wiretap on Miedzianowski's phone during the federal, criminal investigation of Midezianowski.  (**Exhibit Y,** pp. 266:24-269:3).

70.     In the wiretaps he reviewed, he has never seen anything that indicates Medzianowski was involved in framing the Hernandez brothers, or anyone else, for murder.  (**Exhibit Y,** 268:2-269:3).

Respectfully Submitted,

By:     /s/ *Brian P. Gainer*
        One of the Attorneys for Defendant
        JOSEPH MIEDZIANOWSKI

Brian P. Gainer (gainerb@jbltd.com)
**JOHNSON & BELL, LTD.**
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
(312) 372-0770

11