# Exhibit 30

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JACQUES RIVERA, | ) |
| | ) Case No. 12 C 4428 |
| Plaintiff, | ) |
| | ) Hon. Joan B. Gottschall, |
| v. | ) District Judge |
| | ) Hon. Mary M. Rowland, |
| REYNALDO GUEVARA, *et al.*, | ) Magistrate Judge |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |
| | ) |

**DECLARATION OF MICHAEL BRASFIELD**

I, Michael Brasfield, hereby declare as follows:

1. I have been retained by Plaintiff in this matter to give expert opinion testimony.

2. Attached to this declaration as Exhibit A is a true and accurate copy of a report, which contains opinions that I offer in this case, as well as attachments incorporated as part of that report. The contents of this report and its attachments are true and accurate to the best of my knowledge and belief, and I hold the opinions stated within the report to a reasonable degree of professional certainty.

3. My qualifications for rendering expert opinions in this case are summarized in my report and in my CV, which is attached to this declaration as Exhibit B. My CV is true and accurate as of the date of my report in this case to the best of my knowledge and belief.

4. Attached as Exhibit C to this declaration is an index and copies of files that I received and relied upon in reaching the opinions included my report and its attachments in this case. Those files are true and accurate copies of files that I received and relied upon to the best of my knowledge and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

9/12/17
Date

Michael Brasfield

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUES RIVERA, | ) | |
| | ) | Case No. 12 C 4428 |
| Plaintiff, | ) | |
| | ) | Hon. Joan B. Gottschall, |
| v. | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | Hon. Mary M. Rowland, |
| | ) | Magistrate Judge |
| Defendants. | ) | |
| | ) | JURY TRIAL DEMANDED |

**EXHIBIT A TO THE DECLARATION OF MICHAEL BRASFIELD**

***Michael Brasfield and Associates, Inc.***

641 Olele Point Road                                  Phone: 360-301-4465
Port Ludlow, WA 98365                                 E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**<u>Jacques Rivera v. Guevara, et al.</u>**
No. 12 CV 4428

**Report of Plaintiff's Expert – Michael D. Brasfield**

**December 30, 2016**

**<u>INTRODUCTION</u>**

Anand Swaminathan with the law firm of Loevy & Loevy, representing the plaintiff in this matter, contacted and retained me more than a year ago to assess whether there were any deviations from generally accepted police practices in the actions of numerous employees of the Chicago Police Department ("CPD"), specifically as they relate to matters stemming from the arrest and eventual incarceration of Jacques Rivera for his alleged murder of Felix Valentin. These events occurred over more than a 20 year period – beginning in 1988 and ending in 2011. Jacques Rivera spent more than 20 years in a maximum security prison as the result of the actions of the defendants. As a result of my review of the materials provided to me, I have concluded to a reasonable degree of professional certainty that the defendants and the CPD failed to conduct even a cursory investigation of the facts and that they intentionally and willfully manufactured and falsified evidence, manipulated witnesses, and withheld critically relevant information from the defendant and his attorneys. I have also concluded that the defendants and the CPD had a widespread practice or custom of acting in the same manner in similar cases for many years. In my opinion, there were numerous departures from generally accepted police practices in the Felix Valentin homicide investigation; and, the CPD, through its policies, practices, commissions and omissions created an environment where officers could routinely ignore city policies and the law with impunity and that such behavior was not only tolerated, but encouraged. Despite the City's formal written policies related to investigations and accountability, the evidence demonstrates that as a matter of unofficial policy or widespread practice, police officers routinely violated common and accepted police investigative practices.

I have also reviewed the CPD's policies and practices related to the creation, maintenance, storage, preservation, and disclosure of investigative materials in homicide cases, as concerning the *Rivera v. City of Chicago* case discussed below, and more broadly. To that end, I reviewed documents regarding CPD's policies and practices governing homicide investigative files. I also reviewed numerous files created by CPD detectives during homicide investigations and compared those files to defense attorneys' files to assess whether relevant investigative material was disclosed or withheld. I have also relied upon the substantial

1

knowledge and experience I have gained from reviewing hundreds of CPD homicide investigation files and tens of thousands of pages of material in other cases involving the withholding of exculpatory information in so-called street files, including *Fields v. City of Chicago* and *Kluppelberg v. City of Chicago*. Through those cases and this one, I have reviewed hundreds of homicide files across different detective areas of the city, and maintained and stored in different locations. Based on my review, I have concluded to a reasonable degree of professional certainty that the CPD's policies and practices related to the creation, maintenance, storage, preservation, and disclosure of investigative material deviated substantially from generally accepted police practices and resulted in the routine failure to disclose important investigative materials to criminal defendants.

My opinions and the facts upon which I base my opinions are discussed in greater detail below.

I have been an active-duty municipal and/or county law enforcement official for approximately 39 years. I retired from active governmental service in 2009. I have served as the Chief of Police of the Fort Lauderdale Police Department, the Assistant Chief of the Seattle Police Department, and the elected Sheriff of Jefferson County, Washington. Over the last 20 years I have also been actively engaged as a consultant, trainer, case reviewer and expert witness in law enforcement related matters. An overview of my qualifications follows in Section I.A. As a police practices expert, I have testified in state and federal courts for both plaintiffs and defendants.

A list of cases will be found in Attachment A; material reviewed for this case is in Attachment B; my rate of compensation in Attachment C; and a complete and detailed resume in Attachment D; a list of reference materials in Attachment E; summary of my file-by-file comparisons in Attachment F; a spreadsheet of my data analysis in Attachment G; a copy of my expert report in *Fields v. City of Chicago* in Attachment H; and a copy of my expert report in *Kluppelberg v. City of Chicago* in Attachment I.

I reserve the right to alter my opinions and/or form additional opinions regarding this case upon disclosure to me of further information or documentation related to this case.

**TABLE OF CONTENTS**

I.     Background

    A.  Expert Witness Qualifications

    B.  Materials and Other Information Reviewed and Used in Forming Opinions

II.    Summary of Relevant Facts

III.   Deviations from professional homicide investigation standards in Felix Valentin homicide investigation

IV.   Failures in CPD's internal investigation and disciplinary processes allowed Defendant Reynaldo Guevara to engage in the sort of investigative misconduct alleged here

V.    The CPD's policies and practices related to the creation, maintenance, storage, preservation, and disclosure of investigative material deviated substantially from generally accepted police practices

    A.  Standard police practices for maintaining and disclosing investigative files requires a single, comprehensive file

    B.  *Jones* and *Palmer* litigation highlight Chicago's "Street File" problem

    C.  CPD personnel consistently use multiple files during a criminal investigation, and fail to disclose all relevant materials to criminal defendants.

        1.  Multiple files are created for a single investigation, creating a serious risk that investigative materials are not disclosed.

        2.  The CPD's *ad hoc* response to subpoenas exacerbates the problem

    D.  Criminal defense files show that important investigative materials are regularly withheld from criminal defendants

        1.  Background on the Area North investigative files and my file review in this case

        2.  Criminal defense files are missing pages from the police investigative files

        3.  Issuing a subpoena does little to ensure disclosure of all relevant materials

        4.  The missing pages contain important and relevant information that should have been disclosed to criminal defendants

3

E. CPD's policies after *Jones* and *Palmer* don't ensure disclosure of all relevant investigative materials

    1. The policies are insufficient to remedy the "street files" problem

    2. The City failed to provide proper training and oversight to ensure compliance with the special orders

F. The police investigative files show that the directives were not properly implemented

    1. The police files from the 1985 to 1989 time period show that CPD's policies were not followed

        a. Handwritten notes, not on general progress reports, are still routinely used

        b. To-from memos are still being used

        c. Review of permanent retention files: all relevant information in unofficial documents is not transcribed in official reports

        d. Inventories are missing or incomplete

    2. The investigative files confirm that there was no training, auditing, or oversight to ensure compliance with the policies

G. There is strong evidence in the police investigative files, the Valentin investigation itself, and other CPD street file cases that there are yet other investigative files and documents that are unaccounted for by CPD and inaccessible to the prosecutors and criminal defendants

    1. My analysis of hundreds of files indicates that investigative information is being kept in other repositories or being destroyed

    2. The documents and testimony from this case provide further evidence of the existence of additional files and the failure to preserve investigative information.

    3. Kluppelberg and Fields are additional examples of cases in which previously missing street files containing highly exculpatory information were discovered in civil litigation decades after the original criminal trials

        a. Fields v. City of Chicago

        b. Kluppelberg v. City of Chicago

4

H.  The failure to turn over files in Jacques Rivera's case was a direct result of these practices and inadequate policies

I.      **Background**

   A. **Expert Witness Qualifications**

   I began my 41-year law enforcement career in 1968 as a patrol officer with the City of Mercer Island, Washington.  In 1969, I joined the Seattle Police Department and served Seattle as a police officer, detective, sergeant, lieutenant, captain, major, and assistant chief.  In addition to uniformed patrol, my investigative assignments as a detective included traffic homicide investigation, burglary and theft, and vice (gambling and prostitution).  As a sergeant, I served in patrol, the tactical squad, and internal investigations.  As a lieutenant, I served as a watch commander in charge of 50 patrol officers, and later as the commander of the Washington State Criminal Justice Training Commission's Basic Law Enforcement Academy for 2 years.  This academy was responsible for developing and providing the initial law enforcement training for all commissioned law enforcement officers in Washington State.  As a captain, I served as commander at both the downtown and north precincts, with responsibility for over 125 officers at each location.  I also served as the commander of the Internal Investigations section of the Seattle Police Department for 2 years.  I was the major in command of the inspectional services division for 4 years.  This division was responsible for developing, implementing, and monitoring departmental policies and procedures.  This division was also responsible for developing and administering a budget in excess of $120 million.  My last 5 years with the Seattle Police Department were served as assistant chief in command of the support services bureau.  I was responsible for, and oversaw the activity of, nine uniquely different divisions including: internal investigations; training; personnel, intelligence; crime prevention; communications; records & evidence, which included the maintenance and control of homicide files; data processing; and fiscal, property, & fleet management.  In this capacity I routinely served as the acting Chief of Police. I retired from the agency in 1995.

   I was selected by the City of Fort Lauderdale as their Police Chief in 1995.  The 33 square mile city has a full time resident population of 165,000.  An estimated additional 60,000 "snow bird" residents return to second homes in the city during the 6-month winter season.  Fort Lauderdale serves as the seat of government for the county of 1.5 million and is in the heart of a diverse tri-county (Dade, Broward, and the Palm Beach) population of 4 million.  As one of the premier tourist destinations in South Florida, over 12 million passengers come through the airport each year.  The ocean port handles the second largest number of cruise ship sailings in the world.  Fort Lauderdale serves as the governmental and business hub of the County.  The Fort Lauderdale Police Department had a budget of $60 million and consisted of 500 sworn positions and 300 civilian positions.  In 2000, the department received 600,000 calls for service, dispatched over 200,000 of those calls, made over 20,000 arrests, and issued 65,000 traffic citations.  The Department is now nationally recognized as an innovative leader in the field of community policing and was one of only a handful of cities nationwide to be selected as a Community Policing Demonstration Site by the Department of Justice.  I oversaw the operation of the only municipal jail in the state of Florida.  Under my tenure, Fort Lauderdale became the first major agency to obtain accreditation.  After over 6 years as the police chief of Fort Lauderdale, I retired from law enforcement a second time and returned to the Seattle area in the fall of 2001.

After retiring as Chief of the Fort Lauderdale Police Department I returned to my retirement home in Washington State. After a year and a half, I chose to run for, and was elected to, the office of Jefferson County Sheriff. I served in that capacity for over 6 years, and retired for the third (and final) time in the spring of 2009.

As both a Police Chief (6 years) and Sheriff (6 years), I have reviewed and approved policy and procedures of every kind. These included (but not limited to) criminal investigations, maintenance of police records, complaints against police officers, training, supervision and discipline.

Of specific relevance to this case - During my 4 years as a supervisor and commander of the Internal Investigation Section of the Seattle Police Department I was directly involved with thousands of investigations of allegations of employee misconduct, including failure to adhere to rules and regulations. These included criminal investigations, up to and including evidence and witness tampering, burglary, robbery, sexual assault, and homicide investigations in officer involved shootings.

Of specific relevance to this case - During my 31 years in a supervisory and management capacity as a Sergeant, Lieutenant, Captain, Major, Assistant Chief, Chief of Police, and Sheriff, I have been responsible for the review and processing of hundreds of disciplinary actions up to and including termination.

Of specific relevance to this case - I am the past chair of the Washington State Board on Law Enforcement Training, Standards, and Education. As such we regularly examined and reviewed issues and criteria that define standards and norms related to the practice and administration of law enforcement practices and operations.

Of specific relevance to this case - Since the enactment of legislation establishing the Washington Peace Officer Certification Revocation Hearing process, I participated as a member of that panel in more Revocation Hearings than any other sworn law enforcement officer to date.

Of specific relevance to this case – During my 2 years as Commander of the Washington State Basic Law Enforcement Academy in Burien, I was responsible for the administration of the training program provided to all Washington State Law Enforcement Officers. This was also my role as the Assistant Chief of the Seattle Police Department responsible for in-service and advanced training at the Academy over a subsequent 5 year period.

Of specific relevance to this case - I have been responsible for the development, formulation and updating of police policy and procedures as the Commander (6 years) of the Seattle Police Department's Inspectional Services Division.

As an independent consultant and sub-contractor, I have completed on-site visits to analyze 6 major U.S. City (Boston, Baltimore, Memphis, Oxnard, Cleveland & Seattle) police agencies to evaluate community policing in public housing. I have also served as a visiting management assessor for the cities of New Orleans (LA), Columbus (OH), Portland, (OR), San Francisco (CA), Bremerton (WA). Upon my return to Seattle in 2001, I provided contract

7

professional services as a consultant and program director for the non-profit South Downtown Foundation. I had responsibility for administering several million dollars for improving public safety in the International District, SoDo, and Pioneer Square neighborhoods of Seattle. In this capacity I coordinated efforts with the City of Seattle, the Seattle Police Department and various interest and civic groups in the area.

In 2002, I became a candidate for the Sheriff of Jefferson County, Washington. I was successful and assumed that office on January 1, 2003. I successfully ran for re-election in 2006 and was returned to office with 80% of the popular vote. I held a gubernatorial appointment to the Washington State Sentencing Guidelines Commission, serving as the only law enforcement official on this body of judicial, legislative and governmental representatives. I chaired the Washington State Criminal Justice Training Commission's Board on Law Enforcement Training, Standards, and Education. Members of this board monitor and evaluate the training of police officers and participate in law enforcement decertification hearings.

Over the last 40 years I have received extensive, specialized professional training in nearly all areas of law enforcement. There has been particular emphasis in the areas of training, internal investigations, accident investigation, use of force, ethics and police liability. I was awarded "life member" status with the International Association of Chiefs of Police in 2005. I was also awarded "life member" status with the Washington Association of Sheriffs and Police Chiefs in 2009. I am also a "life member" of the National Sheriffs Association. I have also been a member of the Washington State Sheriff's Association and served on the executive board of that organization.

During my career, I have been required to investigate and/or review hundreds of internal investigations. I have supervised hundreds of officers, and have had to review their compliance with standards of behavior and truthfulness. As both a supervisor, and later a commander of internal investigations with the Seattle Police Department, I have reviewed and evaluated the thoroughness of well over hundreds of such investigations. As a police chief and as a sheriff, I have had the ultimate responsibility of passing judgment on such actions by law enforcement officers in situations ranging from traffic stops to fatal shootings.

I received a Bachelor of Arts degree in Criminal Justice from the University of Washington in Seattle. I also am a graduate of the Senior Management Institute for Police (SMIP) of the Police Executive Research Forum. A copy of my Curriculum Vitae is attached as Appendix A.

**B. Materials and Other Information Reviewed and Used in Forming Opinions**

The following opinions are based upon my four decades of knowledge, education, training, and experience as a police officer, detective, police supervisor, commander, police chief, and sheriff. In particular, they are based on my lengthy experience with the law enforcement specialties of inspections, training, policy development, accreditation, jail operations and police internal investigations. My opinions are also based on the extensive materials I have been provided by counsel. I have attached a list of those documents as Attachment B. I have formed the following opinions based on a reasonable degree of certainty within the field of law enforcement practices and procedures. It is my practice to evaluate the reasonableness of police policies, practices, and

8

procedures on a case-by-case basis from the perspective of a police reviewing authority.  My experience and qualifications are briefly outlined above and documented in my complete resume in Attachment D of this document.

II.      **Summary of Relevant Facts**

On Saturday afternoon, the 27th of August 1988, Israel Valentin (age 22) and his younger brother Felix Valentin (age 16) drove to an apartment building located at 3324 West Cortland Street in the City of Chicago, Illinois.  Israel exited their car and went inside the building to pick up his girlfriend, Marilyn Lopez, to attend a wedding.  While Israel was in the building, Felix waited in the driver's seat of their car.  An individual approached the car and shot Felix multiple times, then jumped into a waiting car driven by another individual and fled the scene.  Shortly thereafter, Israel returned to the vehicle and discovered his younger brother seriously wounded. Police communications received the call at 3:39 pm. Israel took Felix to Norwegian Hospital and he was eventually transferred to Cook County Hospital.

Felix succumbed to his wounds nearly 3 weeks later on 9/14/1988. Felix's hospital treatment is related in the deposition of Dr. Arthur Sharkey. Felix suffered from multiple gunshot wounds and was treated in the intensive care unit over a period of nearly 3 weeks. Police reports document his poor condition and inability to interact with officers (Wron 00031- 00036). As of 9/9/1988, Valentin was not responsive to painful or verbal stimuli, his pupils did not react to light, he was on a ventilator and a moving bed, he was not breathing on his own, he was on medication to paralyze him, and he was suffering from a major infection. According to Dr. Sharkey, there is no indication in the medical records that Valentin regained responsiveness between 9/9/1988 and his death on 9/14/1988.

On 8/27/1988, responding police units who arrived at Norwegian Hospital were furnished with descriptions of the suspect and his "getaway" driver.  The victim Felix described both subjects as Hispanic males between the ages of 16-18 driving an older brown vehicle – possibly a Toyota hatchback (Hickey 00002). Responding police units reported also that Felix related that the suspect had been wearing a yellow baseball hat and was of light to medium complexion (Hickey 00004).

Detectives McLaughlin and Leonard responded to the hospital at 5:15 p.m. 8/27/1988 to interview Felix and Israel. Detectives created a general progress report and police report reflecting the interview. The general progress report relates Israel's description of the events surrounding the shooting. It does not contain a description of the suspect and getaway driver. In addition, the general progress report contains information that Marilyn Lopez's younger brother, Orlando "Macho" Lopez (age 12) may have observed some portion of the shooting but had not been interviewed (Wron 00069). The police report (Wron 00031-Wrong 00033) contains a description of the suspect – Hispanic male between the ages of 18-22 with brown eyes, dark hair, a black jean jacket, dark pants, and gym shoes – and getaway driver – Hispanic male between the ages of 18-22. The description is not attributed to any person and the report does not describe the origin of the description. In addition, the description does not appear in the general progress report and is different than the description reported by responding police units. The police report omits any reference to Orlando Lopez.

9

Additional detectives Letrich and Moriarty interviewed Felix Valentin at the hospital on 8/30/1988 (Wron 00039). Felix stated that the two suspects were members of the "Imperial Gangsters". Detectives presented an Imperial Gangster photo album ("gang book") to Felix. Felix identified the shooter as Jose Antonio "Chequin" Rodriguez, and the driver of the getaway car as Phillip Nieves. Based on the identification provided by the shooting victim, Rodriguez was arrested just 3 blocks from the scene of the shooting at 1 a.m. on 8/31/1988 by Officers Moriarity, Vergara and Wojcik (at the request of Letrich) as the suspect in the shooting (Wron 00058). A hold dated 8/31/1988 was placed on Rodriguez that stated that officers expected to charge him with aggravated assault on Felix Valentin by 1 a.m. on 9/2/1988 (Wron 00059). The hold also stated that a line-up was to be viewed by the witness in the case. A release form dated 8/31/1988 states that the victim was unable to identify the defendant, due to being heavily sedated for pain (Wron 0063).

A photograph of Rodriguez was provided to me during my review of the case (RFC 1420) as part of a set of six photographs (RFC 1415-1420). These photographs are not part of the police, prosecutor, or criminal defense files provided to me. The numbered photographs appear to correspond to detective Leonard's general progress report dated 8/31/1988 (Wron 0064), and to the photograph evidence form dated 8/31/1988 11:45 p.m. (Wron 0062).

Gang Specialists Guevara and Gawrys reported on 9/16/1988 that they showed photographs of Rodriguez and Nieves to Orlando Lopez following a physical lineup on 9/15/1988. The report states that Lopez denied that Rodriguez and Nieves were involved in the shooting of Felix Valentin (Wron 00010). There is no photo of Nieves in the file.

With the exception of the above, there is no further reference to Rodriguez or to Nieves in the material.

Detectives McLaughlin and Leonard reported that on 8/29/1988 they interviewed Orlando Lopez. The report states (Wron 00030):

> LOPEZ was coming from the store at corner of Kimball and Cortland. LOPEZ observed a copper colored GM-type car coming out of the alley, traveling northbound at approximately 3319 W. Cortland. LOPEZ indicated that said vehicle contained 2 M/WH's one of whom exited from the passenger's side of the vehicle and began to walk toward 3320 W. Cortland where the victim was seated behind the wheel of his vehicle. Suddenly, the M/WH began to run toward vehicle and LOPEZ noticed a gun in M/WH's hand. LOPEZ believed he heard three (3) shots but indicated that they were not very loud. LOPEZ indicated that LOPEZ saw the victim lean forward and to the right in the vehicle which victim had been seated.

> LOPEZ informed R/D's that LOPEZ could identify the shooter because LOPEZ recognized the shooter as a M/WH who played baseball at Humboldt Park and LOPEZ had observed him there on a few occasions. LOPEZ did not know shooters name but was aware that shooter was affiliated with the Latin Kings. LOPEZ then viewed books and made an identification of one RIOS, Jose (16-D LATIN KING Page 40D) as the M/WH

who exited the copper car and shot the victim. At this time there is no identification of the driver.

On 9/16/1988, Gang Specialists Guevara and Gawrys also reported that Orlando Lopez was located and brought to Gang Crimes North on 8/29/1988, at which point he looked at photo books and selected a picture of Rivera (Wron 00009-00010). No photo albums were preserved or inventoried as evidence.

A police report of Detectives McLaughlin and Leonard dated 9/1/1988 (Wron 00035) states that attempts were made to have Lopez view a physical lineup including Rivera and Rodriguez on 8/31/1988 or 9/1/1988 but Lopez's parents would not allow him to participate at night and Lopez could not be located.

On 8/30/1988, Gang Specialist Reynaldo Guevara and other defendants arrested 22 year old Jacques Rivera (Wron 00056). Guevara claims to have based the arrest solely on an alleged identification of Rivera by 12 year old Orlando Lopez on 8/29/1988. However, a rap sheet of Rivera was requested on the day of the shooting on 8/27/1988 (Wron 00055). The arrest report states that hold papers were submitted "due to the fact that the witness is not available to view a physical line-up which will be held on 31 Aug. 88" (Wron 00056). A hold dated 8/30/1988 was placed on Rivera that stated that officers expected to charge him with aggravated battery on Felix Valentin by 7 p.m. on 8/31/1988 (Wron 00057). The hold also stated "the witness to this case will not be available until tomorrows date, and Felony review will not approve charges until they can interview the witness." On 8/31/1988 or 9/1/1988, Rivera was released without charges.

Rivera was steadily employed at the Humboldt Park Institute. He was living with his spouse and children; was 4 to 6 years older than the descriptions of the suspects; had no known connection to the victim; and lacked identifying physical characteristics contained in the description of the suspects. Guevara had no physical evidence to support the arrest of Rivera.

Following the death of Felix Valentin on 9/14/1988, reports indicate that Orlando Lopez viewed a physical lineup at Area Five on 9/15/1988 and identified Rivera. Photographs were taken of the lineup and inventoried.

Lopez has testified numerous times that during the 9/15/1988 lineup he told police that Jacques Rivera was not the person who shot Felix Valentin, and that the police responded that he should not be afraid to make an identification (Lopez Dep., Lopez Hearing and Trial Testimony). Lopez testified that this conversation occurred with a detective with an afro, a mustache, and glasses and a woman with blond or white hair. I have been provided with photographs of Reynaldo Guevara, which show him with an afro, mustache, and glasses.

Lopez has also testified numerous times that there were actually 2 separate physical lineups that he viewed. Lopez testified that the first lineup was conducted within a few days of the shooting of Valentin. The same detective with an afro, a mustache, and glasses accompanied Lopez to the first lineup. In Lopez's view, he (Lopez) selected Rivera from the first lineup as well. Following the first lineup, Lopez saw the person who had shot Felix Valentin on the street. The person was an Imperial Gangster and was not Jacques Rivera.

11

Jacques Rivera has also testified that there were actually 2 separate physical lineups. Rivera testified that Guevara asked him to be a filler in a lineup, after which he was held for a period of time and then placed in a lineup. Rivera testified that he was not told during the first lineup what crime he was standing in a lineup for or who was viewing the lineup. Rivera testified that he was released after the first lineup.

The testimony of Lopez and Rivera on this point directly contradicts the "official" record produced by the defendants. The police reports produced by the defendants do not contain any report of a physical lineup before 9/15/1988. A report of McLaughlin and Leonard describes a failed attempt to conduct a physical lineup with Lopez on 9/1/1988, after which they report they attempted to show photos to Felix Valentin at the hospital (Wron 00034-00035).

Documents in the investigative file support Lopez and Rivera's testimony that there were actually 2 physical lineups. As I discuss above, arrest reports, hold reports, and release reports state that on 8/31/1988 and/or 9/1/1988 both Rivera and Jose Rodriguez were being held to participate in a physical lineup with a witness. A general progress report written by Leonard on 8/31/1988 lists the names of Rivera and Rodriguez, along with four other individuals acting as fillers – Villafane, Olivero, Ruiz, Ramon Lopez. Photographs of all six individuals, apparently taken at the same time against the same backdrop, were submitted into evidence on 8/31/1988 (RFC 1415-1420, Wron 00062, 00064).

Testimony from Villafane, Olivero, and Ruiz also supports Orlando Lopez and Rivera's testimony that there were actually 2 physical lineups. Villafane testified that he only once participated in a lineup in his life in the summer of 1988 (Villafane Dep, pp. 13-14). Olivero also testified that he participated in a lineup for a shooting in the summer of 1988 (Olivero Dep, pp. 13-14). Ruiz testified that he had been in a lineup for the shooting of Felix Valentin, who was a friend of Ruiz (Ruiz Dep, pp. 26-27).

Taken together, there is strong evidence supporting Lopez and Rivera's testimony that there were 2 physical lineups.

Following the second physical lineup on 9/15/1988, Reynaldo Guevara and other defendants arrested Jacques Rivera for murder (Wron 00051). Later on the same night, Guevara and Gawrys submitted a supplementary report (Wron 00009), which states that Lopez identified Rivera in a photo album on 8/29/1988 and at a physical lineup on 9/15/1988. The report states further that Lopez was shown photos of Rodriguez and Nieves after the 9/15/1988 physical lineup and stated that they were not involved in shooting Felix Valentin (Wron 00010). Lopez testified that he was not shown photographs other than the photo albums (Lopez Dep, p. 177). Finally, the report states that on 9/10/1988, Guevara and Gawrys showed the victim Felix Valentin a photo album at the hospital and that Valentin identified Jacques Rivera as the person who had shot him (Wron 00010). Such an identification would have been impossible given the course of Felix Valentin's medical treatment described above. Dr. Sharkey testified on 9/10/1988, Valentin could not reasonably have spoken to another person, he could not have looked through a photo album, and he could not even have communicated with his eyes (Sharkey Dep., pp. 55-56).

12

In spite of numerous intentional malicious acts by Guevara and others of omission and/or commission; witness manipulation; false testimony and reporting; withholding of evidence; etc., murder charges were successfully filed against Jacques Rivera.

Rivera was convicted in July 1990 for the murder of Felix Valentin, based on the testimony and in-court identification of then 13-year-old juvenile, Orlando Lopez, and the testimony of Reynaldo Guevara. Lopez's testimony was the only evidence of Rivera's guilt presented at Rivera's criminal trial. Investigative materials in the possession of the Chicago Police Department were not provided to Mr. Rivera and his attorney, Judge Wadas, as described in detail below. Rivera was sentenced to 80 years in state prison and incarcerated for over 20 years.

Rivera represented himself *pro se* in parts of his post-conviction case and attempted to use FOIA to obtain documents from the Chicago Police Department relating to a physical lineup conducted on or about 8/31/1988. Later, Rivera was represented in his post-conviction case by the Center on Wrongful Convictions at Northwestern University.

In September 23, 2011, the Circuit Court of Cook County granted Rivera a new trial based on the conclusion that there was sufficient evidence of his innocence. Cook County prosecutors elected in October of 2011 not to retry Rivera and dropped the charges against him. In September 2012, the Circuit Court of Cook County granted Rivera a certificate of innocence.

III. **Deviations from professional homicide investigation standards in Felix Valentin homicide investigation**

Homicide cases and investigations in police agencies across the United States are given priority and resources not normally provided to other types of investigations. More experienced, trained and knowledgeable detectives are assigned. Their investigations result in detailed documentation, commonly referred to as "murder books" in some jurisdictions. These investigative records provide a step by step record of all evidence gathered, all witnesses interviewed, statements taken, leads followed (whether productive or not), medical records, autopsy photographs and reports, photographs of the crime scene, wound descriptions, weapon (gun, bullet, shell, knife, vehicle, objects, etc.) analysis, chain of custody and evidence logs, vehicle impounds, search warrant applications and returns. It is not uncommon for a typical murder investigation to contain hundreds (and often times thousands) of pages – even if there is thought to be a "known" suspect. There are well-established criteria and a broad range of literature for these practices. In fact, Det. Anthony Wronkowski ("Homicide Coordinator") stated that there should be 22 specific parts of an on-going and completed Chicago Police Department homicide investigation book.

Experienced homicide detectives are familiar with the difficulties posed by relying entirely on a single "eyewitness" as a basis for police presenting a charge of homicide and they were aware of these difficulties in 1988. According to the American Judicature Society, misidentification by eyewitnesses was the leading cause of wrongful conviction in more than 75 percent of the first 183 DNA exonerations in the United States. The presence of a weapon during an incident can draw visual attention away from other things, such as the perpetrator's

13

face, and thus affect an eyewitness's ability to identify the holder of the weapon.  This is further aggravated when the lineup does not contain the offender.  In that situation young children and the elderly commit mistaken identifications at a rate higher than young adults.

Professional investigation and documentation are critically important for a number of reasons, some of which include but are not limited to:

- Case integrity
- Continuity of investigation
- Supervisory oversight
- Facilitation of case management
- Inclusion of investigative notes and investigators actions
- Insuring thoroughness of the investigation
- Allowing other investigators to assist or replace initial investigators
- Providing a "paper trail" of what steps were taken (or not taken)
- Focusing on important aspects of the case
- Identifying what remains to be done and what has already been done and by whom
- Eliminating suspicion from some possible initial suspects
- Providing sufficient information to identify and arrest a suspect
- Providing insight for prosecutors considering charges
- Providing an objective basis for charging and trying the suspect
- Providing an objective basis for the court to determine challenges
- To have a single document for discovery and disclosure (Brady rule)

<u>Individual, Supervisory & Institutional Failures in Felix Valentin Homicide Investigation</u>

Officers' liabilities in this investigation include, but are not limited to:

- Problematic reports
- Intentional and willful actions
- Intentional and willful omissions
- Fabrication of evidence
- Destruction, suppression, failure to preserve evidence and investigative materials
- Bogus documentation and failure to provide documentation
- Improper and manipulative juvenile procedures
- Improper lineup and photo array identification procedures
- Criminal conspiracy

This so-called "investigation" into the homicide of Felix Valentin by the Chicago Police Department, Reynaldo Guevara, and various police officers and supervisors employed by the City was 1) intentionally and blatantly calculated to wrongfully focus on, arrest, charge and convict Jacques Rivera; and/or 2) was conducted in a manner as to be considered so sloppy and unprofessional as to insure the same outcomes.

14

Even by the most forgiving of standards, practice and criteria, the investigative documents of the Chicago Police Department in this matter were lacking any semblance of a professional and thorough investigation.

Before describing specific failures in the Valentin investigation, I must note that it is unusual that an investigating officer in a criminal investigation would refuse to answer questions about that investigation under oath. On the advice of his attorneys and apparently concerned about incriminating himself, Reynaldo Guevara refused in his deposition in this case to answer a single substantive question about the Valentin investigation or the prosecution of Mr. Rivera during his deposition in this case. This refusal extended to all aspects of the case, including the fabrication and suppression of evidence, manipulation of witnesses, including Orlando Lopez, physical and photo identification procedures used, exclusion of alternative perpetrators, testimony at Mr. Rivera's criminal trial, related misconduct in other cases, etc. It is a duty of a police officer to testify truthfully about investigations in which he is and was involved and a refusal to adhere faithfully to that duty is a departure from accepted police practices. I infer from Guevara's silence that there are no ready explanations for the serious holes in the Valentin homicide investigative, and that if Guevara were to testify, his statements would not exonerate him.

Some specific and important examples and issues of the failure to conduct a thorough and professional investigation to either bolster or eliminate suspects include, but are not limited to:

- **Maintenance of parallel investigative files some of which are not provided to the criminal justice system.** As explained in greater detail below, important investigative materials created during CPD investigation were not provided to Mr. Rivera, his criminal defense attorney, Judge Wadas, or the state prosecutors charged with approving charges and prosecuting the criminal case. Some of these investigative materials have gone missing or were destroyed. Other investigative materials were withheld and produced decades after Mr. Rivera's conviction. Those investigative materials recently produced have strong investigative value and should have been provided to participants so that they could conduct additional investigation to demonstrate Mr. Rivera's innocence, the unreliability of eyewitness Lopez, and to bring the perpetrator to justice. The multiple files in this case demonstrates a lack of file integrity and security, an insufficient or non-existent chain of evidence and/or custody, and willful failure to disclose and produced (Brady rule) all records to prosecutors, defense attorneys, and the court, not only in the initial process and trial, but also later in appeals and civil litigation.

- **Investigative "tunnel vision" by Reynaldo Guevara and the other defendants**. Responding officers investigating crimes have an obligation under accepted practices to follow all leads to bring the true perpetrator to justice. It is not an acceptable practice to focus on a suspect while developing evidence that implicates that suspect and excluding evidence that implicates other suspects ("tunnel vision" or confirmation bias). Tunnel vision is apparent in the investigative materials. The following four examples are the chief evidence of tunnel vision in the investigation of the Valentin homicide and the prosecution of Mr. Rivera for that crime:

15

- o **A rap sheet of in the investigative file, which was not given to Mr. Rivera or his attorney Judge Wadas, shows an issued on inquiry date stamp of 8/27/1988**. Based on my experience in other cases involving the Chicago Police Department, that date stamp was placed on the rap sheet when it was requested by investigators working the Valentin investigation and was issued by the records division. The date stamp of 8/27/1988 is the same day as the Valentin shooting and is a full two days before 8/29/1988, the date on which police report the first mention of Mr. Rivera being implicated as having anything to do with this crime. Selecting a suspect without evidence and then pursuing evidence to connect that suspect to the crime in question is in serious conflict with accepted police practices. If Mr. Rivera was a suspect before the only evidence tying him to the crime was developed—the eyewitness identification of Lopez—that represents a gross violation of accepted police practices and egregious misconduct.

- o **A physical lineup viewed by Lopez on 8/31/1988 or 9/1/1988 did not result in an identification of Mr. Rivera and was suppressed**. Evidence discussed above supports the conclusion that an initial physical lineup procedure was performed on 8/31/1988 or 9/1/1988 that included Orlando Lopez as the witness and Mr. Rivera as a suspect, during which Mr. Rivera was not identified and after which Mr. Rivera was released from custody. Investigative materials concerning that physical lineup procedure were not provided in advance of Mr. Rivera's criminal trial to Mr. Rivera or to his attorney as described in Section V.H below. A failure by the sole eyewitness Lopez to make an identification of Mr. Rivera is evidence that he did not commit the crime. In addition, it is evidence that critically undermines Lopez's 9/15/1988 supposed identification of Mr. Rivera, and it is evidence that prosecutors and criminal defense attorneys would have used to evaluate the prosecution and defense of the case. Failure to document Lopez's non-identification of Mr. Rivera during the 8/31/1988 or 9/1/1988 physical lineup is additional evidence of "tunnel vision" and another gross violation of accepted police practices.

- o **Failure to pursue perpetrators Rodriguez and Nieves, identified by the victim, and failure to document investigation, exclusion, or alibis of alternative perpetrators**. Shortly after the crime, the victim Felix Valentin stated to investigators that the person who had shot him was a member of the gang called the Imperial Gangsters, after which investigators provided a photo album of know Imperial Gangsters, from which Felix Valentin selected a photograph of Jose Rodriguez as the shooting perpetrator and Felipe Nieves as the driver of the getaway car. Rodriguez was arrested in close proximity to the crime scene, held, and participated in a physical lineup, as described above, but he was released according to reporting on or about 9/1/1988 with the only stated reason being that the victim had not identified him. Lopez testified that shortly after the first physical lineup he saw the perpetrator of the Valentin shooting on the street and recognized that the perpetrator was a member of the Imperial Gangsters street gang. The investigative files do not document any investigation of Rodriguez or Nieves other than the above, even though these individuals were identified by the

16

victim of the crime, who was the person in closest proximity to the shooter. The investigative files do not reflect or document an effort to determine whether Rodriguez or Nieves had an alibi for the date and time of the shooting of Felix Valentin, and they do not reflect or document the process by which Rodriguez or Nieves were excluded as suspects in this crime. The only exception is the report by Guevara and Gawrys described above, which states, contrary to Lopez's testimony, that Lopez was shown photographs of Rodriguez and Nieves following his supposed identification of Mr. Rivera on 9/15/1988, at which point Lopez supposedly excluded Rodriguez and Nieves. Established police practices require investigation of perpetrators of crimes identified by the victims of those crimes, including careful documentation of the investigation of such individuals and the process by which such individuals are excluded as suspects.

o **False reporting of an identification of Mr. Rivera by the victim Felix Valentin**. Reporting detectives Guevara and Gawrys stated in a police report written on 9/16/1988, after Mr. Rivera's arrest, that the victim Felix Valentin a week before on 9/10/1988 had identified Mr. Rivera as the perpetrator in a photograph. The failure to contemporaneously document this purported identification and the physical impossibility of such an identification being made by a victim who on 9/10/1988 was unresponsive, could not breath, had unreactive pupils, was paralyzed with medication, and who could not have made an identification according to the doctors treating him, demonstrates that the information about an identification of Mr. Rivera by Valentin is false. This false information is likely included in the police report produced after Mr. Rivera's arrest by police officers suffering from "tunnel vision" in order to eliminate the significant obstacle to Mr. Rivera's arrest and prosecution that is caused by the fact that shortly after the crime the victim Felix Valentin identified individuals as perpetrators who were not Mr. Rivera. Inserting false information into a police report is an additional gross deviation from acceptable police practices during a homicide investigation, as is attributing to the victim of a crime an identification that did not occur.[1]

- **Improper conduct of and failure to document physical and photographic lineup and showup procedures**. In addition to the failure to document a filler identification and/or non-identification of Rivera taking place during an initial physical lineup on 8/31/1988 or

---

[1] Additional departures from accepted police practices concerning the supposed 9/10/1988 identification of Mr. Rivera by Felix Valentin include 1) the fact that information about the identification was first inserted into a report 6 days later on 9/16/1988, after Lopez had selected Mr. Rivera in a 9/15/1988 physical lineup, leaving no contemporaneous documentation of the identification in the investigative record, 2) the lack of documentation regarding how the identification procedure was employed, including any deviations from standard practice, such as using signals rather than speech to indicate identification, or any modifications to allow Felix to view the photographs while his bed was in constant motion from side to side, 3) the lack of any audio recording, video recording, or other documentation of the identification procedure, 4) failure to preserve the photograph identified, 5) failure to document the physical and mental condition of the witness, given his serious injuries, during the identification procedure and interaction with the witness apart from the identification procedure.

17

9/1/1988, discussed above, investigating defendants also departed from accepted police practices in their conduct and documentation of physical and photographic lineups conducted during the course of the Valentin investigation as follows:

o **Failure to document the circumstances of Lopez's purported identification of Mr. Rivera in a photo album**. There are conflicting reports and testimony about where the identification occurred and who was present and procured said identification. There is no documentation of the number of photographs shown to Lopez, what photo albums were shown to Lopez, who was present (both civilian and police officers) what Lopez said/what was said to him before and after the identification procedure, Lopez's reaction to various pictures as he reviewed the photo books, how long the procedure lasted, or the contents of Lopez's statement when he supposedly picked Jacques Rivera's photograph, including his level of certainty. The photograph and the photo book were not preserved or inventoried as evidence. In related fashion, there is an absence of explanation in the police documents as to why investigators provided Lopez solely with a Latin Kings photo album, rather than showing him multiple albums, such as the Imperial Gangster albums.

o **Failure to document the circumstances of other identifications from photo albums**. There are similarly no records documenting the identifications supposedly made by Felix Valentin from photo albums and those photographs and photo albums were not preserved or inventoried as evidence.

o **Failure to use fillers independent of the investigation**. Individuals present in a physical or photographic lineup procedures as fillers must not be known to witnesses viewing those procedures. For obvious reasons, use of a filler known to the witness increases the possibility of mistaken/improper identification because the person is known by the witness and thus is not a filler. George Ruiz (or a photo of him, if the defendants are believed) was used in a lineup procedure on or about 8/31/1988 or 9/1/1988. Ruiz was a friend of Felix Valentin's and was known to him. He was likely known by Lopez (at least in appearance) as well. Using Ruiz and others known to witnesses undermines the reliability of those identification procedures.

o **Failure to document use of photos**. The investigative materials reflect photos, including photos of Mr. Rivera, without documentation of individuals to whom those photos were shown or even whether those photos were used during the investigation.

o **Failure to include Jose Rodriguez in 9/15/1988 lineup.** Without any explanation in the police record, Jose Rodriguez was not presented in a physical lineup to Lopez on 9/15/1988. Rodriguez had been identified by the victim himself and was arrested in close proximity to the crime scene. Not permitting Lopez to observe the potential actual perpetrator dramatically increases the chance of a mistaken identification of an innocent person. Relatedly, the chance

18

of a mistaken identification is increased when two lineups are shown to a witness that only have a single suspect in common.

- o **Failure to accept and suppression of non-identification**. According to Lopez, at the 9/15/1988 physical lineup, he (Lopez) stated that Mr. Rivera was not the person who committed the shooting. Rather than accepting his statement, defendants had Lopez proceed with the identification of Rivera and then suppressed the true circumstances of the identification. In addition, defendants improperly suggested to Lopez that he should continue with his identification of a particular participant (Mr. Rivera). This is an obvious and knowing suppression of highly exculpatory evidence, and it represents a blatant manipulation of a child witness (see below). In addition, it runs contrary to accepted police practices, established in 1988, which required investigators not to suggest to witnesses anything about who should or should not be selected during a lineup procedure.

- o **Improper photo lineup with unresponsive witness**. As discussed elsewhere, Valentin was not in physical shape to participate in any lineup procedure or to respond to officers as of 9/10/1988, nonetheless Guevara/Gawrys presented him a lineup on that date. A lineup should not be shown to witnesses who are in a comatose state. The condition or a witness and any changes to a lineup procedure as a result of the witness's condition must be carefully documented.

- o **Improper photo lineup with Orlando Lopez following live lineup and failure to document photo lineup**. Though Lopez denies being shown photographs of Rodriguez and Nieves after his 9/15/1988 lineup with Mr. Rivera, even accepting Guevara/Gawrys's account that he was shown such photographs, that was not the proper procedure. Rodriguez and/or Nieves should have been included in a live or photographic lineup, including fillers, if they were to be excluded. In addition, the photos shown to Lopez should have been preserved and inventoried as evidence, and the procedure used to show those photos to Lopez should have been documented.

**The departures from standard police practices regarding lineup procedures discussed above were in part a result of the written policies of the Chicago Police Department governing lineups**. Hickey testified that GO 83-5, effective at all dates in the Valentin investigation, did not require a photographic record to be made of a lineup in which a filler was selected (Hickey Dep., pp. 260-267). The written policies did not provide guidance on what had to be reported in the event of a lineup procedure in which a filler was selected. In addition, police were permitted to confirm to a person viewing a lineup that they had picked the correct person during the lineup procedure. There appear to be no written policies in effect in 1988 that governed the conduct of photographic lineups. Photographic procedures appear in 2003 amendments to GO 88-18.

- **Failure to document and transmit investigative information**. The investigative file reflects a pronounced failure by defendants to document investigative information. Oral communication of information during a homicide investigation is insufficient. A written

19

record is necessary to communicate relevant information among investigating personnel in order to identify suspects and develop evidence leading to the apprehension of the true perpetrator of the crime. All potentially pertinent information must be recorded because the investigator will not know at the time information is received that it is or is not important to the ultimate case. Contemporaneous documentation is critical to ensure that information is accurately recorded and communicated. Finally, the requirement of disclosure of investigative materials to the criminal defendant and criminal defense attorney (Brady rule) requires documentation of investigative information. A lack of documentation suggests a departure from standard police practices, a failure to investigate, a suppression of evidence, or a combination of these things. The following were not produced in the investigative files I have reviewed:

o **Withheld notes, GPRs, investigative reports and activity forms of Gang Crimes Officers involved in the investigation**. As explained below, any investigative materials in the investigative file produced by the Gang Crimes Specialists involved in the Valentin investigation were never produced, with the exception of a couple of reports by Guevara. Investigative activities of gang crimes officers should have been reported to superiors and the criminal justice system.

o **Withheld documentation of investigation between 9/2/1988 and 9/14/1988**. Virtually no chronological documentation of investigative steps taken between 9/2/1988 and 9/14/1988 was produced as part of the investigative file. Based upon the material made available by the defendants, the investigation was "shut down" on or about 8/31/1988 when it appeared that Felix Valentin would survive. Only after his death on 9/14/1988 were events and documents generated to belatedly make it appear that officers had actually been conducting a real investigation. There is no documentation of investigative steps taken during the 2 weeks that the investigation was dormant. There is no explanation or justification for the lack of continuity in this homicide investigation. Detectives McLaughlin and Leonard began the investigation, but it was soon taken over by gang specialists who should have only been providing assistance regardless of whether Valentin survived. There is no record of any meaningful supervisory oversight apparent from my review of the materials, other than signing documents.

o **Withheld documentation of steps to locate Orlando Lopez**. The defendants state in various police reports that they were having trouble locating Orlando Lopez, but no documents were produced to reflect investigative steps undertaken by defendant investigators to locate Lopez between 8/30/1988 and 9/15/1988. In an investigation such as this one, investigators would have been making efforts to contact Lopez, and the results of that search are relevant to the investigation as a whole (for example, if Lopez was actively evading contact with the police, his status as a reluctant witness may be pertinent to the prosecutor or criminal defendant).

- o **Withheld documentation of the reasons that Rodriguez and Nieves were excluded as suspects**. As discussed, no investigative materials were produced that reflect any reason that Rodriguez and Nieves were excluded as suspects. There are similarly no materials in the investigative files showing that either individual's alibi was checked or confirmed. There are no materials reflecting any interview or police interaction with Rodriguez or Nieves, with the exception of Rodriguez's 8/31/1988 arrest. A decision to stop pursing a suspected perpetrator must be documented in the homicide file. In fact, there is very little documentation anywhere in the file about the apparent parallel investigation into Rodriguez and Nieves. Based on my experience, I would expect that investigators would have documented the reasons that Rodriguez and Nieves were excluded as suspects.

- o **Withheld documentation or recordings of interviews with or statements of witnesses and the victim**. No documents or recordings of interviews or statements of individuals relevant to the investigation have been produced as part of the investigative file, including Mr. Rivera's family, employer, and co-workers (regarding his alibi, work schedule, relationship with the victim and witnesses), individuals frequenting the Humboldt Park baseball fields, Marilyn Lopez (Israel Valentin's girlfriend), Orlando Lopez's friends, family, teachers, or others who might have shed light on his reliability as a child witness (see below), interviews with Israel Valentin or Felix Valentin after 9/1/1988 (with the exception of Guevara/Gawrys's purported 9/10/1988 photo identification), the corner store clerk to whom Lopez ran during the shooting, the driver who took Felix and Israel to the hospital, hospital staff, and family and friends of Felix Valentin. These interviews would be a starting point in a homicide investigation and I expect that they would have both occurred and been documented by the assigned personnel.

- o **Withheld reports of tips and leads**. A typical homicide investigation will contain numerous tips that should be investigated. There are notably few tips documented in the investigative files in this case.

- **Improper use, interaction, and influence of juvenile witness**. The sole eyewitness and only evidence connecting Mr. Rivera to the murder of Felix Valentin was 12-13 year old Orlando Lopez. As discussed, relying on a single child eyewitness in support of a homicide charge, under the circumstances presented here, is unprofessional absent corroborating evidence. Established police practices dictate that juvenile witnesses should be treated with extreme care. There is no evidence that such steps were undertaken in the Valentin investigation regarding Lopez.

  - o **Vulnerability/susceptibility of juvenile witness**. Lopez was 12 years old at the time of the investigation and 13 years old at the time of trial, making him less reliable, and also susceptible to manipulation and suggestion. As discussed, mistaken identifications occur at a higher rate with juvenile witnesses. All interviews and identification procedures performed with juvenile witnesses must occur in a non-leading format with results carefully documented. As discussed, in

21

this case, Lopez testified that he stated to police at a physical lineup that Mr. Rivera was not the perpetrator after identifying Mr. Rivera in a photograph. That information should have been documented and Lopez should not have been compelled to make an identification following that statement.

o **Presence of parent/guardian**. There is no documentation of the presence or absence of a parent at any of the police interactions with Lopez. Absent such documentation, we must assume that there was no parent present at any of his numerous interactions with police.

o **Initial statement and subsequent statements of juvenile witness**. Lopez's statements and testimony about his observation of Felix Valentin's shooting have changed over time. It is especially important in the case of a juvenile witness to document carefully, preferably by recording audio/visual, all statements of a juvenile witness about the nature of a crime, particularly the initial statement. For example, 11 shots were fired at Valentin in rapid succession, but Lopez has testified that he was able to observe the beginning and the end of the shooting, while running to a corner store to tell a clerk to call the police as the shooting was occurring. This is an unreliable account on its face. It also contradicts the police record described above. In a case where an eyewitness is the only evidence connecting a perpetrator to a crime, all descriptive statements given by that eyewitness of the perpetrator must be completely and accurately reported, particular in the case of a juvenile witness. Inconsistencies in child statements should not be ignored; rather, discrepancies must be explored with witnesses, and the results of that follow-up investigation carefully documented.

Additional examples and issues of the failure to conduct a thorough and professional investigation to either bolster or eliminate suspects include, but are not limited to:

- Street nomenclature (North vs. West)
- Family relationships (Israel referred to as father rather than brother at one point)
- Orlando Lopez identified at one point as Orlando Rivera
- Corruption of physical evidence (shell casings (5) co-mingled and placed in single bag, bullets recovered at autopsy co-mingled and placed in single bag)
- Ballistic analysis missing or not done (no comparison of ballistic evidence with known weapons, no comparison with open or closed Chicago cases, no comparison with regional, state, or federal data bases)
- Failure to process and document crime scene, vehicle, and clothing (no documentation of Rivera's, Rodriguez's, or Nieves's owned or accessible vehicles, although autopsy found 11 wounds, only 5 shells recovered from scene, failure to examine, document, and photograph "line of sight" positions and angles)
- No attempt to locate suspect vehicle (stolen/missing vehicles, impounded vehicles, similar vehicle description in other similar or nearby crimes, area accident reports, investigation of incorrect vehicle, failure to include traffic accident/collision report #K875-233)

22

- No review or retention of incoming 911 call recording(s) or dispatch or responding unit call recordings
- Utilization of silencer suggested, but no follow-up
- Reason for Felix and Israel Valentin's visit was supposed to be to pick up Israel's girlfriend. Why didn't she come downstairs with Israel since no shots were heard? If she did, what did she see?
- Missing and merging of investigative dialogue often precludes ability to actually know which officer (who) did what, when, where, how and why
- Partial documents (blank "Inventory of Things Seized in Search" (warrant return), no "Search Warrant" in files)
- No attempt to address the classic "motive-means-opportunity" criteria.
  - Did the suspect have any animosity towards, or confrontational history (motive) with, Felix Valentin?
  - Did the suspect own or have easy access (means) to the murder weapon, or own or have access to the type of vehicle used in the shooting?
  - Did the suspect have a witness, or witnesses that would place him elsewhere (lack of opportunity) at the time of the shooting?

Nowhere in the investigation did officers inquire into, or establish and/or address any of these basic items.

The defendants in this lawsuit will undoubtedly claim that any "minor" oversights, inconsistencies, or mistakes were unimportant. The record does not support any of those conclusions and instead demonstrates ample departures from standard and accepted police practices. Any reviewing supervisor should have immediately noted the telltale signs of such.

As initially stated, there exists a broad range of literature, accepted policies and practices, and professional references that accentuate many of these shortcomings.

IV. **Failures in CPD's internal investigation and disciplinary processes allowed Defendant Reynaldo Guevara to engage in the sort of investigative misconduct alleged here**

As described in detail below, Defendant Guevara's misconduct in the Jacques Rivera case and all other cases is a direct result of the CPD's failure to meaningfully investigate, supervise, or discipline him.

The community policing philosophy depends on the integrity of the police department. If the public lacks confidence in the agency's ability and commitment to investigate and prosecute officer misconduct, there is little hope for successful partnerships and problem-solving.

Police departments must walk a delicate balance when supervising their officers. On the one hand, police officers must employ great authority and a fair amount of autonomy to effectively carry out their duties. On the other hand, every police department understands that autonomy plus authority, absent sufficient supervision, will generate abuse of that power,

23

ultimately leading to violations of civilians' constitutional rights. This is a fundamental concept of policing – that a healthy police department will always deploy resources to supervising police officers to prevent abuse of police powers.

That supervision can be carried out in a variety of ways, including an active and efficient internal affairs department, direct supervision by superiors, and reviews of both of these systems by the department and/or municipal authorities and/or agencies to ensure that the supervision is effective. A breakdown in the oversight by the department not only fails to deter the unsupervised officer from committing misconduct, it also sends a message to all other officers and detectives that they will be provided similarly lax oversight, emboldening those officers to believe if they abuse citizens they will not face meaningful discipline from the department.

How police officers are disciplined for acts of misconduct affects the culture of policing within the police department and among police officers. An agency that implements or in practice demonstrates substandard mechanisms for police supervision and/or discipline invites a culture in the department where officers know that they cannot or will not be held to accepted standards in the event of oversights or misconduct in investigation and the performance of other job duties. That culture in turn may lead to circumstances where there is little incentive for sworn officers in the department to report or to attempt to address problems with police officers within the department. Once a culture of relative lawlessness or non-reporting is established and entrenched within a police department, a concerted effort will be necessary to reform that culture.

Moreover, how police officers are disciplined for acts of misconduct affects how the community views the police and how the police view their job. An agency or individual that routinely fails to take proper action when discovering that its officers have committed acts of misconduct will eventually lose its credibility in the community. Intuitively we can see why. If officers feel that the discipline system gives them no reason to obey the rules, some of them will not obey the rules. The public may see the results in more acts of police misconduct. Likewise, if officers view the agency's discipline as capricious or oppressive, they will often avoid the work that generates the most complaints: citizen contacts. (Community Policing Dispatch – August 2008)

In the case of Detective Guevara, both the Department's dedicated internal affairs system and his direct supervisors failed for decades to meaningfully investigate or discipline Guevara's pattern of gross misconduct in violating numerous citizens' constitutional rights, including Jacques Rivera's. Any worthwhile investigation would have uncovered widespread abuses, particularly given that Detective Guevara is refusing to testify about any of the over one hundred documented allegations of misconduct, for fear that truthful responses would implicate him criminally. While invoking silence may not be admissible at a criminal proceeding (and I offer no opinion on that), silence certainly can be an indicator of wrongdoing during internal investigations.

As far back as April 1986, Detective Guevara was accused of punching a civilian, threatening him, and using racial slurs in front of two witnesses. CR # C150473. After conducting an investigation, the complaint against Guevara was sustained, but inexplicably, the

24

Superintendent altered the result to "not sustained" for no apparent reason. If an investigation yields evidence that misconduct occurred, as in this case, discipline must be imposed. If new evidence comes to light that warrants reversing the initial decision to impose discipline, then the new evidence, or at least the reason for departing from the decision to impose discipline, must be documented. It almost goes without saying that when a police officer is caught committing misconduct but suffers no consequences, the effect on the officer is even worse than if the officer had not been apprehended in the first place – the officer learns that the internal affairs system has no teeth, and the system fails to serve as a deterrent regarding future misconduct.

Again in 1986, Guevara arrested a man for narcotics possession, released him for some unknown reason, and was accused of striking him in the head several times. CR #C152902. Guevara received a 2 day suspension for failing to fill out a battery report and releasing someone who had committed a crime. (These circumstances are similar to reports about Guevara in the FBI 302, discussed in detail below). Although this internal investigation occurred weeks after Guevara was accused of striking a different arrestee and of improper use of a weapon, very serious allegations themselves, and months after the April 1986 allegations, the internal investigation does not reference the repeated allegations against Guevara. CR #C152612. The failure to take into account prior similar incidents of misconduct when conducting an internal affairs investigation is a recipe for disaster. One of the initial steps any qualified detective takes when conducting a criminal investigation is to check the criminal history of a suspect, including not only convictions but also arrests as well, to determine whether a pattern of behavior is indicated. The same is true for any competent internal affairs investigation. But the CPD's internal affairs department, as a matter of policy (Klimas Dep, pp. 90-91, 93), did not consider other complaints when determining if a particular citizen's complaint of misconduct had merit.

Also in the early 1980s, Annie and Bernard Turner alleged that Guevara used excessive force against them for smoking on a city bus (CR #124631). Although medical evidence supported the Turners' allegations, the officers present denied misconduct, claiming that Annie Turner resisted arrest and was injured as a result. According to the records, however, Annie Turner was never charged with resisting arrest or anything other than smoking on a city bus. This discrepancy is not noted by the internal affairs investigators. Despite credible evidence supporting the Turners' claim, the complaint was not sustained.[2] The message that is sent by not disciplining police officers caught violating citizens' rights is that they are free to offend again without fear of reprisal.[3]

Similarly, in 1982, complainant Almarie Lloyd stated that Guevara and two other officers entered her home without a warrant (CR #125360). Although three witnesses apparently corroborated this version of events, there is no record that I have been provided that Guevara received any discipline whatsoever for his conduct.

---

[2] Investigators treated allegations brought by a police officer against Guevara differently than complaints by civilians, so long as the complaint did not criticize Guevara's on-duty actions. In CR # C251502, Guevara was suspended 20 days for threatening to harm a police sergeant who ticketed Guevara's car.

[3] CPD's internal affairs sustained rate of 2-3% is extremely low (Klimas Dep., p. 64), and supports the conclusion that Guevara was emboldened to commit misconduct by CPD's refusal to provide supervision and discipline.

Further, Guevara was the subject of two complaints of domestic violence, both in 1996 and 1998. CR #C223928 and #C248946. The way the CPD handled these complaints is instructive. In both incidents, Guevara was accused of physically striking members of his household. One of the allegations was sustained, the other was not. These are criminal acts, and should have been referred to the prosecutor for potential prosecution. Instead, Guevara simply received a 3 day suspension. Favorable treatment by the CPD of criminal acts committed by Guevara furthers the impression that Guevara was led to believe that he could break the law and not face consequences for his actions.

I find further support for the lack of investigation and/or supervision/discipline of Guevara in the FBI 302 report of Mohammed Omar produced by the FBI during the investigation of CPD Gang Crimes Specialist Joseph Miedzianowski (JR-L 44169-41183). In that report, witnessed by a member of the CPD's internal affairs division, Omar reported that he knew Guevara, and that Guevara's "policy" was to catch a person with drugs or guns, but let them buy their way out of trouble. Further, Omar reported that Guevara "accepted bribes to change positive or negative identifications during line-ups for murder cases." Omar provided a specific example of two cases where Guevara was implicated in fixing the cases in conjunction with an attorney Boyke, whom Omar said was a friend of Guevara's. Omar's information about Boyke's relationship to Guevara appears to be accurate, and his detailing of the criminal enterprise run by himself and Miedzianowski is supported by their federal convictions for the same (Beuke Dep., pp. 44, 66-67, 68-69, 69, 73-74) (Complaint, *Maysonet v. Beuke*, Bates No. JR-L 040987-040999, ¶ 3-4, 6, 28, 30, 46). Nonetheless, the record presented to me is devoid of any follow-up investigation of Omar's report (Klimas Dep., pp. 6, 12-13). There is no indication that Guevara was questioned, that IAD tried to question Boyke or find the two people specifically mentioned as having cases that were fixed by Guevara. These are the most fundamental steps that must be taken in any internal investigation, let alone one where the accusations are so serious. If true, what Omar is alleging is not only a terminable offense, it is also criminal. Nevertheless, it is not acceptable for a department to abdicate investigative authority to a prosecuting agency. Prosecutors seeking criminal charges have an entirely different standard of proof and purpose than a police agency looking to ensure that its police officers are not victimizing its citizenry. Regarding the suggestion that no follow-up was conducted because Omar was deemed not credible (Klimas Dep, pp. 6, 12-13), I find that suggestion contraindicated by the 16-page detailed report created by the FBI as a result of the interview with Omar, in which Omar freely details his own criminal involvement as well as those of Miedzianowski, Guevara, other civilians and other Chicago police officers. To discount wholesale a witness's account of such extreme police misconduct without conducting any follow-up investigation is wholly unacceptable by reference to accepted police practices and administration standards. Furthermore, if an investigation was not conducted because the complainant was not credible, that determination itself should be documented so that there is a record for any future inquiry as to why no investigation was undertaken. The lack of a documented explanation for why no investigation was conducted into these serious allegations suggests that no explanation exists to justify not investigating Omar's allegations.

The CPD's refusal to investigate, supervise, and/or investigate Guevara is apparent in relation to State Representative Delgado's April 2001 formal complaint with CPD regarding seventeen cases in which Guevara was alleged to have provided false testimony in court (CR

26

#C270916). The CPD conducted no investigation. The CPD did not even bother to record the names or case numbers of the seventeen cases. CPD's only response to Representative Delgado's complaint was to wait for the State's Attorney's Office to conduct its own review of the seventeen cases. A single ASA claimed to have reviewed fourteen of the seventeen cases less than two months later and reported finding no improprieties. There is no record of what that assistant state's attorney did to determine whether any improprieties occurred. Further, there is no record that the remaining three cases were ever reviewed; the only reference to those cases is that the assistant state's attorney could not find the records for those cases. No record of the state's attorney's investigation was ever obtained by the CPD. Guevara was never questioned about the seventeen cases by the CPD, which is a departure from accepted practices. As stated above, it is wholly unacceptable to abdicate responsibility for investigating misconduct by a Chicago police officer to another agency.

The CPD's lack of response to Representative Delgado's complaint is troubling in a number of respects, not the least of which is that the complaint was pending at the very same time that Omar provided his similar allegations of gross misconduct by Guevara. The fact that CPD refused to even so much as begin an investigation into contemporaneous serious complaints against Guevara coming from such diverse sources as a State Representative and a cooperating federal informant, indicates that the CPD was actively avoiding any investigation that might reveal misconduct by Guevara. Coupled with the CPD's refusal to investigate Hunt's allegations (see below), Dorsch's allegations (see below), and overturning a sustained finding against Guevara for no apparent reason, I find that the CPD evinced a long-standing refusal to investigate or discipline Guevara in any meaningful respect, that began in the mid-1980s and continued until his retirement in 2005.

The systemic lack of investigation and/or supervision/discipline is also present in the City's failure to investigate Leshurn Hunt's civil lawsuit against Guevara, filed in 1985. Hunt claimed he suffered excessive force and other civil rights violations committed by Guevara and other officers during his arrest and interrogation. Hunt sustained injuries and his confession was suppressed by the criminal court. In that lawsuit, according to the court, Hunt "identifies five recent occasions on which the police defendants in this case were accused of undertaking warrantless home searches, and nine recent occasions on which they were accused of using excessive force during arrests and interrogations." *Hunt v. Jaglowski*, 85 C 1976, 665 F.Supp. 681 (July 21, 1987). I see no indication that the CPD conducted investigation of the allegations raised, despite a lawsuit being filed against Guevara and a number of court opinions regarding the case being published. This is unacceptable under any standard of internal affairs investigations.

I find further support for the lack of investigation and/or supervision/discipline in both the sheer number of similar allegations lodged against Guevara as well as the confirmed acts of misconduct he committed. For a police detective to have one confirmed case of framing an innocent man is abhorrent; for it to occur repeatedly, it is evidence of a complete failure of supervision and that fellow officers turned a blind eye or condoned the misconduct.

Specifically, in 1989, Guevara framed Juan and Henry Johnson for murder by inducing one man to get other men to falsely implicate the Johnson brothers in the murder. The circuit

27

court eventually overturned Juan Johnson's conviction and he sued (Complaint, *Johnson v. Guevara*, case no. 05 C 1042). Guevara was found liable for framing Juan Johnson and ordered to pay $21,000,000 as compensation to Johnson. (Verdict Form, *Johnson v. Guevara*, case no. 05 C 1042)

In or around 1988-1990, CPD detective William Dorsch alleges that he witnessed Guevara tell a juvenile witness whom to select from a photo array (Dorsch Dep., pp. 320-360). Recognizing the obvious impropriety in Guevara's misconduct, Dorsch brought the incident to his supervisors' attention. Instead of disciplining Guevara (intentionally interfering in an identification procedure in a murder case could justify termination), the supervisors covered up the wrongdoing by instructing Dorsch to classify the case as cleared/closed, so that no further investigation would be conducted. There is no record of any follow-up investigation conducted by any supervisor or member of the internal affairs division to determine if Guevara in fact interfered in an identification procedure conducted during a homicide investigation.

The City of Chicago has also determined that, in 1993, Guevara was responsible for obtaining the convictions of Jose Montanez and Armando Serrano for murder, despite their innocence. According to the report issued by former Federal Prosecutor Scott Lassar of the law firm Sidley Austin, which was retained by the City of Chicago after the filing of this lawsuit to conduct an investigation of Guevara in order to examine its liability, among other things,[4] Guevara induced a man facing several serious felony crimes to falsely implicate Montanez and Serrano, causing them to spend over twenty years incarcerated for crimes they did not commit (Lassar Report regarding Montanez and Serrano, Bates No. CCSAO 46099-46156).[5] Subsequently, the appellate court reinstated Montanez and Serrano's case, and then both Montanez and Serrano were granted certificates of innocence (*People v. Montanez*, Ill. App. 2d. (1st Dist. 2016); Orders Granting Certificates of Innocence, *People v. Serrano* and *People v. Montanez*).

The City of Chicago has determined that in 1994 Guevara also caused Roberto Almodovar to be wrongfully convicted of murder as an innocent man. In the Almodovar case, Guevara was again accused of inducing witnesses to falsely implicate Almodovar and his co-defendant, William Negron. Guevara's explanation for how he came to suspect Almodovar– that Guevara thought Almodovar's photograph appeared similar to a description of the shooter that was not provided until *after* Guevara made Almodovar a suspect defies common sense. I am not making a credibility determination here; rather, I note that a police officer cannot claim that a photograph matches a description that does not exist at the time the photograph was selected as the suspect. I further note that, when questioned about this case at his deposition, Guevara took the Fifth rather than respond to questions about his alleged misconduct, lending further support for the opinion that Guevara's conduct in that investigation contradicted accepted police practices (Lassar Report on Almodovar, Bates No. CCSAO 43718-43732).

---

[4] The City's efforts to investigate Guevara, through Scott Lassar, did not come until long after Guevara retired and had no effect on preventing Guevara from victimizing other people.

[5] In a similarity to the Rivera case, detectives in the Montanez/Serrano case, investigated by Guevara, pulled the rap sheets for all three of the men eventually charged in the murder – Montanez, Serrano, and Pacheco – on May 25, 1993, although no one implicated them in the murder (or any other crime) until June 2, 1993. Like the Rivera case, this is shown by issued on inquiry date stamps on the rap sheets.

The City of Chicago determined that in May 1993 Guevara caused Robert Bouto to be wrongfully convicted of murder. In that case, Guevara is alleged to have induced several witnesses to falsely identify Bouto as the shooter. Although Bouto's alibi witnesses have consistently maintained that he was not present at the shooting, from the time of his trial to the present, all of the witnesses selected Bouto at line-ups conducted by Guevara. Those witnesses maintain that Guevara allowed them to see Bouto at the police station before the line-up was conducted, negating the neutrality of the line-up (Lassar Report on Robert Bouto, Bates No. CCSAO 30301-30344).

The City of Chicago also determined that in April 1998 Guevara used physical force to coerce Arturo Reyes and Gabriel Solache to involuntary confess to murder (Lassar Report on Reyes and Solache, Bates No. CCSAO 43655-43673).[6] Based on evidence of Guevara's misconduct, Solache and Reyes have been granted a new suppression hearing by the criminal court (Order in *People v. Reyes* dated June 29, 2016).

In 1996, the appellate court overturned the conviction of Xavier Arcos in a published opinion. That opinion reported that, in 1991, a witness was induced to falsely implicate Arcos by Guevara, who was alleged to have fed him details about the crime in order to frame Arcos. *People v. Arcos*, 282 Ill. App. 3d 870, 873-74 (1st Dist. 1996). I see no record that Guevara was ever questioned or investigated despite the courts overturning a murder conviction on grounds that he fed false information to the witness, which is a grave departure from accepted practices.

The fact that Guevara committed so many repeated serious transgressions during homicide investigations, resulting in the wrongful prosecution and conviction of innocence individuals, indicates to me that his supervising and fellow officers turned a blind eye to his misconduct. This evidence is consistent with the existence of a code of silence within the Chicago police department, dating back to the Jacques Rivera investigation in 1988, and continuing at least until 2007, when a federal jury determined that the CPD had a code of silence, wherein police officers would not report misconduct committed by fellow police officers. *Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 603-04 (N.D. Ill. 2012). In addition, these repeated serious transgressions – discovered apparently without much investigative effort during an investigation performed recently by Lassar at the City of Chicago's request – demonstrate that the City of Chicago and the Chicago Police Department, including its IAD and other supervisory agencies, failed to adequately investigate, supervise, and/or discipline Guevara over the course of his career.

Conversely, I find no support for the proposition that Guevara was receiving appropriate supervision or discipline. The failure to even question Guevara about the allegations listed above, including allegations from Omar, Hunt, and Representative Delgado, but also the various other cases where citizens accused Guevara of misconduct, is even more pronounced given Guevara's refusal to testify about these incidents on grounds that truthful responses might subject him to criminal liability (Guevara Dep.). When he was a police officer, the CPD could

---

[6] Lassar reached this conclusion despite drawing no inference from Guevara and another officer's refusal to speak about their activities as Chicago police officers and their interrogations of Reyes and Solache (Lassar report on Reyes and Solache, footnote 1).

29

have forced him to provide truthful responses under Garrity, and, given his invocation of the Fifth Amendment, it is likely those responses would have uncovered Guevara's misconduct. But by not even questioning Guevara in so many of these cases, the CPD failed to even begin the process of ferreting out Guevara's wrongdoing and, by extension, allowed it to perpetuate for decades.

Supervision of Guevara was hampered by the CPD's refusal to implement any type of early warning system (Klimas Dep., p. 76). The need for an early warning system to alert a police department to problem officers before they violate citizens' rights was well-established in policing long before 1988. An effective early warning system would have tracked Guevara's serious allegations of misconduct lodged against him prior to 1988, and would have required supervisors to consider the allegations against him in conjunction with each other, rather than as separate and discreet acts. An effective early warning system in place prior to 1988 would have communicated to Guevara, and all other police officers in Area 5, that transgressions would be exposed and responded to harshly, in effect deterring Guevara from committing the misconduct that marked his career from 1988 onward. Indeed, a federal jury found that the CPD had a widespread practice of not supervising or disciplining police officers as late as 2007. *Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 603-04 (N.D. Ill. 2012). The record before me is consistent with that verdict, and I have seen nothing to suggest that CPD maintained an effective disciplinary or supervisory system from 1982 onwards.

V.      **The CPD's policies and practices related to the creation, maintenance, storage, preservation, and disclosure of investigative material deviated substantially from generally accepted police practices**

Police departments have long recognized the need to ensure that information and evidence collected during a criminal investigation is properly documented, stored, and ultimately disclosed for use in the criminal trials. The standard practice is relatively straightforward, and consists of a few key components: (a) requiring investigating officers to document the information they learn during the course of an investigation; (b) collecting, inventorying, and maintaining all of the investigative materials and information, in one central location; (c) applying policies or guidelines to ensure that the investigative material in the central file is disclosed to prosecutors and criminal defendants in response to formal requests for information; and (d) administering training and monitoring around all of these issues to ensure the policies are followed.

CPD did not comply with these standards, instead allowing detectives and other investigating officers like gang crimes officers to utilize multiple, parallel files for each investigation. The use of parallel files itself creates a significant risk that important investigative materials will not be disclosed, but that risk was exacerbated by the CPD's failure to provide any training or policies regarding proper response to subpoenas and discovery requests. The result is predictable: a routine failure to disclose all relevant investigative materials to criminal defendants.

CPD's problem of failing to turn over all relevant materials was brought to light by two federal cases in the early 1980s, but despite being acutely aware of the problem, CPD did little to

30

address the practice. The policies it issued were a superficial attempt to resolve the problem and were deficient on their face – as they still allowed, and even required, multiple, parallel files to be created for each investigation. Moreover, CPD took almost no steps to train, supervise, or implement those policies. Finally, the policies did nothing to ensure that there was a system in place to properly respond to subpoenas and discovery requests.

I have reviewed numerous Chicago homicide files, including police investigative files and corresponding criminal defense files and permanent retention files. This includes such files produced in this case, as well as other cases against the City of Chicago (*e.g.*, *Fields v. City of Chicago*, *Kluppelberg v. City of Chicago*).[7] My review has confirmed that because of the deficient policies and widespread practices described above, criminal defendants were routinely denied substantive and relevant investigative materials related to their criminal cases, and that the written policies did little to alter the ingrained practice of keeping clandestine, parallel files.

Finally, I reviewed the material that was withheld from Mr. Rivera during his criminal trial and concluded that the information was withheld as a result of the same set of practices and policies (or lack thereof), and contained relevant and important investigative materials that should have been disclosed under standard police procedures.

### A. Standard police practices for maintaining and disclosing investigative files requires a single, comprehensive file

Every police department in the country must address how to properly document their criminal investigations. All information and evidence from an investigation must be properly collected, documented and preserved so that it can be disclosed to prosecutors and criminal defendants for use in criminal trials.

The standard police practice, across the country, is relatively straightforward: a lead detective is assigned to every major investigation, and that lead detective is in charge of compiling all investigative materials in a single centralized location. This includes investigative material generated by investigators in specialized units like gang crimes, bomb and arson and others. Although multiple detectives and specialized investigators may work on an investigation, all information must be centralized and organized. These standards are in place to help police officers effectively solve crimes: they ensure that, during the investigation, information is not lost because it is dispersed among various investigators and that the information is organized and stored so that a supervisor or other investigators can locate and understand the evidence collected by their colleagues. This standard police practice also ensures that once charges are filed, everything that does exist from the investigation is complete, identifiable, inventoried, and

---

[7] In both *Fields* and *Kluppelberg*, I examined investigative files maintained in the Chicago police department to evaluate the written policies and practices of the Chicago of Chicago, and in *Fields* I compared those investigative files to criminal defense attorney files to evaluate what materials were disclosed by the Chicago Police Department in the course of criminal investigations and prosecutions. I rely on those file examinations and comparisons in this report, and I intend to opine in this case about my findings in both *Fields* and *Kluppelberg*. The expert reports submitted in both cases are included as Attachment H and I, along with their respective attachments setting out the results of my examination and comparison.

maintained in its entirety in a central location. Whether it is referred to as an investigative file, a "murder book," a completed investigation, an open investigation, or something else, everything should be in one package that can be located and produced – for whatever reason it is needed.

Standard police practices also require the disclosure of all investigative material in the police file, whether centralized (standard, and preferable) or not. There should not be picking and choosing. Performing these disclosure requirements is not an informal practice; it is done pursuant to written policies and procedures, in conjunction with training on those policies and procedures, to ensure compliance to this crucial step in ensuring fair trials. As a practical matter, this disclosure for use in a criminal case usually occurs in one of two ways: either the police fulfill their obligations by disclosing their entire investigative file to the prosecutor (rather than picking and choosing which parts of a file to disclose), who in turn disclose it to the criminal defense attorney; or, in some cases, independently and as a safeguard, the criminal defendant or his counsel will subpoena the police investigative materials directly. In response to the subpoena, all investigative materials should be disclosed.

It is also standard police practice to keep and catalogue every document or piece of information pertaining to an investigation. The police investigative role is to search for and document facts – all facts regardless of where those facts fit into some pre-conceived theory of the investigation. Not all facts, information, or individuals will necessarily enhance the prosecution of an identified suspect. Nonetheless, those facts have to be included in the investigation– to help prevent tendencies like tunnel vision, and also in fairness to the victims, the prosecutor, the defense, the court, and the jury. The judge will eventually rule on what is relevant and admissible. And investigators routinely offer explanatory information that puts that information in perspective, or explains why the detectives gave it little weight. But based on my experience, police officers are expected to, and are specifically trained on the importance of preserving all investigative materials and including those materials in a centralized location. Police departments typically emphasize this point because, in order to meet the needs of police agencies and the courts, case files must be maintained in a manner that make them secure but accessible, and the case contents should be arranged in an orderly and consistent manner.

As a corollary, all of the information must be inventoried, indexed, or documented in such a manner as to be easily located and so that the content of the inventory is clearly understood. To that end, a copy of the investigative file inventory will typically be placed in an official police department file so that the department can maintain a single, accurate list of all available material, and that inventory is typically disclosed to prosecutors and criminal defendants so that they can ensure that they have everything. In this way, it serves not as a solution to the problem of ensuring that all investigative material is disclosed, but as a necessary backstop to try to prevent the possibility of non-disclosure despite the existence of other policies and procedures.

My knowledge of these standards is based on my extensive experience with police practices. This includes my own experience as a detective and supervisor in multiple police agencies; my familiarity with the policies used by police departments nationwide, developed in the course of my own efforts to improve policies in police agencies in which I worked, as well as in the course of my work as an independent consultant and auditor reviewing policies and

practices of police departments around the country; and my knowledge of industry standards established by organization like the International Association of Chiefs of Police. These standards have also been documented in homicide guides and reference materials for decades. In addition to my own extensive experience, for a summary of some relevant texts please see **Attachment E**.

### B. *Jones* and *Palmer* litigation highlight Chicago's "Street File" problem

In the early 1980s, two federal court cases highlighted the fact that the Chicago Police Department had no systems in place to ensure that investigative materials were collected centrally and disclosed during criminal cases, and in fact important materials were consistently withheld from criminal defendants.

### 1. The George Jones Prosecution

In 1981, twelve-year-old Sheila Pointer was raped and bludgeoned to death; and her 10-year-old brother Purvy was beaten unconscious in their home.[8] George Jones – a senior at a nearby high school, who edited the school newspaper and was nicknamed "Bookworm" – was ultimately arrested and prosecuted for the crime. During the CPD investigation of the Pointer murder, detectives gathered evidence that undermined the witnesses who had implicated Jones, and which Jones could have used to help defend himself, but this information was placed "not in the police department's regular files but in its 'street files.' These were files that the police did not turn over to the state's attorney's office as they did with their regular investigative files."[9]

After George Jones had been charged, a detective, Frank Laverty, who was investigating the case interviewed the victim's brother, Purvy, who told Laverty that there were two assailants and both were wearing stocking masks. Laverty also documented other strong evidence that Jones was not the perpetrator. That information was also placed in the street file.[10] Laverty was told that, in light of these facts, the prosecution of Jones had been abandoned. However, in the spring of 1992, Detective Laverty read in the newspaper that George Jones was on trial for the Pointer murder.[11] Laverty went to his Commander to tell him that an innocent person was being prosecuted, but his Commander took no action. Laverty then went directly to Jones' criminal defense attorney and told the attorney about the information in the street file. After the court declared a mistrial, the State's Attorney dropped all charges against Jones.[12]

After the charges against him were dismissed, Jones filed a civil lawsuit. He was awarded a substantial amount in damages for the violation of his rights. Notably, among other things, the jury found that the City was liable to Jones for its custom of maintaining "street files" that were withheld from the State's Attorney and therefore unavailable to Jones and the rest of the criminal justice system.[13] The Seventh Circuit explained that the practice of "retaining records in

---

[8] *Jones v. City of Chicago*, 856 F.2d 985, 988 (7th Circuit 1988)
[9] Ibid (at 988-991)
[10] Ibid (at 990-91)
[11] Ibid (at 991)
[12] Ibid. (at 991)
[13] Ibid. (at 995-96)

clandestine files deliberately concealed from prosecutors and defense counsel cannot be tolerated."[14]

## 2. The Palmer Litigation

On April 16, 1982, shortly after Jones' prosecution, a class of plaintiffs filed a lawsuit in federal court to prevent the use of street files.[15] The plaintiffs immediately moved for a temporary restraining order (TRO). A TRO issued on April 20, 1982, and amended on September 24, 1982, required the CPD to preserve all street files and documents formerly placed in street files.[16] The TRO was amended because of allegations that detectives were continuing to keep investigative materials as their personal property and therefore not subject to CPD control.[17]

District Judge Milton Shadur oversaw the preliminary injunction hearing. Based on the evidence presented by the plaintiffs and by the City of Chicago, Judge Shadur found the following (among other things):

- The CPD does not provide its detectives or other personnel with guidelines as to the extent to which "official reports" (which Judge Shadur defined as case reports, supplementary reports, closing reports, etc.) have to embody information in "unofficial reports" (defined as notes, witness interviews, worksheets, memoranda, etc.) In particular, Judge Shadur found that "Official Reports have sometimes been prepared from the perspective of what fits the preparer's concept of the crime, so they omit information that – though highly relevant and sometimes exculpatory of the defendant charged with the offense – the preparer does not deem 'pertinent.'"[18]
- The existence and use of unofficial reports is well known throughout CPD. Parallel files containing these reports are referred to as "street files," "running files," "office files" or "working files."
- Potentially relevant information contained among the CPD's various investigative files and materials for a particular crime is not necessarily included in official reports. There has been and is no police rule, regulation, procedure, or practice that requires all relevant information to be placed in official reports or to be transmitted to the CPD's Records Division for permanent retention.[19]
- the CPD responds to requests for documents as follows:
    ○ In response to a subpoena, CPD produces only official reports maintained at Records Division along with photographs and lab reports. CPD does not produce unofficial reports maintained at the Area or unofficial reports in the possession of individual detectives.[20]
    ○ In response to a defendant's discovery motion, Assistant State's Attorneys

---

[14] Ibid. (at 995).

[15] *Palmer v. City of Chicago*, No. 82 C 2349

[16] Ibid (at NF-L 005606-07)

[17] Ibid (NF-L 005607)

[18] Ibid (NF-L 005609-10)

[19] Ibid (NF-L 005612)

[20] Ibid (NF-L 005614)

34

(ASAs) order official reports by phone. CPD Records Division employees respond to these requests by producing official reports and do not contact individual Areas or other units or divisions of the CPD for unofficial documents.[21]

Judge Shadur found that the exclusion of relevant information from official reports "was not random or infrequent."[22] In fact, by the City's admission, there were hundreds street files in active use during the *Palmer* litigation itself. In granting the injunction, Judge Shadur found that the use of street files created a "grave risk" of non-disclosure of exculpatory information, including information that could be used to impeach witnesses.

On appeal, the Seventh Circuit reversed Judge Shadur in part, although it did order the CPD to preserve and produce street files for those plaintiffs who had been convicted of felonies.[23] It vacated the preliminary injunction in all other respects because the court found that the plaintiffs either lacked standing or should have asked for relief in the state courts. It did not revisit the factual findings that Judge Shadur made.

### 3. The 1988 *Jones* Appeal

After the *Palmer* litigation concluded, the Seventh Circuit issued an opinion in 1988, *Jones v. City of Chicago*, 856 F. 2d 985 (7th Cir. 1988), in which Judge Posner affirmed liability against Chicago police officers for the withholding of evidence from Mr. Jones and affirmed liability against the City of Chicago for maintaining a street files practice.

Among other things, the appellate decision noted as follows: (a) the case disclosed "frightening abuse of power by members of the Chicago police force and unlawful conduct by the City itself"; (b) Laverty was charged with a disciplinary infraction, "transferred out of the detective division, ostracized by his fellow officers, and assigned to a series of menial tasks culminating in the monitoring of police recruits giving urine samples" while "none of the defendants has been disciplined for misconduct"; (c) there was "enough evidence to enable the jury to infer that [a Chicago Police Department Commander, Lieutenant and Sergeant] had known . . . [and] had approved every false step"; and (d) there was sufficient evidence against the City that the street files practice existed, caused Jones injuries, and was "consciously approved at the highest policy-making level."[24]

The Seventh Circuit's decision also specifically highlighted the failure of CPD's leadership, which allowed Detective Laverty to be punished for coming forward while allowing those who actively attempted to thwart Laverty's efforts to reveal the truth to go without discipline or reprimand. Indeed, the United States Court of Appeals for the Seventh Circuit described the CPD's reaction to these events as follows:

Laverty should have been commended for his adherence to the principles of

---

[21] Ibid (NF-L 005614)
[22] Ibid (NF-L 005615)
[23] *Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985); CPD Special Order 83-2A.
[24] *Id.* at 988, 991-92, 993, 995-996.

honesty, decency, and justice, instead the police department charged him with a disciplinary infraction for having failed to advise the state's attorney that he planned to testify for the defense in George Jones's criminal trial should that become necessary. He was also transferred out of the detective division, ostracized by his fellow officers, and assigned to a series of menial tasks culminating in the monitoring of police recruits giving urine samples. None of the defendants has been disciplined for misconduct in the arrest and prosecution of George Jones.[25]

These actions in effect condoned the misconduct, and sent an unmistakable message to CPD personnel that the priority was not solving the street file problem, but instead was dissuading whistleblowers from coming forward.

Based on my experience, strong and unequivocal management commitment is needed to successfully achieve the sort of shift in culture that was necessary in the wake of the *Jones* and *Palmer* revelations; CPD leadership's response was the opposite. I would expect, therefore, that the improper street files practice would continue. As discussed below, my review of hundreds of homicide files in this case and others (*e.g.*, Fields and Kluppelberg) confirms exactly that: the street files practice continued unabated.

### C. CPD personnel consistently use multiple files during a criminal investigation, and fail to disclose all relevant materials to criminal defendants.

As the *Jones* and *Palmer* cases highlighted, the CPD has a long history of using multiple, parallel files during the course of a criminal investigation, which are frequently withheld from criminal defendants.

### 1. Multiple files are created for a single investigation, creating a serious risk that investigative materials are not disclosed.

From at the latest in 1977[26] until at least 2009,[27] the Chicago Police Department has maintained multiple, parallel files relating to a single investigation and has had no system in place to ensure that all important investigative materials from these multiple files are collected and provided to the prosecutors and criminal defendants.

The only "centralized" repository of investigative information maintained by CPD is the "permanent retention file" maintained by the Records Division. But the CPD policy and practice

---

[25] *Jones*, at 991-92.

[26] The City's designated witness, in this and other cases involving the City's practice regarding maintenance and production of investigative files, James K. Hickey, testified that the practice of using street files started at least as early as 1977, when he arrived at Area 1 homicide. Similarly, during hearings on the use of street files in Palmer v. City of Chicago, John Stibich, a former commanding officer in Area 4 homicide, testified that during his time there, from December 1974 to December 1977, Area 4 homicide had a practice of using street files. Following Hickey's sampling of the various violent crimes units in 1982, Hickey determined that each of the Areas used street files.

[27] See Attachment H, Expert Report in Fields v. City of Chicago

is to only include the official reports in the permanent retention file.[28] This practice of having an "official" file that does not include all of the investigative notes, documents, and materials deviates from standard police practice, which would have one single repository with all the information.

Instead of utilizing the permanent retention file as the central repository of information, CPD practice is to use multiple, parallel files while an investigation is ongoing. These multiple, parallel files have been variously referred to at different times as "street files" "working files," "running files," "unit files," "Area files," or "investigative files," among other terms. These files are used by detectives and other investigating officers, while an investigation was ongoing to gather relevant investigative materials; to communicate steps taken and steps to be taken in an investigation; and to record the personal opinions of the officers investigating a crime. The files contained notes (sometimes handwritten on scraps of paper), memos, reports, photographs, and various other forms of information about the case that were developed as the investigation unfolded. Among other things, information in these various, parallel files included details about the crime and the physical evidence, information about the observations or statements of witnesses, identification of potential leads and suspects, and items obtained from victims or witnesses (*e.g.*, a victim's telephone book or a witness's telephone messages). The files also contained other criminal history information and police reports pertaining to other cases, which were utilized in suspect identification and elimination.

Detectives working a case necessarily take notes during witness interviews and must communicate that information to other detectives. That is an inevitable and important part of an investigation.[29] The problem with the Chicago Police Department's practice is that these notes are stored across multiple files—both during and after an investigation—and are never consolidated into the official file which is permanently maintained by the CPD. Thus, even after an investigation concludes, there are still multiple files containing different sets of investigative materials scattered in various locations, and which are regularly withheld from criminal defendants.

There are a variety of reasons that multiple, parallel files are created within the CPD environment:

- Multiple detectives working on the same case, each take notes, resulting in multiple sets of investigative materials, but there is no formal place for detectives to keep these notes, and as a result they are kept on tables, coat racks, in cars, in filing cabinets, or desk drawers in the Areas and are not collected in a central repository.[30]
- In 1980, the CPD was re-organized, and the Detective Division was split into six geographical areas (Areas One through Six) and two subject matters (Violent Crimes

---

[28] Hickey *Kluppelberg* Deposition [2015] 22-23, 95-96

[29] Hickey himself confirms this. Hickey April 2014 Fields Trial Testimony, at 2060:16-21 ("It is just common sense that you do write things down because you can't remember, you know, who said what, who said what when.") Hickey November 2016 Fields Trial Testimony, at 11/23/16 PM, at 14-15 ("Taking notes is terribly important.")

[30] *Palmer v. City of Chicago*, 562 F. Supp. 1067, 1071 (N.D. Ill. 1983).

and Property Crimes).[31] Detectives from different divisions or units of CPD often investigate a case together, but report to different supervisors, and work out of different units or Areas, resulting in multiple files kept at the different geographical locations throughout the City.

- In addition to detectives, there are many others involved in investigating major crimes such as homicides, including patrol officers as well as specialized unit officers like Gang Crimes and Bomb & Arson. Indeed, Gang Crimes Officers were heavily involved in the investigation in this case. Yet, no set of policies or practices governed the investigative practices of these additional investigators or required them to coordinate with the Detective Division. As a result, those investigators had their own sets of notes and yet more files, unknown to and uncoordinated by CPD.
- There is no centralized log of the various parallel files created for each investigation, and thus no way to know how many files exist or where they are located.
- Files that are kept in an Area may be moved during CPD re-organization or are relocated to a storage warehouse. If multiple files for the same homicide are stored at an Area, they are not necessarily stored or moved together, and there is no system in place, or documentation, for tracking the movement of these files.[32]
- The documents in the files at the Area are never consolidated into the permanent, official files stored in CPD's centralized Records Division.
- Detectives also do not routinely transcribe all information obtained during an investigation into an official report, resulting in different information maintained in the official and unofficial documents.
- The permanent file, kept in the Records Division, therefore, does not contain all the relevant and important investigative materials.

This practice of using of multiple, parallel files creates an unacceptable risk that information will not be discoverable in response to a subpoena and will, therefore, be withheld from prosecutors and defendants. Where detectives keep their own files, or files are kept at multiple areas or units throughout the City, there is no way for any detective or supervisor to know how many parallel files have been created for a particular case, or whether they have all been collected. This is why standard police practice around the country is to have a lead investigator responsible for keeping a single, known repository of information.

### 2. The CPD's *ad hoc* response to subpoenas exacerbates the problem

In Chicago, the risks created by using multiple files are exacerbated by the fact that the CPD Subpoena Service Unit, which is responsible for responding to requests for records, is untrained and lacks any policies governing how it responds to subpoenas and requests for files.

According to Hickey, when a request for investigative documents is made to the Chicago Police Department, that request goes to the Records Division, Subpoena Service Unit.[33] A sergeant was in charge of the Subpoena Service Unit, and that sergeant reported to the assistant

---

[31] James K. Hickey Deposition in *Kluppelberg v. Burge* at 64 (NF-L 001004).
[32] Loughran Deposition 43-44.
[33] Hickey *Kluppelberg* Dep 358 (NF-L 001299)

director and director of the Records Division.[34] It was the Record Division director's responsibility to set policy at the Subpoena Service Unit.[35]

The Chicago Police Department had no written policy that Hickey was aware of dictating how the Subpoena Service Unit should search for documents responsive to a subpoena or request for records.[36] In addition, there were no directives addressing "policies, safe checks, [or] procedures . . . to ensure that when a request came in either by a subpoena or by an informal request from and Assistant State's Attorney . . . that all of the necessary information including exculpatory information was provided by the subpoena services unit in response to that request."[37]

The subpoena service unit was staffed by non-sworn personnel with the title "clerk."[38] There was no formal training of personnel assigned to respond to subpoenas,[39] and there is no rule, policy, procedure, directive or any other document that guides the clerks in the subpoena unit to ensure that all documents are retrieved from all possible locations and disclosed, or any training to that effect.[40] Whether all of the different units that worked on a given investigation were searched for documents responsive to a subpoena depended in large part on the discretion and experience of the personnel searching for the documents, such that a subpoena for all documents under a certain records number[41] would not necessarily result in the production of all documents corresponding to that particular investigation.[42] Hickey described the Subpoena Service Unit's effort to respond to document requests as an "art."[43] He acknowledged that it is possible in a case with multiple units working on the same investigation that the subpoena could only go to one of those units.[44]

All of this was true as well with respect to requests for documents made by the Cook County State's Attorney's Office to the Chicago Police Department.[45] This system was in place before Mr. Rivera's conviction and well into the 2000s.[46] In fact, the City's expert on the CPD's policies in 2009 explained that, even if a subpoena is forwarded to an Area or unit, there is no system or procedure to follow up if the Area or unit fails to respond.[47]

---

[34] Hickey, *Rivera v. Guevara, et al.*, No. 12 C 4428, pages 146-47 (NF-L 000312-13)

[35] Ibid, pages 159-60 (NF-L 000316)

[36] Ibid, pages 36-37 (NF-L 000273-74); City of Chicago's Amended Response to Plaintiff's Seventeenth Set of Requests to Produce Documents to the City of Chicago, p.2-3

[37] Ibid, page160 (NF-L 000316)

[38] Ibid, pages 147-48 (NF-L 000313)

[39] Ibid, page 39 (NF-L 000274)

[40] Hickey *Rivera* Deposition 36, 185-87; City of Chicago's Amended Response to Plaintiff's Seventeenth Set of Requests to Produce Documents to the City of Chicago, p.2-3.

[41] A Records Division number is a unique identifier assigned to a particular criminal investigation. The letters represent the year that the investigation began and investigations are assigned the numbers sequentially as they had.

[42] Ibid, pages 43-46 (NF-L 000275-76)

[43] Ibid, page 162 (NF-L 000316); Hickey *Kluppelberg* Deposition 362-63(NF-L 001303-04)

[44] Hickey *Kluppelberg* Deposition 362-63 (NF-L 001303-04)

[45] Hickey, *Rivera*, page 125(NF-L 000296); Loughran Deposition, page 50.

[46] Ibid, pages 151-53 (NF-L 000314); Loughran Deposition 14.

[47] Loughran Deposition 15.

This system, or lack thereof,[48] for responding to requests for documents and producing investigative materials, including important investigative information, is deficient. Because there are multiple files in multiple locations pursuant to the special orders and CPD's design, there is an acute need for policies, practices and training to ensure that all relevant information was produced to prosecutors and criminal defendants. The lack of such safeguards represents a significant departure from accepted police practices.

### D. Criminal defense files show that important investigative materials are regularly withheld from criminal defendants

From a police practices perspective, criminal defense attorney files contain all of the documents disclosed and made available to the attorneys that provided counsel to defendant(s) in the homicide cases that I reviewed. By standard police policy and practice, criminal defendants should get everything that was available from the police investigation to aid the defendant in presenting his or her defense at trial. It would be a dangerous departure from standard police policies to permit a practice of picking through police files to select which investigative materials to turn over.

As a practical matter, this disclosure of information usually occurs in one of two ways: either the police fulfill their obligations by disclosing their entire investigative file to the prosecutor (rather than picking and choosing which parts of a file to disclose), who in turn disclose it to the criminal defense attorney; or, in some cases, independently and as a safeguard, the criminal defendant or his counsel will subpoena the police investigative materials directly, rather than relying exclusively on what was provided by the prosecutor. In response to the subpoena, all investigative materials should be disclosed.

The basic principle is that a criminal defendant is not supposed to be tried in the dark. He is entitled to understand the full breadth of the evidence against him; and he is entitled to any evidence that may help him prove his innocence. As a matter of police practices, a well-trained detective would understand that information should be disclosed even if it is only supportive – but not conclusive – proof of innocence. As long as information known to the police or prosecution might contribute to doubt about the defendant's guilt, it is relevant and must be disclosed.

Based on the criminal defense files reviewed in this case, and others, as explained below, it is clear that these standard police practices are not followed in the Chicago Police Department, and as a result investigative materials that should be disclosed under normal police procedures are routinely withheld from criminal defendants. Moreover, these documents were withheld even where defendants issued subpoenas specifically requesting those documents. And finally, the material withheld was often relevant, exculpatory investigative information that should have been disclosed under generally accepted police practices. I discuss each conclusion in turn below.

---

[48] Hickey, *Rivera*, pages 36-37 (NF-L 000273-74); City of Chicago's Amended Response to Plaintiff's Seventeenth Set of Requests to Produce Documents to the City of Chicago, p.2-3.

40

### 1. Background on the Area North investigative files and my file review

For purposes of my analysis of Area North files, I reviewed investigative files for the period from 1985-1991 (the three years around the 1988 homicide investigation), collected from two locations.

1. In 2011, during post-conviction proceedings in Mr. Rivera's criminal case and decades after Mr. Rivera's criminal trial, the City of Chicago located an investigative file related to Mr. Rivera's case. Portions of that file appear to have been provided to the CCSAO during Mr. Rivera's post-conviction proceedings. That complete file was not turned over to Plaintiff when this civil lawsuit was filed in 2012, and instead documents Bates-stamped CPD 1-55 were produced and identified as the "Area File." In April 2014, during the deposition of Anthony Wronkowski, the City produced for the first time a copy of the so-called Investigative File for the Valentin homicide, Bates-stamped as Wron 1-69. As discussed below, in Section V.H, that file contained numerous pages of documents related to the police investigation into the Valentin homicide that had not been previously produced and were relevant evidence.

Based on further investigation, it was learned that the investigative file had been stored at some point in time in the 45 file cabinets at Area North, containing primarily open investigative files from 1961 to the present. Based on Court rulings, Plaintiff was then given limited access to a sample of two file cabinet drawers from the period of 1985-1991, and all investigative files in those two drawers were copied and produced. That set of 52 files, classified as the Area North Inspection Files, forms one of the two sets of investigative files I reviewed.

2. Pursuant to CPD policy, closed homicide investigative files are supposed to be sent to the CPD records warehouse for storage. For purposes of another aspect of Plaintiff's case, the parties reviewed 435 investigative files stored at the records warehouse that were represented to comprise all Area Five homicide investigations from 1985-1991. By agreement of the parties those files are a representative sample for purposes of assessing CPD's policies and practices. The parties then identified and copied 138 of the 435 files that contained any evidence of a lineup having been conducted, and that set of 138 homicide files was used for purposes of my analysis.

Mr. Rivera's attorneys provided me with a spreadsheet that served as an index of the 190 police investigative files pertaining to the two sets of investigative files for the time period from 1985-1991, as described above.[49] I reviewed and double-checked the spreadsheet extensively. That spreadsheet is attached to this report as **Attachment G.**[50]

Attachment G also contains additional information reflecting my comparison of the investigative files to criminal defense files and permanent retention files (discussed further

---

[49] The spreadsheet contains 194 rows, rather than 190, because there were several cases in which there were multiple criminal defendants, and so multiple criminal defense files corresponding to a single investigative file. Each criminal defense files is given its own row, but for purposes of calculating statistics related to the investigative files, the rows are considered as one file.

[50] I intend to rely on the spreadsheet included as Attachment G at trial to help explain the differences between the particular files to the jury.

below). For all of the investigative files found at the CPD warehouse, Plaintiff's counsel issued subpoenas for any corresponding criminal defense files, and was able to obtain 48 criminal defense files corresponding to 44 investigative files (there were several cases with multiple defendants, so multiple criminal defense files for a single investigative file). Plaintiff also obtained 132 permanent retention files, which included files for 43 of those 44 investigative files. In some cases, the City of Chicago redacted substantial information from the criminal defense files and the permanent retention files in a way that made it impossible to conduct a comparison, as noted in Attachment G.

Finally, I gave the City the benefit of the doubt for purposes of my analysis of criminal defense files as compared to investigative files. To that end, I excluded from my analysis criminal defense files in which it appears that the case was transferred to private counsel, and so the criminal defense file may or may not be complete (10 criminal defense files). Those files contain a strikethrough in Attachment G. I also gave the City the benefit of the doubt in my comparison to criminal defense files by assuming that all material in the criminal defense file had been there at the time of the original criminal trial (even if it might have been added subsequently, for example, as part of appeals or post-conviction proceedings).

### 2. Criminal defense files are missing pages from the police investigative files

I also had access to criminal defense attorney files that corresponded to certain of these investigative files. Mr. Rivera's attorneys attempted to locate defense attorney files for as many of these homicide investigations as possible. As discussed above, through their efforts they located 48 criminal defense files for 44 different homicide investigations. Each CPD homicide investigation is assigned a "Records Division" (RD) number that is used to identify materials corresponding to a particular investigation. I reviewed all of the criminal defense attorney files counsel was able to obtain; none were withheld from me.

I conducted a case-by-case analysis of what documents are included in the police investigative files but are missing from criminal defense files. I did not make any inferences about what documents were turned over to criminal defendants – my comparison exercise was objective in nature rather than subjective. I then analyzed the types of documents withheld across the files, focusing in particular on whether there were the types of documents withheld that could and would be important to disclose to prosecutors and criminal defendants. My observations and conclusions flow from this analysis, which is contained in **Attachments F and G.**

Of course, not all of the material withheld is of equal importance. Some of the documents not turned over to criminal defendants were administrative in nature and not crucial evidence (although I note that administrative records like inventories can be important evidence to disclose); while other records were highly relevant investigative material. But any withheld pages, regardless of their importance, are evidence that there was not a policy of copying all police files in their entirety. Moreover, the inconsistent nature of what was withheld or disclosed is concerning, (i.e. the same category of document is sometimes disclosed and sometimes withheld). That variation suggests that individual officers are making ad hoc decisions about what to disclose from each file. Picking and choosing what materials to produce, or failing to have a procedure to ensure complete production of all material in all police investigation files, are both egregious departures from generally accepted police practices.

42

My comparison of the investigative files to corresponding defense attorney files revealed that well over 90 percent (37 of 38 criminal defense files[51]) of defense attorney files are missing documents that were contained in the corresponding police investigative files.

The documents missing from the defense attorney files are important investigative materials. For example, the following significant discoverable items were routinely absent, and are precisely the kinds of documents that should be routinely disclosed to a criminal defendant under normal police practices.

**Handwritten Notes and General Progress Reports:** More than 20 out of 27 of the criminal defense files (or approximately 74%) reviewed above were missing unofficial handwritten notes that were present in the investigative files (see Row L of Attachment G). Another 10% of criminal defense files were missing GPRs that were present in the investigative files. The handwritten notes are often found on plain sheets of paper, on the margins of official forms, and on scraps of paper, none of which were the official GPRs on which such information was supposed to documented. There were hundreds of handwritten notes contained in the police files reviewed that were not in criminal defense files. They are often not inventoried, or the inventory lacks any type of specificity to assist in investigation and discovery. They are documents recording the type of information– from alternative suspects, to witnesses, to vehicle information, to alternative theories of the crime – that should be disclosed to defendants under normal police practices.

**To-From Memos:** Approximately 17% of the criminal defense files were missing to-from memos that were present in the investigative files: (see Row N of Attachment G) Handwritten and typed to-from memos, not on GPRs, are another classic type of document typically contained in "street files" that were supposed to be prohibited during the relevant time period from 1985-1991. Like handwritten notes, they contain a wide range of information – from alternative suspects, to witnesses, to vehicles, to alternative theories of the crime.[52]

**Investigative File inventories:** Only 3 of the criminal defense files that I reviewed had an inventory to serve as an index of documents in the police investigative files.

As discussed above, normal police practices and procedures require the creation and dissemination of an inventory that serves the purpose of providing a compilation of all of the investigative materials related to a criminal investigation. The inventory sheet was apparently designed to be used as an index of documents in an Investigative File. Even when an inventory sheet is available, they were often incomplete (i.e., missing entries that were listed on the investigative file inventory or not listing handwritten notes or other

---

[51] Again, 10 of the 48 were excluded to give CPD the benefit of the doubt.

[52] Notably, in only six of the more than 40 cases in which I conducted a comparison of criminal defense files to investigative files were there even to-from memos. This strongly suggests that there are additional investigative files in addition to the ones the City produced, as set forth in Section VII, below. Defendants in this case testified that they routinely used memos to communicate between shifts, which is consistent with my findings in reviewing investigative files in Fields and Kluppelberg.

documents) or were so generic as to be worthless (e.g., including overly generic entries, such as "GPR," with no date, number of pages, or author).

Other types of important investigative material often missing from the criminal defense files included photographs, lab reports, evidence reports, hold requests and release of person in custody reports, and arrest reports. See Attachment F.

As discussed below in Sections V.G and V.H, these same problems infected the Rivera files as well.

### 3. Issuing a subpoena does little to ensure disclosure of all relevant materials

Even in cases where a criminal defense attorney went out of his or her way to send a subpoena requesting the "investigative" or "street files," my analysis reveals that there was no guarantee that a defense attorney would receive all the relevant investigative materials beyond the official reports in the permanent retention file. In many instances, the defense attorney issued a subpoena specifically for "street files," and that subpoena appears in the investigative file, but not all the documents in the investigative file were disclosed in response to a subpoena. For example, subpoenas specifically for "street files" were issued by defense counsel in the following cases, but as described in Attachment F, not all the documents were turned over in response: G235351 (subpoena at RFC 2922); J052070 (subpoenas at RFC 5250-52); J080925 (subpoena at RFC 5987); J209456 (subpoenas at RFC 6333, 6335-36); J215119 (subpoena at 6498); K417078 (subpoena at RFC 8181-82); K455932 (subpoena at RFC 8393); K530917 (subpoena at RFC 8783-85); M184949 (subpoena at RFC 9653); M287641 (subpoena at RFC 10192); M579697 (subpoena at RFC 10784); N028256 (subpoena at RFC 11332); N262285 (subpoenas at RFC 12628-29, 12702-03); N475910 (subpoena at RFC 13121-22); N581836 (subpoena at RFC 13575-76); P049272 (subpoena at RFC 13944-45); P060434 (subpoena at RFC 14475-76); P128067 (subpoenas at RFC 14647-49); P526822 (subpoena at RFC 16315-16).

These problems with CPD's responses to subpoenas and file requests persisted regardless of who sent the request. In fact in one case that I reviewed, an Assistant State's Attorney described the difficulties obtaining the complete set of investigative materials from CPD. In 1987, Sherman Addison was and convicted of the 1985 murder of Helen Smith. The case was sent back for a retrial, and in 1994, during a court hearing about discovery an Assistant State's Attorney explained that "usually there is an investigative file. We never had that, never had it for the first trial." JR-L 214518. He also reported to the Court that even though the prosecutor met with Detective Jedlowski, the lead detective in the case, before the first trial:

> [a]ll he had was the typed police report which is the normal police report that is always issued in cases, the non-investigative type police report. No notes, no GPRs, and that is what she [the prosecutor] was shown by him. She noted that he didn't have a copy of the street file or the investigator file so that is why she then subpoenaed the investigative file but she was not tendered anything by Detective Jedlowski and, in fact, Detective Jedlowski happened to be in the building yesterday so I spoke with him also and he verified the fact that all he had was just the typed police reports, supplementary reports

44

JR-L 214520-21. In fact, the lead detective made multiple representations to the prosecutors that he had provided the "complete set" of police files.

These subpoena responses suggest deficiencies with regard to the two most basic requirements of a process to ensure complete disclosures to defendants: (1) the City did not know what files it had and where (not centrally located or indexed); and (2) it did not have policies or procedures to ensure that whatever investigative material was found was turned over in its entirety. The latter finding is particularly troubling: it suggests that CPD personnel were picking and choosing which investigative materials in the files to turn over.

### 4. The missing pages contain important and relevant information that should have been disclosed to criminal defendants

Finally, entirely consistent with the findings above, in the majority of cases I reviewed there were significant amounts of relevant information that would have aided the defendant and therefore should have been disclosed under standard police procedures. In my experience, given the volume of investigative material that was not disclosed, it was inevitable that relevant information helpful to a criminal defendant would be withheld. That is exactly what I found.

Below are some examples from the comparison of the defense attorney files and the corresponding police investigative files that demonstrate this problem:

**J209456 – David Quinones, Bruce Andras, Marc Johnson**

Quinones, Andras and Johnson were charged with the May 19, 1987 murder of Eddie Mercado, and attempted murder of Nicky Lanzarin and Luis Rodriguez. Andras reportedly told police that he was shot at the week prior by members of a rival gang, and the drive-by shooting in this case was allegedly planned in retaliation.

Among the documents missing from the criminal defense files are a request for identification photos (RFC 6443) of three men: (a) criminal defendant Bruce Andras, (b) Santiago Chacon, and (c) a man named Mickey Harris, whose name does not appear elsewhere in the investigative materials and whose connection is otherwise unexplained. The fact that police were interested in obtaining identification photos for Mickey Harris suggests he may have been an alternate suspect, and information that led police to pursue this lead should have been disclosed. Moreover, the fact that there is no information on who Mickey Harris is, or how police obtained this name, or why detectives thought his photos would be relevant to the investigation, suggests that additional investigative materials created during this investigation, are missing from this file.

Handwritten notes elsewhere in the investigative files were also withheld. A handwritten note at RFC 6334 lists a criminal case number (94CR0105701), the significance of which is not explained. This page is missing from both Quinones and Johnson's defense attorneys' files. The number 87117788701 is likewise handwritten on a blank page at RFC 6332, and is not included

45

or otherwise explained in any official reports. RFC 6332 is missing from both Andras and Johnsons' defense attorneys' files.[53]

### P526822 - Miguel Borrotto

Miguel Borrotto was charged with first degree murder and aggravated battery with a firearm after he allegedly shot Fulgencio Torres and Angel Sotos in a bar fight on October 26, 1991.

A supplementary report at RFC 16300 notes that an Illinois vehicle registration card was found in the pocket of the shooter's jacket, which he took off and left behind after fleeing the bar. The card from the shooter's jacket was for a Nissan with the license plate ZZ1384. However, two documents which are missing from the defense attorney's file (a vehicle search printout at RFC 16394 and a receipt for the purchase of the vehicle at RFC 16401) show that the defendant owned a Nissan with a license plate number YVK670, not ZZ1384.

Also missing from the defense attorney's file is a page of handwritten notes (RFC 16397) on which the names Eduardo Castro and Karl Lugo are written. These names are not included in supplementary reports or mentioned elsewhere in the investigative file. The presence of unexplained names in the file suggests that there are other investigative materials for this case (for instance, that explain the source of the names and their relevance) that are now missing from this particular file.

### J080925 – Samuel Slack

Samuel Slack was charged in July 1987 with the February 1987 armed robbery and murder of Estella Winburn.

Two fingerprint comparison reports are missing from the defense attorney's file. The report at RFC 5984 notes that the victim's prints were compared for elimination purposes. The report at RFC 5982 requested that the defendant's prints be compared to "all unidentified latent prints," but no results are listed in the report.

Five photographs at RFC 6074-79 were also withheld from the defendant. These photos are labeled with the names Jeffery Johnson, Christopher Morrow, Fines Gerard Savage, Clarence Parker, and Carl Harrington. A supplementary report at RFC 6007 notes that five photographs were shown to eyewitness Alvin Robles, and Robles "tentatively identified" the photo of defendant Slack. In fact, Robles first identified Johnson as the shooter in a photo lineup in February 1987 (RFC 6017-19), but Johnson was released when Robles failed to identify him in a live lineup (RFC 6014). Slack was not identified in a live lineup by Robles until five months later, in July 1987 (supp report at RFC 6005-06). The arrest reports for two of the men in these photos, Savage and Johnson, were also withheld from the defense attorney (RFC 6042, 6056).

---

[53] An additional file for this case was found in the two drawers that Plaintiff was given access to from Area North, and that file contains information pointing to an alternate suspect that also was not produced to the criminal defendant. The existence of a separate file, with different documents and information, stored in another location, demonstrates the risks of maintaining a parallel file system.

Given the fact that the same eyewitness who implicated Slack in the shooting previously identified another suspect, exactly which photos were used in the lineup could have been an important part of Slack's defense.

### N028256 – Jesse Swanigan

Defendant Jesse Swanigan was charged with the January 1990 murder of Roy Stolle. Swanigan was ultimately found not guilty of the murder charge but was sentenced to 7 years on the theft and possession of a stolen motor vehicle. Swanigan claimed to have run across the real perpetrator of the burglary, saw him loading two TVs into his car, yelled "police" to scare him off, and drove off in the car. The TVs were later determined to have been stolen from the victim's home during the burglary and murder. Swanigan denied any involvement in the burglary and admitted only to stealing the car with the TVs inside, and to later attempting to sell the TVs to a friend named Benny Buford.

Several mug shot photographs from the investigative file (RFC 11300-09) were withheld. The men's names are written on the back of most of the photos along with the note "filler" on several. Two of the photos, however, also have a note stating, "unidentified…misidentified as Swanigan, Jessie." No names are listed on these two photos.

A handwritten phone message (RFC 11324) was also withheld from the criminal defendant. The phone message appears to be from a John Reed, and on the back are details regarding Reed's contact information and place of employment. Reed's name does not appear anywhere else in the file and there is no indication whether detectives ever followed up with Reed or what information he may have provided.

### M258570 – Curtis Kirkland

Curtis Kirkland was charged with first-degree murder in January 1991. Victim Stanley Moody was chased and beaten by several men in June 1989 and eventually died from his injuries. Kirkland and another man, Michael Sargent, were both charged with murder after eyewitnesses identified them in lineups. Sargent was found not guilty (RFC 9920), but Kirkland was convicted and sentenced to 38 years in prison (RFC 9919).

Several pages of handwritten notes (RFC 9984, 9987, 9989-90) contain names not included in supplementary reports – Carmen Tate, Eddie Richardson, Ernest Roberts, Carl Evans. These names are mentioned in the investigative file only in a GPR at 10081. A handwritten note at RFC 9989 contains potentially important information tying Ernest Roberts and Carmen Tate to the crime, apparently provided by an anonymous source: "Ernest …V with Joe…Michael has baseball bat…Carmen had rock[?]…all people in liquor store saw it…would you like to remain anonymous??...YES."

A memo in the defense attorney's file (JR-L 223955) indicates that a witness named Avory Moore volunteered these names to Kirkland's defense attorney nearly two years after the crime and several months after Kirkland was charged. Police interviewed a possibly related witness named Courtney Moore (see canvass report at RFC 9959), who owned a nearby

47

laundromat, but supposedly saw nothing and could provide no information. Avory Moore's memo reads "I was working at the Laundromat…across the street from where this guy was beat up and killed…Curtis was not 1 of the 8 guys that was involved in this incident. I know they (sic) guy who had the stone was called Carmen, and the man who had the 2x4 was called Ernest."

This highly exculpatory information was clearly known to detectives early on in the investigation, based on the notes at RFC 9989, but was only uncovered independently by the defense attorney, and then only partially – it is not clear that the defense attorney uncovered the names or significance of Eddie Richardson, or Carl Evans.

### N162782 – Tomas Nieves

Tomas Nieves was charged with the April 11, 1990 murder of Benedicta Gonzalez, who fell or was pushed out the window of an apartment building during an argument and died of her injuries.

The investigating detectives appear to have considered several male acquaintances of Gonzalez as potential suspects before eventually arresting and charging Nieves. Gonzalez was a known drug dealer, and had related dealings with these various men. Gonzalez's daughters told police that a man they knew as "Mike" was with their mother that day, and initially identified a John Lowden in a photo array (see supplementary report at 11924), but one of the girls later changed her identification (RFC 11932). Other witnesses identified Mike as Mike Amidei. Amidei had an alibi for his whereabouts that day, but cooperated with police and identified Jose Montero in a live lineup in May 1990 (RFC 11945). Amidei told police that he had seen Montero at Gonzalez's apartment when he himself went there to buy drugs on April 11, 1990.

It is not clear from the investigative file how police identified Nieves as a suspect. A supplementary report dated October 28, 1990 (RFC 11949), six months after the murder, notes that "the reporting detectives developed information that a male white Hispanic known as Tomas Nieves was involved with the deceased in a failed relationship." After Nieves was brought in for questioning, detectives had Mike Amidei (who previously gave a definitive identification of Jose Montero) view another lineup (see RFC 11943). Amidei changed his story and identified Nieves as the man he saw at Gonzalez's apartment the day of her murder.

A number of photos relevant to the investigation were withheld from Nieves's defense attorney, including polaroid photos (RFC 11956-66) of the various men who were considered as alternate suspects, and polaroid photos taken at the crime scene (RFC 11955). These crime scene photos included a photo of a pair of glasses found at the scene, which police used to track down Nieves and tie him to the crime. Moreover, the fact that there is no information about how Nieves was identified as a suspect suggests that there is additional investigative material that once existed but is no longer included in this file.

### P272087 – Demetrius Johnson

In connection with this investigation, Demetrius Johnson was charged with the murder of Fred Erwin and was convicted on June 12, 1991. The investigative file contains documentation of an in-person lineup, in which a witness positively identified an alternative suspect named Bryan Johns. See Bates No. RFC 15470-71. The report of this lineup and all references to this

lineup occurring are omitted from the permanent retention file and were not provided to Erwin or his criminal defense attorneys and are also missing from the CCSAO file. Instead, typed police reports included in the permanent retention file state that Bryan Johns appeared in a lineup that resulted in no positive identification (see supplementary report at RFC 15480).[54] I note, in relation to my other opinions in this case, that this is an investigation in which Defendant Guevara was actively involved.

*     *     *

I received copies of the Cook County State's Attorney's Office files for each of the examples above, and in each case the material identified as withheld from the criminal defendant was also withheld from the State's Attorney's Office.

In several of these cases, and many others identified in Attachment F and G, there are handwritten notes, or GPRs that list names and contact information of individuals without additional context or explanation of their relationship to the investigation. In my experience, it is likely that these were individuals whose names came up during the investigation as possible suspects or witnesses that a detective would want to remember and follow up on. That is exactly what I found in my review of the undisclosed street file in Fields; it contained handwritten notes listing names without any explanation, which were in fact referring to important alternate suspects.[55] These examples emphasize how important it is to disclose all investigative materials, because the importance or relevance of certain pieces is not always apparent looking at a document in isolation.

Moreover, the fact that the relationship of various names is not explained elsewhere in the investigative files produced in this case is indicative of the practice of using multiple, parallel files for an investigation: there is no evidence that explains where the names came from, or evidence of any follow up to investigate those names. That suggests that detectives continued to store that information in separate files, that were not ultimately stored with the investigative files produced in this case. One example of this are the photos, from what appear to be an August 31, 1988 lineup, that were produced from ERPS for the first time in this civil case in 2013 (see Section V.H, below).

### E. CPD's policies after *Jones* and *Palmer* don't ensure disclosure of all relevant investigative materials

All police officials are aware of the challenges of ensuring that, over the course of an evolving criminal investigation involving multiple investigators developing evidence at different locations and times, that investigating officers document their findings and that such investigative material is collected, preserved, compiled and disclosed. In the CPD's case, it was acutely aware of these challenges since 1982, at the time of the *Jones* case, and the problems created by using multiple, parallel files. Yet, it has made only superficial attempts to resolve its

---

[54] The withheld lineup information is also missing from the CCSAO file for this case. While there is some possibility that this criminal defense file was transferred and could be incomplete, that is unlikely to explain the omission since the information is also missing from the CCSAO file.

[55] See CITY-NF-001062; CITY-NF-001076; CITY-NF-001085, which list names of alternate suspects without any additional information.

"street files" problem. It issued written directives, but they were incomplete and insufficient in their scope, and beyond that they were not supplemented with the training, auditing and monitoring necessary to ensure that the necessary changes in practice occurred. Unsurprisingly, then, the street files problem continued.

1. A department-wide teletype issued during the *Palmer* litigation;
2. Detective Division Notice 82-2 (Detective Division Notice - File Control);
3. Special Order 83-1 (Detective Division Special Order – File Control);
4. Special Order 83-2 (Detective Division Special Order – Investigative Files);
5. Special Order 86-3 (Detective Division Special Order – Investigative Files); and
6. Standard Operating Procedures (SOP) 1988

Instead of using the *Jones* and *Palmer* litigation as an opportunity to reform its practices and implement standard police procedure of creating one single, centralized file for each investigations, those directives actually instructed detectives to create multiple, parallel files, each with different information and did nothing to address the fundamental problems regarding: (1) allowing officers discretion about what to document in the official reports; and (2) the absence of any system or training for responding to subpoenas and ensuring complete disclosures of investigative material. Moreover, the CPD provided only minimal training on these orders, and failed to conduct any audit, supervision, or oversight to ensure that detectives were following these new directives.[56]

## 1. The policies are insufficient to remedy the "street files" problem

### a. The Teletype and Detective Division Notice 82-2

In April 1982, after a Temporary Restraining Order was issued in the *Palmer* litigation, CPD issued two documents: (1) Detective Division Notice 82-2[57] and (2) a 1-paragraph teletype to commanding officers alerting them to the TRO.[58] As Hickey explained, Notice 82-2 was "a quick and dirty document" designed to implement the TRO but was "not very workable."[59]

Notice 82-2 and the corresponding teletype were concerned only with preservation and were silent about procedures to collect or inventory their notes, memos, or other documents. Although it coined the term "Unit Investigative File," it did not require detectives to put notes or memos into Unit Investigative Files; and it did not specify whether detectives had to preserve notes or memos that were not in the file.[60]

Even with Notice 82-2's limited requirements and scope, the CPD showed little commitment to implementing that Notice. There is no evidence of training to implement the Notice, and six months after its implementation, Commander Stibich testified that it was still the

---

[56] Hickey *Fields* Dep. at 10, 43.

[57] NF-L 008751

[58] NF-L 008754; Hickey, *Kluppelberg* Deposition 201 (NF-L 001141)

[59] Hickey *Kluppelberg* Deposition 221-22, 224; (NF-L 001161-62, NF-L 001164); Brzezcek Test. NF-L 007517

[60] NF-L 008751-53; Hickey *Kluppelberg* Deposition 212-13 (NF-L 001152-53)

prevailing view that if a detective kept his own personal notes or memos – or considered those to be his personal property – then Notice 82-2 did not require the detective to put those notes or memos in the file and detectives felt they could do whatever they wanted with those notes or memos, including destroying them.[61]

Based on this and other testimony, Judge Shadur found that Notice 82-2 responded to the TRO in "an improperly restrictive and grudging manner, under which detectives could consider their investigative writings as their personal property (and thus not 'under Detective Division control') and therefore outside the preservation requirements of Notice 82-2."[62] The comments of Commander Stibich and the findings of Judge Shadur make clear to me that the practice of keeping information in parallel files that were not shared with prosecutors or criminal defendants was an ingrained problem within the police department, and one that would require the sort of dramatic change in attitude and culture that could only be achieved through extensive training, monitoring, and discipline.

### b. Special Order 83-1

On January 3, 1983, Detective Division Notice 82-2 was replaced by Special Order 83-1. Special Order 83-1 applied only to the field investigations of detectives assigned to Violent Crimes.[63] Special Order 83-1 defined certain terms and created procedures for documenting and preserving investigative documents. Special Order 83-1 defined the term "Investigative File" and created something called an Investigative File Case Folder to secure documents relating to a criminal investigation. According to the terms of Special Order 83-1, an Investigative File Case Folder was to be created either when certain categories of violent crimes occurred[64] or when a violent crime investigation resulted in an arrest and approval of felony charges.[65] Special Order 83-1 also created an "Investigative File inventory sheet," which was supposed to identify each document placed in the Investigative File.[66] The inventory sheet was to be forwarded to the Records Division anytime felony charges were lodged.[67] Finally, Special Order 83-1 created General Progress Reports ("GPRs").[68] The GPR forms were to be used by detectives whenever they were taking handwritten notes or writing memoranda to other detectives.

Unlike Notice 82-2, Special Order 83-1 created an affirmative obligation for detectives to submit handwritten GPRs or investigative materials for review and inclusion in the investigative file. It also mandated that detectives transcribe relevant information previously recorded on a

---

[61] Stibich Test. (NF-L 007468-70)

[62] NF-L 005615-16

[63] NF-L 007223-27

[64] Those categories of violent crimes were identified in Special Order 83-1, V(A)(1): Homicides/Medical Examiner Cases; Police-related shooting incidents;  Batteries likely to result in death; Rapes and Deviate Sexual Assaults, and Any other major violent crime field investigation that the unit supervisor deems appropriate.

[65] Special Order 83-1, V(A)(1) & (2)

[66] Special Order 83-1 IV(D)

[67] Special Order 83-1, IV(D)

[68] Special Order IV(E); Hickey *Kluppelberg* Deposition 170 (NF-L 001110)

GPR or other miscellaneous documents on an official CPD case report form (general offense case reports, supplementary reports, etc.).[69]

In reviewing Special Order 83-1, Judge Shadur identified several deficiencies, including:

- Unless the crime being investigated fit one of the specified of violent crimes, there was no obligation to create an Investigative Case File Folder unless and until the offender was arrested and felony charges were approved. According to Judge Shadur, and in line with standard police practices, this continued to pose the same type of risk that information would not be retained and disclosed because there was nothing to prevent against selective retention while the case is investigated;[70]

- It only required detectives to include "relevant" information in the official reports and offered no guidance about what information a detective should deem "relevant," leaving discretion for detectives to withhold information based on their assessment that it was not relevant.[71]

- It did not include information to ensure that any detective who has or receives information relating to a violent crime field investigation not assigned to him will forward the information to the assigned detective for investigation and inclusion in the Investigative File Case Folder;[72] and

- It omits any provision defining how the CPD responds to a criminal subpoena or request by the State's Attorney to produce information relating to a criminal proceeding.[73]

Moreover, the training on 83-1 was inadequate. Hickey testified that he provided a one-time training to about 1,000 detectives.[74] He said each training session was done in groups of 30-40 people, and lasted approximately 3 hours.[75] During that three-hour training session, he went over Special Order 83- 1. One training session was wholly insufficient to try to change a decades-long practice, especially one so ingrained in the culture of the police department.

### c. Special Order 83-2

On May 2, 1983, Special Order 83-2 was issued. Three of the changes in Special Order 83-2 were (1) a requirement that detectives create records reflecting all relevant information, V(B)(1); (2) a requirement that where a detective receives information about another crime, he or she pass that information along to the detective investigating that other crime, V(B)(6); and (3)

---

[69] Special Order 83-1 V(B)(1) & (2), NF-L 008772-73

[70] NF-L 005620

[71] Special Order 83-1 V(B) (NF-L 005620); Hickey *Kluppelberg* Deposition 238; (NF-L 001178); Hickey *Kluppelberg* Deposition [2015] 20.

[72] NF-L 005621

[73] NF-L 005621

[74] Hickey *Kluppelberg* Deposition 308-309 (NF-L 001249-50); NF-L 008808

[75] Hickey *Kluppelberg* Deposition 309 (NF-L 001250); NF-L 008808

that a copy of the Investigative File Inventory Sheet will be transmitted to either the Office of Legal Affairs (in case of a subpoena from a criminal defendant) or the State's Attorney's Office (in case of a discovery motion) so that the inventory sheet is disclosed to defense counsel in a criminal case, V(B)(6).[76] Hickey also testified that Special Order 83-2 also created the Investigative File Control Card, IV(F).[77] This Control Card was supposed to act like a library card so that the Investigative File could be accounted for.

Despite these new requirements in 83-2, there is no evidence that CPD provided any additional training to update detectives on the differences between 83-1 and 83-2.

Moreover, even if detectives had been adequately trained on Special Order 83-2, it was still deficient. Here are some of the deficiencies that should have been apparent to CPD policymakers.

- **Special Order 83-2 still did not comply with standard police practice to require a single repository for all investigative information maintained by a lead investigator**.

- **Special Order 83-2 applied only to detectives**, and it explicitly excluded from its directives all other officers involved in investigating major crimes, such as gang crimes officers, officers from bomb and arson, and officers from patrol, among others. The failure to include gang crimes officers is particularly egregious: it was well understood within CPD leadership that gang crimes officers participated in homicide investigations,[78] and the Valentin investigation at issue in this case is an obvious example of the intimate involvement of gang crimes officers in homicide investigations. Yet, there was no training or other effort to ensure that gang crimes officers were preserving their notes in the wake of *Jones* or otherwise.[79]

- **Special Order 83-2 provided no guidance about what information a detective was required to include in a supplementary report beyond information deemed "relevant."**[80] Relevance is of course subjective and, as Commander Stibich testified, what is relevant to one detective may not be relevant to another.[81] In fact, Hickey testified that a detective would only have to put information in a supplemental report if the detective deemed it pertinent at the time that the detective wrote the supplemental report, regardless of whether the detective considered the information relevant when he or she received it.[82] For example, Hickey testified that CPD policy did not require suspects who had been eliminated through investigative activity to be documented in any way.[83] Based on my experience, this is inconsistent with standard

---

[76] NF-L 008746-50

[77] Hickey *Kluppelberg* Deposition 228-29 (NF-L 001168-69)

[78] Hickey *Rivera* Deposition 229-32.

[79] Hickey *Rivera* Deposition 55, 87-88.

[80] Hickey *Kluppelberg* Deposition 238; (NF-L 001178); Hickey *Kluppelberg* Deposition [2015] 20

[81] Stibich Test. NF-L 007474

[82] Hickey *Kluppelberg* Deposition [2015] 24-25, 33

[83] Hickey *Kluppelberg* Deposition 237-38 (NF-L 001177-78)

53

police practices. Alternate suspect information, for example, is highly relevant information and its documentation and disclosure to criminal defendants is critical.[84]

- **Special Order 83-2 provided no guidance about how information should be communicated or documented among detectives**, for example when one detective learned something about a crime being investigated by another detective; or when one unit learned something about a crime that is also being investigated by another unit. While section V(B)(6) of Special Order 83-2 codifies the obligation to "forward" information about a crime to the assigned detective, it does not require either detective – the detective passing along information or the receiving detective – to document that information.[85] Similarly, even where the detective passing along the information may have created a document memorializing that information – *e.g.*, a memorandum or GPR – there is no requirement in Special Order 83-2 that the resulting memorandum or GPR be distributed to other detectives or units investigating that crime.[86]

- **Nowhere does Special Order 83-2 state that the entire investigative file should must be disclosed in response to a discovery motion or subpoena, or provide procedures for doing so.** Despite the underlying circumstances of *Jones* and Judge Shadur's admonishment about the failure to "defin[e] the CPD's duty or procedure in responding to a criminal subpoena or request by the State's Attorney to produce information relating to a criminal proceeding," Special Order 83-2 included absolutely no policy directive or procedure to ensure production of investigative files. Although the City claims in this litigation that its practice was to disclose the entire investigative file, such a directive is conspicuously absent from the Special Orders. Instead, the Special Order contains an instruction to forward a copy of the inventory to the Records division to be forwarded to the defense attorney. This might imply that in fact the policy was not to copy and disclose the entire investigative file, but just the inventory. In addition, there is no rule, policy, procedure, directive or any other document that guides the clerks in the subpoena unit to ensure that all documents are retrieved from all possible locations and disclosed, or any training to that effect.[87] The CPD's lack of clear policy guidance, as well as the lack of any guidelines or instructions to ensure retrieval and disclosure of all investigative material, are each egregious violations of generally accepted police practices. Indeed, these are both straightforward requirements of any policy regarding maintenance and disclosure of investigative materials, and, as explained above, standard practice is to keep a single investigative file and to have a clear policy requiring that the single investigative file be copied in its entirety and disclosed to the prosecutor or directly to the defense attorney. The result within CPD was entirely predictable: confusion among detectives

---

[84] This does not prevent an investigating officer from also documenting information explaining why the suspect was eliminated.

[85] Hickey 236-37 *Kluppelberg* Deposition (NF-L 001176-77)

[86] Hickey *Kluppelberg* Deposition [2015] 39, 43, 46

[87] Hickey *Rivera* Deposition 36, 185-87; City of Chicago's Amended Response to Plaintiff's Seventeenth Set of Requests to Produce Documents to the City of Chicago, p.2-3 (no guidelines or instructions and no training).

and subpoena personnel about their disclosure obligations, as acknowledged by Hickey.[88]

- **Inventory sheets are an inadequate mechanism for ensuring disclosure of documents generated during the police investigation.** While the investigative file inventory sheet is designed to be used as an index of documents in the file, there is no guidance about what level of detail is needed in the inventory sheet to ensure that it serves its purpose. Indeed, my review of the records demonstrates that the inventories are largely useless because the entries are too general, often missing dates, descriptions and numbers of pages, such that one cannot tell whether they have the document referenced. In addition, that sheet is only distributed beyond the Area or investigating unit if felony charges are placed IV(D); V(B)(6).

- **Finally, there is no provision in Special Order 83-2 requiring an audit or oversight to ensure compliance with the special orders.**

### d. Special Order 86-3

On May 29, 1986, the CPD issued Special Order 86-3. Special Order 86-3 largely replicates its predecessor with some minor adjustments, most of which actually limited, rather than expanded, to policies governing disclosure of investigative materials to prosecutors and defense attorneys. For example, Special Order 86-3 more explicitly limits the creation of Investigative File Case Folders to homicides or felony investigations where charges have been approved, or an arrest warrant issued; it eliminates the requirement that the inventory sheet be forwarded when a criminal subpoena or discovery motion is received; it eliminates the requirement that handwritten notes or other investigative materials be submitted "promptly (normally at the end of each tour of duty)" and instead only states that such notes must be "submitted."

In these ways, Special Order 86-3 actually deviated further from standard police practices than the special orders that came before it:

- **It still did not comply with standard police practice to require a single repository for all investigative information maintained by a lead investigator**.

- **It permitted detectives to maintain their handwritten notes as personal files for longer periods of time,** by removing the requirement that they turn in the notes and investigative materials "promptly (normally at the end of each tour of duty)." Thus, even if detectives retained their handwritten notes on their person, or in their locker for extended periods of time, it would not clearly violate the Order. In my experience, that level of discretion is a gross deviation from standard police practices, especially in light of the ingrained problem in CPD.

---

[88] Hickey Rivera Deposition at 253-54. He testified to remembering conversations when he was in charge of records division in which there were questions from subpoena clerks and detectives about what they were required to produce in response to subpoenas, including whether the entire investigative files had to be turned over.

- **It still provided no guidance about what information a detective was required to include in a supplementary report beyond information deemed "relevant."**

- **Finally, it removed even the inadequate stop-gap measure of providing the inventory sheet to defense attorneys**, leaving defense attorneys with no mechanism to determine whether they had received all the relevant investigative materials.

Special Order 86-3 included a section VI, titled "Inspection." That section requires "[e]xempt members of the Detective Division" to "conduct periodic, unscheduled inspections of the subject files to ensure compliance." According to Stibich, however, he had no idea if, when, how often, or in what manner such inspections were conducted.[89] Hickey, too, does not know of any such auditing ever occurring.[90] Nor is there any evidence that detectives were trained on this new policy.

### e. Standard Operating Procedures (SOP) 1988

In 1988, Chief of Detectives John Townsend wrote standard operating procedures to govern the work of detectives. Chapter 18 deals with investigative files. Chapter 18 contains "no substantive changes of any kind" from Special Order 86-3.[91]

### f. Summary

The policies implemented by the CPD were inadequate to remedy the "street files problem" and deviated from standard police practices regarding documenting and disclosing investigative materials.

*Continued use of parallel files*. None of the policies required a single repository for all investigative information maintained by a lead detectives. In fact, in reviewing the materials provided, I identified *at least* three different files that would be created relating to any criminal investigation pursuant to the special orders. First, there would be a permanent retention file in the Records Division, containing only supplementary reports, general offense case reports and the arrest report filed under the accompanying RD number.[92] Second, there would be a unit RD file: Hickey testified that this was a slim file kept in the homicide drawer at the Area to identify that there is a case open.[93] Like the permanent retention file, it would contain all the known official police reports: original case offense report, supplementary reports, lab reports and other documents sent to the investigative unit from support units.[94] Third, there would be the investigative file maintained by the detective area.[95] This file would contain documents that

---

[90]  Hickey *Rivera* Deposition 244, 249.

[91] Hickey *Rivera* Deposition pages 250-51.

[92] Hickey *Kluppelberg* Deposition 22-23, 95-96.

[93] Hickey *Kluppelberg* Deposition 115-16, 299-300.

[94] Hickey *Kluppelberg* Deposition 115-16, 299-300; S.O. 86-3

[95] Hickey *Kluppelberg* Deposition 297-300 (NF-L 001238-41)

individual detectives assigned to investigate the case have determined should be in there.[96] As noted above, none of the files had to have the same documents in them: In fact, by design, they did not.[97] Likewise, Hickey admitted that the files did not even necessarily have the same *information* in them.[98]

But in addition to these files, investigative material could also be kept in the Evidence and Recovered Property Section (like the photos produced in this case in 2013), arrest reports could be kept at the Identification section, and individual detectives could each keep their own running/working files during an investigation.[99] Defendant detectives in this case have also admitted to documenting investigative information in unofficial documents, like Serafini Reports, that never become part of the official file.[100]

Moreover, additional files were also created by other units of the Chicago Police Department, because the policies only applied to the Detective Division. So, in addition to the multiple files above, gang crimes officers, other special unit investigators, and patrol officers, could each have additional sets of files related to a homicide investigation, and the special orders are silent as to those additional files, if and how they are to be preserved and maintained, and whether they are to be disclosed to prosecutors and criminal defendants. This case is an example of the problem: despite intimate involvement of gang crimes officers in the homicide investigation, no gang crimes notes, memos or daily activity summaries have ever been produced. Yet, like any investigators, gang crimes officers would have had a need to take notes, and indeed many of them in this case admitted that they kept such notes and documentation.[101]

This was an obvious omission. In fact, Hickey testified that he raised the fact that Special Order 83-1 was only addressed to the Detective Division and that the Department might want to look beyond the detective division to see if the problem extended to other units.[102] And at some point, Hickey suggested that perhaps Research and Development and Auditing Internal Controls Division should get involved because there may be department-wide implications to the use of street files.[103] But there was no response from the chain of command to Hickey's concerns and CPD never looked to see if the problem of street files went beyond the Detective Division. This failure to look beyond the detectives – notwithstanding the fact that they worked closely with other units in investigating crimes – was deficient and allowed yet more parallel files to be created in other parts of the Department.

---

[96] Hickey *Kluppelberg* Deposition 297-300 (NF-L 001238-41)

[97] See for examples Hickey *Kluppelberg* Deposition [2015] describing documents that would go in the investigative file but not in the permanent retention file at 71-72, 81, 91, 94, 100, 103, 105, 108-110

[98] Hickey *Kluppelberg* Deposition at 100.

[99] Hickey *Kluppelberg* Deposition at 295-96; Hickey *Fields* April 2014 Trial Testimony at 2069.

[100] Rinaldi Deposition at 28, 34 (detectives prepared what he called "Serafini reports" for open cases, which comprised leads and investigative results that were passed from one shift of detectives to the next to update the investigation's progress; but these Serafini reports were never made part of the official file).

[101] Hickey April 2014 Fields Trial Testimony, at 2060:16-21); Hickey November 2016 Fields Trial Testimony, at 11/23/16 PM, at 14-15; Zacharias Deposition at 183-84, 193-96, 200, 203-06; Fallon Deposition at 60-62, 145; Gawrys Deposition at 187-88, 218.

[102] Hickey *Kluppelberg* Deposition 207-208 (NF-L 001147-48)

[103] Hickey *Kluppelberg* Deposition 208 (NF-L 001148)

The problems created by such an unwieldy system are obvious: It creates the potential for information and documents to go missing because they are not centrally controlled. Moreover, because the files are designed to be different and to be retained in different locations, there is no way to ensure that the complete investigative file is produced during any criminal prosecution.

*Discretion to determine what is relevant and needs to be documented and disclosed.* Second, the policies also left detectives with far too much discretion about what information to document in official reports and when to turn in investigative materials. This is particularly true because the status quo had previously been not to record or document information – at least not on official documents that would be maintained by CPD and disclosed to the prosecution and defense. As a result, to overcome this culture – and this citywide practice – CPD had to be explicit in its requirements and provide direct guidance about what did or did not have to be documented; it is not enough to leave it up to the individual officer.

An egregious example of the problems of officer discretion relate to the lack of a requirement to document elimination of suspect. Indeed, Hickey testified that it was not the policy of the CPD to require detectives to document suspects who were eliminated.[104] To the contrary, it was permissible and consistent with the special orders not to document the identity or investigative steps taken to eliminate a suspect if a detective did not think that information was relevant or if the detective discounted it for some reason.[105] This is a significant departure from standard police practice, which calls for officers to err on the side of documentation and disclosure of such information, which is often crucial to other investigators on a case and highly likely to contain exculpatory information.

### 2. The City failed to provide proper training and oversight to ensure compliance with the special orders

On a department-wide scale, there was no action taken whatsoever to ensure that the special orders were being followed. The only training provided was one three-hour session after 83-1 was issued. But some of the Defendant detectives in this case deny receiving any such training; Defendant Rinaldi, for example, testified that in the period around Plaintiff's prosecution in 1988 and 1989, Area 5 detectives had been given no instructions about whether they could keep their own files, or given requirements for doing so; and accordingly there was no effort to ensure that all exculpatory information in investigative notes were preserved or tendered for inclusion in the official file. In other words, training or no training, he was oblivious to the requirements of the special orders.[106]

This is because, even if it did occur, one three-hour training session on just the first iteration of the policy change was wholly insufficient to try to change a decades-long practice. In fact, Hickey testified that the years after Special Order 83-1, he learned that unit detectives were reverting back to carrying their own files on the street separate and apart from the file maintained by CPD.[107] Nothing, however, was done about this.

---

[104] Hickey *Kluppelberg* Deposition 237-38 (NF-L 001177-78)
[105] Hickey *Kluppelberg* Deposition 339 (NF-L 001280); Hickey *Kluppelberg* Deposition [2015] at 66-67.
[106] Rinaldi Deposition at 50-54.
[107] Hickey *Kluppelberg* Deposition 321, 327 (NF-L 001262, NF-L 001268)

Hickey also explained that although he did a sampling prior to the special orders being issued, he did not do one at any time after Notice 82-2 and was not aware of anyone else conducting such an audit.[108] Hickey testified that members of the police department were supposed to conduct inspections pursuant to Special Order 83-2 and 86-3 but Hickey could not identify any instances of audits or investigations.[109] Likewise, the City has produced no documentation that any such inspections were ever conducted. Hickey also testified that detectives were not disciplined for failure to comply with the Special Orders.[110] Similarly, Commander Stibich testified that supervisors were supposed to review files but he had no idea how often, when or the manner in which that review was conducted.[111] Put simply, policymakers failed to train, review, or supervise subordinates to ensure that the Special Orders were followed.

In fact, it appears that there was no oversight to ensure that the special orders were being enforced and that the street files practice was eliminated. This is particularly troubling given the importance and scope of the problem and is certainly deficient. You cannot expect a department-wide, decades-long practice to be eliminated by simply issuing an order that was read at roll call a few times. Based on my experience, this requires extensive and ongoing training (not a one-time session of a couple of hours), careful auditing and monitoring, and meaningful discipline when the new special orders were not followed. Based on my review of the record, almost none of this occurred. Accordingly, CPD leadership either knew or was deliberately ignorant of the fact that the street files problem continued unabated after issuance of the special orders

### F. The police investigative files show that the directives were not properly implemented

#### 1. The police files from the 1985 to 1989 time period show that CPD's policies were not followed

I reviewed 180 of the 190 total investigative files from 1985-1991,[112] excluding those that appeared to be incomplete. I reviewed them to evaluate whether the files, standing on their own (i.e. without comparing to a permanent retention file or defense file) demonstrated compliance with the 1982, 1983, and 1986 special orders, or if the practices that led to the wrongful prosecution of George Jones continued, like the use of informal street files and the failure to tell the complete story of the investigation in official reports (and instead typing up official reports for only the part of the investigation that led to the person charged). The files show that the special orders were not followed in a number of ways (which would have been obvious in any reasonable file audit):

---

[108] Hickey *Kluppelberg* Deposition 160-61, 166, 167 (NF-L 001100-01, NF-L 001106-07)

[109] Hickey *Kluppelberg* Deposition 375-76; Hickey *Rivera* Deposition 244, 249.

[110] Hickey *Fields* Dep. at 10, 43. Hickey *Kluppelberg* Deposition 213.

[111] Stibich Testimony NF-L 007461-62

[112] As set forth earlier in my report, these 180 investigative files take up 184 rows, because several contain multiple criminal defense files. The multiple rows for a single investigative file are italicized, and counted only once toward the statistics below.

### a. Handwritten notes, not on general progress reports, are still routinely used

As discussed above, the special orders directed officers to use GPRs to take notes, and were intended to eliminate the use of handwritten notes on loose sheets of paper without any context of who wrote the note and when. I found that detectives consistently used handwritten notes despite the direction in the special orders. 110 of the 180 files I reviewed, or approximately 61%, contained handwritten notes not on GPRs.

### b. To-from memos are still being used

As discussed above, the special orders also directed officers to stop using to-from memos to communicate investigative information, and to instead include that information in GPRs and Supplemental Reports. However, I found that detectives continued using to-from memos: 36 of the files, or approximately 20%, contained to-from memos not on official police forms.

### c. Review of permanent retention files: all relevant information in unofficial documents is not transcribed in official reports

The special orders state that all relevant information must be transcribed into an official report, in an effort to ensure that the permanent retention file, which contains only official reports, provides a complete picture of the investigation. The special orders also require that inventories be sent to the permanent retention file for distribution to prosecutors and criminal defendants (as discussed above, an indication that CPD contemplated that it would only initially produce permanent retention files). These requirements were routinely flouted.

I was provided with copies of 138 permanent retention files, 43 of which corresponded to investigative files from the time period 1985 – 1991 (for one of the 44 investigative files, the permanent retention file was not located), and intend to rely on them to demonstrate the City's failure to train, follow, or implement its special orders. **See Attachments F and G**.

First, I examined the permanent retention files, standing alone, to assess whether they communicated a complete picture of the investigation. My finding is that the permanent retention files in CPD are different in kind from those I've seen in other police departments around the country. Usually, an official file reads like a novel: it tells a story, with twists and turns in the plot and characters whose importance waxes and wanes. CPD's permanent retention files routinely lack this texture; they read like a single (often final) chapter of the novel – the one that explains the information that led to charges against the person ultimately charged. Put another way, in most departments, in addition to the various strands of the investigation, there is a charging memo in the official file that explains the basis for charges; CPD's entire official file is a charging document (or file).[113]

Second, I compared and contrasted the 43 permanent retention files with their corresponding investigative files. **See Attachments F and G.**

---

[113] In my review of permanent retention files in Fields, which I also rely on here, I made the same observation and reached the same conclusion.

The case files I reviewed are replete with examples where information on handwritten pages (whether on scraps of paper or GPRs) and informal memos between investigators, is not transferred into official reports. In many cases, the information is potentially exculpatory. By not transcribing the information into an official report, it is less likely to get into the permanent retention file, and as observed above, to criminal defendants. I have provided a number of such examples in Section V.D.4. Other examples include RFC 4873-75,[114] RFC 11711-17,[115] RFC 10701,[116] RFC 6379, RFC 16395, RFC 8213, RFC 8388, RFC 8438, RFC 11324, RFC 14712, and RFC 14761.

In numerous cases, including some of the example pages cited in the paragraph above, I found handwritten notes containing cryptic notations on a page, without context: a name, a phone number, an address, a license plate number, etc. By not transcribing information into official reports, all of the context related to a given note is lost, both to other investigators on the case and to prosecutors and defense attorneys. Who said it? When? Why did the detective consider the particular notation important enough to jot down? Because the information is not typed into an official report, these questions cannot be answered. In my experience, it is typical to see notes like this in a file, and often it is critical information (a new witness previously unknown, contact information for someone who couldn't be located, a piece of information that credits or discredits a witness or suspect, etc.). An investigator cannot write down everything a witness is telling them, and so they jot down the key information so that they can remember it and accurately convey it later in an official report, with the full context of its relevance to the investigation. But in my review of hundreds of CPD files in this case (as well as Fields and Kluppelberg), this final step is too often not done. The result is a violation of the Special Orders, which require relevant information to be written down and transferred into official reports, as well as a failure to disclose important information to prosecutors and criminal defendants.

Finally, many of the investigative files produced in this case are lacking inventories (itself a violation of policy). In addition, more than 50% of the permanent retention files do not contain a copy of the inventory, also a violation of the special orders. And for the cases where inventory sheets were included in the permanent retention files, they were often incomplete or the description of the documents were so generic or general so as to be unusable

### d. Inventories are missing or incomplete

I also noted that documents were often added to the inventory sheet long after they were initially created. In some instances, some inventory sheet entries were not created until after an offender had been charged. In other files, the dates are either illegible, or do not appear at all. In other instances, there are stamped dates, but nothing shown as entered. In other instances, an item is shown as entered, but not date or individual entering. In other instances, a large quantity

---

[114] An anonymous note in the investigative file provides the name and description of a single offender who allegedly committed the crime along with information about where he could be found.

[115] Notation that Arron Thomas was a purported eyewitness to the crime and that, on the day after the crime, Thomas was arrested in connection with an armed robbery and participated in a lineup.

[116] A GPR instructing someone to bring a blue knit hat for the lineup. The offender had worn a similar hat, and the defendant reports that he was made to wear this hat at the lineup, years after the crime.

of GPRs and supplemental reports were entered all on the same date.  Some limited examples:

J-409858
M-079435
M-127008

The delay in creating an inventory sheet reveals three problems. One, it again demonstrates the amount of discretion that officers could exercise when deciding what to put into an Investigative File: if an inventory sheet is only created after an individual is charged, detectives can exercise discretion over what they deem relevant at the end of an investigation. Second, if the documents are not logged on the inventory sheet until after the charges are brought, that indicates that documents are being stored in other, undisclosed locations during the course of the investigations, which was precisely the problem the special orders should have addressed. Finally, if detectives obtain additional information after charges are brought, there is no mechanism in place to update the inventory sheet in the Records Division, or in the inventory sheet disclosed (albeit rarely) to criminal defendants.

### 2. The investigative files confirm that there was no training, auditing, or oversight to ensure compliance with the policies

These consistent failures to follow the requirements of the special orders reveal that detectives were not properly trained on the special orders and that there was no proper supervision or oversight to ensure that these special orders were followed.

Had there been any systematic audit or review of these files, these trends would be immediately apparent. But my review of the files shows no signs of an audit or review.  Though the CPD had forms designed to facilitate oversight and supervision, those forms were routinely missing or blank in the files I examined. This includes the following:

**Homicide File (Chain of Command) Review:** This form is designed to document that the chain of command responsible for overseeing the investigation and compliance with relevant departmental policies and procedures has actually done so. Many of the files that I reviewed either were missing the form, had only a single signature, or had no signatures as all. That is, there is essentially no documentation of supervisory review in the investigative files. This demonstrates a willful disregard among supervisors for ensuring that detectives were following the policies.

**Investigative Case File Control**: Many of these are missing. This form is designed to maintain case integrity and chain of custody of investigative files. It is common during an investigation for a file to be routinely removed for a multitude of legitimate reasons (crime lab, consultation with other units, review by prosecutor, court appearances, etc.) The case file control form documents the file's movements so that it is clear whether and when information may have been copied or removed. In most of the cases that I reviewed they are either missing, have so few entries as to be unbelievable, or have not entries at all – an impossibility. This is another important form for discovery purposes because it should reveal all the individuals that may have contributed to the file, including from

other divisions or units. The failure to systematically utilize them properly, and the concurrent institutional failure to enforce compliance, indicates a pattern and practice of indifference to the policies for maintaining investigative files.

**Detective Division Personnel Form**: This sheet is designed to quickly track and identify detective division employees, where they are assigned, working hours, and equipment. It does not necessarily account for officers from other units. Regardless, in the majority of the cases reviewed, this form is missing altogether.

**Case Assignment Slip**: The Case Assignment Slip is designed to document initial detective(s) assigned and conclusion status. These are key individuals to seek out in discovery for documents, depositions or testimony. Again, enough of these forms are missing to demonstrate a clear pattern and practice of disregard for the policy.

As discussed above, without ongoing monitoring through audits and other means to ensure that the new special orders were being followed and that prosecutors and criminal defendants were receiving complete disclosures, it was almost certain that the ingrained practice of using street files would continue.

My review of records in this case and others shows that the continuation of the street files practice, including the failure to follow the special orders, was so rampant that it would have been confirmed through even a cursory auditing of files. As discussed above, 100% of the Investigative Files I reviewed contained evidence that the special orders were not being followed – they were either lacking inventories, had incomplete inventories, had handwritten notes not on GPRs, or had to-from memos not on GPRs; and most often, some combination of these things – and more than 90% of defense attorney files were missing information from the Investigative File; even superficial audits of small samples of records would have revealed these problems.

The failure to audit or discipline for non-compliance with the policies (see Sections IV, V.E.2) signals that the old ways – the ways of "street files" that the CPD should have been trying to correct – are acceptable. It is not only that best practices require enforcement of special orders to give them teeth, but also, in my experience with Internal Affairs, given the circumstances here strict adherence was necessary to create a new culture and practice so that detectives would not continue with the ingrained practice of keeping undisclosed parallel files

G. **There is strong evidence in the police investigative files, the Valentin investigation itself, and other CPD street file cases that there are yet other investigative files and documents that are unaccounted for by CPD and inaccessible to the prosecutors and criminal defendants**

1. **My analysis of hundreds of files indicates that investigative information is being kept in other repositories or being destroyed**

The files I reviewed demonstrate that the investigative files were not the central repository for information. My review of the files revealed cases where information that should be included was absent from the investigative file, as well as instances when the investigative

63

files specifically reference a piece of information, but the corresponding information is not documented in the file. This suggests that the missing information was stored in separate files, or otherwise destroyed. Examples of such missing information include:

- No explanation on photographs, such as when or where the photo was taken, who/what is depicted in the photograph or why the detectives believe it is relevant to the investigation. The missing information suggests that the paperwork, notes, or other investigative materials that led to the photograph were maintained separately from the investigative files produced in this case.

- Missing forms, such as missing inventories, inventory control cards, property inventories, Major Crime Worksheets, Gang Crimes Daily Activity Summaries, etc.

- Other missing forms or documents including missing medical records, missing property inventory forms, or missing search warrant affidavits, and missing search warrant returns.

- No live lineup photos, where there are lineup reports.

- Reference to other units or outside agencies processing evidence, but no documentation in official reports, no results, and no chain of custody.

- Cryptic handwritten notes with no explanations as to source, relevance, or why included.

- Numerous Xeroxed handwritten spacer/filler pages with A/4-VC; A/1-VC; A/3-VC which would indicate other sources for relevant documents that may, or may not, have been. Other examples include listing detective's names and unit numbers on Plain pages – or officers from other agencies - suggesting that information is coming from other, unidentified sources.

Using the example of missing inventories above, they are missing in approximately 37% of the investigative files the City disclosed. Likewise, I identified ten investigative files produced by the City that contain no GPRs or handwritten notes at all.[117] In my career, I am aware of no other instance in which a homicide investigation was conducted in which no notes were taken at all, and a number of the defendants in this case admit that they took notes as part of their investigative practices. The most likely explanation for each of the findings above is that there are yet other files for each of these ten homicides that contain additional investigative material and inventories.[118] Indeed, among the files I reviewed, there are nine cases in which two

---

[117] G-063126, G-129819 , G-256674, H-167635, J-423347, K-575912, M-020288, M-381429, M-538914, N-133637.

[118] This is true regardless of what terminology is used to describe the files: If the City contends that the files produced in this case are supposed to be Investigative Files as defined under the special orders, then, the files demonstrate that other, parallel files were maintained containing additional investigative material. If the City contends they are not Investigative Files as defined under the special orders, then the files produced are themselves examples showing that the parallel file system continued unabated after issuance of the special orders.

investigative files were produced – one that was found in the warehouse (where investigative files for closed cases and open cases older than ten years are supposed to go, pursuant to the special orders), and one that was found in the two drawers of file cabinets to which Plaintiff's counsel in this case was given access.[119] These cases, which suggest that there are many other examples among the other 45 file cabinets of drawers, are strong evidence of a continued street files practice in which multiple repositories are kept, each with different information; and in which some or all of these repositories exist outside of official channels, and are therefore unknown or unaccounted for by the subpoena service unit and unavailable to prosecutors and criminal defendants.

### 2. The documents and testimony from this case provide further evidence of the existence of additional files and the failure to preserve investigative information.

In addition to the evidence above, the evidence in this case provides strong evidence that additional repositories of investigative information exist in unofficial and undisclosed forms.

Detectives routinely prepared an investigative document called a Serafini report. Detectives prepared "Serafini reports" for open cases, which comprised leads and investigative developments that were passed from one shift of detectives to the next to update the investigation's progress.[120] The Serafini reports were not unique to Area 5; their use actually began in Area 4.[121] Hickey, the City's own designee, acknowledged the use of Serafini Reports.[122] *However, these Serafini reports – full of highly relevant and potentially exculpatory information - were never made part of the official file*.[123] Indeed, there are no Serafini reports in any of the Valentin homicide files produced in Mr. Rivera's criminal case or this civil case; and I did not see a single such document in the hundreds of investigative files I reviewed in this case, or other CPD cases like Fields and Kluppelberg.

Gang crimes investigators, too, had special investigative documents they created that were never made part of the official files, called daily activity reports or "humper" reports.[124] Defendant Fallon, a gang crimes investigator assigned to the Valentin homicide investigation, testified that gang crimes specialists filled out a daily activity report at the end of every shift. These daily reports listed investigative actions taken during the shift and leads that required follow-up by the next shift; this included highly relevant information like details of witness identifications of suspects from gangbooks, witness names and contact information, and so on.[125] The specialists paired each activity with a Record Division number, thus permitting the activity to be linked to a particular investigation.[126] The daily activity reports were stored at the gang

---

[119] G-235351, J-209456, J-215119, K-530917, K-466033, N-475910, M-541953, M-556260, P-129569.
[120] Rinaldi Deposition at 28-29, 34, 100-101.
[121] Rinaldi Deposition at 100-101.
[122] Hickey Rivera Deposition at 291-93.
[123] Rinaldi Deposition at 34. "[W]hen I'd read the official file, I wouldn't see those notes and stuff in there."
[124] Hickey *Rivera* Deposition at 134-35,138-39; Fallon Deposition at 50, 73-74.
[125] Fallon Deposition at 50, 73-74, 145.
[126] Fallon Deposition at 50-51.

crimes office.[127] Yet, no such documents were produced in any of the Valentin homicide files produced in Mr. Rivera's criminal case or this civil case; and I did not see a single such document in the hundreds of investigative files I reviewed in this case, or other CPD cases like Fields and Kluppelberg.

Also missing from the files produced before Mr. Rivera's criminal case, and the files produced more recently, are any gang crimes notes, either on official forms like GPRs or in unofficial forms. The files are completely devoid of such notes, despite the involvement of eight gang crimes investigators in the Valentin homicide investigation (Guevara, Gawrys, Noon, Guzman, Sparks, Zacharias, Fallon, and Sparks). And again, there is a dearth of such notes in the hundreds of other investigative files I also reviewed.

This is entirely consistent with the testimony of the Defendant gang crimes investigators in this case, who testified in effect that gang crimes officers operated entirely outside the system. As discussed at length above, they were not subject to the Special Orders, or any other set of requirements to ensure that they preserved and disclosed investigative material.[128] Accordingly, gang crimes specialists admitted that the gang crimes officers maintained their own parallel file, kept by individually and in the gang crimes offices.[129] Indeed, it was well known that gang crimes officers participated in homicide investigations, and like any other investigators created notes.[130] Yet, those documents were not subject to preservation and disclosure requirements.[131] Defendant Zacharias, for example, testified that he never recalled giving his notes to a detective for inclusion in an official file, or recalled seeing any of his fellow gang crimes officers do so; he does not know of any gang crimes officer that would produce street files in discovery; and prior to 1993, he cannot remember ever seeing an official file that contained gang crimes specialists' notes.[132] Defendant Gawrys, another gang crimes specialist, admitted that gang crimes notes and humper reports created to alert other detectives about what investigation needed to be completed were removed from the official file before the file was readied to go to storage.[133] At least some gang crimes officers destroyed those notes as a matter of practice, with the blessing of their supervisors.[134]

Notably, it appears that gang crimes files all went missing at some point after the gang crimes specialists were consolidated at offices on Maxwell street. File cabinets with their case files were moved from the various gang crimes offices to the consolidated office on Maxwell Street in 1993, but it is unknown where those files are currently.[135] The lack of tracking and

---

[127] Fallon Deposition at 68.

[128] Hickey Rivera Deposition at 87-88, 231-33; Fallon Deposition at 60-66; Gawrys Deposition at 37-38, 188, 190.

[129] Zacharias Deposition at 183-84; Fallon Deposition at 67-71; Gawrys Deposition at 37-38, 188; Spratte Deposition at 379.

[130] Hickey *Rivera* Deposition at 229, 275-76; Gawrys Deposition at 187-88, 190, 218; Fallon Deposition at 60-66.

[131] Spratte Deposition at 264-65, 379

[132] Zacharias Deposition at 193, 195-96, 200, 203-04, 206.

[133] Gawrys Deposition at 213-14.

[134] Fallon Deposition at 60-62, 63-66; Gawrys Deposition at 37-38, 188, 190, 209-210; Spratte Deposition at 379.

[135] Spratte Deposition at 37, 97-99, 339, 378.

66

accountability for large numbers of investigative files is an egregious departure from police standards.

As discussed above, the failure to put in place policies that covered gang crimes was an egregious omission, and one that was obvious and predictable. Indeed, as set forth in Section V.E.1 above (pp. 53, 56-58), the need for department-wide changes was raised with CPD top brass (rather than just detective division), but rejected.

In sum, the investigative files contain only a portion of the investigative materials that, based on my experience would typically be included in a comprehensive homicide investigation file.[136] This indicates that other parallel repositories of investigative information exist or that information that is supposed to be preserved is being destroyed

### 3. Kluppelberg and Fields are additional examples of cases in which previously missing street files containing highly exculpatory information were discovered in civil litigation decades after the original criminal trials

This case has remarkable similarities to the facts and circumstances of other CPD cases that I've examined extensively. In particular, both Fields v. City of Chicago and Kluppelberg v. City of Chicago, two other wrongful conviction cases from the 1980s, present additional examples of what the City had already learned in Jones and Palmer: that the failure to effectively and properly maintain, track and disclose investigative material, there is a grave risk of withholding exculpatory information, and in turn, of wrongful prosecutions and convictions. After Jones and Palmer, Fields and Kluppelberg are additional examples of cases in which clearly exculpatory information was buried in a street file that was not disclosed until civil discovery in their civil rights lawsuits, decades too late. A brief summary of each of those cases is provided below, and further information is contained in **Attachments H and I**.

#### a. Fields v. City of Chicago

Nathson Fields was convicted in 1986 of the 1984double murder of Jerome Smith and Talman Hickman. Fields' conviction was thrown out after a court granted his petition for post-conviction relief, but he was re-tried in 2009 and acquitted. He then filed a civil rights lawsuit against the City of Chicago in 2010, and during discovery for the civil lawsuit, a street file of over a hundred pages of police reports and notes concerning the Smith/Hickman murders were located in a file cabinet at Area Central, along with files relating to other murders. The City admitted that the file had not been previously disclosed to Mr. Fields or to prosecutors.

The documents newly produced in the street file, which were not contained in any of the earlier files, include handwritten notes, memos, and other documents identifying multiple alternate suspects and potential leads demonstrating that Nathson Fields was not involved in the Hickman and Smith homicides. Notably, it also included a previously undisclosed rap sheet for an alternate suspect with an issued on inquiry date stamp that undermined the prosecution's theory of the case. Nathson Fields name, meanwhile, was never mentioned as a possible suspect

---

[136] **Attachment E** provides background materials regarding what kinds of investigative documents should appear in a homicide investigation, including examples of checklists used during criminal investigations.

in any of these documents.

In December 2016, a jury found that the failure to disclose the street file to Mr. Fields was the result of a pattern and practice of CPD, and awarded Mr. Fields compensatory damages of $22 million.

### b.  Kluppelberg v. City of Chicago

James Kluppelberg was convicted for a 1984 fire that killed six people.  In 1984 the fire was investigated by CPD's Bomb and Arson division and Area Three Violent Crimes.  Bomb and Arson investigators could not determine the origin of the fire and Area Three detectives closed the case as accidental.  But the case was re-opened in 1988. During the 1988 investigation, Area Three detectives found new fire investigators to rule the case an arson, and James Kluppelberg was coerced into confessing to the crime. At his 1988 criminal trial, Kluppelberg only had the documents from the 1988 Area Three investigation.  The 1984 Area 3 and Bomb and Arson files were withheld.

Following his exoneration, Kluppelberg filed a civil case. In 2014, during the civil case, a new file was discovered that had never been disclosed in the criminal proceedings. That file contained investigative materials from the 1984 Area Three investigation, and included critical exculpatory information.  Specifically, it included handwritten notes that a neighbor had reported there was loose and dangerous wiring in the basement that got wet sometimes -- undermining the arson determination and supporting the evidence that the fire was accidental. It contained numerous references to individuals who had had arguments or fights with the victims. And the file also contained a memo between detectives that recounted a statement from an alternate suspect named Isabel Ramos who had started another porch fire in a building nearby and just hours before the fire for which Kluppelberg was convicted. Moreover, Ramos reported that she had been intoxicated at the time, could not remember what she had done, but thought she perhaps set other fires.

The file was found on a pallet among other Area 3 files at the records warehouse, and it appears it was packed up in 1991 when Area 3 was relocated.  Neither of the Bomb and Arson files (from 1984 or the reinvestigation in 1988) has been located, much like the gang crimes documents in this case.

In both of these cases, the undisclosed documents should have been produced to Mr. Fields and Mr. Kluppelberg before their original criminal trials in 1986 and 1988 (and at numerous points after that). These documents should have been produced under generally accepted police practices related to creating, retaining, and disclosing investigative materials.

### H.  The failure to turn over crucial documents in Jacques Rivera's criminal case was a direct result of these practices and inadequate policies

I have familiarized myself with the underlying facts in Mr. Rivera's case, including those facts set out above in Section II above, and have reviewed the various sets of police files produced to Mr. Rivera at the time of his criminal trial, at later dates during his criminal case, and during this civil litigation, including (a) the permanent retention file (Hickey 1-33); (b) the

68

investigative file produced to Mr. Rivera in April 2014 during this litigation (Wron 1-69); (c) the file produced by Mr. Rivera's criminal defense attorney, Judge Wadas (RFC 469-810); (d) a set of photos produced to Mr. Rivera in March 2013 during this litigation from the Evidence and Recovered Property Section (the "ERPS file"); (e) the file produced by the Cook County State's Attorney's Office ("CCSAO file") (SAO 1-820).

What is clear from my review is that the file Judge Wadas (Mr. Rivera's criminal attorney during his original criminal trial in 1990) received was nothing more than official police reports later designated as the permanent retention file. When official reports are received by the records division as an investigation is ongoing, those reports are stamped with a date and time of receipt.[137] A comparison of the Valentin permanent retention file and the police reports present in Judge Wadas's file reveal that both sets of pages have the exact same date and time stamps, in the exact same location on the page, each of which were placed on the police reports when they were received by the records division. In other words, the police reports in Judge Wadas's file came from the permanent retention file at records division.[138] It is also notable that, much like the permanent retention file, Judge Wadas's file contains no GPRs or handwritten notes of any kind. In addition, Judge Wadas testified that the file he produced in this case contained everything he ever received.[139]

The investigative file (Wron 1-69) was not produced to Judge Wadas before the criminal trial. It contains approximately 30 pages of investigative material that were not disclosed until decades later. At earliest, these pages of investigative materials we disclosed during Mr. Rivera's post-conviction proceedings, close in time to CCSAO ASA Darren O'Brien beginning to work on the case. For years, that file was unaccounted for: the City's employee responsible for investigative files at Area North, Mr. Wronkowski, has testified that he did not know where the investigative file had been between the time of Mr. Rivera's criminal trial in 1990 and Mr. Wronkowski's search in 2011.[140] There is no investigative file control card documenting chain of custody for the file.

It is also apparent that the investigative file (Wron 1-69) was not produced to the CCSAO at the time of Mr. Rivera's criminal trial. The CCSAO file from the time of trial is gone. The State's Attorney working on Mr. Rivera's post-conviction case, ASA O'Brien, sought to reconstruct the file when he started work on the post-conviction case. O'Brien had the CPD provide him missing police reports. The CCSAO file contains an inter-office mail from Gillian

---

[137] Later, after it is determined whether the particular investigation is one that must be permanently retained in the records division, the records division adds a second, "PERMANENT RETENTION" stamp.

[138] There are a few police reports in Judge Wadas's files that don't have the time and date stamps from the records division. The first report is the original case incident report (RFC 532-535), and it doesn't have time and date stamps in the permanent retention file either (HICKEY 3-6). The second is page 3 of a 27 August 1988 supp report (RFC 509), which like the original case report isn't stamped in the permanent retention file either (HICKEY 9). That leaves a single police report that is included in Judge Wadas's files without a time and date stamp: the September 15, 1988 Arrest Report for Jacques Rivera. That report is not in the permanent retention file at all.

[139] Wadas Deposition at 51.

[140] Wronkowski Deposition 86, 65-66.

McLaughlin to O'Brien's investigator McGreal; that inter-office mail envelope is in the CCSAO file right before the police reports produced from Area Five. In other words, it is likely that part of the investigative file (Wron 1-69) were produced to the CCSAO after ASA O'Brien began to work on the post-conviction proceedings in 2009 or later. Still later, the whole file was produced in the midst of this civil litigation. Further supporting this conclusion, Judge Wadas testified that he had everything in his file that the prosecutors had because they showed him their file at the time of Mr. Rivera's criminal trial.[141]

The documents newly produced in the investigative file include handwritten notes and other investigative material that undermine the prosecution's theory of the case, contain potential investigative leads, suggest investigative misconduct and demonstrate Mr. Rivera's innocence. For example, the investigative file contains the rap sheet for Mr. Rivera, discussed above, that shows an issued on inquiry date stamp of 8/27/1988. Based on my experience in other cases involving the Chicago Police Department, that date stamp was placed on the rap sheet when it was requested by investigators working the Valentin investigation and was issued by the records division. The date stamp of 8/27/1988 is the same day as the Valentin shooting and is a full two days before 8/29/1988, the date on which police report that Orlando Lopez identified Mr. Rivera in a photo album. This document is contained only the investigative file – it is excluded from the permanent retention file, the CCSAO file, and Judge Wadas's file. It is highly exculpatory because it establishes that the defendants deemed Mr. Rivera a suspect before the sole eyewitness supposedly identified him. This fact could have been used to impeach all of the State's witnesses at trial.

Other documents in the investigative file containing relevant investigative material not produced to Judge Wadas are WRON 0001-0008, 0011-0014, 0018-0021, 0037-0038, 0042, 0045-0048, 0052-0069. They include:

- As a general matter, all GPRs created and preserved in connection with the Valentin investigation are excluded from Judge Wadas's file. In addition:
- WRON 0002-0003: the investigative file inventory, which is supposed to list all of the investigative materials created during the course of the investigation. Without the investigative file inventory, it is impossible to know what documents should be contained in a police investigative file and when they were placed in that file.
- WRON 0012: a handwritten report documents that Felix Valentin died on September 14, 1988, after contracting a bacterial infection earlier in his hospital treatment.
- WRON 0037: a photograph of Jacques Rivera taken either after or before the second lineup.
- WRON 0045: an evidence report on the photographs taken of the second lineup.
- WRON 0047-0048: the criminal complaint.
- WRON 0056: an arrest report, showing that Mr. Rivera was arrested on 8/30/1988 at 11 p.m. in connection with the Valentin shooting and relating that hold papers were submitted "due to the fact that the witness is not available to view a physical lineup which will be held on August 31, 1988," which is evidence that Mr. Rivera was placed in

---

[141] Wadas Deposition at 86-87.

a physical lineup in this case prior to 9/15/1988.

- WRON 0057: a hold form, showing that Mr. Rivera needs to be held at the department because "the witness to this case [Lopez] will not be available until tomorrow's date," further evidence of a first physical lineup. The hold sheet notes that there is an expectation that Jacques will be charged with the Valentin shooting at 7 p.m. on 8/31/1988.
- WRON 0058: an arrest report, showing that Jose Rodriguez is arrested on 8/31/1988 at 1 a.m. for the Valentin shooting. The report states that Rodriguez was identified by the victim.
- WRON 0059: a hold form for Mr. Rodriguez, dated 8/31/1988, stating that "a lineup must be viewed by the witness in this case" and noting that there is an expectation that Rodriguez will be charged with the Valentin shooting at 1 a.m. on September 2, 1988. Again, this is further evidence of an earlier physical lineup.
- WRON 0064: a GPR listing the six participants in the earlier physical lineup, with their biographical information and addresses.
- WRON 0062: an evidence form, dated 8/31/1988, documenting the placement into evidence of 6 photographs corresponding to the six individuals participating in the 8/31/1988 or 9/1/1988 physical lineup. This is further evidence of a first physical lineup. The submission of this evidence form and accompanying photos late on the evening of 8/31/1988 contradicts the official police account that the photos were used in a photo array procedure with the victim Felix Valentin on 9/1/1988.
- WRON 0052: a form to release Mr. Rivera from custody after the first lineup.
- WRON 0063: the form to release Mr. Rodriguez from custody after the first lineup.
- WRON 0060-61, 0065: reports about the 5 cartridge cases recovered at the scene.
- WRON 0055, 0067: rap sheets for Mr. Rivera. Neither of the rap sheets in Judge Wadas's files matches these rap sheets in the investigative file.
- WRON 0053: McLaughlin GPR dated 8/27/1988, 8/28/1988, or 8/29/1988, containing the original description purportedly given by Orlando Lopez.
- WRON 0054: Leonard GPR containing the canvass of nearby buildings.
- WRON 0069: McLaughlin GPR dated 8/27/1988, the date of the shooting, reflecting the hospital interview of Israel Lopez. After Israel's description of what he saw and did, it states, "Girlfriend's brother – [Orlando] Macho Lopez – 13 yo saw incident – has not been interviewed – Kings."

In addition to all of this, the ERPS file, which was not produced to Mr. Rivera until 2013 during this lawsuit, contains six photographs that appear to be of individuals participating in the first physical lineup. Those photos also would have shown that Mr. Rivera was placed in an initial lineup on 8/31/1988 or 9/1/1988.

All evidence regarding the earlier physical lineup not produced to the CCSAO, to Mr. Wadas, or to Mr. Rivera would have permitted attorneys in the criminal justice system to conduct a contemporaneous investigation to determine if Mr. Rivera had stood in a physical lineup before the 9/15/1988 in which he was supposedly identified, who had viewed the lineup, and who had been selected in the lineup. There is no documentation of a first physical lineup in the police file. According to Lopez, he viewed such a lineup and picked Mr. Rivera. According to Mr. Rivera and others, they stood in such a lineup. Mr. Rivera was released following that

71

lineup, suggesting strongly that he was not identified and instead Lopez identified another participant in that lineup. The defendants' entire case against Mr. Rivera rested on Lopez, the sole eyewitness, and if he had failed to pick Mr. Rivera in an initial lineup, that would have been highly exculpatory evidence.

The investigative files in Valentin investigation suffer from the same systemic problems observed in the investigative files I reviewed as a whole, from this case and others such as Fields and Kluppelberg. In sum, the documents in the investigative files are highly relevant to the investigation, and should have been produced to Mr. Rivera before his original criminal trial in 1990 (and at every other point at which he engaged with the criminal justice system after that). These documents would have been produced under generally accepted police practices related to creating, retaining, and disclosing investigative materials.

## CONCLUDING STATEMENT

I have provided my opinions based upon my training, experience, and after a careful evaluation of the totality of the materials and circumstances in this matter. I utilized all of the facts and data known to me, and applied generally accepted police management principles and methods. I hold the opinions set forth above to a reasonable degree of professional certainty in the law enforcement community, and based on longstanding and well-accepted law enforcement practices.

I reserve the right to supplement or modify this report and my opinions expressed in the report to the extent that additional information is presented to me and to the extent permitted by rules.

Pursuant to 28 U.S.C Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Michael D. Brasfield

72

## *Michael Brasfield and Associates, Inc.*

641 Olele Point Road                     Phone: 360-301-4465
Port Ludlow, WA 98365                    E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**
No. 12 CV 4428

# ATTACHMENT A

# *Michael Brasfield and Associates, Inc.*

641 Olele Point Road
Port Ludlow, WA 98365

Phone: 360-301-4465
E-mail: brasfield@commandscene.com

**Compliance with Federal Rule of Procedure 26 (a) (2) (B)**
**Testimony at Trial or Deposition for Preceding Four Years**

I have either testified at trial or deposition as a witness in Federal, State, and Local Courts throughout my law enforcement career.  These appearances have been in both civil and criminal matters.  I have appeared in Federal District Courts in Fort Lauderdale, Miami, Seattle, and Tacoma.  Civil litigation involving all types of police procedures and practices have included the use of force; police pursuits; deadly force; negligent selection, training, and retention; as well as class action and Federal Section 1983 civil rights cases.   Specifically, testimony and/or deposition over the last four years are as follows:

- In the United States District Court (Eastern District of Washington) – Creach v. Spokane County, et al. – Cause No. 2:2011cv00432 – For Defendant (Deposition & Trial) – 42:1983 Civil Rights Act. - Fatal shooting by police officer.
- In the Superior Court of the State of Washington (Spokane County) – Glidden v. City of Spokane Valley, et al. – Cause No. 11-2-04437-2 – For Defendant (Deposition & Trial) – Police Shooting - Negligent training, supervision, retention.
- In the United States District Court (Northern District of Illinois, Eastern Division) – April Ortiz – Cause No. 04-CV-7423 – For Plaintiff (Deposition, Rebuttal, Trial) – 42 USC, 1983 - Denial of Medical Care.
- In the United States District Court (Eastern District of Washington) – Duncan v. Liberty Lake – Cause No. 2:2012cv00219 – For Defendant (Deposition & Trial) – Violation of Civil Rights.
- In the United States District Court (Eastern District of Washington) - Thoma v. City of Spokane – Cause No. CV-12-156-EFS – For Defendant (Deposition) – 42 U.S.C. Sec. 1983
- In the United States District Court (Western District of Washington) – Theoharis v. Rongen – Cause No. 2:13-cv-01345-RAJ – For Plaintiff (Deposition) – 42 U.S.C Sec. 1983 – Excessive and Unreasonable Force and Unreasonable Search and Seizure.
- In the Court of Common Pleas of Allegheny County, Pennsylvania – Commonwealth of Pennsylvania v. Leon Ford (Trial) – Cause No. CC201303273 – For Defendant - Criminal charges.
- In the Superior Court for the State of Alaska (Anchorage) – Boshears v. State of Alaska – Cause No. 3AN-13-07970CI – For Plaintiff (Deposition) – Negligence of Duty.
- In the United States District Court (Northern District of Illinois, Eastern Division) – Percy Coleman v. City of Chicago – Cause No. 12C-10061 – For Plaintiff (Deposition) – 42 USC, 1983 – Wrongful Death.
- In the United States District Court (Northern District of Illinois, Eastern Division) – Deon Patrick v. City of Chicago – Cause No. 14C-3658 – For Plaintiff (Deposition) – 42 USC, 1983 – Wrongful Conviction.
- In the United States District Court (Northern District of Illinois, Eastern Division) –

James Kluppelberg v. City of Chicago – Cause No. 1:13-cv-03963 – For Plaintiff (Deposition & Rebuttal Deposition) – 42 USC, 1983 – Wrongful Conviction.
- In the United States District Court (Eastern District of Washington) - Rosen v. Pend Oreille County – Cause No. CV-15-00153-RMP – For Defendant (Deposition) – 42 U.S.C. Sec. 1983 – Employment.
- In the United States District Court (Northern District of Illinois, Eastern Division) – Nathson Fields v. City of Chicago – Cause No. 1:10-cv-1168 – For Plaintiff (Deposition & Trial) – 42 USC, 1983 – Wrongful Conviction / Monell Issues.
- In the Superior Court of the State of Washington (Pierce County) – Johnson v. City of Steilacoom, et al. – Cause No. 14-2-13145-9 – For Defendant (Trial) – Discrimination - Negligent training, supervision, retention.

In addition, I have provided my expert opinion, reviewed, consulted, and/or been retained in civil litigation related matters for plaintiffs and defense attorneys or governmental entities over 50 times in the last 10 years in Riverside County (CA), Trinity County (CA), Prescott County (AZ), Chicago (IL), Garland (TX), Bradley County (TN), Hazard (KY), Clallam County (WA), Franklin County (WA), Reno (NV), Unalakleet (AK), Whatcom County (WA), Albany (OR), Jackson (MS), Seattle (WA), Columbia (SC), and Sweetwater County (WY).

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road
Port Ludlow, WA 98365

Phone: 360-301-4465
E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**
No. 12 CV 4428

# ATTACHMENT B

**Attachment B - Report of Material Reviewed**


Plaintiff's Expert – Michael D. Brasfield

**<u>Jacques Rivera v. Guevara, et al.</u>**
No. 12 CV 4428


I have been provided and have reviewed the following documents and materials concerning this case:

- Pleading – Rivera v. Guevara Complaint
- Transcript – Jacques Rivera Criminal Case Transcripts
- Transcript – Jacques Rivera Criminal Sentencing Transcripts
- Transcript – Jacques Rivera Post-Conviction Transcripts (Part 1)
- Transcript – Jacques Rivera Post-Conviction Transcripts (Part 2)
- Transcript – Jacques Rivera Post-Conviction Transcripts (Part 3)
- Court Order – Granting Certificate of Innocence
- Court Order – Granting New Trial
- Pleading – Motion to Compel Street Files Discovery & Exhibits
- Pleading – Supplement to Motion to Compel Street Files Discovery & Exhibits
- Case File – Permanent Retention File (Hickey 1-33)
- Case File – Detective Street File for K 371 955 (Wron 1-69)
- Case File – Criminal Defense Attorney, Judge Wadas File (RFC 469-810)
- Case File – State's Attorney's Office File (SAO 1-820)
- Case File – Original Production in Civil Case (1-114)
- Line Up – Photos of First Lineup
- Line Up – Photos of Second Lineup
- Jacques Rivera FOIA Requests (JR-L 10492-10503)
- Individual Defendants' Joint Answer to Plaintiff's Complaint and Affirmative Defenses
- Defendant City of Chicago's Answer, Affirmative Defenses, and Jury Demand to Plaintiff's Complaint
- City of Chicago's Amended Response to Plaintiff's Seventeenth Set of Requests to Produce Documents to the City of Chicago, p.2-3
- City of Chicago's Response to Plaintiff's Second Set of Interrogatories
- City of Chicago's Response to Plaintiff's Fifth Set of Interrogatories
- Plaintiff's Response and Supplemental Response to City's Fourth Interrogatories
- Plaintiff's Response and Second Amended Response to City's Fifth Interrogatories
- February 18, 2016 Letter from S. Grusin to E. Rosen
- Chicago Police Department Special Orders Regarding Investigative Files
  - Chicago Police Department Teletype
  - Detective Division Notice 82-2
  - Special Order 83-1

- o Special Order 83-2
- o Special Order 86-3
- o Standard Operating Procedure 1988
- Chicago Police Department General Orders Regarding Lineups (83-5, 88-18, 06-02, as well as amendments)
- June 11, 2015 Stipulation Between the Parties
- Court rulings in *Jones v. City of Chicago*
- Court rulings in *Palmer v. City of Chicago*
- *Obrycka v. City of Chicago*, 913 F.Supp.2d 598 (2012)
- *Fields* Street File (from Area Central basement)
- *Kluppelberg* Street File (from pallettes found at CPD warehouse)
- Fields Verdict Form and Verdict Orders, Jury Instructions, Judgment, and Third Amended Complaint
- Gang Crimes Activity Summary (RFC 20172-73)
- Photos of Reynaldo Guevara (RFC 19393, 19519, JR-L 63213)
- FBI 302 regarding interview with Mohamed Omar (6/23/2001)
- Complaint from Juan Johnson vs. Reynaldo Guevara, 5 C 1042
- Complaint from Jose Maysonet v. Richard Beuke and Steven Rueckert
- Verdict form from Juan Johnson vs. Reynaldo Guevara, 5 C 1042
- Opinion in Obrycka v. City of Chicago, 7 C 2372 (12/20/2012)
- Opinion in Hunt v. Jaglowski, 85 C 1976 (7/21/1987)
- Opinion in People of Illinois v. Jose Montanez, 1-13-3726 (6/7/2016)
- Certificate of Innocence order from People of Illinois vs. Jose Montanez, 1993 CR 1817303 (11/2/2016)
- Certificate of Innocence order from People of Illinois vs. Armando Serrano, 1993 CR 1817301 (11/2/2016)
- Opinion granting suppression hearing from People of Illinois v. Arturo Reyes and Gabriel Solache, 1998 CR 1244002-03 (6/29/2016)
- Sidley Austin, Memorandum, Guevara Investigation – Armando Serrano and Jose Montanez, 3/3/2015
- Sidley Austin, Memorandum, Guevara Investigation – Robert Bouto, 3/3/2015
- Sidley Austin, Memorandum, Guevara Investigation – Roberto Almodovar, 2/9/2015
- Sidley Austin, Memorandum, Guevara Investigation – Gabriel Solache and Arturo Reyes, 12/12/2014
- Jacques Rivera Deposition (11/11/2014, 7/26/2016)
- Reynaldo Guevara Deposition (12/23/2013)
- Orlando Lopez Deposition (5/29/2013)
- Edward Mingey Deposition (4/4/2014)
- Daniel Noon Deposition (2/13/2014)
- Joseph Sparks Testimony (12/11/2013)
- Russell Weingart Deposition (6/17/2014)
- Paul Zacharias Deposition (1/17/2014)
- Gillian McLaughlin Deposition (5/24/2013)
- Stephen Gawrys Deposition (1/21/2014)

- Joseph Fallon Testimony (2/20/2014)
- John Guzman Deposition (11/24/2013)
- John Leonard Deposition (5/17/2013)
- James Spratte Deposition (6/23/2016)
- James Hickey Deposition, Rivera v. Guevara (5/6/14)
- James Hickey Deposition, Rivera v. Guevara (6/10/14)
- James Hickey Deposition, Kluppelberg – Part 1 (7/29/14)
- James Hickey Deposition, Kluppelberg – Part 2 (7/31/14)
- James Hickey Deposition, Kluppelberg (6/9/2015)
- James Hickey Trial Testimony, Fields (April 2014)
- James Hickey Trial Testimony, Fields (November 2016)
- Brasfield Trial Testimony, Fields (November 2016)
- Anthony Wronkowski Deposition (4/9/14)
- Judge Wadas Deposition (1/28/2014, 2/5/14)
- William Dorsch Deposition (4/14/15)
- Dr. Arthur Sharkey Deposition (1/15/16)
- Ramon Lopez Deposition (5/6/13)
- George Ruiz Deposition (5/6/13)
- Carlos Oliviero Deposition (5/18/13)
- Angel Villafane Deposition (5/18/13)
- Richard Beuke Deposition (7/2/15)
- Robert Klimas Deposition (5/19/16)
- Kathleen Loughran Deposition, Fields
- All of the materials reviewed in connection with my work on the case *Fields v City of Chicago*, which are set out in attachment/exhibit H to this report.
- All of the materials reviewed in connection with my work on the case *Kluppelberg v City of Chicago*, which are set out in attachment/exhibit I to this report.
- ADD

I also reviewed numerous investigative files, criminal defense files, and permanent retention files, as well as a spreadsheet of information from plaintiff's attorneys related to these files.

- CPD Public Defender Files

  - G063126 Sherman Addison [JR-L 212772-215312].pdf
  - G129819 Joaquin Gonzales [JR-L 202873-203213].pdf
  - G235351 Jesus Hernandez [JR-L 203214-203395].pdf
  - G235351 Torres Hipolito [JR-L 203396-203556].pdf
  - G256674 Richard Gonzalez [JR-L 203557-203855].pdf
  - G321911 Roberto Moreno [JR-L 203856-203878].pdf
  - H167635 Cynthia Lee [JR-L 203879-204073].pdf
  - H375595 Jose Delvalle [JR-L 204074-204939].pdf
  - H422157 Michael Boyd [JR-L 204940-205068].pdf
  - J052070 Michael Green [JR-L 215313-217081].pdf
  - J080925 Samuel Slack [JR-L 217082-217479].pdf

- o J209456 Bruce Andras [JR-L 205069-206061].pdf
- o J209456 David Quinones [JR-L 217480-220059].pdf
- o J209456 Marc Johnson [JR-L 206062-206321].pdf
- o J215119 Jerry Buckner [JR-L 220060-221685].pdf
- o J353821 Orlando Cintron [JR-L 206322-206366].pdf
- o J409858 Richard Sanchez [JR-L 206367-206459].pdf
- o J423347 Elmer Madrid [JR-L 221686-221866].pdf
- o K292921 LaTonya Pitchfork [JR-L 206460-206763].pdf
- o K417078 Orval Fain [JR-L 206764-206822].pdf
- o K455932 Felipe Rodriguez [JR-L 206823-207000].pdf
- o K530917 Amos Walker [JR-L 207001-207472].pdf
- o K575912 Michael Armstead [JR-L 227867-223599].pdf
- o M020288 Warren Robinson [JR-L 207473-207563].pdf
- o M184949 Francisco Benitez [JR-L 207564-207966].pdf
- o M258570 Curtis Kirkland [JR-L 223600-224210].pdf
- o M287641 Clarence Roberts [JR-L 224211-225194].pdf
- o M381429 Warren Murdock [JR-L 225195-226908].pdf
- o M538914 Henry Robinson [JR-L 226909-227343].pdf
- o M579697 Ras Green [JR-L 227344-227918].pdf
- o N028256 Jessie Swanigan [JR-L 207967-208332].pdf
- o N053000 Pierre Mahone [JR-L 208333-208519].pdf
- o N133637 Allen Whittington [JR-L 208520-209645].pdf
- o N162782 Tomas Nieves [JR-L 227919-228812].pdf
- o N176796 Tyrece Williams [JR-L 209646-209725].pdf
- o N203334 David Delgado [JR-L 209726-209738].pdf
- o N262285 Jose Baez [JR-L 209739-210229].pdf
- o N267450 Timothy Lee [JR-L 228813-229198].pdf
- o N475910 Ricardo Miranda [JR-L 210230-210456].pdf
- o N517875 Calvin McLemore [JR-L 212758-212771].pdf
- o N517875 Rolando Serrano [JR-L 210457-210744].pdf
- o N581836 Samuel Robinson [JR-L 210745-211080].pdf
- o N592324 Glen Miller [JR-L 211081-211830].pdf
- o P048272 Richard Conner [JR-L 229199-230507].pdf
- o P060434 Demetrius Thomas [JR-L 211831-212422].pdf
- o P128067 Robert Machine [JR-L 230508-231556].pdf
- o P272087 Demetrius Johnson [JR-L 212423-212489].pdf
- o P526822 Miguel Borrotto [JR-L 212490-212757].pdf

- CPD Investigative Files

  - o G063126 (RFC02417 - RFC02485).pdf
  - o G129819 (RFC02678 - RFC02729).pdf
  - o G235351 (RFC02919 - RFC02981).pdf
  - o G256674 (RFC02982 - RFC03028).pdf
  - o G321911 (RFC03322 - RFC03422).pdf
  - o H167635 (RFC04135 - RFC04168).pdf

- H375595 (RFC04585 - RFC04614).pdf
- H422157 (RFC04653 - RFC05112).pdf
- J052070 (RFC05471-05464).pdf
- J080925 (RFC05978 - RFC06127).pdf
- J209456 (RFC06322 - RFC06444).pdf
- J215119 (RFC06445 - RFC06592).pdf
- J353821 (RFC06630 - RFC06662).pdf
- J409858 (RFC07033 - RFC07146).pdf
- J423347 (RFC07147 - RFC07200).pdf
- K292921 (RFC07896 - RFC08058).pdf
- K417078 (RFC08152 - RFC08224).pdf
- K455932 (RFC08329 - RFC08465).pdf
- K530917 (RFC08733 - RFC08842).pdf
- K575912 (RFC08843 - RFC08894).pdf
- M020288 (RFC08895 - RFC08937).pdf
- M184949 (RFC0968 - RFC09720).pdf
- M258570 (RFC09904 - RFC10101).pdf
- M287641 (RFC10157 - RFC10242).pdf
- M381429 (RFC10243 - RFC10288).pdf
- M538914 (RFC10321 - RFC10345).pdf
- M579697 (RFC10727 - RFC10861).pdf
- N028256 (RFC11204 - RFC11503).pdf
- N053000 (RFC11504 - RFC11567).pdf
- N133637 (RFC11865 - RFC11905).pdf
- N162782 (RFC11906 - RFC12064).pdf
- N176796 (RFC12065 - RFC12161).pdf
- N203334 (RFC12328 - RFC12436).pdf
- N262285 (RFC12572 - RFC12735).pdf
- N267450 (RFC12736 - RFC12831).pdf
- N475910 (RFC13109 - RFC13182).pdf
- N517875 (RFC13249 - RFC13500).pdf
- N581836 (RFC13501 - RFC13671).pdf
- N592324 (RFC13672 - RFC13742).pdf
- P049272 (RFC13890 - RFC14195).pdf
- P060434 (RFC14415 - RFC14565).pdf
- P128067 (RFC14566 - RFC14774).pdf
- P272087 (RFC15446 - RFC15481) (Investigative File).pdf
- P526822 (RFC16275 - RFC16401).pdf
- RFC 20380 - 20420 Area North Inspection
- RFC 20421 - 20445 Area North Inspection
- RFC 20446 - 20471 Area North Inspection
- RFC 20472 - 20539 Area North Inspection
- RFC 20540 - 20590 Area North Inspection
- RFC 20591 - 20612 Area North Inspection
- RFC 20613 - 20632 Area North Inspection
- RFC 20633 - 20656 Area North Inspection

- o RFC 20657 - 20675 Area North Inspection
- o RFC 20676 - 20760 Area North Inspection
- o RFC 20761 - 20823 Area North Inspection
- o RFC 20824 - 20868 Area North Inspection
- o RFC 20869 - 20896 Area North Inspection
- o RFC 20897 - 21030 Area North Inspection
- o RFC 21031 - 21083 Area North Inspection
- o RFC 21084 - 21103 Area North Inspection
- o RFC 21104 - 21383 Area North Inspection
- o RFC 21394 - 21494 Area North Inspection
- o RFC 21495 - 21649 Area North Inspection
- o RFC 21650 - 21820 Area North Inspection
- o RFC 21821 - 21833 Area North Inspection
- o RFC 21834 - 21852 Area North Inspection
- o RFC 21853 - 21889 Area North Inspection
- o RFC 21890 - 21962 Area North Inspection
- o RFC 21963 - 22028 Area North Inspection
- o RFC 22029 - 22076 Area North Inspection
- o RFC 22077 - 22188 Area North Inspection
- o RFC 22189 - 22327 Area North Inspection
- o RFC 22328 - 22361 Area North Inspection
- o RFC 22362 - 22452 Area North Inspection
- o RFC 22453 - 22487 Area North Inspection
- o RFC 22488 - 22557 Area North Inspection
- o RFC 22558 - 22593 Area North Inspection
- o RFC 22594 - 22653 Area North Inspection
- o RFC 22654 - 22843 Area North Inspection
- o RFC 22844 - 22970 Area North Inspection
- o RFC 22971 - 23025 Area North Inspection
- o RFC 23026 - 23138 Area North Inspection
- o RFC 23139 - 23240 Area North Inspection
- o RFC 23241 - 23467 Area North Inspection
- o RFC 23468 - 23566 Area North Inspection
- o RFC 23567 - 23709 Area North Inspection
- o RFC 23710 - 23799 Area North Inspection
- o RFC 23800 - 23962 Area North Inspection
- o RFC 23963 - 24136 Area North Inspection
- o RFC 24137 - 24377 Area North Inspection
- o RFC 24378 - 24505 Area North Inspection
- o RFC 24506 - 24561 Area North Inspection
- o RFC 24562 - 24595 Area North Inspection
- o RFC 24596 - 24671 Area North Inspection
- o RFC 24672 - 24915 Area North Inspection
- o RFC 24916 - 25721 Area North Inspection

- Permanent Retention Files

- G025122 (RFC158644 - RFC158716).pdf
- G028593 (RFC159390 - RFC159448).pdf
- G063126 (RFC158717 - RFC158782).pdf
- G067109 (RFC158783 - RFC158837).pdf
- G069345 (RFC158838 - RFC158865).pdf
- G077193 (RFC158866 - RFC158921).pdf
- G129819 (RFC158925 - RFC158969).pdf
- G159909 (RFC158970 - RFC159066).pdf
- G235351 (RFC160869 - RFC160892).pdf
- G256674 (RFC159067 - RFC159131).pdf
- G303248 (RFC159133 - RFC159158).pdf
- G317267 (RFC159159 - RFC159192).pdf
- G317507 (RFC159193 - RFC159217).pdf
- G321911 (RFC159219 - RFC159242).pdf
- G382131 (RFC159243 - RFC159275).pdf
- G418721 (RFC159276 - RFC159329).pdf
- G451229 (RFC159330 - RFC159351).pdf
- G471800 (RFC159352 - RFC159389).pdf
- H064504 (RFC159449 - RFC159502).pdf
- H091575 (RFC159503 - RFC159522).pdf
- H094573 (RFC159523 - RFC159557).pdf
- H095844 (RFC159558 - RFC159592).pdf
- H100760 (RFC159593 - RFC159639).pdf
- H105557 (RFC159640 - RFC159685).pdf
- H126865 (RFC159686 - RFC159729).pdf
- H167635 (RFC159730 - RFC159762).pdf
- H172729 (RFC159763 - RFC159797).pdf
- H174403 (RFC159798 - RFC159844).pdf
- H193697 (RFC159845 - RFC159903).pdf
- H208106 (RFC159904 - RFC159951).pdf
- H265414 (RFC159952 - RFC159971).pdf
- H279780 (RFC159972 - RFC160001).pdf
- H316198 (RFC160894 - RFC160923).pdf
- H323287 (RFC160003 - RFC160030).pdf
- H375595 (RFC160031 - RFC160068).pdf
- H376814 (RFC160069 - RFC160107).pdf
- H422157 (RFC160108 - RFC160175).pdf
- H487637 (RFC160176 - RFC160203).pdf
- J052070 (RFC160204 - RFC160282).pdf
- J053513 (RFC160283 - RFC160366).pdf
- J075073 (RFC160367 - RFC160397).pdf
- J080925 (RFC160398 - RFC160439).pdf
- J117497 (RFC160440 - RFC160474).pdf
- J139200 (RFC160475 - RFC160509).pdf
- J209456 (RFC160510 - RFC160549).pdf

- J215119 (RFC160550 - RFC160580).pdf
- J252204 (RFC160581 - RFC160616).pdf
- J353821 (RFC160617 - RFC160636).pdf
- J355220 (RFC160637 - RFC160687).pdf
- J369257 (RFC160688 - RFC160715).pdf
- J388481 (RFC160716 - RFC160763).pdf
- J409858 (RFC160764 - RFC160790).pdf
- J423347 (RFC160791 - RFC160843).pdf
- J478062 (RFC160844 - RFC160868).pdf
- K103034 (RFC160924 - RFC160955).pdf
- K176170 (RFC160956 - RFC160979).pdf
- K197321 (RFC160980 - RFC161015).pdf
- K205158 (RFC161016 - RFC161041).pdf
- K227675 (RFC161042 - RFC161075).pdf
- K285989 (RFC161076 - RFC161122).pdf
- K292921 (RFC161123 - RFC161171).pdf
- K417078 (RFC161172 - RFC161201).pdf
- K419172 (RFC161202 - RFC161235).pdf
- K455932 (RFC161236 - RFC161271).pdf
- K466033 (RFC161272 - RFC161330).pdf
- K468422 (RFC161331 - RFC161367).pdf
- K502173 (RFC161368 - RFC161391).pdf
- K530917 (RFC161392 - RFC161417).pdf
- K575912 (RFC161418 - RFC161453).pdf
- M020288 (RFC161454 - RFC161490).pdf
- M027036 (RFC161491 - RFC161533).pdf
- M079435 (RFC161534 - RFC161630).pdf
- M127008 (RFC161631 - RFC161645).pdf
- M165445 (RFC161646 - RFC161700).pdf
- M184949 (RFC161702 - RFC161735).pdf
- M245807 (RFC161736 - RFC161783).pdf
- M258570 (RFC161784 - RFC161828).pdf
- M264219 (RFC161829 - RFC161888).pdf
- M287641 (RFC161889 - RFC161918).pdf
- M381429 (RFC161919 - RFC161962).pdf
- M400227 (RFC161963 - RFC161996).pdf
- M538914 (RFC161997 - RFC162017).pdf
- M541953 (RFC162018 - RFC162053).pdf
- M546558 (RFC162054 - RFC162076).pdf
- M551461 (RFC162077 - RFC162115).pdf
- M556260 (RFC162116 - RFC162156).pdf
- M558552 (RFC162157 - RFC162190).pdf
- M579697 (RFC162191 - RFC162219).pdf
- M599001 (RFC162220 - RFC162254).pdf
- N016505 (RFC162255 - RFC162282).pdf
- N018105 (RFC162283 - RFC162326).pdf

- o N028256 (RFC162327 - RFC162389).pdf
- o N050133 (RFC162390 - RFC162428).pdf
- o N053000 (RFC162429 - RFC162448).pdf
- o N114280 (RFC162449 - RFC162492).pdf
- o N133637 (RFC162493 - RFC162530).pdf
- o N162782 (RFC162531 - RFC162577).pdf
- o N176796 (RFC162578 - RFC162612).pdf
- o N192214 (RFC192613 - RFC162641).pdf
- o N201263 (RFC162642 - RFC162682).pdf
- o N203334 (RFC162683 - RFC162708).pdf
- o N237529 (RFC162709 - RFC162759).pdf
- o N262285 (RFC162760 - RFC162808).pdf
- o N267450 (RFC162809 – RFC 162836).pdf
- o N363181 (RFC162837 - RFC162866).pdf
- o N413068 (RFC163754 - RFC163781).pdf
- o N414150 (RFC162867 - RFC162896).pdf
- o N475910 (RFC162897 - RFC162924).pdf
- o N513129 (RFC162925 - RFC162967).pdf
- o N517875 (RFC162968 - RFC163014).pdf
- o N581836 (RFC163015 - RFC163056).pdf
- o N592324 (RFC163057 - RFC163066).pdf
- o P025950 (RFC163067 - RFC163097).pdf
- o P049272 (RFC163098 - RFC163137).pdf
- o P051734 (RFC163138 - RFC163157).pdf
- o P054399 (RFC163158 - RFC163220).pdf
- o P128067 (RFC163221 - RFC163269).pdf
- o P129569 (RFC163270 - RFC163315).pdf
- o P141860 (RFC163782 - RFC163816).pdf
- o P175665 (RFC163316 - RFC163341).pdf
- o P190627 (RFC163342 - RFC163383).pdf
- o P218019 (RFC163384 - RFC163412).pdf
- o P251800 (RFC163413 - RFC163444).pdf
- o P272087 (RFC163445 - RFC163473).pdf
- o P310965 (RFC163474 - RFC163510).pdf
- o P317758 (RFC163511 - RFC163537).pdf
- o P342256 (RFC163538 - RFC163561).pdf
- o P348565 (RFC163562 - RFC163580).pdf
- o P372509 (RFC163581 - RFC163621).pdf
- o P402641 (RFC163622 - RFC163639).pdf
- o P474894 (RFC163640 - RFC163727).pdf
- o P526822 (RFC163728 - RFC163753).pdf

- CCSAO Files

  - o J209456 – David Quinones, Bruce Andras, Marc Johnson
  - o P526822 - Miguel Borrotto

- N028256 – Jesse Swanigan
- M258570 – Curtis Kirkland
- N162782 – Tomas Nieves
- P272087 – Demetrius Johnson

### *Michael Brasfield and Associates, Inc.*

641 Olele Point Road  
Port Ludlow, WA 98365

Phone: 360-301-4465  
E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT  
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**  
No. 12 CV 4428

# ATTACHMENT C

**Attachment C - Compensation**

Report of Plaintiff's Expert – Michael D. Brasfield

**<u>Jacques Rivera v. Guevara, et al.</u>**
No. 12 CV 4428

My compensation for work related to this case is $300 per hour, with a four-hour minimum. Deposition and trial testimony is billed at a flat rate of $2400 per calendar day. Time spent traveling and waiting to testify is considered billable time. Reasonable expenses may be charged with prior approval.

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road                          Phone: 360-301-4465
Port Ludlow, WA 98365                         E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**
No. 12 CV 4428

# ATTACHMENT D

## Michael D. Brasfield - Curriculum Vitae

### Education:

Bachelor of Arts, Police Administration - University of Washington, Seattle, WA

Senior Management Institute for Police - Police Executive Research Forum, Washington, D.C.

### Professional Experience:

#### 2003-2009    Elected Sheriff of Jefferson County, Washington

After retiring for a second time, and returning to the small rural county that I had chosen as my permanent retirement home, I ran for public office. This 1,815 square mile, predominantly rural, county has a full time resident population of only 26,000. The Jefferson County Sheriff's Office, established in 1853, is one of the oldest law enforcement organizations in the state of Washington. The Sheriff's Office budget for fiscal year 2008 was $4.5 million. The Office has 50 employees and a large network of volunteers and reserve deputies. I was re-elected to a 2nd term which began on January 1, 2007 by an 80% majority. I retired from this office in March 2009.

#### 2001 – 2003   Consultant and Program Director - South Downtown Foundation

Responsibility for administering several million dollars for improving public safety in the International District, SoDo, and Pioneer Square neighborhoods of Seattle. Coordinated efforts with the City of Seattle, the Seattle Police Department and various interest and civic groups in the area.

#### 1995-2001    Police Chief of Fort Lauderdale, Florida

The 33 square mile city has a full time resident population of 165,000. An estimated additional 60,000 "snow bird" residents return to second homes in the city during the 6-month winter season. Fort Lauderdale serves as the seat of government for a county of 1.5 million and is in the heart of a diverse tri-county (Dade, Broward, and Palm Beach) population of 4 million. As one of the premier tourist destinations in South Florida, over 12 million passengers come through the airport each year. The ocean port handles the second largest number of cruise ship sailings in the world. Fort Lauderdale serves as the governmental and business hub of the County.

The City employed a workforce of 2,600 employees and operated with a budget of over $334 million. IAFF, FOP, and AFSCME Unions represent the fire, police, and general employees, respectively. The Fort Lauderdale Police Department had a budget of $60 million and consisted of 500 sworn positions and 300 civilian positions. In 2000 the department received 600,000 calls for service, dispatched over 200,000 of those calls, made over 20,000 arrests, and issued over 65,000 traffic citations. The Department is

1

now nationally recognized as an innovative leader in the field of community policing and was one of only a handful of cities nationwide to be selected as a Community Policing Demonstration Site by the Department of Justice. Oversaw and operated the only municipal jail in the state of Florida.

A small sampling of initiatives undertaken over the 6 years includes:

- First large municipal police agency in Florida to receive accreditation
- Automobile anti-theft tactics that have reduced auto thefts by nearly 35% in one year
- Aggressive property crime reduction efforts in the area of strengthened pawn shop record sharing and accountability
- Partnerships with State Probation and Parole staff in "Ride Along Programs" with our patrol officers to remove violators from the community
- Establishment of "Citizens on Patrol" in specially marked vehicles to enhance public safety
- Aggressive enforcement of traffic and "quality of life" ordinances to help neighborhoods
- Establishment of a Nuisance Abatement Board to address drug and prostitution activity
- Significant reduction in alarm false dispatches to allow increased proactive patrol
- Innovative anti-prostitution and anti-gang programs
- Federal "Weed & Seed" designation, which has allowed us to partner with a wide range of community and governmental entities
- Thirteen sessions of the Citizen Police Academy - a 3 month, 35 hour program
- Summer COPJAM activities for at risk youth
- Truancy and curfew programs which have dramatically reduced the rate of property crimes

In 1997 undertook a city financed $10 million technology enhancement initiative for the Department. Half of it was for a new state of the art Computer Aided Dispatch (CAD) and Record Management System (RMS), and the other half for network servers, individual personal computers, Geographical Information System (GIS), Automated Fingerprint Identification System (AFIS), internet access, bar coding for property control and evidence, and the largest law enforcement deployment of handheld, pen based, Motorola Forte' computers for patrol officers.

During my 6 year tenure, we successfully competed and received nearly $8 million in Federal and State grants. More than forty percent of the grant funds have gone into non-traditional community and social service support programs, in lieu of police personnel and hardware.

During my tenure there was a dramatic improvement in the relationship between our unions and management. We successfully negotiated two (3 year) contracts without incident or rancor. Although there has been an increase in professional expectations of

2

accountability for our employees, disciplinary appeals to arbitration had been all but eliminated.

### 1990-1995    Assistant Chief - Seattle Police Department

An appointive, exempt position reporting directly to the Chief of Police - acted as the Executive Assistant Chief of the Department and commanded the Support Bureau. The Police Department employed over 1,875 personnel and had an annual budget of $120 million.

Responsible for and oversaw the activity of nine uniquely different divisions including: Training; Internal Investigations; Crime Prevention: Intelligence; Communications; Personnel; Records & Evidence; Data Processing; and Fiscal, Property, & Fleet Management.  As the Executive Assistant Chief, was responsible for the day-to-day operation of the agency including authority for hiring, discipline, and administrative decisions.  In addition, acted as primary management labor relations and contract negotiator with 12 labor unions.  This bureau employed approximately 100 sworn and 450 civilians.  Served as the Seattle Police Department's jail liaison executive, as well as jail contract negotiator.   Routinely served as acting Chief of Police.

### 1986-1990    Major

An appointive, exempt position - command of SPD Inspectional Services Division, reported directly to the Chief of Police.  Coordinated and implemented strategic planning for the entire Department and conducted periodic performance inspections of Departmental units.  Oversaw the preparation of the Department's budget, as well as the formulation of departmental rules, policies, and procedures.  Acted as liaison with elected officials and community groups.

### 1984-1985    Captain

Command of SPD North Precinct.  Responsible for Patrol operations in an area of the city that encompassed a population of 200,000 people and a uniformed force of 130 officers.  The precinct contained over a dozen unique communities including the University of Washington.  Routinely served as acting Patrol Major overseeing all four patrol precincts - 550 sworn personnel.

### 1982-1983    Captain

Command of SPD Internal Investigations Section, reported directly to the Chief of Police.  Responsible for overseeing the investigation of alleged misconduct of nearly 2,000 sworn and civilian members of the Department.

### 1980-1981    Captain

Command of SPD West Precinct. Responsible for Patrol Operations in the downtown core of the city. Major league sports facilities, waterfront maritime industries, transportation, and financial, retail and business headquarters serving a daytime population of 300,000 -command of 150 sworn officers.

### 1978-1979    Lieutenant

Commander of Basic Recruit Training. Responsible for the operation and administration of the recruit training for SPD as well as the contract recruit training with the Washington State Criminal Justice Training Commission for over 100 law enforcement agencies state-wide. Average recruit population on campus of 140 in 4 concurrent classes, as well as a multi-agency training staff. Also served for a brief period as a downtown watch commander in the downtown business area.

### 1975 – 1978    Sergeant

Served as supervisor in the following: Patrol - uniformed patrol operations;; Internal Investigations Section - investigation of citizen, departmental, and criminal allegations of police misconduct; Special Patrol Unit - plain clothes tactical response to priority crime problems, deployment at unusual occurrences, dignitary protection.

### 1972 – 1975    Detective

Served in the following: Accident Investigation Section - plain clothes follow-up investigation of hit-run, serious injury and fatality motor vehicle accidents; Burglary Section - investigated serious crimes directed against property; Vice Section - investigated organized crime, prostitution, pornography, liquor, and gambling activities, and engaged in extended undercover assignments.

### 1968-1971    Patrol Officer

Started with Mercer Island (WA) P.D. in 1968, and then began career with Seattle P.D. in 1969.

**Training (small sampling):**

- Police Liability and the Management of Police Discipline - Americans for Effective Law Enforcement
- Police Technology and Efficiency - International Association of Chiefs of Police
- Total Quality Management - The Institute for Quality Service
- Assessment Center Operations and Management - Federal Bureau of Investigation
- Executive Development - Federal Bureau of Investigation
- Incident Command System – National Incident Management System – Through Level 4
- Gambling Enforcement and Supervision - Washington State Gambling Commission

4

- Labor Relations and Negotiations - Federal Bureau of Investigation and Washington Association of Cities
- Hazardous Materials Incident Management - National Highway Transportation Safety Board
- Dignitary Protection Management and Supervision - U.S. Secret Service
- Supervision of Auto Theft Investigation - National Auto Theft Bureau
- Police Traffic Supervision - Northwestern Traffic Institute
- Municipal Budget Management - Office of Management and Budget
- Training for Trainers - Washington State Criminal Justice Training Commission
- Managing Computer Operations - Department of Administrative Services
- Investment in Excellence - The Pacific Institute
- Organized and White Collar Crime - The University of Washington
- Management of Computer Fraud Investigations – USWEST
- National Center for Missing and Exploited Children - Alexandria, VA

## Law Enforcement Committees & Membership:

### National:

- International Association of Chiefs of Police – Honorary Life Member
- Police Executive Research Forum – Subscribing Member
- National Sheriffs' Association – Life Member
- American Correctional Association – Member
- American Jail Association – Member
- Crisis Intervention Team International - Member

### State:

- Appointed by the Governor and served as the only law enforcement member of the Washington State Sentencing Guidelines Commission (August 2003 – 2008)
- Appointed to, and served as the chair of the Washington State Board on Law Enforcement Training Standards and Education (March 2003 – 2008)
- Homicide Investigation Tracking System (HITS) Advisory Board (May 2003 – 2006)
- Executive Board member of the Washington State Sheriffs' Association (May 2006 – 2008)
- Washington Association of Sheriffs and Police Chiefs – Honorary Life Member

### Local:

- Past chair of Jefferson County Domestic Violence/Sexual Assault Program
- Member of the Peninsula College Criminal Education Program Board
- Executive Board of Olympic Peninsula Narcotics Enforcement Task Force
- Executive Board of JeffCom 911 Communications System
- Jefferson County Law & Justice Council

5

- Olympic Law Enforcement Executives Association

**Achievements (sampling):**

- Past Co-Chair of Private Sector Liaison Committee - International Association of Chiefs of Police
- Coordinator for successful federal grant application on Community Policing  Program (N.I.J.)
- National Institute of Justice Symposium on Closed Circuit Television for deterrence and investigation of crime - Washington, DC
- National Institute of Justice Symposium on Metro Area Drug Strategies - Washington, DC
- Coordinator for federal grant application on Narcotics Strategies in Public Housing
- Coordinator for federal grant application on Targeting Young Adult Gang Leaders
- Federal Bureau of Investigation - National Law Enforcement Budget  Advisory Group - Appointed by the Director of the F.B.I.
- Broward County Chiefs' Association - President and Steering & Training Committees
- Southeast Florida Drug Task Force - Board of Directors
- Metropolitan Broward County Organized Crime Intelligence Unit - Board of Directors
- Florida Police Chiefs' Association - Ethics Committee
- Visiting management assessor for cities of New Orleans (LA), Columbus (OH), Portland, (OR), San Francisco (CA), Bremerton (WA)
- Contract consultant (KOBA Associates) for peer review of NIJ grant work on the establishment of Computer Crimes Units
- Contract consultant (Federal Housing & Urban Development Grant) to visit and analyze 6 major U.S. cities (Boston, Baltimore, Memphis, Oxnard, Cleveland & Seattle) police agencies and community policing in public housing
- Subject matter and best practices expert on law enforcement personnel selection, screening, and back grounding – USIS Investigative Solutions Conference
- Developed statewide law enforcement employment screening and back grounding model for the Washington Association of Sheriffs and Police Chiefs
- Oversight responsibility for acquisition of Computer Aided Dispatch and Mobile Digital Terminal System
- Oversight responsibility for acquisition of Comprehensive Shared Records Management System
- Oversight responsibility for acquisition of Jail Booking Video Imaging System
- Oversight responsibility for management of computerized Patrol Deployment Model

6

- Responsibility for design and construction oversight, acceptance and start-up of new police precinct facility
- Evaluation of Detective Decentralization Program and Detective Case Management System
- Acquisition of Geo-based Automated Mapping System

**Selected Publications:**

- Contributor - National Institute of Justice - Off-Duty Police Employment Practices
- Citation - Federal Bureau of Investigation article on joint Police-Community Partnerships
- Author of national and state articles - alarm reduction issues and strategies
- Author of several historical articles - homicides of police officers

**Prior Law Enforcement & Community Service:**

- Major City Chiefs - Human Resources sub-committee
- Washington State Chiefs & Sheriffs - Information Technology sub-committee
- Mayor's Task Force on Street People and the Homeless
- Selection and oversight committee for Police Department Management Study consultant contract
- Selection and oversight committee for Police-Citizen Complaint Process consultant contract
- Executive Member - South Florida Regional Law, Safety, and Justice Committee
- Automated Fingerprint Identification System / Jails - On-site benchmark testing & nationwide visitation team
- Health Service and Police Community Based Alcohol Triage Program
- King County Executive - Jail Advisory Committee (JCWG)
- City of Seattle - Deferred Compensation Plan provider selection and oversight
- Evaluation and Selection Committee - RFP responses for design of new municipal campus
- Seattle Police Department - reorganization committee that resulted in Departmental restructuring
- Explorer Scout Law Enforcement Program
- United Way of Broward County - Board of Directors
- Broward County Commission on Substance Abuse - Chair, Board of Directors
- Broward County Juvenile Justice Advisory Board
- Broward County Substance Abuse Policy Advisory Board
- Broward Workshop - Criminal Justice Committee
- Florida Department of Law Enforcement - UCR Advisory Committee
- Alarm Association of Florida / Law Enforcement - Board of Directors (1996-1997)

7

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road
Port Ludlow, WA 98365

Phone: 360-301-4465
E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**
No. 12 CV 4428

# ATTACHMENT E

**Attachment E**
**Bibliography of Background Source Materials**

Following is a list of source materials that describe generally accepted policing practices, including at the relevant time period. The practices described include but are not limited to record-keeping, file maintenance, report writing, conducting homicide investigations, witness interrogations, supervision, etc.

This list of reference materials is not intended to be exhaustive and is supplemented by my extensive experience with police practices, including my familiarity with the policies used by other police departments nationwide, as well as industry standards established by organizations like the International Association of Chiefs of Police.

### *Reference Materials Generally*

Death Investigation: A Guide for the Scene Investigator
U.S. Department of Justice /Office of Justice Programs / National Institute of Justice

Crime Scene Investigation: A Guide for Law Enforcement
U.S. Department of Justice /Office of Justice Programs / National Institute of Justice

Homicide Guide
International Association of Chiefs of Police

Promoting Effective Homicide Investigations
Police Executive Research Foundation

Homicide Investigation Standard Operating Procedures
John M. Howell – Police Executive Forum

Homicide Process Mapping – Best Practices for Increasing Homicide Clearances : A Project of the U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance

Practical Homicide Investigation Checklist and Field Guide, Second Edition
Vernon J. Geberth

Techniques of Crime Scene Investigation (now in 8th edition)
Barry A.J. Fisher

1

Homicide investigation; practical information for coroners, police officers, and other investigators
Snyder, LeMoyne

Practical Cold Case Homicide Investigations Procedural Manual
Richard H. Walton

Death Investigation: Systems and Procedures
Randy Hanzlick

Forensic Pathology – Practical Aspects of Criminal and Forensic Investigations
Dominick DiMaio & Vincent J. M. DiMaio

Death Scene Investigation: A Field Guide
Scott A. Wagner

Death Investigator's Handbook – Volumes 1 & 2
Louis N. Eliopulos

Cold Case Homicides: Practical Investigative Techniques
Richard H. Walton

Homicide Scene Investigation – A Manual For Public Prosecutors
http://www.justiceacademy.org/iShare/Library-Training/Homicide-Scene-Manual.pdf

Death Scene Checklist Sheet
http://www.insidethetape.com/Jan-2011-EATH%20SCENE%20CHECKLIST%20SHEET.PDF

## *Additional References*

IACP - Brady Disclosure Requirements

IACP Model Policy - Brady Disclosure Requirements

Dr. Henry Faulds (1843-1930). A towering figure in the history of forensic sciences, it was Faulds who first recognized the value of fingerprints to criminal identification. The Faulds scrapbooks include research notes, original drawings and studies of fingerprint patterns and typology, as well as correspondence with individuals and crime fighting organizations around the world, dating from the (late 1870's) until shortly before the doctor's death in 1930. International Association for Identification (www.theiai.org) founded in the (1915).

- *Sparks from the Anvil* 1933-1937

2

- IAI Newsletter 1940-1951
- ID News Aug 1951 - 1987
- *Journal of Forensic Identification* (JFI) 1988 - 2013

Locard, E. L'Enquete Criminelle et les Methodes Scientifique. Paris: Ernest Flammarion, (1920).

Homicide investigation; Frankel, Harold A. (1931)

Criminology – Robert H. Gault Northwestern University (1932)

La police scientifique. les homicides.--Les vols.--Les incendies criminels.--Les faux.--La fausse monnaie. Bischoff, Marc (1938)
Homicide investigation; practical information for coroners, police officers, and other investigators, by Snyder, LeMoyne (1944, 1950, 1959, 1967, 1977)

Law of Belligerent Occupation - The Judge Advocate General's School (1945)

Techniques of Crime Scene Investigation (now in 8th edition) originally published in (1949)

Techniques of Crime Scene Investigation is a classic book on how to use forensic science to investigate crimes. The text was first published in Swedish in 1949 by Chief Superintendent Arne Svensson, director of the Laboratory, Criminal Investigation Department, and Superintendent Otto Wendel, Criminal Investigation Department, Stockholm, Sweden. In 1955 it was printed in English as Crime Detection and then revised into a second, expanded American Edition under the title Techniques of Crime Scene Investigation in 1965. In 1981 I was invited to revise it in a third edition and subsequently into fourth, fifth, sixth, seventh and eighth editions.

Kirk, P. L. *Crime Investigation*. New York: Interscience, John Wiley & Sons (1953).

The detection of secret homicide; a study of the medico-legal system of investigation of sudden and unexplained deaths. Havard, John D. J. (1960)

Institute on Homicide Investigation Techniques / presented by the Southwestern Law Enforcement Institute, Dallas, Texas; general editor: Robert A. Wilson. (1961)

Practical homicide investigation. With an introd. by William P. Maheady. (1961)
"We have learned the lesson of history, ancient and modern, that a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses than a system which depends on extrinsic evidence independently secured through skillful investigation." *Escobedo v. Illinois*, 378 U.S. 478, 488–489 (1964)

3

Thorwald, J. Crime and Science. Harcourrt, Brace & World, Inc.: New York, [LC Cat. no. 67-20323]. (1966)

Police Detective Function (W.S.U.) by V. A. Leonard (1970)

Murder investigation. Oughton, Frederick (1971)

Fox, Richard H. and Carl L. Cunningham. Crime Scene Search and Physical Evidence Handbook.
Washington, D.C.: U.S. Department of Justice, National Institute of Justice, (1973).

Homicide: investigative techniques, by Daniel J. Hughes. (1974)

Kirk, P.L. *Crime Investigation*, *2nd Edition*. New York: John Wiley & Sons, (1974).

Police: the investigation of violence / Keith Simpson (1978)
Smyth, F. *Cause of Death: The Story of Forensic Science*. Van Nostrand Rheinhold Company: New York, [ISBN 0-442-20041-2]. (1980)

Zonderman, J. Beyond the Crime Lab: The New Science of Investigation. John Wiley & Sons: New York, [ISBN 0-471-62296-6]. (1980)

Homicide investigation standards textbook / Joseph C. DeLadurantey, Daniel R. Sullivan. (1980)

Saferstein, *R. Forensic Science Handbook, Volumes I, II, III*. Englewood Cliffs, N.J.: Prentice-Hall, (1982/1988/1993).

DeForest, P.R., R.E. Gaensslen, and H.C. Lee. *Forensic Science: An Introduction to Criminalistics*. New York: McGraw-Hill, Inc., (1983).

Rosenfield, I.; Ziff, E. van Loon, B. DNA for Beginners. Writers and Readers Publishing, Inc. [ISBN 0-86316-023-9, pkb.]. (1983)

Practical homicide investigation: tactics, procedures, and forensic techniques / Vernon J. Geberth. (1983)

Cahalane, *Police Practice and Procedure*

Skehan, *Practical Police Work*

4

New Jersey Division of Criminal Justice - The Property and Evidence Function

Ogden, *Guidance for Prosecutors Regarding Criminal Discovery*

O.W. Wilson, *Police Records, Their Installation and Use*

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road  Phone: 360-301-4465
Port Ludlow, WA 98365  E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**
No. 12 CV 4428

# ATTACHMENT F

**Attachment F**

I compared a total of 48 criminal defense files to 44 corresponding Investigative files and 43 corresponding permanent retention files.

The following listing provides a case-by-case account of what documents are included in Investigative files but are missing from criminal defense files. I did not make any inferences about what documents were turned over to criminal defendants – I based my conclusions on observations about actual differences between files. For each homicide investigation, each set of files—whether the Investigative file, the criminal defense file, or the permanent retention file is labeled with a CPD Records Division ("RD") Number and a criminal defendant's name.

# Table of Contents

Sherman Addison (RD# G-063126 / IF Bates RFC02417 - RFC02485) ...................................4

Joaquin Gonzales (RD# G-129819 / IF Bates RFC02678 - RFC02729)..................................4

Jesus Hernandez, Hipolito Torres (RD# G-235351 / IF Bates RFC02919 - RFC02981) ........4

Richard Gonzalez (RD# G-256674 / IF Bates RFC02982 - RFC03028) ..................................4

Roberto Moreno (RD# G-321911 / IF Bates RFC03322 - RFC03422) ....................................5

Cynthia Lee (RD# H-167635 / IF Bates RFC04135 - RFC04168) ..........................................5

Jose Delvalle (RD# H-375595 / IF Bates RFC04585 - RFC04614) .........................................5

Michael Boyd (RD# H-422157 / IF Bates RFC04653 - RFC05112) ........................................5

Michael Green (RD# J-052070 / IF Bates RFC05471 - RFC05464)........................................6

Samuel Slack (RD# J-080925 / IF Bates RFC05978 - RFC06127) .........................................6

Bruce Andras, David Quinones, Marc Johnson (RD# J-209456 / IF Bates RFC06322 - RFC06444)...................................................................................................................................7

Jerry Buckner (RD# J-215119 / IF Bates RFC06445 - RFC06592) .......................................7

Orlando Cintron (RD# J-353821 / IF Bates RFC06630 - RFC06662) ....................................7

Richard Sanchez (RD# J-409858 / IF Bates RFC07033 - RFC07146) ...................................8

Elmer Madrid (RD# J-423347 / IF Bates RFC07147 - RFC07200) .......................................8

LaTonya Pitchfork (RD# K-292921 / IF Bates RFC07896 - RFC08058) ...............................8

Orval Fain (RD# K-417078 / IF Bates RFC08152 - RFC08224) ............................................9

Felipe Rodriguez (RD# K-455932 / IF Bates RFC08329 - RFC08465)...................................9

Amos Walker (RD# K-530917 / IF Bates RFC08733 - RFC08842) .......................................10

Michael Armstead (RD# K-575912 / IF Bates RFC08843 - RFC08894) ...............................10

Warren Robinson (RD# M-020288 / IF Bates RFC08895 - RFC08937).................................10

Francisco Benitez (RD# M-184949 / IF Bates RFC0968 - RFC09720) ..................................11

Curtis Kirkland (RD# M-258570 / IF Bates RFC09904 - RFC10101)...................................11

Clarence Roberts (RD# M-287641 / IF Bates RFC10157 - RFC10242) .................................12

Warren Murdock (RD# M-381429 / IF Bates RFC10243 - RFC10288).................................12

Henry Robinson (RD# M-538914 / IF Bates RFC10321 - RFC10345) ..................................12

Ras Green (RD# M-579697 / IF Bates RFC10727 - RFC10861) ...........................................12

2

Jessie Swanigan (RD# N-028256 / IF Bates RFC11204 - RFC11503)....................................13

Pierre Mahone (RD# N-053000 / IF Bates RFC11504 - RFC11567)......................................13

Allen Whittington (RD# N-133637 / IF Bates RFC11865 - RFC11905) .................................13

Tomas Nieves (RD# N-162782 / IF Bates RFC11906 - RFC12064).......................................13

Tyrece Williams (RD# N-176796 / IF Bates RFC12065 - RFC12161) ...................................14

David Delgado (RD# N-203334 / IF Bates RFC12328 - RFC12436) .......................................14

Jose Baez (RD# N-262285 / IF Bates RFC12572 - RFC12735)..............................................14

Timothy Lee (RD# N-267450 / IF Bates RFC12736 - RFC12831) ..........................................15

Ricardo Miranda (RD# N-475910 / IF Bates RFC13109 - RFC13182) ..................................15

Calvin McLemore, Rolando Serrano (RD# N-517875 / IF Bates RFC13249 - RFC13500)..15

Samuel Robinson (RD# N-581836 / IF Bates RFC13501 - RFC13671) ..................................15

Glen Miller (RD# N-592324 / IF Bates RFC13672 - RFC13742) .............................................16

Richard Conner (RD# P-049272 / IF Bates RFC13890 - RFC14195)......................................16

Demetrius Thomas (RD# P-060434 / IF Bates RFC14415 - RFC14565) ................................16

Robert Machine (RD# P-128067 / IF Bates RFC14566 - RFC14774)......................................17

Demetrius Johnson (RD# P-272087 / IF Bates RFC15446 - RFC15481)................................17

Miguel Borrotto (RD# P-526822 / IF Bates RFC16275 - RFC16401).....................................18

**Examination – Comparison – Contrasting of 44 Homicide Case Records**
**(44 Investigative Files / 48 Criminal Defense Files / 43 Permanent Retention Files)**

Sherman Addison (RD# G-063126 / IF Bates RFC02417 - RFC02485)
- Investigative File – 69 pages
- Missing from Criminal Defense File – M.E. Body Chart (02443)
- Missing from Permanent Retention File – Lab Report (02425-26); Medical Examiner Report (02438-39-43)

Joaquin Gonzales (RD# G-129819 / IF Bates RFC02678 - RFC02729)
- Investigative File – 52 pages
- Missing from Criminal Defense File – M.E. Body Chart (02689); M.E. Body Chart (02694)
- Missing from Permanent Retention File – Medical Examiner Report (02694; 02710-2719)

Jesus Hernandez, Hipolito Torres (RD# G-235351 / IF Bates RFC02919 - RFC02981)
- Investigative File – 63 pages
- Missing from Criminal Defense File – Investigative File Inventory (02920); Felony Case computer print out (02921); Subpoenas (02922-23); Laboratory Report (02924); Photographs (02972-81)
- Missing from Permanent Retention File – Lab Report (02924); Defendant Statements (02938-46); Property Inventory Sheet (02948); Handwritten Notes/GPRs (02950-56); Evidence Report (02957-58; 02965-67); Photographs (02972-81)

Richard Gonzalez (RD# G-256674 / IF Bates RFC02982 - RFC03028)
- Investigative File – 47 pages
- Missing from Criminal Defense File – M.E. Report of Postmortem Examination (03023-28)
- Missing from Permanent Retention File – Medical Examiner Report (03023-27); Toxicology Report (03028)

4

Roberto Moreno (RD# G-321911 / IF Bates RFC03322 - RFC03422)
- Investigative File – 101 pages
- Missing from Criminal Defense File – Indications that case transferred. No comparison.
- Missing from Permanent Retention File – Reinvestigation Docs (03326-34); Latent Fingerprints Report (03340); Correspondence (03344-46, 48); Medical Examiner Report (03351-54); Toxicology Report (03355); Evidence Report (03359); Photographs (03378); Property Inventory Sheet (03379-80); Evidence Report (03382-83); Handwritten Notes/GPRs (03385-3401); Victim Info (03405); Photographs (03408-18)

Cynthia Lee (RD# H-167635 / IF Bates RFC04135 - RFC04168)
- Investigative File – 34 pages
- Missing from Criminal Defense File – Arrest Supplementary Report (04150)
- Missing from Permanent Retention File – Medical Examiner Report (04143-46); Toxicology Report (04148)

Jose Delvalle (RD# H-375595 / IF Bates RFC04585 - RFC04614)
- Investigative File – 30 pages
- Missing from Criminal Defense File – No pages missing from Criminal Defense file.
- Missing from Permanent Retention File – PRF Redacted. No comparison.

Michael Boyd (RD# H-422157 / IF Bates RFC04653 - RFC05112)
- Investigative File – 460 pages
- Missing from Criminal Defense File – Indications that case transferred. No comparison.
- Missing from Permanent Retention File – Medical Examiner Report (04708-12); Supp Reports 4879, 4883, 4992 GPRs/Handwritten Notes (04798, 04806, 04798, 04863-72, 04875-76, 04909-10, 04919-20, 04927, 04962, 04976-80, 04987-94, 04997, 05011); Evidence Report (04799, 04922, 04935, 04983, 04995, 05009); Fingerprint Requests and Response (04796, 04773, 04796, 04822-23, 04862, 04891, 04906-08, 04928-30, 04999-50004); Defendants' Statements (04778-4788, 04825); Stop Order (04792-93; 04885-86); Daily Bulletin (04794-95); Hospitalization Case Report (04801); Arrest Report (04807, 04852-55, 04894-4905, 04947, 04950, 04952-53, 04955, 04956, 04960); Property Inventory Sheet (04856-60, 05016-5027); Preliminary Fired Evidence Report (04921); Crime Analysis Pattern (04973-75); Photographs (05029-93); Request for Identification Photos (05095-5106)

Michael Green (RD# J-052070 / IF Bates RFC05471 - RFC05464)
- Investigative File – 389 pages
- Missing from Criminal Defense File – Back of Photo (05207, 05209); Photograph (05211–12); Handwritten Notes (05236–38); Handwritten Notes (05412); Photographs (05194–233); Subpoena (05252); Supplementary Report (05253-54); Criminal History (05373, 05378, 05464, 05434); Agency Requesting Transcripts (05444-45); Statements (05264-75; 05276-89; 05290-97); Investigator Business Card (05298); Letter & Photograph (05299-300); Investigative File Inventory (05189-91); Palm Print Cards (05234-35); Request for Identification Photos (05240); AFIS result (05245); Subpoenas (05247-52); Form 101s (05256-57, 05439, 05443, 05462-63); Supplementary Report (05329-32); General Offense Case Reports (05328, 05333-34); Arrest Information Card (05390-91); Request to Hold Prisoners (05396-97, 05400-01, 05441); Release of Person in Custody (05399); Arrest Report (05386, 05388, 05394, 05416, 05429-30, 05433, 05442, 05446); Arrest Warrant (05456, 05459); Felony Case Printout (05466); Complaint for Preliminary Examination (05458, 05460-61)
- Missing from Permanent Retention File – GPR (05263); Transcript of Defendant Statement (05264-5297); Complaint for Search Warrant (05448)

Samuel Slack (RD# J-080925 / IF Bates RFC05978 - RFC06127)
- Investigative File – 150 pages
- Missing from Criminal Defense File – Request for Latent Fingerprint Comparison (05982); Photograph (05983); Latent Fingerprint Examination Report (05984); Subpoena (05987); Arrest Report (06042); Arrest Report (06056); Handwritten Notes (06072); Photographs (06074-79)
- Missing from Permanent Retention File – Medical Examiner Report (06089-92); Request for Latent Fingerprints (05982, 05989, 05996, 06002, 06034-35, 06084-85); Fingerprint Results (05984); Evidence Report (05992-94, 06058, 06082-83); General Offense Case Report (06030); GPRs (06031, 06043, 6053, 06061-6071); Handwritten Notes (06072); Evidence Report (06032, 06035, 06050); Hold Past Court Call Request (06033, 06041); Property Inventory (06038-39, 06048, 06060); Arrest Report (06042, 06054, 06056); Fired Evidence Report (06045); Supplementary Report (06052); Photographs (06074-79); Latent Fingerprint Exam Report (06080)

Bruce Andras, David Quinones, Marc Johnson (RD# J-209456 / IF Bates RFC06322 - RFC06444)
- Investigative File – 123 pages
- Missing from Criminal Defense File – Handwritten Notes (06323); Investigative File Inventory (06324-25); Investigative File Controls (06326-27); Felony Case computer printout (06328-30); Court Notification/Sworn Member card (06331); Handwritten Notes (06332); Subpoena (06333); Handwritten Notes (06334); Subpoena (06335); Subpoena (06337); Typed Statement (06344-50); Handwritten Statement (06401-02); Handwritten Notes (06413); Envelope with RD# (06442); Request for Identification Photos (06443); Photographs (06444)
- Missing from Permanent Retention File – Investigative File Inventory (06324-27); Felony Case computer printout (06328-30); Latent Fingerprint Examination Reports (06338-39); Evidence Report (06340, 06397-99); Criminal History (06341-42); Typed Statement (06344-50); Arrest Report (06356); GPRs (06357-58, 06377-81, 06421); Request for Evidence (06359); Preliminary Fired Evidence Report (06361); Property Inventory Sheet (06363-65); Evidence Report (06367-70); Handwritten Notes (06384, 06421-32); Property Inventory Reports (06385-92); Criminal History (06393-94); Handwritten Statement (06401-02); Request for ID Photos (06443); Photographs (06444)

Jerry Buckner (RD# J-215119 / IF Bates RFC06445 - RFC06592)
- Investigative File – 148 pages
- Missing from Criminal Defense File – Investigative File Inventory (06488); Envelope (06573); Illinois Drivers License (06574-75); Photographs (06576-88, 91-92); Selective Service System Status Card (06589-90)
- Missing from Permanent Retention File – Medical Examiner Report (06452-56); Toxicology Report (06547); Investigative File Inventory (06488); Laboratory Report (06490-91); Handwritten Notes (06497); Evidence Report (06507); Arrest Report (06508); GPR (06509); Mail Routing Slip (06513); Request for Mail Cover Check (06470, 06514); Envelope (06516-17); Daily Bulletin (06523-24); Memo from Detective (06525); Memo (06527); Criminal History (06528); GPR (06539); Evidence Report (06540); Criminal History (06542-43); Criminal History (06544-45); Property Inventory Sheet (06546-51); GPRs (06560-70); Victim's drivers license (06574-75); Identification Photographs (06576-87, 06591-92); Selective Service Card (06589-90)

Orlando Cintron (RD# J-353821 / IF Bates RFC06630 - RFC06662)
- Investigative File – 33 pages
- Missing from Criminal Defense File – Defendant obtained outside counsel so the PD closed the file. No investigative materials included.
- Missing from Permanent Retention File – Medical Examiner Report (06642-48)

Richard Sanchez (RD# J-409858 / IF Bates RFC07033 - RFC07146)
- Investigative File – 114 pages
- Missing from Criminal Defense File – Case Assignment Slip (07034); Court Attendance Reports (07035-39); Handwritten Notes on Naprosyn Notepad (07040); M.E. Report of Postmortem Examination (07041-46); Court Attendance Report (07047); Supplementary Report (07054); Investigative File Inventory (07070-71); Investigative File Control (07072); Subpoena (07073); Firearms Receipt & Worksheet (07098); Photograph (07130-31)
- Missing from Permanent Retention File – PRF redacted. No comparison.

Elmer Madrid (RD# J-423347 / IF Bates RFC07147 - RFC07200)
- Investigative File – 54 pages
- Missing from Criminal Defense File – SAO Disposition Reports (07148-49); Court Attendance Reports (07150-52); M.E. Report of Postmortem Examination (07153-57); Supplementary Reports (07158-65); Cause of Death Supplementary Report (07184-85); M.E. Body Chart (07186); Line Up Supplementary Reports (07197-200)
- Missing from Permanent Retention File – Medical Examiner Report (07153-56); Toxicology Report (07157)

LaTonya Pitchfork (RD# K-292921 / IF Bates RFC07896 - RFC08058)
- Investigative File – 163 pages
- Missing from Criminal Defense File – State's Attorney Letter (07897); Court Attendance Reports (07898-900); Investigative File Inventory (07940-41); Investigative File Control (07942); Form 101 (07943); Oklahoma City Police Department Fax Transmittal Sheet (07964); LEADS Responses (07967-76); Fugitive Arrest Receipt (07977); Oklahoma City Waiver of Extradition & Certification (07978-79); Arrest Report (07980); LEADS Responses (07990-94); Photographs (08003); Handwritten Notes (08005-06); Criminal History (08025); Complaint (08026); Arrest Warrant (08027); Physical Description/Fingerprint Record (08028); Handwritten Notes (08034); LEADS Response (08037); Request for Non-published Telephone Information (08039); LEADS Responses (08040-43); Criminal History (08046-47); Handwritten Notes (08052); LEADS Responses (08053-56); Letter to Cleveland Police Dept. (08057); Subpoena (08058)
- Missing from Permanent Retention File – Medical Examiner Report (07901-05); Statements of Defendant (07951-58); Arrest Report (07964-66, 07980); LEADS Report (07967-74); Fugitive Arrest Receipt (07977); Waiver of Extradition (07978-79); Info for Daily Bulletin (08031); Handwritten Notes (08034, 08052); Request for telephone records (08039); Stop Order (08001-02); Request for UFAP Warrant (08007); Supplementary Report (08010)

Orval Fain (RD# K-417078 / IF Bates RFC08152 - RFC08224)
- Investigative File – 73 pages
- Missing from Criminal Defense File – Felony Case computer printout (08153); Court Attendance Reports (08154-57); M.E. Report of Postmortem Examination (08158-62); Supplementary Report (08174); Investigative File Inventory (08178-79); Investigative File Control (08180); Preliminary Fired Evidence Report (08183); Handwritten Notes (08213); Handwritten Notes (08215)
- Missing from Permanent Retention File – Handwritten Notes (08211-21, 08184); Property Inventory Sheet (08204-06, 08209-10, 08222); Forensic Report (08207); Line Up Photo Report (08201); Arrest Report (08197-200); Crime Lab Fired Evidence Report (08183); Supplementary Report (08174); Medical Examiner Report (08158-62)

Felipe Rodriguez (RD# K-455932 / IF Bates RFC08329 - RFC08465)
- Investigative File – 137 pages
- Missing from Criminal Defense File – Court Attendance Reports (08330-34); Felony Case computer printout (08340-41); SAO Disposition Report (08342); Court Attendance Reports (08343-47); Supplementary Report (08348-49); Supplementary Reports (08352-55); Supplementary Report (08371); Investigative File Inventory (08375-76); Investigative File Control (08377); Supplementary Report (08378-79); GPR (08380); Order of Release to Detectives (08381); Evidence Report (08382); Form 101 (08383); Supplementary Reports (08384-86); Arrest Report (08387); Handwritten Notes (08388); Supplementary Report (08389-90); Evidence Report (08391); Request to Hold Prisoner (08392); Handwritten Notes (08438); GPR (08439); Handwritten Notes (08442); Envelope (08453); Attorney Business Card (08454); Photographs (08455-63); Request for Identification Photos (08464); Court Attendance Report (08465)
- Missing from Permanent Retention File – Medical Examiner Report (08335-39); Arrest Reports (08371, 08386-87, 08412-13, 08443-44); Handwritten Notes (08380, 08414-17, 08428-08442); Holdover Request (08392); Firearms Receipt & Worksheet (08395); Preliminary Fired Evidence Report (08398); Evidence Report (08403); Line-up Photo Report (08407); Request for Ballistics Comparison (08410); Property Inventory Sheet (08445-52); Request for Identification Photos (08464); Photographs (08455-63)

9

Amos Walker (RD# K-530917 / IF Bates RFC08733 - RFC08842)
- Investigative File – 110 pages
- Missing from Criminal Defense File – Court Attendance Report (08734); SAO Disposition Report with Handwritten Notes (08742); Court Attendance Report (08743-44); Supplementary Report (08745-46); Body Chart (08747); Supplementary Report (08772); Court Notification/Sworn Member (08776); Investigative File Inventory (08777-78); Court Notification/Sworn Member (08779; 08781); Handwritten Notes (08780); Investigative File Control (08782); Handwritten Notes (08784); Photographs (08842)
- Missing from Permanent Retention File – Arrest Report (08788-89, 08795-96); Request for Latent Fingerprint Comparison (08797); Handwritten Notes (08800); Recovered Vehicle Supplementary Report (08804-05); Evidence Report (08806-13); Property Inventory Reports (08824); Supplementary Report (08814-15); Supplementary Report (08816-18); Supplementary Report (08819-20); Supplementary Report (08821); Supplementary Report (08825-27); Supplementary Report (08828-31)

Michael Armstead (RD# K-575912 / IF Bates RFC08843 - RFC08894)
- Investigative File – 52 pages
- Missing from Criminal Defense File – Court Attendance Reports (08844-52; 08862-64); Supplementary Report (08880-82)
- Missing from Permanent Retention File – Medical Examiner Report (08853-60); Toxicology Report (08861)

Warren Robinson (RD# M-020288 / IF Bates RFC08895 - RFC08937)
- Investigative File – 43 pages
- Missing from Criminal Defense File – Court Attendance Report (08896); M.E. Report of Postmortem Examination (08897-902); Felony Case computer printout (08903); Court Attendance Report (08904-16); Supplementary Report (08936-37)
- Missing from Permanent Retention File – Medical Examiner Report (08897-8901); Toxicology Report (08902)

10

Francisco Benitez (RD# M-184949 / IF Bates RFC0968 - RFC09720)
- Investigative File – 113 pages
- Missing from Criminal Defense File – SAO Letter (09609); Court Attendance Reports (09610-18); Cause of Death Supplementary Report (09627-28); Cause of Death Supplementary Report (09629-30); Supplementary Report (09644-45); Supplementary Report (09646); Supplementary Report (09647); Investigative File Inventory (09652); Subpoena (09654); Supplementary Report (09673); Supplementary Report (09675); Supplementary Report (09676); Envelope with Handwritten Notes (09715); Foot Locker Receipt (09716); Boston Shirt Yard Receipt (09717); Stop Order/Missing Person Printout (09718-19); Handwritten Notes (09720)
- Missing from Permanent Retention File – Medical Examiner Report (09619); Toxicology Report (09623); Medical Examiner Report (09624); Investigative Fie Inventory (09652); Supplementary Report (09656); Report with Handwritten Notes (09660); Notes regarding witness statements (09669); Handwritten Notes added to General Offense Case Report (09671); Property Inventories Sheets (09678-89); Signed Statement (09690-92); Arrest Report (09693); Felony Minute Sheet (09694); Evidence Report (09696); General Progress Reports/Hand Written Notes (09698-9700-15, 09720); Foot Locker Receipt (09716); Boston Shirt Yard Receipt (09717)


Curtis Kirkland (RD# M-258570 / IF Bates RFC09904 - RFC10101)
- Investigative File – 198 pages
- Missing from Criminal Defense File – Court Attendance Reports (09905-11); ASA Letter (09919); SAO Disposition Report (09920); Court Attendance Reports (09921-32); Investigative File Control (09967); Investigative File Inventory (09968-69); Photographs (09972-81); Handwritten Notes (09982); Vehicle Information printout (09983); Handwritten Notes (09984); Handwritten Notes (09986); Handwritten Notes (09987); Handwritten Notes (09989-90); Envelope (09991); Criminal History (10007-08); Handwritten Notes (10009-10); Investigative File Control (10012); Evidence Report (10023); Form 101 (10033); Request for Analysis/Receipt for Exhibit (10060); CB Record Summary (10065); Subpoena (10094)
- Missing from Permanent Retention File – Medical Examiner Report (9912-17); Toxicology Report (9918); Lab Report (10013-14); Investigative File Control (9968-69); Mug shot photos (9971, 9973, 9975, 9977, 9979-80); Notes of names and addresses and witness statements (9972, 9974, 9976, 9978, 9982, 9984, 9986-87, 9989-90, 10076, 10093); crime scene photos (9993-10006); Handwritten Notes (10009-10); Felony Minute Sheet (10020, 10033); Arrest Reports (10021, 10032, 10064); Signed Statement of State witness Weaver (10053); Signed Statement (10054); Photo lineup information (10058); Request for Analysis/Receipt for Exhibit (10060); GPR with typed and handwritten notes (10061); Property Inventory Sheets (10067-69, 10087-92); Criminal History (10071-72); Arrest Info Card (10073-75); Handwritten Notes (10076); Criminal History (10078-80); GPR (10081) Criminal History (10082-85) GPR (10098)

Clarence Roberts (RD# M-287641 / IF Bates RFC10157 - RFC10242)
- Investigative File – 86 pages
- Missing from Criminal Defense File – SAO Letter (10158-59); Court Attendance Reports (10160-64); M.E. Report of Postmortem Examination (10165-68); Court Attendance Report (10169); Investigative File Inventory (10190); Investigative File Control (10191); Subpoena (10193)
- Missing from Permanent Retention File – Medical Examiner Report (10165-68); Investigative File Inventory (10190); Arrest Report (10208); ASA Felony Minute Sheet (10209); Stop Order (10218); Wanted Person Report (10219); Supplementary Report (10220-21); General Offense Case Report (10222); Handwritten Lineup Report (10224); Handwritten Notes re witness interviews (10225-10228); Evidence Report and Inventory Documents (10230-42)

Warren Murdock (RD# M-381429 / IF Bates RFC10243 - RFC10288)
- Investigative File – 46 pages
- Missing from Criminal Defense File – Court Attendance Reports (10244-50); Court Attendance Reports (10258-59)
- Missing from Permanent Retention File – Medical Examiner Report (10251-10257); Supplementary Report (10272); Supplementary Report (10283-10284); General Offense Case Report (10285)

Henry Robinson (RD# M-538914 / IF Bates RFC10321 - RFC10345)
- Investigative File – 25 pages
- Missing from Criminal Defense File – Investigative File incomplete. No comparison.
- Missing from Permanent Retention File – Medical Examiner Report (10324-28)

Ras Green (RD# M-579697 / IF Bates RFC10727 - RFC10861)
- Investigative File – 135 pages
- Missing from Criminal Defense File – Photographs (10767-73); Handwritten Notes (10775-77); Latent Fingerprint Examination Report (10786); General Offense Case Report (10831-32); Property Inventory Sheets (10848-50)
- Missing from Permanent Retention File – Medical Examiner Report (10733-37); Toxicology Report (10738); Investigative File Inventory (10764-65); Photographs (10767-73); Business Card (10774); GPRs and Handwritten Notes (10831-46, 10775-77); Criminal Records searches (10778, 10827-29); Report re fingerprint matching defendant (10786); Property Inventory Reports (10788-89 10822-25, 10847-51, 10856); Felony minute sheet (10792); Crime Scene Processing Report (10793); Request (10795); Arrest Report (10796); Defendant's Statement (10810-11); CHA Senior Housing Security Report (10854-55)

Jessie Swanigan (RD# N-028256 / IF Bates RFC11204 - RFC11503)
- Investigative File – 300 pages
- Missing from Criminal Defense File – Handwritten Notes (11281, 11276, 11283, 11319, 11324-11325, 11407, 11409, 11420); Request for Identification Photos (11311-11312); Photograph (11313); Request for Identification Photos (11314-15); Photographs (11316-11318); Photographs (11284-11309); Scan of Keys (11321-11323); General Offense Case Report (11271-11272); Cause of Death Supplementary Report & Body Chart (11230-11232); Line Up Supplementary Report (11242-11243); Line up Supplementary Report (11250-11251); Recovered Vehicle Supplementary Report (11273-11274)
- Missing from Permanent Retention File – Medical Examiner's Report (11224-11228); GPR/Handwritten Notes (11276, 11281, 11283, 11325, 11341-11347, 11350, 11389, 11406-09, 11416-28, 11463-64, 11475, 11477, 11479-85, 11488); Arrest Report (11282, 11372, 11403, 11414-15, 11486); Photos (11284-11310, 11313,11316-18, 11321-11323); Phone Message (11324); Request for Identification Photos (11311, 11314); Fingerprint Report (11330, 11392); Release of Vehicle (11334); Motor Vehicle Inventory (11348); Tow Report (11351, 11467); Request for Analysis (011354); Hold-over Request (11365, 11412, 11458, 11468); Property Inventory Sheets (11366, 11368, 11369, 11371, 11393-94, 11471, 11473, 11489, 11491, 11493, 11494); Evidence Report (11373-76, 11459, 11461, 11465); Polygraph Results (11385); Material Submitted for the Daily Bulletin (11410); Lab Report (11501-02)


Pierre Mahone (RD# N-053000 / IF Bates RFC11504 - RFC11567)
- Investigative File – 64 pages
- Missing from Criminal Defense File – General Offense Case Report (11524); Investigative File Inventory (11526); Handwritten Notes (11557)
- Missing from Permanent Retention File – Medical Examiner Report (11507-10); Toxicology (11511)


Allen Whittington (RD# N-133637 / IF Bates RFC11865 - RFC11905)
- Investigative File – 41 pages
- Missing from Criminal Defense File – Supplementary Reports (11884-87); Supplementary Report (11890); General Offense Case Report (11904-05)
- Missing from Permanent Retention File – Medical Examiner Report (11877-80)


Tomas Nieves (RD# N-162782 / IF Bates RFC11906 - RFC12064)
- Investigative File – 159 pages
- Missing from Criminal Defense File – Photographs (11955-66); Handwritten Notes (12063)
- Missing from Permanent Retention File – GPRs/Handwritten Notes (12016, 12056-12064); Property Inventory (12042-53); Letter from Optometrist (12009); Lab Reports (12007-08); Medical Examiner's Report (11999-12005); Toxicology Report (12006); Arrest Report (11988, 11911); Statement (11986-87); Statement (11984-85); Statement (11981-83); Photographs (11955-66)

13

Tyrece Williams (RD# N-176796 / IF Bates RFC12065 - RFC12161)
- Investigative File – 97 pages
- Missing from Criminal Defense File – M.E. Report of Postmortem Examination (12072-12076); Cause of Death Supplementary Report (12080-12082); Investigative File Control (12098)
- Missing from Permanent Retention File – Medical Examiner's Report (12072-75); Toxicology Report (12076); Arrest Report (12136); Property Inventory (12139, 12142-49); Statement (12131-32); GPRs/Handwritten Notes (12108-09, 12120-24); Arrest Records (12110-11); Stop Order/Missing Person Order (12103-04); Reports (12105-07)

David Delgado (RD# N-203334 / IF Bates RFC12328 - RFC12436)
- Investigative File – 109 pages
- Missing from Criminal Defense File – Indications that case transferred. No comparison.
- Missing from Permanent Retention File – Medical Examiner Report (12334-38); Toxicology Report (12339); Medical Examiner Report (12340-44); Toxicology Report (12345); Investigative File Inventory (12367); Criminal Histories (12384-89); Handwritten Note (12390); Criminal Histories (12391-92); Handwritten Statement (12392-97); Property Inventory (12398-408); Arrest Report (12414); Handwritten Note (12415); Firearms Use Report (12416, 12418); Memo (12417, 12419); Officer's Battery Report (12420-21); GPRs (12422-34)

Jose Baez (RD# N-262285 / IF Bates RFC12572 - RFC12735)
- Investigative File – 164 pages
- Missing from Criminal Defense File – Criminal History (12640-41); Line Up Report Sheet (12644); Handwritten Notes (12646); GPR (12647); Handwritten Notes (12648); Handwritten Notes (12725)
- Missing from Permanent Retention File – Medical Examiner's report (12582-86); Toxicology Report (12587); Criminal History (12630-31); Criminal History (12640-41); Arrest Report (12642); Request for Identification Records (12643); Handwritten line up report (12644); Identification Procedural Control (12645); Handwritten Notes from lineup (12646); GPRs (12647-48); Stop Order Cancellation (12651); FBI and Illinois State Criminal Record (12654-71); Request for Identification Records (12672); Property Inventory (12673-78); Arrest Report (12680); Arrest Information (12694); GPRs (12695-96); Stop Order (12697); Material for Use in Daily Bulletin (12698); Criminal History (12699-700); Request for identification records (12701); Property Inventory (12705-09); Arrest Report (12711); GPRs (12721-22, 12724-27); Criminal Record (12732-33); Memo (12735)

Timothy Lee (RD# N-267450 / IF Bates RFC12736 - RFC12831)
- Investigative File – 96 pages
- Missing from Criminal Defense File – M.E. Report of Postmortem Examination (12742-45); Cause of Death Supplementary Report (12748-49); Photographs (12772-75); Property Inventory Sheet (12830)
- Missing from Permanent Retention File – PRF redacted. No comparison.

Ricardo Miranda (RD# N-475910 / IF Bates RFC13109 - RFC13182)
- Investigative File – 74 pages
- Missing from Criminal Defense File – Investigative File Inventory (13116-17)
- Missing from Permanent Retention File – Handwritten notes (13114, 13127); Investigative File Inventory (13116); Arrest Reports (13124, 13126, 13133, 13148); ASA Notes (13123, 13125, 13138-39); Written Statement (13134-37); Line-up Notes (13140); Request for Ballistics Comparison (13154); Property Inventory Sheet (13155-56, 13159-61, 13180-82) GPRs (13172-77); Documents re: a car (13167, 13178)

Calvin McLemore, Rolando Serrano (RD# N-517875 / IF Bates RFC13249 - RFC13500)
- Investigative File – 252 pages
- Missing from Criminal Defense File – Photographs (13316-81); Investigative File Inventory (13383-84); Subpoena (13385); Form 101 (13389); GPRs (13390-91); Order with handwritten notes (13392); Request for Evidence Identification Photographs (13499); Handwritten notes (13500)
- Missing from Permanent Retention File – PRF redacted. No comparison.

Samuel Robinson (RD# N-581836 / IF Bates RFC13501 - RFC13671)
- Investigative File – 171 pages
- Missing from Criminal Defense File – Court Attendance Reports (13502-05); Report of Postmortem Examination (13506-09); Results of Toxicologic Analysis (13510); Case Assignment Slip (13511); SAO Disposition Report (13512); Court Attendance Report (13513); Letter (13514); Court Attendance Reports (13515-22); File Folder (13551); Notes (13552); Investigative File Inventory (13553-54); Investigative File Control (13555-56); Subpoena (13557); Stamp/Notes (13558); Statement (13592 & 94); Blank Inventory of Things Seized (13614); Supplementary Report (13639); Blank Envelope (13647); To-From Memo (13648); Handwritten Notes (13649-52); CPD Message (13659); Mug Shots (13660-71)
- Missing from Permanent Retention File – PRF redacted. No comparison.

15

Glen Miller (RD# N-592324 / IF Bates RFC13672 - RFC13742)
- Investigative File – 71 pages
- Missing from Criminal Defense File – Investigative File Inventory (13673); Cause of Death Supplementary Report (13674-75); Supplementary Report (13682-84, 13693-96)
- Missing from Permanent Retention File – Investigative file inventory (13673); Supplementary Report (13676-81); Supplementary Report (13685-87); Supplementary Report (13688-89); Supplementary Report (13690-92); Supplementary Report (13693-96); Arrest Report (13697); Written Statement (13704-07); Written Statement (13708-12); Felony Minutes Report (13713-14); Property Inventory Sheets (13715-21); Evidence Reports (13723); Evidence Report (13724); GPR/Handwritten Notes (13727-39); Police Report (13740)

Richard Conner (RD# P-049272 / IF Bates RFC13890 - RFC14195)
- Investigative File – 306 pages
- Missing from Criminal Defense File – Handwritten Notes (13891); Investigative File Inventory (13935); Handwritten Notes (13947); Court Order (14028); Interstate Identification Index (14123-27)
- Missing from Permanent Retention File – PRF redacted. No comparison.

Demetrius Thomas (RD# P-060434 / IF Bates RFC14415 - RFC14565)
- Investigative File – 151 pages
- Missing from Criminal Defense File – Court Attendance Report (14416); Case Assignment Slip (14417); SAO Disposition Report (14418); Court Attendance Reports (14419-31); Court Attendance Report (14438); Court Notification/Sworn Member (14469); Crime Laboratory Report (14471); Property Inventory Sheets (14472-74); Court Notification/Sworn Member card & Handwritten Notes (14478-79); Statement of Demetrius Thomas (14516-30); Subpoena (14565)
- Missing from Permanent Retention File – No PRF.

Robert Machine (RD# P-128067 / IF Bates RFC14566 - RFC14774)
- Investigative File – 209 pages
- Missing from Criminal Defense File – SAO Disposition Reports (14571-73); Court Attendance Reports (14574-83); Supplementary Report (14633-34); Handwritten Notes (14640); Investigative File Inventory (14641-14642); Investigative File Control (14643); Subpoena (14647); Handwritten Notes (14650, 14712, 14758); Supplementary Report (14759-60); Handwritten Notes (14761); Form 101 (14762); Arrest Report (14763); General Offense Case Report (14764-14765); Envelope (14767); Photographs (14768-69, 14770-74)
- Missing from Permanent Retention File – Medical Examiner Report (14567-14570); Interview (14637); Investigative File Inventory (14641-42); Request for Crime Lab Analysis (14644); Report of Registered Vehicle (14651); Photographs (14652-54); Copy of "calling card" (14655); Memo (14657); Vehicle Inventory Report (14659); Property Inventory sheets (14664-71); Arrest Report (14678); Criminal History (14679); Handwritten Statement (14680-83); Handwritten Statement (14684-86); Handwritten Reports (14702); Criminal History (14709-11); Handwritten Notes (14712); Request for Telephone Call Records (14723); Property Inventory Sheet (14745-50); GPR (14751-55); Handwritten Note (14758); Arrest Report (14759-60); General Offense Case Report (14764-65); Photographs (14768-74)

Demetrius Johnson (RD# P-272087 / IF Bates RFC15446 - RFC15481)
- Investigative File – 36 pages
- Missing from Criminal Defense File – Indications that case transferred. No comparison.
- Missing from Permanent Retention File – Medical Examiner Report (15448-51); Toxicology Report (15452); Line Up Report (15470-71)

17

Miguel Borrotto (RD# P-526822 / IF Bates RFC16275 - RFC16401)

- Investigative File – 127 pages
- Missing from Criminal Defense File – Letter to Officer Riccio (16276); Court Attendance Report (16277-82); Subpoena (16308); Subpoenas (16310-11); Subpoenas (16315-16); Complaint for Preliminary Examination (16324-25); Form 101s (16326-27); License Plate Sticker Replacement (16335); LEADS Response (16338); General Offense Case Report (16386); Social Security Card (16392-93); Vehicle Search (16394); Handwritten Notes (16395); Handwritten Notes (16397); Envelope & Letter (16398-400); American Standard Enterprise Receipt (16401)
- Missing from Permanent Retention File – Medical Examiner Report (16283-86); Pages 2-3 of Arrest Report (16291-92); Investigative File Inventory (16306); Criminal History (16309); Arrest Report (16329); Property Inventory Sheets (16332-34); License Plate Sticker Replacement Application (16335); Handwritten Note (16337); Criminal History (16338-52); GPRs (16359-64); Property Inventory Sheets (16365-67, 16370-75); Evidence Report (16378); Request for Evidence (16380); Property Inventory Sheets (16381-83); Photographs (16389-91); Social Security Card (16392-93); Vehicle Registration Inquiry (16394); Envelope (16395); Handwritten names and contact information (16397); Envelope and Letter (16398-400); Receipt for Sale of Car (16401)

### *Michael Brasfield and Associates, Inc.*

641 Olele Point Road                          Phone: 360-301-4465
Port Ludlow, WA 98365                         E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**
No. 12 CV 4428

# ATTACHMENT G

| | | | Criminal Defense Attorney File Comparison Items in the Investigative File Missing from the Criminal Defense File | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Identifying Information** | | | | | | | | | | | | | |
| Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?* | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
| 1 G025122 | 1985 | Andrew Johnson Terry Sanders | No | N/A | N/A | N/A | N/A | N/A | N/A | L | N/A | N/A | N/A |
| 2 G028593 | 1985 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 3 G063126 | 1985 | Sherman Addison Marina Brown Annie Robinson | Yes | Yes | • RFC 02443 | Yes | N/A - No Inventory in investigative file | N/A – No GPRs in Investigative File. | N/A | N/A - No Handwritten Notes in Investigative File. | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 4 G067109 | 1985 | Donald Young | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 5 G069345 | 1985 | Alvardo Santillan | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 6 G077193 | 1985 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 7 G129819 | 1985 | Joaquin Gonzalez | Yes | Yes | • RFC 02689 • RFC 02694 | No | N/A | N/A – No GPRs in Investigative File. | N/A | N/A - No Handwritten Notes in Investigative File. | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 8 G159909 | 1985 | Henry Reyes Elmer Alverez Noel Rivera Luis Rivera | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 9 G235351 | 1985 | Jesus Hernandez | Yes | Yes | • RFC 02920 – 02922 • RFC 02924 • RFC 02972 – 02981 | No | N/A | No | N/A | No | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 10 G235351 | 1985 | Hipolito Torres | Yes | Yes | • RFC 02920 – 02923 • RFC 02972 – 02981 | No | N/A | No | N/A | No | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 11 G256674 | 1985 | Richard Gonzalez | Yes | Yes | • RFC 03023 - 03028 | No | N/A | N/A – No GPRs in Investigative File. | N/A | N/A - No Handwritten Notes in Investigative File. | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 12 G303248 | 1985 | Miguel Rodriguez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 13 G317267 | 1985 | Andre Boulrece | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 14 G317507 | 1985 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 15 G321911 | 1985 | Roberto Moreno | Yes, but it is incomplete | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 16 G382131 | 1985 | Roger Robinette | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 17 G418721 | 1985 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 18 G451229 | 1985 | Israel Pacheco | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 19 G471800 | 1985 | Paul Carrasquillo | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| | Identifying Information | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison Items in the Investigative File Missing from the Criminal Defense File | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 1 | G025122 | 1985 | Andrew Johnson Terry Sanders | Yes | RFC 02184 - 02186 | No | • Subpoena for Streetfiles from ASA and Defense • Handwritten notes • General Offense Case Report • Receipts for Exhibits • Arrest Information Card • Arrest Reports • Postmortem/Toxicology Report • Body Diagram • Supplemental Report (COD) | Yes | • RFC 02254 • RFC 02310 • RFC 02312 • RFC 02314 • RFC 02316 • RFC 02318 • RFC 02322 • RFC 02326 • RFC 02329 • RFC 02362 - 02363 | Yes | • RFC 02361 | Redacted, no comparison | N/A | N/A | N/A |
| 2 | G028593 | 1985 | Redacted | No | N/A | N/A | N/A | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 3 | G063126 | 1985 | Sherman Addison Marina Brown Annie Robinson | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Lab Report at RFC02425-26, Medical Examiner report at RFC02438-39-43 |
| 4 | G067109 | 1985 | Donald Young | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner report at RFC02514-15, 2526-2535 |
| 5 | G069345 | 1985 | Alvardo Santillan | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 02565-2529; Toxicology Report at RFC 02570; |
| 6 | G077193 | 1985 | Redacted | Yes | RFC 02574 -02575 | No | *"GPR Notes" Listed in Inventory • Subpoena for Streetfiles from ASA and Defense • Arrest Information Cards • Handwritten Notes | Yes | • RFC 02576 • RFC 02626 • RFC 02670 • RFC 02672 – 02677 | Yes | • RFC 02642 | Redacted, no comparison | N/A | N/A | N/A |
| 7 | G129819 | 1985 | Joaquin Gonzalez | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner report at RFC02694 & 2710-2719 |
| 8 | G159909 | 1985 | Henry Reyes Elmer Alverez Noel Rivera Luis Rivera | Yes | RFC 02731 - 02732 | No | *"Lab Reports" Listed in Inventory *"17 Notes" listed in Inventory- lines up with GPRs not Listed • Handwritten Note • Property Inventory • Towed Vehicle Dispositions • Motor Vehicle Inventory Report • Statement • Supplemental Report | Yes | • RFC 02739 • RFC 02748 • RFC 02894 | No | N/A | Yes | Yes | Yes | Handwritten Notes RFC02739; 2878-2894, Lab Report at RFC02740-2742, handwritten note from state witness explaining her fear (summary report is in PRF) at RFC02748, Defendant statements at RFC02789-2807, 2812-2874, Police Report re threats to victim's family at RFC 02895-97, Gun Forensics Report at RFC02915-2916, consent to search form at RFC02917, Vehicle Tow Report at RFC 2735 & 02918, Vehicle Disposition Report at RFC02736-02738, |
| 9 | G235351 | 1985 | Jesus Hernandez | Yes | RFC 02920 | No | • Subpoena for Streetfiles PD • Cause of Death Supp. Report | Yes | RFC 02956 | No | N/A | Yes | No | Yes | Lab Report at RFC 02924; Defendant statements at RFC 02938-46; Property Inventory at RFC 02948; Handwritten notes/GPRs at RFC 02950-56; Evidence Report at RFC 02957-58, 2965-67; Photos at RFC 02972-81; |
| 10 | G235351 | 1985 | Hipolito Torres | Yes | RFC 02920 | No | • Subpoena for Streetfiles PD • Cause of Death Supp. Report • CPD Laboratory Report | Yes | RFC 02956 | No | N/A | Yes | No | Yes | Lab Report at RFC 02924; Defendant statements at RFC 02938-46; Property Inventory at RFC 02948; Handwritten notes/GPRs at RFC 02950-56; Evidence Report at RFC 02957-58, 2965-67; Photos at RFC 02972-81; |
| 11 | G256674 | 1985 | Richard Gonzalez | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC 3023-27; Toxicology Report at RFC 03028; |
| 12 | G303248 | 1985 | Miguel Rodriguez | Yes | RFC 03058 | No | • Subpoena ASA (Not for Streetfiles) • Arrest Report • Handwritten Notes • Supplemental Reports | Yes | • RFC 03083 • RFC 03085 • RFC 03087 • RFC 03089 • RFC 03091 • RFC 03111 | No | N/A | Yes | No | Yes | Arrst Reports at RFC 3106-08, 3110; Hold Past Court Form at RFC 3109; Handwritten Notes/GPRS at RFC 3111-3116, 3082-91; Photos at RFC 3122-28; Defendant Statement at RFC 3079;Evidence Reports at RFC 3065-67, 95, 96; Line-up Notes (Line-up documented in Supp. Report in PRF) at RFC 3093; Property Inventory at RFC 03097-98 |
| 13 | G317267 | 1985 | Andre Boulrece | Yes | RFC 03203 - 03204 | No | • Postmortem/Toxicology Report • Body Diagram • Supplemental Report (COD) • Subpoena for Streetfiles (Defense) • Subpoena ASA (not for streetfiles) • Receipt for Exhibits | No | N/A | No | N/A | Yes | Yes | Yes | Transcript of defendant statements at RFC 03229-3255; Lab Reoprts (from Pam Fish) at RFC 03210-3215; Property Inventory Sheets at RFC 03216, 3266-69; Handwritten Notes at RFC 03273-3282; Evidence Report documenting line up (described in Supp report that is in PRF) at RFC 03258. |
| 14 | G317507 | 1985 | Redacted | Yes | RFC 03130 | No | *"GPR Notes" Listed in Inventory • Body Diagram • Supplemental Report (COD) • Postmortem/Toxicology Report • Biz. Cards • Handwritten Notes | Yes | • RFC 03153 • RFC 03162 • RFC 03186 • RFC 03189 • RFC 03191 • RFC 03199 • RFC 03201 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 15 | G321911 | 1985 | Roberto Moreno | Yes | RFC 03324 - RFC 03325 | Yes | • Postmortem/Tox. • Handwritten Notes | Yes | • RFC 03385 • RFC 03387 -03388 • RFC 03390 • RFC 03392 • RFC 03394 • RFC 03396 • RFC 03398 • RFC 03400 | No | N/A | Yes | No | Yes | Reinvestigation docs at RFC 03326-34; Latent Fingerprints Report at RFC 03340; Correspondence re offender in Mexico at RFC 03344-46, 48; Medical Examiner Report at RFC 03351-54; Toxicology Report at RFC 03355; Evidence Report at Rfc 03359; Photos at RFC 03378; Property Inventory at RFC 03379-80; Evidence Report re line up photos at RFC 03382-83; Handwritten Nontes/GPRs at RFC 03385-3401; Victim info at RFC03405; Photos at 3408-3418; |
| 16 | G382131 | 1985 | Roger Robinette | No | N/A | No | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC 03452-3456; Toxicology report at RFC 03457; |
| 17 | G418721 | 1985 | Redacted | No | N/A | No | N/A | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 18 | G451229 | 1985 | Israel Pacheco | No | N/A | No | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC 03529-3533; Toxicology Report at 3534; |
| 19 | G471800 | 1985 | Paul Carrasquillo | No | N/A | No | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 3554-58; Toxicology Report at RFC 035559; |

| | Identifying Information | | | Criminal Defense Attorney File Comparison  Items in the Investigative File Missing from the Criminal Defense File | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?* | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos | | |
| 20 H064504 | 1986 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 21 H091575 | 1986 | Santiago Rendon | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 22 H094573 | 1986 | Harry Cooper | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 23 H095844 | 1986 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 24 H100760 | 1986 | Joseph Geist (Victim: Edward Sobolewski) | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 25 H105557 | 1986 | Joseph Geist (Victim: John Doe) | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 26 H126865 | 1986 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 27 H167635 | 1986 | Gregory Byndom Cynthia Lee | Yes | Yes | • RFC 04150 | Yes | N/A - No inventory in investigative file | N/A - No GPRs in Investigative File. | N/A | N/A - No Handwritten Notes in Investigative File. | N/A | N/A - No To-From Memos in Investigative File. | N/A | | |
| 28 H172729 | 1986 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 29 H174403 | 1986 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 30 H193697 | 1986 | Gregory Davis Russell Harper | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 31 H208106 | 1986 | Willie J. Woods Raidard Melandez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 32 H265414 | 1986 | Danny Holmes | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 33 H279780 | 1986 | Henry Johnson | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 34 H316198 | 1986 | Juan Ortiz | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 35 H323287 | 1986 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 36 H375595 | 1986 | Jose Delvalle | Yes | No | N/A | No | N/A | N/A - No GPRs in Investigative File. | N/A | N/A - No Handwritten Notes in Investigative File. | N/A | N/A - No To-From Memos in Investigative File. | N/A | | |
| 37 H376814 | 1986 | Pedro Martinez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |
| 38 H422157 | 1986 | Michael Boyd Patricia Bass Earl Harris Kevion Walton | Yes, but it is incomplete | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | | |

Page 3 of 28

| | Identifying Information | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison  *Items in the Investigative File Missing from the Criminal Defense File* | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 20 | H064504 | 1986 | Redacted | Yes | RFC 03583 | No | *"GPR Notes" and "Notes" Listed in Inventory• Arrest Report • Cable Schedule Guide • Subpoena for Streetfiles (Defense) | Yes | • RFC 03633 • RFC 03636 • RFC 03647 • RFC 03649 • RFC 03653 • RFC 03655 • RFC 03657 • RFC 03662 • RFC 03664 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 21 | H091575; | 1986 | Santiago Rendon | No | N/A | No | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 3707-3710; Toxicology Report at RFC 03711; |
| 22 | H094573 | 1986 | Harry Cooper | No | N/A | No | N/A | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 23 | H095844 | 1986 | Redacted | Yes | RFC 03798 - 03799 | No | *"GPR Notes" and "RD Notes" Listed in Inventory• Biz. Card • Subpoena from ASA (not for streetfiles) • Postmortem/Toxicology Report • Supplementary Report | Yes | • RFC 03845 • RFC 03877 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 24 | H100760 | 1986 | Joseph Geist (Victim: Edward Sobolewski) | No | N/A | No | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 3892-3894; Toxicology Report at RFC 03895; Supp. Report witness interview at RFC 3898-99; Supp. Report of Interview with Defendant at RFC 03905-3906; |
| 25 | H105557 | 1986 | Joseph Geist (Victim: John Doe) | No | N/A | No | N/A | No | N/A | No | N/A | Yes | No | Yes | Supp Report at RFC03962-64 |
| 26 | H126865 | 1986 | Redacted | Yes | RFC 04015 - 04016 | No | • 3 of the 4 Subpoenas/order for Streetfiles • Handwritten Notes • Body Diagram • Postmortem/Toxicology Report • CPD Criminal History • Supplemental Report (COD) | Yes | • RFC 04127 • RFC 04133 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 27 | H167635 | 1986 | Gregory Byndom Cynthia Lee | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC04143-46; Toxicology report at RFC04148 |
| 28 | H172729 | 1986 | Redacted | No | N/A | No | N/A | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 29 | H174403 | 1986 | Redacted | No | N/A | No | N/A | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 30 | H193697 | 1986 | Gregory Davis Russell Harper | No | N/A | No | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC04265-69; |
| 31 | H208106 | 1986 | Willie J. Woods Raidard Melandez | No | N/A | No | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 04338-39; Toxicology Report at RFC 04337; |
| 32 | H265414 | 1986 | Danny Holmes | No | N/A | No | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 04361-64; Toxicology Report at RFC 04365; |
| 33 | H279780 | 1986 | Henry Johnson | No | N/A | No | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 04381-85; Toxicology Report at rFC 04386; |
| 34 | H316198 | 1986 | Juan Ortiz | Yes | RFC 04439 | No | *"Handwritten Notes" Listed in Inventory - No GPRs listed • Subpoenas for Streetfiles (ASA) • General Progress Reports • Postmortem/Toxicology Report • Supplemental Report (COD) • Body Diagram | Yes | • RFC 04480 | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 04415-18; Toxicology Report at RFC 04419;Property Inventory Report at RFC 0441-42, 4452; Evidence Report re cartridge at RFC 04446, 4453; Transcript of Witness Statement at RFC 04454-4457; Defendant Statement at RFC 04458-63; Handwritten notes/GPRs at RFC 04477- |
| 35 | H323287 | 1986 | Redacted | Yes | RFC 04526 | No | • Subpoenas for Streetfiles (Defense) • Subpoenas Not for Streetfiles (Defense) • To-From Memo • Letter from Defense Attorney • Postmortem/Toxicology Reports • Handwritten Note • Photographs/Backs of Photos: Person • General Offense Case Report • Supplemental Reports (CODs) • Supplemental Reports • Unclear/Either an Arson GOCR or Supp. Report | Yes | • RFC 04570 | Yes | • RFC 04532 | Redacted, no comparison | N/A | N/A | N/A |
| 36 | H375595 | 1986 | Jose Delvalle | No | N/A | N/A | N/A | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 37 | H376814 | 1986 | Pedro Martinez | No | N/A | No | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 04622-25; Toxicology Report at RFC 04626; |
| 38 | H422157 | 1986 | Michael Boyd Patricia Bass Earl Harris Kevion Walton | Yes | RFC 04768 | No | • Subpoenas from ASA and PD (not streetfiles) • Subpoenas from ASA and PD for Streetfiles • Statement • Supplemental Reports • Letter/Envelope from citizen • Request for Identification Photo • Evidence Report | Yes | • RFC 04876 • RFC 04986 • RFC 04989 • RFC 04992 • RFC 04994 • RFC 04998 • RFC 05000 – 05001 • RFC 05004 – • RFC 05011 – 05012 • RFC 05021 | Yes | • RFC 04789 | Yes | Yes | Yes | Medical Examiner Report at RFC 04708-04712; Supp. Report re pattern analysis of robberies; Supp Reports 4879, 4883, 4992; GPR/Handwritten Notes at 4798, 4806, 4798, 4863-72, 4875-76, 4909-10,4919-20, 4927, 4962, 4976-4980, 4987-4994, 4997, 5011 Evidence Report at 4799, 4922, 4935, 4983, 4995, 5009 - Fingerprint requests and response at RFC 04796, 4773, 4796, 4822-23, 4862, 4891, 4906-08, 4928-30, 4999-50004, ; Defendants' Statements at RFC 04778-4788, 4825- Stop Order at RFC 04792-93, 4885-86, Daily Bulletin at 4794, 4795; Hospitalization Case Report at RFC 04801, Arrest Report at 4807, 4852-55, 4894-4905, 4947, 4950, 4952-53, 4955, 4956, 4960 Property Inventory at 4856-60, 5016-5027; Preliminary Fired Evidence Report at RFC 04921, Crime Analysis Pattern at 4973-75, Photos at 5029-5093, Request for Identification Photos at RFC 05095-5106. |

| | Identifying Information | | | Criminal Defense Attorney File Comparison — Items in the Investigative File Missing from the Criminal Defense File | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?* | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
| 39 H487637 | 1986 | Marcus Buchanan | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 40 J052070 | 1987 | Samuel Lee, Michael Green, Michael Jackson, Lawrence Brantley | Yes | Yes | • RFC 05207, RFC 05209, RFC 05211 - 02512, RFC 05236 – 05238, RFC 05412, RFC 05194, RFC 05196, RFC 05198 – 05206, RFC 05208, RFC 05210, RFC 05212, RFC 05214, RFC 05216 – 05233, RFC 05252 - 0524, RFC 05373, RFC 05378, RFC 05464, RFC 05434, RFC 05444 – 05445, RFC 05264 – 05275, RFC 05276 – 05289, RFC 05290 – 05297, RFC 05298, RFC 05299 – 05300, RFC 05189 – 05191, RFC 05234 – 05235, RFC 05240, RFC 05245, RFC 05247 - 05249, C 05250 – 05252, RFC 05256 – 05257, RFC 05439, RFC 05443, RFC 05462 - 05463, RFC 05329 – 05332, RFC 05328, RFC 05333 – 05334, RFC 05390 – 05391, RFC 05396 – 05397, RFC 05400 – 05401, RFC 05441, RFC 05399, RFC 05386, RFC 05388, RFC 05394, RFC 05416, RFC 05429 – 05430, RFC 05433, RFC 05442, RFC 05446, RFC 05456, RFC 05459, RFC 05466, RFC 05458, RFC 05460 - 05461 | No | N/A | No | N/A | Yes | • RFC 05207, • RFC 05209, • RFC 05211 - 02512, • RFC 05236 – 05238, • RFC 05412 | N/A - No To-From Memos in Investigative File. | N/A |
| 41 J053513 | 1987 | Manuel Feliciano, Heyrans Perez, Samuel Perez, Frankie Mercado | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 42 J073920 | 1987 | James Newsom | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 43 J075073 | 1987 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 44 J080925 | 1987 | Samuel Slack | Yes | Yes | • RFC 06072, • RFC 05984, • RFC 05983, RFC 06074 - 06079, • RFC 05987, • RFC 05982, • RFC 06042, • RFC 06056 | No | N/A | No | N/A | Yes | • RFC 06072 | N/A - No To-From Memos in Investigative File. | N/A |
| 45 J117497 | 1987 | Florentino Villanueva | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 46 J139200 | 1987 | Leandro Rodriguez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 47 J209456 | 1987 | David Quinones | Yes | Yes | • RFC 06324 – 06325, • RFC 06333, • RFC 06335, • RFC 06337, • RFC 06344 – 06350, • RFC 06401 - 06402, • RFC 06443, • RFC 06444, • RFC 06323, • RFC 06330, • RFC 06332, • RFC 06334 | No | N/A | No | N/A | Yes | • RFC 06323, • RFC 06332, • RFC 06334 | N/A - No To-From Memos in Investigative File. | N/A |
| 48 J209456 | 1987 | Bruce Andras | Yes | Yes | RFC 06323; RFC 06324-06325; RFC 06326-06327; RFC 06328-06330; RFC 06331; RFC 06332; RFC 06333; RFC 06337; RFC 06413; RFC 06442; RFC 06443; RFC 06444 | No | N/A | No | N/A | Yes | RFC 06323; RFC 06332; RFC 06413 | N/A - No To-From Memos in Investigative File. | N/A |

| | | | | Investigative File Information | | | | | | | Permanent Retention File Comparison | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Identifying Information** | | | | | | | | | | | *Items in the Investigative File Missing from the Criminal Defense File* | | | |
| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 39 H487637 | 1986 | Marcus Buchanan | Yes | RFC 05141 | No | • Postmortem/Toxicology Report • Subpoena for Streetfiles (ASA) • Subpoenas not for Streetfiles (ASA) • Property Inventories • Supplemental Report (COD) • Body Diagram • Evidence Reports | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report at 5117-19; Toxicology Report at RFC 5120; Property Inventory at RFC 05145-49, 5152; Evidence Report at RFC 05150; Pewliminary Fired Evidence Report at RFC 5158; Defendant Statement at RFC 05159-62; Evidence Report re Photo Line up at RFC 05175; Arrest Report at RFC -5177; GPR/Handwritten Notes at RFC 05180-5185 |
| 40 J052070 | 1987 | Samuel Lee Michael Green Michael Jackson Lawrence Brantley | Yes | • RFC 05189 - 05191 | No | • Letter from Sheriff • Biz. Card •Statement of Brantley •Statement of Lee •Subpoenas PD •Subpoenas for Streetfiles PD • AFIS Request • Request for Identification Photos • Photos – Persons • Palm print Card • General Offense Case Report •Supplementary Reports • Arrest Reports • Property Inventory •Postmortem/Tox. | Yes | • RFC 05405 • RFC 05207 • RFC 05209 • RFC 05211 - 02512 • RFC 05236 – 05238 • RFC 05412 • RFC 05421 – 05422 • RFC 05424 • RFC 05426 • RFC 05362 • RFC 05380 - 05383 | No | N/A | Yes | Yes | Yes | Handwritten GPRs at 5263; Transcript of defendant statement at 5264-5297; Complaint for Search Warrant at RFC 5448; |
| 41 J053513 | 1987 | Manuel Feliciano Heyrans Perez Samuel Perez Frankie Mercado | Yes | RFC 05676 - 05678 | No | •"Notes" Listed in Inventory • Subpoenas Not for Streetfiles (Defense) • Subpoena for Streefiles (ASA and Defense) • Arrest Info Card Mercado • General Progress Reports • Supplemental Report • Postmortem/Toxicology Report | Yes | • RFC 05709 • RFC 05720 • RFC 05723 • RFC 05757 • RFC 05765 • RFC 05800 • RFC 05824 | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC 05634-40; Toxicology Report at RFC 5641; Complaint for Search Warrant at RFC 5739; Defendant Statement at RFC 05770; Arrest Report at 5693, 5715, 5717, 5783; Handwritten notes/ GPRs at RFC 5699, 5706-09, 5716, 5719-5721, 5723-28, 5749, 5756-57, 5762-66, 5779, 5799-5800, 5803, 5808, 5822-5835; Property Inventory at RFC 5722, 5735-37, 88-90, 92-92; Complaint for Search Warrant at RFC 5738-47; Evidence Report re lineup photos at RFC 5758, 5774; Fired Evidence Report at RFC at 5784; Photos at RFC 5842-5855. |
| 42 J073920 | 1987 | James Newsom | No | N/A | No | N/A | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 43 J075073 | 1987 | Redacted | Yes | RFC 05919 | No | •"GPRs" and "Handwritten GPR Notes" Listed in Inventory • Property Inventory • Major Crime Incident Notification • General Offense Case Reports • Supplemental Report • Body Diagram | Yes | • RFC 05921 • RFC 05923 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 44 J080925 | 1987 | Samuel Slack | Yes | • RFC 05979 - 05980 | No | • GPRs • Property Inventory • Request for Analysis/Receipt for Exhibits • Felony Minutes Form 101 •Subpoena for Streetfiles • Photos - Person •Postmortem/Toxicology Reports | Yes | • RFC 06044 • RFC 06072 | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 06089-6092; Request for Latent Fingerprints at RFC 05982, 5989, 5996 6002 6034-35, 06084-85; Fingerprint Results at RFC 5984; Evidence Report at RFC 5992-5994, 6058, 6082-83; Handwritten GPRs RFC 06030-31, 6043, 605, 06061-60723;Evidence Report at RFC 06032, 6035 6050; Hold Past Court Calll Request at RFC 06033, 6042; Property Inventory at RFC 6038-39, 6048, 6060, 6038, 6039; Arrest Report at RFC 06042, 6054, 6056; Fired Evidence Report at RFC at 6045; Release of Prisoner (documented in supp report though) at RFC 6052; photos at 6074-6079; Latent Fingerprint Exam Report for victim Prints at RFC 06080; |
| 45 J117497 | 1987 | Florentino Villanueva | Yes | RFC 06170 | No | • Subpoena for Streetfiles (ASA and Defense) • Postmortem/Toxicology Report • Supplemental Reports • Body Diagram | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC06141; Criminal History Reports at RFC06179, 6190-92; Arrest Report at RFC06180; Evidence Reports at RFC06181-82, 6189; Police Reports and Handwritten Notes from 1986 murder that may have been committed by same offender at RFC06193-6198; GPRs at RFC06206-6221; Photos at RFC06225-6230 |
| 46 J139200 | 1987 | Leandro Rodriguez | Yes | RFC 06272 | No | •"GPRs" Listed in Inventory • Subpoena for Streetfiles (ASA and Defense) • Postmortem/Toxicology Report • Supplemental Reports (COD) • Body Diagram | No | N/A | Yes | • RFC 06296 | Yes | Yes | Yes | Medical Examiner Report at RFC06242-6246; Handwritten Witness Statement at RFC06279-80; Handwritten notes at RFC06281, RFC 06315-6321; Evidence Report at RFC 06282; Arrest Report at rFC06295; Memo re: difficulty contacting a witness at RFC06296; Report of Material Submitted for Use in the Daily Bulletin at RFC 06297; Arrest Warrant at RFC 06300; Property Inventory at RFC06305-06 |
| 47 J209456 | 1987 | David Quinones | Yes | • RFC 06324 – 06325 | No | •Subpoenas for Streetfiles PD •Handwritten Notes • CPD Criminal History •Fingerprint Exam. Letters and Reports • Request for Identification Photos • GPR | Yes | • RFC 06323 • RFC 06332 • RFC 06334 • RFC 06384 • RFC 06420 • RFC 06422 • RFC 06424 • RFC 06426 • RFC 06429 • RFC 06431 - 06432 | No | N/A | Yes | No | Yes | File Inventories at RFC06324-27; Criminal History Computer Screen for Perp #3 Quinones at RFC06328-30; Various court call requests; Fingerprint Examination Reports at RFC 6338-39 (and other places); Evidence Report from Criminal Lab Division at RFC06340, 6397-99; Arrest History for Chacon, Quinones at RFC06341-42; Statement/Confession of Quinones at RFC06344-50; Arrest Report dated 6/8/87 at RFC 6356; GPRs at RFC06357-58, 6377-81, 6421; Evidence Requests/Reports at RFC06359-70; Handwritten Notes at RFC06384, 6421-32; Property Inventory Reports at RFC06385-92; Arrest History for Marc Johnson at RFC06393-94; Statement of Witness Cordoba at RFC06401; Request for ID Photos and Photos at RFC06443-44 |
| 48 J209456 | 1987 | Bruce Andras | Yes | RFC 06324-06325 | No | 11 Handwritten notes in file, 7 listed in Inventory (See HN column) 10 GPRs in file, 8 listed on Inventory (RFC 06357-06358; 06377-06381; 06421; 06428; 06430) | Yes | RFC 06323; RFC 06332; RFC 06384; RFC 06413; RFC 06420; RFC 06422; RFC 06424; RFC 06426; RFC 06429; RFC 06431-06432 | No | N/A | Yes | No | Yes | File Inventories at RFC06324-27; Criminal History Computer Screen for Perp #3 Quinones at RFC06328-30; Various court call requests; Fingerprint Examination Reports at RFC 6338-39 (and other places); Evidence Report from Criminal Lab Division at RFC06340, 6397-99; Arrest History for Chacon, Quinones at RFC06341-42; Statement/Confession of Quinones at RFC06344-50; Arrest Report dated 6/8/87 at RFC 6356; GPRs at RFC06357-58, 6377-81, 6421; Evidence Requests/Reports at RFC06359-70; Handwritten Notes at RFC06384, 6421-32; Property Inventory Reports at RFC06385-92; Arrest History for Marc Johnson at RFC06393-94; Statement of Witness Cordoba at RFC06401; Request for ID Photos and Photos at RFC06443-44 |

| | Identifying Information | | | Criminal Defense Attorney File Comparison — Items in the Investigative File Missing from the Criminal Defense File | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?* | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
| 49 | J209456 | 1987 | Marc Johnson | Yes, but it is incomplete | Yes. | All investigative materials missing from PD File – RFC06322 – RFC06444 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 50 | J215119 | 1987 | Jerry Buckner | Yes | Yes | RFC 06488; RFC 06573 - 6592 | No | N/A | No | N/A | No | N/A | No | N/A |
| 51 | J252204 | 1987 | Albert Escamillia | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 52 | J353821 | 1987 | Orlando Cintron | Yes, but it is incomplete | The PD's office closed this case because defendant obtained outside counsel. | All investigative materials missing from PD File – RFC06630 – RFC06662 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 53 | J355220 | 1987 | Thomas Choe | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 54 | J369257 | 1987 | Larry Matthews Anthony Mullins | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 55 | J388481 | 1987 | Eliseo Ortiz Pedro Leon Armando Perez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 56 | J409858 | 1987 | Richard Sanchez | Yes | Yes | RFC 07034; RFC 07035-07039; RFC 07040; RFC 07041-07046; RFC 07047; RFC 07054; RFC 07070-07071; RFC 07072; RFC 07073; RFC 07098; RFC 07130-07131 | No | N/A | No | N/A | Yes | RFC 07040 | N/A – No To-From Memos in Investigative File. | |
| 57 | J423347 | 1987 | Adolfo Pacheco Elmer Madrid | Yes | Yes | RFC 07148-07149; RFC 07150-07152; RFC 07153-07157; RFC 07158-07165; RFC 07184-07185; RFC 07186; RFC 07197-07200 | No | N/A | N/A - No GPRs in Investigative File | N/A | N/A – No Handwritten Notes in Investigative File. | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 58 | J478062 | 1987 | Juan Rivera | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 59 | K103034 | 1988 | Robert Dugar | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 60 | K176170 | 1988 | Cannot Determine (heavy redaction) | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| Identifying Information | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison *Items in the Investigative File Missing from the Criminal Defense File* | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 49 | J209456 | 1987 | Marc Johnson | Yes | RFC 06324-06325 | No | 11 Handwritten notes in file, 7 listed in Inventory (See HN column) 10 GPRs in file, 8 listed on Inventory (RFC 06357-06358; 06377-06381; 06421; 06428; 06430) | Yes | RFC 06323; RFC 06332; RFC 06384; RFC 06413; RFC 06420; RFC 06422; RFC 06424; RFC 06426; RFC 06429; RFC 06431-06432 | No | N/A | Yes | No | Yes | File Inventories at RFC06324-27; Criminal History Computer Screen for Perp #3 Quinones at RFC06328-30; Various court call requests; Fingerprint Examination Reports at RFC 6338-39 (and other places); Evidence Report from Criminal Lab Division at RFC06340, 6397-99; Arrest History for Chacon, Quinones at RFC06341-42; Statement/Confession of Quinones at RFC06344-50; Arrest Report dated 6/8/87 at RFC 6356; GPRs at RFC06357-58, 6377-81, 6421; Evidence Requests/Reports at RFC06359-70; Handwritten Notes at RFC06384, 6421-32; Property Inventory Reports at RFC06385-92; Arrest History for Marc Johnson at RFC06393-94; Statement of Witness Cordoba at RFC06401; Request for ID Photos and Photos at RFC06443-44 |
| 50 | J215119 | 1987 | Jerry Buckner | Yes | RFC 06488 | No | • Supplemental Report • Court Complaint Transmittal • ID Card • Photos – Person • Handwritten Note • Request to Hold Prisoner • Subpoena –Streetfiles PD • Subpoena –PD • CPD Lab Report • To-From Memo | Yes | • RFC 06566 • RFC 06497 | Yes | • RFC 06525 | Yes | No | Yes | Medical Examiner Report at RFC 06452-56; Toxicology Rep at RFC06547; Investigative File Index at RFC06488; Laboratory Report at RFC06490-91; Handwritten note at RFC06497; Evidence Report at RFC06507; Arrest Report at RFC06508; Handwritten GPRs at RFC06509; Mail routing slip (rejecting mail cover request) at RFC06513; Request for mail cover check at RFC06470, 06514; Copy of Envelope at RFC06516-17; Daily Bulletin at RFC06523-24; Memo from Detective at RFC06525; Notice of person wanted for investigation at RFC06527; Criminal History at RFC06528; Handwritten GPRs at RFC06539; Evidence Report at RFC06540; Criminal History at RFC06542-43; Criminal history of victim at RFC06544-45; Property Inventory at RFC06546-51; Handwritten GPRs at RFC06560-70; copy of victim's drivers license at RFC06574-75; Identification photographs of suspect and others at RFC06576-87, 91-92; Selective Service card of victim at RFC06589-90; |
| 51 | J252204 | 1987 | Albert Escamillia | No | N/A | No | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at 6595-98; Toxicology Report at 6599; |
| 52 | J353821 | 1987 | Orlando Cintron | No | N/A | N/A | N/A | Yes | RFC 06631 | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC06642-06648 |
| 53 | J355220 | 1987 | Thomas Choe | No | N/A | No | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC06677; Oct 8 1987 Supp Report at 6704; Nov 7 1987 Lineup Report at 6697, Nov 7 Supp Report at 6699; Nov 7 Supp Report at 6701. |
| 54 | J369257 | 1987 | Larry Matthews Anthony Mullins | Yes | RFC 06744 - 06745 | No | • Photos/Backs of Photos – Person • Request to Hold Past Regular Court Call • Arrest Information Card • Biz Card • CPD Criminal Histories • ISP Evidence Submission Form • Arrest Report • Handwritten Notes | Yes | • RFC 06870 • RFC 06883 • RD 06747 - 06748 | No | N/A | Yes | No | Yes | Investigative File Inventory at RFC06744-45; Handwritten Notes at RFC06747-49; Photographs of suspects, witnesses at RFC06750-74; search results for suspect at RFC06775-77; Supp Report at RFC06778-91; Request for GSR testing at RFC06792; Clear database printout at RFC06793-94; General Offense/Arrest Report at RFC06828-29; Medical Examiner's report at RFC06830-34; Toxicology Report at RFC06835; Evidence Report at RFC06838-42; Handwritten GPRs at RFC06843-45; Arrest Report at RFC06846; Handwritten GPR at RFC06847-48; Criminal histories of victim, witnesses, suspects at RFC06849-53; Daily Bulletin at RFC06854-56; Stop Order at RFC06857-58; Crimina history of suspect at RFC06859; Preliminary Evidence Report at RFC06860; Property Inventory Sheet at 06861-65; Request to hold prisoner at RFC06866; Arrest Report at RFC06867; Property Inventory at RFC06868; Soundex search results at RFC06869; Handwritten notes at RFC06870; victim's past arrest information at RFC06872; Criminal history and notes at RFC06873-74; Handwritten GPR at RFC06875-92; |
| 55 | J388481 | 1987 | Eliseo Ortiz Pedro Leon Armando Perez | Yes | RFC 06942 | No | *"Handwritten Notes" Listed in Inventory• Photos/Backs of Photos: Person • Property Inventory • CPD Criminal Histories • Supplementary Reports Postmortem/Toxicology Report • Request to Hold Past Court Call • Arrest Reports • Felony Minutes – Form 101s • Consent to Search Form • Subpoena for Streetfiles (Defense) • Statement • Subpoena Not for Streetfiles (Defense) • General Progress Reports • Evidence Reports • Body Diagram | Yes | • RFC 06939 • RFC 06941 • RFC 07014 | No | N/A | Yes | Yes | Yes | Defendant Statement at RFC 06948-51; Fired Evidence Report at RFC 06984; Defendant Statements at ; Handwritten Notes/ GPRs at RFC 07004-10, 07013; Photos at RFC 07016-7032; Property Inventory at RFC 6990-92, 6975-77; Evidence Report at RFC 06985; Firearm Lab Report at RFC 06981-84; Arrest Report 6968-73; Evidence Report re photos of lineup at RFC 06966; Medical Examiner Report at RFC 6902-06; |
| 56 | J409858 | 1987 | Richard Sanchez | Yes | RFC 07070-07071 | No | 2 Handwritten notes in file, 0 listed on Inventory (RFC 07118; RFC 07128) | Yes | RFC 07040; RFC 07118; RFC 07128 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 57 | J423347 | 1987 | Adolfo Pacheco Elmer Madrid | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC07153-56; Toxicology Report at RFC07157 |
| 58 | J478062 | 1987 | Juan Rivera | Yes | RFC 07229 - 07230 | No | •Postmortem/ToxicologyReports • Subpoena for Streetfiles (PD) • GPR • Typed Note • Handwritten Note | Yes | • RFC 07276 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 59 | K103034 | 1988 | Robert Dugar | Yes | RFC 07313-07314 | No | 7 pages of GPR notes (7 accounted for, cannot tell which ones are missing), 4 To-From Memos, Autopsy Report, 4 Handwritten Notes, Arrest Report, All Photos | Yes | RFC 07312, RFC 07325-07326, RFC 07383 | Yes | RFC 07318, RFC 07320, RFC 07343, RFC 07388, RFC 07390 | Yes | No | Yes | Medical Examiner Report at RFC 07281-84; Toxicology Report at RFC 07285; Handwritten Notes at RFC 07312, 07319-20, 24-26, 30, 38, 41-42, 45, 55-57, 82-86; Firearm Report at RFC 07318; Letter from purported witness at OCJ re confession at RFC 07343; Photo at RFC 07371, 7378; Arrest Report at RFC 07372; Evidence Report at RFC 07373-76; Property INventory at RFC 7380; Fired Evidence Report at RFC 07395; Property Inventory at RFC 07397- |
| 60 | K176170 | 1988 | Cannot Determine (heavy redaction) | Yes | RFC 07451 | No | Laboratory Report, S.A. Subpoena | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |

## Criminal Defense Attorney File Comparison
### Items in the Investigative File Missing from the Criminal Defense File

| Identifying Information | | | Has a Criminal Defense Attorney File been Produced?** | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory's in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | | | | | | | | | | | |
| 61 K197321 | 1988 | Luis Rodriguez, Miguel Rodriguez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 62 K205158 | 1988 | Tommy Richards | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 63 K227675 | 1988 | David Collazo | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 64 K285989 | 1988 | Adolfo Rosario | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 65 K292921 | 1988 | LaTonya Pitchfork/Pitchford | Yes | Yes | RFC 07897; RFC 07898-07900; RFC 07940-07941; RFC 07942; RFC 07943; RFC 07964; RFC 07967-07976; RFC 07977; RFC 07978-07979; RFC 07980; RFC 07990-07994; RFC 08003; RFC 08005-08006; RFC 08025; RFC 08026; RFC 08027; RFC 08028; RFC 08034; RFC 08037; RFC 08039; RFC 08040-08043; RFC 08046-08047; RFC 08052; RFC 08053-08056; RFC 08057; RFC 08058 | No | N/A | No | N/A | Yes | RFC 08005-08006; RFC 08034; RFC 08052 | N/A - No To-From Memos in Investigative File | N/A |
| 66 K318308 | 1988 | Javier Hernandez, Antonio Valentin | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 67 K417078 | 1988 | Orville/Orval Fain | Yes | Yes | RFC 08153; RFC 08154-08157; RFC 08158-08162; RFC 08174; RFC 08178-08179; RFC 08180; RFC 08183; RFC 08213; RFC 08215 | No | N/A | No | N/A | Yes | RFC 08213; RFC 08215 | N/A - No To-From Memos in Investigative File | N/A |
| 68 K419172 | 1988 | Christopher Ciavirelli | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 69 K455932 | 1988 | David Ortiz, Felipe Rodriguez | Yes | Yes | RFC 08330-08334; RFC 08340-08341; RFC 08342; RFC 08343-08347; RFC 08348-08349; RFC 08352-08355; RFC 08371; RFC 08375-08376; RFC 08377; RFC 08378-08379; RFC 08380; RFC 08381; RFC 08382; RFC 08383; RFC 08384-08386; RFC 08387; RFC 08388; RFC 08389-08390; RFC 08391; RFC 08392; RFC 08438; RFC 08439; RFC 08442; RFC 08453; RFC 08454; RFC 08455-08463; RFC 08464; RFC 08465 | No | N/A | Yes | RFC 08380; RFC 08439 | Yes | RFC 08588; RFC 08438; RFC 08442 | N/A - No To-From Memos in Investigative File | N/A |

| Identifying Information | | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison *Items in the Investigative File Missing from the Criminal Defense File* | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 61 | K197321 | 1988 | Luis Rodriguez, Miguel Rodriguez | No - file appears incomplete as there are only Supplementary Reports, G.O.C.R. and Post Mortem report in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Yes | No | Yes | Computer printout of criminal history (unreadable) at RFC07514; Medical Examiner Report at RFC07517; Court attendance reports at RFC07525-35; Supp Report 10/1/88 saying witness/participant participated in lineup and conclusion was "Deception Indicated" |
| 62 | K205158 | 1988 | Tommy Richards | Yes | RFC 07559 | No | 1 Evidence Report, Stop Order, 3 Lab Reports, all Photographs (35 pages - crime scene, lineup, mugshots of defendant), all Handwritten Notes (11 pages), both Subpoenas, Cause of Death Supplementary and Postmortem Report, Copy of Social Security Card, Medical Eligibility Card, Business Cards, possibly GPR notes (inventory just states GPR's) | Yes | RFC 07589, RFC 07596-07598, RFC 07604, RFC 07607-07611, RFC 07669 | Yes | RFC 07631 | Yes | Yes | Yes | Medical Edaminer Report at RFC07690-95; Toxicology Report at RFC07696; Photographs of crime scene, victim, and lineups at RFC07562-88, 90-94, 99; Handwritten notes at RFC07589; Business card at RFC07595; Handwritten notes at RFC07596-98, RFC07607-08; Medicaid card at RFC07600; Social Security card at RFC07602-63; Message notes at RFC07604, 09-; Request for identification photos at RFC07605; business cards at RFC07606; results of search for license plate at RFC07612-15; Investigative File control at RFC07616; Arrest Report at RFC07628, 34; Property Inventory at RFC07629-30; Request to hold prisoner at RFC07631; Evidence Report at RFC07632-33; Stop Order at RFC07635; Handwritten GPRs at RFC07636; request for analysis at RFC07638; Results of fingerprint analysis at RFC07641; Vehicle disposition at RFC07642; Evidence Report at RFC07644-46; Property Inventory at RFC07647-48; Fired evidence report at RFC07649; Supp report at RFC07650; Property Inventory at RFC07652-57; Evidence Report at RFC07658-60; Handwritten GPR at RFC07668-70; |
| 63 | K227675 | 1988 | David Collazo | Yes | RFC 07719-07720 | No | Photos, copy of business card, Subpoena | Yes | RFC 07747, RFC 07767-07771, RFC 07777 | Yes | RFC 07760, RFC 07772 | Yes | Yes | Yes | Copy of cassette tape at RFC07721; Identification photographs at RFC07722-24, 26-36; Photographs of victim? at RFC07725; Preliminary Fired Evidence Report at RFC07739; Evidence Report at RFC07740; Property Inventory at RFC07742-44; Handwritten notes at RFC07747; Evidence Report at RFC07757; Request to hold prisoner at RFC07760; Arrest Report at RFC07761; Arrest Information at RFC07762; Property Inventory at RFC07763; Handwritten GPRs and notes at RFC07766-68; print out of database search results at RFC07769-71; Request for non-published telephone and handwritten notes at RFC07772; Handwritten GPR at RFC07776; Handwritten notes at RFC07777; printout of search results for victim at RFC07779-80; Criminal History at RFC07781-83; copy of business card at RFC07786; Handwritten GPR at RFC07787; Arrest Report at RFC07792; Handwritten GPR at RFC07793-97 |
| 64 | K285989 | 1988 | Adolfo Rosario | Yes | RFC 07802 | No | All 3 Handwritten notes, all subpoenas | Yes | RFC 07801, RFC 07806, RFC 07838 | No | N/A | Yes | Yes | Yes | Handwritten notes at RFC07801; Photographs at RFC07804; Investigative File Control at RFC07805; Evidence Report at RFC07807; Property Inventory at RFC07810-13; Arrest Report at RFC07822; Evidence Report at RFC07825; Print out of computer search for suspect at RFC07830; Handwritten GPR at RFC07837-38; Typed statement of suspect at RFC07842-56; Arrest report at RFC07859; typed statement of suspect at RFC07860-73; Handwritten GPRs at RFC07977-81; Arrest Report at RFC07884; Criminal history of victim at RFC07887 |
| 65 | K292921 | 1988 | LaTonya Pitchfork/Pitchford | Yes | RFC 07940-07941 | No | 4 Handwritten notes in file, 0 listed on Inventory (RFC 08005-08006; 08034; 08052) 1 GPR in file, 0 listed on Inventory (RFC 8051); use of "notes" on inventory unclear | Yes | RFC 08005-08006; 08034; 08052 | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 07901-05; Statements of Defendant at RFC 07951-7958; Arrest Report at RFC 07964-66, 07980; LEADS Report at RFC 07967-7974; Fugitive Arrest Receipt RFC 7977; Waiver of Extradition at RFC 07978-79; Info for Daily Bulletin at 08031; Handwritten Notes at 08034 , 0851; Request for telephone records at RFC 08039; Stop Order at RFC 08001-02; Request for UFAP warrant at RFC 08007; Supp. Report explaining defendant lives out of state at RFC 08010. |
| 66 | K318308 | 1988 | Javier Hernandez, Antonio Valentin | Yes | RFC 08097 | No | 1 Property Inventory Sheet, 2 Evidence Reports, 4 Handwritten notes, Fingerprint Examination Reports and To-From Memo regarding fingerprint examination, Lab Report, Postmortem Report, Hospitalization Report, both Subpoenas | Yes | RFC 08143, RFC 08145, RFC 08147, RFC 08149 | Yes | RFC 08102 | Redacted, no comparison | N/A | N/A | N/A |
| 67 | K417078 | 1988 | Orville/Orval Fain | Yes | RFC 08178-08179 | No | 2 Handwritten notes in file, 0 listed on Inventory (RFC 08213; RFC 08215) | Yes | RFC 08213; RFC 08215 | No | N/A | Yes | Yes | Yes | Handwritten Notes at RFC08204-06, 09, 10, 8222; Property Inventory at RFC08211-08221, 8184; Forensic Report at RFC08207; Line Up Photo Report at 08201; Arrest Report at RFC08197-8200; Crime Lab Fired Evidence REport at RFC08183; Supplemental Report at RFC08174; Medical Examiner Report at RFC 08158-8162; |
| 68 | K419172 | 1988 | Christopher Ciavirelli | Yes | RFC 08263 | No | 6 Handwritten notes (heavily redacted), Postmortem report, all Subpoenas | Yes | RFC 08265, RFC 08320, RFC 08322, RFC 08324, RFC 08326-08328 | No | | Yes | Yes | Yes | Medical Examiner Report at RFC08234-08238 ; Arrest Reports at RFC08258-08259, 8304, 8307; Toxicology Report at RFC 8283; Fired Evidence Report at 8270; Evidence Report at 8272-75, 8306, 8311-12; Preliminary Fired Evidence Report at 8276; GPRs/Handwritten Notes at RFC 8301-02, 8309, 8320-24, 8326-28; Letter Invoking Miranda at RFC 8303; Hold Past Court Request at 8308; Property Inventory at 8310, 8314-19; |
| 69 | K455932 | 1988 | David Ortiz Felipe Rodriguez | Yes | RFC 08375-08376 | No | 11 GPRs in file, 2 listed on Inventory (RFC 08380; 08386-87, 08412-13; 08428-08429; 08433-08434; 08439; 08441) 8 Handwritten notes in file, 1 listed on Inventory (RFC 08388; RFC 08430-08432; RFC 08437-08438; RFC 08440; RFC 08442) | Yes | RFC 08388; RFC 08430-08432; RFC 08437-08438; RFC 08440; RFC 08442 | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC08335-8339; Arrest Reports at RFC08371, 08386-87, 08412-13, 08443-44, Handwritten Noets at RFC 08380, 08414-17, 08428-08442; Holdover Request for Defendant at RFC08392; Firearms Receipt & Worksheet at RFC08395, Preliminary Fired Evidence Report at RFC08398, Evidence Report at RFC08403, Line-up Photo Report at RFC08407, Request for Ballistics Comparison at RFC08410, Property Inventory at RFC08445-52, Request for Identification Photos at RFC 08464, Photos at RFC 08455-63. |

| | Identifying Information | | | Criminal Defense Attorney File Comparison — Items in the Investigative File Missing from the Criminal Defense File | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?* | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
| 70 | K466033 | 1988 | James Maris, Erwin Feyrer | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 71 | K468422 | 1988 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 72 | K502173 | 1988 | Charles McCarty | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 73 | K530917 | 1988 | Amos Walker | Yes | Yes | RFC 08734; RFC 08742; RFC 08743-08744; RFC 08745-08746; RFC 08772; RFC 08747; RFC 08776; RFC 08777-08778; RFC 08779; RFC 08780; RFC 08784; RFC 08781; RFC 08782; RFC 08842 | No | N/A | No | N/A | Yes | RFC 08780; RFC 08784 | N/A - No To-From Memos in Investigative File. | N/A |
| 74 | K575912 | 1988 | Michael Armstead | Yes | Yes | RFC 08844-08852; RFC 08862-08864 RFC 08880-08882 | No | N/A | No | N/A | N/A - No Handwritten Notes in Investigative File. | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 75 | M020288 | 1989 | Warren Robinson | Yes | Yes | RFC 08896; RFC 08897-08902; RFC 08903; RFC 08904-08916; RFC 08936-08937 | No | N/A | No | N/A | N/A - No Handwritten Notes in Investigative File. | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 76 | M027036 | 1989 | Shawn Betts, Calvin Davis | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 77 | M079435 | 1989 | Manuel De Jesus, Angel Ocasio, Pedro Aponte, Edwin Ortiz, Albert Ojeda | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 78 | M127008 | 1989 | Mark Rosado | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| Identifying Information | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison *Items in the Investigative File Missing from the Criminal Defense File* | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes in the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 70 | K466033 | 1988 | James Maris, Erwin Feyrer | Yes | RFC 08516-08517 | No | 8 GPR notes (23 accounted for), 2 Arrest Reports, 2 Arrest Supplementary Reports, 1 Aggravated Battery Supplementary Report, 1 Evidence Report, copy of business card, Cause of Death Supplementary Report, Postmortem report, all Subpoenas, To-From Memo re gun shot residue test, To-From memo re hold request | Yes | RFC 08589, RFC 08606, RFC 08608, RFC 08610, RFC 08612 | Yes | RFC 08533 | Yes | Yes | Yes | Medical Examiner Report at 8473-76; Handwritten Notes at RFC08515, 8529-30; 8579 -8612; Arrest Report 8577, 8469, 8535, 8532; Property Inventory at RFC08618-22; Evidence Reports at 8615-17, 8531; Request for Ballistics Comparison at RFC 8575; Consent to Search at 8574; Line Up Report in PRF at RFC 8550-51 is signed by a different sergeant than the same line up report in the SF at RFC 161293-94, and unsigned at RFC08527-085-28; Preliminary Fired Evidence Report at RFC 08537-38; Request for Hold Over at RFC 08534; Request for Gunshot Residue Test at RFC 08533; Firearms Receipt at RFC08522; |
| 71 | K468422 | 1988 | Redacted | No - file appears incomplete as there are only Supplementary Reports in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 72 | K502173 | 1988 | Charles McCarty | Yes | RFC 08676 | No | A copy of a Kropp Employee Federal Credit Union Account, mugshot of defendant, 1 Handwritten note, Subpoena | Yes | RFC 08717 | Yes | RFC 08698 | Yes | Yes | Yes | Credit Union Statement for Victim at RFC 08679; Photo of Defendant at RFC 08681; Preliminary Fired Evience Report at RFC 08685; Forearms Receipt and Worksheet at RFC08687; Evidence Reports re: taking photos at RFC 08689-90, 8703-04; ; Handwritten Notes at RFC 08691, RFC08702, RFC 08716-; Request for Ballistics Comparison at RFC 08698; Stop order request at RFC 08708; Material Submitted for Daily Bulletin at RFC 08709; Property Inventory sheets at RFC 08724-8732; Medical Examiner Report at RFC08654-57 |
| 73 | K530917 | 1988 | Amos Walker | Yes | RFC 08777-08778 | No | 1 Handwritten notes in file, 0 listed on Inventory (RFC 08780; RFC 08784; RFC 08838); use of "notes" on inventory is unclear | Yes | RFC 08780; RFC 08784; RFC 08838 | No | N/A | Yes | Yes | Yes | Arrest Report at RFC 08788-89, 08795-96; Request for Latent Fingerprint Comparison at RFC08797; Handwritten Notes at RFC08800; Recovered Vehicle Supp. Report at RFC08804-05; Evidence REport re: blood stain at RFC08806-13; Property Inventory Reports at RFC 08824; Supp. Report re: latent fingerprints and other taxi robberies at RFC08814-15, Report re: fingerprints at RFC 8816-18, Supp. Report re: line up at RFC 08819-20, Supp. Report re Vehicle Recovered at RFC08821, Supp Report at RFC 08825-8827; Supp Report re: description of the offender at RFC 08828-31. |
| 74 | K575912 | 1988 | Michael Armstead | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 08853-60; Toxicology Report at RFC 08861; |
| 75 | M020288 | 1989 | Warren Robinson | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 8897-8901; Toxicology Report at RFC 8902 |
| 76 | M027036 | 1989 | Shawn Betts, Calvin Davis | No - file appears incomplete as there are only Supplementary Reports, G.O.C.R. and Post Mortem report in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Yes | Yes | Yes | Assignment sheet at RFC 8938-39; Medical Examiner Report at RFC 8940-42; Toxicology Report at RFC 8943 |
| 77 | M079435 | 1989 | Manuel De Jesus, Angel Ocasio, Pedro Aponte, Edwin Ortiz, Albert Ojeda | Yes | RFC 09096-09097 | No | Statements of David Stelnicki and Robert Frameta, 3 Inventory Reports, 2 Handwritten notes (5 accounted for) - cannot tell which ones; possibly GPRs and Supplementary Reports (10 are unaccounted for, the inventory just lists plural - GPRs and Supps, so it cannot be determined if and how many are missing), Postmortem report, Criminal Histories, Subpoenas, 1 page of printed notes, Fire Department Report, Crime Scene Processing Report, Crime Lab Report | Yes | RFC 09175, RFC 09205, RFC 09215, RFC 09254, RFC 09264, RFC 09266, RFC 09268, RFC 09270 | Yes | RFC 09206 | Yes | Yes | Yes | Assignment sheet at RFC 8978; Medical Examiner Report at RFC 9025-30; Toxicology Report at RFC 09031 |
| 78 | M127008 | 1989 | Mark Rosado | Yes | RFC 09273-09274 | Yes (there are no items missing from the inventory, however there were 2 items that were listed on the inventory form but missing from the file - Polygraph Examination Results and Crime Scene Photos) | Possibly GPR notes missing (inventory just lists GPR's) | No | N/A | No | N/A | Yes | No | Yes | Addendum to death investigation (RFC 9279); Investigative File Inventory (RFC 9273); Case Supplement Report (RFC 9278-9284); Supplemental Case Report re Line Up (RFC 9285-86); Supplemental Case Report re initial investigation (RFC 9286-89); Case Supplement Report (RFC 9290-9291); Case Supplement Report (RFC 9292-9293); Case Supplement Report (RFC 9294-9298); Case Supplement Report (RFC 9299-9301) (re cause of death); Case Supplement Report (RFC 9302-9304) (re redassifying as a homicide); Grand Jury Testimony (RFC 9305-9322); Arrest Report (RFC 9355); Medical Examiner's Report (RFC 9356-9360); Toxicology Report (RFC 9361); Case Supplement Report re morgue (RFC 9362); Arrest Report (RFC 9364-9365); Report (early in investigation, re offense) (RFC 9366-9367); ASA case fact sheet (re theory of the case) (RFC 9368-9369); Lab results (re cause of death) (RFC 9373-9376); Crime Scene Processing Reports (RFC 9377-9378); General Progress Report notes (RFC 9404-9411). |

## Criminal Defense Attorney File Comparison
### Items in the Investigative File Missing from the Criminal Defense File

| Identifying Information | | | Has a Criminal Defense Attorney File been Produced?** | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the Inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | | | | | | | | | | | |
| 79 M165445 | 1989 | Christopher Carriage, Luis Ferez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 80 M184949 | 1989 | Francisco Benitez | Yes | Yes | • RFC09715<br>• RFC09720<br>• RFC09609<br>• RFC09610 - RFC09618<br>• RFC09615<br>• RFC09654<br>• RFC09652<br>• RFC09716<br>• RFC09717<br>• RFC09718 - RFC09719<br>• RFC09627 - RFC09628, RFC09629 - RFC09630, RFC09644 - RFC09645, RFC09646, RFC09647, RFC09673, RFC09676, RFC09675 | No | N/A | No | • RFC09715<br>• RFC09720 | Yes | • RFC09715<br>• RFC09720 | N/A - No To-From Memos in Investigative File. | N/A |
| 81 M245807 | 1989 | Eduardo Morales, Carlos Roman | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 82 M258570 | 1989 | Curtis Kirkland Michael Sargent | Yes | Yes | RFC 09905-09911; RFC 09921-09932; RFC 09919; RFC 09920; RFC 09967; 10012; RFC 09968-09969; RFC 09972-09981 RFC 09982; RFC 09984; RFC 09986; RFC 09987; RFC 09989; RFC 09983; RFC 09990; RFC 09991; RFC 10007-10008 RFC 10009-10010; RFC 10023; RFC 10033; RFC 10060; RFC 10065 RFC 10077; RFC 10094 | No | N/A | No | RFC 09982; RFC 09984; RFC 09986; RFC 09987; RFC 09989; RFC 10009-10010 | Yes | RFC 09982; RFC 09984; RFC 09986; RFC 09987; RFC 09989; RFC 10009-10010 | N/A - No To-From Memos in Investigative File. | N/A |
| 83 M264219 | 1989 | Daniel O'Reilly | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 84 M264641 in PRF/Street file number M287641 | 1989 | Clarence Roberts | Yes | Yes | RFC 10158-10159; RFC 10160-10164; RFC 10165-10168; RFC 10169; RFC 10190; RFC 10191; RFC 10193 | No | N/A | No | N/A | N/A - No Handwritten Notes in Investigative File | N/A | N/A - No To-From Memos in Investigative File | N/A |
| 85 M381429 | 1989 | Warren Murdock | Yes | Yes | •RFC 10244-250; RFC 10258-259 | Yes | N/A - No inventory in investigative file | No | N/A | N/A - No Handwritten Notes in Investigative File | N/A | N/A - No To-From Memos in Investigative File | N/A |
| 86 M400227 | 1989 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 87 M538914 | 1989 | Henry Robinson | Yes (Investigative file incomplete) | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 88 M541953 | 1989 | Johnny Flores | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| Identifying Information | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison *Items in the Investigative File Missing from the Criminal Defense File* | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 79 M165445 | 1989 | Christopher Cartage, Luis Ferez | Yes | RFC 09484-09485 | No | All 7 Inventory Reports, 1 Arrest Report, Postmortem report, 3 GPR Notes (9 accounted for - cannot tell which ones), Subpoena, copies of 2 business cards, possibly Handwritten notes (inventory just states plural Notes, without specifying how many). | Yes | RFC 09512, RFC 09561, RFC 09565, RFC 09567, RFC 09569, RFC 09571, RFC 09573, RFC 09575, RFC 09577-09583, RFC 09586-09587, RFC 09601 | Yes | RFC 09494, RFC 09497 | Yes | Yes | Yes | Assignment sheet (9438); Medical Examiner's Report (9441-44); Toxicology Report (9445); Supplementary Report w/ description of car and suspect from eyewitness Sandra Mantilla (9476 and 9524); Felony minute sheet form (9491); Request for firearm comparison (9494); arrest report (9495-96); request for communication tapes (9497); line up report date amended from 4/3/89 to 5/3/89; handwritten notes re suspect, car, investigation, how to contact a witness, etc. (9510-12, 9555, 9559–9583, 9586-87, 9601); statement of Christopher Carthage (9515-18); fired bullet report (9526); Arrest report (9531-32); recovered vehicle supplementary report (9533-34); request to hold Mark English for interrogation (9535); inventory sheets (9536, 9542-51) ; photographs of suspects, weapons, and an escort service business card (9589-9600, 9602-03); a key (9606-07). |
| 80 M184949 | 1989 | Francisco Benitez | Yes | RFC 09652 | No | • Subpoenas – Streetfiles – ASA<br>• Subpoenas – Streetfiles – PD<br>• General Offense Case Report<br>• Receipts<br>• Stop Order/Missing Person<br>• Handwritten Note<br>• Court Disposition Letter from ASA<br>• Postmortem/Toxicology Reports | Yes | • RFC 09702<br>• RFC 09711<br>• RFC 09720 | No | N/A | Yes | Yes | Yes | Medical Examiner Report (9619); Toxicology Report (9623); Second Decedent's Medical Examiner Report (9624); Inventory Sheet (adds items missing from one in PRF) (9652); Signatory change on report (9656); Report with handwritten notes in margin (9660); Notes regarding witness statements (9669); handwritten notes added to general offense case report (9671); Property Inventories of photos, bullet, blood vial, blood swab (9678-89); Signed statement of Francisco Benitez (9690-92); Arrest Report (9693); Felony Minute Sheet (9694); Evidence Report (9696); General Progress Reports/Hand Written Notes (9698-9700-15, 9720); Receipt for 3 items at Foot Locker, $79.35 (9716); Receipt for one item at Boston Shirt Yard, $6.48 (9717). |
| 81 M245807 | 1989 | Eduardo Morales, Carlos Roman | Yes | RFC 09773-09775 | No | Supplementary Lab Report, Supplementary Cause of Death Report, Postmortem report, all 3 Handwritten notes, Subpoena | Yes | RFC 09871, RFC 09887, RFC 09897 | No | N/A | Yes | Yes | Yes | Medical Examiner Report (9722-27); Court Attendance Report (9732) |
| 82 M258570 | 1989 | Curtis Kirkland Michael Sargent | Yes | RFC 09968-09969 | No | 5 GPRS in file, 0 listed on Inventory (RFC 10061; 10081; 10093; 10098-10099)<br>10 Handwritten notes in file, 3 listed on Inventory as "notes" (RFC 09982; RFC 09984; RFC 09986; RFC 09987 RFC 09989; RFC 10009-10010; RFC 10053-10054; RFC 10076) | Yes | RFC 09982; RFC 09984; RFC 09986; RFC 09987 RFC 09989; RFC 10009-10010; RFC 10053-10054; RFC 10076 | No | N/A | Yes | No | Yes | Medical Examiner Report (9912-17); Toxicology Report (9918); Lab Report (10013-14); Investigatory File Control (9968-69); Mug shot photos (9971, 9973, 9975, 9977, 9979-80); Notes of names and addresses and witness statements (9972, 9974, 9976, 9978, 9982, 9984, 9986-87, 9989-90, 10076, 10093); crime scene photos (9993-10006); Notes re interview with State witness Weaver (10009-10); Felony Minute Sheet (10020, 10033); Arrest Reports (10021, 10032, 10064); Signed Statement of State witness Weaver (10053); Signed Statement of State witness Flowers (10054); Photo lineup information (10058); Documentation of lab testing (10060); General Progress Report Notes regarding lab testing of the weapon and an undisclosed witness (10061); Vials of blood and wood inventoried (10067-69, 10087-92); Criminal History on Alternate Suspects and General Progress Report witnesses and suspects (10071-10085); hand written notes re murder (10098). |
| 83 M264219 | 1989 | Daniel O'Reilly | No - file appears incomplete as there are only Supplementary Reports and a Postmortem report in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Yes | No | Yes | Assignment slip (10103); Medical Examiner Report (10106-12); Toxicology Report (10113); Supplemental Report of witness statements, but appears to relate to a different homicide case than the rest of the file (10118) |
| 84 M264641 in PRF/Street file number M287641 | 1989 | Clarence Roberts | Yes | RFC 10190 | No | 10 Supplementary Reports in file, 5 listed on Inventory (RFC 10194-10205; 10211-10215; 10220-10221) | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report (10165-68); Investigative File Inventory (adds a Supplemental Report of 9/25/89, which is not in the PRF) 10190; Arrest Report (dated 9/22/89) (10208); ASA Felony Minute Sheet (10209); Stop Order dated 7/13/89, wanting Defendant for another unrelated robbery, the day before this offense (10218); Wanted Person Report re unrelated armed robbery (10219); Supplemental Report regarding unrelated armed robbery (10220-21); General Offense Report for unrelated armed robbery (10222); handwritten lineup report (10224); handwritten notes re witness interviews (10225-10228); Evidence Report and Inventory Documents (10230-42). |
| 85 M381429 | 1989 | Warren Murdock | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report (10251-10257); Supplemental Report (10272); Supplemental Report (10283-10284); General Offense Case Report (10285). |
| 86 M400227 | 1989 | Redacted | No - file appears incomplete as there are only Supplementary Reports and a Postmortem report in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 87 M538914 | 1989 | Henry Robinson | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report (10324-28) |
| 88 M541953 | 1989 | Johnny Flores | No - file appears incomplete as there are only Supplementary Reports and a Postmortem report in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Yes | No | Yes | Medical Examiner Report (10357-60); Toxicology Report (10361) |

| Identifying Information | | | Criminal Defense Attorney File Comparison<br>*Items in the Investigative File Missing from the Criminal Defense File* | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?* | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
| 89 M546558 | 1989 | Richard Ramos, Paul Nelson | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 90 M550042 | 1989 | Jorge Narvaez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 91 M551461 | 1989 | Cannot Determine (heavy redaction) | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 92 M556260 | 1989 | George Muriel | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 93 M558552 | 1989 | Anthony Garza | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 94 M579697 | 1989 | Ras Green | Yes | Yes | RFC 10775-10777, RFC 10848-10850, RFC 10767-10773, RFC 10831-10832, RFC 10786 | No | N/A | No | N/A | Yes | RFC 10775-10777 | No | N/A |
| 95 M588005 | 1989 | Jesus Juarez, Miguel Rojas, Raul Juarez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 96 M599001 | 1989 | Antoine Kelley, Kendrick Taylor, Lamonte Taylor | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 97 N016505 | 1990 | Danny Estrada, Alex Martinez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 98 N018105 | 1990 | Elvis Sanchez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

## Identifying Information | Investigative File Information | Permanent Retention File Comparison — Items in the Investigative File Missing from the Criminal Defense File

| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 89 M546558 | 1989 | Richard Ramos, Paul Nelson | No - file appears incomplete as there are only Supplementary Reports and a Postmortem report in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Yes | Yes | Yes | Medical Examiner Report (10398-10401; Toxicology Report (10402); General Offense Report altered version (10412-13 - alteration at 10413) |
| 90 M550042 | 1989 | Jorge Narvaez | No - file appears incomplete as there are only Supplementary Reports and a Postmortem report in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 91 M551461 | 1989 | Cannot Determine (heavy redaction) | Yes | RFC 10449-10450 | No | 4 Supplementary Reports (cannot determine which ones), both Handwritten notes, Release of Person in Custody form, Felony Minute Sheet, Crime Lab Report on gunshot residue, Postmortem report, all photots, both Subpoenas | Yes | RFC 10478, RFC 10517 | Yes | RFC 10480, RFC 10494 | Redacted, no comparison | N/A | N/A | N/A |
| 92 M556260 | 1989 | George Muriel | Yes | RFC 10536 | No | 3 General Offense Case Reports, 6 Supplementary Reports (cannot determine which ones), Criminal History of defendant, Hold Request, 2 Arrest Reports, Release of Person in Custody report, Arrest Warrant, Witness Statement, both Subpoenas, all photos, possibly GPRs (inventory just states GPR, no information on how many pages) | Yes | RFC 10549, RFC 10615 | Yes | RFC 10569, RFC 10578 | Yes | No | Yes | File Inventory (10535); mug shots and photograph (10538-44, 10575); hand written notes re the investigation (10545, 10549, 10554, 10593-94, 10608-9, 10615, 10618-19, 10630, 10631-42); ASA report (10558); notes re lineup (10563); suplemental report from unrelated robbery involving suspect (10564); Arrest Report and documents/reports re arrest (10565-74); Message slip re fire arms analysis (10576); Property Inventory (10577, 10583-89, 10592); Memo re seeking ballistics comparison, gun to bullets (10578); Written statement of suspect Leonard Cook (10604-05); Supplemental Report re arrest of Cook (10606-07); Release of Person In Custody form (charges against Cook rejected) (10610); criminal record of suspects Murial and Cook (10611-14); stop orders re Cook and Murial (10622-23). |
| 93 M558552 | 1989 | Anthony Garza | Yes | RFC 10671 | No | Both Handwritten notes, 1 and only GPR note, Postmortem report, both photos, both Subpoenas | Yes | RFC 10702, RFC 10723 | No | N/A | Yes | No | Yes | Page 2 of Supplemental Report re lineup (10656, 10700); Supplemental Report re interviewing alternate suspect Jose Arreguin and Arreguin's friend Celedonio Guzman (10663-64); file inventory (10671); pictures (10672); Defendant's statement (10673-77); Arrest records re defendant for another offense (10682, 10710-11); Arrest Report (10683, 10687); Felony record minute sheet (10686); Defendant's statement (10694-97); Request Memo: Guevara signed the dendant out (10698); General Progress Report hand written notes (10701-02); Car report, VIN to car check (10703); Medical Examiner Report (10716-19); Toxicology Report (10720); Illegibly Copied Memo (10721-22); Handwritten notes (10723) |
| 94 M579697 | 1989 | Ras Green | Yes | RFC 10764 -10765 | No | All subpoenas, 1 Supplementary Report (possibly cause of death), 1 Gen. Offense Case Report, copy of a business card for a jewelry wholesale shop, photos of defendant, possibly GPRs and handwritten notes. Additional note: the inventory lists a To-From Memo, however there was no such memo in the investigative file. | Yes | RFC 10775-10777, RFC 10834, RFC 10844-10846 | Yes | RFC 10795 | Yes | No | Yes | Medical Examiner Report (10733-37); Toxicology Report (10738); Investigative File Inventory (10764-65); photographs (10767-73); business card for pawn shop (re proceeds) (10774); General Progress Report and hand written notes (10831-46, 10775-77); criminal records searches (10778, 10827-29); Report re fingerprint matching defendant (10786); Property Inventory Reports (10788-89 10822-25, 10847-51, 10856); Felony minute sheet (10792); Crime Scene Processing Report (10793); Request for testing of blood on Defendant's jacket (10795); Arrest Report (10796); Defendant's Statement (10810-11); CHA Senior Housing (victim's building) Security Report (10854-55). |
| 95 M588005 | 1989 | Jesus Juarez, Miguel Rojas, Raul Juarez | Yes | RFC 10863 | No | 1 Progress Supplementary Report, 9 Inventory Reports, All 3 defendant Arrest Reports, Criminal History of 1 defendant, mugshots of 14 people involved in the investigation (they were all included in Supplementary Reports), possibly GPRs and Handwritten notes (inventory just states GPRs) | Yes | RFC 10940, RFC 10942, RFC 10944 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 96 M599001 | 1989 | Antoine Kelley, Kendrick Taylor, Lamonte Taylor | Yes | RFC 10984 | No | 2 Handwritten notes, possibly GPR notes (inventory just states GPRs), Subpoena | Yes | RFC 10982-10983 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 97 N016505 | 1990 | Danny Estrada, Alex Martinez | Yes | RFC 11034 | No | All 4 Handwritten notes, mugshots of defendant and 3 other persons (2 of them were not included anywhere else in the file - Antonio Torres, George Maldonado), Subpoenas, possibly GPRs (inventory just states General Progress Reports) | Yes | RFC 11052-11054, RFC 11097 | No | N/A | Yes | No | Yes | Photos at RFC 011036-49; Request for I.D. Photos at RFC 011050; Handwritten Notes at RFC 011052-54, 11091, 96-99; Defendant's statement at RFC 11067-69; Alibi Statement at RFC 11070-71; Arrest Report at RFC 11074; Evidence Report at RFC 11075, 79-81, 93; Property Inventory Report at RFC 11076, 94-95; |
| 98 N018105 | 1990 | Elvis Sanchez | Yes | RFC 11106 | No | 3 Inventory Reports, 4 Handwritten notes (cannot determine which ones), Subpoenas, Postmortem report | Yes | RFC 11105, RFC 11135, RFC 11138, RFC 11140-11143 | No | N/A | Yes | No | Yes | Defendant Statement at 11112-11124; Arrest Report at 11125; Evidence Report at 11128; Property Inventory at 11133, 11146-47, 11165-66; Handwritten Notes at 11134-11138, 11140-43; Supp. Report in PRF at 162302 has different approval date (01/12/90) than the same Supp Report in SF at RFC 11149 (01/24/90) and SF version is unsigned. Supp. Report in PRF at 162298 has different approval date (01/12/90) than the same Supp Report in SF at RFC at 11151 and SF version is unsigned. Photos at 11167-69; |

## Criminal Defense Attorney File Comparison
### Items in the Investigative File Missing from the Criminal Defense File

| Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?** | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file, does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes From the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 99 N028256 | 1990 | Jesse Swanigan | Yes | Yes | RFC 11420, RFC 11409, RFC 11407, RFC 11324-11325, RFC 11319, RFC 11283, RFC 11276, RFC 11281, RFC 11311-11318, RFC 11284-11309, RFC 11321-11333, RFC 11271-11272, RFC 11230-11232, RFC 11242-11243, RFC 11250-11251, RFC 11273-11274 | No | N/A | No | N/A | Yes | RFC 11420, RFC 11409, RFC 11407, RFC 11324-11325, RFC 11319, RFC 11283, RFC 11276, RFC 11281 | N/A - No To-From Memos in Investigative File | N/A |
| 100 N050133 | 1990 | Andre Brown | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 101 N053000 | 1990 | Pierre Mahone | Yes | Yes | RFC 11524, RFC 11526, RFC 11557 | No | N/A | No | N/A | Yes | RFC 11557 | N/A - No To-From Memos in Investigative File | N/A |
| 102 N114280 | 1990 | Brian Smith | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 103 N133637 | 1990 | Allen Whittington | Yes (investigative file incomplete) | Yes | RFC 11904-11905, RFC 11884-11887, RFC 11890 | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 104 N162782 | 1990 | Tomas Nieves | Yes | Yes | RFC 12063, RFC 11955-11966 | No | N/A | No | N/A | Yes | RFC 12063 | N/A - No To-From Memos in Investigative File | N/A |
| 105 N176796 | 1990 | Tyrece Williams | Yes | Yes | RFC 12090, RFC 12072-12076, RFC 12080-12082 | No | N/A | No | N/A | No | N/A | N/A - No To-From Memos in Investigative File | N/A |
| 106 N193214 | 1990 | Efren Melchor | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 107 N201263 | 1990 | Theon Jefferson | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 108 N203334 | 1990 | David Delgado | Yes, but it is incomplete | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 109 N237529 | 1990 | Reginald De Jesus | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| | | | Identifying Information | | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison *Items in the Investigative File Missing from the Criminal Defense File* | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos In the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number | | | |
| 99 | N028256 | 1990 | Jesse Swanigan | Yes | RFC 11277-11279 | No | 3 Supplementary Reports, several GPRs, subpoenas, felony minute sheet | Yes | RFC 11275-11276, RFC 11281, RFC 11283, RFC 11319, RFC 11324-11325, RFC 11343, RFC 11407, RFC 11409, RFC 11413, RFC 11420 | No | N/A | Yes | Yes | Yes | Medical Examiner's Report at 11224-11228; GPR/Handwritten Notes: 11276, 11281, 11283, 11325, 11341-11347, 11350, 11389, 11406-09, 11416-28, 11463-64, 11475, 11477, 11479-85, 11488, ; Arrest Report at 11282, 11372, 11403, 11414-15, 11486; Photos at 11284-11310, 11313,11316-18, 11321-11323, Phone Message for detective at 11324, Request for Identification Photos at RFC 11311, 11314; Fingerprint Report at 11330, 11392 ; Release of Vehicle at 11334; Motor Vehicle Inventory at 11348; Tow Report at RFC 11351, 11467, Request for Analysis at RFC 011354, Hold-over Request at RFC 11365, 11412 , 11458, 11468, Property Inventory at 11366, 68, 69, 71, 93-94, 11471, 73, 89, 91, 93, 94 ; Evidence Report at 11373-76, 11459, 11461 ; 11465 Polygraph Results at 11385; Material Submitted for the Daily Bulletin at 11410, Lab Report at 11501-02 | | | |
| 100 | N050133 | 1990 | Andre Brown | Yes | RFC 11603 | No | 5 Inventory Reports, 2 Supplementary Reports (cannot tell which ones), Postmortem report, typed statement of the defendant, Request for Fingerprint Comparison, Felony Minute Sheet, possibly 3 Handwritten notes, Subpoenas | Yes | RFC 11630, RFC 11635, RFC 11673 | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC 11573-76, Toxicology 11577; Victim's I.D. 11605-08 | | | |
| 101 | N053000 | 1990 | Pierre Mahone | Yes | RFC 11526 | No | Subpoena, 1 Supplementary Report (possibly cause of death), autopsy report, possibly 2 sheets of handwritten notes | Yes | RFC 11546, RFC 11557 | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC 11507-10; Toxicology at RFC 11511 | | | |
| 102 | N114280 | 1990 | Brian Smith | Yes | RFC 11678 | No | Crime Scene Processing Report, Towed Vehicle form, Cause of Death Supplementary Report, Postmortem report, To-From Memo - request to hold inventoried property, likely all 7 Handwritten notes, photos of address book, copy of victim's driver license, copy of restaurant business card, Subpoenas | Yes | RFC 11698, RFC 11700, RFC 11702, RFC 11763, RFC 11765, RFC 11821, RFC 11828 | Yes | RFC 11687 | Yes | Yes | Yes | Medical Examiner Report at RFC 11839-42; Property Inventory at RFC 11720, 11738, 11740, 11742, 44, 45, 47, 61; Unsigned Report in street file at RFC 11723 and signed version in PRF at RFC 162465; Arrest Report at RFC 11731; GPR/Handwritten Notes: RFC 11697-11703, 11756-60, 62-65; Statement of Defendant at 11704-06; Statement of Witness Arron Thomas at RFC 11707-10; Car Photos at RFC 11771; Vehicle Disposition Report at RFC 11772; Address Book Entries at RFC 11776-11820; Phone Message from Mrs. Ortega at RFC 11821; Photos at 11822; Victim Drivers License at 11824-25; Message from eyewitness Latonya Moore at RFC 11828; Photos at 11829-30; | | | |
| 103 | N133637 | 1990 | Allen Whittington | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | Yes | Yes | Medical Examiner Report at RFC 11877-80; | | | |
| 104 | N162782 | 1990 | Tomas Nieves | Yes | RFC 11953 | No | 2 felony minute sheets, criminal histories, autopsy report, State's Attorney subpoena, all photos | Yes | RFC 12060-12064 | No | N/A | Yes | No | Yes | GPRs/Handwritten Notes at RFC 12016, 12056-12064; Property Inventory at RFC 12042-53; Letter from Optometrist re physical evidence at RFC 12009; Lab Reports at RFC 12007-08; Medical Examiner's Report at RFC 11999-12005; Toxicology Report at RFC 12006; Arrest Report at RFC 11988, 11911; Statement of Witness Israeel Roman at RFC 11986-87; Statement of Witness Getulio Roman at RFC 11984-85; Statement of Witness Denise Pruitt at RFC 11981-83; Photos at RFC 11955-11966; | | | |
| 105 | N176796 | 1990 | Tyrece Williams | No | N/A | N/A | N/A | Yes | RFC 12103, RFC 12124 | No | N/A | Yes | Yes | Yes | Medical Examiner's Report at RFC 12072-75; Toxicology Report at RFC 12076; Arrest Report at RFC 12136; Property Inventory at RFC 12139, 12142-49; Statement of Witness Joethel Griffin at RFC 12131-32; GPRs/Handwritten Notes at RFC 12108-09, 12120-24; Arrest Records for person arrested with victim recently at RFC 12110-11, ; Stop Order/Missing Person Order re: Person Unidentified as witness/suspect at RFC 12103-04; Reports Regarding Victims Recent Arrest on weapons violations at RFC 12105-07; | | | |
| 106 | N192214 | 1990 | Efren Melchor | Yes | RFC 12163 | Yes | N/A | Yes | RFC 12168, RFC 12187, RFC 12189, RFC 12195, | No | N/A | Yes | Yes | Yes | GPRs/Handwritten Notes: RFC 12168, 12187-92, 12195; Property Inventory at RFC 12199-12205; Handwritten Line-Up Report at RFC 12186; Statement of Witness Anoemo Paredes at RFC 12178-79 | | | |
| 107 | N201263 | 1990 | Theon Jefferson | Yes | RFC 12212-12213 | No | 1 Supplemental Report (not clear which one), Stop Order, Crime Lab Report, Felony Minute Sheet, 1 Inventory Report, 2 General Offense Case Reports, All photos (mugshots - unclear of whom) | Yes | RFC 12241-12242, RFC 12312-12314, RFC 12315, RFC 12318-12319 | No | N/A | Yes | No | Yes | Investigative File Inventory at RFC12212-13; Lineup photographs at RFC12215-22; Stop Order at RFC12223-24; Criminal history at RFC12225; Release of person in custody at RFC12227; Portion of Medical Exminer Report at RFC12230, 12239; Request to hold prisoner at RFC12240; Handwritten notes at RFC12241-42; Property Inventory at RFC12243; Arrest Report at RFC12244; Property Inventory at RFC12261-68; Release of Person in custody at RFC12269; Criminal Histories at RFC12270-73, 12276-82; Request to hold prisoner at RFC12283; Arrest Report at RFC12284; Criminal histories at RFC12290-94; Arrest Information at RFC12295; Consent to search form at RFC12296; Request to hold prisoner at RFC12297; Handwritten arrest report at RFC12298; Leads inquiry with handwritten notes at RFC12299; Vehicle tow report at RFC12300; Property Inventory at RFC12301-10; Hanwritten notes and GPRs at RFC12312-21; | | | |
| 108 | N203334 | 1990 | David Delgado | Yes | RFC 12367 | No | • Crime Lab. Report • Crime Scene Proc. Report • Evidence Report • Property Inventories • Postmortem • COD Supplemental Report • Handwritten notes | Yes | • RFC 12390 • RFC 12415 | Yes | • RFC 12417 • RFC 12419 | Yes | No | Yes | Medical Examiner report at RFC12334-38; Toxicology report RFC1239; Medical Examiner report at RFC12340-44; Toxicology report at 12345; Investigative File Inventory at RFC12367; Criminal histories at RFC12384-89; handwritten note at RFC12390; Criminal histories at RFC12391-92; Handwritten statement of witnesses at RFC12392-97; Property Inventory at RFC12398-408; Arrest Report at RFC12414; Handwritten note at RFC12415; Firearms use report at RFC12416, RFC12418; Memo about shots fired by police at RFC12417, 12419; Officer's battery report at RFC12420-21; Handwritten GPRs at RFC12422-34; | | | |
| 109 | N237529 | 1990 | Reginald De Jesus | Yes | RFC 12438-12439 | No | 3 Handwritten Notes (cannot tell which ones) | Yes | RFC 12465, RFC 12500-12502, RFC 12518, RFC 12520, RFC 12527-12528 | No | N/A | Yes | Yes | Yes | Arrest Report at RFC12442; Handwritten GPR at RFC12445t; Criminal History at RFC12457-62; Stop Order at RFC12463; Daily Bulletin at RFC12464; Handwritten GPRs at RFC12465-55; Handwritten line up report at RFC12470, 12474-75; Property Inventory at RFC12478-80; Criminal History at RFC12483; Daily Bulletin submission at RFC12484; Stop Order at RFC12489-92; Criminal histories at RFC12497-99; handwritten GPR at RFC12500-02; Request for Fingerprint Comparison at RFC12503; handwritten GPR at RFC12518-25; Major Crimes Worksheet at RFC12526; Handwritten notes at RFC12527-28; | | | |

| | Identifying Information | | | Criminal Defense Attorney File Comparison | | | | | | | | | |
| | | | | Items in the Investigative File Missing from the Criminal Defense File | | | | | | | | | |
| | Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?* | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 110 | N262285 | 1990 | Jose Montanez Jose Baez | Yes | Yes | RFC 12647, RFC 12646, RFC 12648, RFC 12725, RFC 12640-12641, RFC 12644 | No | N/A | Yes | RFC 12647 | Yes | RFC 12646, RFC 12648, RFC 12725 | N/A - No To-From Memos in Investigative File. | N/A |
| 111 | N267450 | 1990 | Timothy Lee | Yes (Investigative file incomplete) | Yes | RFC 12748-12749; RFC 12742-12745; RFC 12830; RFC 12772-12775 | No | N/A | No | N/A | No | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 112 | N363181 | 1990 | Antoine Green, Darrell Jones, Hosea Bradin | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 113 | N413608 | 1990 | Dennis Gist | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 114 | N414150 | 1990 | Jose Colon | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 115 | N475910 | 1990 | Ricardo Miranda | Yes | Yes | RFC 13116-13117 | No | N/A | No | N/A | No | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 116 | N513129 | 1990 | Malvin Washington | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 117 | N517875 | 1990 | Rolando Serrano | Yes | Yes | • RFC 13390 – 13391 • RFC 13500 • RFC 13316 – 13381 • RFC 13383 – 13384 • RFC 13385 • RFC 13392 • RFC 13389 • RFC 13499 | No | N/A | Yes | • RFC 13390 – 13391 | Yes | • RFC 13500 | N/A - No To-From Memos in Investigative File. | N/A |
| 118 | N517875 | 1990 | Calvin McLemore | Yes, but it is incomplete | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 119 | N581836 | 1990 | Samuel Robinson | Yes | Yes | RFC 13502-05; 13506-09; 13510; 13511; 13512; 13513; 13514; 13515-22; 13551; 13552; 13553-54; 13555-56; 13557; 13558; 13592 & 94; 13614; 13620; 13639; 13647; 13648; 13649-52; 13659; 13660-71 | No | N/A | No | N/A | Yes | RFC 13552; 13620; 13649-13652 | Yes | RFC 13648 |
| 120 | N592324 | 1990 | James Burnett Glen Miller | Yes | Yes | RFC13673; • RFC13674; • RFC13675; • RFC13693-13696; • RFC13682-13684 | No | N/A | No | N/A | No | N/A | N/A - No To-From Memos in Investigative File. | N/A |
| 121 | P025834 | 1991 | Dale Phillips | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 122 | P025950 | 1991 | John Sullivan | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Page 19 of 28

| Identifying Information | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison — Items in the Investigative File Missing from the Criminal Defense File | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 110 N262285 | 1990 | Jose Montanez / Jose Baez | Yes | RFC 12623-12624 | No | 2 inventory reports, autopsy report, lab report - firearm evidence | Yes | RFC 12646, RFC 12648, RFC 12725-12727 | No | N/A | Yes | Yes | Yes | Medical Examiner's report at RFC12582-86; Toxicology Report at RFC12587; Criminal History of suspect at RFC12630-31; Criminal history of suspect at RFC12640-41; Arrest report at RFC12642; Request for identification records at RFC12643; Handwritten line up report at RFC12644; Identification Procedural Control at RFC12645; handwritten notes from lineup at RFC12646; Handwritten GPRs at RFC12647-48; Stop Order Cancellation at RFC12651; FBI and Illinois State criminal record of suspects at RFC12654-71; Request for Identification records at RFC12672; Property Inventory at RFC12673-78; Arrest Report at RFC12680; Arrest information at RFC12694; Handwritten GPRs at RFC12695-96; Stop Order at RFC12697; Material for use in Daily bulletin at RFC12698; Criminal history of suspect at RFC12699-700; Request for identification records at RFC12701; Property Inventory at RFC12705-09; Arrest Report at RFC12711; handwritten GPRs at RFC12721-22, RFC12724-27; Criminal record of victim at RFC12732-33; Message betwen detectives at RFC12735; |
| 111 N267450 | 1990 | Timothy Lee | Yes | RFC 12771 | No | Supplementary Report - Cause of Death Report, 5 pages of GPRs (3 pages were accounted for) | Yes | RFC 12818 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 112 N363181 | 1990 | Antoine Green, Darrell Jones, Hosea Bradin | Yes | RFC 12879 | No | 2 Arrest Reports, Criminal History, Defendant Statement, Postmortem report, 5 Handwritten notes, Photos - mugshots (unclear of whom) | Yes | RFC 12900, RFC 12918, RFC 12946-12948, RFC 12955 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 113 N413608 | 1990 | Dennis Gist | No - file appears incomplete as there are only Supplementary Reports in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Yes | No | No | None (just court attendance reports) |
| 114 N414150 | 1990 | Jose Colon | Yes | RFC 13033-13034 | No | Crime Lab Report, Crime Scene Processing Report, Postmortem report, 2 Handwritten notes (cannot tell which ones), Subpoena | Yes | RFC 13064-13066, RFC 13090-13092 | No | N/A | Yes | Yes | Yes | Medical Examiner's Report at RFC13007-10; Investigative File Control Sheet at RFC13035; Handwritten statements of potential alibi's at RFC13051-54; Arrest report at RFC13055; Criminal History Report at RFC 13056-58; Handwritten Line Up Report at RFC13059; Handwritten GPRs at RFC13063-64; Property Inventory at RFC13077-82, 13101-06; Handwritten Lineup report at RFC13089-92; Criminal history of victim at RFC13093; Message between detectives at RFC13108 |
| 115 N475910 | 1990 | Ricardo Miranda | Yes | RFC 13116-13117 | No | State's Attorney subpoena, 1 property inventory sheet, 1 arrest report, possibly a few GPRs and handwritten notes | Yes | RFC 13174, RFC 13177, RFC 13128, RFC 13114-13115 | No | N/A | Yes | Yes | Yes | Handwritten notes (13114, 13127); File inventory (different from the one in the PRF) (13116); Arrest Reports (13124, 13126, 13133, 13148); ASA notes (13123, 13125, 13138-39); Written statement signed by defendant (13134-37); Line-up notes (13140); Request for ballistics comparison (13154); property inventory (13155-56, 13159-61, 13180-82) General progress Report/notes re witness interviews, undisclosed witnesses, descriptions (13172-77); documents re a car (13167, 13178) |
| 116 N513129 | 1990 | Malvin Washington | No - file appears incomplete as there are only Supplementary Reports in it | N/A | N/A | N/A | N/A | N/A | N/A | N/A | Yes | Yes | Yes | Medical Examiners Report (13198-13202; 13204-07); Toxicology Report (13203; 13208) |
| 117 N517875 | 1990 | Rolando Serrano | Yes | • RFC 13383 – 13384 | No | •Postmortem/Toxicology Report<br>• GPRs<br>• Body Chart<br>• ID Card<br>• Gang Arrest Information card<br>• Criminal History Printouts<br>•Statement<br>•Subpoena for Streetfiles -ASA<br>•Supplemental Reports | Yes | • RFC 13498<br>• RFC 13500 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 118 N517875 | 1990 | Calvin McLemore | Yes | • RFC 13383 – 13384 | No | •Postmortem/Toxicology Report<br>• GPRs<br>• Body Chart<br>• ID Card<br>• Gang Arrest Information card<br>• Criminal History Printouts<br>•Statement<br>•Subpoena for Streetfiles -ASA<br>•Supplemental Reports | Yes | • RFC 13498<br>• RFC 13500 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 119 N581836 | 1990 | Samuel Robinson | Yes | • RFC13553 - RFC13554 | No | • 7 GPRs on inventory list, 14 in investigative file<br>• 0 Handwritten Notes on inventory list, 7 in investigative file | Yes | • RFC13606<br>• RFC13649<br>• RFC13650<br>• RFC13651<br>• RFC13652 | Yes | RFC 13648 | Redacted, no comparison | N/A | N/A | N/A |
| 120 N592324 | 1990 | James Burnett / Glen Miller | Yes | RFC 13673 | Yes | N/A | Yes | • RFC 13730 - 13732 | No | N/A | Yes | No | Yes | Investigative file inventory (13673); Supplementary Report (13676-81); Supplementary Report (13685-87); Supplementary Report (13688-89);Supplementary Report (13690-92) re arrest of Miller, property recovered, investigation, and Miller's confession; Supplementary Report 13693-96 re weapons, motives, vehicle in the offense, evidence, and investigation; Arrest Report (13697). Burnett's written confession (13704-07). Miller's written confession (13708-12). Felony Minutes Report (13713-14). Property Inventory Reports (13715-21). Evidence Reports re finger prints and photos (13723). Evidence report re line up (13724). General Progress Report/handwritten notes (13727-39). Police Report (13740). |
| 121 P025834 | 1991 | Dale Phillips | No | N/A | N/A | N/A | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 122 P025950 | 1991 | John Sullivan | Yes | • RFC13841 | No | • 4 Supplementary Reports on the inventory, 14 in file (roughly 2-3 reports are duplicates) | Yes | • RFC 13875 | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC13809-13813; Investigative File Inventory at RFC13841; Arrest Reports at RFC13857-8; Property Inventory at RFC13861-13867; handwritten notes of Defendant's statement at 13869-72; Criminal history of a suspect at RFC13873-13874; Criminal hisotry of victim at RFC13884; Photograph of victim at RFC13888-89 |

| | Identifying Information | | | Criminal Defense Attorney File Comparison — Items in the Investigative File Missing from the Criminal Defense File | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?* | Is there any Investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
| 123 | P049272 | 1991 | Richard Conner | Yes | Yes | • Inventory List: RFC13935 • Handwritten Notes: RFC13891; RFC13947 • Court Order: RFC14028 • Interstate Identification Index: RFC14123 - RFC14127 | No | N/A | No | N/A | Yes | • RFC13891; RFC13943 | No | N/A |
| 124 | P051734 | 1991 | David Rivera | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 125 | P054396 | 1991 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 126 | P060434 | 1991 | Demetrius Thomas | Yes | Yes | • Court Attendance Report: RFC14416; RFC14419 - RFC14431; RFC14438 • Case Assignment Slip: RFC14417 • Disposition Report: RFC14418 • Property Inventory Sheets: RFC14472 - RFC14474 • Statement of Demetrius Thomas: RFC14516 - RFC14530 • Court Notification/Sworn Member: RFC14469; RFC14478 - RFC14479 • Crime Laboratory Report: RFC14471 • Subpoena: RFC14565 | No | N/A | No | N/A | No | N/A | No | N/A |
| 127 | P128067 | 1991 | Robert Machine James Vulpitta Kerry Skora | Yes | Yes | RFC 14641-14642; RFC 14640; RFC 14650; RFC 14712; RFC 14758; RFC 14770-14774; RFC 14768-14769; RFC 14571-14573; RFC 14574-14583; RFC 14633-14634; RFC 14759-14760; RFC 14643; RFC 14647; RFC 14761; RFC 14762; RFC 14763; RFC 14764-14765; RFC 14767 | No | N/A | No | N/A | Yes | RFC 14640; RFC 14650; RFC 14712; RFC 14758 | No | N/A |
| 128 | P129569 | 1991 | Timothy Hester | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 129 | P141860 | 1991 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 130 | P175665 | 1991 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 131 | P190627 | 1991 | Richard L. Goodwin | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 132 | P218019 | 1991 | Johnny Camper | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| Identifying Information | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison — Items in the Investigative File Missing from the Criminal Defense File | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 123 P049272 | 1991 | Richard Conner | Yes | • RFC13935 | No | • 0 To-From Memos on Inventory list, 8 in investigative file<br>• 0 Subpoenas on Inventory list, 3 in investigative file | Yes | • RFC13891<br>• RFC13943<br>• RFC13947<br>• RFC14018<br>• RFC14031<br>• RFC14033<br>• RFC14084 | Yes | • RFC13938<br>• RFC14002<br>• RFC14014<br>• RFC14020<br>• RFC14032<br>• RFC14064 | Redacted, no comparison | N/A | N/A | N/A |
| 124 P051734 | 1991 | David Rivera | Yes | • RFC14257 | No | • 0 GPR on inventory, 3 in file | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 125 P054396 | 1991 | Redacted | Yes | • RFC14385 | No | • 1 GPR on inventory, 4 in file<br>• 0 Handwritten notes on inventory, 4 in file | Yes | • RFC14318<br>• RFC14345<br>• RFC14353<br>• RFC14377 | Yes | • RFC14343<br>• RFC14358 | Redacted, no comparison | N/A | N/A | N/A |
| 126 P060434 | 1991 | Demetrius Thomas | Yes | • RFC14459 - RFC14460 | No | • 0 Handwritten Notes on inventory list, 1 in investigative file<br>• 0 Subpoenas on Inventory list, 3 in investigative file | Yes | • RFC14552 | Yes | • RFC14477 | Redacted, no comparison | N/A | N/A | N/A |
| 127 P128067 | 1991 | Robert Machine James Vulpitta Kerry Skora | Yes | RFC 14641 - 14642 | No | • Request for Analysis/ Receipt for Exhibits<br>• Subpoena for Streetfiles – ASA<br>• Subpoenas for Streetfiles – PD<br>• Biz. Card<br>• Felony Minutes – Form 101s<br>• To-From Memo<br>• Contract Sales – CPD Auto Pound Section Sheet<br>• Handwritten Notes<br>• Evidence Reports<br>• General Offense Case Report<br>• Supplemental Reports | Yes | • RFC 14712<br>• RFC 14755<br>• RFC 14761 | Yes | • RFC 14657 | Yes | No | Yes | Medical Examiner Report at RFC14567-14570; Interview with person who was with victim earlier the day of the incident at RFC14637; Investigative File Inventory, at RFC14641-42; Request for crime lab analysis at RFC14664; Report of registered vehicle at RFC14651; Photographs at RFC14652-54; Copy of the "calling card" that claimed credit for killing victim at RFC14655; Note from Det. Halvorsen to Sgt. in Auto Pound Section at RFC14657; Vehicle Inventory Report at RFC14659; Property Inventory sheets at RFC14664-71; Arrest Report RFC14678; Criminal history of witness at RFC14679; handwritten statement of Defendant at RFC14680-83; handwritten statement of witness RFC14684-14686; handwritten reports of witness at RFC14702; Criminal History of 3 Defendants at RFC14709-11; Handwritten notes at RFC14712; Request for telephone call records of alternate suspect at RFC14723; Property Inventory at RFC14745-50; Handwritten GPR at RFC14751-55; Handwritten note at RFC14758; Arrest Report at RFC14759-60; General offense report at RFC14764-65; Photographs at RFC14768-74. |
| 128 P129569 | 1991 | Timothy Hester | Yes | • RFC14817 | No | • 0 Subpoenas on inventory, 2 in file<br>• 0 Handwritten notes on inventory, 1 in file | Yes | • RFC14819 | Yes | • RFC14844 | Yes | No | Yes | Medical Examiner Report at RFC14779-89; Toxicology Report at RFC14790; Handwritten notes on file folder at RFC14816; Investigative File Inventory at RFC14817; Arrest Report at RFC14821; Supplementary Report with handwritten notes at RFC14830; Request for phone records at RFC14844; Murder Case Investigative Checklist at RFC14845; Arrest Report at RFC14848; Handwritten arrest report at RFC14851; Property Inventory sheets at RFC14852-54, RFC14856-69; Records of suspects' release at RFC14872-73; Arrest report of initial suspects at RFC14880-81; GPR (handwritten) at RFC14882-88 |
| 129 P141860 | 1991 | Redacted | No | N/A | N/A | N/A | No | N/A | Yes | • RFC14908 | Redacted, no comparison | N/A | N/A | N/A |
| 130 P175665 | 1991 | Redacted | Yes | • RFC14985 | No | • 4 on inventory, 14 in file (some may be duplicates)<br>• 0 Inventory sheets on inventory, 4 in file (1 may be a duplicate)<br>• 0 General Offense Case Reports on inventory, 4 in file | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 131 P190627 | 1991 | Richard L. Goodwin | Yes | • RFC15066 - RFC15067 | No | • 0 Handwritten Notes on inventory, 5 in file<br>• 0 Subpoenas on inventory, 1 in file | Yes | • RFC15073<br>• RFC15105<br>• RFC15114<br>• RFC15116<br>• RFC15166 | Yes | • RFC15079<br>• RFC15104<br>• RFC15105 | Yes | No | Yes | Medical Examiner Report at RFC15025-28; Toxicology Report at RFC15029; Investigative File Inventory at RFC15066-67; Arrest Report at RFC15071; Handwritten notes at RFC15073; Stop Order Cancellation Request at RFC15074; Release of Person in custody report at RFC15075; Stop Order Cancellation Request at RFC15076; Arrest Report at RFC15077; Lineup Report with handwritten checkmarks by 3 people in lineup at RFC15090; Note from Detective to Firearms requesting comparison of weapons in this case and a separate homicide (negative results) at RFC15104-05; Defendant criminal history at RFC15109-10; Stop Order at RFC15111; Stop Order for alternate suspect at RFC15120; Arrest report at RFC15121-23; Criminal history of victim at RFC15124; Evidence Report at RFC15125-26; Summary of Firearms evidence at RFC15129; "Lost and Found Case Report" at RFC15132; Property Inventories at RFC15133-46; Handwritten GPRs at RFC15147-68; Copies of drawings/doodles? at RFC15170-72; Photographs at RFC15178-15193 |
| 132 P218019 | 1991 | Johnny Camper | Yes | • RFC15209 | No | • 4 Supplementary Reports on inventory, 11 in file (2 reports were duplicates)<br>• 0 To-From Memos on inventory, 1 in file | No | N/A | Yes | • RFC15210 | Yes | No | Yes | Investigative File Inventory at RFC15209; Supplementary Report for related homicide at RFC15229-34; Interview notes from related homicide at RFC15235; Criminal history of suspect at RFC15236-37; General Offense Report for related homicide at RFC15238-39; Handwritten GPR notes at RFC15250-51; Pictures of suspect at RFC15253-55. |

**Criminal Defense Attorney File Comparison**
*Items in the Investigative File Missing from the Criminal Defense File*

| Identifying Information | | | | Has a Criminal Defense Attorney File been Produced?** | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes From the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Records Division Number | Year | Defendant(s) | | | | | | | | | | | |
| 133 | P251800 | 1991 | Leoncio Mancilla | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 134 | P272087 | 1991 | Demetrius Johnson | Yes, but it is incomplete | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 135 | P310965 | 1991 | Darren Cross | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 136 | P317758 | 1991 | Ruben Sanchez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 137 | P342256 | 1991 | David Colon | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 138 | P348565 | 1991 | AC Wilson | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 139 | P372509 | 1991 | Anthony R. Powell | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 140 | P402641 | 1991 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 141 | P474894 | 1991 | Harry Pena | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 142 | P526822 | 1991 | Miguel Borrotto | Yes | Yes | • Court Attendance Report: RFC16277 - RFC16282 • Subpoena - RFC16308; RFC16310 - RFC16311; RFC16315 - RFC16316 • Complain for Preliminary Examination: RFC16324 - RFC16325 • 101s: RFC16326 - RFC16327 • License Plate Sticker Replacement: RFC16335; RFC16338 • Case Report: RFC16386 • Handwritten Notes: RFC16395, RFC16397, RFC16398 - RFC16400 • American Standard Enterprise Receipt: RFC16401 • Letter to Officer Riccio: RFC16276 • Social Security Card: RFC16392 - RFC16393 • Vehicle Search: RFC16394 | No | N/A | No | N/A | Yes | • RFC16395, RFC16397; RFC16398 - RFC16400 | N/A - No To-From Memos in Investigative File | N/A |
| **AREA NORTH FILES BEGIN** | | | | | | | | | | | | | | |
| 143 | G077193 | 1985 | Angel Dieppa | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 144 | G235351 | 1985 | Jesus Hernandez, Hipolito Torres | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| Identifying Information | | | Investigative File Information | | | | | | | | Permanent Retention File Comparison<br>*Items in the Investigative File Missing from the Criminal Defense File* | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 133 P251800 | 1991 | Leoncio Mancilla | Yes | • RFC15257 | No | • 0 Handwritten notes on inventory, 12 in file<br>• 10 Supplementary Reports on inventory, 26 in file (some may be duplicates) | Yes | • RFC15267 - RFC15271<br>• RFC15274 - RFC15275<br>• RFC15280<br>• RFC15298<br>• RFC15373<br>• RFC15377<br>• RFC15383 | Yes | • RFC15314<br>• RFC15424 | Yes | No | Yes | Investigative File Inventory at RFC15257; Letter from Telephone company of suspect at RFC15259-61; Handwritten note (in Spanish) to suspect at RFC15262-64; Handwritten spanish letters to unkown persons RFC15265-69; Handwritten addresses and notes at RFC15270-71; Notice of suspect's immigration interview at RFC15272; Search of car registrations at RFC15273-74; Handwritten address of unidentified person at RFC15275; Insurance policy of suspect at RFC15276-77; Red light ticket at RFC15278-79; Handwritten notes at RFC15280; Mail, bills, tickets, tax documents, insurance, and immigration notices for suspect and wife at RFC15282-15301; Photos (and order forms for photos) at RFC15302-12; Medical Examiner's Report at RFC15338-44; Toxicology Report at RFC15345; Phone records at RFC15374-79; Letter to FBI requesting help in locating suspect at RFC15380-81; Notes of FBI investigation in Mexico at RFC15383-86; Photograph at RFC16417; handwritten statement of alternate suspect at RFC15418-20; Property Inventory sheets at RFC15421-22; Photographs at RFC15423; Request for phone records at 15424; GPR at RFC15425; Arrest Report and records at RFC15426-28; Release records at RFC15429; List of teams playing soccer day of incident at RFC15430-31; GPRs at RFC15432-34; Property inventory sheets at RFC15435-36, RFC15438-45; |
| 134 P272087 | 1991 | Demetrius Johnson | No | N/A | N/A | N/A | No | N/A | No | N/A | Yes | No | Yes | Medical Examiner Report at R15448-51; Toxicology Report at RFC15452; Line up Report at RFC15470-71 |
| 135 P310965 | 1991 | Darren Cross | Yes | • RFC15484 | No | • Examples of Items Missing from Inventory<br>• 3 GPRs on inventory, 11 in file | Yes | • RFC15483<br>• RFC15499<br>• RFC15503 | Yes | • RFC15486 | Yes | No | Yes | Handwritten note re: ballistics at RFC15483; Investigative File Inventory at RFC15484; Supplementary Report at 15487-89; Criminal history of eyewitness at RFC15495; GPR at RFC15496; Property Inventory at RFC15497; GPR at RFC15498; Handwritten notes at RFC15499, RFC15503; Arrest Report at RFC15514; Criminal History of eyewitness at RFC15515-19; Handwritten GPR re Lineup at RFC15521; GPRs at RFC15522-24; Property Inventory Sheets at RFC15530-32; Handwritten GPR at RFC15542-44; Major Crimes Worksheet at RFC15545; GPRs at RFC15546-48; Hand drawing of scene RFC15549; Arrest Report at RFC15550 |
| 136 P317758 | 1991 | Ruben Sanchez | Yes | • RFC15587 | No | • 1 Supplementary Report on inventory, 15 in file (some may be duplicates) | Yes | • RFC15586<br>• RFC15610 | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC15560-63; Toxicology Report at RFC15564; Investigative File Inventory at RFC15587; Photographs at RFC15589; Arrest Report at RFC15598; Property Inventory Sheets at RFC15605-06; Stop Order at RFC15607; Criminal history and photograph of suspect at RFC15608; |
| 137 P342256 | 1991 | David Colon | Yes | • RFC15619 | No | • 6 GPRs on inventory, 7 in file<br>• 0 Court Attendance Reports on inventory, 6 in file | Yes | • RFC15669<br>• RFC15672 | No | N/A | Yes | No | Yes | Lineup Report at RFC15694-95; Medical Examiner Report at RFC15696-02; Toxicology Report at RFC15703; Investigative File Inventory at RFC15619; Investigative File Control at RFC15622; Arrest Report at RFC15628; Evidence Report at RFC15641; Property Inventory Sheet at RFC15643-48; Material Submitted for Use in the Daily Bulletin at RFC15649; Stop Order at RFC15650; Handwritten GPRs at 15654-56; Property Inventory Sheet at RFC15655-60; |
| 138 P348565 | 1991 | AC Wilson | Yes | • RFC15748 | No | • 0 GPRs on inventory, 2 in file<br>• 0 Subpoenas on inventory, 3 in file | No | N/A | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 139 P372509 | 1991 | Anthony R. Powell | Yes | • RFC15784 | No | • 0 Subpoenas on inventory, 2 in file<br>• 4 Supplementary Reports on inventory, 25 in file (some may be duplicates) | Yes | • RFC15783<br>• RFC15804<br>• RFC15823<br>• RFC15832<br>• RFC15842<br>• RFC15846 | No | N/A | Yes | No | Yes | Supplemental Report documenting arrest at RFC15920-21; Line up report at RFC15922-23; Medical Examiner's Report at RFC15942-45; Toxicology Report at RFC15946; Handwritten note at RFC14783; Investigative File Inventory at RFC15784; Criminal Hisotry Record at RFC15793-15803; Handwritten note at RFC15804, RFC15805; Property Inventory Sheets RFC15814-18; Stop Order at RFC15819; Property Inventory Sheets at RFC15820; Request for Evidence (Blood Vial) at RFC15821; Criminal History Report of witness/suspect at RFC15825; Handwritten GPR at RFC15830; Handwritten Note at RFC15832; Property Inventory Sheet at RFC15835-40; Handwritten GPR at RFC15844; Long list of names and telephone numbers on an "identification" label at RFC15852-59; RFC15861-64; Program from victim's funeral and obituary at RFC15865-68; Photograph of Banks at RFC15869; Picture of "Porter Luckett" at RFC15892-93. |
| 140 P402641 | 1991 | Redacted | Yes | • RFC15973 | No | • 3 GPRs on inventory, 2 in file<br>• 0 Subpoenas on inventory, 4 in file<br>• 2 Supplementary reports on Inventory, 10 in file | Yes | • RFC15978<br>• RFC16022 | No | N/A | Redacted, no comparison | N/A | N/A | N/A |
| 141 P474894 | 1991 | Harry Pena | Yes | • RFC16117 - RFC16118 | No | • 0 Subpoenas on inventory, 7 in file | Yes | • RFC16038<br>• RFC16058<br>• RFC16060<br>• RFC16116<br>• RFC16260 | Yes | • RFC16190 | Yes | No | Yes | Medical Examiner Report at RFC16065-68; Investigative File Inventory at RFC16117-18; Request for Latent Fingerprint Comparison at RFC16126-29; Supp report with handwritten notation at RFC16145 (changes time of interview by 15 minutes); Court Reporter typed statements at RFC16153-84; Handwritten Statements at RFC16185-89; Note re: preservation of recovered money at RFC16190; Vehicle Tow Report at RFC16191; Arrest Reports at RFC16194-98; Criminal History Reports at RFC16199-16203; Property Inventory Sheets at RFC16204-13, RFC16235-42; Handwritten GPRs at RFC16245-52; Incident statement from private security firm/witnesses at RFC16253-58; Medical Examiner Case Report at RFC16259; Photographs of Defendants at RFC16261; Application for employment to company where robbery occurred at RFC16266-27; Insurance policy for Defendant's Car at RFC16268-69; Photographs at RFC16270-72; Call Log at RFC16274 |
| 142 P526822 | 1991 | Miguel Borrotto | Yes | • RFC16306 | No | • 0 Handwritten Notes on inventory list, 4 in investigative file<br>• 0 Subpoenas on Inventory list, 5 in investigative file | Yes | • RFC16360; RFC16364; RFC16395; RFC16397; RFC16398 - RFC16400 | No | N/A | Yes | No | Yes | Medical Examiner Report at RFC16283-86; Pages 2-3 of arrest report at RFC16291-92; Investigative File Inventory at RFC16306; Criminal history report of unknown person at RFC16309; Arrest Report at RFC16329; Property Inventory Sheets at RFC16332-34; License Plate Sticker Replacement Application at RFC16335; Handwritten note at RFC16337; Criminal History of defendant at RFC16338-52; Handwritten GPRs at RFC16359-64; Property Inventory Sheets ta RFC16365-67, RFC16370-5; Evidence Report at RFC16378; Request for Evidence (Blood Vial) and for firearms analysis at RFC16380; Property Inventory Sheets at RFC16381-83; Photographs at RFC16389-91; Copy of Defendant's social security card at RFC16392-93; Vehicle Registration inquiry at RFC16394; Copy of envelope addressed to Defendant at RFC16395; Handwritten names and contact information at RFC16397; Copy of envelope addressed to Defendant and letter at RFC16398-16400; Copy of receipt for sale of car to Defendant at RFC16401 |
| | | **AREA NORTH FILES BEGIN** | | | | | | | | | | | | |
| 143 G077193 | 1985 | Angel Dieppa | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 144 G235351 | 1985 | Jesus Hernandez, Hipolito Torres | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |

## Criminal Defense Attorney File Comparison
### Items in the Investigative File Missing from the Criminal Defense File

| Identifying Information | | | Has a Criminal Defense Attorney File been Produced?** | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | | | | | | | | | | | |
| 145 G340106 | 1985 | Regina Ross | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 146 G509718 | 1985 | Maurice Person, Darrell Person | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 147 H064504 | 1986 | Daniel Padilla, Edward Morales | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 148 H423351 | 1986 | Terry Baker | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 149 H443180 | 1986 | Xavier Thomas | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 150 H487765 | 1986 | Ricardo Wall | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 151 H545062 | 1986 | Sandra Plumley | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 152 J060501 | 1987 | Antonio Trujillo | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 153 J159731 | 1987 | Jerry Arnett, Howard Sandefer | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 154 J209456 | 1987 | David Quinones, Bruce Andras, Marc Johnson | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 155 J215119 | 1987 | Jerry Buckner | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 156 J223885 | 1987 | Ronald O'Neal, Joseph Pecoraro | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 157 J361867 | 1987 | | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 158 J384177 | 1987 | Redacted | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 159 J438040 | 1987 | Richard Sutton | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 160 K060188 | 1988 | Dennis Lee | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 161 K289224 | 1988 | Prentice Phillips | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 162 K466013 | 1988 | James Maris, Erwin Feyrer | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 163 K530917 | 1988 | Amos Walker | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 164 K552960 | 1988 | N/A | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 165 M028533 | 1989 | N/A | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 166 M089396 | 1989 | Evelio Rodriguez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 167 M152823 | 1989 | Gilberto Cordero | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 168 M269013 | 1989 | Joseph Mierwa | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 169 M285781 | 1989 | Jonathan Washington | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 170 M473320 | 1989 | Rayford Rodgers | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 171 M531098 | 1989 | Marcos Gonzalez & David Sanchez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 172 M541953 | 1989 | Johnny Flores | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 173 M556260 | 1989 | George Muriel | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 174 M421725 | 1989 | Jamie Munson | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 175 N475910 | 1990 | Ricardo Miranda, Jose Rivera & Luis Castaneda | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 176 N485671 | 1990 | Alfredo Johnson | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 177 N603937 | 1990 | James Fletcher | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 178 P327313 | 1991 | Ishman Jackson, Zuri Turner, Dwaswald King | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 179 P015235 | 1991 | Erma Hollingsworth | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 180 P051659 | 1991 | Juan Cortes | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 181 P090216 | 1991 | Charles Rivers | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 182 P096838 | 1991 | Eddie Browley | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| | | | Identifying Information | | | Investigative File Information | | | | | | Permanent Retention File Comparison — Items in the Investigative File Missing from the Criminal Defense File | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 145 | G340106 | 1985 | Regina Ross | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 146 | G509718 | 1985 | Maurice Person, Darnell Person | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 147 | H064504 | 1986 | Daniel Padilla, Edward Morales | No | | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 148 | H423351 | 1986 | Terry Baker | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 149 | H443180 | 1986 | Xavier Thomas | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 150 | H487765 | 1986 | Ricardo Wall | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 151 | H545062 | 1986 | Sandra Plumley | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 152 | J060501 | 1987 | Antonio Trujillo | Yes | RFC 020677 | No | Victim Drivers License, LEADS Responses | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 153 | J159731 | 1987 | Jerry Amett, Howard Sandefer | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 154 | J209456 | 1987 | David Quinones, Bruce Andras, Marc Johnson | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 155 | J215119 | 1987 | Jerry Buckner | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 156 | J223885 | 1987 | Ronald O'Neal, Joseph Pecoraro | Yes | RFC 020922 - 020924 | No | Subpoenas, Preliminary Fired Evidence Report | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 157 | J361867 | 1987 | | No | N/A | N/A | N/A | Yes | RFC 021051, 021060-021061 | Yes | RFC 021069-021072 | No | N/A | N/A | N/A |
| 158 | J384177 | 1987 | Redacted | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 159 | J438040 | 1987 | Richard Sutton | Yes - with an incorrect RD# | RFC 021143-44 | N/A - Inventory relates to a different case. | N/A | Yes | RFC 021357; 021362 | Yes - with an incorrect RD# | RFC 021231 | No | N/A | N/A | N/A |
| 160 | K060188 | 1988 | Dennis Lee | Yes | RFC 021402-03 | No | Mug Shots, Cold Case Exceptionally Cleared Open Report, 1 to-from memo listed, 2 in file | Yes | RFC 021396 | Yes | RFC 021432; 021493 | No | N/A | N/A | N/A |
| 161 | K289224 | 1988 | Prentice Phillips | Yes | RFC 021498-500 | No | Hospitalization Case Report, Property Inventories Sheets, CPD Lab Reports | Yes | RFC 021584; 021589 | No | N/A | No | N/A | N/A | N/A |
| 162 | K466033 | 1988 | James Maris, Erwin Feyrer | No | N/A | N/A | N/A | Yes | RFC 021712; 021747 | No | N/A | No | N/A | N/A | N/A |
| 163 | K530917 | 1988 | Amos Walker | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 164 | K552960 | 1988 | N/A | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 165 | M028533 | 1989 | N/A | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 166 | M089396 | 1989 | Evelio Rodriguez | No | N/A | N/A | N/A | Yes | RFC 021935 | Yes | RFC 021943; 021950 | No | N/A | N/A | N/A |
| 167 | M152823 | 1989 | Gilberto Cordero | Yes | RFC 021964 | No | Report of Postmortem Exam, M.E. Body Chart, Stop Order printout, Evidence Report, Property Inventory Sheets, Photos | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 168 | M269013 | 1989 | Joseph Mierwa | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 169 | M285781 | 1989 | Jonathan Washington | Yes | RFC 022081 | No | Court Attendance Reports, Inv. File Control, Criminal History Sheets, Property Inventory Sheets | Yes | RFC 022126-29 | No | N/A | No | N/A | N/A | N/A |
| 170 | M473320 | 1989 | Rayford Rodgers | Yes | RFC 022241 | No | Court Attendance Reports, Subpoena, Complaint for Preliminary Examination, Handwritten Statement (Rodgers) | Yes | RFC 022242; 022263; 022308; 022313 | No | N/A | No | N/A | N/A | N/A |
| 171 | M531098 | 1989 | Marcos Gonzalez & David Sanchez | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 172 | M541953 | 1989 | Johnny Flores | Yes | RFC 022365-66 | No | Inv. File Control, Misdemeanor Case printout, Subpoena, Crime Scene Processing Report, Request for Identification Record cards | Yes | RFC 022420-22; 022442; 022447-48; 022452 | No | N/A | No | N/A | N/A | N/A |
| 173 | M556260 | 1989 | George Muriel | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 174 | M421725 | 1989 | Jamie Munson | Yes | RFC 022498 | No | M.E. Follow-up Investigation Report, Moving of Arrestee Report, | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 175 | N475910 | 1990 | Ricardo Miranda, Jose Rivera & Luis Castaneda | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 176 | N485671 | 1990 | Alfredo Johnson | No | N/A | N/A | N/A | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 177 | N603937 | 1990 | James Fletcher | Yes | RFC 022768 | No | Request for Identification Photo card, Mug Shots, Baking company Business Cards, Request for Temporary Release of Inmate, ARDC card and Drivers License, Crime Scene Processing Reports, Property Inventory Sheets, GPRs, handwritten notes | Yes | RFC 022841; 022843 | No | N/A | No | N/A | N/A | N/A |
| 178 | P327313 | 1991 | Ishman Jackson, Zuri Turner, Dwaswald King | Yes | RFC 022845-46 | No | Court Attendance Reports, Report of Postmortem Exam, Crime Scene Processing Report, Property Inventory Sheet, Subpoenas, Handwritten Notes | Yes | RFC 022966 | No | N/A | No | | N/A | N/A |
| 179 | P015235 | 1991 | Erma Hollingsworth | Yes | RFC 022973-74 | No | Inv. File Control, To-From, Crime Scene Processing Report | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 180 | P051659 | 1991 | Juan Cortes | Yes | RFC 023038-39 | No | Photos, Mug Shot, Handwritten Notes, Telephone Control Log, Letter to FBI, Request for Analysis | Yes | RFC 023033-34; 023037; 023134; 023136 | No | N/A | No | N/A | N/A | N/A |
| 181 | P090216 | 1991 | Charles Rivers | No | N/A | N/A | N/A | Yes | RFC 023226; 023228; 023231; 023235-36; 023238 | No | N/A | No | N/A | N/A | N/A |
| 182 | P096838 | 1991 | Eddie Browley | No | N/A | N/A | N/A | Yes | RFC 023253-54; 023340 | No | N/A | No | N/A | N/A | N/A |

Page 26 of 28

| | Identifying Information | | | Criminal Defense Attorney File Comparison Items in the Investigative File Missing from the Criminal Defense File | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Records Division Number | Year | Defendant(s) | Has a Criminal Defense Attorney File been Produced?* | Is there any investigative material missing from the Defense Attorney File | Bates numbers for missing material | Does the Defense Attorney File contain an Inventory Sheet? | If Yes (i.e., Inventory in the defense attorney file), does it match the inventory in the Investigative File? | Are GPRs from the Investigative File missing from the Attorney File? | Bates numbers for missing GPRs | Are Handwritten Notes from the Investigative File missing from the Attorney File? | Bates numbers for missing Handwritten Notes | Are To-From Memos from the Investigative File missing from the Attorney File? | Bates numbers for missing To-From Memos |
| 183 | P118133 | 1991 | George Laureano & Daniel Rodriguez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 184 | P129569 | 1991 | Timothy Hester | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 185 | P343428 | 1991 | Parris McCoy | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 186 | P359579 | 1991 | Vernard Glover, Frank Glover, Brian McMillan | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 187 | P452272 | 1991 | Rodolfo Mendez | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 188 | P454432 | 1991 | Salatiel Bautista | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 189 | P487544 | 1991 | Clifford Armstrong | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 190 | P500893 | 1991 | Theron Carruthers | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 191 | P560732 | 1991 | Adolfo Mercado | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 192 | P601562 | 1991 | David Alexander | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 193 | P612885 | 1991 | Robert Ramos | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 194 | M247681 | 1989 | Antonio Maldonado | No | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| | Identifying Information | | | Investigative File Information | | | | | | | | | Permanent Retention File Comparison  *Items in the Investigative File Missing from the Criminal Defense File* | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Records Division Number | Year | Defendant(s) | Does the Investigative File include an inventory? | Bates Number for Inventory | Is the Inventory Complete? | Examples of Items Missing from Inventory | Are there Handwritten Notes In the file not on GPRs? | Bates numbers for Handwritten Notes | Are there To-From Memos in the file not on GPRs? | Bates numbers for To-From Memos | Was a PRF produced? | Is an Investigative File Inventory in the Permanent Retention File? | Was there anything in the Investigative file missing from the PRF? | Report type and Bates Number |
| 183 P118133 | 1991 | George Laureano & Daniel Rodriguez | Yes | RFC 023476 | No | Court Attendance Reports, Interview with Jason Rivera Report, Report of Postmortem Exam, Subpoenas, Crime Scene Processing Report | Yes | RFC 023470; 023565-66 | No | N/A | No | N/A | N/A | N/A |
| 184 P129569 | 1991 | Timothy Hester | No | N/A | N/A | N/A | Yes | RFC 023656; 023661-62; 023667; 023669-70 | No | N/A | No | N/A | N/A | N/A |
| 185 P343428 | 1991 | Parris McCoy | Yes | RFC 023711 | No | Inv. File Control, CB Record Summary, Handwritten Notes, Report of Postmortem Examination, | Yes | RFC 023714; 023790 | No | N/A | No | N/A | N/A | N/A |
| 186 P359579 | 1991 | Vernard Glover, Frank Glover, Brian McMillan | Yes | RFC 023801 | No | SAO Disposition Reports, Subpoenas, Request for Identification Photos Cards, CPD transcript of statement | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 187 P452272 | 1991 | Rodolfo Mendez | Yes | RFC 023978-79 | No | Inv. File Control, Arrest Report Acevedo, Subpoenas, Crime Lab Report - Firearms Evidence, Evidence Report, Request for Evidence, Mug Shots | Yes | RFC 024013; 024062; 024067 | No | N/A | No | N/A | N/A | N/A |
| 188 P454432 | 1991 | Salatiel Bautista | Yes | RFC 024137-38; 024210 (1 page wrong RD#) | No | Investigative Alerts, Investigative Alerts Status, Arrest Reports, Stop Order or Cancellation Request | Yes | RFC 024140; 024142; 024175; 024303; 024315 | No | N/A | No | N/A | N/A | N/A |
| 189 P487544 | 1991 | Clifford Armstrong | No | N/A | N/A | N/A | Yes | RFC 024485; 024495 | No | N/A | No | N/A | N/A | N/A |
| 190 P500893 | 1991 | Theron Carruthers | Yes | RFC 024507 | No | Subpoena, Court Attendance Reports, Report of Postmortem Examination | Yes | RFC 024519 | No | N/A | No | N/A | N/A | N/A |
| 191 P560732 | 1991 | Adolfo Mercado | No | N/A | N/A | | No | N/A | No | N/A | No | N/A | N/A | N/A |
| 192 P601562 | 1991 | David Alexander | Yes | RFC 024598 | No | Inv. File Control, Criminal History sheet, Crime Laboratory Report | Yes | RFC 024663-66 | No | N/A | No | N/A | N/A | N/A |
| 193 P612885 | 1991 | Robert Ramos | Yes | RFC 024840 | No | Handwritten Notes, Vehicle Tow Report, Property Inventory Sheets, Polaroid Photos, Mug Shots | Yes | RFC 024702; 024706-08; 024710; 024717-18; 024722-23; 024741; 024744-46; 024793; 024829; 024831-32; 024836-38; 024902 | Yes | RFC 024740 | No | N/A | N/A | N/A |
| 194 M247681 | 1989 | Antonio Maldonado | Yes | RFC 025610 | No | Daily Major Incident Log, GPRS, Inv. File Control, Photographs | Yes | RFC 024919-20; 024927-29; 024942; 025121; 025608; 025611; 025716; 025721 | No | N/A | No | N/A | N/A | N/A |

# *Michael Brasfield and Associates, Inc.*

641 Olele Point Road

Port Ludlow, WA 98365

Phone: 360-301-4465

E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**

No. 12 CV 4428

# ATTACHMENT H

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road                                      Phone: 360-301-4465
Port Ludlow, WA 98365                         E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**<u>Nathson E. Fields v. City of Chicago, et al.</u>**
Cause: 1:10-cv-01168

**Report of Plaintiff's Expert – Michael D. Brasfield**

**March 15, 2016**

**Introduction**

The law firm of Loevy & Loevy, representing the plaintiff in this matter, contacted me in December of 2015 to review the Chicago Police Department's (the "CPD") policies and practices related to the creation, maintenance, storage, preservation, and disclosure of investigative materials in homicide cases, as concerning the *Fields v. City of Chicago* case discussed below, and more broadly. To that end, I reviewed documents regarding CPD's policies and practices governing homicide investigative files. I also reviewed numerous files created by CPD detectives during homicide investigations and compared those files to defense attorneys' files to assess whether relevant investigative material was disclosed or withheld. I have concluded, to a reasonable degree of professional certainty, that the CPD's policies and practices related to the creation, maintenance, storage, preservation, and disclosure of investigative material deviated substantially from generally accepted police practices and resulted in the routine failure to disclose important investigative materials to criminal defendants.

Police departments have long recognized the need to ensure that information and evidence collected during a criminal investigation is properly documented, stored, and ultimately disclosed for use in the criminal trials. The standard practice is relatively straightforward, and consists of a few key components: (a) requiring investigating officers to document the information they learn during the course of an investigation; (b) collecting, inventorying, and maintaining all of the investigative materials and information, in one central location; (c) applying policies or guidelines to ensure that the investigative material in the central file is disclosed to prosecutors and criminal defendants in response to formal requests for information; and (d) administering training around all of these issues to ensure the policies are followed.

CPD did not comply with these standards, instead allowing detectives and other investigating officers to utilize multiple, parallel files for each investigation. The use of parallel files itself creates a significant risk that important investigative materials will not be disclosed, but that risk was exacerbated by the CPD's failure to provide any training or policies regarding proper response to subpoenas and discovery requests. The result is predictable: a routine failure to disclose all relevant investigative materials to criminal defendants.

1

CPD's problem of failing to turn over all relevant materials was brought to light by two federal cases in the early 1980s, but despite being acutely aware of the problem, CPD did little to address the practice. The policies it issued were a superficial attempt to resolve the problem and were deficient on their face – as they still allowed, and even required, multiple, parallel files to be created for each investigation. Moreover, CPD took almost no steps to train, supervise, or implement those policies. Finally, the policies did nothing to ensure that there was a system in place to properly respond to subpoenas and discovery requests.

I have reviewed numerous Chicago homicide files, including criminal defense files and corresponding police investigative files. My review confirmed that because of, the deficient policies and widespread practices described above, criminal defendants were routinely denied substantive and relevant investigative materials related to their criminal cases, and that the written policies did little to alter the ingrained practice of keeping clandestine, parallel files. Finally, I reviewed the files that were withheld from Mr. Fields during his criminal trial and concluded that those files were withheld as a result of the same set of practices and policies (or lack thereof), and contained relevant and important investigative materials that should have been disclosed under standard police procedures.

### Table of Contents

I.      Standard police practices for maintaining and disclosing investigative files requires a single, comprehensive file

II.     *Jones* and *Palmer* litigation highlight Chicago's "Street File" problem

III.    CPD personnel consistently use multiple files during a criminal investigation, and fail to disclose all relevant materials to criminal defendants.

    A.  Multiple files are created for a single investigation, creating a serious risk that investigative materials are not disclosed.

    B.  The CPD's *ad hoc* response to subpoenas exacerbates the problem

IV.     Criminal defense files show that important investigative materials are regularly withheld from criminal defendants

    A.  Background on the "basement files"

    B.  Criminal defense files are missing pages from the basement files

    C.  Issuing a subpoena does little to ensure disclosure of all relevant materials

    D.  The missing pages contain important and relevant information that should have been disclosed to criminal defendants

V.      CPD's policies after *Jones* and *Palmer* don't ensure disclosure of all relevant investigative materials

    A.  The policies are insufficient to remedy the "street files" problem

    B.  The City failed to provide proper training and oversight to ensure compliance with its policies

VI.     The basement files show that the directives were not properly implemented

    A.  The basement files from the 1983-1989 time period show that CPD's policies were not followed

        1.  Handwritten notes, not on general progress reports, are still routinely used

        2.  To-from memos are still being used

        3.  All relevant information in unofficial documents is not transcribed in official reports

            a.  Review of Permanent Retention Files

        4.  Inventories are missing or incomplete

        5.  The basement files show that the "Investigative Files" did not serve as the central repository for investigative materials

    B.  The basement files from the 1999-2006 show that the policies were not followed and that the problem has continued unabated into the 2000s

    C.  The basement files confirm that there was no training, auditing, or oversight to ensure compliance with the policies

VII.    The failure to turn over files in Nathson Fields' criminal case was a direct result of these practices and inadequate policies

**Expert Witness Qualifications**

I began my 40-year law enforcement career in 1968 as a patrol officer with the City of Mercer Island, Washington. In 1969, I joined the Seattle Police Department and served Seattle as a police officer, detective, sergeant, lieutenant, captain, major, and assistant chief. In addition to uniformed patrol, my investigative assignments as a detective included traffic, homicide investigation, burglary and theft, and vice (gambling and prostitution). As a sergeant, I served in patrol, the tactical squad, and internal investigations. As a lieutenant, I served as a watch commander in charge of 50 patrol officers, and later as the commander of the Washington State Criminal Justice Training Commission's Basic Law Enforcement Academy for 2 years. This academy was responsible for developing and providing the initial law enforcement training for all commissioned law enforcement officers in Washington State. As a captain, I served as commander at both the downtown and north precincts, with responsibility for over 125 officers at each location. I also served as the commander of the Internal Investigations section of the Seattle Police Department for 2 years. I was the commander of the inspectional services division for 4 years. This division was responsible for developing, implementing, and monitoring departmental policies and procedures. This division was also responsible for developing and administering a budget in excess of $120 million. My last 5 years with the Seattle Police Department were served as assistant chief in command of the support services bureau. I was responsible for, and oversaw the activity of, nine uniquely different divisions including: internal investigations; training; personnel, intelligence; crime prevention; communications; records & evidence; data processing; and fiscal, property, & fleet management. In this capacity I routinely served as Seattle's acting Chief of Police. I retired from that agency in 1995.

I was selected by the City of Fort Lauderdale as its Police Chief in 1995. The 33-square-mile city has a full time resident population of 165,000. An estimated additional 60,000 "snow bird" residents return to second homes in the city during the 6-month winter season. Fort Lauderdale serves as the seat of government for the county of 1.5 million and is in the heart of a diverse tri-county (Dade, Broward, and Palm Beach) population of 4 million. As one of the premier tourist destinations in South Florida, over 12 million passengers come through the airport each year. The ocean port handles the second largest number of cruise ship sailings in the world. Fort Lauderdale serves as the governmental and business hub of the County. The Fort Lauderdale Police Department had a budget of $60 million and consisted of 500 sworn positions and 300 civilian positions. In 2000, the department received 600,000 calls for service, dispatched over 200,000 of those calls, made over 20,000 arrests, and issued 65,000 traffic citations. The Department is now nationally recognized as an innovative leader in the field of community policing and was one of only a handful of cities nationwide to be selected as a Community Policing Demonstration Site by the Department of Justice. I oversaw the operation of the only municipal jail in the state of Florida. Under my tenure, Fort Lauderdale became the first major agency to obtain accreditation. After over 6 years as the police chief of Fort Lauderdale, I retired from law enforcement a second time and returned to the Seattle area in the fall of 2001.

After retiring as Chief of the Fort Lauderdale Police Department I returned to my retirement home in Washington State. About a year later I chose to run for, and was elected to, the office of Jefferson County Sheriff. I served in that capacity for over 6 years, and retired from active-duty law enforcement for the third (and final) time in the spring of 2009.

4

As both a Police Chief (6 years) and Sheriff (6 years), I have reviewed and approved policies and procedures of every kind. These included (but are not limited to) policies and procedures on criminal investigations, maintenance of police records, complaints against police officers, training, supervision, and discipline. I believe that of specific relevance to this case is that I was the chair of the Washington State Board on Law Enforcement Training, Standards, and Education. Through that position I regularly examined and reviewed issues and criteria that define standards and norms related to the practice and administration of law enforcement practices and operations. I also served 2 years as Commander of the Washington State Basic Law Enforcement Academy in Burien, Washington. In that position I was responsible for the administration of the training program provided to all Washington State Law Enforcement Officers. This was also my role as the Assistant Chief of the Seattle Police Department responsible for in-service and advanced training at the Academy over a subsequent 5-year period. Finally, for 6 years, I was the Commander of the Seattle Police Department's Inspectional Services Division and responsible for the development, formulation and updating all police policy and procedures, including those involved in proper investigation procedures.

As an independent consultant and sub-contractor, I have completed on-site visits to analyze 6 major U.S. city police agencies (Boston, Baltimore, Memphis, Oxnard, Cleveland & Seattle) to evaluate community policing in public housing. I have also served as a visiting management assessor for the cities of New Orleans (LA), Columbus (OR), Portland, (OR), San Francisco (CA), Bremerton (WA). Upon my return to Seattle in 2001, I provided contract professional services as a consultant and program director for the non-profit South Downtown Foundation. I had responsibility for administering several million dollars for improving public safety in the International District, SoDo, and Pioneer Square neighborhoods of Seattle. In this capacity I coordinated efforts with the City of Seattle, the Seattle Police Department, and various interest and civic groups in the area.

As Sheriff of Jefferson County, I held a gubernatorial appointment to the Washington State Sentencing Guidelines Commission, serving as the only law enforcement official on this body of judicial, legislative, and executive-branch representatives. I also chaired the Washington State Criminal Justice Training Commission's Board on Law Enforcement Training, Standards, and Education. Members of this board monitored and evaluated the training of police officers and participated in law enforcement decertification hearings.

Over the last 40 years I have received extensive, specialized professional training in nearly all areas of law enforcement. There has been particular emphasis in the areas of training, internal investigations, criminal investigations, traffic homicide investigations, use of force, ethics, and police liability. I was awarded "life member" status with the International Association of Chiefs of Police in 2005. I was also awarded "life member" status with the Washington Association of Sheriffs and Police Chiefs in 2009. I am also a "life member" of the National Sheriffs Association. I have also been a member of the Washington State Sheriffs Association and served on the executive board of that organization.

During my career, I have been required to investigate and/or review hundreds of internal investigations. I have supervised hundreds of officers, and have had to review their compliance

5

with standards of behavior and integrity. As both a supervisor, and later a commander of internal investigations with the Seattle Police Department, I have reviewed and evaluated the thoroughness of well over hundreds of such investigations. As a police chief and as a sheriff, I have had the ultimate responsibility of passing judgment on such actions by law enforcement officers in situations ranging from traffic stops to fatal shootings.

I have had the opportunity to conduct audits and systematic reviews of police departments throughout my career. As the commander (Major) of the Seattle Police Department's Inspectional Services Division, I conducted both periodic performance inspections of various Departmental units, as well as special audits of high liability units, divisions and bureaus.

As a police practices expert, I was part of a team that performed audits of police department service delivery provided by municipal agencies in 6 major U.S. cities (Boston, Baltimore, Memphis, Oxnard, Cleveland & Seattle).

While working for the Seattle Police Department, I was part of a management assessment team for the cities of New Orleans (LA), Columbus (OH), Portland, (OR), San Francisco (CA), and Bremerton (WA).

As an appointed board member of the Washington State Attorney General's Homicide Investigation Tracking System (HITS), I participated in audits of ongoing and cold case homicide investigations throughout the State of Washington.

In addition, when appointed as the Police Chief in Fort Lauderdale (FL) and when elected Sheriff of Jefferson County (WA), I initiated and oversaw the audits of high risk units and functions within those agencies.

I received a Bachelor of Arts degree in Criminal Justice from the University of Washington in Seattle. I also am a graduate of the Senior Management Institute for Police (SMIP) of the Police Executive Research Forum.

I have been retained in over 65 lawsuits as a police practices expert witness - approximately 66% for law enforcement defendants and 33% for civil rights plaintiffs or individuals claiming injury by law enforcement officers. These include federal district courts in Illinois, Pennsylvania, Florida, Washington State, Idaho, Oregon, Colorado, and Louisiana, and state courts in Washington, Alaska, California, Oregon, Arizona, Pennsylvania, Florida, Wyoming, Texas, and Kentucky.

## I. Standard Police Practices For Maintaining And Disclosing Investigative Files Requires A Single, Comprehensive File

Every police department in the country must address how to properly document their criminal investigations. All information and evidence from an investigation must be properly collected, documented and preserved so that it can be disclosed to prosecutors and criminal defendants for use in criminal trials.

6

The standard police practice, across the country, is relatively straightforward: a lead detective is assigned to every major investigation, and that lead detective is in charge of compiling all investigative materials in a single centralized location. Although multiple detectives may work on an investigation, all information must be centralized and organized. These standards are in place to help police officers effectively solve crimes: they ensure that, during the investigation, information is not lost because it is dispersed among various detectives and that the information is organized and stored so that a supervisor or other detectives can locate and understand the evidence collected by their colleagues. This standard police practice also ensures that once charges are filed, everything that does exist from the investigation is complete, identifiable, inventoried, and maintained in its entirety in a central location. Whether it is referred to as an investigative file, a "murder book," a completed investigation, an open investigation, or something else, everything should be in one package that can be located and produced – for whatever reason it is needed.

Standard police practices also require the disclosure of all investigative material in the police file, whether centralized (standard, and preferable) or not. There should not be picking and choosing. Performing these disclosure requirement is not an informal practice; it is done pursuant to written policies and procedures, in conjunction with training on those policies and procedures, to ensure compliance to this crucial step in ensuring fair trials. As a practical matter, this disclosure for use in a criminal case usually occurs in one of two ways: either the police fulfill their obligations by disclosing their entire investigative file to the prosecutor (rather than picking and choosing which parts of a file to disclose), who in turn disclose it to the criminal defense attorney; or, in some cases, independently and as a safeguard, the criminal defendant or his counsel will subpoena the police investigative materials directly. In response to the subpoena, all investigative materials should be disclosed.

It is also standard police practice to keep and catalogue every document or piece of information pertaining to an investigation. The police investigative role is to search for and document facts – all facts regardless of where those facts fit into some pre-conceived theory of the investigation. Not all facts, information, or individuals will necessarily enhance the prosecution of an identified suspect. Nonetheless, those facts have to be included in the investigation– to help prevent tendencies like tunnel vision, and also in fairness to the victims, the prosecutor, the defense, the court, and the jury. The judge will eventually rule on what is relevant and admissible. And investigators routinely offer explanatory information that puts that information in perspective, or explains why the detectives gave it little weight. But based on my experience, police officers are expected to, and are specifically trained on the importance of preserving all investigative materials and including those materials in a centralized location. Police departments typically emphasize this point because, in order to meet the needs of police agencies and the courts, case files must be maintained in a manner that make them secure but accessible, and the case contents should be arranged in an orderly and consistent manner.

As a corollary, all of the information must be inventoried, indexed, or documented in such a manner as to be easily located and so that the content of the inventory is clearly understood. To that end, a copy of the investigative file inventory will typically be placed in an official police department file so that the department can maintain a single, accurate list of all

7

available material, and that inventory is typically disclosed to prosecutors and criminal defendants so that they can ensure that they have everything. In this way, it serves not as a solution to the problem of ensuring that all investigative material is disclosed, but as a necessary backstop to try to prevent the possibility of non-disclosure despite the existence of other policies and procedures.

My knowledge of these standards is based on my extensive experience with police practices, including my familiarity with the policies used by other police departments nationwide, as well as industry standards established by organization like the International Association of Chiefs of Police. These standards have also been documented in homicide guides and reference materials for decades. For a summary of these texts, please see **Attachment E.**

## II.  *Jones* and *Palmer* litigation highlight Chicago's "Street File" problem

In the early 1980s, two federal court cases highlighted the fact that the Chicago Police Department had no systems in place to ensure that investigative materials were collected centrally and disclosed during criminal cases, and in fact important materials were consistently withheld from criminal defendants.

### A.  The George Jones Prosecution

In 1981, twelve-year-old Sheila Pointer was raped and bludgeoned to death; and her 10-year-old brother Purvy was beaten unconscious in their home.[1] George Jones – a senior at a nearby high school, who edited the school newspaper and was nicknamed "Bookworm" – was ultimately arrested and prosecuted for the crime. During the CPD investigation of the Pointer murder, detectives gathered evidence that undermined the witnesses who had implicated Jones, and which Jones could have used to help defend himself, but this information was placed "not in the police department's regular files but in its 'street files.' These were files that the police did not turn over to the state's attorney's office as they did with their regular investigative files."[2]

After George Jones had been charged, a detective, Frank Laverty, who was investigating the case interviewed the victim's brother, Purvy, who told Laverty that there were two assailants and both were wearing stocking masks. Laverty also documented other strong evidence that Jones was not the perpetrator.  That information was also placed in the street file.[3] Laverty was told that, in light of these facts, the prosecution of Jones had been abandoned. However, in the spring of 1992, Detective Laverty read in the newspaper that George Jones was on trial for the Pointer murder.[4]  Laverty went to his Commander to tell him that an innocent person was being prosecuted, but his Commander took no action. Laverty then went directly to Jones' criminal defense attorney and told the attorney about the information in the street file. After the court

---

[1] *Jones v. City of Chicago*, 856 F.2d 985, 988 (7th Circuit 1988)
[2] Ibid (at 988-991)
[3] Ibid (at 990-91)
[4] Ibid (at 991)

declared a mistrial, the State's Attorney dropped all charges against Jones.[5]

The United States Court of Appeals for the Seventh Circuit described the CPD's reaction to these events as follows:

> Laverty should have been commended for his adherence to the principles of honesty, decency, and justice, instead the police department charged him with a disciplinary infraction for having failed to advise the state's attorney that he planned to testify for the defense in George Jones's criminal trial should that become necessary. He was also transferred out of the detective division, ostracized by his fellow officers, and assigned to a series of menial tasks culminating in the monitoring of police recruits giving urine samples. None of the defendants has been disciplined for misconduct in the arrest and prosecution of George Jones.[6]

After the charges against him were dismissed, Jones filed a civil lawsuit. He was awarded a substantial amount in damages for the violation of his rights. Notably, among other things, the jury found that the City was liable to Jones for its custom of maintaining "street files" that were withheld from the State's Attorney and therefore unavailable to Jones and the rest of the criminal justice system.[7] The Seventh Circuit explained that the practice of "retaining records in clandestine files deliberately concealed from prosecutors and defense counsel cannot be tolerated."[8]

### B. The Palmer Litigation

On April 16, 1982, shortly after Jones' prosecution, a class of plaintiffs filed a lawsuit in federal court to prevent the use of street files.[9] The plaintiffs immediately moved for a temporary restraining order (TRO). A TRO issued on April 20, 1982, and amended on September 24, 1982, required the CPD to preserve all street files and documents formerly placed in street files.[10] The TRO was amended because of allegations that detectives were continuing to keep investigative materials as their personal property and therefore not subject to CPD control.[11]

District Judge Milton Shadur oversaw the preliminary injunction hearing. Based on the evidence presented by the plaintiffs and by the City of Chicago, Judge Shadur found the following (among other things):

- The CPD does not provide its detectives or other personnel with guidelines as to the extent to which "official reports" (which Judge Shadur defined as case reports,

---

[5] Ibid. (at 991)

[6] Ibid. (at 991-92)

[7] Ibid. (at 995-96)

[8] Ibid. (at 995).

[9] *Palmer v. City of Chicago*, No. 82 C 2349

[10] Ibid (at NF-L 005606-07)

[11] Ibid (NF-L 005607)

supplementary reports, closing reports, etc.) have to embody information in "unofficial reports" (defined as notes, witness interviews, worksheets, memoranda, etc.) In particular, Judge Shadur found that "Official Reports have sometimes been prepared from the perspective of what fits the preparer's concept of the crime, so they omit information that – though highly relevant and sometimes exculpatory of the defendant charged with the offense – the preparer does not deem 'pertinent.'"[12]

- The existence and use of unofficial reports is well known throughout CPD. Parallel files containing these reports are referred to as "street files," "running files," "office files" or "working files."
- Potentially relevant information contained among the CPD's various investigative files and materials for a particular crime is not necessarily included in official reports. There has been and is no police rule, regulation, procedure, or practice that requires all relevant information to be placed in official reports or to be transmitted to the CPD's Records Division for permanent retention.[13]
- the CPD responds to requests for documents as follows:
  - ° In response to a subpoena, CPD produces only official reports maintained at Records Division along with photographs and lab reports. CPD does not produce unofficial reports maintained at the Area or unofficial reports in the possession of individual detectives.[14]
  - ° In response to a defendant's discovery motion, Assistant State's Attorneys (ASAs) order official reports by phone. CPD Records Division employees respond to these requests by producing official reports and do not contact individual Areas or other units or divisions of the CPD for unofficial documents.[15]

Judge Shadur found that the exclusion of relevant information from official reports "was not random or infrequent."[16] In fact, by the City's admission, there were hundreds street files in active use during the *Palmer* litigation itself. In granting the injunction, Judge Shadur found that the use of street files created a "grave risk" of non-disclosure of exculpatory information, including information that could be used to impeach witnesses.

On appeal, the Seventh Circuit reversed Judge Shadur in part, although it did order the CPD to preserve and produce street files for those plaintiffs who had been convicted of felonies.[17] It vacated the preliminary injunction in all other respects because the court found that the plaintiffs either lacked standing or should have asked for relief in the state courts. It did not revisit the factual findings that Judge Shadur made.

### III.  CPD personnel routinely use multiple, parallel files during a criminal investigation, and fail to disclose all relevant materials to criminal defendants.

---

[12] Ibid (NF-L 005609-10)

[13] Ibid (NF-L 005612)

[14] Ibid (NF-L 005614)

[15] Ibid (NF-L 005614)

[16] Ibid (NF-L 005615)

[17] *Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985); CPD Special Order 83-2A.

As the *Jones* and *Palmer* cases highlighted, the CPD has a long history of using multiple, parallel files during the course of a criminal investigation, which are frequently withheld from criminal defendants.

**A. Multiple Files Are Created For A Single Investigation, Creating A Serious Risk That Investigative Materials Are Not Disclosed.**

From at least 1977[18] to as late as 2006, the Chicago Police Department has maintained multiple, parallel files relating to a single investigation and has had no system in place to ensure that all important investigative materials from these multiple files are collected and provided to the prosecutors and criminal defendants.

The only "centralized" repository of investigative information maintained by CPD is the "permanent retention file" maintained by the Records Division. But the CPD policy and practice is to only include the official reports in the permanent retention file.[19] This practice of having an "official" file that does not include all of the investigative notes, documents, and materials deviates from standard police practice, which would have one single repository with all the information.

Instead of utilizing the permanent retention file as the central repository of information, CPD practice is to use multiple, parallel files while an investigation is ongoing. These multiple, parallel files have been variously referred to at different times as "street files" "working files," "running files," "unit files," "Area files," or "investigative files," among other terms. These files are used by detectives and other investigating officers, while an investigation was ongoing to gather relevant investigative materials; to communicate steps taken and steps to be taken in an investigation; and to record the personal opinions of the officers investigating a crime. The files contained notes (sometimes handwritten on scraps of paper), memos, reports, photographs, and various other forms of information about the case that were developed as the investigation unfolded. Among other things, information in these various, parallel files included details about the crime and the physical evidence, information about the observations or statements of witnesses, identification of potential leads and suspects, and items obtained from victims or witnesses (*e.g.*, a victim's telephone book or a witness's telephone messages). The files also contained other criminal history information and police reports pertaining to other cases, which were utilized in suspect identification and elimination.

---

[18] The City's designated witness, in this and other cases involving the City's practice regarding maintenance and production of investigative files, James K. Hickey, testified that the practice of using street files started at least as early as 1977, when he arrived at Area 1 homicide. Similarly, during hearings on the use of street files in *Palmer v. City of Chicago*, John Stibich, a former commanding officer in Area 4 homicide, testified that during his time there, from December 1974 to December 1977, Area 4 homicide had a practice of using street files. Following Hickey's sampling of the various violent crimes units in 1982, Hickey determined that each of the Areas used street files.

[19] Hickey *Kluppelberg* Deposition [2015] 22-23, 95-96

11

Detectives working a case necessarily take notes during witness interviews and must communicate that information to other detectives. That is an inevitable and important part of an investigation. The problem with the Chicago Police Department's practice is that these notes are stored across multiple files—both during and after an investigation—and are never consolidated into the official file which is permanently maintained by the CPD. Thus, even after an investigation concludes, there are still multiple files containing different sets of investigative materials scattered in various locations, and which are regularly withheld from criminal defendants.

There are a variety of reasons that multiple, parallel files are created within the CPD environment:

- Multiple detectives working on the same case, each take notes, resulting in multiple sets of investigative materials, but there is no formal place for detectives to keep these notes, and as a result they are kept on tables, coat racks, in cars, in filing cabinets, or desk drawers in the Areas and are never collected in a central repository.[20]
- In 1980, the CPD was re-organized, and the Detective Division was split into six geographical areas (Areas One through Six) and two subject matters (Violent Crimes and Property Crimes).[21] Detectives from different divisions or units of CPD often investigate a case together, but report to different supervisors, and work out of different units or Areas, resulting in multiple files kept at the different geographical locations throughout the City.
- In addition to detectives, there are many others involved in investigating major crimes such as homicides, including patrol officers as well as specialized unit officers like Gang Crimes and Bomb & Arson. No set of policies or practices governed the investigative practices of these additional investigators or required them to coordinate with the Detective Division, resulting in the creation of yet more files, unknown to and uncoordinated by CPD.
- There is no centralized log of the various parallel files created for each investigation, and thus no way to know how many files exist or where they are located.
- Files that are kept in an Area may be moved during CPD re-organization or are relocated to a storage warehouse. If multiple files for the same homicide are stored at an Area, they are not necessarily stored or moved together, and there is no system in place, or documentation, for tracking the movement of these files.[22]
- The documents in the files at the Area are never consolidated into the permanent, official files stored in CPD's centralized Records Division.
- Detectives also do not routinely not transcribe all information obtained during an investigation into an official report, resulting in different information maintained in the official and unofficial documents.
- The permanent file, kept in the Records Division, therefore, does not contain all the relevant and important investigative materials.

---

[20] *Palmer v. City of Chicago*, 562 F. Supp. 1067, 1071 (N.D. Ill. 1983).

[21] James K. Hickey Deposition in *Kluppelberg v. Burge* at 64 (NF-L 001004).

[22] Loughran Deposition 43-44.

12

This practice of using of multiple, parallel files creates an unacceptable risks that information will not be discoverable in response to a subpoena and will, therefore, be withheld from prosecutors and defendants. Where detectives keep their own files, or files are kept at multiple areas or units throughout the City, there is no way for any detective or supervisor to know how many parallel files have been created for a particular case, or whether they have all been collected. This is why standard practice is to have a lead investigator responsible for keeping a single, known repository of information.

### B. The CPD's Ad Hoc Response To Subpoenas Exacerbates The Problem

In Chicago, the risks created by using multiple files are exacerbated by the fact that the CPD Subpoena Service Unit, which is responsible for responding to requests for records, is untrained and lacks any policies governing how it responds to subpoenas and requests for files.

According to Hickey, when a request for investigative documents is made to the Chicago Police Department, that request goes to the Records Division, Subpoena Service Unit.[23] A sergeant was in charge of the Subpoena Service Unit, and that sergeant reported to the assistant director and director of the Records Division.[24] It was the Record Division director's responsibility to set policy at the Subpoena Service Unit.[25]

The Chicago Police Department had no written policy that Hickey was aware of dictating how the Subpoena Service Unit should search for documents responsive to a subpoena or request for records.[26] In addition, there were no directives addressing "policies, safe checks, [or] procedures . . . to ensure that when a request came in either by a subpoena or by an informal request from and Assistant State's Attorney . . . that all of the necessary information including exculpatory information was provided by the subpoena services unit in response to that request."[27]

The subpoena service unit was staffed by non-sworn personnel with the title "clerk."[28] There was no formal training of personnel assigned to respond to subpoenas.[29] Whether all of the different units that worked on a given investigation were searched for documents responsive to a subpoena depended in large part on the discretion and experience of the personnel searching for the documents, such that a subpoena for all documents under a certain records number

---

[23] Hickey *Kluppelberg* Dep 358(NF-L 001299)

[24] Hickey, *Rivera v. Guevara, et al.*, No. 12 C 4428, pages 146-47 (NF-L 000312-13)

[25] Ibid, pages 159-60 (NF-L 000316)

[26] Ibid, pages 36-37 (NF-L 000273-74); City of Chicago's Amended Response to Plaintiff's Seventeenth Set of Requests to Produce Documents to the City of Chicago, p.2-3

[27] Ibid, page160 (NF-L 000316)

[28] Ibid, pages 147-48 (NF-L 000313)

[29] Ibid, page 39 (NF-L 000274)

13

number[30] would not necessarily result in the production of all documents corresponding to that particular investigation.[31] Hickey described the Subpoena Service Unit's effort to respond to document requests as an "art."[32] He acknowledged that it is possible in a case with multiple units working on the same investigation that the subpoena could only go to one of those units.[33]

All of this was true as well with respect to requests for documents made by the Cook County State's Attorney's Office to the Chicago Police Department.[34] This system was in place before Mr. Fields' conviction and continued in force until 2009.[35] In fact, the City's expert on the CPD's policies in 2009 explained that, even if a subpoena is forwarded to an Area or unit, there is no system or procedure to follow up if the Area or unit fails to respond.[36]

This system, or lack thereof,[37] for responding to requests for documents and producing investigative materials, including important investigative information, is deficient. Because there are multiple files in multiple locations pursuant to the special orders and CPD's design, there is an acute need for policies, practices and training to ensure that all relevant information was produced to prosecutors and criminal defendants. The lack of such safeguards represents a significant departure from accepted police practices.

IV. **Criminal Defense Files Show That Important Investigative Materials Are Regularly Withheld From Criminal Defendants**

From a police practices perspective, criminal defense attorney files contain all of the documents disclosed and made available to the attorneys that provided counsel to defendant(s) in the homicide cases that I reviewed. By standard police policy and practice, criminal defendants should get everything that was available from the police investigation to aid the defendant in presenting his or her defense at trial. It would be a dangerous departure from standard police policies to permit a practice of picking through police files to select which investigative materials to turn over.

As a practical matter, this disclosure of information usually occurs in one of two ways: either the police fulfill their obligations by disclosing their entire investigative file to the prosecutor (rather than picking and choosing which parts of a file to disclose), who in turn disclose it to the criminal defense attorney; or, in some cases, independently and as a safeguard,

---

[30] A Records Division number is a unique identifier assigned to a particular criminal investigation. The letters represent the year that the investigation began and investigations are assigned the numbers sequentially as they had.

[31] Ibid, pages 43-46 (NF-L 000275-76)

[32] Ibid, page 162 (NF-L 000316); Hickey *Kluppelberg* Deposition 362-63(NF-L 001303-04)

[33] Hickey *Kluppelberg* Deposition 362-63 (NF-L 001303-04)

[34] Hickey, *Rivera*, page 125(NF-L 000296); Loughran Deposition, page 50.

[35] Ibid, pages 151-53 (NF-L 000314); Loughran Deposition 14.

[36] Loughran Deposition 15.

[37] Hickey, *Rivera*, pages 36-37 (NF-L 000273-74); City of Chicago's Amended Response to Plaintiff's Seventeenth Set of Requests to Produce Documents to the City of Chicago, p.2-3.

the criminal defendant or his counsel will subpoena the police investigative materials directly, rather than relying exclusively on what was provided by the prosecutor. In response to the subpoena, all investigative materials should be disclosed.

The basic principle is that a criminal defendant is not supposed to be tried in the dark. He is entitled to understand the full breadth of the evidence against him; and he is entitled to any evidence that may help him prove his innocence. As a matter of police practices, a well-trained detective would understand that information should be disclosed even if it is only supportive – but not conclusive - proof of innocence. As long as information known to the police or prosecution might contribute to doubt about the defendant's guilt in the mind of a reasonable person, it is relevant and must be disclosed.

Based on the criminal defense files reviewed in this case, as explained below, it is clear that these standard police practices are not followed in the Chicago Police Department, and as a result investigative materials that should be disclosed under normal police procedures are routinely withheld from criminal defendants. Moreover, these documents were withheld even where defendants issued subpoenas specifically requesting those documents. And finally, the material withheld was often relevant, exculpatory investigative information that should have been disclosed under generally accepted police practices. I discuss each conclusion in turn below.

### A.  Background On The "Basement Files"

In 2011, years after Mr. Fields' criminal trials and multiple subpoenas by his trial and appellate attorneys for all files related to his case, the City of Chicago turned over during this civil case a new file to Mr. Fields for the first time. As discussed below, in Section VII, (pages 39-44) that file consisted of more than 100 pages of documents related to the police investigation into the crimes of which Mr. Fields was convicted, and it contained numerous highly relevant pieces of evidence, including witness statements and a number of alternate suspects.

Mr. Fields' attorneys then investigated the filing cabinets where the new file was found. They discovered that it contained hundreds of homicide files containing investigative material, from multiple Areas of the CPD, spanning several decades (hereinafter, the "basement files"). Mr. Fields' attorneys asked to investigate the other files in those cabinets, and they were given access to all of the "cleared" cases—that is, those where at least one individual had been charged with the homicide at issue—from 1979 through 2006.

For the purposes of this report, I was asked to focus on files from two time periods: First, files concerning homicides committed between 1983 and 1989, the period of three years before and after Mr. Fields' first criminal trial in 1986; and, second, files concerning homicides committed between 1999 and 2006, the set of basement files nearest in time to his 2009 re-trial.

15

Mr. Fields' attorneys provided me with a spreadsheet that served as an index of basement files pertaining to those two time periods, which I reviewed and double-checked extensively. That spreadsheet is attached to this report as **Attachment G.[38]**

The basement files came from multiple Areas throughout the City of Chicago. Specifically, in the time period between 1983 and 1989, there were 89 files: 48 from Area One; one from Area Two; nine from Area Three; and 31 from Area Four. In time period between 1999 and 2006 there were 340 files: 308 from Area One; one from Area 2; 28 from Area Four; and three from unknown locations.

### B. Criminal Defense Files are Missing Pages from the Basement Files

I also had access to criminal defense attorney files that corresponded to certain of these basement files. Mr. Fields' attorneys attempted to locate defense attorney files for as many of these homicide investigations as possible. Through their efforts, they located 51 files for 50 different homicide investigations.[39] Each CPD homicide investigation is assigned a "Records Division" (RD) number that is used to identify materials corresponding to a particular investigation. I reviewed all of the criminal defense attorney files counsel was able to obtain; none were withheld from me.[40]

The 51 defense attorney files covered cases from both time periods: For the first group of basement files, in the time period from 1983 to 1989, I compared a total of 28 criminal defense files[41] to 27 corresponding basement files and 27 corresponding permanent retention files. For the second group of basement files, in the time period from 1999 to 2006, I compared a total of 23 criminal defense files to 23 basement files.[42]

I conducted a case-by-case analysis of what documents are included in basement files but are missing from criminal defense files. I did not make any inferences about what documents were turned over to criminal defendants – I based my conclusions on observations about actual differences between files. The results of my file-by-file comparison are contained in **Attachment F.**

---

[38] I intend to rely on the spreadsheet included as Attachment G at trial to help explain the differences between the particular files to the jury.

[39] Plaintiff located two defense attorney files for the 1985 investigation assigned RD G-468726, one for defendant Albert Spraggins, and one for defendant Maurice Spraggins

[40] In a few instances, there were sparse criminal defense attorney files indicating that the case had been turned over to another attorney. In those instances, the defense attorney file would almost certainly be missing substantial investigative material in the police file. Rather than count those cases against the City, they were excluded from the review.

[41] These 28 files concerned 27 separate cases. Plaintiff located two defense attorney files for the 1985 investigation assigned RD G-468726, one for defendant Albert Spraggins, and one for defendant Maurice Spraggins.

[42] There were no permanent retention files for the second timeframe, 1999-2006.

16

My comparison of the Area 1[43] basement files to corresponding defense attorney files revealed that more than 90 percent of defense attorney files are missing investigative material that was contained in the basement file.

The documents missing from the defense attorney files are important investigative materials. For example, the following significant discoverable items were routinely absent, and are precisely the kinds of documents that should be routinely disclosed to a criminal defendant under normal police practices.

**Handwritten Notes:** More than 40 of the criminal defense files (or approximately 80%) reviewed above were missing handwritten notes that were present in the basement files (some Bates examples at 3844, 5024, 5572, 6053, 7160, 8992): These are often found on backs of official forms, on plain sheets of paper, on the margins of official forms, and on scraps of paper, none of which were the official GPRs on which such information was supposed to documented. There were hundreds of handwritten notes contained in the basement files reviewed that were not in criminal defense files. They are often not inventoried, or if they are, they lack any type of specificity to assist in investigation and discovery. They are documents recording the type of information– from alternative suspects, to witnesses, to vehicle information, to alternative theories of the crime – that should be disclosed to defendants under normal police practices.

**General Progress Reports**: Almost half (23 of the 51 files) were missing General Progress Reports that were present in the basement files. Like handwritten notes, GPRs contain the information regarding witness interviews that should be routinely disclosed to criminal defendants according to normal police practices.

**To-From Memos:** Approximately 20% of the criminal defense files were missing to-from memos that were present in the basement files: (see cases G-165272; G-215280; G-248336; G-321886; G-468726; G-032399; HH-749335; HK-416661; HK-470751; and HK-639684) Handwritten and typed to-from memos, not on GPRs, are another classic type of document typically contained in "street files" that were supposed to be prohibited during the relevant time period from 1983-1989 and 1999-2006. I saw numerous examples of to-from memos contained in the basement files that were not in the criminal defense attorney files. Like handwritten notes, they contain a wide range of information – from alternative suspects, to witnesses, to vehicles, to alternative theories of the crime.

**Investigative File inventories:** only 18/51 of the criminal defense files that I reviewed included any type of inventory to serve as an index of documents in the police investigative files.

As discussed above in Section I, pages 6-8, normal police practices and procedures require the creation and dissemination of an inventory that serves the purpose of providing a compilation of all of the investigative materials related to a criminal investigation. The inventory sheet was apparently designed to be used as an index of

---

[43] Area 1 became Area Central in 2012.

documents in an Investigative File. Even when an inventory sheet is available, they were often incomplete (i.e., missing entries that were listed on the investigative file inventory or not listing handwritten notes or other documents) or were so generic as to be worthless (e.g., including overly generic entries, such as "GPR," with no date, number of pages, or author).

**Crime Laboratory Reports** (some Bates examples at 8941, 9007, 14792, 20830): These reports are of critical importance in the judicial process. They form objective analysis of everything from fingerprints, to blood, to ballistics. Over 15 defense attorney files were missing reports that were included in the defense attorney file. .

**Photographs:** Approximately half of the files are missing photographs, either crime scene photographs or identification photographs. Photographs are relevant investigative information that should always be disclosed to a criminal defendant. Particularly, whenever there is a dispute about identification, photographs of the suspect and alternate suspects are materials that are disclosed under normal police practices.

As discussed below in Section VII, (page 42), these same problems infected the Fields files as well.

### C. Issuing a subpoena does little to ensure disclosure of all relevant materials

Even in cases where a criminal defense attorney went out of his or her way to send a subpoena requesting the "investigative" or "street files," my analysis reveals that there was no guarantee that a defense attorney would receive all the relevant investigative materials beyond the official reports in the permanent retention file. In fact, in at least one case that I reviewed, (RD # E-010765, Defendant Cecil Robinson) the criminal defense attorney issued a subpoena for all investigative material other than official reports, asking the CPD to search all of the various locations and types of parallel files (including, as stated in the subpoena, "any and all police reports, notes and memoranda contained in the Chicago Police Department 'street files' also known as 'office, unit or working files or running files'"). CRIM.DEF FILES - FIELDS 037044. The defense attorney's file contained a memo in response to the subpoena claiming that no investigative file or other investigative material existed, when in fact there was a basement file containing relevant investigative information. CRIM.DEF FILES - FIELDS 037110.

In many other instances, the defense attorney issued a subpoena specifically for "street files," and that subpoena appears in the basement file, but not all the documents in the basement file were disclosed in response to a subpoena: For example, subpoenas specifically for "street files" were issued by defense counsel in the following cases, but as described in **Attachment F,** not all the documents were turned over in response: **G-108642** (subpoena at ACB 010444); **G-148403** (subpoena at ACB 011197); **G-248336 (**subpoenas at ACB 014370, 014378, 014416); **G-321886** (subpoena at ACB 016656-57); **G-468276** (subpoena at ACB 20877-78); **G-159857** (subpoena at ACB 011767); **J-418229** (subpoena at ACB 047015); **M-690700** (subpoena at ACB 047759-60); **M-568343** (Subpoena at ACB 048117); **M-569727** (subpoena at ACB 048157); **M-580592** (subpoena at ACB 048240-243); **M-587998** (subpoena at ACB 048376-77, 048403-05); **G-570120** (subpoena at ACB 023352).

18

These subpoena responses suggest deficiencies with regard to the two most basic requirements of a process to ensure complete disclosures to defendants: (1) the City did not know what files it had and where (not centrally located or indexed); and (2) it did not have policies or procedures to ensure that whatever investigative material was found was turned over in its entirety. The latter finding is particularly troubling: it suggests that CPD personnel were picking and choosing which investigative materials in the files to turn over.

## D. The Missing Pages Contain Important And Relevant Information That Should Have Been Disclosed to Criminal Defendants

Finally, entirely consistent with the findings above, in the majority of cases I reviewed investigative material in the basement files was not disclosed to criminal defendants, included significant amounts of relevant information that would have aided the defendant and therefore should have been disclosed under standard police procedures. In my experience, given the volume of investigative material that was not disclosed, it was inevitable that relevant information helpful to a criminal defendant would be withheld. That is exactly what I found.

Below are some examples from the comparison of the defense attorney files and the corresponding basement files that demonstrate this problem:

**D-192218:** Dion Dorn and Steven Spears allegedly participated in the fatal shooting of Telly Howell, a stick-up man who had previously robbed their gang. Police were informed of Spears' and Dorn's participation in the incident by an anonymous caller. Spears, who was 16 at the time of the murder, pled guilty and was sentenced to 25 years. A GPR that is missing from the Public Defender's file contains names, contact information, and handwritten notes of past arrests and convictions for four individuals (John Barlett, Leola Barlett, Jamie Gordon, and Paul Lamont Jones) and whose connection to the case is unexplained. (ACB 003844)

**D-322218:** Rodolfo Garcia was convicted for the murder of Pablo Gomez. After his arrest, Garcia participated in a lineup and gave a videotaped statement. At trial and on appeal, Garcia moved to suppress the statement, alleging that he had asked for his attorney, GiGi Gilbert, who was at the police station shortly after his arrest, but was denied access. Garcia did not have any records to prove that he had actually retained Gilbert prior to his arrest, or that Gilbert was present at the police station, but the basement file contains a copy of Gilbert's business card, ARDC card, and Sheriff's ID card. (ACB 004441; 004504)

**D-579065:** Defendant Jimmy Velasquez allegedly fatally shot victim Raul Herrera after a drug deal went wrong. Officers arrived on the scene around 1:20 p.m. and eyewitnesses described the escape vehicle as a white 2-door car. The license plate from the white car was tracked to Velasquez's sister. At trial, there was a question about which car Velasquez drove. He testified that he had his own working car at the time of the incident, a blue Camaro. In the basement file, a handwritten note (not on a GPR form) documents the statement of Tamonie Bustamantez. (ACB 005024). She reported that around 2 pm the day of the shooting she saw Velasquez was with "another guy" in a 4-door blue car. The same page of handwritten notes also includes the name "Hector Gonzalez" with no additional explanation. Detectives recorded

19

a statement from Hector Gonzalez in a GPR that was also withheld from Velasquez (ACB 005022). That handwritten note corroborating Velasquez's testimony that he was driving his blue Camaro, and identifying potential alibi witnesses, was missing from the defense attorney's file.

**F-048933:** Christino Garcia was convicted of shooting and killing Carlos Vasquez after an argument in a bar on February 9, 1984. The officers listed a series of cars and license plates found at the scene on a GPR at CRIM.DEF FILES - FIELDS 038408, 038410, 038412. But in a handwritten note, not contained in the defense attorney file, there is a description of a "Yellow T-bird ZKW987." (ACB 006096). There is no mention of a Yellow T-Bird in the defense file.

**G-011889**: Earl Stademeyer and James Turner were arrested for beating and stabbing a man to death. Stademeyer was charged and Turner was released without charging. A Lab reports give serological analysis of the blood recovered at the scene. Given that there were two men arrested, the blood types of all those involved could have provided evidence about who was involved. (ACB 008941-942)

**G-014815**: Guy Johns was charged with the murder of Gregory Tucker on January 12, 1985. A Laboratory report documented serology tests on blood found on multiple exhibits that could have excluded Johns or implicated someone else. (ACB 00 9007-9009). This lab report was not included in the defense attorney's file.

**G-165272:** William Goodin was convicted of stabbing and killing his boyfriend Ronald Anderson. The defense attorney file contains only official police reports. It does not include any handwritten notes, GPRs, or to-from memos from the basement file. A to-from memo (ACB 089330-31) describes efforts to locate Goodin, and notes that a neighbor who was shown a picture of Goodin said she hadn't seen him around for some time. A Supplemental Report (ACB 089363-89365) was missing from the defense file. In that report, officers document an interview with Kim Lee Duckett, where she reported that "Frosty" was one of the offenders. A Supplemental Report that was not included in the PD file identifies a man named Tony Murray as "Frosty." (ACB 089411-089412, 089414). It also includes statements from individuals named Gene Pendleton, Robert Brown, and Jack Thomas, whose names and statements are not included in the file.

**G-257089:** Freddy Brown was charged with stabbing a man after an argument about a locked gangway gate. A GPR missing from the defense attorney's file states that 'a bunch of kids were down there by [illegible] stabbing" (ACB 014811). The kids are not referenced elsewhere and are significant because they are potential witnesses.

**G-267826:** James Walker was charged for shooting 4-year-old Angel Hendrix after Walker and Fred Williams allegedly got in a fight in front of his home. Three GPR contain information that was omitted from the defense attorney file. First, a GPR describing an interview with Fred Williams states that "He had an attitude" (ACB 015426). The substance of Williams' statement was present in the defense file, but not the officer's impression of Williams' "attitude." Another GPR lists the name "John Dawson" who reported hearing the arguments and someone say "kiss my ass." (ACB 015428) Only the witnesses that were near the shooting heard

20

this statement. But Dawson's name and contact information were not included in the defense attorney's file. Finally, another GPR lists a potential witness who was not disclosed (ACB 015421). That GPR lists the name "Hawkins, Jarita" contact information, and a note that states "went in car." As a potential witness, this name and contact information should have been disclosed.

**G-284291:** Lucille Pye was charged with stabbing and killing Lenita Williams with a fingernail file on July 24, 1985. Pye and Williams were fighting over a man, Michael Jeffery. Information from several witnesses was missing from the defense file: Officers described statements from John Jenkins and Denise Williams (ACB 16220-21), in a to-from memo and included contact information for both witnesses that does not appear in the defense attorney's file. Officers also wrote a handwritten note with the names Jean Jenkins, Debra Thomas, and Lucille Jeffery that was not included in the defense file. (ACB 16270)

**G-321886 –** James Crockett, Manuel Rios, and Willie Mullen were charged with murder. GPR list names and interview notes from potential witnesses that were not disclosed in the defense file. (ACB 16774-75; ACB 16836)

**G-326467:** George Frison, Edward Ware, and Anthony Mason allegedly shot and killed Kennedy Brooks. The basement file contains information regarding a potential witness, named Monique Kizer, who is not mentioned in the Public Defender's file. Handwritten notes at ACB 017185 include Kizer's name and contact information. Officers also investigated Kizer's arrest history, keeping a printout in the file. (ACB 017275).

**G-468726**: Albert Spraggins & Maurice Spraggins were charged with shooting and murdering Albert Black on November 22, 1985. Police relied on eye-witness testimony and the confession of Maurice Spraggins. Plaintiff's attorneys obtained copies of the defense attorney files for both Maurice and Albert. Neither file contained identification pictures of the defendants that were in the basement file (ACB 02865-02868, ACB 020914-020915

**G-570120:** Crisino and Filberto Bravo were charged for fatally shooting Juan Olmeda based on eyewitness identifications. The basement file also contains details about a possible alternate suspect. A handwritten GPR includes a statement from Antonio Vasquez, a witness to the shooting, that the shooter "looked like Spade." (ACB 23421). According to a Supplemental Report, contained only in the basement files, officers showed Vasquez photographs of men who use the nickname "Spade" and asked him to identify the man he saw shooting. Vasquez identified a man named Alonzo Velasco. (ACB 23456). Velasco was brought in and participated in a lineup, and Vasquez again identified Velasco. The defense attorney's file contains a report listing Velasco as a participant in a lineup, but it does not include the fact that Vasquez identified Velasco as "Spade." (*Id.*)

Police also recovered a gun and casings and submitted them for testing. The ISP Forensic Reports (ACB 023470-47) finding no latent fingerprints suitable for comparison on the gun or the casings were withheld from Crisino Bravo.

**G-705434:** Norman McIntosh allegedly killed Devon Hobson in a gang-related shooting and in retaliation for a robbery earlier that day. Hobson was with his brother, James, and his

21

cousin Darius Thompson, and a friend Aaron Smith walking down the street. Police reports in the Public Defender's file state that Darius Thompson saw man in a gray car "driving slowly in their direction." McIntosh was identified by James Hobson and Darius Thompson. A GPR, at ACB 027247, however, records an interview with Thompson, suggests that the car was following them from behind, undermining the witnesses' accounts of what they saw.

**HH-175723:** Maurice Brown was charged for the fatal shooting of Antonio Willis. Police questioned Stanley Foots as an alternate suspect, but he was apparently ruled out because his girlfriend served as his alibi witness. (CRIM.DEF FILES - FIELDS 008064, 008118). A handwritten note that was withheld from Brown, however, states "Stanley confronted with Girlfriend's contradiction." (ACB 049385). There is no reference to a contradiction between Stanley and his girlfriend's statement in the Public Defender's file. The same note also identifies potential alternate suspects. The note states "Martez Haywood and Lil Arthur did it on 3519 S. Federal. White dude? found as well." (*Id.*) Neither name appears in the Public Defender's file.

**HH-358668:** Christopher Peoples, Marcel White, and James Mitchell, allegedly shot and killed Brian Campbell, the husband of Ninner Powers, during an attempt to forcefully collect on a debt Powers owed to White. Powers recognized and identified White and Mitchell, but she did not recognize the third offender. The basement file identifies possible alternate suspects in documents that are absent from the Public Defender's file. Lawrence Harper was an acquaintance and neighbor of Powers and the victim Campbell. According to supplemental reports, Harper was across the street at the time of the shooting, witnessed one man jump off the porch of the victim's home, and then went to the victim's home and stole a watch and ring from the victim's body. (ACB 031348; 031464-65). Harper also reported that the man he saw running from the porch may have been "Squirt" and, from photographs, identified two other individuals he knew with that nickname. (ACB 031465; 31491). It does not appear that Harper, or the two men he identified, are referenced in the Public Defender's file.

**HK-211174:** Lakesha Collins, Laquita Calhoun, Terrence Jones, and Jeanette Daniels were charged with the kidnapping and murder of Alonzo Jones. Jones was found in an alley and had apparently been beaten and run over by a car, apparently in retaliation for molesting Laquita Calhoun's children. Police reports indicate that several people beat Jones and put him in the trunk of a car, and but that at one point during the incident, Collins tried (unsuccessfully) to help Jones escape. In Collins' statement, she asserted that, though she got into the car, she got out before Jones was killed. Illinois State Police lab results included in the basement file, but which are absent from Lakesha Collins' Public Defender file, provide corroboration for that statement: those reports exclude, Collins as the source of DNA on several cigarette butts found on the scene. See ACB 038172-175 and ACB039216-217. ISP reports at ACB 038171 and 038232, which are again absent from the Public Defender's file, state the no latent fingerprints were found on a knife and other pieces of evidence. Finally, the basement file states that neighbors may have seen part of the brawl. A GPR states that "1st floor neighbors of Jeanette see dude hit victim cause they come out of Apt. Came home for 1/2 hour then left for work" (ACB038292), but the Supplemental Report corresponding to those notes, which is included in the Public Defenders' file, states that officers interviewed "1st floor residents about the beating and murder of Alonzo Jones. The occupants were highly intoxicated and uncooperative with the

22

investigation. they denied all knowledge of any crimes and refused to give an person information" (ACB038265-86).

**J-418229:** Officers were investigating a shooting at a motel in room 114. There are a number of witnesses who heard the gunshots. A GPR lists the name "Andre Woods," a phone number, and the phrase 'out with P.O. Tuesday.' On the next page a handwritten note reads 'PO Keith Calloway 5256'- Neither Andre Woods or this officer are mentioned elsewhere. (ACB 046940-941). Two other witnesses are listed in GPRs in the basement file, but not in the supplemental reports in the defense attorney file. First, a note that "B.U. →I didn't see nothing/ I didn't hear nothing/ I didn't do nothing." The note includes a large red 'x' over it. (ACB 046944). Another witness named Russell Bolden, who "Heard Shot Saw Nothing" was omitted from the supplemental reports (ACB 046966). All potential witnesses should have been disclosed to the defense.

In several of these cases, there are handwritten notes, or GPRs that list names and contact information of individuals without additional context or explanation of their relationship to the investigation. In my experience, it is likely that these were individuals whose names came up during the investigation as possible suspects or witnesses that a detective would want to remember and follow up on. And in fact, as explained below, several similar notes in the Fields basement file listing names without any explanation, were in fact referring to important alternate suspects.[44] These examples emphasize how important it is to disclose all investigative materials, because the importance or relevance of certain pieces is not always apparent looking at a document in isolation.

Moreover, the fact that the relationship of various names is not explained elsewhere in the basement files is indicative of the practice of using multiple, parallel files for an investigation: there is no evidence that explains where the names came from, or evidence of any follow up to investigate those names. That suggests that detectives continued to store that information in separate files, that were not ultimately stored with the basement files.

## V. CPD's Policies after *Jones* and *Palmer* Don't Ensure Disclosure of All Relevant Investigative Materials

All police officials are aware of the challenges of ensuring that, over the course of an evolving criminal investigation involving multiple investigators developing evidence at different locations and times, that investigating officers document their findings and that such investigative material is collected, preserved, compiled and disclosed. In the CPD's case, it was acutely aware of these challenges since 1982, at the time of the *Jones* case, and the problems created by using multiple, parallel files. Yet, it has made only superficial attempts to resolve its "street files" problem. It issued written directives, but they were incomplete and insufficient in their scope, and beyond that they were not supplemented with the training, auditing and monitoring necessary to ensure that the necessary changes in practice occurred. Unsurprisingly, then, the street files problem continued.

---

[44] See Section VII, pages 42-43, describing CITY-NF-001062; CITY-NF-001076; CITY-NF-001085, which list names of alternate suspects without any additional information

1. A department-wide teletype issued during the *Palmer* litigation;
2. Detective Division Notice 82-2 (Detective Division Notice - File Control);
3. Special Order 83-1 (Detective Division Special Order – File Control);
4. Special Order 83-2 (Detective Division Special Order – Investigative Files);
5. Special Order 86-3 (Detective Division Special Order – Investigative Files); and
6. Standard Operating Procedures (SOP) 1988

Instead of using the *Jones* and *Palmer* litigation as an opportunity to reform its practices and implement standard police procedure of creating one single, centralized file for each investigations, those directives actually instructed detectives to create multiple, parallel files, each with different information and did nothing to address the fundamental problems regarding: (1) allowing officers discretion about what to document in the official reports; and (2) the absence of any system or training for responding to subpoenas and ensuring complete disclosures of investigative material. Moreover, the CPD provided only minimal training on these orders, and failed to conduct any audit, supervision, or oversight to ensure that detectives were following these new directives.[45]

## A. The Policies are Insufficient to Remedy the "Street Files" Problem

### 1. The Teletype and Detective Division Notice 82-2

In April 1982, after a Temporary Restraining Order was issued in the *Palmer* litigation, CPD issued two documents: (1) Detective Division Notice 82-2[46] and (2) a 1-paragraph teletype to commanding officers alerting them to the TRO.[47] As Hickey explained, Notice 82-2 was "a quick and dirty document" designed to implement the TRO but was "not very workable."[48]

Notice 82-2 and the corresponding teletype were concerned only with preservation and were silent about procedures to collect or inventory their notes, memos, or other documents. Although it coined the term "Unit Investigative File," it did not require detectives to put notes or memos into Unit Investigative Files; and it did not specify whether detectives had to preserve notes or memos that were not in the file.[49]

Even with Notice 82-2's limited requirements and scope, the CPD showed little commitment to implementing that Notice. There is no evidence of training to implement the Notice, and six months after its implementation, Commander Stibich testified that it was still the prevailing view that if a detective kept his own personal notes or memos – or considered those to be his personal property – then Notice 82-2 did not require the detective to put those notes or

---

[45] Hickey *Fields* Dep. at 10, 43.

[46] NF-L 008751

[47] NF-L 008754; Hickey, *Kluppelberg* Deposition 201 (NF-L 001141)

[48] Hickey *Kluppelberg* Deposition 221-22, 224; (NF-L 001161-62, NF-L 001164); Brzezcek Test. NF-L 007517

[49] NF-L 008751-53; Hickey *Kluppelberg* Deposition 212-13 (NF-L 001152-53)

memos in the file and detectives felt they could do whatever they wanted with those notes or memos, including destroying them.[50]

Based on this and other testimony, Judge Shadur found that Notice 82-2 responded to the TRO in "an improperly restrictive and grudging manner, under which detectives could consider their investigative writings as their personal property (and thus not 'under Detective Division control') and therefore outside the preservation requirements of Notice 82-2."[51] The comments of Commander Stibich and the findings of Judge Shadur make clear to me that the practice of keeping information in parallel files that were not shared with prosecutors or criminal defendants was an ingrained problem within the police department, and one that would require the sort of dramatic change in attitude and culture that could only be achieved through extensive training, monitoring, and discipline.

### 2. Special Order 83-1

On January 3, 1983, Detective Division Notice 82-2 was replaced by Special Order 83-1. Special Order 83-1 applied only to the field investigations of detectives assigned to Violent Crimes.[52] Special Order 83-1 defined certain terms and created procedures for documenting and preserving investigative documents. Special Order 83-1 defined the term "Investigative File" and created something called an Investigative File Case Folder to secure documents relating to a criminal investigation. According to the terms of Special Order 83-1, an Investigative File Case Folder was to be created either when certain categories of violent crimes occurred[53] or when a violent crime investigation resulted in an arrest and approval of felony charges.[54] Special Order 83-1 also created an "Investigative File inventory sheet," which was supposed to identify each document placed in the Investigative File.[55] The inventory sheet was to be forwarded to the Records Division anytime felony charges were lodged.[56] Finally, Special Order 83-1 created General Progress Reports ("GPRs").[57] The GPR forms were to be used by detectives whenever they were taking handwritten notes or writing memoranda to other detectives.

Unlike Notice 82-2, Special Order 83-1 created an affirmative obligation for detectives to submit handwritten GPRs or investigative materials for review and inclusion in the basement file. It also mandated that detectives transcribe relevant information previously recorded on a

---

[50] Stibich Test. (NF-L 007468-70)

[51] NF-L 005615-16

[52] NF-L 007223-27

[53] Those categories of violent crimes were identified in Special Order 83-1, V(A)(1): Homicides/Medical Examiner Cases; Police-related shooting incidents; Batteries likely to result in death; Rapes and Deviate Sexual Assaults, and Any other major violent crime field investigation that the unit supervisor deems appropriate.

[54] Special Order 83-1, V(A)(1) & (2)

[55] Special Order 83-1 IV(D)

[56] Special Order 83-1, IV(D)

[57] Special Order IV(E); Hickey *Kluppelberg* Deposition 170 (NF-L 001110)

25

GPR or other miscellaneous documents on an official CPD case report form (general offense case reports, supplementary reports, etc.).[58]

In reviewing Special Order 83-1, Judge Shadur identified several deficiencies, including:

• Unless the crime being investigated fit one of the specified of violent crimes, there was no obligation to create an Investigative Case File Folder unless and until the offender was arrested and felony charges were approved. According to Judge Shadur, and in line with standard police practices, this continued to pose the same type of risk that information would not be retained and disclosed because there was nothing to prevent against selective retention while the case is investigated;[59]

• It only required detectives to include "relevant" information in the official reports and offered no guidance about what information a detective should deem "relevant," leaving discretion for detectives to withhold information based on their assessment that it was not relevant.[60]

• It did not include information to ensure that any detective who has or receives information relating to a violent crime field investigation not assigned to him will forward the information to the assigned detective for investigation and inclusion in the Investigative File Case Folder;[61] and

• It omits any provision defining how the CPD responds to a criminal subpoena or request by the State's Attorney to produce information relating to a criminal proceeding.[62]

Moreover, the training on 83-1 was inadequate. Hickey testified that he provided a one-time training to about 1,000 detectives.[63] He said each training session was done in groups of 30-40 people, and lasted approximately 3 hours.[64] During that three-hour training session, he went over Special Order 83- 1. One training session was wholly insufficient to try to change a decades-long practice, especially one so ingrained in the culture of the police department.

### 3. Special Order 83-2

On May 2, 1983, Special Order 83-2 was issued. Three of the changes in Special Order 83-2 were (1) a requirement that detectives create records reflecting all relevant information, V(B)(1); (2) a requirement that where a detective receives information about another crime, he or

---

[58] Special Order 83-1 V(B)(1) & (2), NF-L 008772-73

[59] NF-L 005620

[60] Special Order 83-1 V(B) (NF-L 005620); Hickey *Kluppelberg* Deposition 238; (NF-L 001178); Hickey *Kluppelberg* Deposition [2015] 20.

[61] NF-L 005621

[62] NF-L 005621

[63] Hickey *Kluppelberg* Deposition 308-309 (NF-L 001249-50); NF-L 008808

[64] Hickey *Kluppelberg* Deposition 309 (NF-L 001250); NF-L 008808

she pass that information along to the detective investigating that other crime, V(B)(6); and (3) that a copy of the Investigative File Inventory Sheet will be transmitted to either the Office of Legal Affairs (in case of a subpoena from a criminal defendant) or the State's Attorney's Office (in case of a discovery motion) so that the inventory sheet is disclosed to defense counsel in a criminal case, V(B)(6).[65] Hickey also testified that Special Order 83-2 also created the Investigative File Control Card, IV(F).[66] This Control Card was supposed to act like a library card so that the Investigative File could be accounted for.

Despite these new requirements in 83-2, there is no evidence that CPD provided any additional training to update detectives on the differences between 83-1 and 83-2.

Moreover, even if detectives had been adequately trained on Special Order 83-2, it was still deficient. Here are some of the deficiencies that should have been apparent to CPD policymakers.

- **Special Order 83-2 still did not comply with standard police practice to require a single repository for all investigative information maintained by a lead investigator**.

- **Special Order 83-2 applied only to detectives**, and it explicitly excluded from its directives all other officers involved in investigating major crimes, such as gang crimes officers, officers from bomb and arson, and officers from patrol, among others.

- **Special Order 83-2 provided no guidance about what information a detective was required to include in a supplementary report beyond information deemed "relevant."[67]** Relevance is of course subjective and, as Commander Stibich testified, what is relevant to one detective may not be relevant to another.[68] In fact, Hickey testified that a detective would only have to put information in a supplemental report if the detective deemed it pertinent at the time that the detective wrote the supplemental report, regardless of whether the detective considered the information relevant when he or she received it.[69] For example, Hickey testified that CPD policy did not require suspects who had been eliminated through investigative activity to be documented in any way.[70] Based on my experience, this is inconsistent with standard police practices. Alternate suspect information, for example, is highly relevant information and its documentation and disclosure to criminal defendants is critical.[71]

---

[65] NF-L 008746-50

[66] Hickey *Kluppelberg* Deposition 228-29 (NF-L 001168-69)

[67] Hickey *Kluppelberg* Deposition 238; (NF-L 001178); Hickey *Kluppelberg* Deposition [2015] 20

[68] Stibich Test. NF-L 007474

[69] Hickey *Kluppelberg* Deposition [2015] 24-25, 33

[70] Hickey *Kluppelberg* Deposition 237-38 (NF-L 001177-78)

[71] This does not prevent an investigating officer from also documenting information explaining why the suspect was eliminated.

27

- **Special Order 83-2 provided no guidance about how information should be communicated or documented among detectives**, for example when one detective learned something about a crime being investigated by another detective; or when one unit learned something about a crime that is also being investigated by another unit. While section V(B)(6) of Special Order 83-2 codifies the obligation to "forward" information about a crime to the assigned detective, it does not require either detective – the detective passing along information or the receiving detective – to document that information.[72] Similarly, even where the detective passing along the information may have created a document memorializing that information – *e.g.*, a memorandum or GPR – there is no requirement in Special Order 83-2 that the resulting memorandum or GPR be distributed to other detectives or units investigating that crime.[73]

- **Nowhere does Special Order 83-2 state that an investigative file should must be disclosed in response to a discovery motion or subpoena, or provide procedures for doing so.** Despite the underlying circumstances of *Jones* and Judge Shadur's admonishment about the failure to "defin[e] the CPD's duty or procedure in responding to a criminal subpoena or request by the State's Attorney to produce information relating to a criminal proceeding," Special Order 83-2 included absolutely no policy directive or procedure to ensure production of investigative files. This is a straightforward requirement of any policy regarding maintenance and disclosure of investigative materials, and, as explained above, standard practice is to simply provide the single investigative file to the prosecutor or directly to the defense attorney to ensure all documents are disclosed.

- **Special Order 83-2 relies on inventory sheets instead of actual disclosure of the files.** special orders 83-1 and 83-2 introduced the inventory sheet, which was apparently designed to be used as an index of investigative materials so that members of the CPD and other actors in the criminal justice system had a way to determine what information existed in police files. Special Order 83-2, required "whenever a subpoena or discovery motion is received in any case, two copies of the Investigative File Inventory Sheet will be forwarded to the Office of Legal Affairs . . . .so that one of such copies may be transmitted to the attorney for the defendant."[74] But the Order does not require that the actual documents in the file be disclosed, nor does is require that documents maintained in other units not covered by the Order (e.g. gang crimes unit) be turned over.

- **Inventory sheets are an inadequate mechanism for ensuring disclosure of documents generated during the police investigation.** While the investigative file inventory sheet is designed to be used as an index of documents in the file, there is no guidance about what level of detail is needed in the inventory sheet to ensure that it

---

[72] Hickey 236-37 *Kluppelberg* Deposition (NF-L 001176-77)

[73] Hickey *Kluppelberg* Deposition [2015] 39, 43, 46

[74] Special Order 83-2, V(B)(6), NF-L 008832

serves its purpose. Indeed, my review of the records demonstrates that the inventories are largely useless because the entries are too general, often missing dates, descriptions and numbers of pages, such that one cannot tell whether they have the document referenced. In addition, that sheet is only distributed beyond the Area or investigating unit if felony charges are placed IV(D); V(B)(6). This creates multiple problems:

- o If an inventory only has to be filled out and sent at the issuance of charges – as opposed to filled out as the investigation proceeds – there is a risk that documents will be left off the inventories that the detective no longer deems relevant or that are potentially harmful to the prosecution's case. That leaves the individual detective far too much discretion about what to include on the inventory once charges are filed;

- o If any additional investigation is done after charges have been lodged (for example, if there are multiple offenders) there is no provision that requires anyone to fill out or distribute an updated inventory;

- o Inventories do not contain the substance of information obtained during an investigation;

- o It assumes that inventories would have to be complete, accurate, and consistently turned over; as discussed below, my review of files shows that this rarely occurred.

- **Finally, there is no provision in Special Order 83-2 requiring an audit or oversight to ensure compliance with the special orders.**

### 4. Special Order 86-3

On May 29, 1986, the CPD issued Special Order 86-3. Special Order 86-3 largely replicates its predecessor with some minor adjustments, most of which actually limited, rather than expanded, to policies governing disclosure of investigative materials to prosecutors and defense attorneys. For example, Special Order 86-3 more explicitly limits the creation of Investigative File Case Folders to homicides or felony investigations where charges have been approved, or an arrest warrant issued; it eliminates the requirement that the inventory sheet be forwarded when a criminal subpoena or discovery motion is received; it eliminates the requirement that handwritten notes or other investigative materials be submitted "promptly (normally at the end of each tour of duty)" and instead only states that such notes must be "submitted."

In these ways, Special Order 86-3 actually deviated further from standard police practices than the special orders that came before it:

- **It still did not comply with standard police practice to require a single repository for all investigative information maintained by a lead investigator**.

- **It permitted detectives to maintain their handwritten notes as personal files for longer periods of time,** by removing the requirement that they turn in the notes and investigative materials "promptly (normally at the end of each tour of duty)." Thus,

29

even if detectives retained their handwritten notes on their person, or in their locker for extended periods of time, it would not clearly violate the Order. In my experience, that level of discretion is a gross deviation from standard police practices, especially in light of the ingrained problem in CPD.

- **It still provided no guidance about what information a detective was required to include in a supplementary report beyond information deemed "relevant."**

- **Finally, it removed even the inadequate stop-gap measure of providing the inventory sheet to defense attorneys**, leaving defense attorneys with no mechanism to determine whether they had received all the relevant investigative materials.

Special Order 86-3 included a section VI, titled "Inspection." That section requires "[e]xempt members of the Detective Division" to "conduct periodic, unscheduled inspections of the subject files to ensure compliance." According to Stibich, however, he had no idea if, when, how often, or in what manner such inspections were conducted.[75] Likewise, the City has produced no documentation that any such inspections were ever conducted. Hickey testified that no audits were done subsequent to Special Order 82-2 and detectives were not routinely disciplined for failure to comply with the special orders.[76] Nor is there any evidence that detectives were trained on this new policy. In short, I have not been presented with any evidence that policymakers trained, reviewed, or supervised subordinates to ensure that Order 86-3 was implemented or followed.

### 5. Standard Operating Procedures (SOP) 1988

In 1988, Chief of Detectives John Townsend wrote standard operating procedures to govern the work of detectives. Chapter 18 deals with investigative files. Chapter 18 contains "no substantive changes of any kind" from Special Order 86-3.[77]

### 6. Summary

The policies implemented by the CPD were inadequate to remedy the "street files problem" and deviated from standard police practices regarding documenting and disclosing investigative materials.

First, none of the policies required a single repository for all investigative information maintained by a lead detectives. In fact, in reviewing the materials provided, I identified at least three different files that would be created relating to any criminal investigation pursuant to the special orders. First, there would be a permanent retention file in the Records Division, containing only supplementary reports, general offense case reports and the arrest report filed under the accompanying RD number.[78] Second, there would be a unit RD file: Hickey testified that this was a slim file kept in the homicide drawer at the Area to identify that there is a case

---

[76] Hickey *Fields* Dep. at 10, 43. Hickey *Kluppelberg* Deposition 213. (NF-L 001153)

[77] Hickey *Rivera* Deposition pages 250-51 (NF-L 000338-39)

[78] Hickey *Kluppelberg* Deposition [2015] 22-23, 95-96.

open.[79] Like the permanent retention file, it would contain all the known official police reports: original case offense report, supplementary reports, and reports sent to the investigative unit from support units.[80] Third, there would be the investigative file maintained by the area or any specialized unit.[81] This file would contain documents that individual detectives assigned to investigate the case have determined should be in there.[82] As noted above, none of the files had to have the same documents in them: In fact, by design, they did not.[83] Likewise, Hickey admitted that the files did not even necessarily have the same *information* in them.[84]

Moreover, additional files would also be created by other units of the Chicago Police Department, because the policies only applied to the Detective Division. So, in addition to the multiple files above, Gang Crimes officers, other special unit investigators, and patrol officers, could each have additional sets of files related to a homicide investigation, and the special orders are silent as to those additional files.

This was an apparent omission. In fact, Hickey testified that he raised the fact that Special Order 83-1 was only addressed to the Detective Division and that the Department might want to look beyond the detective division to see if the problem extended to other units.[85] And at some point, Hickey suggested that perhaps Research and Development and Auditing Internal Controls Division should get involved because there may be department-wide implications to the use of street files.[86] But there was no response from the chain of command to Hickey's concerns and CPD never looked to see if the problem of street files went beyond the Detective Division. This failure to look beyond the detectives – notwithstanding the fact that they worked closely with other units in investigating crimes – was deficient and allowed yet more parallel files to be created in other parts of the Department.

The problems created by such an unwieldy system are obvious: It creates the potential for information and documents to go missing because they are not centrally controlled. Moreover, because the files are designed to be different and to be retained in different locations, there is no way to ensure that the complete investigative file is produced during any criminal prosecution.

Second, the policies also left detectives with far too much discretion about what information to document in official reports and when to turn in investigative materials. This is particularly true because the status quo had previously been not to record or document information – at least not on official documents that would be maintained by CPD and disclosed to the prosecution and defense. As a result, to overcome this culture – and this citywide practice

---

[79] Hickey *Kluppelberg* Deposition 115-16 (NF-L 001055-56)

[80] Hickey *Kluppelberg* Deposition 115-16 (NF-L 001055-56); S.O. 86-3

[81] Hickey *Kluppelberg* Deposition 297-300 (NF-L 001238-41)

[82] Hickey *Kluppelberg* Deposition 297-300 (NF-L 001238-41)

[83] See for examples Hickey *Kluppelberg* Deposition [2015] describing documents that would go in the investigative file but not in the permanent retention file at 71-72, 81, 91, 94, 100, 103, 105, 108-110

[84] Hickey *Kluppelberg* Deposition [2015] at 100

[85] Hickey *Kluppelberg* Deposition 207-208 (NF-L 001147-48)

[86] Hickey *Kluppelberg* Deposition 208 (NF-L 001148)

31

– CPD had to be explicit in its requirements and provide direct guidance about what did or did not have to be documented; it is not enough to leave it up to the individual officer.

The most egregious example of the problems of officer discretion relate to the lack of a requirement to document elimination of suspect. Indeed, Hickey testified that it was not the policy of the CPD to require detectives to document suspects who were eliminated.[87]  To the contrary, it was permissible and consistent with the special orders not to document the identity or investigative steps taken to eliminate a suspect if a detective did not think that information was relevant or if the detective discounted it for some reason.[88] This is a significant departure from standard police practice, which calls for officers to err on the side of documentation and disclosure of such information, which is often crucial to other investigators on a case and highly likely to contain exculpatory information.

### B. The City failed to provide proper training and oversight to ensure compliance with the special orders

On a department-wide scale, there was no action taken whatsoever to ensure that the special orders were being followed. The only training provided was one three-hour session after 83-1 was issued. But, as explained above, one three-hour training session was wholly insufficient to try to change a decades-long practice. In fact, Hickey testified that the years after Special Order 83-1, he learned that unit detectives were reverting back to carrying their own files on the street separate and apart from the file maintained by CPD.[89]  Nothing, however, was done about this.

Hickey also explained that although he did a sampling prior to the special orders being issued, he did not do one at any time after Notice 82-2 and was not aware of anyone else conducting such an audit.[90]  On a more individual scale, Hickey testified that members of the police department were supposed to conduct inspections pursuant to Special Order 83-2 but Hickey could not identify any instances of audits or investigations.[91]  Similarly, Commander Stibich testified that supervisors were supposed to review files but he had no idea how often, when or the manner in which that review was conducted.[92]

In fact, it appears that there was no oversight to ensure that the special orders were being enforced and that the street files practice was eliminated. This is particularly troubling given the importance and scope of the problem and is certainly deficient. You cannot expect a department-wide, decades-long practice to be eliminated by simply issuing an order that was read at roll call a few times. Based on my experience, this requires extensive and ongoing training (not a one-time session of a couple of hours), careful auditing and monitoring, and meaningful discipline

---

[87] Hickey *Kluppelberg* Deposition 237-38 (NF-L 001177-78)

[88] Hickey *Kluppelberg* Deposition 339 (NF-L 001280); Hickey *Kluppelberg* Deposition [2015] at 66-67.

[89] Hickey *Kluppelberg* Deposition 321, 327 (NF-L 001262, NF-L 001268)

[90] Hickey *Kluppelberg* Deposition 160-61, 166, 167 (NF-L 001100-01, NF-L 001106-07)

[91] Hickey *Kluppelberg* Deposition 375-76 (NF-L 001316-17)

[92] Stibich Testimony NF-L 007461-62

32

when the new special orders were not followed. Based on my review of the record, almost none of this occurred. Accordingly, CPD leadership either knew or was deliberately ignorant of the fact that the street files problem continued unabated after issuance of the special orders.

## VI.     The Basement files show that the directives were not properly implemented

### A. The basement files from the 1983-1989 time period show that the special orders were not followed

I reviewed the 89 basement files from 1983-1989 to evaluate whether the basement files, standing on their own (i.e. without comparing to a permanent retention file or defense file) demonstrated compliance with the 1982, 1983, and 1986 special orders. The files show that the special orders were not followed in several ways:

#### 1.   Handwritten notes, not on General Progress Reports, are still routinely used

As discussed above, the special orders directed officers to use GPRs to take notes, and were intended to eliminate the use of handwritten notes on loose sheets of paper without any context of who wrote the note and when.  Reviewing the 89 basement files from 1983-1989 demonstrates that detectives consistently used handwritten notes despite the direction in the special orders. 73 out of the 89 contained handwritten notes not on GPRs.

#### 2.   To-From memos are still being used

As discussed above, the special orders also directed officers to stop using to-from memos to communicate investigative information, and to instead include that information in GPRs and Supplemental Reports.  The 89 basement files from 1983-1989, however, show that detectives continued using to-from memos: 38 out of the 89 files contained to-from memos not on official police forms.

#### 3.   All relevant information in unofficial documents is not transcribed in official reports

The special orders state that all relevant information must be transcribed into an official report, in an effort to ensure that the permanent retention file, which contains only official reports, provides a complete picture of the investigation.

But, the case files I reviewed are replete with examples of handwritten pages and informal memos between detectives containing potentially exculpatory information. These handwritten notes contained critical investigative information, including: 1) Leads on different or additional avenues of investigation or suspects (Bates 048422); 2) Names or descriptions of additional witnesses found in at least 50% of the basement files); 3) References to other CPD or outside law enforcement involvement in the investigation (Bates 06139-41; 011669); and 4) Handwritten diagrams, scene and area maps, evidence locations (Bates 020928; 016773; 015652; 031512). These citations are examples only, and not an exhaustive list of instances where these trends were seen.

In the vast majority of the cases that I reviewed, there is no companion entry on official

33

CPD forms that documents this critical information, leaving this potentially exculpatory information solely in handwritten notes or in informal memos contained in the Investigative Files. By not transcribing it into an official report, it is less likely to get into the permanent retention file, and as observed above, to criminal defendants. Some examples of these omissions include:

- In custody detention log (G-266841A – Bates 05194-95) shows suspect detained in stationhouse from 6/27/01 @ 3:00 PM until 6/28/01 @ 10:55 PM – nearly 32 hours (time of last entry – nothing to show when he was booked or released). Log is written on a GPR – all in the same hand and appears to be done after the fact, all entries made at one time.

- In handwritten note (M-587998 – Bates 48422) on a plain piece of paper provided by CPD Officer William Freeman on 1/9/90 @ 1930 hours, is the following:

> *To whom this may concern Dalmar Milton in 141 N. Wolcott #301*
> *Andrew in 141 N. Wolcott #305*
> *an (sic) another boy that lives in 1850 #603*
> *Killed Fat Ed behine (sic) the boys club on Christmas night they beat him to death with a golf club. Someone saw it but they are afraid to come fort (sic).*
> *Thank you*
> *? ? ?*

The permanent retention files that I reviewed similarly demonstrate that the official reports that become part of the Permanent Retention File provide an incomplete picture of an investigation.

If the special orders were being followed, this should not happen. Under the special orders, all relevant information learned during the investigation is supposed to be transcribed into an official report, and so the official reports contained in the permanent retention file should for all intents and purposes contain all of the same information (although not necessarily all of the same document) about the investigation, including any exculpatory and impeaching information developed during the investigation.

### a. Review of Permanent Retention Files

I reviewed the investigative and permanent retention files (permanent retention files) for the years 1983-1989 and intends to rely on all the permanent retention files produced in that period to demonstrate the City's failure to train, follow, or implement its special orders.

I was provided with digital copies of 27 permanent retention files, corresponding to 27 basement files from the time period 1983 - 1989. I examined, compared and contrasted the 27 permanent retention files with their corresponding basement files (IF). **See Attachment F**

Although all of the basement files had the required inventory sheet, only approximately 15% of the permanent retention files contained the required copy, a violation of the special orders.

In addition, for the 15% of cases where inventory sheets were included in the permanent retention files, they were often incomplete or the description of the documents were so generic or general so as to be unusable. Items in the Investigative File routinely missing from the permanent retention file version of the Investigative File inventory sheets included:

Handwritten names, addresses, vehicle license plates, phone numbers, physical descriptions, dates, unknown abbreviations, symbols, other case numbers, and miscellaneous notes found throughout most of the Investigative Files. These types of items were found written across official forms, on plain paper, and on file folder covers. Most were not referenced or located in any permanent retention file inventories, and may have had value for discovery purposes.

### 4. Inventories are Missing or Incomplete

I also noted that documents were often added to the inventory sheet long after they were initially created. In some instances, some inventory sheet entries were not created until after an offender had been charged. In other files, the dates are either illegible, or do not appear at all. In other instances, there are stamped dates, but nothing shown as entered. In other instances, an item is shown as entered, but not date or individual entering. In other instances, a large quantity of GPRs and supplemental reports were entered all on the same date. Some limited examples:

D-1922128
F-048933
F-380662
M-587998
G-268444

The delay in creating an inventory sheet reveals three problems. One, it again demonstrates the amount of discretion that officers could exercise when deciding what to put into an Investigative File: if an inventory sheet is only created after an individual is charged, detectives can exercise discretion over what they deem relevant at the end of an investigation. Second, if the documents are not logged on the inventory sheet until after the charges are brought, that indicates that documents are being stored in other, undisclosed locations during the course of the investigations, which was precisely the problem the special orders should have addressed. Finally, if detectives obtain additional information after charges are brought, there is no mechanism in place to update the inventory sheet in the Records Division, or in the inventory sheet disclosed (albeit rarely) to criminal defendants.

### 5. The basement files show that the "Investigative Files" did not serve as the central repository for investigative materials

The files I reviewed demonstrate that the basement files were not the central repository

35

for information. My review of the files revealed numerous cases where information that should be included was absent from the basement file, suggesting that it may have been lost or stored in separate files. Examples of such missing information include:

- No explanation on photographs, such as when or where the photo was taken, who/what is depicted in the photograph or why the detectives believe it is relevant to the investigation. (e.g. Bates 07182; 006121; 008989; 011312; 046887-91). The missing information suggests that the paperwork, notes, or other investigative materials that led to the photograph were maintained separately from the basement files.

- Missing reports including ballistic reports, AFIS reports, crime lab reports, CAD and 911 reports. In some basement files there are reports indicating that the lab was unable to find evidence (i.e., fingerprints) that would tie the suspect to the murder (Bates 0000047); or notations that the case has been cleared – do not resubmit (Bates 0000046); or no comparisons (Bates 006082).

- Missing forms, such as missing property inventories and Major Crime Worksheets. For example, M-566742 contains no Major Crimes Worksheet and is representative of many of the basement files

- Other missing forms or documents including missing medical records, missing property inventory forms, or missing search warrant affidavits, and missing search warrant returns. (e.g. F-229039; G-165272; G-176242; G-259321)

- Some cases have investigatory computer generated phone records (Bates 006142-47), in others they are hand written by an unknown investigator but not included in official reports, suggesting that the original source for the phone records was stored separately or not properly retained.

- Blank or missing chain of command homicide review forms (e.g., Bates 211174; 065188)

- Many basement files are missing crime scene photos, suggesting that the reports from Crime Scene technicians were not included in the basement file. For example, the investigation under M-566742 includes an Evidence Report at Bates 047630 that documents many different photographs taken of the crime scene. Those photographs do not appear in the basement file.

In some instances, the basement file specifically referenced a piece of evidence, a statement, or other information, but the corresponding evidence or statement was not documented in the file.

- References in handwritten notes or documents in file as to the involvement of other units or outside agencies, but not included in official reports, and involvement not described (e.g. FBI business card – Bates 006149; Letter (in Spanish) from Mexican Consulate – Bates 06139-41; Assistant U.S. Attorney business card – Bates 011669)

- No live lineup photos, where there are lineup reports. For example, at Bates 027279-027281, lineup documents indicate 3 separate lineups 3 separate witnesses for the investigation under G-705434, but there are no photographs in the basement file. In another case, G-570120, there are lineup photos at Bates 023000-07, but no lineup documents appear in the basement file.

- Reference to other units or outside agencies processing evidence, but no documentation in official reports, no results, and no chain of custody.

- Cryptic handwritten notes with no explanations as to source, relevance, or why included. Notes such as "50,000.00 checking acct." (e.g. Bates 0000091; 2 paragraphs 0000059) referring to individuals that may/may not have relevant information. Similarly, descriptions of vehicles (Bates 006096).

- Numerous Xeroxed handwritten spacer/filler pages with A/4-VC; A/1-VC; A/3-VC which would indicate other sources for relevant documents that may, or may not, have been included (Bates 0000044; 020156; 011326; 011688). Other examples include listing detective's names and unit numbers on Plain pages – or officers from other agencies - suggesting that information is coming from other, unidentified sources. (Bates 005586; 005630; 005701; 006051; 006106).

The basement files contain only a portion of the investigative materials that, based on my experience would typically be included in a comprehensive homicide investigation file.[93] And, as the examples above demonstrate, in many instances, documents in these basement files make explicit reference to documents, notes, or information that are not included in the basement files.

This is evidence that parallel files related to these investigations were maintained and contained additional investigative materials, regardless of what terminology is used to describe the files: If the City contends that the basement files are supposed to be Investigative Files as defined under the special orders, then, the files demonstrate that other, parallel files were maintained containing additional investigative material. If the City contends they are not Investigative Files as defined under the special orders, then the basement files are themselves examples showing that the parallel file system continued unabated after issuance of the special orders.

Finally, these repeated and consistent failures to properly document and include all investigative information within the basement files, demonstrates the CPD's top down pattern and practice of failing to seriously try to correct bad practices or overcome the harmful outcomes shown in prior relevant successful litigation against CPD.

---

[93] **Attachment E** provides background materials regarding what kinds of investigative documents should appear in a homicide investigation, including examples of checklists used during criminal investigations.

37

**B. The basement files from the 1999-2006 show that the special orders were not followed and that the problem has continued unabated into the 2000s**

According to the spreadsheet provided by Plaintiff's counsel, there were 340 files in the Area 1 Basement filing cabinets from the time period 1999-2006. Based on the spreadsheet, the same problems that I observed in the 1980s files were present in this second group of files.

1. Handwritten notes not on GPRs: 209/340 (approximately 61%) files contained handwritten notes, not on GPRs, and without any context about who wrote the note and when, which was prohibited by the special orders
2. To-from memos: 59/340 (approximately 17%) of the Investigative Files from this time period contain to-from memos, which were likewise prohibited by the special orders
3. Inventories: 334/340 (approximately 98%) of the Investigative Files contained incomplete or missing inventories.

Unsurprisingly, the street files problem did not solve itself. The City's failure to meaningfully address the problem in the 1980s allowed it to continue unabated into the 2000s. And as described above, in Section IV(D), pages 19-23, the continued use of parallel files and failures to follow CPD policy resulted in repeated failures to disclose important and relevant information to criminal defendants throughout the 2000s.

**C. The basement files confirm that there was no training, auditing, or oversight to ensure compliance with CPD's policies**

These consistent failures to follow the requirements of the special orders reveal that detectives were not properly trained on the special orders and that there was no proper supervision or oversight to ensure that these special orders were followed.[94]

Had there been any systematic audit or review of these files, these trends would be immediately apparent.[95] But a review of the 89 basement files from 1983-1989 also shows no signs of an audit or review. Though the CPD had forms designed to facilitate oversight and supervision, those forms were routinely missing or blank in the files I examined:

**Homicide File (Chain of Command) Review** (some Bates examples at 15511, 41049, 49240, 65188)**:** This form is designed to document that the chain of command responsible for overseeing the investigation and compliance with relevant departmental policies and procedures has actually done so. Most of the files that I reviewed either were missing the form, had only a single signature, or in the example had no signatures as all. That is, there is essentially no documentation of supervisory review in the basement files. This demonstrates a willful disregard among supervisors for ensuring that detectives were following the policies.

---

[94] See Section V(B) above, page 32
[95] See Section VI(A)-(B) above, pages 33-38

**Investigative Case File Control** (some Bates examples at 5756, 6214, 8990, 1539): Over 35 of these are missing from criminal defense files. This form is designed to maintain case integrity and chain of custody of investigative files. It is common during an investigation for a file to be routinely removed for a multitude of legitimate reasons (crime lab, consultation with other units, review by prosecutor, court appearances, etc.) The case file control form documents the file's movements so that it is clear whether and when information may have been copied or removed. In most of the cases that I reviewed they are either missing, have so few entries as to be unbelievable, or have not entries at all – an impossibility. This is another critically important form for discovery purposes because it should reveal all the individuals that may have contributed to the file, including from other divisions or units. The failure to systematically utilize them properly, and the concurrent institutional failure to enforce compliance, indicates a pattern and practice of indifference to the policies for maintaining Investigative Files.

**Detective Division Personnel Form**: This sheet is designed to quickly track and identify detective division employees, where they are assigned, working hours, and equipment. It does not necessarily account for officers from other units. Regardless, in the majority of the cases reviewed, this form is missing altogether.

**Case Assignment Slip** (some Bates examples at 5573, 7077, 16653, 20863): The Case Assignment Slip is designed to document initial detective(s) assigned and conclusion status. These are key individuals to seek out in discovery for depositions. Again, enough of these forms are missing to demonstrate a clear pattern and practice of disregard for the policy.

As discussed above, without ongoing monitoring through audits and other means to ensure that the new special orders were being followed and that prosecutors and criminal defendants were receiving complete disclosures, it was almost certain that the ingrained practice of using street files would continue.

My review of records in this case and others shows that the continuation of the practice, including the failure to follow the special orders, was so rampant that it would have been confirmed through even a cursory auditing of files. As discussed above, 100% of the Investigative Files I reviewed contained evidence that the special orders were not being followed, and 90% of defense attorney files were missing information from the Investigative File; even superficial audits of small samples of records would have revealed these problems.

The failure to audit or discipline for non-compliance with the policies signals that the old ways – the ways of "street files" that the CPD should have been trying to correct – are acceptable. It is not only that best practices require enforcement of special orders to give them teeth, but also, in my experience with Internal Affairs, given the circumstances here, strict adherence was necessary to create a new culture and practice so that detectives would not continue with the ingrained practice of keeping parallel files.

**VII.    The failure to turn over files in Nathson Fields' case was a direct result of these practices and inadequate policies**

Nathson Fields was convicted of the double murder of Jerome Smith and Talman Hickman in 1986.  Fields' conviction was thrown out after a court granted his petition for post-conviction relief, but he was re-tried in 2009 and acquitted.  He then filed a civil rights lawsuit against the City of Chicago in 2010, and during discovery for the civil lawsuit, a file "of over a hundred pages of police reports concerning the Smith/Hickman murders were located in a nondescript file cabinet at the Area 1 police station, along with files relating to other murders."[96]

The original arrest, trial, conviction, appeals, re-trial, and eventual exoneration of Nathson Fields spans a 30-year time period.  The volume of police reports, criminal and civil court records, and litigation filings pertaining to the matter form tens of thousands of pages. For my purposes, it is best summarized by the following:

*Nathson Fields and Earl Hawkins were convicted at a 1986 bench trial before Cook County Circuit Court Judge Thomas J. Maloney of the murders two years earlier of Jerome Smith and Talman Hickman, members of the Goon Squad, an offshoot of the Black Gangster Disciples street gang.[97] Fields and Hawkins requested a jury at the sentencing hearing.[98] At the sentencing hearing, prosecution witness Randy Langston recanted his trial testimony and admitted that he never saw the faces of the shooters.[99] The jury concluded that both men were eligible for the death penalty and Maloney sentenced them to death.[100]*

*A year later, a federal prosecutor negotiated a deal under which Hawkins would be removed from death row in exchange for testifying against other gang members in unrelated cases.[101] Fields remained on death row. Then, in 1993, Judge Maloney was convicted on federal charges of, among other things, accepting a $10,000 bribe from a corrupt lawyer named William Swano to acquit Hawkins of murdering Smith and Hickman.[102] When Maloney learned that he was under investigation by the FBI, he returned the money to Swano and proceeded to convict Hawkins, as well as his co-defendant Fields.[103]*

*In light of Maloney's conviction, a state court judge ordered a new trial for Fields in 1996.[104] While the retrial was pending, a second key witness in the case named Gerald Morris recanted. Along with Randy Langston, Morris had testified at the 1986 trial that he had seen Fields and Hawkins shoot Smith and Hickman outside a public housing project on April 28, 1984. But in their new affidavits Morris and Langston stated that police and prosecutors had*

---

[96] Fields v. City of Chicago, Memorandum Opinion and Order, [Document # 483] page 2
[97] Ibid. p. 2-3
[98] Ibid p. 3-4
[99] Ibid p. 4
[100] Ibid p. 4
[101] Ibid p. 4-5
[102] Ibid p. 3
[103] Ibid p. 4
[104] Ibid p. 5

*coerced them to falsely identify Fields and Hawkins. According to the affidavits, Morris and Langston had no idea who killed Smith and Hickman because the killers had worn masks.*

*Despite the recantations, rather than dropping the charges prosecutors made a deal with Hawkins under which he would testify against his former co-defendant. got Randy Langston and Gerald Morris[105] to recant their recantations. Fields remained in custody until 2003 when he was released on bond.[106]*

*On-going appeals by the prosecution delayed the Fields retrial another six years,[107] but when it finally occurred Judge Gaughan found Hawkins and the two other witnesses unworthy of belief. Fields was acquitted.[108]*

I have familiarized myself with the underlying facts in the *Fields* case, and have reviewed the various sets of police files produced to Mr. Fields at different times during his criminal case and during this civil litigation, including (a) the permanent retention file (CITY-NF-07531-07558), and the two new files disclosed to Mr. Fields in 2011 during this litigation: (b) the file produced by the City, which was located in a CPD warehouse (CITY-NF-07559-07652) (hereinafter the "warehouse file"), and (c) a file found in the filing cabinet in the basement of Area 1 (CITY-NF-001023-CITY-NF-001117) (hereinafter the "basement file").

The City has admitted that it "does not know where the [basement file] was maintained after June 1984 until it was located in Area 1 after the filing of this case in 2010."[109] In fact, Mr. Fields filed an earlier lawsuit in 1988 looking for additional files related to the Hickman/Smith murders, and the Chicago Police Department opened an internal investigation.[110] But the investigator assigned to the case wrote a memorandum stating that, although he received the "complete investigative package which was recorded under RD number F-151922 which concerns the Talman HICKMAN and Jerome SMITH Homicides . . . it was noted that the 'Street Files' were not included in the investigative file."[111] Ultimately, this CPD investigation was "unable to establish the existence of any 'Street Files' connected with the HICKMAN & SMITH homicides."[112]

Then, in response to a 1991 subpoena requesting all documents related to the Smith/Hickman murders, Fred Miller, Commander of Area 1 stated 'There are no documents on file at Detective Division One pertaining to the above subject."[113]

Nonetheless, over 100 pages were located in 2011 in the basement file found at Area 1.

---

[105] Morris later recanted yet a third time and provided an extensive affidavit outlining the years of coercion by police and prosecutors to obtain his cooperation in testifying against Fields.

[106] Fields v. City of Chicago, Memorandum Opinion and Order, [Document # 483] page 5

[107] Ibid.

[108] Ibid p. 6

[109] City's Third Amended Answer to Interrogatories 4 and 5, page 2.

[110] City's Third Amended Answer to Interrogatories 4 and 5, page 8-9.

[111] City's Third Amended Answer to Interrogatories 4 and 5, page 9.

[112] City's Third Amended Answer to Interrogatories 4 and 5, page 9.

[113] City's Third Amended Answer to Interrogatories 4 and 5, page 8.

Those files were disclosed to Mr. Fields for the first time in this litigation.[114] It is clear, then, that the undisclosed Fields basement file is caused by, and additional evidence of, the street files problem, that is, a parallel file unaccounted for by CPD and not disclosed despite repeated, specific requests.

The documents newly produced in the basement file, which were not contained in any of the earlier files, include handwritten notes, memos, and other documents identifying multiple alternate suspects and potential leads demonstrating that Nathson Fields was not involved in the Hickman and Smith homicides. In fact Nathson Fields name was never mentioned as a possible suspect in any of these documents. Below are some examples of documents in the basement file, which were withheld from Mr. Fields and which contained relevant investigative information:

- CITY-NF-000972-1027: Identification photographs of alternate suspects and witnesses, with handwritten notes identifying the pictures
- CITY-NF-001029: Undated handwritten notes regarding a check for a 9 mm handgun related to other homicides
- CITY-NF-001030: Undated handwritten note regarding the wife of Talman Hickman, Margot Hickman
- CITY-NF-001035; 001037: Undated handwritten notes regarding what appear to be descriptions of the perpetrators
- CITY-NF-001038: Request for identification photos of three possible suspects
- CITY-NF-001039-40: Undated handwritten note related to Lawrence and Marshall Edwards, possible alternate suspects, including a statement that a witness heard them talking about "killing Fuddy" because of a previous shooting. The notes also state that a witness saw them at about 9:00 in the morning talking, and Lawrence said he'd get a gun, and they would put on masks, and he wouldn't live through the night, and then he "won't be jumping on you anymore."
- CITY-NF-001041: Undated handwritten note regarding an anonymous call reporting that "Ronald" and "Donald," who were "Stones" were the driver and passenger of the vehicle used to commit the crime
- CITY-NF-001042: Undated handwritten note regarding comparisons of all 9mm guns that are suitable for comparison to identify the gun used during the shooting
- CITY-NF-001043: Undated handwritten note referencing "Delbert Edwards" and his IR number (which is used to locate an individual's criminal history) with no additional context. A criminal history report for Delbert Edwards is also included in the file at CITY-NF-001067. According to a Supplemental Report, Delbert Edwards was also shot at by members of the Goon Squad, and would have had a motive to retaliate, but officers claimed to have verified his alibi with his family members. (CITY-NF-001050-51) (See also, CITY-NF-001086-88 arrest report from the shooting at Edwards the night prior to the H/S homicides and the arrests of two Goon Squad members).
- CITY-NF-001052: Notes from an anonymous tip that "Black P Stones" gang was involved in the crime which also provided a description and information regarding a suspect. A handwritten note states "Steve, need report by 11Jun84"
- CITY-NF-001053- 001059: Report and rap sheet for an individual arrested with drugs

---

[114] Fields v. City of Chicago, Memorandum Opinion and Order, page 2.

within a few days of the homicide in the area of the homicide and in a similar car as the getaway car

- CITY-NF-001061: Undated handwritten note regarding Simeon Johnson, aka Cameo, Joseph Fritz, and John Rogers, with contact information and identifying features. The note does not provide any additional context for how these individual relate to the investigation, but an April 29, 1984 General Progress Report appears to describe interviews of Fritz and Rogers, in which Fritz reported that a man named Simeon owns a blue Cadillac, similar to the one used in the crime. Fritz also reported that he "heard that stones wearing masks killed some goons." (CITY-NF-001113). Officers apparently asked Rogers about his whereabouts the night of the murder, and Rogers reported visiting various family members. (CITY-NF-001113).
- CITY-NF-001062: Undated handwritten note regarding mother of Ricky Baldwin, a man who was killed by a member of the Goon Squad (Jimmie Greene) in a previous shooting. The note suggests a possible motive for Hickman and Smith murders: namely that another Baldwin was seeking reprisal for Ricky Baldwin's death. The note also references "Chico" and "Cameo" without further description. Several criminal histories and arrest reports related to various members of the Baldwin family appear throughout the file: CITY-NF-001065-66 (Paul Baldwin); CITY-NF-001071 (Shawn Baldwin); CITY-NF-001073 (Timothy Baldwin); Greg (aka Chico) cousin of Ricky Baldwin with description of Greg (CITY-NF-001108).
- CITY-NF-001069-70: April 29, 1984 General Progress Report describes an anonymous call implicating Rodell Banks in the shooting; and an arrest card for Rodell Banks is also included in the file.
- CITY-NF-001075: Undated to-from memo between detectives describing an interview with 14-year-old James Langston, who was playing ball across the street and said offenders were wearing skullcaps to conceal their identities. Identifies Ricky Baldwin as a passenger in the car used to carry out the killings. The memo also discusses an interview with Sandra Langston who described both offenders as having a light complexion.
- CITY-NF-001076: Undated handwritten note regarding Carlos Willis and John "Bay Rogers" without additional context or explanation of their connection to the investigation.
- CITY-NF-001077: Typed to-from memo between detectives describing anonymous call implicating Edward Stewart as the driver of the vehicle used in the murder, and stating that Stewart was with "Chico" and Darryl Baldwin. The memo also describes detectives' efforts to locate Edward Stewart and Chico, and to identify Chico's real name.
- CITY-NF-001085: Undated handwritten note referencing "Chico" and "Poncho" and possible addresses, with no additional context or description.
- CITY-NF-001100-06: photos of possible suspect Edward Stewart, arrest report showing an inquiry issued on day of H/S homicides, arrests reports and rap sheets.
- CITY-NF-001107-09: Efforts to identify individuals with the name of "Chico." Arrest cards list Damien Prince and Martel Ray (or "Mertel Rey"). A handwritten note states that "Chico" = Greg, cousin to a Baldwin
- CITY-NF-001112: May 1, handwritten General Progress Report referencing Clifford Marshall and Lawrence Edwards, as possible suspects and discussing the Edwards' brothers possible alibis. Also references Darryl Baldwin with "Chico" and efforts to verify their alibi.

43

- CITY-NF-001113: April 29, 1984.handwritten General Progress Report from Detective Minogue discussing what appears to be an interview of a possible witnesses or suspects Joseph Fritz and John Rogers.
- CITY-NF-001114: arrest report for individual who associated with Martel Ray.
- CITY-NF-001116: Undated handwritten note regarding an anonymous tip that said Edward Stewart was the driver of the vehicle used in the commission of the murders and that Darryl Baldwin and Chico were with him. Contact information for girlfriend of Baldwin- Olivia Wallace. (The basement file contains other information regarding Wallace, including her rap sheet CITY-NF-001109-001110)
- CITY-NF-001117: Undated printout related to a Mark Brown with no additional context. His name also appears on pages CITY-NF-001063-64.

As the list above reveals, the basement file demonstrates the same problems observed in the set of 89 basement files. There are numerous handwritten notes, not on GPRs, which are undated, unsigned, and provide no context. As these notes demonstrate, detectives often wrote names of alternate suspects or important witnesses on blank pages, with no additional context. Detectives also communicated important information about witnesses and alternate suspects in to-from memos between detectives. This information was not transcribed into the official reports. Finally, the basement file contains no inventory sheet.

The basement file is not the only file that was not turned over to Mr. Fields. As explained above, the City also produced for the first time a file containing investigative materials related to the Smith and Hickman murders that was located in the warehouse. Notably, this file did not include any of the handwritten notes or to-from memos between detectives. This is a prime example of the use of multiple, parallel files, in addition to the permanent retention file, which are stored separately, and make no reference to one another.

This file, too, suffers from the same systemic problems observed in the basement files as a whole: Although there is an inventory sheet in the warehouse file, it is incomplete. (CITY-NF-7560-61). It lists only 8 pages of GPRs and makes no reference of the 100 pages that were in the basement file and in any event was not contained in any of the defense attorneys' files or the permanent retention file. The warehouse file also includes relevant investigative information. There is a criminal history report for Henry Adams, who was potentially also involved in the murder (CITY-NF-07632), and a handwritten note documenting negative results from a request to compare the gun used in the Smith and Hickman homicide against a firearm used in another homicide. (CITY-NF-07613).

The documents in the basement and warehouse files are highly relevant to the investigation, implicate multiple alternate suspects, and suggest potential witnesses, vehicles used in the crime, and items of physical evidence. These documents should have been produced to Mr. Fields before his original criminal trial in 1986 (and at every other point at which he engaged with the criminal justice system after that). These documents would have been produced under generally accepted police practices related to creating, retaining, and disclosing investigative materials.

Finally, these files suggest that there may be yet more investigative materials that have

44

not been disclosed. For example, in the to-from memo relating to the interview with James Langston (CITY-NF 001075) the memo says "see our notes for more details." Those notes do not appear in the files that have been disclosed to Mr. Fields. Similarly, a report of an anonymous tip includes a statement "Steve, need report by 11Jun84," (CITY-NF-001052) but there is no report corresponding to that request in the files. The files that have now been located and disclosed provide no indication of how many additional files may exist, or where to locate them. This inability to determine where all relevant materials are stored is a direct result of the failure to follow standard police practice of creating a single, comprehensive file for an investigation.

## Concluding Statement

I have provided my opinions based upon my training, experience, and after a careful evaluation of the totality of circumstances in this matter. I utilized all of the facts and data known to me, and applied generally accepted police management principles and methods. I have concluded that CPD had deficient policies related to creating, maintaining, and disclosing investigative materials, and further that there was a widespread practices of keeping multiple, parallel files for single investigation. As a result of those deficient policies and widespread practice, criminal defendants were routinely denied substantive and relevant investigative materials related to their criminal cases. The files withheld from Mr. Fields during his criminal trial were withheld as a result of the same set of practices and policies (or lack thereof), and contained relevant and important investigative materials that should have been disclosed under standard police procedures.

In sum, it is my professional opinion to a reasonable degree of professional certainty in the law enforcement community, and based on longstanding and well-accepted law enforcement practices, that the defendants engaged in a pattern and practice of routinely failing to disclose material in criminal cases to defendants that should have been disclosed, These failures to disclose exculpatory and impeachable information was well outside the norm that law enforcement officials and institutions know needs to be disclosed.

I reserve the right to supplement or modify this report and my opinions expressed in the report to the extent that additional information is presented to me and to the extent permitted by rules.

Pursuant to 28 U.S.C Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Michael D. Brasfield

Michael D. Brasfield

45

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road                          Phone: 360-301-4465
Port Ludlow, WA 98365                         E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

# ATTACHMENT A

**Attachment A - Court Experience**

Report of Plaintiff's Expert – Michael D. Brasfield

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

**Compliance with Federal Rule of Procedure 26 (a) (2) (B)**
**Testimony at Trial or Deposition for Preceding Four Years**

I have either testified at trial or deposition as an expert witness equally for defendants and plaintiffs in Federal, State, and Local Courts. These appearances have been in both civil and criminal matters. I have appeared in Federal District Courts in Fort Lauderdale, Miami, Seattle, Tacoma, Spokane, and Chicago. I have also appeared in State Courts in Florida, Pennsylvania, Arizona, Alaska, and Washington. These civil litigation cases have involved all types of police procedures and practices and have included the use of force; police pursuits; deadly force; in-custody deaths, negligent selection, training, and retention; as well as class action and Federal "1983" civil rights cases.

Under Federal Rule of Civil Procedure 26, I have listed the following specific cases that I have provided testimony at deposition or trial as an expert witness in the last four years:

- In the United States District Court (Northern District of Illinois, Eastern Division) – James Kluppelberg v. City of Chicago – Cause No. 13-CV-3963 – For Plaintiff – 42 USC, 1983 – Wrongful Conviction.
- In the United States District Court (Eastern District of Washington) – Goehring v. City of Kennewick – Cause No. 4:14-CV-5104-RMP – For Defendant – Violation of Civil Rights.
- In the United States District Court (Northern District of Illinois, Eastern Division) – Deon Patrick v. City of Chicago – Cause No. 14C-3658 – For Plaintiff – 42 USC, 1983 – Wrongful Conviction.
- In the United States District Court (Northern District of Illinois, Eastern Division) – Percy Coleman v. City of Chicago – Cause No. 12C-10061 – For Plaintiff – 42 USC, 1983 – Wrongful Death.
- In the Superior Court for the State of Alaska (Anchorage) – Boshears v. State of Alaska – Cause No. 3AN-13-07970CI – For Plaintiff – Negligence of Duty.
- In the Court of Common Pleas of Allegheny County, Pennsylvania – Commonwealth of Pennsylvania v. Leon Ford – Cause No. CC201303273 – For Defendant - Multiple criminal charges.
- In the United States District Court (Western District of Washington) – Theoharis v. Rongen – Cause No. 2:13-cv-01345-RAJ – For Plaintiff – 42 USC, 1983 – Excessive and Unreasonable Force and Unreasonable Search and Seizure.
- In the United States District Court (Eastern District of Washington) - Thoma v. City of Spokane – Cause No. CV-12-156-EFS – For Defendant – 42 U.S.C. – 1983.
- In the United States District Court (Eastern District of Washington) – Duncan v. Liberty Lake – Cause No. 2:2012cv00219 – For Defendant – Violation of Civil Rights.

1

- In the United States District Court (Northern District of Illinois, Eastern Division) – April Ortiz v. City of Chicago – Cause No. 04-CV-7423 – For Plaintiff – 42 USC, 1983 - Denial of Medical Care.
- In the Superior Court of the State of Washington (Spokane County) – Glidden v. City of Spokane Valley, et al. – Cause No. 11-2-04437-2 – For Defendant – Police Shooting - Negligent training, supervision, retention.
- In the United States District Court (Eastern District of Washington) – Creach v. Spokane County, et al. – Cause No. 2:2011cv00432 – For Defendant – 42:1983 Civil Rights Act. - Fatal shooting by police officer.

In addition, I have provided my expert opinion, reviewed, consulted, or been retained in civil litigation related matters for plaintiffs and defense attorneys or governmental entities over 50 times in the last 10 years in Riverside County (CA), Trinity County (CA), Prescott County (AZ), Chicago (IL), Garland (TX), Bradley County (TN), Hazard (KY), Clallam County (WA), Franklin County (WA), Reno (NV), Unalakleet (AK), Whatcom County (WA), Albany (OR), Jackson (MS), Seattle (WA), Columbia (SC), and Sweetwater County (WY).

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road
Port Ludlow, WA 98365

Phone: 360-301-4465
E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

# ATTACHMENT B

**Attachment B - Report of Material Reviewed**

Report of Plaintiff's Expert – Michael D. Brasfield

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

 I have been provided and reviewed the following documents and materials concerning this case:

*General Case Material*

- 437. Plaintiff's Local Rule 56.1 Statement of Facts.pdf
- 483. Memorandum Opinion and Order on Summary Judgment.pdf
- 812. Memorandum Opinion and Order granting new tiral.pdf
- City's Third Amended Answer to Interrogatories 4 and 5.pdf
- CITY-NF-000972-001117 Fields Street File produced 2011.pdf
- City-NF-07531-07558 - Fields permanent retention file.pdf
- City-NF-07559-07652 - Fields Area File.pdf
- Letter from City re Production of permanent retention file and Area File.pdf
- 2016.01.26 Document Production.pdf
- 2016.01.29 Plaintiff's Supplemental Monell Disclosures.pdf
- AUSA discovery letter - Fields 01289-01296.pdf
- Page from G483470 Michael McMillan [Crim.Def Files – Fields 044680-045057].pdf
- Chicago Police Department Special Orders
    - o Chicago Police Department Teletype
    - o Detective Division Notice 82-2
    - o Special Order 83-1
    - o Special Order 83-2
    - o Special Order 86-3
    - o Standard Operating Procedure 1988
- *Jones v. City of Chicago*, 856 F.2d 985, 988 (7th Circuit 1988)
- *Palmer v. City of Chicago,* Case No. 82C 2349
- James Hickey deposition, Rivera v. Guevara (5/6/14)
- James Hickey deposition, Rivera v. Guevara (6/10/14)
- James Hickey deposition, Kluppelberg – Part 1 (7/29/2014)
- James Hickey deposition, Kluppelberg – Part 2 (7/31/2014)
- James Hickey deposition, Kluppelberg (6/9/2015)
- Kathleen Loughran deposition (6/6/2012)
- Fields Spreadsheet.xlsx (spreadsheet)

*Basement Files (1983-1989)*

- E-010765 (SSN only).pdf (95 pages) – Cecil Robinson
- E-399564 (SSN only).pdf (207 pages) - Serafin Flores
- F-048933 (SSN only).pdf (129 pages) - Christino Garcia
- F-380662 (SSN only).pdf (123 pages) - Lindsey Cannon
- G-011889 (SSN only).pdf (75 pages) - Earl Stademeyer
- G-014815 (SSN only).pdf (128 pages) - Guy Johns
- G-108642 (SSN only).pdf (122 pages) - Roscoe Evans
- G-148403 (SSN only).pdf (187 pages) - Derrick Johnson
- G-159857 (SSN only).pdf (351 pages) - Jeffrey Boyd
- G-165272.pdf (156 pages) - William Goodin
- G-215280 (ACB 090389-090455) received 9.21.15.pdf (67 pages) - Maurice Green
    - G-215280 (SSN only).pdf (132 pages) - Maurice Green
    - G-215280A (SSN only).pdf (71 pages) - Maurice Green
- G-248336 (SSN only).pdf (167 pages) - Ruben Avilez
- G-257089 (SSN only).pdf (50 pages) - Freddy Brown
- G-267826 (SSN only).pdf (115 pages) - James Walker
- G-284291 (SSN only).pdf (90 pages) - Lucille Pye
- G-321886 (SSN only).pdf (159 pages) - James Crockett
- G-446754 (SSN only).pdf (48 pages) - Edward Terrett
- G-456900 (SSN only).pdf (51 pages) - Larry Buchanan
- G-468726 (SSN only).pdf (148 pages) - Albert Spraggins
- J-381525 (redacted).pdf (85 pages) - Albert Buckles
- J-418229 (redacted).pdf (204 pages) - Mervyn Wright
- M-566742 (redacted).pdf (52 pages) - Fredy Roberson
- M-568-343 (redacted).pdf (85 pages) - Steve Jones
- M-569-727 (redacted).pdf (38 pages) - John Avery
- M-580-592(redacted).pdf (147 pages) - David Duarte
- M-587998(redacted).pdf (96 pages) - Tony Allen
- M-590700 (SSN only).pdf (95 pages) - Ricky Icenberg
- E-026792.pdf (142 pages)
- E-221919 (SSN only).pdf (38 pages)
- E-277036 (SSN only).pdf  (122 pages)
- E-348611(SSN only).pdf (41 pages)
- E-395970 (SSN only).pdf (166 pages)
- E-442815 (SSN only).pdf (153 pages)
- E-475100 (SSN only).pdf  (105 pages)
- F-172852 (SSN only).pdf (46 pages)
- F-177096 (SSN only).pdf (81 pages)
- F-229020 (ACB 090456-090615).pdf (160 pages)
- F-229039 (SSN only).pdf (26 pages)

2

- F-277122 (SSN only).pdf (193 pages)
- F-299912 (SSN only)-.pdf (100 pages)
- F-308281 (SSN only).pdf (68 pages)
- F-336114 (SSN only).pdf (156 pages)
- F-430186 (SSN only).pdf (50 pages)
- F-445484 (SSN only).pdf (93 pages)
- F-492465 (SSN only).pdf (225 pages)
- G-011265 (SSN only).pdf (82 pages)
- G-027619 (SSN only).pdf (60 pages)
- G-032161 (SSN only).pdf (35 pages)
- G-049257 (SSN only).pdf (22 pages)
- G-051225 (SSN only).pdf (70 pages)
- G-056199 (SSN only).pdf (31 pages)
- G-087375 (SSN only).pdf (428 pages)
- G-106586 (SSN only).pdf (99 pages)
- G-156178 (SSN only).pdf (72 pages)
- G-176242 (SSN only).pdf (82 pages)
- G-192900 (SSN Only).pdf (75 pages)
- G-230261 (SSN only).pdf (91 pages)
- G-235180 (SSN only).pdf (42 pages)
- G-245282 (SSN only).pdf (90 pages)
- G-265171 (SSN only).pdf (58 pages)
- G-267631 (SSN only).pdf (49 pages)
- G-267820 (SSN only).pdf (31 pages)
- G-278643 (SSN only).pdf (115 pages)
- G-283147 (SSN only).pdf (72 pages)
- G-289217 (SSN only).pdf (40 pages)
- G-303402 (SSN only).pdf (75 pages)
- G-322101 (SSN Only).pdf (74 pages)
- G-331216 (SSN only)-.pdf (93 pages)
- G-354748 (SSN only).pdf (78 pages)
- G-356930 (SSN only).pdf (88 pages)
- G-385135 (SSN only).pdf (76 pages)
- G-401782 (SSN only).pdf (59 pages)
- G-405711 (SSN only).pdf (4 pages)
- G-482955 (SSN only).pdf (296 pages)
- G-483470 (SSN Only).pdf (109 pages)
- G-501974 (SSN only).pdf (38 pages)

3

- H-024109 (SSN only).pdf (126 pages)
- H-024109A (SSN only).pdf (163 pages)
- H-349049 (SSN only).pdf (63 pages)
- H-435581 (SSN only).pdf (35 pages)
- H-465-163 (SSN only).pdf (324 pages)
- J-486857 (redacted).pdf (53 pages)
- J-510242 (redacted).pdf (147 pages)
- K-300724 (redacted).pdf (84 pages)
- K-562024 (redacted).pdf (189 pages)
- M-139566 (redacted).pdf (68 pages)
- M-510-728 (redacted).pdf (49 pages)
- M-534-290 (redacted).pdf (136 pages)
- M-539-997 (redacted).pdf (64 pages)
- M-544-975 (redacted).pdf (36 pages)

### *Criminal Defense Files (1983 – 1989)*

- E010765 Cecil Robinson [Criminal Defense Files- Fields 037006-037317].pdf (312 pages)
- E399564 Serafin Flores [Criminal Defense Files - Fields 037318-038152].pdf (835 pages)
- F048933 Christino Garcia [Criminal Defense Files - Fields 038153-038760].pdf (608 pages)
- F380662 Lindsey Cannon [Criminal Defense Files - Fields 038761-040854].pdf (2094 pages)
- G011889 Earl Stademeyer [Criminal Defense Files - Fields 040855-041128].pdf (274 pages)
- G014815 Guy Johns [Criminal Defense Files- Fields 047420-048462].pdf (1043 pages)
- G108642 Roscoe Evans [Criminal Defense Files - Fields 041244-041624].pdf (381 pages)
- G148403 Derrick Johnson [Criminal Defense Files - Fields 041625-042235].pdf (611 pages)
- G159857 Jeffrey Boyd [Criminal Defense Files-Fields 017841-025177].pdf (7337 pages)
- G165272 William Goodin [Criminal Defense Files – Fields 042341-042438].pdf (98 pages)
- G215280 Maurice Green [Criminal Defense Files - Fields 042439-042974].pdf (536 pages)
- G248336 Ruben Avilez [Criminal Defense Files - Fields 042975-043172].pdf (198 pages)
- G257089 Freddy Brown [Crim. Def Files - Fields 043173-043273].pdf (101 pages)
- G267826 James Walker [Criminal Defense Files - Fields 042236-042340].pdf (105 pages)

4

- G284291 Lucille Pye [Criminal Defense Files - Fields 043274-043381].pdf (108 pages)
- G321886 James Crockett [Criminal Defense Files - Fields 043388-043654].pdf (267 pages)
- G446754 Edward Terrett [Criminal Defense Files - Fields 043655-043867].pdf (213 pages)
- G456900 Larry Buchanan [Criminal Defense Files - Fields 043868-044026].pdf (159 pages)
- G468726 Albert Spraggins [Criminal Defense Files - Fields 044027-044386].pdf (360 pages)
    - G468726 Maurice Spraggins [Criminal Defense Files - Fields 044387-044679].pdf (293
    - pages)
- J381525 Albert Buckles [Criminal Defense Files - Fields 045066-045473].pdf (408 pages)
- J418229 Mervyn Wright [Criminal Defense Files - Fields 048463-049562].pdf (1100 pages)
- M566742 Fredy Roberson [Criminal Defense Files - Fields 045589-045823].pdf (235 pages)
- M568343 Steve Jones [Criminal Defense Files - Fields 049563-050435].pdf (873 pages)
- M569727 John Avery [Criminal Defense Files - Fields 045824-046184].pdf (361 pages)
- M580592 David Duarte [Criminal Defense Files - Fields 050436-051863].pdf (1428 pages)
- M587998 Tony Allen [Criminal Defense Files - Fields 046185-047419].pdf (1235 pages)
- M590700 Ricky Icenberg [Criminal Defense Files - Fields 051864-052616].pdf (753 pages)
- 

*Permanent Retention Files (1983-1989)*

- E010765 CITY-permanent retention file-00472.pdf (41 pages) - Cecil Robinson
- E399564 CITY-permanent retention file-00720.pdf (69 pages) - Serafin Flores
- F048933 CITY-permanent retention file-00856.pdf (30 pages) - Christino Garcia
- F380662 CITY-permanent retention file-01040.pdf (40 pages) - Lindsey Cannon
- G011889 CITY-permanent retention file-01212.pdf (27 pages) - Earl Stademeyer
- G014815 CITY-permanent retention file-01239.pdf (51 pages) - Guy Johns
- G108642 CITY-permanent retention file-01412.pdf (39 pages) - Roscoe Evans
- G148403 CITY-permanent retention file-01452.pdf (40 pages) - Derrick Johnson
- G159857 CITY-permanent retention file-01514.pdf (89 pages) - Jeffrey Boyd
- G159857.pdf (62 pages) / CITY-NF-001682 - Jeffrey Boyd
- G215280 CITY-permanent retention file-01706.pdf (41 pages) - Maurice Green
- G248336 and G248696 CITY-permanent retention file-01846.pdf (48 pages) - Ruben Avilez
- G257089 CITY-permanent retention file-01895.pdf (15 pages) - Freddy Brown
- G267826 CITY-permanent retention file-01962.pdf (25 pages) - James Walker
- G284291 CITY-permanent retention file-02017.pdf (21 pages) - Lucille Pye

5

- G321886 CITY-permanent retention file-02079.pdf (50 pages) - James Crockett
- G446754 CITY-permanent retention file-02317.pdf (17 pages) - Edward Terrett
- G456900 CITY-permanent retention file-02335.pdf (11 pages) - Larry Buchanan
- G468726 CITY-permanent retention file-02346.pdf (40 pages) - Albert Spraggins
  - G468726 CITY-permanent retention file-02386.pdf (2 pages) - Albert Spraggins
- J381525 CITY-permanent retention file-02914.pdf (27 pages) - Albert Buckles
- J418229 CITY-permanent retention file-02941.pdf (34 pages) - Mervyn Wright
- M566742 CITY-permanent retention file-03327.pdf (20 pages) - Fredy Roberson
- M568343 CITY-permanent retention file-03347.pdf (45 pages) - Steve Jones
- M569727 CITY-permanent retention file-03392.pdf (18 pages) - John Avery
- M580592 CITY-permanent retention file-03410.pdf (57 pages) - David Duarte
- M587998 CITY-permanent retention file-04100.pdf (50 pages) - Tony Allen
- M590700 CITY-permanent retention file-03467.pdf (48 pages) - Ricky Icenberg

## Basement Files (1999-2006)

- D-192218 (SSN only).pdf (205 pages) - Steven Spears
- D-579065 (SSN only).pdf (121 pages) -  Jimmy Velasquez
- G-032399 (SSN only).pdf (213 pages) - Diante Wiley
- G-259321 (SSN only).pdf (86 pages) - Kevin Jackson
- G-266841 (SSN only).pdf (24 pages) - Timothy Malone
  - G-266841A (SSN only) 2.pdf (125 pages) - Timothy Malone
- G-268444 (SSN only).pdf (254 pages) - Isaiah Brady
- G-326467 (SSN only).pdf (309 pages) - George Frison
- G-406405 (SSN only).pdf (290 pages) - Santana McCree
- G-570120 (SSN only).pdf (210 pages) - Crisino Bravo
- G-705434 (SSN only).pdf (236 pages) - Norman McIntosh
- HH-175723 (abc).pdf (169 pages) - Maurice Brown
- HH-358668 (SSN only).pdf (288 pages) - Christopher Peoples
- HH-749335 (abc).pdf (180 pages) - Devon Terrell
- HJ-102484 (SSN only).pdf (273 pages) - Anthony Houston
- HJ-366143 (abc).pdf (227 pages) - Leviante Adams
- HJ-492443.pdf (def).pdf (453 pages) - Octavia Anima
- HK-211174 (SSN only) .pdf (176 pages) - Lakesha Collins
- HK-406407 (SSN only).pdf (207 pages) - Delvie Turpin
- HK-416661 (SSN only).pdf (195 pages) - Donell Johnson
- HK-449083 (SSN only).pdf (272 pages) - Jamell Murphy
- HK-470751 (abc).pdf (235 pages) - Verna Colbert
- HK-593970 (abc).pdf (277 pages) - Tharine Partee
- HK-639684 (abc).pdf (350 pages) - Devon Terrell

*Criminal Defense Attorney Files (1999 - 2006)*

- D192218 Steven Spears [Criminal Defense Files - Fields 000001-0000421] Redacted.pdf (421 pages)
- D579065 Jimmy Velasquez [Criminal Defense Files - Fields 000422-001231] Redacted.pdf (810 pages)
- G032399 Diante Wiley [Criminal Defense Files - Fields 001232-002099] Redacted.pdf (868 pages)
- G259321 Kevin Jackson [Criminal Defense Files - Fields 002100-004383] Redacted.pdf (2284 pages)
- G266841 Timothy Malone [Criminal Defense Files - Fields 004384-005802].pdf (1419 pages)
- G268444 Isaiah Brady [Criminal Defense Files - Fields 025178-027518].pdf (2341 pages)
- G326467 George Frison [Criminal Defense Files - Fields 005803-006593] Redacted.pdf (791 pages)
- G406405 Santana McCree [Criminal Defense Files - Fields 006594-007411] Redacted.pdf (818 pages)
- G570120 Crisino Bravo [Criminal Defense Files - Fields 027519-027637].pdf (119 pages)
- G705434 Norman McIntosh [Criminal Defense Files - Fields 007412-008058] Redacted.pdf (647 pages)
- HH175723 Maurice Brown [Criminal Defense Files - Fields 008059-008565] Redacted.pdf (507 pages)
- HH358668 Christopher Peoples [Criminal Defense Files - Fields 008566-008893] Redacted.pdf (328 pages)
- HH749335 Devon Terrell [Criminal Defense Files - Fields 008894-009730] Redacted.pdf (837 pages)
- HJ102484 Anthony Houston [Criminal Defense Files - Fields 027638-029307].pdf (1670 pages)
- HJ366143 Leviante Adams [Criminal Defense Files – Fields 009731-010034] Redacted.pdf (304 pages)
- HJ492443 Octavia Anima [Criminal Defense Files - Fields 010035-013762] Redacted.pdf (3728 pages)
- HK211174 Lakesha Collins [Criminal Defense Files - Fields 013763-014757] Redacted.pdf (995 pages)
- HK406407 Delvie Turpin [Criminal Defense Files - Fields 029337-029344].pdf (8 pages)
- HK416661 Donell Johnson [Criminal Defense Files - Fields 014758-015021] Redacted.pdf (264 pages)
- HK449083 Jamell Murphy [Criminal Defense Files - Fields 052617-057745].pdf (5129 pages)
- HK470751 Verna Colbert [Criminal Defense Files - Fields 029345-036948].pdf (7604 pages)
- HK593970 Tharine Partee [Criminal Defense Files - Fields 015022-015371] Redacted.pdf (350 pages)
- HK639684 Devon Terrell [Criminal Defense Files - Fields 015372-017742] Redacted.pdf (2371 pages)

7

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road                              Phone: 360-301-4465
Port Ludlow, WA 98365                       E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

# ATTACHMENT C

**Attachment C - Compensation**

Report of Plaintiff's Expert – Michael D. Brasfield

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

My compensation for work related to this case is $300 per hour, with a four-hour minimum. Deposition and trial testimony is billed at a flat rate of $1200 for up to four hours. After four hours, the hourly rate of $300 is charged. Time spent traveling and waiting to testify is considered billable time. Reasonable expenses may be charged with prior approval.

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road                           Phone: 360-301-4465
Port Ludlow, WA 98365                          E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

# ATTACHMENT D

**Attachment D - Resume**

Report of Plaintiff's Expert – Michael D. Brasfield

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

**Education:**
Bachelor of Arts, Police Administration - University of Washington, Seattle, WA
Senior Management Institute for Police - Police Executive Research Forum, Washington, D.C.

**Professional Experience:**

**2003-2009      Elected Sheriff of Jefferson County, Washington**

After retiring for a second time, and returning to the small rural county that I had chosen as my permanent retirement home, I ran for public office.  This 1,815 square mile, predominantly rural, county has a full time resident population of only 26,000.  The Jefferson County Sheriff's Office, established in 1853, is one of the oldest law enforcement organizations in the state of Washington.  The Sheriff's Office budget for fiscal year 2008 was $4.5 million.  The Office has 50 employees and a large network of volunteers and reserve deputies.  I was re-elected to a 2nd term which began on January 1, 2007 by an 80% majority.  I retired from this office in March 2009.

**2001 – 2003    Consultant and Program Director - South Downtown Foundation**

Responsibility for administering several million dollars for improving public safety in the International District, SoDo, and Pioneer Square neighborhoods of Seattle.  Coordinated efforts with the City of Seattle, the Seattle Police Department and various interest and civic groups in the area.

**1995-2001      Police Chief of Fort Lauderdale, Florida**

The 33 square mile city has a full time resident population of 165,000.  An estimated additional 60,000 "snow bird" residents return to second homes in the city during the 6-month winter season.  Fort Lauderdale serves as the seat of government for a county of 1.5 million and is in the heart of a diverse tri-county (Dade, Broward, and Palm Beach) population of 4 million.  As one of the premier tourist destinations in South Florida, over 12 million passengers come through the airport each year.  The ocean port handles the second largest number of cruise ship sailings in the world.  Fort Lauderdale serves as the governmental and business hub of the County.

The City employed a workforce of 2,600 employees and operated with a budget of over $334 million.  IAFF, FOP, and AFSCME Unions represent the fire, police, and general employees, respectively.  The Fort Lauderdale Police Department had a budget of $60

1

million and consisted of 500 sworn positions and 300 civilian positions. In 2000 the department received 600,000 calls for service, dispatched over 200,000 of those calls, made over 20,000 arrests, and issued over 65,000 traffic citations. The Department is now nationally recognized as an innovative leader in the field of community policing and was one of only a handful of cities nationwide to be selected as a Community Policing Demonstration Site by the Department of Justice. Oversaw and operated the only municipal jail in the state of Florida.

A small sampling of initiatives undertaken over the 6 years includes:
- First large municipal police agency in Florida to receive accreditation
- Automobile anti-theft tactics that have reduced auto thefts by nearly 35% in one year
- Aggressive property crime reduction efforts in the area of strengthened pawn shop record sharing and accountability
- Partnerships with State Probation and Parole staff in "Ride Along Programs" with our patrol officers to remove violators from the community
- Establishment of "Citizens on Patrol" in specially marked vehicles to enhance public safety
- Aggressive enforcement of traffic and "quality of life" ordinances to help neighborhoods
- Establishment of a Nuisance Abatement Board to address drug and prostitution activity
- Significant reduction in alarm false dispatches to allow increased proactive patrol
- Innovative anti-prostitution and anti-gang programs
- Federal "Weed & Seed" designation, which has allowed us to partner with a wide range of community and governmental entities
- Thirteen sessions of the Citizen Police Academy - a 3 month, 35-hour program
- Summer COPJAM activities for at risk youth
- Truancy and curfew programs which have dramatically reduced the rate of property crimes

In 1997 undertook a city financed $10 million technology enhancement initiative for the Department. Half of it was for a new state of the art Computer Aided Dispatch (CAD) and Record Management System (RMS), and the other half for network servers, individual personal computers, Geographical Information System (GIS), Automated Fingerprint Identification System (AFIS), internet access, bar coding for property control and evidence, and the largest law enforcement deployment of handheld, pen based, Motorola Forte' computers for patrol officers.

During my 6-year tenure, we successfully competed and received nearly $8 million in Federal and State grants. More than forty percent of the grant funds have gone into non-traditional community and social service support programs, in lieu of police personnel and hardware.

During my tenure there was a dramatic improvement in the relationship between our unions and management. We successfully negotiated two (3 year) contracts without

2

incident or rancor. Although there has been an increase in professional expectations of accountability for our employees, disciplinary appeals to arbitration had been all but eliminated.

### 1990-1995     Assistant Chief - Seattle Police Department

An appointive, exempt position reporting directly to the Chief of Police - acted as the Executive Assistant Chief of the Department and commanded the Support Bureau. The Police Department employed over 1,875 personnel and had an annual budget of $120 million.

Responsible for and oversaw the activity of nine uniquely different divisions including: Training; Internal Investigations; Crime Prevention: Intelligence; Communications; Personnel; Records & Evidence; Data Processing; and Fiscal, Property, & Fleet Management. As the Executive Assistant Chief, was responsible for the day-to-day operation of the agency including authority for hiring, discipline, and administrative decisions. In addition, acted as primary management labor relations and contract negotiator with 12 labor unions. This bureau employed approximately 100 sworn and 450 civilians. Served as the Seattle Police Department's jail liaison executive, as well as jail contract negotiator. Routinely served as acting Chief of Police.

### 1986-1990     Major

An appointive, exempt position - command of SPD Inspectional Services Division, reported directly to the Chief of Police. Coordinated and implemented strategic planning for the entire Department and conducted periodic performance inspections of Departmental units. Oversaw the preparation of the Department's budget, as well as the formulation of departmental rules, policies, and procedures. Acted as liaison with elected officials and community groups.

### 1984-1985     Captain

Command of SPD North Precinct. Responsible for Patrol operations in an area of the city that encompassed a population of 200,000 people and a uniformed force of 130 officers. The precinct contained over a dozen unique communities including the University of Washington. Routinely served as acting Patrol Major overseeing all four patrol precincts - 550 sworn personnel.

### 1982-1983     Captain

Command of SPD Internal Investigations Section, reported directly to the Chief of Police. Responsible for overseeing the investigation of alleged misconduct of nearly 2,000 sworn and civilian members of the Department.

### 1980-1981     Captain

3

Command of SPD West Precinct. Responsible for Patrol Operations in the downtown core of the city. Major league sports facilities, waterfront maritime industries, transportation, and financial, retail and business headquarters serving a daytime population of 300,000 -command of 150 sworn officers.

### 1978-1979    Lieutenant

Commander of Basic Recruit Training. Responsible for the operation and administration of the recruit training for SPD as well as the contract recruit training with the Washington State Criminal Justice Training Commission for over 100 law enforcement agencies state-wide. Average recruit population on campus of 140 in 4 concurrent classes, as well as a multi-agency training staff. Also served for a brief period as a downtown watch commander in the downtown business area.

### 1975 – 1978   Sergeant

Served as supervisor in the following: Patrol - uniformed patrol operations; Internal Investigations Section - investigation of citizen, departmental, and criminal allegations of police misconduct; Special Patrol Unit - plain clothes tactical response to priority crime problems, deployment at unusual occurrences, dignitary protection.

### 1972 – 1975   Detective

Served in the following: Accident Investigation Section - plain clothes follow-up investigation of hit-run, serious injury and fatality motor vehicle accidents; Burglary Section - investigated serious crimes directed against property; Vice Section - investigated organized crime, prostitution, pornography, liquor, and gambling activities, and engaged in extended undercover assignments.

### 1968-1971    Patrol Officer

Started with Mercer Island (WA) P.D. in 1968, and then began career with Seattle P.D. in 1969.

**Training (small sampling):**

- Police Liability and the Management of Police Discipline - Americans for Effective Law Enforcement
- Police Technology and Efficiency - International Association of Chiefs of Police
- Total Quality Management - The Institute for Quality Service
- Assessment Center Operations and Management - Federal Bureau of Investigation
- Executive Development - Federal Bureau of Investigation
- Incident Command System – National Incident Management System – Through Level 4
- Gambling Enforcement and Supervision - Washington State Gambling Commission

- Labor Relations and Negotiations - Federal Bureau of Investigation and Washington Association of Cities
- Hazardous Materials Incident Management - National Highway Transportation Safety Board
- Dignitary Protection Management and Supervision - U.S. Secret Service
- Supervision of Auto Theft Investigation - National Auto Theft Bureau
- Police Traffic Supervision - Northwestern Traffic Institute
- Municipal Budget Management - Office of Management and Budget
- Training for Trainers - Washington State Criminal Justice Training Commission
- Managing Computer Operations - Department of Administrative Services
- Investment in Excellence - The Pacific Institute
- Organized and White Collar Crime - The University of Washington
- Management of Computer Fraud Investigations – USWEST
- National Center for Missing and Exploited Children - Alexandria, VA

**Law Enforcement Committees & Membership:**

**National:**
- International Association of Chiefs of Police – Honorary Life Member
- Police Executive Research Forum – Subscribing Member
- National Sheriffs' Association – Life Member
- American Bar Association – Associate Member
- American Correctional Association – Member
- American Jail Association – Member
- Crisis Intervention Team International – Member

**State:**
- Appointed by the Governor and served as the only law enforcement member of the Washington State Sentencing Guidelines Commission (August 2003 – 2008)
- Appointed to, and served as the chair of the Washington State Board on Law Enforcement Training Standards and Education (March 2003 – 2008)
- Homicide Investigation Tracking System (HITS) Advisory Board (May 2003 – 2006)
- Executive Board member of the Washington State Sheriffs' Association (May 2006 – 2008)
- Washington Association of Sheriffs and Police Chiefs – Honorary Life Member

**Local:**
- Past chair of Jefferson County Domestic Violence/Sexual Assault Program
- Member of the Peninsula College Criminal Education Program Board
- Executive Board of Olympic Peninsula Narcotics Enforcement Task Force
- Executive Board of JeffCom 911 Communications System
- Jefferson County Law & Justice Council
- Olympic Law Enforcement Executives Association

**Achievements (sampling):**

- Past Co-Chair of Private Sector Liaison Committee - International Association of Chiefs of Police
- Coordinator for successful federal grant application on Community Policing Program (N.I.J.)
- National Institute of Justice Symposium on Closed Circuit Television for deterrence and investigation of crime - Washington, DC
- National Institute of Justice Symposium on Metro Area Drug Strategies - Washington, DC
- Coordinator for federal grant application on Narcotics Strategies in Public Housing
- Coordinator for federal grant application on Targeting Young Adult Gang Leaders
- Federal Bureau of Investigation - National Law Enforcement Budget Advisory Group - Appointed by the Director of the F.B.I.
- Broward County Chiefs' Association - President and Steering & Training Committees
- Southeast Florida Drug Task Force - Board of Directors
- Metropolitan Broward County Organized Crime Intelligence Unit - Board of Directors
- Florida Police Chiefs' Association - Ethics Committee
- Visiting management assessor for cities of New Orleans (LA), Columbus (OH), Portland, (OR), San Francisco (CA), Bremerton (WA)
- Contract consultant (KOBA Associates) for peer review of NIJ grant work on the establishment of Computer Crimes Units
- Contract consultant (Federal Housing & Urban Development Grant) to visit and analyze 6 major U.S. cities (Boston, Baltimore, Memphis, Oxnard, Cleveland & Seattle) police agencies and community policing in public housing
- Subject matter and best practices expert on law enforcement personnel selection, screening, and back grounding – USIS Investigative Solutions Conference
- Developed statewide law enforcement employment screening and back grounding model for the Washington Association of Sheriffs and Police Chiefs
- Oversight responsibility for acquisition of Computer Aided Dispatch and Mobile Digital Terminal System
- Oversight responsibility for acquisition of Comprehensive Shared Records Management System
- Oversight responsibility for acquisition of Jail Booking Video Imaging System
- Oversight responsibility for management of computerized Patrol Deployment Model
- Responsibility for design and construction oversight, acceptance and start-up of new police precinct facility
- Evaluation of Detective Decentralization Program and Detective Case Management System
- Acquisition of Geo-based Automated Mapping System

**Selected Publications:**

- Contributor - National Institute of Justice - Off-Duty Police Employment Practices
- Citation - Federal Bureau of Investigation article on joint Police-Community Partnerships
- Author of national and state articles - alarm reduction issues and strategies
- Author of several historical articles - homicides of police officers

**Prior Law Enforcement & Community Service:**

- Major City Chiefs - Human Resources sub-committee
- Washington State Chiefs & Sheriffs - Information Technology sub-committee
- Mayor's Task Force on Street People and the Homeless
- Selection and oversight committee for Police Department Management Study consultant contract
- Selection and oversight committee for Police-Citizen Complaint Process consultant contract
- Executive Member - South Florida Regional Law, Safety, and Justice Committee
- Automated Fingerprint Identification System / Jails - On-site benchmark testing & nationwide visitation team
- Health Service and Police Community Based Alcohol Triage Program
- King County Executive - Jail Advisory Committee (JCWG)
- City of Seattle - Deferred Compensation Plan provider selection and oversight
- Evaluation and Selection Committee - RFP responses for design of new municipal campus
- Seattle Police Department - reorganization committee that resulted in  Departmental restructuring
- Explorer Scout Law Enforcement Program
- United Way of Broward County - Board of Directors
- Broward County Commission on Substance Abuse - Chair, Board of  Directors
- Broward County Juvenile Justice Advisory Board
- Broward County Substance Abuse Policy Advisory Board
- Broward Workshop - Criminal Justice Committee
- Florida Department of Law Enforcement - UCR Advisory Committee
- Alarm Association of Florida / Law Enforcement - Board of Directors (1996-1997)

7

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road                               Phone: 360-301-4465
Port Ludlow, WA 98365                         E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

# ATTACHMENT E

**Attachment E**
**Bibliography of Background Source Materials**

Following is a list of source materials that describe generally accepted policing practices, including at the relevant time period. The practices described include but are not limited to record-keeping, file maintenance, report writing, conducting homicide investigations, witness interrogations, supervision, etc.

This list of reference materials is not intended to be exhaustive and is supplemented by my extensive experience with police practices, including my familiarity with the policies used by other police departments nationwide, as well as industry standards established by organizations like the International Association of Chiefs of Police.

## *Reference Materials Generally*

Death Investigation: A Guide for the Scene Investigator
U.S. Department of Justice /Office of Justice Programs / National Institute of Justice

Crime Scene Investigation: A Guide for Law Enforcement
U.S. Department of Justice /Office of Justice Programs / National Institute of Justice

Homicide Guide
International Association of Chiefs of Police

Promoting Effective Homicide Investigations
Police Executive Research Foundation

Homicide Investigation Standard Operating Procedures
John M. Howell – Police Executive Forum

Homicide Process Mapping – Best Practices for Increasing Homicide Clearances : A Project of the U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance

Practical Homicide Investigation Checklist and Field Guide, Second Edition
Vernon J. Geberth

Techniques of Crime Scene Investigation (now in 8th edition)
Barry A.J. Fisher

Homicide investigation; practical information for coroners, police officers, and other investigators
Snyder, LeMoyne

Practical Cold Case Homicide Investigations Procedural Manual
Richard H. Walton

Death Investigation: Systems and Procedures
Randy Hanzlick

Forensic Pathology – Practical Aspects of Criminal and Forensic Investigations
Dominick DiMaio & Vincent J. M. DiMaio

Death Scene Investigation: A Field Guide
Scott A. Wagner

Death Investigator's Handbook – Volumes 1 & 2
Louis N. Eliopulos

Cold Case Homicides: Practical Investigative Techniques
Richard H. Walton

Homicide Scene Investigation – A Manual For Public Prosecutors
http://www.justiceacademy.org/iShare/Library-Training/Homicide-Scene-Manual.pdf

Death Scene Checklist Sheet
http://www.insidethetape.com/Jan-2011-EATH%20SCENE%20CHECKLIST%20SHEET.PDF

*References that pre-date the implementation of CPD's policies*

Dr. Henry Faulds (1843-1930). A towering figure in the history of forensic sciences, it was Faulds who first recognized the value of fingerprints to criminal identification. The Faulds scrapbooks include research notes, original drawings and studies of fingerprint patterns and typology, as well as correspondence with individuals and crime fighting organizations around the world, dating from the (late 1870's) until shortly before the doctor's death in 1930. International Association for Identification (www.theiai.org) founded in the (1915).

- *Sparks from the Anvil* 1933-1937
- IAI Newsletter 1940-1951
- ID News Aug 1951 - 1987
- *Journal of Forensic Identification* (JFI) 1988 - 2013

Locard, E. L'Enquete Criminelle et les Methodes Scientifique. Paris: Ernest Flammarion, (1920).

Homicide investigation; Frankel, Harold A. (1931)

Criminology – Robert H. Gault Northwestern University (1932)

La police scientifique. les homicides.--Les vols.--Les incendies criminels.--Les faux.--La fausse monnaie. Bischoff, Marc (1938)
Homicide investigation; practical information for coroners, police officers, and other investigators, by Snyder, LeMoyne (1944, 1950, 1959, 1967, 1977)

Law of Belligerent Occupation - The Judge Advocate General's School (1945)

Techniques of Crime Scene Investigation (now in 8th edition) originally published in (1949)

Techniques of Crime Scene Investigation is a classic book on how to use forensic science to investigate crimes. The text was first published in Swedish in 1949 by Chief Superintendent Arne Svensson, director of the Laboratory, Criminal Investigation Department, and Superintendent Otto Wendel, Criminal Investigation Department, Stockholm, Sweden. In 1955 it was printed in English as Crime Detection and then revised into a second, expanded American Edition under the title Techniques of Crime Scene Investigation in 1965. In 1981 I was invited to revise it in a third edition and subsequently into fourth, fifth, sixth, seventh and eighth editions.

Kirk, P. L. *Crime Investigation*. New York: Interscience, John Wiley & Sons (1953).

The detection of secret homicide; a study of the medico-legal system of investigation of sudden and unexplained deaths. Havard, John D. J. (1960)

3

Institute on Homicide Investigation Techniques / presented by the Southwestern Law Enforcement Institute, Dallas, Texas; general editor: Robert A. Wilson. (1961)

Practical homicide investigation. With an introd. by William P. Maheady. (1961)
> "We have learned the lesson of history, ancient and modern, that a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses than a system which depends on extrinsic evidence independently secured through skillful investigation." *Escobedo v. Illinois*, 378 U.S. 478, 488–489 (1964)

Thorwald, J. Crime and Science. Harcourrt, Brace & World, Inc.: New York, [LC Cat. no. 67-20323]. (1966)

Police Detective Function (W.S.U.) by V. A. Leonard (1970)

Murder investigation. Oughton, Frederick (1971)

Fox, Richard H. and Carl L. Cunningham. Crime Scene Search and Physical Evidence Handbook.
Washington, D.C.: U.S. Department of Justice, National Institute of Justice, (1973).

Homicide: investigative techniques, by Daniel J. Hughes. (1974)

Kirk, P.L. *Crime Investigation*, *2nd Edition*. New York: John Wiley & Sons, (1974).

Police: the investigation of violence / Keith Simpson (1978)
Smyth, F. *Cause of Death: The Story of Forensic Science*. Van Nostrand Rheinhold Company: New York, [ISBN 0-442-20041-2]. (1980)

Zonderman, J. Beyond the Crime Lab: The New Science of Investigation. John Wiley & Sons: New York, [ISBN 0-471-62296-6]. (1980)

Homicide investigation standards textbook / Joseph C. DeLadurantey, Daniel R. Sullivan. (1980)

Saferstein, *R. Forensic Science Handbook, Volumes I, II, III*. Englewood Cliffs, N.J.: Prentice-Hall, (1982/1988/1993).

DeForest, P.R., R.E. Gaensslen, and H.C. Lee. *Forensic Science: An Introduction to Criminalistics*. New York: McGraw-Hill, Inc., (1983).

4

Rosenfield, I.; Ziff, E. van Loon, B. DNA for Beginners. Writers and Readers Publishing, Inc. [ISBN 0-86316-023-9, pkb.]. (1983)

Practical homicide investigation: tactics, procedures, and forensic techniques / Vernon J. Geberth. (1983)

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road
Port Ludlow, WA 98365

Phone: 360-301-4465
E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Nathson E. Fields v. City of Chicago, et al.**
Cause: 1:10-cv-01168

# ATTACHMENT F

**Attachment F**

For the first group of basement files, in the time period from 1983 to 1989, I compared a total of 28 criminal defense files[1] to 27 corresponding basement files and 27 corresponding permanent retention files. For the second group of basement files, in the time period from 1999 to 2006, I compared a total of 23 criminal defense files to 23 basement files.[2]

The following listing provides a case-by-case account of what documents are included in basement files but are missing from criminal defense files. I did not make any inferences about what documents were turned over to criminal defendants – I based my conclusions on observations about actual differences between files. For each homicide investigation, each set of files—whether the basement file, the criminal defense file, or the permanent retention file is labeled with a CPD Records Division ("RD") Number and a criminal defendant's name.

---

[1] These 28 files concerned 27 separate cases. Plaintiff located two defense attorney files for the 1985 investigation assigned RD G-468726, one for defendant Albert Spraggins, and one for defendant Maurice Spraggins

[2] There were no permanent retention files for the second timeframe, 1999-2006

1

## Table of Contents

## Group One / 1983-1989 Files

Cecil Robinson (RD# E-010765 / IF Bates ACB 0000001-95) ...................................................................... 4

Serafin Flores (RD# E-399564 / IF Bates ACB 005572-005778) ................................................................ 4

Christino Garcia (RD# F-048933 / IF Bates ACB 006037-006165) .............................................................. 4

Lindsey Cannon (RD# F-380662 / IF Bates ACB 007074-007196) .............................................................. 5

Earl Stademeyer (RD# G-011889 / IF Bates ACB 008910-008984) ............................................................. 5

Guy Johns (RD# G-014815 / IF Bates ACB 008985-009112) ..................................................................... 5

Roscoe Evans (RD# G-108642 / IF Bates ACB 010440-010561) ................................................................ 5

Derrick Johnson (RD# G-148403 / IF Bates ACB 011173-011359) ............................................................. 6

James Walker (RD# G-159857 / IF Bates ACB 011627-011977) ................................................................ 6

William Goodin (RD# G-165272 / IF Bates ACB 089308-089463) .............................................................. 7

Maurice Green (RD# G-215280 & G-215280A / IF Bates ACB 090389-090455 & 013368-013499 & 013500-013570) ........................................................................................................................................ 7

Ruben Avilez (RD# G-248336 & G-248696 (PR) / IF Bates ACB 014301-014467) ................................... 8

Freddy Brown (RD# G-257089 / IF Bates ACB 014789-014838) ............................................................... 8

James Walker (RD# G-267826 / IF Bates ACB 015390-01544) .................................................................. 9

Lucille Pye (RD# G-284291 / IF Bates ACB 016197-016286) ................................................................... 9

James Crockett (RD# G-321886 / IF Bates ACB 016649-016807) ........................................................... 10

Edward Terrett (RD# G-446754 / IF Bates ACB 020109-020156) ............................................................ 10

Larry Buchanan (RD# G-456900 / IF Bates ACB 020809-020859) .......................................................... 10

Albert & Maurice Spraggins (RD# G-468726 / IF Bates ACB 020860-021007) ...................................... 11

Albert Buckles (RD# J-381525 / IF Bates ACB 046796-046880) ............................................................. 11

Mervyn Wright (RD# J-418229 / IF Bates ACB 046881-047084) ............................................................ 12

Fredy Roberson (RD# M-566742 / IF Bates ACB 047626-047677) .......................................................... 12

Steve Jones (RD# M-568343 / IF Bates ACB 048058-048142) ................................................................ 12

John Avery (RD# M-569727 / IF Bates ACB 048143-048180) ................................................................ 12

David Duarte (RD# M-580592 / IF Bates ACB 048181-048327) .............................................................. 13

Tony Allen (RD# M-587998 / IF Bates ACB 048328-048423) ................................................................. 13

Ricky Icenberg (RD# M-590700 / IF Bates ACB 047678-047772) ........................................................... 13

2

**Group Two / 1999 – 2006 Files**

Steven Spears (RD# D-192218 / IF Bates ACB 003679-003883) ............................................................ 14

Jimmy Velasquez (RD# D-579065 / IF Bates ACB 004922-005042) ...................................................... 14

Diante Wiley (RD# G-032399 / IF Bates ACB 009208-009420) ............................................................. 14

Kevin Jackson (RD# G-259321 / IF Bates ACB 014839-014924) .......................................................... 14

Timothy Malone (RD# G-266841 & G-266841A / IF Bates ACB 015161-015184 & 015185-015309) .. 14

Isaiah Brady (RD# G-268444 / IF Bates ACB 015505-015758) .............................................................. 15

George Frison (RD# G-326467 / IF Bates ACB 017072-017380).......................................................... 15

Santana McCree (RD# G-406405 / IF Bates ACB 018900-019189) ....................................................... 15

Crisino Bravo (RD# G-570120 / IF Bates ACB 023263-023472) ........................................................... 16

Norman McIntosh (RD# G-705434 / IF Bates ACB 027079-027314) ..................................................... 16

Maurice Brown (RD# HH-175723 / IF Bates ACB 049234-049402) ...................................................... 16

Christopher Peoples (RD# HH-358668 / IF Bates ACB 031268-031555) ............................................... 17

Devon Terrell (RD# HH-749335 / IF Bates ACB 056505-056684) ........................................................ 17

Anthony Houston (RD# HJ-102484 / IF Bates ACB 031556-031828) .................................................... 17

Leviante Adams (RD# HJ-366143 / IF Bates ACB 060612-060838)....................................................... 18

Octavia Anima (RD# HJ-492443 / IF Bates ACB 081966-082418)......................................................... 18

Lakesha Collins (RD# HK-211174 / IF Bates ACB 038163-038338)...................................................... 18

Delvie Turpin (RD# HK-406407 / IF Bates ACB 040843-041049) ......................................................... 19

Donell Johnson (RD# HK-416661 / IF Bates ACB 041050-041244)....................................................... 19

Jamell Murphy (RD# HK-449083 / IF Bates ACB 041754-042025) ....................................................... 19

Verna Colbert (RD# HK-470751 / IF Bates ACB 062432-062666) ........................................................ 20

Tharine Partee (RD# HK-593970 / IF Bates ACB 063855-064131) ....................................................... 20

Devon Terrell (RD# HK-639684 / IF Bates ACB 064839-065188) ........................................................ 20

**Group One / 1983-1989 Files**
**Examination – Comparison – Contrasting of 27 Homicide Case Records**
**(27 Basement Files / 28 Criminal Defense Files / 27 Permanent Retention Files)**

Cecil Robinson (RD# E-010765 / IF Bates ACB 0000001-95)

- Basement File – 95 pages
- Missing from Criminal Defense File – Handwritten note (0002); Investigative file inventory (0003-4); Arrest report (0038-39); Handwritten note (0044); General offense case report (0057-58); Handwritten notes (0059); General offense case report (0060-61); Handwritten note (0076); Letter from an attorney with handwritten note on it (0082); Handwritten notes, business cards, booking photo (0091-95)
- Missing from 41-page Permanent Retention File – Investigative file inventory (0003-04); Handwritten notes (0002, 0044, 0059,0071, 0076,0079, 0091); To-from memos (0063 & 0081)

Serafin Flores (RD# E-399564 / IF Bates ACB 005572-005778)

- Basement File – 207 pages
- Missing from Criminal Defense File – Handwritten notes (5572); Case assignment slip (5573); Subpoena duces tecum (5578); Felony minute sheet (5581); Handwritten note (5586); Court attendance reports (5589-90 & 93); Prisoner hold with handwritten information (5599); SRs-Felony minutes- Handwritten note-Court attendance report (5601-11); Supplemental Report (5618-19); Court attendance report (5622); Handwritten note (5627); Handwritten/Stamped wanted notice (5633); Arrest & disposition forms (5636 & 44); Supplemental Reports (5656-63); Handwritten duplicate note (5664); Investigative file control card & envelope (5756-57); Supplemental Report (5675-84); Handwritten note (5686); Supplemental Report (5693-99); Supplemental Report (5709-19); Individual photos with typed and handwritten information (5759-78)
- Missing from 69-page Permanent Retention File – Handwritten notes (5586, 5608, 5623, 5650-5652, 5664, 5686, 5759, 5765-5776); To-from memo (5599)

Christino Garcia (RD# F-048933 / IF Bates ACB 006037-006165)

- Basement File – 129 pages
- Missing from Criminal Defense File – Handwritten note (6051); Handwritten note (6053); Daily hot sheet (6078); Xerox copy of greeting card (6118-19); Photos (6120-21); Driver's license (6122); Attorney's name and address (6123); Investigative file control cards (6124-25); Computer printout related to vehicle (6126-38); Envelope & letter from Mexican consulate (6139-41); Phone records (6142-47); Handwritten note, FBI business card, typewritten note (6148-50); Miscellaneous vehicle documents (6151-64); Investigative file control card (6165)
- Missing from 30-page Permanent Retention File – Investigative file inventory (6038-39); Handwritten notes (6051, 6083, 6085, 6096, 6115); To-from memos (6072; 6150)

4

Lindsey Cannon (RD# F-380662 / IF Bates ACB 007074-007196)
- Basement File – 123 pages
- Missing from Criminal Defense File – Investigative file inventory (7075-76); Case assignment slip (7077); Back of property inventory (7087); Receipt for exhibits (7123); Arrest report (7137); Arrest report (7141); Criminal arrests (7142); General offense report (7143-44); Portion of report form (7158); Plain page with handwritten notes (7160); Criminal arrests (7171-7172); Arrest reports (7173-78); GPRs (7179-80); Blank printed envelope (7181); Photos & ID notes (7182-95); Investigative control card (7196)
- Missing from 40-page Permanent Retention File – Investigative file inventory (7075); Handwritten notes (7135 & 7160); GPRs (7114-15, 7146, 7179-80)

Earl Stademeyer (RD# G-011889 / IF Bates ACB 008910-008984)
- Basement File – 75 pages
- Missing from Criminal Defense File – Investigative file inventory (8911-12); Investigative file control card (8913); Lab report (8941-42); Handwritten notes (8952); Property inventory sheets (8971-78)
- Missing from 27-page Permanent Retention File – Investigative file inventory (8911-12); Handwritten notes ()8917 & 8952); To-from memos (8951, 8953, 8968, 8969); GPRs (8925-26 & 8962); Supplemental Report (8963)

Guy Johns (RD# G-014815 / IF Bates ACB 008985-009112)
- Basement File – 128 pages
- Missing from Criminal Defense File – Investigative file inventory (8986-87); Photograph (8989); Investigative file control card (8990); Handwritten note (8992); Lab report (9007-09); Handwritten note (9067 & 9091); Autopsy diagrams (9092-93)
- Missing from 51-page Permanent Retention File – Investigative file inventory (8986-87); Handwritten notes (9006, 9065, 9067, 9089, 9091, 9101, 9103, 9105); GPRs (9064, 9081, 9083, 9104)

Roscoe Evans (RD# G-108642 / IF Bates ACB 010440-010561)
- Basement File – 122 pages
- Missing from Criminal Defense File – Investigative file inventory (10441-42); Investigative file control card (10443); Court attendance report (10453); Latent fingerprint form (10459); Request for ballistics exam (10462-63); Crime lab receipt for exhibits (10464); Evidence report (10465 & 69); Receipt for exhibits (10471 & 73); Autopsy diagram (10486); Handwritten note (10499); Handwritten note (10529 & 37)
- Missing from 39-page Permanent Retention File – Investigative file inventory (10441-42); Handwritten notes (10446, 10470, 10475, 10494-97, 10529, 10537, 10548-55); To-from memos (10462, 10463, 10493); GPRs (10507 & 10510)

Derrick Johnson (RD# G-148403 / IF Bates ACB 011173-011359)
- Basement File – 187 pages
- Missing from Criminal Defense File – Handwritten notes (11174); Investigative file inventory (11177); Latent fingerprint request (11248 & 259 & 281 & 294 & 324 & 327 & 330); Handwritten notes (11258 & 276 & 290 & 326 & 334 & 348); Photos (11312); ID section arrest sheet (11347); Photos (11356-59);
- Missing from 40-page Permanent Retention File – Investigative file inventory (11177-79); Handwritten notes (11174, 11176, 11192, 11208, 11210, 11212, 11234, 11244, 11246, 11253, 11256, 11258, 11268, 11278, 11283, 11287, 11290, 11293, 11304, 11309, 11322, 11326, 11332, 11334, 11348); To-from memo (11292)

James Walker (RD# G-159857 / IF Bates ACB 011627-011977)
- Basement File – 351 pages
- Missing from Criminal Defense File – Photos & ID information (11630-640); Photos & ID information (11645-651); Photo (11654); Handwritten note (11657-58); Handwritten notes on backs of various forms, such as case assignment sheets, AUSA business card, field contact cards, and police reports (11660-79 and 680-84); Handwritten notes (11686); Evidence report (11687); Handwritten notes (11689-90); Vehicle evidence photo (11719); Arrest report (11728); Investigative file inventory (11731 & 11734); Handwritten note (11749); GPRs (11750-51); GPR handwritten (11758-59); Latent fingerprint request & handwritten note (11765-66); Page with official stamp "Issued on Inquiry – Name Check Only" and date (11777); Cook county court complaint (11780-81); Arrest report (11782-84); Handwritten note (11785); Arrest report (11786-89); Property inventory sheets (11804-10); Search warrant inventory sheet (11811); Crime lab evidence report (11812); Case report (11816-18); Supplemental Report (11829); Latent fingerprint request (11830); Offense reports (11831-32); Juvenile crimes arrest report (11834-35); Inventory sheets (11837-38); Offense report (11847-48); Inventory sheet (11850); Supplemental Report (11874); GPR handwritten (11879); GPRs with scattered handwritten notes (11905); Detective watch assignment sheets (11913 & 915 & 917); GPRs with scattered handwritten notes (11935-37); GPRs with scattered handwritten notes (11939-43); GPR with scattered handwritten notes (11945-50); GPRs with scattered handwritten notes including on back (11953-61); GPR with scattered handwritten notes including on back (11963-67); GPR with scattered handwritten notes (11969-70)
- Missing from 151-page (89+62) Permanent Retention Files – GPRs (15413-15432); handwritten notes (ACB 015424; ACB 015481); Inv. File Control (15393); Body Diagram (15405); Witness Statements (15450-15468); Form 101 (15469); Wanted Card (15480); Release of Person in Custody (15484); Complaint (15485); Arrest Report (15486-15487); Copy of Envelope (15492); Request for ID Photos (15504); photographs (15397-15401; 15394-15396; 15408-15410; 15470-15476; 15493-15503); 15477-15479; 15482-15483)

6

William Goodin (RD# G-165272 / IF Bates ACB 089308-089463)
- Basement File – 156 pages
- Missing from 98-page Criminal Defense File – Handwritten GPR (89326-28); To-from typewritten memo, with handwritten note (89330-31); Medical eligibility record (89332); To-from memo requesting telephone records (89333); Printout of telephone records (89334-52); Felony minute sheet (89353); Arrest warrant (89359); Handwritten GPR, apparently with 2 authors (89362): Multiple copies of same CPD daily bulletin (89368-81); Supplemental Reports (89382-87); Material submitted for daily bulletin (89388); Multiple Supplemental Reports (89389-405); Supplemental Report (89411-12); Partial Supplemental Report (89414); Handwritten GPR (89417-20); Supplemental Reports (89426-28); Hospitalization report (89429); Autopsy diagram (89435); Property inventory sheet (89445); Handwritten notes on plain sheet of paper (89452); Handwritten GPRs with numerous scattered notes (89453-89455); Arrest report (89456); Investigative file inventory (89462); Front of case investigative file folder (89463)
- Permanent Retention File – None provided

Maurice Green (RD# G-215280 & G-215280A / IF Bates ACB 090389-090455 & 013368-013499 & 013500-013570)
- Basement (3) Files – 270 pages (67 + 132 + 71)
- Missing from Criminal Defense File – Felony minute sheet (13390); Phone message, 2 sides (11391-92); Arrest information card (11393); Property inventory sheet (13396); Arrest information card, 2 sides (13398-99); Grand jury material (13400-03); GPRs with scattered handwritten notes (13404-06); GPR with 2 handwritten names and info (13408); To-from handwritten note (13414); Handwritten note (13501); Investigative file inventory (13502-03); Investigative file control card (13504); Handwritten note (13546)
- Missing from 41-page Permanent Retention File – Investigative file inventory (13502-03); Handwritten notes (13391-92, 13405-06, 13501); To-from memos (13399, 13414, 13533)

Ruben Avilez (RD# G-248336 & G-248696 (PR) / IF Bates ACB 014301-014467)

- Basement File – 167 pages
- Missing from Criminal Defense File – Handwritten notes (14302 & 05); Hold prisoner past court call (14303); Arrest report (14304); To-from and handwritten note (14306-07); LEADS & DL print outs & handwritten telephone number (14308-17); Request for ID records (14318); Arrest records (14319); LEADS & name search print outs (14320-14332); To-from memo and handwritten note (14333-14334); To-from memo (14359); Computer screen shot (14360); Supplemental Report (14367-68); To-from memo (14379); Hold prisoner past court call (14380); Arrest report (14381); Supplemental Report (14413-14); Handwritten notes (14425); Hand drawn scene (14427); LEADS print out with handwritten notes (14428-14429); Computer screen shot with handwritten note (14430); Arrest report with handwritten note (14431); Computer print outs and screen shot (14432-14434); Arrest Report (14435); Computer print outs (14436-38); Handwritten note (14441); Hold prisoner past court roll call (14444); Arrest records (14445); Handwritten notes (14446); Deceptive practice report (14453-54); Arrest records, page stamped 'Wanted', handwritten and typed notes; computer screen shots (14455-60); Arrest report (14461); Arrest records (14462); Page stamped 'Wanted' (14463); Photo (14464); Arrest report (14467)
- Missing from 48-page Permanent Retention File – Handwritten notes (14302, 14334, 14425, 14441, 14446, 14457); To-from memos (14303, 14305, 14306-07, 14333, 14359, 14379-80, 14444)

Freddy Brown (RD# G-257089 / IF Bates ACB 014789-014838)

- Basement File – 50 pages
- Missing from Criminal Defense File – Investigative file inventory (14790); Investigative file control card (14791); Crime lab report (14792-93); Evidence report (14796); Arrest report (14797-98); Autopsy diagram (14802); Crime lab evidence report (14804); GPR handwritten with additional side notes throughout (14806-19); Evidence inventory (14838)
- Missing from 15-page Permanent Retention File – Investigative file inventory (14790)

James Walker (RD# G-267826 / IF Bates ACB 015390-01544)
- Basement File – 115 pages
- Missing from Criminal Defense File – Folder with Case info (15390); Investigative file inventory (15391-92); Investigative file control card (15393); Property inventory sheet (15394 & 96); Post-mortem exam report & toxicology report (15397-401); Autopsy diagram (15405); Property inventory sheets (15408-09); GPR handwritten with numerous side notes (15413-424); GPR handwritten with numerous side notes (15425-432); Felony minute sheet (15469); Evidence report (15470); Property inventory sheet (15471); Property inventory sheets (15473-74); Arrest reports sheet (15477-80); Handwritten note (15481); Teletype print outs (15482-83); Release of person in custody (15484); Cook county court complaint (15485); Arrest report (15486-87); Intra-department mail tracking envelope (15492); Xerox copy of handwritten name (15496); Photos (15497-503); Request for ID photos (15504);
- Missing from 25-page Permanent Retention File – Investigative file inventory (15391-92); Handwritten notes (15424 & 15481)

Lucille Pye (RD# G-284291 / IF Bates ACB 016197-016286)
- Basement File – 90 pages
- Missing from Criminal Defense File – Investigative file inventory (16198-99); Investigative file control card (16200); Arrest records report (16206); Property inventory sheets (16207-09); Autopsy diagram (16218); GPRs handwritten with notes (16220-23); Felony minute sheet (16224); Photo and id note (16242-43); ID section sheet (16246); Arrest report (16247); Release of person in custody (16249); Photo with id note (16250-51); Arrest report (16253-56); Photo with id note (16257-58); GPR handwritten with notes (16259-62); Arrest records report (16263-67); Arrest report (16268-69); Handwritten notes (16270); Handwritten note (16272); GPR (16274); Supplemental Report (16275-76); GPR (16283-84); General offense report (16285-86)
- Missing from 21-page Permanent Retention File – Investigative file inventory (16198-99); Handwritten notes (16270)

James Crockett (RD# G-321886 / IF Bates ACB 016649-016807)

- Basement File – 159 pages
- Missing from Criminal Defense File – Folder cover with numerous stamps and handwritten notes (16649); Investigative file inventory (16650-52); Case assignment slip (16653); Arrest record report (16654); Post-mortem report & toxicology report (16658-62); Fingerprint examination report (16663); Towed vehicle report (16664); To-from memo (16667); Supplemental Report (16668-70); Supplemental Report (16675-77); Supplemental Report (16682-83); Juvenile information summary (16684-85); GPR (16686); Nickname index card and handwritten note (16723-24); GPR handwritten with numerous side notes (16726); Autopsy diagram (16727); Crime lab evidence report with handwritten note (16728-29); Crime lab evidence report (16730); General offense report (16732-33); GPRs (16734-40); Supplemental Reports (16741-49); GPRs (16750-53); Supplemental Reports (16754-57); Property inventory sheets & handwritten notes (16758-61); Supplemental Report (16762-66); Arrest information cards (16767-68); General offense report (16769-70); GPRs with notes and drawings (16771-76); Investigative file control card (16777); Blank printed envelope (16778); Photos and handwritten notes (16779-97); Material submitted for use in daily bulletin (16799-16804); Stop orders (16805-07)
- Missing from 50-page Permanent Retention File – Investigative file inventory 16650-52); Handwritten notes (16724, 16740, 16751, 16753, 16780-97); To-from memo (16667)

Edward Terrett (RD# G-446754 / IF Bates ACB 020109-020156)

- Basement File – 48 pages
- Missing from Criminal Defense File – Investigative file inventory (20110); Investigative file control card (20111); Arrest information card (20113); General offense report (20114-15); Supplemental Reports (20118-23); General offense report (20126-27); Property inventory sheet (20132); Autopsy diagram (20147); Handwritten note (20156)
- Missing from 17-page Permanent Retention File – Investigative file inventory (20110); Handwritten notes (20136 & 20156)

Larry Buchanan (RD# G-456900 / IF Bates ACB 020809-020859)

- Basement File – 51 pages
- Missing from Criminal Defense File – Investigative file inventory (20810); Crime lab receipt for evidence (20814); Handwritten note (20815); Crime lab evidence report & handwritten note (20820-21); Crime lab report (20830-31); Autopsy diagram (20832); Property inventory sheets (20835-36); Copy of 'Miranda warnings' along with numerous handwritten notes (20837); Crime lab evidence report (20853); Felony minute sheet (20855); Crime scene evidence inventory (20855); GPRs with scattered handwritten notes (20856-58); Investigative file control card (20859)
- Missing from 11-page Permanent Retention File – Investigative file inventory (20810); Handwritten notes (20815 & 20837)

10

Albert & Maurice Spraggins (RD# G-468726 / IF Bates ACB 020860-021007)
- Basement File – 148 pages
- Missing from Criminal Defense File – Handwritten notes (20861 & 20864); Investigative file inventory (20862); Case assignment slip (20863); Photos & handwritten notes (20865-68); Investigative file control card (20869); Court attendance reports (20870-72); Computer criminal history report with numerous handwritten notes (20873); Supplemental Report (20874-75); Court attendance report (20876); Supplemental Reports (20879-83); ASA form with typed info (20884); Arrest report (20886); Arrest records report (20887); Arrest control set slip (20888); Computer print outs with handwritten notes (20889-91); Arrest info card (20892); Supplemental Report (20893-94); LEADS request and teletype to LASO (20895); Handwritten note (20896); LEADS request and teletype to LAPD (20897); Handwritten note (20898); To-from memo for all CPD watches (20899); Supplemental Report (20900-901); Crime lab evidence report (20902); Property inventory sheets (20904-06); Telephone message slip with handwritten notes (20907); Handwritten notes (20908-10); Arrest report with handwritten notes (20911-13); Photo & handwritten note (2014-15); To-from memo for all CPD watches (20916); Arrest report (20918); LEADS request to Davenport PD (20919); Handwritten note (20920); Crime lab evidence report (20921); Arrest records report (20922); To-from memo with handwritten notes (20924); GPRs with numerous scattered handwritten notes and diagrams (20925-37); Post-mortem & toxicology report (20938-42); Autopsy diagram (20965); GPRs with numerous scattered handwritten notes (20966-67); Supplemental Report (20981-82); Crime lab evidence report (21004); Property inventory sheet (21005-06);
- Missing from 42-page Permanent Retention File – Investigative file inventory (20862-64); Handwritten notes (20861, 20866, 20868, 20896, 20898, 20907-09, 20920, 20928); To-from memos (20899, 20916, 20924)

Albert Buckles (RD# J-381525 / IF Bates ACB 046796-046880)
- Basement File – 85 pages
- Missing from Criminal Defense File – Investigative file inventory (46797); Property inventory sheet (46837); GPR handwritten notes (46839-42); Handwritten crime scene drawing (46843); Firearms receipt & worksheet (46844); Plain page with handwritten number (46845); Autopsy diagram (46846); Preliminary fired evidence report (46847); Plain page with handwritten information (46848); Property inventory sheet (46849-51); Plain page with handwritten number (46853); Plain page with handwritten information (46855); Blank printed letterhead/envelope (46856); CHESS to-from memo (46857); Case supplementary report (46858-65); CHESS to-from memo (46866); Original case incident report (46867-68); Case supplementary report (46869-74); GPR (46875-77); Case supplementary report (46878-80)
- Files missing from 27-page Permanent Retention File – Investigative file inventory (46797); Handwritten notes (46798-802)

11

Mervyn Wright (RD# J-418229 / IF Bates ACB 046881-047084)

- Basement File – 204 pages
- Missing from Criminal Defense File – Investigative file inventory (46883-85); Plain page with handwritten number (46886); Photos (46887-91); First page of post-mortem report (46920); Request for latent fingerprint comparison (46926); Arrest records report (46932-33); GPR (46934); Illegible photo & handwritten name (46935-36); Investigative handwritten notes on plain paper (46937); Illegible pages from address book (46938-39); GPR with handwritten notes (46940); Plain page with handwritten note (46941); GPRs with handwritten notes, some unsigned (46942-45); Plain page with handwritten notes (46946); Field contact card (46949); Plain page with handwritten notes (46950); Field contact care (46951); Plain page with handwritten notes (46952); GPRs (46954-55); Bio-Science lab report on GSupplemental Report (47012); Plain page with handwritten number (47013); Criminal records (47058-59)
- Missing from 34-page Permanent Retention File – Investigative file inventory (46883-85); Handwritten notes (46882, 46886, 46927, 46931, 46937-39, 46950, 46952, 46973, 47013, 47053); To-from memos (46948, 47049, 47051)

Fredy Roberson (RD# M-566742 / IF Bates ACB 047626-047677)

- Basement File – 52 pages
- Missing from Criminal Defense File – Investigative file inventory (47627); Subpoena duces tecum (47628); Part of general offense report (47632); Arrest records report (47660); Plain page with handwritten notes (47662); Plain page with hand drawn crime scene (47666); Crime lab report (47673); Blank printed envelope (47677);
- Missing from 20-page Permanent Retention File – Investigative file inventory (047627); Handwritten notes (47662 & 47666)

Steve Jones (RD# M-568343 / IF Bates ACB 048058-048142)

- Basement File – 85 pages
- Missing from Criminal Defense File – Investigative file inventory (48059-60); Supplemental Report (48130-31); General offense report (48132-33); Arrest records report (48135); Photos with handwritten notes (48137-42)
- Missing from 45-page Permanent Retention File – Investigative file inventory (48059-60); Handwritten notes (48062, 48064, 48140, 48142)

John Avery (RD# M-569727 / IF Bates ACB 048143-048180)

- Basement File – 38 pages
- Missing from Criminal Defense File – Investigative file inventory (48144); Crime lab evidence report (48145); Property inventory sheet (48146 & 48149); Request for firearm examination (48159); Arrest records report (48179); Blank printed envelope (48180)
- Missing from 18-page Permanent Retention File – Investigative file inventory (48144); To-from memos (48159, 48167, 48176)

David Duarte (RD# M-580592 / IF Bates ACB 048181-048327)
- Basement File – 147 pages
- Missing from Criminal Defense File – Plain page with hand drawn crime scene (48204); Plain page with handwritten names and other information (48216); Blank printed envelope (48316); Photos and handwritten notes (48317-20); CB & Soundex records printouts (48321-22); Plain page with handwritten note (48323); DMV printout (48324); Soundex records printouts (48325-26); Plain page with handwritten notes (48327)
- Missing from 57-page Permanent Retention File – Investigative file inventory (48182-83); Handwritten notes (48204, 48216, 48233, 48235, 48237, 48323, 48327); To-from memo (48187)

Tony Allen (RD# M-587998 / IF Bates ACB 048328-048423)
- Basement File – 96 pages
- Missing from Criminal Defense File – Investigative file inventory (48329-30); Part of general offense report (48333); Plain page with numerous handwritten notes (48345); Plain page with numerous handwritten notes (48364); Plain page with handwritten name & address (48386); Subpoena duces tecum (48406-07); Illinois ID card, front & back (48419-48420); Plain page with typewritten note (48421); Plain page with handwritten note that id's killers other than man charged (48422)
- Missing from 50-page Permanent Retention File – Investigative file inventory (48329); Handwritten notes (48345, 48364, 48386, 48422); To-from memo (48388)

Ricky Icenberg (RD# M-590700 / IF Bates ACB 047678-047772)
- Basement File – 95 pages
- Missing from Criminal Defense File – Investigative file inventory (47679-80); Handwritten notes (47694); Handwritten note (47696); Handwritten notes (47751); Subpoena duces tecum (47765); Photos and handwritten notes (47767-72)
- Missing from 48-page Permanent Retention File – Investigative file inventory (47679-80); Handwritten notes (47694, 47696, 47698, 47751, 47768); To-from memo (47681)

**Group Two / 1999 – 2006 Files**
**Examination – Comparison – Contrasting of 23 Homicide Case Records**
(**23** Basement Files **/ 23 Criminal Defense**)

Steven Spears (RD# D-192218 / IF Bates ACB 003679-003883)

- Basement File – 205 pages
- Missing from Criminal Defense File – Investigative file inventory (3680), Arrest records (3740-54), Booking photo (3768), Handwritten note (3844), Central booking & Criminal history (3842-43), Law Enforcement Agencies Data System LEADS printout (3848-51), Evidence identification photos (3859-83)

Jimmy Velasquez (RD# D-579065 / IF Bates ACB 004922-005042)

- Basement File – 121 pages
- Missing from Criminal Defense File – Investigative file inventory (4923-25), Property inventory/Search warrant sheets (4931-38), Crime scene drawing (5007), Handwritten notes (5009-10), Handwritten notes & LEADS (5022-25)

Diante Wiley (RD# G-032399 / IF Bates ACB 009208-009420)

- Basement File – 213 pages
- Missing from Criminal Defense File – Investigative file inventory (9209-9210); Investigative file control card (9215); Photos (9216-19); Daily major incident log (9220); Death of child to-from memo (9264); Report of post-mortem (9265-9277); ID section page (9282); Circuit court complaint (9283); Juvenile summary report (9284-86 & 88); Various ID section reports (9289-9296); Recorded voice transmission request (9297); Event history log (9298-302); Felony minute sheet (9333); ID section report (9334); Juvenile summary report (9365-66); Juvenile summary report (9369); Juvenile summary reports (9409-13)

Kevin Jackson (RD# G-259321 / IF Bates ACB 014839-014924)

- Basement File – 86 pages
- Missing from Criminal Defense File – Just a few administrative documents

Timothy Malone (RD# G-266841 & G-266841A / IF Bates ACB 015161-015184 & 015185-015309)

- Basement (2) Files – 149 pages (24 + 125)
- Missing from Criminal Defense File – Inventory file (15162-64); GPR with multiple scattered handwritten notes (15179-80); Supplemental Report (15183-84); Inventory file (15186); Information submitted for daily bulletin (15191-92); Xeroxed copies of id cards & handwritten notes (15193); GPR with numerous handwritten notes (15194-95); Crime scene processing report & handwritten note (15199-200); Handwritten note (15263); GPR with handwritten notes & questions (15268); Handwritten note (15270); GPR and handwritten side notes (15281)

14

Isaiah Brady (RD# G-268444 / IF Bates ACB 015505-015758)
- Basement File – 254 pages
- Missing from Criminal Defense File – Inventory file (15506); Homicide file review form (15511); Investigative file control form (15584); Daily major incident log (15585); Computer screen shots with multiple handwritten notes (15591-92);GPRs with handwritten notes (15601 & 603); Property inventory sheets (15606-09); Case supplementary report (15623); Case name check report (15641); GPRs with handwritten notes & scene drawings (15642-671); Computer screen shots (15672-74); Criminal history report (15675-79); Name check query & report (15686-87); Computer screen shot with hand written notes (15688); LEADS reports with handwritten note (15689-700); Computer screen shots (15701-02); Birth certificates (15703-04); Property inventory sheets (15728-35 & 15740)

George Frison (RD# G-326467 / IF Bates ACB 017072-017380)
- Basement File – 309 pages
- Missing from Criminal Defense File – Inventory file (17073-75); Investigative file control card (17077); Crime scene photos (17079-116); Crime scene photos (17118-51); Request for evidence id photos (17152); Crime scene processing report (17153); Handwritten notes (17154-55); Case supplementary report (17157-61); Felony minute sheet (17178); Computer screen shot (17182); Name search result (17183); Case inquiry (17184); Handwritten notes (17185); Computer screen shots (17186-87); Felony minute sheet (17195); Computer screen shot (17198); Arrest report (17201); Crime scene processing report (17232); Property inventory sheets (17241 & 17256); Crime scene processing report (17265); State crime evidence report (17266); Computer screen shots & handwritten notes (17267-17275); Xerox copy of auto service invoice (17277); Illinois state evidence submittal sheet (17278); Wisconsin DOC travel permit (17279-81); Consent to search (17282); GPRs (17300-302); GPR (17317-18); GPR (1736061); Handwritten note (17374); Xerox copy of auto service receipt (17376)

Santana McCree (RD# G-406405 / IF Bates ACB 018900-019189)
- Basement File – 290 pages
- Missing from Criminal Defense File – Page from inventory file (18902); Crime scene photos identification packet label (18942); Investigative file control card (19026); Legal affairs records request (19028); Illinois torture inquiry and relief commission Subpoena Duces Tecum (19029-30); Vehicle tow report (19051-52)

Crisino Bravo (RD# G-570120 / IF Bates ACB 023263-023472)

- Basement File – 210 pages
- Missing from Criminal Defense File – Investigative file inventory (23264); Crime scene photos (23268-99); Lineup photos (23300-07); Crime scene photos (23309-2336); Lineup photos (23337-46); Crime scene photos (23347-49); Daily major incident log (23350); Investigative file control card (23351); Felony minute sheet (23366); Arrest report (23369); Handwritten note (23370); Crime scene processing report (23379); Property inventory sheet (23382); Illinois state police evidence submission (23386-87); Property inventory sheet (23388 & 92); GPR (23402); GPRs with numerous scattered handwritten notes (23412-17); GPR with numerous handwritten notes (23421); GPR with numerous handwritten notes (23427-28); GPR with numerous handwritten notes (23432); General offense report (23446-47); Case supplementary report (23456); Case supplementary report (23460-66); Property inventory sheet (23467); Supplemental Report (23468); Crime scene processing report (23469); Illinois state police crime lab inventory (23470-71)

Norman McIntosh (RD# G-705434 / IF Bates ACB 027079-027314)

- Basement File – 236 pages
- Missing from Criminal Defense File – Investigative file inventory (207080-82); Crime scene photos (27085-104); Crime scene photos (27106-132); Major incident log (27133-34); Investigative file control card (27135); Computer screen shots with handwritten note (27135-37); Illinois state police crime lab findings (27139-48); Case supplementary reports (27149-77); Case supplementary report (27183-87); Case supplementary report (27193-97); General offense report with handwritten notes (27204-05); Handwritten note (27222); GPRs with numerous scattered handwritten notes (27231-33); GPRs with handwritten notes (27246-47); Felony minute sheet (27250); Xerox copy of state id card (27255); Computer screen shots (27256-57); Lineup worksheet with numerous handwritten notes (27280); Circuit juvenile court lineup authorization (27283); CPD letter of sympathy (27284)

Maurice Brown (RD# HH-175723 / IF Bates ACB 049234-049402)

- Basement File – 169 pages
- Missing from Criminal Defense File – Investigative file inventory (49235-236); Homicide file review card (49240); Investigative file control card (49243); Crime scene polaroid (49245); Crime photo packet label – duplicate (49264); Daily major incident log (49266-67); Illinois state police crime lab evidence & findings (49306-07); Computer screen shot (49308); Arrest report (49350); Handwritten notes (49385 & 87); Property inventory sheet (49394-95); Property inventory sheets (49397 & 99)

16

Christopher Peoples (RD# HH-358668 / IF Bates ACB 031268-031555)
- Basement File – 288 pages
- Missing from Criminal Defense File – Crime scene photos (31270-93); Legal affairs subpoena (31294-95); Investigative file inventory (31307-09); Case supplementary report (31311-22); Xerox copy of register receipts and numerous handwritten notes (31325-26); Page of handwritten notes (31327); Computer screen shot (31328); GPR (31329); Handwritten notes (31330); Xerox copy of attorney's business card (31331); Xerox copy of front and back of attorney's id card and handwritten notes (31332); Criminal history report (31333-38); Arrest report (31339); Felony minute sheet (31340); Case supplementary report (31342-56); Supplemental Report (31357); GPRs with scattered handwritten notes (31358-61); Fugitive poster (31362); Warrant documents (31363-31364); Court complaint transmittal (31365); Minneapolis PD criminal history records (31366-72); Illinois DOC records (31373); Xerox copy of attorney id (31374); Computer screen shot (31375); Criminal history report (31376-81); Pawn shop receipt (31382); Blank property inventory sheets (31383-86); Handwritten statement (31387-90); Typed statement (31391); LEADS responses (31394-97); LEADS responses (31399-405); Felony minutes (31406); Arrest report (31407); Computer screen shots with handwritten note (31408-09); Criminal history report (31410-18); GPRs with numerous handwritten notes (31419-27); Crime scene processing report (31428); GPR (31429); Case supplementary reports (31430-53); Supplementary report (31455); Case supplementary reports (31456-81); General offense report (31482-83); Computer screen shot with handwritten notes (31484); Arrest report (31485-87); Computer screen shot (31488); Felony minute sheet (31489); GPRs with numerous scattered handwritten notes, Xerox copies of attorney id, photo (31491-99); GPRs with numerous scattered handwritten notes and drawings (31500-17); Handwritten statement (31518-24); Photos & handwritten notes (31525-29); Handwritten statement (31530-35); Photos & handwritten notes (31536-38); Property inventory sheets (31539-52); Crime scene processing report (31553-54); Blank homicide file review form with handwritten notes at margin (31555)

Devon Terrell (RD# HH-749335 / IF Bates ACB 056505-056684)
- Basement File – 180 pages
- Missing from Criminal Defense File – Investigative file control card (56507); Daily major incident log (56508); Handwritten note (56509); Investigative file inventory (56510); Telephone calls records (56512-17); Computer printout pages (56518-19); Telephone invoice (56520-23); Illinois state police lab report (56524); To-from memo (56532); To-from memo (56546); Handwritten note (56564); Computer screen shot (56579); Crime scene processing report (56580); To-from memo with handwritten notes (56581); Handwritten note (56610); Supervisors report of medical absence form (56616)

Anthony Houston (RD# HJ-102484 / IF Bates ACB 031556-031828)
- Basement File – 273 pages
- Missing from Criminal Defense File – Just a few administrative items

Leviante Adams (RD# HJ-366143 / IF Bates ACB 060612-060838)

- Basement File – 227 pages
- Missing from Criminal Defense File – Subject & crime scene photos (60615-61); Investigative file control card (60662); Investigative file inventory (60663-64); Drawing and numerous handwritten notes (60702); Handwritten statement (60720-23); Event history printout (60733-38); Handwritten notes (60764); GPR with numerous handwritten notes (60765); ID photo (60803); Criminal history report (60804-05); LEADS report (60806-07); Computer screen shot with handwritten note (60808); LEADS reports (60809-20); Computer screen shot with handwritten note (60821-22); Computer records printouts (60823-32)

Octavia Anima (RD# HJ-492443 / IF Bates ACB 081966-082418)

- Basement File – 453 pages
- Missing from Criminal Defense File – Investigative file control card (81968); FOIA request (81991-92); Daily major incident log (81993-96); Handwritten note (82052); Criminal history report (82173-77); LEADS report (82178-81); Arrest report (82182); Computer screen shot (82183); Criminal history report (82184-88); LEADS report (82189-91) Arrest report (82192); Computer screen shot (82193); Criminal history report (82194); LEADS report (82195-96); Handwritten statement (82197-201); Photos & handwritten notes (82202-06); Handwritten statement (82207-12); Photos & handwritten notes (82213-17); Handwritten statement (82218-25); Photos & handwritten notes (82226-30); Computer screen shot (82231); Criminal history report (82232-33); LEADS report (82234-47); Handwritten statement (82248-53); Photos & handwritten notes (82254-64); Handwritten statement (82265-69); Photos & handwritten notes (82270-77)

Lakesha Collins (RD# HK-211174 / IF Bates ACB 038163-038338)

- Basement File – 176 pages
- Missing from Criminal Defense File – Investigative file control card (38165); Investigative file inventory (38166-67); Illinois state police lab report (38171-75); GPRs with numerous scattered handwritten notes & Xerox of food receipt (38177-89); GPRs with numerous scattered handwritten notes & drawing (38202-14); Illinois state police supplemental lab report (38216-17); Request for info – office of legal affairs (38219); Illinois state police lab report (38232); Case supplementary report (38265-86)

18

Delvie Turpin (RD# HK-406407 / IF Bates ACB 040843-041049)

- Basement File – 207 pages
- Missing from Criminal Defense File – Crime scene photos (40847-82); Daily major incident log (40883-85); Investigative file inventory (40886-87); Illinois state police lab report (40888-89); Subpoena duces tecum (40890-91); Case supplementary report (40892-98); Felony minutes form (40899); Arrest report (40900); Photo with signatures (40905); Photo with signatures (40910); Photo with signatures (40918); Photo with signatures (40923); Xerox copy of id card with handwritten notes (40928); Crime scene processing report (40929-30); Crime scene processing report (40956); Post-mortem & toxicology report (40962-68); GPRs with numerous scattered handwritten notes (40992-41005); Computer screen shots (41006-07); Criminal history report (41008-16); Material submitted for daily bulletin (41017); Arrest report (41018); LEADS report with handwritten notes (41019); CLEAR gang arrest report (41020-22); Illinois state police evidence submission report (41023-24); Major crime scene report (41025-28); Illinois state police lab report (41029); Crime scene processing report (41030); Autopsy diagram (41031); Neighborhood crime scene drawing (41032); GPR empty, but signed (41033); Blank property inventory form (41034 & 36 & 38 & 40); CPD daily bulletin (41041-43); Supplementary report (41044); General offense reports (41045-48); Homicide file review form, blank but with handwriting around outside (41049)

Donell Johnson (RD# HK-416661 / IF Bates ACB 041050-041244)

- Basement File – 195 pages
- Missing from Criminal Defense File – Investigative file control card (41052); Crime scene photos (41055-98); Felony minutes form (41106); Handwritten note (41140); Handwritten note (41188); Pages from post-mortem report (41199-100); To-from memos, with handwritten note & reference to "our friend's name" (41237-44)

Jamell Murphy (RD# HK-449083 / IF Bates ACB 041754-042025)

- Basement File – 272 pages
- Missing from Criminal Defense File – Investigative file control card (41755); Photo form (41756); Crime scene photo series label (41763); Major incident notification (41767-69); Daily major incident log (41770-71); Investigative file inventory (41773-74); Lineup check list (41777); Photos with initials & signatures (41799-800); Photos with initials & signatures (41812-16); Photos (41854-56); Law enforcement report (41876-81); DL name search (41882); Felony screening (41883-88); Felony minutes form (41922); Moving of arrestee (41924); Supplemental Report (41928-29); GPR (42002); Homicide file review form, blank (42025)

19

Verna Colbert (RD# HK-470751 / IF Bates ACB 062432-062666)

- Basement File – 235 pages
- Missing from Criminal Defense File – Investigative file control card (62434); To-from memo with handwritten notes (62436); Handwritten note (62437); To-from memo (62438); Daily major incident log (62439-40); Investigative file inventory (62441-43); Illinois state police crime lab report (62444-45); To-from memo (62446); Illinois state police crime lab report (62447-49); Subpoena duces tecum (62450); Illinois state police crime lab report (62451); Criminal history report (62563-64); Portion of criminal history report (62572); Portion of criminal history report (62598); Homicide file review form, blank (62639)

Tharine Partee (RD# HK-593970 / IF Bates ACB 063855-064131)

- Basement File – 277 pages
- Missing from Criminal Defense File – Daily major incident log (63941-42); Investigative file inventory (63944-45)

Devon Terrell (RD# HK-639684 / IF Bates ACB 064839-065188)

- Basement File – 350 pages
- Missing from Criminal Defense File – Investigative file control form (64841); Computer screen shots (64932-37); Major incident notification detail (64941-43); Criminal history report (64952-58); Criminal history report (64959-61); Arrest report (64962); Investigative file inventory (64980-82); To-from memos (64983-84); Original case incident report (64985-87); Arrest report (65007); Felony minute sheet (65077); LEADS report (65080-81); CLEAR etrack report (65082-85); LEADS report (65086-87); Photo with handwritten note (65093); LEADS report (65094)

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road                          Phone: 360-301-4465
Port Ludlow, WA 98365                         E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**<u>Nathson E. Fields v. City of Chicago, et al.</u>**
Cause: 1:10-cv-01168

# ATTACHMENT G

## Table of Contents

Row 1     RD# E-010765    (Year 1983)    (Area 4)........................................................ 1-2
Row 2     RD# E-026792    (Year 1983)    (Area 1)........................................................ 1-2
Row 3     RD# E-221919    (Year 1983)    (Area 1)........................................................ 1-2
Row 4     RD# E-277036    (Year 1983)    (Area 4)........................................................ 1-2
Row 5     RD# E-348611    (Year 1983)    (Area 4)........................................................ 1-2
Row 6     RD# E-395970    (Year 1983)    (Area 4)........................................................ 1-2
Row 7     RD# E-399564    (Year 1983)    (Area 4)........................................................ 1-2
Row 8     RD# E-442815    (Year 1983)    (Area 1)........................................................ 3-4
Row 9     RD# E-475100    (Year 1983)    (Area 1)........................................................ 3-4
Row 10    RD# F-048933    (Year 1984)    (Area 4)........................................................ 3-4
Row 11    RD# F-172852    (Year 1984)    (Area 3)........................................................ 3-4
Row 12    RD# F-177096    (Year 1984)    (Area 4)........................................................ 3-4
Row 13    RD# F-229020    (Year 1984)    (Area 3)........................................................ 3-4
Row 14    RD# F-229039    (Year 1984)    (Area 1)........................................................ 3-4
Row 15    RD# F-277122    (Year 1984)    (Area 1)........................................................ 5-6
Row 16    RD# F-299912    (Year 1984)    (Area 3)........................................................ 5-6
Row 17    RD# F-308281    (Year 1984)    (Area 3)........................................................ 5-6
Row 18    RD# F-336114    (Year 1984)    (Area 3)........................................................ 5-6
Row 19    RD# F-380662    (Year 1984)    (Area 4)........................................................ 5-6
Row 20    RD# F-430186    (Year 1984)    (Area 1)........................................................ 5-6
Row 21    RD# F-445484    (Year 1984)    (Area 4)........................................................ 7-8
Row 22    RD# F-492465    (Year 1984)    (Area 3)........................................................ 7-8
Row 23    RD# G-011265    (Year 1985)    (Area 1)........................................................ 7-8
Row 24    RD# G-011889    (Year 1985)    (Area 1)........................................................ 7-8
Row 25    RD# G-014815    (Year 1985)    (Area 1)........................................................ 7-8
Row 26    RD# G-027619    (Year 1985)    (Area 1)........................................................ 7-8
Row 27    RD# G-032161    (Year 1985)    (Area 1)........................................................ 7-8
Row 28    RD# G-049257    (Year 1985)    (Area 1)........................................................ 7-8
Row 29    RD# G-051225    (Year 1985)    (Area 1)........................................................ 9-10
Row 30    RD# G-056199    (Year 1985)    (Area 1)........................................................ 9-10
Row 31    RD# G-087375    (Year 1985)    (Area 1)........................................................ 9-10
Row 32    RD# G-106586    (Year 1985)    (Area 1)........................................................ 9-10
Row 33    RD# G-108642    (Year 1985)    (Area 1)........................................................ 9-10
Row 34    RD# G-148403    (Year 1985)    (Area 1)........................................................ 11-12
Row 35    RD# G-156178    (Year 1985)    (Area 1)........................................................ 11-12
Row 36    RD# G-159857    (Year 1985)    (Area 3)........................................................ 11-12
Row 37    RD# G-165272    (Year 1985)    (Area 1)........................................................ 11-12
Row 38    RD# G-176242    (Year 1985)    (Area 1)........................................................ 11-12
Row 39    RD# G-192900    (Year 1985)    (Area 1)........................................................ 13-14
Row 40    RD# G-215280    (Year 1985)    (Area 1)........................................................ 13-14
Row 41    RD# G-230261    (Year 1985)    (Area 1)........................................................ 13-14
Row 42    RD# G-235180    (Year 1985)    (Area 1)........................................................ 13-14
Row 43    RD# G-245282    (Year 1985)    (Area 1)........................................................ 13-14
Row 44    RD# G-248336    (Year 1985)    (Area 4)........................................................ 13-14

1

Row 45    RD# G-257089    (Year 1985)    (Area 1)...................................................... 13-14
Row 46    RD# G-265171    (Year 1985)    (Area 1)...................................................... 13-14
Row 47    RD# G-267631    (Year 1985)    (Area 3)...................................................... 13-14
Row 48    RD# G-267820    (Year 1985)    (Area 1)...................................................... 13-14
Row 49    RD# G-267826    (Year 1985)    (Area 1)...................................................... 15-16
Row 50    RD# G-278643    (Year 1985)    (Area 1)...................................................... 15-16
Row 51    RD# G-283147    (Year 1985)    (Area 4)...................................................... 15-16
Row 52    RD# G-284291    (Year 1985)    (Area 1)...................................................... 15-16
Row 53    RD# G-289217    (Year 1985)    (Area 1)...................................................... 15-16
Row 54    RD# G-303402    (Year 1985)    (Area 1)...................................................... 15-16
Row 55    RD# G-321886    (Year 1985)    (Area 4)...................................................... 15-16
Row 56    RD# G-322101    (Year 1985)    (Area 1)...................................................... 15-16
Row 57    RD# G-331216    (Year 1985)    (Area 1)...................................................... 15-16
Row 58    RD# G-354748    (Year 1985)    (Area 1)...................................................... 15-16
Row 59    RD# G-356930    (Year 1985)    (Area 1)...................................................... 15-16
Row 60    RD# G-385135    (Year 1985)    (Area 1)...................................................... 17-18
Row 61    RD# G-401782    (Year 1985)    (Area 1)...................................................... 17-18
Row 62    RD# G-405711    (Year 1985)    (Area 1)...................................................... 17-18
Row 63    RD# G-446754    (Year 1985)    (Area 1)...................................................... 17-18
Row 64    RD# G-456900    (Year 1985)    (Area 1)...................................................... 17-18
Row 65    RD# G-468726    (Year 1985)    (Area 1)...................................................... 17-18
Row 80    RD# G-468726    (Year 1985)    (Area 1)...................................................... 17-18
Row 66    RD# G-482955    (Year 1985)    (Area 3)...................................................... 19-20
Row 67    RD# G-483470    (Year 1985)    (Area 1)...................................................... 19-20
Row 68    RD# G-501974    (Year 1985)    (Area 1)...................................................... 19-20
Row 69    RD# H-024109    (Year 1986)    (Area 4)...................................................... 19-20
Row 70    RD# H-349049    (Year 1986)    (Area 4)...................................................... 19-20
Row 71    RD# H-435581    (Year 1986)    (Area 4)...................................................... 19-20
Row 72    RD# H-465163    (Year 1986)    (Area 2)...................................................... 21-22
Row 73    RD# J-381525    (Year 1987)    (Area 4)...................................................... 21-22
Row 74    RD# J-418229    (Year 1987)    (Area 1)...................................................... 21-22
Row 75    RD# J-486857    (Year 1987)    (Area 4)...................................................... 21-22
Row 76    RD# J-510242    (Year 1987)    (Area 4)...................................................... 21-22
Row 77    RD# K-300724    (Year 1988)    (Area 4)...................................................... 21-22
Row 78    RD# K-562024    (Year 1988)    (Area 4)...................................................... 23-24
Row 79    RD# M-139566    (Year 1989)    (Area 4)...................................................... 23-24
Row 80    RD# M-510728    (Year 1989)    (Area 4)...................................................... 25-26
Row 81    RD# M-534290    (Year 1989)    (Area 4)...................................................... 25-26
Row 82    RD# M-539997    (Year 1989)    (Area 4)...................................................... 27-28
Row 83    RD# M-544975    (Year 1989)    (Area 4)...................................................... 27-28
Row 84    RD# M-566742    (Year 1989)    (Area 4)...................................................... 27-28
Row 85    RD# M-568343    (Year 1989)    (Area 4)...................................................... 27-28
Row 86    RD# M-569727    (Year 1989)    (Area 4)...................................................... 29-30
Row 87    RD# M-580592    (Year 1989)    (Area 4)...................................................... 29-30
Row 88    RD# M-587998    (Year 1989)    (Area 4)...................................................... 29-30
Row 89    RD# M-590700    (Year 1989)    (Area 4)...................................................... 29-30

Row 90    RD# D-322218    (Year 1999)    (Area 4)......................................................... 29-30
Row 91    RD# D-192218    (Year 1999)    (Area 4)......................................................... 29-30
Row 92    RD# D-579065    (Year 1999)    (Area 4)......................................................... 29-30
Row 93    RD# D-131199    (Year 1999)    (Area 4)......................................................... 29-30
Row 94    RD# D-145734    (Year 1999)    (Area 4)......................................................... 29-30
Row 95    RD# D-146057    (Year 1999)    (Area 4)......................................................... 29-30
Row 96    RD# D-454658    (Year 1999)    (Area 4)......................................................... 29-30
Row 97    RD# D-724882    (Year 1999)    (Area 4)......................................................... 29-30
Row 98    RD# F-475-960   (Year 2000)    (Area 4)......................................................... 29-30
Row 99    RD# F-405-633   (Year 2000)    (Area 4)......................................................... 29-30
Row 100   RD# F-731010    (Year 2000)    (Area 4)......................................................... 31-32
Row 101   RD# F-746059    (Year 2000)    (Area 1)......................................................... 31-32
Row 102   RD# G-032399    (Year 2001)    (Area 1)......................................................... 31-32
Row 103   RD# G-082465    (Year 2001)    (Area 1)......................................................... 31-32
Row 104   RD# G-108432    (Year 2001)    (Area 1)......................................................... 31-32
Row 105   RD# G-118582    (Year 2001)    (Area 1)......................................................... 31-32
Row 106   RD# G-128509    (Year 2001)    (Area 1)......................................................... 31-32
Row 107   RD# G-142325    (Year 2001)    (Area 4)......................................................... 31-32
Row 108   RD# G-152113    (Year 2001)    (Area 1)......................................................... 31-32
Row 109   RD# G-168213    (Year 2001)    (Area 1)......................................................... 31-32
Row 110   RD# G-187460    (Year 2001)    (Area 4)......................................................... 31-32
Row 111   RD# G-188311    (Year 2001)    (Area 1)......................................................... 31-32
Row 112   RD# G-188820    (Year 2001)    (Area 1)......................................................... 31-32
Row 113   RD# G-190057    (Year 2001)    (Area 1)......................................................... 31-32
Row 114   RD# G-221780    (Year 2001)    (Area 1)......................................................... 31-32
Row 115   RD# G-226841    (Year 2001)    (Area 1)......................................................... 31-32
Row 116   RD# G-248938    (Year 2001)    (Area 1)......................................................... 31-32
Row 117   RD# G-259321    (Year 2001)    (Area 1)......................................................... 31-32
Row 118   RD# G-261213    (Year 2001)    (Area 1)......................................................... 31-32
Row 119   RD# G-266841    (Year 2001)    (Area 1)......................................................... 31-32
Row 120   RD# G-268444    (Year 2001)    (Area 1)......................................................... 31-32
Row 121   RD# G-276602    (Year 2001)    (Area 1)......................................................... 31-32
Row 122   RD# G-311269    (Year 2001)    (Area 1)......................................................... 31-32
Row 123   RD# G-322669    (Year 2001)    (Area 1)......................................................... 31-32
Row 124   RD# G-326467    (Year 2001)    (Area 1)......................................................... 33-34
Row 125   RD# G-330755    (Year 2001)    (Area 1)......................................................... 33-34
Row 126   RD# G-356804    (Year 2001)    (Area 1)......................................................... 33-34
Row 127   RD# G-380402    (Year 2001)    (Area 4)......................................................... 33-34
Row 128   RD# G-389122    (Year 2001)    (Area 1)......................................................... 33-34
Row 129   RD# G-390651    (Year 2001)    (Area 1)......................................................... 33-34
Row 130   RD# G-397986    (Year 2001)    (Area 1)......................................................... 33-34
Row 131   RD# G-399481    (Year 2001)    (Area 1)......................................................... 33-34
Row 132   RD# G-406405    (Year 2001)    (Area 1)......................................................... 33-34
Row 133   RD# G-419125    (Year 2001)    (Area 1)......................................................... 33-34
Row 134   RD# G-425608    (Year 2001)    (Area 1)......................................................... 33-34
Row 135   RD# G-434632    (Year 2001)    (Area 1)......................................................... 33-34

Row 136    RD# G-443474    (Year 2001)    (Area 4)......................................................33-34
Row 137    RD# G-447444    (Year 2001)    (Area 1)......................................................33-34
Row 138    RD# G-450601    (Year 2001)    (Area 1)......................................................33-34
Row 139    RD# G-451387    (Year 2001)    (Area 1)......................................................33-34
Row 140    RD# G-456492    (Year 2001)    (Area 1)......................................................33-34
Row 141    RD# G-491442    (Year 2001)    (Area 1)......................................................33-34
Row 142    RD# G-497018    (Year 2001)    (Area 1)......................................................33-34
Row 143    RD# G-506663    (Year 2001)    (Area 4)......................................................33-34
Row 144    RD# G-541859    (Year 2001)    (Area 1)......................................................33-34
Row 145    RD# G-543889    (Year 2001)    (Area 1)......................................................33-34
Row 146    RD# G-547890    (Year 2001)    (Area 1)......................................................33-34
Row 147    RD# G-554146    (Year 2001)    (Area 1)......................................................33-34
Row 148    RD# G-556311    (Year 2001)    (Area 4)......................................................33-34
Row 149    RD# G-567131    (Year 2001)    (Area 1)......................................................33-34
Row 150    RD# G-570120    (Year 2001)    (Area 1)......................................................35-36
Row 151    RD# G-575283    (Year 2001)    (Area 1)......................................................35-36
Row 152    RD# G-578724    (Year 2001)    (Area 1)......................................................35-36
Row 153    RD# G-592219    (Year 2001)    (Area 1)......................................................35-36
Row 154    RD# G-602617    (Year 2001)    (Area 1)......................................................35-36
Row 155    RD# G-630073    (Year 2001)    (Area 1)......................................................35-36
Row 156    RD# G-630295    (Year 2001)    (Area 1)......................................................35-36
Row 157    RD# G-632707    (Year 2001)    (Area 1)......................................................35-36
Row 158    RD# G-648246    (Year 2001)    (Area 1)......................................................35-36
Row 159    RD# G-655145    (Year 2001)    (Area 1)......................................................35-36
Row 160    RD# G-656885    (Year 2001)    (Area 1)......................................................35-36
Row 161    RD# G-670379    (Year 2001)    (Area 1)......................................................35-36
Row 162    RD# G-678089    (Year 2001)    (Area 1)......................................................35-36
Row 163    RD# G-686446    (Year 2001)    (Area 1)......................................................35-36
Row 164    RD# G-688481    (Year 2001)    (Area 1)......................................................35-36
Row 165    RD# G-691809    (Year 2001)    (Area 1)......................................................35-36
Row 166    RD# G-694725    (Year 2001)    (Area 4)......................................................35-36
Row 167    RD# G-694885    (Year 2001)    (Area 1)......................................................35-36
Row 168    RD# G-701363    (Year 2001)    (Area 4)......................................................35-36
Row 169    RD# G-705434    (Year 2001)    (Area 1)......................................................35-36
Row 170    RD# G-708133    (Year 2001)    (Area 1)......................................................35-36
Row 171    RD# G-722334    (Year 2001)    (Area 1)......................................................35-36
Row 172    RD# G-751124    (Year 2001)    (Area 1)......................................................35-36
Row 173    RD# G-759169    (Year 2001)    (Area 1)......................................................35-36
Row 174    RD# G-763-171    (Year 2001)    (Area 4)......................................................37-38
Row 175    RD# G-776686    (Year 2001)    (Area 1)......................................................37-38
Row 176    RD# HH-101153    (Year 2002)    (Area 1)......................................................37-38
Row 177    RD# HH-105486    (Year 2002)    (Area 1)......................................................37-38
Row 178    RD# HH-112360    (Year 2002)    (Area Unknown).......................................37-38
Row 179    RD# HH-112848    (Year 2002)    (Area 1)......................................................37-38
Row 180    RD# HH-123814    (Year 2002)    (Area 1)......................................................37-38
Row 181    RD# HH-131667    (Year 2002)    (Area 1)......................................................37-38

4

| | | | | |
|---|---|---|---|---|
| Row 182 | RD# HH-138499 | (Year 2002) | (Area 1) | 37-38 |
| Row 183 | RD# HH-154152 | (Year 2002) | (Area 1) | 37-38 |
| Row 184 | RD# HH-158954 | (Year 2002) | (Area 1) | 37-38 |
| Row 185 | RD# HH-175723 | (Year 2002) | (Area 1) | 37-38 |
| Row 186 | RD# HH-249096 | (Year 2002) | (Area 1) | 37-38 |
| Row 187 | RD# HH-257532 | (Year 2002) | (Area 1) | 39-40 |
| Row 188 | RD# HH-263021 | (Year 2002) | (Area 1) | 39-40 |
| Row 189 | RD# HH-270572 | (Year 2002) | (Area 1) | 39-40 |
| Row 190 | RD# HH-279592 | (Year 2002) | (Area 1) | 39-40 |
| Row 191 | RD# HH-280024 | (Year 2002) | (Area 1) | 39-40 |
| Row 192 | RD# HH-280696 | (Year 2002) | (Area 1) | 39-40 |
| Row 193 | RD# HH-285733 | (Year 2002) | (Area 1) | 39-40 |
| Row 194 | RD# HH-296357 | (Year 2002) | (Area 1) | 39-40 |
| Row 195 | RD# HH-301377 | (Year 2002) | (Area 1) | 39-40 |
| Row 196 | RD# HH-316330 | (Year 2002) | (Area 1) | 39-40 |
| Row 197 | RD# HH-321998 | (Year 2002) | (Area 1) | 39-40 |
| Row 198 | RD# HH-347787 | (Year 2002) | (Area 1) | 39-40 |
| Row 199 | RD# HH-358668 | (Year 2002) | (Area 1) | 39-40 |
| Row 200 | RD# HH-361418 | (Year 2002) | (Area 1) | 41-42 |
| Row 201 | RD# HH-367441 | (Year 2002) | (Area 1) | 41-42 |
| Row 202 | RD# HH-367666 | (Year 2002) | (Area 1) | 41-42 |
| Row 203 | RD# HH-377524 | (Year 2002) | (Area 1) | 41-42 |
| Row 204 | RD# HH-414131 | (Year 2002) | (Area 1) | 41-42 |
| Row 205 | RD# HH-447119 | (Year 2002) | (Area 1) | 41-42 |
| Row 206 | RD# HH-447396 | (Year 2002) | (Area 1) | 41-42 |
| Row 207 | RD# HH-500856 | (Year 2002) | (Area 4) | 41-42 |
| Row 208 | RD# HH-505945 | (Year 2002) | (Area 1) | 41-42 |
| Row 209 | RD# HH-522403 | (Year 2002) | (Area 1) | 41-42 |
| Row 210 | RD# HH-524796 | (Year 2002) | (Area 1) | 41-42 |
| Row 211 | RD# HH-525230 | (Year 2002) | (Area 1) | 41-42 |
| Row 212 | RD# HH-529070 | (Year 2002) | (Area 1) | 41-42 |
| Row 213 | RD# HH-546846 | (Year 2002) | (Area 1) | 41-42 |
| Row 214 | RD# HH-551686 | (Year 2002) | (Area 1) | 41-42 |
| Row 215 | RD# HH-572150 | (Year 2002) | (Area 1) | 41-42 |
| Row 216 | RD# HH-576930 | (Year 2002) | (Area 1) | 41-42 |
| Row 217 | RD# HH-609705 | (Year 2002) | (Area 1) | 41-42 |
| Row 218 | RD# HH-614198 | (Year 2002) | (Area 1) | 41-42 |
| Row 219 | RD# HH-617694 | (Year 2002) | (Area 1) | 41-42 |
| Row 220 | RD# HH-618363 | (Year 2002) | (Area 1) | 43-44 |
| Row 221 | RD# HH-635313 | (Year 2002) | (Area 1) | 43-44 |
| Row 222 | RD# HH-660094 | (Year 2002) | (Area 1) | 43-44 |
| Row 223 | RD# HH-690739 | (Year 2002) | (Area 1) | 43-44 |
| Row 224 | RD# HH-749335 | (Year 2002) | (Area 1) | 43-44 |
| Row 225 | RD# HH-767627 | (Year 2002) | (Area 1) | 43-44 |
| Row 226 | RD# HH-783159 | (Year 2002) | (Area Unknown) | 43-44 |
| Row 227 | RD# HH-811146 | (Year 2002) | (Area 1) | 43-44 |

5

Row 228    RD# HH-818229    (Year 2002)    (Area 1)......................................................43-44
Row 229    RD# HH-823907    (Year 2002)    (Area 1)......................................................43-44
Row 230    RD# HH-842054    (Year 2002)    (Area 1)......................................................43-44
Row 231    RD# HH-844492    (Year 2002)    (Area 1)......................................................43-44
Row 232    RD# HH-858534    (Year 2002)    (Area 1)......................................................43-44
Row 233    RD# HH-858682    (Year 2002)    (Area 1)......................................................43-44
Row 234    RD# HH-860642    (Year 2002)    (Area 1)......................................................43-44
Row 235    RD# HH-860835    (Year 2002)    (Area 1)......................................................43-44
Row 236    RD# HJ-102484    (Year 2002)    (Area 1)......................................................43-44
Row 237    RD# HJ-117531    (Year 2003)    (Area 1)......................................................43-44
Row 238    RD# HJ-117559    (Year 2003)    (Area 1)......................................................43-44
Row 239    RD# HJ-143625    (Year 2003)    (Area 1)......................................................43-44
Row 240    RD# HJ-145451    (Year 2003)    (Area 1)......................................................43-44
Row 241    RD# HJ-158056    (Year 2003)    (Area 1)......................................................43-44
Row 242    RD# HJ-169496    (Year 2003)    (Area 1)......................................................43-44
Row 243    RD# HJ-211373    (Year 2003)    (Area 1)......................................................43-44
Row 244    RD# HJ-211691    (Year 2003)    (Area 1)......................................................45-46
Row 245    RD# HJ-228346    (Year 2003)    (Area 1)......................................................45-46
Row 246    RD# HJ-239255    (Year 2003)    (Area 1)......................................................45-46
Row 247    RD# HJ-243231    (Year 2003)    (Area 1)......................................................45-46
Row 248    RD# HJ-256409    (Year 2003)    (Area 1)......................................................45-46
Row 249    RD# HJ-257094    (Year 2003)    (Area 1)......................................................45-46
Row 250    RD# HJ-274500    (Year 2003)    (Area 4)......................................................45-46
Row 251    RD# HJ-284434    (Year 2003)    (Area 1)......................................................45-46
Row 252    RD# HJ-307187    (Year 2003)    (Area 1)......................................................45-46
Row 253    RD# HJ-307851    (Year 2003)    (Area 1)......................................................45-46
Row 254    RD# HJ-310383    (Year 2003)    (Area 1)......................................................45-46
Row 255    RD# HJ-320635    (Year 2003)    (Area 1)......................................................45-46
Row 256    RD# HJ-324514    (Year 2003)    (Area 1)......................................................45-46
Row 257    RD# HJ-366143    (Year 2003)    (Area 1)......................................................45-46
Row 258    RD# HJ-376892    (Year 2003)    (Area 1)......................................................45-46
Row 259    RD# HJ-399272    (Year 2003)    (Area 1)......................................................45-46
Row 260    RD# HJ-400029    (Year 2003)    (Area 1)......................................................45-46
Row 261    RD# HJ-410134    (Year 2003)    (Area 1)......................................................45-46
Row 262    RD# HJ-440488    (Year 2003)    (Area 1)......................................................45-46
Row 263    RD# HJ-492443    (Year 2003)    (Area 1)......................................................45-46
Row 264    RD# HJ-499310    (Year 2003)    (Area 4)......................................................47-48
Row 265    RD# HJ-505759    (Year 2003)    (Area 1)......................................................47-48
Row 266    RD# HJ-518923    (Year 2003)    (Area 1)......................................................47-48
Row 267    RD# HJ-527506    (Year 2003)    (Area 1)......................................................47-48
Row 268    RD# HJ-545448    (Year 2003)    (Area 1)......................................................47-48
Row 269    RD# HJ-547936    (Year 2003)    (Area 1)......................................................47-48
Row 270    RD# HJ-591782    (Year 2003)    (Area 1)......................................................47-48
Row 271    RD# HJ-623228    (Year 2003)    (Area 1)......................................................47-48
Row 272    RD# HJ-640575    (Year 2003)    (Area 1)......................................................47-48
Row 273    RD# HJ-647205    (Year 2003)    (Area 1)......................................................47-48

6

| | | | | |
|---|---|---|---|---|
| Row 274 | RD# HJ-661717 | (Year 2003) | (Area 1) | 47-48 |
| Row 275 | RD# HJ-664136 | (Year 2003) | (Area 1) | 47-48 |
| Row 276 | RD# HJ-664232 | (Year 2003) | (Area 1) | 47-48 |
| Row 277 | RD# HJ-671123 | (Year 2003) | (Area Unknown) | 47-48 |
| Row 278 | RD# HJ-673789 | (Year 2003) | (Area 1) | 47-48 |
| Row 279 | RD# HJ-676387 | (Year 2003) | (Area 1) | 47-48 |
| Row 280 | RD# HJ-678090 | (Year 2003) | (Area 1) | 47-48 |
| Row 281 | RD# HJ-687964 | (Year 2003) | (Area 1) | 47-48 |
| Row 282 | RD# HJ-689560 | (Year 2003) | (Area 1) | 47-48 |
| Row 283 | RD# HJ-733462 | (Year 2003) | (Area 1) | 47-48 |
| Row 284 | RD# HJ-734895 | (Year 2003) | (Area 1) | 47-48 |
| Row 285 | RD# HJ-737306 | (Year 2003) | (Area 1) | 47-48 |
| Row 286 | RD# HJ-745468 | (Year 2003) | (Area 1) | 47-48 |
| Row 287 | RD# HJ-757826 | (Year 2003) | (Area 4) | 47-48 |
| Row 288 | RD# HJ-776575 | (Year 2003) | (Area 1) | 49-50 |
| Row 289 | RD# HJ-793204 | (Year 2003) | (Area 1) | 49-50 |
| Row 290 | RD# HJ-795462 | (Year 2003) | (Area 1) | 49-50 |
| Row 291 | RD# HJ-796729 | (Year 2003) | (Area 1) | 49-50 |
| Row 292 | RD# HJ-831700 | (Year 2003) | (Area 1) | 49-50 |
| Row 293 | RD# HJ-834810 | (Year 2003) | (Area 2) | 49-50 |
| Row 294 | RD# HJ-845688 | (Year 2003) | (Area 4) | 49-50 |
| Row 295 | RD# HK-000106 | (Year 2004) | (Area 1) | 49-50 |
| Row 296 | RD# HK-106793 | (Year 2004) | (Area 1) | 49-50 |
| Row 297 | RD# HK-142414 | (Year 2004) | (Area 1) | 49-50 |
| Row 298 | RD# HK-148852 | (Year 2004) | (Area 1) | 49-50 |
| Row 299 | RD# HK-158502 | (Year 2004) | (Area 1) | 49-50 |
| Row 300 | RD# HK-165467 | (Year 2004) | (Area 1) | 49-50 |
| Row 301 | RD# HK-195199 | (Year 2004) | (Area 1) | 49-50 |
| Row 302 | RD# HK-196935 | (Year 2004) | (Area 1) | 49-50 |
| Row 303 | RD# HK-211174 | (Year 2004) | (Area 1) | 49-50 |
| Row 304 | RD# HK-222787 | (Year 2004) | (Area 1) | 49-50 |
| Row 305 | RD# HK-223040 | (Year 2004) | (Area 1) | 49-50 |
| Row 306 | RD# HK-224777 | (Year 2004) | (Area 1) | 49-50 |
| Row 307 | RD# HK-238041 | (Year 2004) | (Area 1) | 49-50 |
| Row 308 | RD# HK-238478 | (Year 2004) | (Area 1) | 49-50 |
| Row 309 | RD# HK-245772 | (Year 2004) | (Area 1) | 49-50 |
| Row 310 | RD# HK-253794 | (Year 2004) | (Area 1) | 49-50 |
| Row 311 | RD# HK-284640 | (Year 2004) | (Area 1) | 49-50 |
| Row 312 | RD# HK-316879 | (Year 2004) | (Area 1) | 49-50 |
| Row 313 | RD# HK-359543 | (Year 2004) | (Area 1) | 49-50 |
| Row 314 | RD# HK-377605 | (Year 2004) | (Area 1) | 49-50 |
| Row 315 | RD# HK-378604 | (Year 2005) | (Area 1) | 49-50 |
| Row 316 | RD# HK-404487 | (Year 2004) | (Area 1) | 51-52 |
| Row 317 | RD# HK406407 | (Year 2004) | (Area 1) | 51-52 |
| Row 318 | RD# HK416661 | (Year 2004) | (Area 1) | 51-52 |
| Row 319 | RD# HK431410 | (Year 2004) | (Area 1) | 51-52 |

| | | | | |
|---|---|---|---|---|
| Row 320 | RD# HK440539 | (Year 2004) | (Area 1) | 51-52 |
| Row 321 | RD# HK-449083 | (Year 2004) | (Area 1) | 51-52 |
| Row 322 | RD# HK-457513 | (Year 2004) | (Area 1) | 51-52 |
| Row 323 | RD# HK-457942 | (Year 2004) | (Area 1) | 51-52 |
| Row 324 | RD# HK-459545 | (Year 2004) | (Area 1) | 51-52 |
| Row 325 | RD# HK-465885 | (Year 2004) | (Area 1) | 51-52 |
| Row 326 | RD# HK-470751 | (Year 2004) | (Area 1) | 51-52 |
| Row 327 | RD# HK-479167 | (Year 2004) | (Area 1) | 51-52 |
| Row 328 | RD# HK-483176 | (Year 2004) | (Area 1) | 51-52 |
| Row 329 | RD# HK-487688 | (Year 2004) | (Area 1) | 51-52 |
| Row 330 | RD# HK-500451 | (Year 2004) | (Area 1) | 51-52 |
| Row 331 | RD# HK-526394 | (Year 2004) | (Area 1) | 51-52 |
| Row 332 | RD# HK-526818 | (Year 2004) | (Area 1) | 51-52 |
| Row 333 | RD# HK-528598 | (Year 2004) | (Area 1) | 51-52 |
| Row 334 | RD# HK-539094 | (Year 2004) | (Area 1) | 51-52 |
| Row 335 | RD# HK-558373 | (Year 2004) | (Area 1) | 51-52 |
| Row 336 | RD# HK-564062 | (Year 2004) | (Area 1) | 51-52 |
| Row 337 | RD# HK-564454 | (Year 2004) | (Area 1) | 51-52 |
| Row 338 | RD# HK-593970 | (Year 2004) | (Area 1) | 51-52 |
| Row 339 | RD# HK-598867 | (Year 2004) | (Area 1) | 51-52 |
| Row 340 | RD# HK-628944 | (Year 2004) | (Area 1) | 51-52 |
| Row 341 | RD# HK-639684 | (Year 2004) | (Area 1) | 53-54 |
| Row 342 | RD# HK-647145 | (Year 2004) | (Area 1) | 53-54 |
| Row 343 | RD# HK-663121 | (Year 2004) | (Area 1) | 53-54 |
| Row 344 | RD# HK-669797 | (Year 2004) | (Area 1) | 53-54 |
| Row 345 | RD# HK-683108 | (Year 2004) | (Area 1) | 53-54 |
| Row 346 | RD# HK-701076 | (Year 2004) | (Area 1) | 53-54 |
| Row 347 | RD# HK-746784 | (Year 2004) | (Area 1) | 53-54 |
| Row 348 | RD# HK-763869 | (Year 2004) | (Area 1) | 53-54 |
| Row 349 | RD# HK-776079 | (Year 2004) | (Area 1) | 53-54 |
| Row 350 | RD# HK-788723 | (Year 2004) | (Area 1) | 53-54 |
| Row 351 | RD# HK-792194 | (Year 2004) | (Area 1) | 53-54 |
| Row 352 | RD# HK-798753 | (Year 2004) | (Area 1) | 53-54 |
| Row 353 | RD# HK-811031 | (Year 2004) | (Area 1) | 53-54 |
| Row 354 | RD# HK-811135 | (Year 2004) | (Area 1) | 53-54 |
| Row 355 | RD# HK-823687 | (Year 2004) | (Area 4) | 53-54 |
| Row 356 | RD# HL-202732 | (Year 2005) | (Area 1) | 53-54 |
| Row 357 | RD# HL-219488 | (Year 2005) | (Area 1) | 53-54 |
| Row 358 | RD# HL-227322 | (Year 2005) | (Area 1) | 53-54 |
| Row 359 | RD# HL-236577 | (Year 2005) | (Area 1) | 53-54 |
| Row 360 | RD# HL-242938 | (Year 2005) | (Area 1) | 53-54 |
| Row 361 | RD# HL-260858 | (Year 2005) | (Area 1) | 53-54 |
| Row 362 | RD# HL-291491 | (Year 2005) | (Area 1) | 53-54 |
| Row 363 | RD# HL-307618 | (Year 2005) | (Area 1) | 53-54 |
| Row 364 | RD# HL-326591 | (Year 2005) | (Area 1) | 53-54 |
| Row 365 | RD# HL-336784 | (Year 2005) | (Area 1) | 53-54 |

Row 366    RD# HL-355032    (Year 2005)    (Area 1).......................................................53-54
Row 367    RD# HL-361793    (Year 2005)    (Area 1).......................................................55-56
Row 368    RD# HL-370043    (Year 2005)    (Area 1).......................................................55-56
Row 369    RD# HL-371164    (Year 2005)    (Area 1).......................................................55-56
Row 370    RD# HL-373670    (Year 2005)    (Area 1).......................................................55-56
Row 371    RD# HL-385610    (Year 2005)    (Area 1).......................................................55-56
Row 372    RD# HL-387017    (Year 2005)    (Area 1).......................................................55-56
Row 373    RD# HL-393632    (Year 2005)    (Area 1).......................................................55-56
Row 374    RD# HL-399677    (Year 2005)    (Area 1).......................................................55-56
Row 375    RD# HL-407548    (Year 2005)    (Area 1).......................................................55-56
Row 376    RD# HL-448514    (Year 2005)    (Area 1).......................................................55-56
Row 377    RD# HL-484055    (Year 2005)    (Area 1).......................................................55-56
Row 378    RD# HL-484812    (Year 2005)    (Area 1).......................................................55-56
Row 379    RD# HL-486965    (Year 2005)    (Area 1).......................................................55-56
Row 380    RD# HL-489874    (Year 2005)    (Area 1).......................................................55-56
Row 381    RD# HL-504078    (Year 2005)    (Area 1).......................................................55-56
Row 382    RD# HL-509628    (Year 2005)    (Area 1).......................................................55-56
Row 383    RD# HL-516150    (Year 2005)    (Area 1).......................................................55-56
Row 384    RD# HL-519786    (Year 2005)    (Area 1).......................................................55-56
Row 385    RD# HL-526827    (Year 2005)    (Area 1).......................................................55-56
Row 386    RD# HL-527629    (Year 2005)    (Area 1).......................................................55-56
Row 387    RD# HL-534365    (Year 2005)    (Area 1).......................................................57-58
Row 388    RD# HL-543584    (Year 2005)    (Area 1).......................................................57-58
Row 389    RD# HL-543691    (Year 2005)    (Area 1).......................................................57-58
Row 390    RD# HL-555606    (Year 2005)    (Area 1).......................................................57-58
Row 391    RD# HL-567137    (Year 2005)    (Area 1).......................................................57-58
Row 392    RD# HL-573690    (Year 2005)    (Area 1).......................................................57-58
Row 393    RD# HL-604727    (Year 2005)    (Area 1).......................................................57-58
Row 394    RD# HL-612170    (Year 2005)    (Area 1).......................................................57-58
Row 395    RD# HL-617116    (Year 2005)    (Area 4).......................................................57-58
Row 396    RD# HL-619201    (Year 2005)    (Area 4).......................................................57-58
Row 397    RD# HL-628024    (Year 2005)    (Area 1).......................................................57-58
Row 398    RD# HL-641342    (Year 2005)    (Area 1).......................................................57-58
Row 399    RD# HL-656289    (Year 2005)    (Area 1).......................................................57-58
Row 400    RD# HL-662200    (Year 2005)    (Area 1).......................................................57-58
Row 401    RD# HL-669557    (Year 2005)    (Area 1).......................................................57-58
Row 402    RD# HL-673823    (Year 2005)    (Area 1).......................................................57-58
Row 403    RD# HL-710670    (Year 2005)    (Area 1).......................................................57-58
Row 404    RD# HL-722490    (Year 2005)    (Area 1).......................................................57-58
Row 405    RD# HL-808159    (Year 2005)    (Area 1).......................................................59-60
Row 406    RD# HM-100890    (Year 2006)    (Area 1).......................................................59-60
Row 407    RD# HM-148888    (Year 2006)    (Area 1).......................................................59-60
Row 408    RD# HM-182777    (Year 2006)    (Area 1).......................................................59-60
Row 409    RD# HM-199438    (Year 2006)    (Area 1).......................................................59-60
Row 410    RD# HM-208287    (Year 2006)    (Area 1).......................................................59-60
Row 411    RD# HM-231046    (Year 2006)    (Area 1).......................................................59-60

9

Row 412    RD# HM-232296    (Year 2006)    (Area 1)......................................................... 59-60
Row 413    RD# HM-264904    (Year 2006)    (Area 1)......................................................... 59-60
Row 414    RD# HM-278309    (Year 2006)    (Area 1)......................................................... 59-60
Row 415    RD# HM-304212    (Year 2006)    (Area 1)......................................................... 59-60
Row 416    RD# HM-307550    (Year 2006)    (Area 1)......................................................... 59-60
Row 417    RD# HM-318752    (Year 2006)    (Area 1)......................................................... 59-60
Row 418    RD# HM-341097    (Year 2006)    (Area 1)......................................................... 61-62
Row 419    RD# HM-353304    (Year 2006)    (Area 1)......................................................... 61-62
Row 420    RD# HM-366735    (Year 2006)    (Area 1)......................................................... 61-62
Row 421    RD# HM-367019    (Year 2006)    (Area 1)......................................................... 61-62
Row 422    RD# HM-372012    (Year 2006)    (Area 1)......................................................... 61-62
Row 423    RD# HM-414793    (Year 2006)    (Area 1)......................................................... 61-62
Row 424    RD# HM-419168    (Year 2006)    (Area 1)......................................................... 61-62
Row 425    RD# HM-445290    (Year 2006)    (Area 1)......................................................... 61-62
Row 426    RD# HM-449389    (Year 2006)    (Area 1)......................................................... 61-62
Row 427    RD# HM-478600    (Year 2006)    (Area 1)......................................................... 61-62
Row 428    RD# HM-492478    (Year 2006)    (Area 1)......................................................... 61-62
Row 429    RD# HM-501773    (Year 2006)    (Area 1)......................................................... 61-62

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | E-010765 | 1983 | 4 | Cecil Robinson | YES | YES | Area Central Basement 000000002-04; Area Central Basement 000000038-39 Area Central Basement 000000044; Area Central Basement 000000057-61; Area Central Basement 000000076; Area Central Basement 000000082 Area Central Basement 000000091-95 | NO | N/A | NO | N/A | YES | Area Central Basement 0000002; Area Central Basement 0000044; Area Central Basement 0000059; Area Central Basement 0000071; Area Central Basement 0000076; Area Central Basement 0000079; Area Central Basement 0000091 | NO | N/A | YES | Area Central Basement 0000003-04 | NO | 9 Handwritten notes in file, 0 listed on Inventory | YES | Area Central Basement 0000002; Area Central Basement 0000044; Area Central Basement 0000059; Area Central Basement 0000071; Area Central Basement 0000076; Area Central Basement 0000079; Area Central Basement 0000091 | YES | Area Central Basement 0000063; Area Central Basement 00... |
| 2 | E-026792 | 1983 | 1 | Derrick Kees William Doyle JL Houston Edgar Cooksey Jackie Clay | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | CITY-NF-13115-13117 | NO | 14 Handwritten notes in file, 2 listed on Inventory; 17 To-from memos in file, 5 listed on Inventory | YES | CITY-NF-13114; CITY-NF-13120-13121; CITY-NF-13126; CITY-NF-13128; CITY-NF-13130; CITY-NF-13132; CITY-NF-13135; CITY-NF-13137; CITY-NF-13176; CITY-NF-13178; CITY-NF013191-13193; CITY-NF-13195; CITY-NF-13211 | YES | CITY-NF-13129; CITY-NF-...; CITY-NF-13156; CITY-NF-13161-13164; CITY-NF-13170; CITY-NF-13171; CITY-NF-13184-13189; CITY-NF-13202; CITY-NF-13218; CITY-NF-13220; CITY-NF-13223-13... |
| 3 | E-221919 | 1983 | 1 | Peter Saunders | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | N/A | N/A | YES | ACB 005210; ACB 005215; ACB 005220; ACB 005222; ACB 005224 | YES | ACB 0521...; 005218-5219; 005225-5... |
| 4 | E-277036 | 1983 | 4 | Ramiro Rodriguez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 005244-5245 | NO | 7 Handwritten notes in file, 0 listed on Inventory | YES | ACB 005307; ACB 005339-5340; ACB 005346-5352; ACB 005354; ACB 005356-5358 | YES | ACB 005... |
| 5 | E-348611 | 1983 | 4 | George Davis | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 005404-5405 | NO | Supp Report/Line Up Report (ACB 005367-5368) | NO | N/A | NO | N/A |
| 6 | E-395970 | 1983 | 4 | Edwardo Celedon | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 005408-5409 | NO | 14 GPRs in file, 4 listed on Inventory 13 Handwritten notes in file, 0 listed on Inventory 3 To-from memos, 1 listed on Inventory | YES | ACB 005442-5443; ACB 005455; ACB 005460-5461; ACB 005525-5526; ACB 005552; ACB 005559-5560 | YES | ACB 005410; ACB 005414; ACB 005463; ACB 005474; ACB 005527; ACB 005554; ACB 005566... |
| 7 | E-399564 | 1983 | 4 | Serafin Flores Rafael Rodriguez | YES | YES | ACB 005572-73; ACB 005578; ACB 005581; ACB 005586; ACB 005589-90; ACB 005593; ACB 005599; ACB 005601-11; ACB 005618-19; ACB 005622; ACB 005627; ACB 005633; ACB 005644; ACB 005636; ACB 005756-57; ACB 005656-563; ACB 005675-84; ACB 005693-699; ACB 005709-719; ACB 005759-78; ACB 005686 | YES | YES | NO | N/A | YES | *ACB 005586 *ACB 005608 *ACB 005627 *ACB 005686 | NO | N/A | YES | ACB 005574-77 | NO | 23 GPRs in file, 19 listed on Inventory 9 Handwritten notes in file, 0 listed on Inventory 1 To-from memo, 0 listed on Inventory | YES | ACB 005586; ACB 005608; ACB 005623; ACB 00 5650-5652; ACB 005664; ACB 005686; ACB 005759; ACB 005765-5776 | YES | ACB 005... |

Case: 23-cv-0473... Document #: 28-30 Filed: 04/06/26 Page 259 of 433 PageID #:18936

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 1 | E-010765 | 1983 | 4 | Cecil Robinson | YES | NO | N/A | YES | Area Central Basement 0000065; Area Central Basement 0000069-70; Area Central Basement 0000078 | YES | Area Central Basement 0000002; Area Central Basement 0000044; Area Central Basement 0000059; Area Central Basement 0000071; Area Central Basement 0000076; Area Central Basement 0000079; Area Central Basement 0000091 | YES | Area Central Basement 0000063; Area Central Basement 0000081 | Area Central Basement 0000050-54; Area Central Basement 0000075; Area Central Basement 0000086-89; Area Central Basement 0000066; Area Central Basement 0000080 Area Central Basement 0000073; Area Central Basement 0000083 Area Central Basement 0000084; Area Central Basement 0000094-95; Area Central Basement 0000043-45; Area Central Basement 0000067; Body Diagram (Area Central Basement 0000026) Arrest Report (Area Central Basement 0000038; Area Central Basement 0000040; Area Central Basement 0000668) Issued Stamp (Area Central Basement 0000089) Witness Statement (Area Central Basement 0000041-42) Request for Latent Fingerprint Comparison (Area Central Basement 0000046; Area Central Basement 0000064; Area Central Basement 0000072) Fingerprint Result (Area Central Basement 0000047) Lab Report (Area Central Basement 0000048; Area Central Basement 0000055-56) Latent Fingerprint Exam. Report (Area Central Basement 0000049; Area Central Basement 0000077) Case Report (Area Central Basement 0000057-58; Area Central Basement 0000060-61) Major Crime Worksheet (Area Central Basement 0000062) Attorney Letter (Area Central Basement 0000082) Business Card (Area Central Basement 0000092-93) |
| 2 | E-026792 | 1983 | 1 | Derrick Kees William Doyle JL Houston Edgar Cooksey Jackie Clay | YES | NO | N/A | YES | CITY-NF-13125-13127; CITY-NF-13167-13168; CITY-NF-13172-13183; CITY-NF-13194; CITY-NF-13208-13210; CITY-NF-13216-13219 | YES | CITY-NF-13114; CITY-NF-13120-13121; CITY-NF-13126; CITY-NF-13128; CITY-NF-13130; CITY-NF-13132; CITY-NF-13135; CITY-NF-13137; CITY-NF-13176; CITY-NF-13178; CITY-NF013391-13193; CITY-NF-13195; CITY-NF-13211 | YES | CITY-NF-13129; CITY-NF-13131; CITY-NF-13155-13156; CITY-NF-13161-13164; CITY-NF-13170; CITY-NF-13171; CITY-NF-13184-13189; CITY-NF-13202; CITY-NF-13218; CITY-NF-13220; CITY-NF-13223-13225 | CITY-NF-13196-13201; CITY-NF-13228-13229; CITY-NF-13206-13207; CITY-NF-13230-13231; CITY-NF-13232 Case Assignment Slip (CITY-NF-13112) Inv. File Control (CITY-NF13119) Form 101 (CITY-NF-13133; CITY-NF-13227) Major Crime Worksheet (CITY-NF-13134; CITY-NF-13204-13205) Case Report (CITY-NF-13136; CITY-NF-13138-13141; CITY-NF-13147-13149; CITY-NF-13152-13153) Supp Report (CITY-NF-13142-13146; CITY-NF-13150-13151) Grand Jury Subp (CITY-NF-13154; CITY-NF-13226) Major Gang Incident Report (CITY-NF-13157-13158; CITY-NF-13221-13222) Shoot/Serious Incident Report (CITY-NF-13159-13160) Secretary of State Letter (CITY-NF-13165-13166) Polygraph Case Report (CITY-NF-13190) Release of Person in Custody (CITY-NF-13215) |
| 3 | E-221919 | 1983 | 1 | Peter Saunders | YES | N/A | N/A | YES | ACB 005217 | YES | ACB 005210; ACB 005215; ACB 005220; ACB 005222; ACB 005224 | YES | ACB 005214; ACB 005218-5219; ACB 005225-5226 | ACB 005207; ACB 005208; ACB 005209; ACB 005221; ACB 005223 Copy of Envelope (ACB 005206) Business Card (ACB 005211-5212) Inv. File Control (ACB 005213) Chicago Patrolmen's Assoc. (ACB 005216; ACB 005238-5239) Supp Report (ACB 005240-5242) |
| 4 | E-277036 | 1983 | 4 | Ramiro Rodriguez | YES | NO | N/A | YES | ACB 005317-5338 | YES | ACB 005307; ACB 005339-5340; ACB 005346-5352; ACB 005354; ACB 005356-5358 | YES | ACB 005309 | ACB 005287-5292; ACB 005311; ACB 005306; ACB 005345-5352; ACB 005355-5358; ACB 005360; ACB 005359; ACB 005361; ACB 005362-5364; ACB 005280; ACB 005285; ACB 005293-5296; ACB 005302-5305; ACB 005343 Supp Report (ACB 005246-5255; ACB 005274-5277) Case Report with Handwritten notes (ACB 005278-5279) Letter to FBI (ACB 005281-5282) Daily Major Incident Log (ACB 005283-5284) Stop Order (ACB 005286) Arrest Report (ACB 005297) Form 101 (ACB 005298) Fingerprint Sheet (ACB 005299-5301; ACB 005310) Commanding Officer Notice Form (ACB 005308) Clear Data Warehouse (ACB 005312) Witness Statement (ACB 005313-5316) Copy of Envelope (ACB 005344) Business Card (ACB 005353) Form 101 (ACB 005366) Supp Reports (ACB 005367-5368) |
| 5 | E-348611 | 1983 | 4 | George Davis | YES | YES | YES | NO | N/A | NO | N/A | NO | N/A | |
| 6 | E-395970 | 1983 | 4 | Edwardo Celedon | YES | NO | N/A | YES | ACB 005415; ACB 005441; ACB 005452-5453; ACB 005457-5459; ACB 005475; ACB 005524; ACB 005549-5550; ACB 005556-5558 | YES | ACB 005442-5443; ACB 005455; ACB 005460-5461; ACB 005525-5526; ACB 005527; ACB 005554; ACB 005552; ACB 005559-5560 | YES | ACB 005410; ACB 005414; ACB 005463; ACB 005474; ACB 005527; ACB 005554; ACB 005562 | ACB 005430-5435; ACB 005507-5512; ACB 005447; ACB 005451; ACB 005534; ACB 005547-5548; ACB 005448; ACB 005528; ACB 005535-5537; ACB 005426; ACB 005456; ACB 005498; ACB 005555; ACB 005570; Case Assignment Slip (ACB 005407); Arrest Report (ACB 005412; ACB 005470); Form 101 (ACB 005413; ACB 005425; ACB 005437; ACB 005471; ACB 005473; ACB 005494-5495; ACB 005497; ACB 005516); Extradition Order (ACB 005416; ACB 005476); AT&T Bill (ACB 005417-5424); Stop Order (ACB 005427-5429; ACB 005446; ACB 005450; ACB 005502-5505; ACB 005532; ACB 005546); Grand Jury Subp (ACB 005436; ACB 005496; ACB 005515); Material Submitted for Daily Bulletin (ACB 005438; ACB 005517); Arrest Warrant (ACB 005439; ACB 005522); Complaint (ACB 005440; ACB 005523); Latent Fingerprint Exam. Report (ACB 005444; ACB 005530); Receipt for Exhibits (ACB 005445; ACB 005531); Body Diagram (ACB 005449; ACB 005545); Arrest Information Card (ACB 005454; ACB 005551); Major Crime Worksheet (ACB 005462; ACB 005553; ACB 005561); Emergency Room Record (ACB 005464; ACB 005563); Illinois Bell Records (ACB 005482-5489); Wanted Card (ACB 005491); Inv. File Control (ACB 005571) |
| 7 | E-399564 | 1983 | 4 | Serafin Flores Rafael Rodriguez | YES | YES | YES | YES | ACB 005582; ACB 005594-5598; ACB 005665-5669; ACB 005701-5705; ACB 005748-5755 | YES | ACB 005586; ACB 005608; ACB 005623; ACB 00 5650-5652; ACB 005664; ACB 005686; ACB 005759; ACB 005765-5776 | YES | ACB 005599 | ACB 005612-5617; ACB 005629-5630; ACB 005647-5649; ACB 005653-5655; ACB 005732-5734; ACB 005600; ACB 005620-5621; ACB 005670-5671; ACB 005758-5778; ACB 005585; ACB 005597; ACB 005632; ACB 005635-5644; ACB 005691; ACB 005737 Case Assignment Slip (ACB 005573) Form 101 (ACB 005581; ACB 005603) Fingerprint Sheet (ACB 005583-5584; ACB 005634) Towed Vehicle Disposition (ACB 005587-5588; ACB 005591) Latent Fingerprint Exam. Report (ACB 005592; ACB 005628) Stop Order (ACB 005624-5627; ACB 005631; ACB 005672-5674; ACB 005735; ACB 005746) Wanted Card (ACB 005633) Arrest Warrant (ACB 005685; ACB 005687; ACB 005689-5690) Complaint (ACB 005688) Vehicle Tow Report (ACB 005700) Body Diagram (ACB 005706) Report (cut off) (ACB 005707) Arrest Report (ACB 005720-5731; ACB 005736; ACB 005747) Inv. File Control (ACB 005756) |

Case: 1:10-cv-01432 Document #: 383-30 Filed: 04/06/17 Page 261 of 433 PageID #:10682

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON *Items in the Investigative File missing from the Criminal Defense Attorney File* | | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS? |
| 8 | E-442815 | 1983 | 1 | Kevin Truitt | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | N/A | N/A | YES | ACB 005798; ACB 005852-5855; ACB 005887-5892; ACB 005910-5924 | YES | ACB 00583... ACB 005880; ACB 00592... |
| 9 | E-475100 | 1983 | 1 | Joseph Walker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | N/A | N/A | YES | ACB 005948-5963; ACB 005967; ACB 005976-5977; ACB 005980; ACB 005986-5988; ACB 006003; ACB 006007; ACB 006010; ACB 006015; ACB 006017; ACB 006021 | YES | ACB 00598...; ACB 00600...; 006004-600...; 006009; 006011; ACB 006023; ACB 006027; ACB 006025... |
| 10 | F-048933 | 1984 | 4 | Christino Garcia | YES | YES | ACB 006051; ACB 006053; ACB 006078;ACB 006118-19; ACB 006122-25; ACB 006083; ACB 006096; ACB 006115; ACB 006120-21; ACB 006126-65; | YES | YES | NO | N/A | YES | ACB 006051; ACB 006053; ACB 006083; ACB 006096; ACB 006115; ACB 006148 | YES | ACB 006150 | YES | ACB 006038 -6039 | NO | 6 Handwritten notes in file, 0 listed on Inventory 2 To-from memos in file, 0 listed on Inventory | YES | ACB 006051; ACB 006083; ACB 006085; ACB 006096; ACB 006115 | YES | ACB 00607...; ACB 006150 |
| 11 | F-172852 | 1984 | 3 | Jose Rodriguez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 006168 | NO | Arrest Info Card (6186) 3 Court Attendance sheets in file, 1 listed on Inventory | YES | ACB 006206-08 | NO | N/A |
| 12 | F-177096 | 1984 | 4 | Byron Hammons | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 006213 | NO | 19 pages of GPRs/Handwritten notes in file, 13 pages of Notes/GPRs on inventory | YES | ACB 006222; ACB 006253; ACB 006255; ACB 006284 | NO | N/A |
| 13 | F-229020 | 1984 | 3 | James Grant | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 090457 - 90459 | NO | 18 GPRs in file, 17 listed on Inventory 21 Handwritten notes in file, 14 listed on Inventory 2 To-from memos in file, 0 listed on Inventory | YES | ACB 090482-90483; ACB 090491; ACB 090506; ACB 090517; ACB 090545-90548; ACB 090550-90553; ACB 090571-90573; ACB 090579-90580; ACB 090588; ACB 090590; ACB 090592; ACB 090598; ACB 090614-90615 | YES | ACB 09... |
| 14 | F-229039 | 1984 | 1 | Richard Phillips | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | N/A | N/A | NO | N/A | NO | N/A |

| IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 8 | E-442815 | 1983 | 1 | Kevin Truitt | YES | N/A | N/A | NO | N/A | YES | ACB 005798; ACB 005852-5855; ACB 005887-5892; ACB 005910-5924 | YES | ACB 005838-5839; ACB 005880; ACB 005925 | ACB 005879; ACB 005893-5896; ACB 005900-5923; ACB 005863; ACB 005865-5867; ACB 005885 <br> Grand Jury Subp (ACB 005840-5843; ACB 005872) <br> Form 101 (ACB 005844-5848; ACB 005870-5871) <br> Phone Records (ACB 005849-5851) <br> Vehicle Tow Report (ACB 005859-5860; ACB 005881-5884) <br> Teletype Message (ACB 005861-5862) <br> Stop Order (ACB 005864; ACB 005886) <br> Latent Fingerprint Exam Report (ACB 005868-5869) <br> Daily Bulletin (ACB 005873-5878) <br> Crime Analysis Pattern (ACB 005891) <br> Copy of Envelope (ACB 005898-5899) <br> Case Report (ACB 005926-5927) <br> Supp Report (ACB 005928-5931) |
| 9 | E-475100 | 1983 | 1 | Joseph Walker | YES | N/A | N/A | YES | ACB 005973; ACB 005979-5984; ACB 005994; ACB 005998-6002; ACB 006014-6020 | YES | ACB 005948-5963; ACB 005967; ACB 005976-5977; ACB 005980; ACB 005986-5988; ACB 006003; ACB 006007; ACB 006010; ACB 006015; ACB 006017; ACB 006021 | YES | ACB 005989-5997; ACB 006000; ACB 006004-6005; ACB 006009; ACB 006011; ACB 006023; ACB 006027; ACB 006029 | ACB 005933-5934; ACB 005965-5966; ACB 005964; ACB 005974-5975; ACB 006022 <br> ID Cards (ACB 005935-5942) <br> Bank cards (ACB 005943-5946) <br> Business card (ACB 005947) <br> Supp Report (ACB 005968-5969; ACB 005971-5972) <br> Case Report (ACB 005970) <br> Release of Person in Custody (ACB 005978) <br> Major Crime Worksheet (ACB 005985; ACB 006028) <br> Calendar (ACB 006012-6013) |
| 10 | F-048933 | 1984 | 4 | Christino Garcia | YES | NO | N/A | YES | ACB 006080; ACB 006106 – 6114; ACB 006116 | YES | ACB 006051; ACB 006083; ACB 006085; ACB 006096; ACB 006115 | YES | ACB 006072 | ACB 006065 – 6069; ACB 006052 - 6053; ACB 006054 – 6055; ACB 006056; ACB 006090; ACB 006120 - 6121 <br> •ACB 006118 - 6119; ACB 006050; ACB 006095; General Offense Case Report: ACB 006040; Supplementary Report: ACB 006042-6043; ACB 006045 – 6048; ACB 006062; Request for Latent Fingerprint Comparison: ACB 006049; Typed Record: ACB 006064; 101's: ACB 006073; ACB 006075; Grand Jury Subpoena: ACB 006074; Daily bulletin: ACB 006077; Daily hot sheet: ACB 006078; Latent Fingerprint Examination Report: ACB 006081; Request for Fingerprint Comparison: ACB 006082; Material Submitted for use in the daily bulletin: ACB 006084; Stop Order Cancellation Request: ACB 006086 – 6087; Body Diagram: ACB 006098; City of Chicago, Department of Police envelope: ACB 006117; Illinois Driver's license: ACB 006122; Typed attorney contact information: ACB 006123; Investigative File Control: ACB 006124 – 6125; ACB 006165; Vehicle status record: ACB 006126 – 6138; Secretaria De Relaciones Exteriores Envelope and letter: ACB 006139 – 6141; Phone service and equipment print out: ACB 006142 – 6147; Business Card: ACB 006148 – 6149; Typed Memo: ACB 006150; Firestone invoice: ACB 006151 – 6152; State of Illinois office of the Secretary of State certificate: ACB 006153; Vehicle certificate of title: ACB 006154; ACB 006157 - 6159; Affidavit: ACB 006155; Certified copy of title history covering: ACB 006160 - 6164 |
| 11 | F-172852 | 1984 | 3 | Jose Rodriguez | YES | NO | N/A | YES | ACB 006200 – 6205; ACB 006209 - 6211 | YES | ACB 006206-08 | NO | N/A | ACB 006180 – 6184; ACB 006191 – 6193; ACB 006196; ACB 006197 - 6198; Major Crime Worksheet: ACB 006199 <br> Investigation File Control: ACB 006170 <br> Court Attendance Report: ACB 006179; ACB 006187; ACB 006188 <br> Arrest Information: ACB 006186 <br> Arrest Report: ACB 006189 <br> 101s: ACB 006190 <br> Latent Fingerprint Exhibit: ACB 006194 – 6195 |
| 12 | F-177096 | 1984 | 4 | Byron Hammons | YES | NO | N/A | YES | ACB 006232; ACB 006244; ACB 006254; ACB 006270; ACB 006281 – 6283; ACB 006285 - 6291 | YES | ACB 006222; ACB 006253; ACB 006255; ACB 006284 | NO | N/A | ACB 006216 - 6220; ACB 006275; ACB 006276; ACB 006251; ACB 006252; ACB 006272; ACB 006273 - 6274; ACB 006268 - 6269; ACB 006221; ACB 006233; ACB 006246; ACB 006271; Supplementary Report: ACB 006259 <br> CPD repot: ACB 006227 <br> Court Attendance Report: ACB 006228 <br> Body Diagram: ACB 006231 <br> Statement: ACB 006242 – 6243 <br> Arrest Warrant: ACB 006245 <br> 101s: ACB 006277 <br> Arrest Report: ACB 006278 <br> Statement: ACB 006279 – 6280 <br> Investigative File Control: ACB 006292 |
| 13 | F-229020 | 1984 | 3 | James Grant | YES | NO | N/A | YES | ACB 090475 – 90481; ACB 090484; ACB 090544; ACB 090554; ACB 090574 – 90577; ACB 090581; ACB 090583; ACB 090586 | YES | ACB 090482-90483; ACB 090491; ACB 090506; ACB 090517; ACB 090545-90548; ACB 090550-90553; ACB 090571-90573; ACB 090579-90580; ACB 090588; ACB 090590; ACB 090592; ACB 090598; ACB 090614-90615 | YES | ACB 090595 | ACB 090496 - 90501; ACB 090473; ACB 090474; ACB 090490; ACB 090495; ACB 090509 – 90510; ACB 090511 – 90512; ACB 090513 – 90514; ACB 090558; ACB 090603 - 90613; ACB 090463; ACB 090464; ACB 090488; ACB 090493; ACB 090494; ACB 090556; ACB 090560; ACB 090562; ACB 090564; ACB 090558; ACB 090585 <br> Case Assignment Slip: ACB 090460 <br> Arrest Report: ACB 090485; ACB 090486; ACB 090487; ACB 090556; ACB 090594 <br> Arrest Information/Chicago Police: ACB 090489; ACB 090570 <br> Latent Fingerprint Examination Report: ACB 090492 <br> Stop Order or Cancellation Request: ACB 090502 – 90505 <br> Court Attendance Report: ACB 090509 – 90508 <br> Receipt for Exhibits: ACB 090515; ACB 090516 <br> Permit Items Slip: ACB 090518 <br> CPD form: ACB 090521; ACB 090525 <br> Case Report: ACB 090527; ACB 090528; ACB 090529 - 90530 <br> Misdemeanor Complaint: ACB 090549 <br> Major Crime Worksheet: ACB 090578 <br> Typed Memo: ACB 090590; ACB 090600 <br> Identification Index: ACB 090593 <br> Response to Defendant's Memo to Dismiss: ACB 090596 <br> Chicago Police Intra-Departmental Mail Envelope: ACB 090602 |
| 14 | F-229039 | 1984 | 1 | Richard Phillips | YES | N/A | N/A | YES | ACB 006316 | NO | N/A | NO | N/A | Arrest Report: ACB 006313; ACB 006314 <br> 101's: ACB 006315 <br> General Offense Case Report: ACB 006317 |

Case: 1:23-cv-04438 Document #: 383-39 Filed: 04/06/24 Page 263 of 433 PageID #:18884

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | IDENTIFYING INFORMATION — HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON — Items in the Investigative File missing from the Criminal Defense Attorney File — ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | INVESTIGATIVE FILE INFORMATION — DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 | F-277122 | 1984 | 1 | Robert Davis Darryll Reid | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 006321 – 6323; ACB 006466 -6467 | NO | 14 GPRs in file, 12 listed on Inventory 6 Handwritten notes in file, 0 listed on Inventory | YES | ACB 006347; ACB 006349; ACB 006358; ACB 006368; ACB 006407 | NO | N/A |
| 16 | F-299912 | 1984 | 3 | Armando Valdez, Javier Garcia | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 006514 | NO | 6 Handwritten notes in file, 3 listed on Inventory | YES | ACB 006576; ACB 006580; ACB 006586-87; ACB 006589; ACB 006595 | NO | N/A |
| 17 | F-308281 | 1984 | 3 | Joe Metoxen | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 006614-6615 | NO | 14 GPRs in file, 13 listed on Inventory 4 Handwritten notes in file, 1 listed on Inventory | YES | ACB 006639; ACB 006658 | NO | N/A |
| 18 | F-336114 | 1984 | 3 | Elroy Morgan | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 006919-6921 | NO | 19 Handwritten notes in file, 13 listed on Inventory | YES | ACB 006922-23; ACB 006952-53; ACB 006959; ACB 006992; ACB 006996; ACB 007003-05; ACB 007007; ACB 007009-18; ACB 007022; ACB 007033 | YES | ACB 006960 |
| 19 | F-380662 | 1984 | 4 | Lindsey Cannon | YES | YES | ACB 007075-77; ACB 007087; ACB 007123; ACB 007137; ACB 007141-44; ACB 007158; ACB 007171-96 | NO | N/A | YES | ACB 007179 - 7180 | NO | N/A | NO | N/A | YES | ACB 007075 | NO | 6 Handwritten notes in file, 0 listed on Inventory | YES | ACB 007135; ACB 007160 | NO | N/A |
| 20 | F-430186 | 1984 | 1 | Terrance Brown | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | N/A | N/A | YES | ACB 007310; ACB 007312; ACB 007328; ACB 007330 | YES | ACB 007... |

**PERMANENT RETENTION FILE COMPARISON**
*Items in the Investigative File missing from the Permanent Retention File*

| | IDENTIFYING INFORMATION | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| 15 | F-277122 | 1984 | 1 | Robert Davis; Darryl Reid | YES | NO | N/A | | | | | NO | N/A | ACB 006329 – 6334; ACB 006400; ACB 006402; ACB 006408; ACB 006409 – 6410; ACB 006411; ACB 006412; ACB 006413; ACB 006414; ACB 006416; ACB 006415; ACB 006401; ACB 006441; ACB 006442; ACB 006444; ACB 006457; ACB 006405; ACB 006406; ACB 006417; ACB 006469 – 6473; ACB 006475 – 6481; ACB 006483 – 6491; ACB 006493; ACB 006496; ACB 006494 – 6495; ACB 006497 – 6519; ACB 006511; ACB 006348; Court Attendance Report: ACB 006324 – 6328; ACB 006335 – 6339; ACB 006356; ACB 006359 Investigative Request to the Chicago Police Department Crime Lab: ACB 006340 Fingerprint submission sheet: ACB 006343 Request for Latent Fingerprint Comparison: ACB 006346 Firearms Receipt & Worksheet: ACB 006348 Latent Fingerprint Examination Report: ACB 006352; ACB 006353 Statement: ACB 006381 – 6397; ACB 006418 – 6429; ACB 006430 – 6431; ACB 006432; ACB 006433 – 6445; ACB 006446 – 6447; ACB 006448 – 6449 Step Order/Missing Person primout: ACB 006399; ACB 006404 Juvenile Field Arrest Report: ACB 006450 Arrest Report: ACB 006451 General offense case report: ACB 006452 – 6453 Chicago Police Inter-Departmental Mail Envelope: ACB 006468 Envelope: ACB 006474; ACB 006482; ACB 006492 |

| 16 | F-299912 | 1984 | 3 | Armando Valdez; Javier Garcia | YES | NO | N/A | YES | ACB 006360 – 6367; ACB 006369 – 6372; ACB 006398; ACB 006403 | YES | ACB 006347; ACB 006349; ACB 006358; ACB 006368; ACB 006407 | NO | N/A | ACB 006578; ACB 006581; ACB 006544; ACB 006579; ACB 006584; ACB 006518 – 6524; ACB 006611 ACB 006597 – 6610; ACB 006525 – ACB 006548; Major Crime Worksheet: ACB 006588 Investigative File Control: ACB 006516 Envelope: ACB 006517 Court Attendance Report: ACB 006526 – 6527; ACB 006540 – 6541 Order: ACB 006643 Statement: ACB 006547 – 6556; ACB 006557 – 6568 Latent Fingerprint Examination Report: ACB 006569; ACB 006571 Case Assignment Slip: ACB 006570 Arrest Report: ACB 006572 – 6573 Vehicle Tow Report: ACB 006574 Criminal Investigation Division form: ACB 006577 Receipt for Exhibits: ACB 006581 – 6582 Chicago Police Intra-Departmental Mail Envelope: ACB 006596 |

| 17 | F-308281 | 1984 | 3 | Joe Menxem | YES | YES | YES | YES | ACB 006656 – 6657; ACB 006659 – 6661; ACB 006664 – 6665; ACB 006667 – 6669; ACB 006672 – 6675 | YES | ACB 006639; ACB 006658 | NO | N/A | ACB 006670 – 6671; ACB 006634; ACB 006640; ACB 006666; ACB 006619; ACB 006635; ACB 006638 Case Assignment Slip: ACB 006617 Investigative File Control: ACB 006618 Court Attendance Report: ACB 006620 Report: ACB 006630 – 6631; ACB 006632 – 6633 Latent Fingerprint Examination Report: ACB 006637 Statement: ACB 006642 – 6655 Vehicle Tow Report: ACB 006662 |

| 18 | F-336114 | 1984 | 3 | Elroy Morgan | YES | YES | YES | YES | ACB 006987 – 6991; ACB 006993 – 6995; ACB 006997 – 7002 | YES | ACB 006922–23; ACB 006952-51; ACB 006959; ACB 006992; ACB 006996; ACB 007003-05; ACB 007007; ACB 007009-18; ACB 007022; ACB 007033 | YES | ACB 006886 | ACB 006933 – 6936; ACB 007020 – 7021; ACB 006958; ACB 006984; ACB 006985; ACB 006937; ACB 006968; ACB 006974; ACB 006978 – 6979; ACB 007038 – 7051; ACB 007054 – 7064; ACB 007072 ACB 007065 – 7071; AB 006938; ACB 006971; ACB 006975; ACB 006976; ACB 006980; ACB 006981; ACB 007024; ACB 007025 Major Crime Worksheet: ACB 006942 Arrest Report: ACB 006969; ACB 007026; ACB 007027 Arrest Information: ACB 006970; ACB 006973; ACB 006977; ACB 006982; ACB 007028 101's: ACB 006972 Supplementary Report: ACB 007006; ACB 007008; ACB 007023 Court Attendance Report: ACB 007019 Fingerprint form: ACB 007029 – 7032 Chicago Police Intra-Departmental Mail Envelope: ACB 007034 Envelope: ACB 007035 – 7036 Business Card: ACB 007037 Driver's License: ACB 007052 – 7053 Suspects Page Response: ACB 007073 |

| 19 | F-380662 | 1984 | 4 | Lindsey Cannon | YES | NO | N/A | YES | ACB 007106 – 7118; ACB 007145 – 7146; ACB 007152 – 7156; ACB 007167; ACB 007179 – 7180 | YES | ACB 007135; ACB 007160 | NO | N/A | ACB 007088 – 7092; ACB 007105; ACB 007086; ACB 007147; ACB 007119; ACB 007120; ACB 007161 – 7162; ACB 007087; ACB 007121; ACB 007122; ACB 007183 – 7195; ACB 007182; ACB 007142; ACB 007171; ACB 007172 Receipt for Exhibits: ACB 007123 Statement: ACB 007124 – 7134 Arrest Report: ACB 007136; ACB 007137; ACB 007138; ACB 007141; ACB 007173; ACB 007174; ACB 007175; ACB 007176; ACB 007177; ACB 007178 General Offense Case Report: ACB 007143 – 7144 Arrest Card: ACB 007158 Body Diagram: ACB 007170 City of Chicago Envelope: ACB 007181 Investigative File Control: ACB 007196 |

| 20 | F-430186 | 1984 | 1 | Terrance Brown | YES | N/A | N/A | YES | ACB 007308; ACB 007309; ACB 007311; ACB 007319; ACB 007320 | YES | ACB 007310; ACB 007312; ACB 007328; ACB 007330 | YES | ACB 007307 | ACB 007318; ACB 007313; ACB 007316; ACB 007317 Arrest Report: ACB 007314 Arrest Information: ACB 007315 Field Inquiry Sheet: ACB 007327 Body Diagram: ACB 007343 – 7344 |

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21 | F-445484 | 1984 | 4 | Louis Foster | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 007358 – 7359 | NO | 2 Handwritten notes in file, 0 listed on Inventory; 1 To-from memo in file, 0 listed on Inventory | YES | ACB 007361; ACB 007389; ACB 007391; ACB 007448 | NO | N/A |
| 22 | F-492465 | 1984 | 3 | Jose Estrada | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 007565-7567 | NO | 37 GPRs in file, 36 listed on Inventory; 22 Handwritten notes in file, 20 listed on Inventory; 6 To-from memos in file, 0 listed on Inventory | YES | ACB 007624; ACB 007645; ACB 007651; ACB 007685; ACB 007715; ACB 007718-7720; ACB 007727-7731; ACB 007747 | YES | ACB 007625; 007635-7636; 007686 |
| 23 | G-011265 | 1985 | 1 | Leonard Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 008829 | NO | 9 Handwritten notes in file, 1 listed on Inventory | YES | ACB 008849; ACB 008877; ACB 008888; ACB 008894; ACB 008896; ACB 008898; ACB 008900; ACB 008902; ACB 008904 | NO | N/A |
| 24 | G-011889 | 1985 | 1 | Earl Stademeyer | YES | YES | ACB 008911; ACB 008913; ACB 008941-42; ACB 008952; ACB 008971-78 | YES | NO - additional entries after 6/28/1985 (ACB 008911 in Inv. file; CRIM.DEF FILES - FIELDS 041036-41037 in PD file) | NO | N/A | YES | *ACB 008952 | NO | N/A | YES | ACB 008911 - 8912 | NO | 13 GPRs in file, 12 on Inventory; 2 Handwritten notes in file, 0 listed on Inventory; 4 To-from memos in file, 2 listed on Inventory | YES | ACB 008917; ACB 008952 | YES | ACB 008952; 008953; 008968; 008969 |
| 25 | G-014815 | 1985 | 1 | Guy Johns | YES | YES | ACB 008987; ACB 008989-90; ACB 008992; ACB 009007-09; ACB 009067; ACB 009091-93 | YES | NO - additional entries after 7/5/1985 (ACB 008986-8987 in Inv. File; CRIM.DEF FILE - FIELDS 047677-47678 in PD file) | NO | N/A | YES | ACB 008992; ACB 009067; ACB 009091 | NO | N/A | YES | ACB 008986 - 8987 | NO | 19 GPRs in file, 12 listed on Inventory; 7 Handwritten notes in file, 0 listed on Inventory | YES | ACB 009006; ACB 009065; ACB 009067; ACB 009089; ACB 009091; ACB 009101; ACB 009103; ACB 009105 | NO | N/A |
| 26 | G-027619 | 1985 | 1 | Decco Brown | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 009114 | NO | 11 GPRs in file, 2 listed on Inventory; 7 Handwritten notes in file, 0 listed on Inventory; 1 To-from memo in file, 0 listed on Inventory | YES | ACB 009134; ACB 009138; ACB 009164; ACB 009166; ACB 009168; ACB 009170; ACB 009172 | YES | ACB 00... |
| 27 | G-032161 | 1985 | 1 | Jerome Jackson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 009174 | NO | 1 Handwritten note in file, 0 listed on Inventory | YES | ACB 009207 | NO | N/A |
| 28 | G-049257 | 1985 | 1 | Joe Brooks | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 009422 | YES | N/A | NO | N/A | NO | N/A |

Case: 1:23-cv-04433 Document #: 383-39 Filed: 04/06/26 Page 266 of 433 PageID #:18887

| | IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 21 | F-445484 | 1984 | 4 | Louis Foster | YES | NO | N/A | YES | ACB 007386 – 7388; ACB 007390; ACB 007392 - 7394 | YES | ACB 007361; ACB 007389; ACB 007391; ACB 007448 | NO | N/A | ACB 007362 – 7366; ACB 007370 – 7371; ACB 007410 – 7413; ACB 007420 - 7423; ACB 007372; ACB 007374; ACB 007368; ACB 007373; ACB 007380; Investigative File Control: ACB 007357; ACB 007425; Receipt for Exhibits: ACB 007367;  Latent Fingerprint Examination Report: ACB 007369; Body Diagram: ACB 007379; Chess Memo: ACB 007395; ACB 007405; Original Case Incident Report: ACB 007396 – 7398; Case Supplementary Report: ACB 007399 – 7400; ACB 007401 – 7404; ACB 007406 – 7409; ACB 007414 – 7419; Envelope: ACB 007424; Saint Charles Saints: ACB 007426; Social Security Card: ACB 007427 – 7428; Talisman Marabaki card: ACB 007429 – 7430; Lottery Card: ACB 007431 – 7440; Delivery Reminder or Receipt: ACB 007441 – 7442; Business Card: ACB 007443; Chicago Boys Clubs membership card: ACB 007444 – 7445; Armando's card: ACB 007446; Taste of Chicago 50 cent value: ACB 007447 – 7448 |
| 22 | F-492465 | 1984 | 3 | Jose Estrada | YES | NO | N/A | YES | ACB 007623; 7676 – 7677; 7678 – 7679; 7680 – 7681; 7682; 7683; 7684; 7687 – 7688; 7689; 7690 – 7691; 7692 – 7693; 7694; 7695 – 7696; 7697; 7698; 7699; 7700; 7701; 7702; 7704; 7705; 7706; 7707; 7708; 7709; 7710; 7711; 7712; 7713; 7714; 7716; 7717; 7732; 7733; 7734 | YES | ACB 007624; ACB 007645; ACB 007651; ACB 007685; ACB 007715; ACB 007718-7720; ACB 007727-7731; ACB 007747 | YES | ACB 07625; ACB 07635 – 7636; ACB 07686 | Inventory Number 140826: ACB 007656; Inventory Number 13080: 7661; Inventory Number 151602: 7662 – 7663; Inventory of things Seized in Search form: 7664; ACB 007616 – 7617; 7657 – 7658; 7660; Person: ACB 007751 – 7764; 7766 – 7776; 7784; Scene:  7777 – 7783; ACB 007568 – 7570; 7650; 7665; 7738; 7739 Supplementary report: 7722 – 7724; 7725; 7735 – 7736; 7737 Case Assignment Slip: 7562 Inventory File Control: 7563 – 7567 Major Crime Worksheet: 7613; 7721 Statement: 7620 – 7622; 7646 – 7647; 7648; 7652 - 7654 Letter: 7626; 7627; 7628 – 7629; 7630 – 7631; 7632 – 7633; 7634 Brea Police Department Special Service Sheet: 7637 – 7641; 7666 - 7667 Fingerprints: 7642; 7671 – 7672; 7675; 7743 - 7746 Illinois Certificate of title of a vehicle: 7643 – 7644 Illinois Vehicle Registration: 7645 Arrest Warrant: 7649 A&T Communications Itemized Calls: 7655 Latent Fingerprint Examination Report: 7659 Department of California Highway Patrol form: 7668 Orange-County Jail Pre Booking Record: 7669; 7673 Brea Police Department Certificate of Release: 7670; 7674 Arrest Report: 7740; 7741 Arrest Information: 7742 Chicago Police Intra-Departmental Mail: 7748 Envelope: 7749 Card: 7750 Illinois Driver's License: 7765 Soundex Page Response: 7785 |
| 23 | G-011265 | 1985 | 1 | Leonard Williams | YES | NO | N/A | YES | ACB 008887; ACB 008889; ACB 008890; ACB 008891; ACB 008892; ACB 008893; ACB 008895; ACB 008897; ACB 008899; ACB 008901 | YES | ACB 008849; ACB 008877; ACB 008888; ACB 008894; ACB 008896; ACB 008898; ACB 008900; ACB 008902; ACB 008904 | NO | N/A | Property Inventory #161756: 8847; Property Inventory #161755: 8848; Property Inventory #151276: 8861; Property Inventory #151277: 8862; Property Inventory #151274: 8863; Property Inventory #148620: 8903; 8850; 8864; 8906; Person/People: 8830; 8876 Investigative File Control: 8831 Court Attendance Report: 8832 Body Diagram: 8833; 8867 Statement: 8853 – 8860; 8868 – 8875 101's: 8905 Vehicle Tow Report: 8909 |
| 24 | G-011889 | 1985 | 1 | Earl Stademeyer | YES | NO | N/A | YES | ACB 008915 – 8916; ACB 008918 - 8928 | YES | ACB 008917; ACB 008952 | YES | ACB 008951; ACB 008953; ACB 008968; ACB 008969 | 8929 – 89 42; Property Inventory #151278: 8971; Property Inventory #151279: 8972; Property Inventory #151280: 8973; Property Inventory #151281: 8974; Property Inventory #148621: 8975; Property Inventory #148622: 8976; Property Inventory #148623: 8977; Property Inventory #148624: 8978; 8945; 8947 - 8948; 8979; 8980; Investigative File Control: 8913 Court Attendance Report: 8914; 8943; 8944 Release of Person in Custody: 8970 101's: 8981 Search consent: 8982 |
| 25 | G-014815 | 1985 | 1 | Guy Johns | YES | NO | N/A | YES | ACB 009026 – 9030; ACB 009063 – 9064; ACB 009080 – 9087; ACB 009097; ACB 009100; ACB 009102; ACB 009104 | YES | ACB 009006; ACB 009065; ACB 009067; ACB 009089; ACB 009091; ACB 009101; ACB 009103; ACB 009105 | NO | N/A | 9007 – 9009; 9041; Property Inventory #161748: 9066 Property Inventory #158040: 9094 Property Inventory #158041: 9095 Property Inventory #158042: 9096; 9005; 9025; 9050; 9090 Chicago Police Intra-Departmental Mail envelope: 8988 Investigative File Control: 8990 Latent Fingerprint Examination Report: 9010; 9035 Body Diagram: 9038 – 9040; 9092 - 9093 Receipt for Exhibits: 9088 Arrest Information: 9098 – 9099; 9112 Court Attendance Report: 9000; 9004 |
| 26 | G-027619 | 1985 | 1 | Decco Brown | YES | NO | N/A | YES | ACB 009131 – 9137; ACB 009163; ACB 009165; ACB 009167; ACB 009169; ACB 009171 | YES | ACB 009134; ACB 009138; ACB 009164; ACB 009166; ACB 009168; ACB 009170; ACB 009172 | YES | ACB 009128 | 9119 - 9125; Property Inventory #165289: 9153; 9116; 9158; 9117; 9118; 9129; Investigative File Control: 9115 Court Attendance Report: 9146 Identification Check Procedure Control: 9127 To-From: Complaint for Preliminary Examination: 9130 Diagram: 9156 – 9157 Statement: 9161 - 9162 |
| 27 | G-032161 | 1985 | 1 | Jerome Jackson | YES | NO | N/A | NO | N/A | YES | ACB 009207 | NO | N/A | 9176 - 9181; Property Inventory #14682: 9205; Investigative File Control: 9175 Statement: 9200 – 9203 101's: 9204 |
| 28 | G-049257 | 1985 | 1 | Joe Brooks | YES | NO | N/A | NO | N/A | NO | N/A | NO | N/A | 9426 - 9432; Property Inventory #167719: 9439; Investigative File Control: 9423 Court Attendance Report: 9425 Body Diagram: 9435 |

Case: 1:23-cv-01438 Document #: 383-30 Filed: 04/06/20 Page 267 of 433 PageID #:18004

| | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON — Items in the Investigative File missing from the Criminal Defense Attorney File | | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **IDENTIFYING INFORMATION** RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
| 29 G-051225 | 1985 | 1 | Jerry Monden | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 009444 | NO | 12 GPRs in file, 1 listed on Inventory 6 Handwritten notes in file, 0 listed on Inventory | YES | ACB 009467; ACB 009469; ACB 009473; ACB 009483; ACB 009485; ACB 009507 | NO | N/A |
| 30 G-056199 | 1985 | 1 | Maria Martin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 009514 | NO | 10 GPRs in file, 9 listed on Inventory | NO | N/A | NO | N/A |
| 31 G-087375 | 1985 | 1 | Ronald Jones | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 009669 - 9671 | NO | 27 GPRs in file, 22 listed on Inventory 23 Handwritten notes in file, 1 listed on Inventory 6 To-from memos in file, 0 listed on Inventory | YES | ACB 009676; ACB 009683-85; ACB 009687; ACB 009689; ACB 009694-95; ACB 009699; ACB 009701; ACB 009708-09; ACB 009713; ACB 009715; ACB 009723; ACB 009727-9728; ACB 009730; ACB 009742-43; ACB 009746; ACB 009748; ACB 009756-57; ACB 009768-69; ACB 009778-81; ACB 009784; ACB 009792; ACB 009796; ACB 009799-800; ACB 009820-22; ACB 009824-25; ACB 009831; ACB 009842; ACB 009849-50; ACB 009867; ACB 009877; ACB 009886; ACB 009889-91; ACB 009896; ACB 009898-99; ACB 009906-07; ACB 009927-33; ACB 009949; ACB 009959; ACB 0010007; ACB 0010061; ACB 0010065; ACB 0010072; ACB 0010085; ACB 0010087 | Yes | ACB 010... |
| 32 G-106586 | 1985 | 1 | Alice Hamilton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 010097 - 10098 | NO | 13 GPRs in file, 5 listed on Inventory 2 To-from memos in file, 1 listed on Inventory | YES | ACB 010124; ACB 010127; ACB 010175 | YES | ACB 010... |
| 33 G-108642 | 1985 | 1 | Roscoe Evans | YES | YES | ACB10441-43; ACB10453; ACB10459; ACB10462-65; ACB10469; ACB10471; ACB10473; ACB10486; ACB10499; ACB10529; ACB10537 | NO | N/A | NO | N/A | YES | ACB 010499; ACB 010529; ACB 010537 | YES | ACB 010462; ACB 010463 | YES | ACB 010441 - 10442 | NO | 21 Handwritten notes in file, 8 listed on Inventory 3 To-from memos in file, 0 listed on Inventory | YES | ACB 010446; ACB 010470; ACB 010475; ACB 010494-97; ACB 010529; ACB 010537; ACB 010548-55 | YES | ACB 010462; 010493; 010... |

| IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 29 | G-051225 | 1985 | 1 | Jerry Monden | YES | NO | N/A | YES | ACB 009482; ACB 009484; ACB 009486 - ACB 009495 | YES | ACB 009467; ACB 009469; ACB 009473; ACB 009483; ACB 009485; ACB 009507 | NO | N/A | 9449 - 9154; Property Inventory #168454; 9466 Property Inventory #168453: 9468 Property Inventory #169250: 9474 Property Inventory #148099: 9504; 9445; 9472; 9446; 9496; 9497 Court Attendance Report: 9448 Body Diagram: 9470 Statement: 9498 – 9500; 9501 – 9503 Release of Person in Custody: 9505 Arrest Report: 9506 Case Report: 9508 Major Crime Worksheet: 9509 Memo: 9510 |
| 30 | G-056199 | 1985 | 1 | Maria Martin | YES | NO | N/A | YES | ACB 009534 - 9543 | NO | N/A | NO | N/A | Property Inventory #167794: 9522; 9523; Investigative File Control: 9515 Court Attendance Report: 9516 – 9517; 9521 Diagram: 9520 Statement: 9530 - 9531 |
| 31 | G-087375 | 1985 | 1 | Ronald Jones | YES | NO | N/A | YES | ACB 009948; ACB 009998 – 10002; ACB 010004 – 10005; ACB 010010; ACB 010036 – 10044; ACB 010058 - 10059; ACB 010066 – 10071; ACB 010073 – 10076; ACB 010077; ACB 010084; ACB 010086; ACB 010088; ACB 010089 | YES | ACB 009676; ACB 009683-85; ACB 009687; ACB 009689; ACB 009694-95; ACB 009699; ACB 009701; ACB 009708-09; ACB 009713; ACB 009715; ACB 009723; ACB 009727-9728; ACB 009730; ACB 009742-43; ACB 009746; ACB 009748; ACB 009756-57; ACB 009768-69; ACB 009778-81; ACB 009784; ACB 009792; ACB 009796; ACB 009799-800; ACB 009820-22; ACB 009824-25; ACB 009831; ACB 009842; ACB 009849-50; ACB 009867; ACB 009877; ACB 009886; ACB 009889-91; ACB 009896; ACB 009898-99; ACB 009906-07; ACB 009927-33; ACB 009949; ACB 009959; ACB 0010007; ACB 0010061; ACB 0010065; ACB 0010072; ACB 0010085; ACB 0010087 | YES | ACB 010053 | 9954 – 9957; 10009; 10017 – 10021; Property Inventory #174352: 9920 Property Inventory #228960: 9969 Property Inventory #174354: 10064 Property Inventory #174353: 10094; 10060; 10062 - 10063; Person: 9911 – 9912; 9914; 9917 – 9918 Scene: 9908 – 9910; 9913; 9915 – 9916; 9970 - 9971; Herff Jones Company telephone book: 9672 - 9905 Envelope: 9906 – 9907 Investigative File Control: 9919 Court Attendance: 9921 – 9926; 9934; 9938 – 9941; 9943; 9945-9946; 9960; 9968 City of Chicago Police Mail envelope: 9953 Request for Latent Fingerprint Comparison: 9958; 9961 Statement: 9972 – 9979 Arrest Report: 10003 Request for Latent Fingerprint Comparison: 10006; 10008 Supplementary Report: 10022 – 10023; 10028 – 10029 Illinois State Police Division of Forensic Services: 10045 – 10048; 10050 Order: 10049 Latent Fingerprint Examination Report: 10051 Diagram: 10056; 10057; 10090 Major Crime Worksheet: 10080 – 10081; 10082 – 10083 Police form: 10091 Crime Laboratory Report: 10092 – 10093 City of Chicago, Department of Police envelope: 10095 |
| 32 | G-106586 | 1985 | 1 | Alice Hamilton | YES | NO | N/A | YES | ACB 010115 – 10116; ACB 010155; ACB 010158 – 10159; ACB 010163; ACB 010171 – 10172; ACB 010184 – 10194 | YES | ACB 010124; ACB 010127; ACB 010175 | YES | ACB 010108 | 10150 - 10154; Property Inventory #182422: 10125 Property Inventory #182421: 10126 Property Inventory #165135: 10181; 10183 Inventory of things seized in search: 10182; 10173; 10174; Investigative File Control: 10099 Court Attendance Report: 10100 – 10104; 10106 – 10107 Waiver of Extradition: 10117 Body Diagram: 10160; 10123 |
| 33 | G-108642 | 1985 | 1 | Roscoe Evans | YES | NO | N/A | YES | ACB 010497 – 10517; ACB 010551 - 10552 | YES | ACB 010446; ACB 010470; ACB 010475; ACB 010494-97; ACB 010529; ACB 010537; ACB 010548-55 | YES | ACB 010462; ACB 010493 | Property Inventory #165200: 10456 – 10457; Property Inventory #165200: 10458 ; Property Inventory #174387: 10524; Property Inventory #174386: 10525; Property Inventory #174385: 10526; Property Inventory #182426: 10527; Property Inventory #182425: 10528; Property Inventory #165137: 10530; Property Inventory #165136: 10531; Property Inventory #165138: 10532; Property Inventory #174384: 10533; Property Inventory #174382: 10534; Property Inventory #174383: 10535; Property Inventory #165137: 10556 – 10557; Property Inventory #165136: 10558 – 10559; 10445; 10448 – 10452; 10460 – 10461; 10465; 10467; 10469; 10472; 10474; 10518; 10520; 10522; Investigative File Control: 10443 Latent Fingerprint Examination Report: 10447; 10459 Court Attendance Report: 10453; 10487 Memo: 10463 Receipt for Exhibits: 10464; 10471; 10472; 10536; Body Diagram: 10486 101's: 10490 |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

Case: 1:10-cv-01438 Document #: 363-30 Filed: 04/06/20 Page 269 of 433 PageID #:19386

| IDENTIFYING INFORMATION | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON *Items in the Investigative File missing from the Criminal Defense Attorney File* | | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS? |
| 34 | G-148403 | 1985 | 1 | Derrick Johnson | YES | YES | ACB011174; ACB011177; ACB011258; ACB011276; ACB011290; ACB011326; ACB011348; ACB011312; ACB011356-59; ACB011347; ACB011248; ACB011259; ACB011281; ACB011294; ACB011324; ACB011327; ACB011330; ACB011334; | NO | N/A | NO | N/A | YES | ACB 011174; ACB 011258; ACB 011276; ACB 011290; ACB 011326; ACB 011348 | NO | N/A | YES | ACB 011177-11179 | NO | 29 GPRs in file, 19 listed on Inventory 26 Handwritten notes in file, 0 listed on Inventory 2 To-from memos in file, 0 listed on Inventory | YES | ACB 011174; ACB 011176; ACB 011192; ACB 011208; ACB 011210; ACB 011212; ACB 011234; ACB 011244; ACB 011246; ACB 011253; ACB 011256; ACB 011258; ACB 011268; ACB 011278; ACB 011283; ACB 011287; ACB 011290; ACB 011293; ACB 011304; ACB 011309; ACB 011322; ACB 011326; ACB 011332; ACB 011334; ACB 011348 | YES | ACB 011[...] |
| 35 | G-156178 | 1985 | 1 | William Talkowski | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 011556 | NO | 11 GPRs in file, 5 listed on Inventory 1 Handwritten note in file, 0 listed on Inventory 2 To-from memos in file, 0 listed on Inventory | NO | N/A | NO | N/A |
| 36 | G-159857 | 1985 | 3 | Stanley Hagler James Walker Jeffrey Boyd Carl Pollard | YES | YES | ACB 011630-643; ACB 011645-51; ACB 011654; ACB011657-58; ACB 011660-78; ACB 011680-84; ACB 011686-87; ACB 011689-90; ACB 011719; ACB 011728; ACB 011731; ACB 011734; ACB 011749-51; ACB 011758-59; ACB 011765-66; ACB 011777; ACB 011780-89; ACB 011804-812; ACB 011816-818; ACB 011829-32; ACB 011834-35; ACB 011837-38; ACB 011847-848; ACB 011850; ACB 011874; ACB 011879; ACB 011905; ACB 011913; ACB 011915; ACB 011917; ACB 011935-937; ACB 011939-943; ACB 011945-950; ACB 011953-961; ACB 011963-67; ACB 011969-970 | YES | NO - entries added after Aug. 24, 1985; also, the PD file contains inventory sheets that are missing from the Inv. File (ACB 011732-11734 in Inv. File; CRIM.DEF FILES - FIELDS 019401-19413 in PD file) | NO | N/A | YES | *ACB 011627, *ACB 011653, *ACB 011655-658, *ACB 011660, *ACB 011662, *ACB 011664, *ACB 011666-668, *ACB 011670-671, *ACB 011673, *ACB 011676-678, * ACB 011680-682, *ACB 011684, *ACB 011686, *ACB 011689-690, ACB 011749, *ACB 011766, *ACB 011785 *ACB 011964, *ACB 011966 | NO | N/A | YES | ACB 011731-34 | NO | 36 GPRs in file, 35 listed on Inventory 80 Handwritten notes in file, 54 listed on Inventory 24 To-from memos in file, 10 listed on Inventory | YES | ACB 011657-58; ACB 011660; ACB 011662; ACB 011664; ACB 011666-68; ACB 011670-71; ACB 011676-78; ACB 011680-82; ACB 011684; ACB 011686; ACB 011689-90; ACB 011739; ACB 011749; ACB 011762-64; ACB 011791-92; ACB 011803; ACB 011891-902; ACB 011904; ACB 011906-10; ACB 011912; ACB 011914; ACB 011916; ACB 011918-34; ACB 011938; ACB 011944; ACB 011951; ACB 011960; ACB 011962; ACB 011968 | YES | ACB 011752; ACB 011799; 011800; 011886-90; 011977 |
| 37 | G-165272 | 1985 | 1 | Williams Goodin | YES | YES | ACB 089326-28; ACB 089330-53; ACB 089359; ACB 089362; ACB 089368-405; ACB 089411-12; ACB 089414; ACB 089417-20; ACB 089426-29; ACB 089429; ACB 089435-38; ACB 089445; ACB 089452-56; ACB 09362-65. | NO | N/A | YES | ACB 089326-89328, ACB 089362, ACB 089417-89420, ACB 089453-89455 | YES | ACB 089452 | YES | ACB 089330-89331, ACB 089333 | NO | N/A | N/A | N/A | Yes | ACB 012306-12311; ACB 012320-12334; ACB 012353; ACB 012368; ACB 012374 | No | |
| 38 | G-176242 | 1985 | 1 | William Grant | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | N/A | N/A | YES | | NO | N/A |

11 of 62

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON — Items in the Investigative File missing from the Permanent Retention File | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 34 | G-148403 | 1985 | 1 | Derrick Johnson | YES | NO | N/A | YES | ACB 011186-11194; ACB 011203-11211; ACB 011255; ACB 011271-11274; ACB 011279; ACB 011282; ACB 011286-11291; ACB 011303-11308 | YES | ACB 011174; ACB 011176; ACB 011192; ACB 011208; ACB 011210; ACB 011212; ACB 011234; ACB 011244; ACB 011246; ACB 011253; ACB 011256; ACB 011258; ACB 011268; ACB 011278; ACB 011283; ACB 011287; ACB 011290; ACB 011293; ACB 011304; ACB 011309; ACB 011322; ACB 011326; ACB 011332; ACB 011334; ACB 011348 | YES | ACB 011292 | 11260-11266; 11333; 11349-11351; Finger/palmprints (11275-11276) Crime Scene Evidence & Fingerprints (11301; 11346); Person (11312; 11356-11359); 11299; 11347 Request for Latent Fingerprint Comparison (11175; 11233; 11243; 11245; 11248; 11250-11252; 11254; 11257; 11259; 11267; 11280-11281; 11294-11298; 11319-11327; 11330) Fingerprint Results (11242) Receipt for Exhibits (11277; 11331) Form 101 (11345) |
| 35 | G-156178 | 1985 | 1 | William Talkowski | YES | NO | N/A | YES | ACB 011607 – 11608; ACB 011611 - 11620 | NO | N/A | NO | N/A | Property Inventory #191319: 11609 Property Inventory #191367: 11610 Property Inventory #176116: 11621; 11623 Inventory of Things Seized in Search: 11622; 11598 - 11604; 11605; 1606 Bureau of Detectives Memo: 11557 FOIA Request To-From: 11558 Law office o H. Candace Gorman letter: 11559 Body diagram: 11634 Investigative File Control: 11625 - 11626 |
| 36 | G-159857 | 1985 | 3 | Stanley Hagler, James Walker, Jeffrey Boyd, Carl Pollard | YES | YES | NO - there are additional pages and items on the Inventory in the PRF (Investigative file: ACB 011731-34; PRF: CITY-PRF-01589-94; CITY-PRF 01598) | YES | ACB 011738; ACB 011750-751; ACB 011758-759; ACB 011878-879; ACB 011905; ACB 011935-970 | YES | ACB 011658; ACB 011660; ACB 011662; ACB 011664; ACB 011666-668; ACB 011670-671; ACB 011673; ACB 011676-678; ACB 011680-682; ACB 011684; ACB 011686; ACB 011689-690; ACB 011739; ACB 011749; ACB 011762-764; ACB 011791-792; ACB 011803; ACB 011881; ACB 011883; ACB 011891-902; ACB 011904; ACB 011906-912; ACB 011914; ACB 011916; ACB 011918-934; ACB 011938; ACB 011944; ACB 011951; ACB 011960; ACB 011962; ACB 011964; ACB 011966; ACB 011968 | YES | ACB 011752-757; ACB 011790; ACB 011861; ACB 011880; ACB 011882; ACB 011884-890; ACB 011971-977 | CPD Intra-Departmental Mail Envelope - ACB 011628 Copy of Envelope - ACB 011629; 011691 Photos with handwritten identification notes on the back - ACB 011630-657 Phone memo sheet (blank) - ACB 011659 Watch Assignment Sheet - ACB 011661; 011663; 011672; 011674; 011683; 011913; 011915; 011917 Portion of Case Report - ACB 011665 Attorney Business Card - ACB 011669 Field Contact Card - ACB 011675 Portion of Supp Report - ACB 011679 Arrest Information Card - ACB 011685; 011760-761; 011794-797; 011846; 011851-853; 011903 Evidence Report - ACB 011687; 011800; 011812 Photos - ACB 011692-721 Inv. File Control - ACB 011722 Major Crime Worksheet - ACB 011723-724; 011815-816 Criminal History - ACB 011727; 011737; 011768-779 Arrest Report - ACB 011728; 011736; 011782-789; 011827; 011854-858 Final page of Supp Report w/ Handwritten note - ACB 011748 Request for Latent Fingerprint Comparison - ACB 011765; 011830 Felony Complaint - ACB 011780-781 Evidence Identification No. - ACB 011793 Arrest Warrant - ACB 011798-799 Vehicle Tow Report - ACB 011802; 011814 Property Inventory Sheets - ACB 011804-811; 011837-839; 011850 Daily Bulletin - ACB 011813 Case Report - ACB 011817-819; 011831-836; 011847-849 Lost & Found Case Report - ACB 011826 Supp Report - ACB 011829 Nickname Index Cards - ACB 011840-845 FBI Letter - ACB 011859-860 Body Diagram - ACB 011871-873 |
| 37 | G-165272 | 1985 | 1 | Williams Goodin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 38 | G-176242 | 1985 | 1 | William Grant | YES | N/A | N/A | YES | ACB 012317-12333; ACB 012347-12356; ACB 012367; ACB 012379 | YES | ACB 012306-12311; ACB 012320-12334; ACB 012353; ACB 012368; ACB 012374 | NO | N/A | 12335-12340; 12345; Copy of Envelope (12299; 12312) Arrest Cards (12300-12305) Funeral Card (12313-12316) Arrest Report (12341-12346; 12355) Major Crime Worksheet (12377-12378) |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

Case: 1:10-cv-01439 Document #: 283-39 Filed: 04/06/21 Page 271 of 433 PageID #:10982

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | G-192900 | 1985 | 1 | Maria Everton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 013237-38 | NO | 12 GPRs in file, 1 listed on Inventory 5 Handwritten notes in file, 1 listed on Inventory | YES | ACB 013276-13278; | NO | N/A |
| 40 | G-215280 | 1985 | 1 | Maurice Green | YES | YES | ACB 013390-93; ACB 013396; ACB 013398-99; ACB 013400-06; ACB 013408; ACB 013414; ACB 013501-04; ACB 013546 | NO | N/A | YES | ACB 013404; ACB 013408 | YES | ACB 013391-13392; ACB 013405-13406; ACB 013414; ACB 013501; ACB 013546 | NO | N/A | YES | ACB 013502-13503 | NO | 3 additional GPRs not in G-215280A 5 Handwritten notes in files, 0 listed on Inventory 1 To-from memo in files, 0 listed on Inventory | YES | ACB 013391-13392; ACB 013405-13406; ACB 013501 | YES | ACB 013391-13392; ACB 013414; ACB 013531 |
| 41 | G-230261 | 1985 | 1 | Michael Thompson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 014079-14080 | NO | 11 GPRs in file, 1 listed on Inventory 8 Handwritten notes in file, 0 listed on Inventory | YES | ACB 014148; ACB 014151-14159; ACB 014168 | NO | N/A |
| 42 | G-235180 | 1985 | 1 | Willie Pizza | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | N/A | N/A | YES | ACB 014189; ACB 014196-14197; ACB 014202-14203; ACB 014206-14207 | YES | ACB 014207 |
| 43 | G-245282 | 1985 | 1 | Eddie Robinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 014212-13 | NO | 2 Handwritten notes in file, 0 listed on Inventory | NO | N/A | NO | N/A |
| 44 | G-248336 | 1985 | 4 | Ruben Avilez | YES | YES | ACB 014302-34; ACB 014359-60; ACB 014367-14368; ACB 014379-81; ACB 014413-14414; ACB 014425; ACB 014427-14438; ACB 014441; ACB 014444-46; ACB 014453-14454; ACB 014456-64; ACB 014467 | YES | YES | YES | ACB 014427 | YES | ACB 014302; ACB 014334; ACB 014441; ACB 014425; ACB 014446; ACB 014457 | YES | ACB 014303; ACB 014305-14307; ACB 014333; ACB 014359; ACB 014379; ACB 014380; ACB 014444) | YES | ACB 014371-72; ACB 014417-18 | NO | 2 GPRs in file, 1 listed on Inventory 7 Handwritten notes in file, 1 listed on Inventory 9 To-from memos in file, 0 listed on Inventory | YES | ACB 014302; ACB 014334; ACB 014425; ACB 014441; ACB 014446; ACB 014457 | YES | ACB 014303; ACB 014305; ACB 014306-14307; ACB 014333; ACB 014359; ACB 014379-14380; ACB 014444 |
| 45 | G-257089 | 1985 | 1 | Freddie Brown | YES | YES | ACB 014790-93; ACB 014796-98; ACB 014802; ACB 014804; ACB 014806-19; ACB 014838 | NO | N/A | YES | *ACB 014806-819 | NO | N/A | NO | N/A | YES | ACB 014790 | YES | N/A | NO | N/A | NO | N/A |
| 46 | G-265171 | 1985 | 1 | Nidal Haddad | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 015104 | NO | 5 Handwritten notes in file, 3 listed on Inventory | YES | ACB 015138-15140; ACB 015149 | NO | N/A |
| 47 | G-267631 | 1985 | 3 | Fred Daniels | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 015313 | NO | 1 To-from memo in file, 0 listed on Inventory | NO | N/A | YES | ACB 015 |
| 48 | G-267820 | 1985 | 1 | Patricia Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 015360 | YES | N/A | NO | N/A | NO | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 39 | G-192900 | 1985 | 1 | Maria Everton | YES | NO | N/A | YES | ACB 013253-13264 | YES | ACB 013276-13278; | NO | N/A | Latent Fingerprint Exam. Report (13246-13247); Arrest Info (13265); Arrest Report (13266); Arrest Warrant (13268); Complaint (13269); Stop Order (13270-13271); Will Call Sales Check (13272); Sign-in Sheet (13273-13275); Sketch (13277); Witness Statement (13307-13310); 13239-13243; 13279-13292; 13295-13296; Scene photos, physical evidence and ridge impressions (13251-13252); Finger and Palmprint (13293-13294); 13267 |
| 40 | G-215280 | 1985 | 1 | Maurice Green | YES | NO | N/A | YES | ACB 013404; ACB 013407-13408; ACB 013560-13566 | YES | ACB 013391-13392; ACB 013405-13406; ACB 013501 | YES | ACB 013399; ACB 013414; ACB 013533 | 13509-13513l; 13394-13396; 13534; 13545; 13553; Photos, Impressions & Blood Sample (13505; 13543); Rape Kit (13535); 13496-13499; 13506; Picture of Cassette (13369); Form 101 (13390); Arrest Info (13393; 13398); Arrest Report (13397; 13422; 13432; 13485-13495; 13552); Grand Jury Subp (13400-13403); Witness Statement (13410-13413); Information Report (13423; 13433; 13474-13484; 13551); Inv. File Control (13504); Lab Report (13507-13508; 13514-13515); Body Diagram (13530); Firearms Receipt & Worksheet (13531); Receipt for Exhibits (13547); HBT Incident Personnel Control Log (13554) |
| 41 | G-230261 | 1985 | 1 | Michael Thompson | YES | NO | N/A | YES | ACB 014109; ACB 014144-14158 | YES | ACB 014148; ACB 014151-14159; ACB 014168 | NO | N/A | 14082-14085; 14133-14139; 14141; Photos (14129); Cartridge/Cartridge Case (14142-14143); 14118-14119; Inv. File Control (14081); Body Diagram (14088); Form 101 (14116); Complaint (14117); Witness Statement (14120-14122); Gang Specialist Daily Activity Summary (14140); Case Report w/ Handwritten note (14166-14167) |
| 42 | G-235180 | 1985 | 1 | Willie Pizza | YES | N/A | N/A | YES | ACB 014181; ACB 014210 | YES | ACB 014189; ACB 014196-14197; ACB 014202-14203; ACB 014206-14207 | YES | ACB 014208 | 14173-14174; 14177; Inv. File Control (14170); Arrest Warrant (14171); Complaint (14172); Arrest Report (14178-14180); Illinois Department of Public Aid (14190-14191); Change Report Form (14192-14195); State of Illinois Department of Employment Security (14198-14201); State of Illinois Department of Public Aid (14204-14205); Victim Information (14209) |
| 43 | G-245282 | 1985 | 1 | Eddie Robinson | YES | NO | N/A | YES | ACB 014275-14276 | NO | N/A | NO | N/A | 14241-14245; 14281-14282; 14288-14291; Blood Sample (14219; 14279-14280); Safety Helmet (14215-14216); Auto Used in Homicide (14231-14232); 14220; Copy of Envelope (14214); Inv. File Control (14217); Form 101 (14237); Arrest Report (14238); Body Diagram (14250); Receipt for Exhibits (14253-14256); Case Report (14299-14300) |
| 44 | G-248336 | 1985 | 4 | Ruben Avilez | YES | YES | YES | YES | ACB 014426-14427 | YES | ACB 014302; ACB 014334; ACB 014425; ACB 014441; ACB 014446; ACB 014457 | YES | ACB 014303; ACB 014305; ACB 014306-14307; ACB 014333; ACB 014359; ACB 014379-14380; ACB 014444 | Person (14464); 14308-14317; 14319-14332; 14428-14429; 14445; 14455; 14462; Arrest Report (14304; 14360; 14381; 14431; 14435; 14461; 14467); Request for ID Records (14318); Arrestee History (14430; 14434; 14459-14460); Offenders General Information (14432); Name Check Report (14433; 14436-14438); Daily Bulletin (14448-14452); Deceptive Practice Report (14453-14454); Wanted Card (14456; 14463); Typed Message (14458); Stop Order (14465-14466) |
| 45 | G-257089 | 1985 | 1 | Freddie Brown | YES | NO | N/A | YES | ACB 014806-14819 | NO | N/A | NO | N/A | 14838; Photos & Blood Sample (14796; 14804); 14797-14798; Inv. File Control (14791); Lab Report (14792-14793); Body Diagram (14802); Witness Statement (14825-14835); Case Report w/ additional note (14837) |
| 46 | G-265171 | 1985 | 1 | Nidal Haddad | YES | NO | N/A | YES | ACB 015150-15159 | YES | ACB 015138-15140; ACB 015149 | NO | N/A | 15115-15119; 15144-15147; IDPA Identification (15105-15106); Inv. File Control (15107); Firearms Receipt (15123); Arrest Report (15143); Body Diagram (15148); Form 101 (15160) |
| 47 | G-267631 | 1985 | 3 | Fred Daniels | YES | YES | YES | NO | N/A | NO | N/A | YES | ACB 015356 | 15326-15330; 15322-15324; 15344-15354; Case Assignment Slip (15311); Inv. File Control (15312); Receipt for Exhibits (15331); Witness Statement (15332-15338); Body Diagram (15339); Lab Report (15340-15341); Major Crime Worksheet (15355) |
| 48 | G-267820 | 1985 | 1 | Patricia Williams | YES | NO | N/A | YES | ACB 015379-15384 | NO | N/A | NO | N/A | 15368-15371; 15364-15367; 15387-15389; Photos (15362); Inv. File Control (15361); Body Diagram (15372); Case Report w/ additional notes (15386); 15363 |

14 of 62

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

## CRIMINAL DEFENSE ATTORNEY FILE COMPARISON
*Items in the Investigative File missing from the Criminal Defense Attorney File*

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-/FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-/FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-/FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-/FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 49 | G-267826 | 1985 | 1 | James Walker | YES | YES | ACB 015390-394; ACB 015396-401; ACB 015405; ACB 015408-09; ACB 015413-424; ACB 015425-432; ACB 015469-71; ACB 015473-74; ACB 015477-87; ACB 015492; ACB 015496-504; ACB 015493-495 | NO | N/A | YES | *ACB 015413-423; ACB 015425-432 | YES | *ACB 015481; *ACB 015424 | NO | N/A | YES | ACB 015391-15392 | NO | 3 Handwritten notes in file, 0 listed on Inventory | YES | ACB 015424; ACB 015481 | NO | N/A |
| 50 | G-278643 | 1985 | 1 | Claude Lewis | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 016011-16012 | NO | 23 GPRs in file, 7 listed on inventory; 8 Handwritten notes in file, 0 listed on Inventory | YES | ACB 016046; ACB 016072; ACB 016075; ACB 016098; ACB 016103; ACB 016105-16106; ACB 016108 | NO | N/A |
| 51 | G-283147 | 1985 | 4 | James Willingham | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 016126-16127 | NO | Photos (16189-16196) | NO | N/A | NO | N/A |
| 52 | G-284291 | 1985 | 1 | Lucille Pye | YES | YES | ACB 016198-200; ACB 016206-09; ACB 016218; ACB 016220-24; ACB 016246-47; ACB 016249-51; ACB 016257b; ACB 016272; ACB 016274-76; ACB 016283-86 | NO | N/A | YES | ACB 016220-16223; ACB 016255-16256; ACB 016259-16262; ACB 016274; ACB 016283-16284 | YES | ACB 016270; ACB 016272 | NO | ACB 016272 | YES | ACB 016198-16199 | NO | 2 Handwritten notes in file, 0 listed on Inventory; 5 To-from memos in file, 0 listed on Inventory | YES | ACB 016270 | NO | N/A |
| 53 | G-289217 | 1985 | 1 | Delanda Dillard | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 016288 | NO | 1 Handwritten note in file, 0 listed on Inventory | YES | ACB 016326 | NO | N/A |
| 54 | G-303402 | 1985 | 1 | Nancy West | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 016328 | NO | 5 GPRs in file, 0 listed on Inventory | YES | ACB 016401 | NO | N/A |
| 55 | G-321886 | 1985 | 4 | Manuel Rios / Willie Mullen / James Crockett | YES | YES | ACB 016649-5i; ACB 016658-64; ACB 016667-70; ACB 016675-77; ACB 016682-86; ACB 016723-24; ACB 016726-30; ACB 016732-97; ACB 016799-807 | NO | N/A | YES | ACB 016686; ACB 016726; ACB 016734-16739; ACB 016750-16753; ACB 016771-16776 | YES | ACB 016649; ACB 016724; ACB 016729; ACB 016740; ACB 016759; ACB 016761; ACB 016780; ACB 016794; ACB 016796; ACB 016797 | YES | ACB 016667 | YES | ACB 016649-16652 | NO | 16 GPRs in file, 14 listed on Inventory; 8 Handwritten notes in file, 0 listed on Inventory; 1 To-from memo in file, 0 listed on Inventory | YES | ACB 016724; ACB 016740; ACB 016751; ACB 016753; ACB 016780-97 | YES | ACB 016780-97 |
| 56 | G-322101 | 1985 | 1 | James Baker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 016809-16810 | NO | 6 Handwritten notes in file, 0 listed on Inventory | YES | ACB 016863-72 | NO | N/A |
| 57 | G-331216 | 1985 | 1 | Maurice McCants | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 017595-17596 | NO | 12 GPRs in file, 1 listed on Inventory; 5 Handwritten notes in file, 0 listed on Inventory | YES | ACB 017642; ACB 017684; ACB 017686 | NO | N/A |
| 58 | G-354748 | 1985 | 1 | Byron Lawrence | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 017689-17690 | NO | 5 Handwritten notes in file, 0 listed on Inventory | YES | ACB 017709; ACB 017712; ACB 017736; ACB 017750; ACB 017761 | NO | N/A |
| 59 | G-356930 | 1985 | 1 | Alonzo Jordan | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 017899-17900 | NO | 1 Handwritten note in file, 0 listed on Inventory | YES | ACB 017923; ACB 017984 | NO | N/A |

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **IDENTIFYING INFORMATION** | | | | **PERMANENT RETENTION FILE COMPARISON** *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | | | |
| 49 | G-267826 | 1985 | 1 | James Walker | YES | NO | N/A | YES | ACB 015413-15432 | YES | ACB 015424; ACB 015481 | NO | N/A | 15397-15401; 15394-15396; 15408-15410; 15471-15476; Line-up Photos (15470); Person (15493-15503); 15477-15479; 15482-15483; Inv. File Control (15393)<br>Body Diagram (15405)<br>Witness Statements (15450-15468)<br>Form 101 (15469)<br>Wanted Card (15480)<br>Release of Person in Custody (15484)<br>Complaint (15485)<br>Arrest Report (15486-15487)<br>Copy of Envelope (15492)<br>Request for ID Photos (15504) |
| 50 | G-278643 | 1985 | 1 | Claude Lewis | YES | NO | N/A | YES | ACB 016036-16049; ACB 016058-16060; ACB 016071-16076; ACB 016102-16107 | YES | ACB 016046; ACB 016072; ACB 016075; ACB 016098; ACB 016103; ACB 016105-16106; ACB 016108 | NO | N/A | 16021-16024; 16068-16070; 16094-16095; Photos (16015; 16109-16110); 16016; Lab Report (16013-16014; 16019-16020)<br>Supp Report (4th page missing - 16028;16067; 2nd page missing - 16035; 16054-16057)<br>Receipt for Exhibits (16050-16051)<br>Body Diagram (16053)<br>Written Witness Statement (16061-16062)<br>Witness Statement (16079-16089; 16096-16097)<br>Arrest Report (16093)<br>Gang Arrest Information (16099-16101)<br>Release of Person in Custody (16111)<br>Case Report (16123-16124) |
| 51 | G-283147 | 1985 | 4 | James Willingham | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 52 | G-284291 | 1985 | 1 | Lucille Pye | YES | NO | N/A | YES | ACB 016220-16223; ACB 016255-16256; ACB 016259-16262; ACB 016274; ACB 016283-16284 | YES | ACB 016270 | NO | N/A | 16201-16204; 16207-16209; Victim fingerprints & photos (16205; 16271-16272); Person (16242-16243; 16250-16251; 16257-16258); 16206; 16244-16246; 16252; 16263-16267; Inv. File Control (16200)<br>Body Diagram (16218)<br>Form 101 (16224)<br>Witness Statement (16232-16241)<br>Arrest Report (16247-16248; 16253-16254; 16268-16269)<br>Release of Person in Custody (16249)<br>Supp Report (16275-16276)<br>Case Report w/ missing note (16286) |
| 53 | G-289217 | 1985 | 1 | Delanda Dillard | YES | NO | N/A | NO | N/A | YES | ACB 016326 | NO | N/A | 16298-16301; 16303-16305; 16295-16297; 16312; 16324; Victim fingerprints & photos (16313-16314)<br>Plastic Bag containing rifle (16325); Inv. File Control (16289)<br>Lab Report (16291)<br>Case Assignment Slip (16302)<br>Body Diagram (16306) |
| 54 | G-303402 | 1985 | 1 | Nancy West | YES | NO | N/A | YES | ACB 016389-16393; ACB 016397-16398 | YES | ACB 016401 | NO | N/A | 16340-16344; 16336-16339; 16374-16378; 16395-16396; Victim photos & physical evidence (16333); 16334-16335; Inv. File Control (16329)<br>Lab Report (16331)<br>Witness Statement (16369-16370)<br>Stop Order (16371)<br>Complaint (16372)<br>Arrest Warrant (16373)<br>Body Diagram (16379) |
| 55 | G-321886 | 1985 | 4 | Manuel Rios Willie Mullen James Crockett | YES | NO | N/A | YES | ACB 016686; ACB 016726; ACB 016734-16739; ACB 016750; ACB 016752; ACB 016771-16776 | YES | ACB 016724; ACB 016740; ACB 016751; ACB 016753; ACB 016780-97 | YES | ACB 016667 | 16658-16662; 16758-16761; Photos (16728-16729)<br>Vehicle Evidence (16730-16731); Person (16779-16795); 16654; 16684-16685; Case Assignment Slip (16653)<br>Latent Fingerprint Exam. Report (16663)<br>Towed Vehicle Disposition (16664)<br>Witness Statement (16687-16722)<br>Nickname Index (16723)<br>Body Diagram (16727)<br>Arrest Info (16767-16768)<br>Inv. File Control (16777)<br>Material Submitted for Daily Bulletin (16799-16804)<br>Stop Order (16805-16807) |
| 56 | G-322101 | 1985 | 1 | James Baker | YES | NO | N/A | YES | ACB 016864-16871 | YES | ACB 016863-16872 | NO | N/A | 16818-16826; 16833-16834; 16845-16847; Clothing seized from Baker, James (16827-16828)<br>Request to pick up clothes (16835-16836)<br>Victim Evidence (16876-16877); Weapon (16881); Inv. File Control (16811)<br>Lab Report (16815-16817; 16829; 16875)<br>Latent Fingerprint Exam. Report (16832)<br>Receipt for Exhibits (16837-16838)<br>Witness Statement (16848-16859)<br>Body Diagram (16860-16862) |
| 57 | G-331216 | 1985 | 1 | Maurice McCants | YES | NO | N/A | YES | ACB 017634-17640; ACB 017643-17647 | YES | ACB 017642; ACB 017684; ACB 017686 | NO | N/A | 17602-17606; 17630-17633; 17651-17653; 17678; Crime Scene & Victim Evidence (17598; 17650); 17599; 17677; Inv. File Control (17597)<br>Case Assignment Slip (17601)<br>Body Diagram (17609)<br>Court Notification (Blank - 17641)<br>Lab Report (17648-17649)<br>Witness Statement (17663-17676)<br>Form 101 (17679)<br>Complaint (17680-17681)<br>Arrest Report (17682)<br>Case Report w/ additional note (17685) |
| 58 | G-354748 | 1985 | 1 | Byron Lawrence | YES | NO | N/A | YES | ACB 017708; ACB 017710-17711; ACB 017760; ACB 017762 | YES | ACB 017709; ACB 017712; ACB 017736; ACB 017750; ACB 017761 | NO | N/A | 17697-17700; 17756-17758; Photos (17733-17734)<br>Rifle Evidence (17747-17748; 17759); Inv. File Control (17688)<br>Firearms Receipt & Worksheet (17725)<br>Receipt for Exhibits (17735; 17749)<br>Body Diagram (17743) |
| 59 | G-356930 | 1985 | 1 | Alonzo Jordon | YES | NO | N/A | YES | ACB 017965-17979 | YES | ACB 017923; ACB 017984 | NO | N/A | 17917-17921; 17946; 17949-17950; Photos & Blood Sample (17947-17948); Inv. File Control (17901)<br>Case Assignment Slip (17912)<br>Receipt for Exhibits (17922)<br>Supp Report (17936)<br>Witness Statement (17951-17963) |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **CRIMINAL DEFENSE ATTORNEY FILE COMPARISON** *Items in the Investigative File missing from the Criminal Defense Attorney File* | | | | | | | | | | | **INVESTIGATIVE FILE INFORMATION** | | | | | | | |
| 60 | G-385135 | 1985 | 1 | Earlin Turner | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 018147-18148 | NO | 1 Handwritten note in file, 0 listed on Inventory | YES | ACB 018161 | NO | N/A |
| 61 | G-401782 | 1985 | 1 | Dwayne Cheers | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 018838-18839 | NO | 6 GPRs in file, 5 listed on Inventory 9 Handwritten notes in file, 5 listed on Inventory | YES | ACB 018851; ACB 018872-75; ACB 018882; ACB 018885 | NO | N/A |
| 62 | G-405711 | 1985 | 1 | Wardell Gates | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | N/A | N/A | NO | N/A | NO | N/A |
| 63 | G-446754 | 1985 | 1 | Edward Terrett | YES | YES | ACB 020110-11; ACB 020113-15; ACB 020118-23; ACB 020126-27; ACB 020132; ACB 020147; ACB 020156; | YES | NO - additional entries after 11/24/1985 (ACB 020110 in Inv. File; CRIM.DEF FILES - FIELDS 043792 in PD file) | NO | N/A | YES | ACB 020156 | NO | N/A | YES | ACB 020110 | NO | 2 Handwritten notes in file, 0 listed on Inventory | YES | ACB 020136; ACB 020156 | NO | N/A |
| 64 | G-456900 | 1985 | 1 | Larry Buchanan | YES | YES | ACB 020810; ACB 020814-15; ACB 020820-21; ACB 020830-32; ACB 020835-37; ACB 020853; ACB 020855-59; | NO | N/A | YES | ACB 020857 - 20858 | YES | ACB 020815; ACB 020821; ACB 020837 | NO | N/A | YES | ACB 020810 | NO | 2 GPRs in file, 1 listed on Inventory 2 Handwritten notes in file, 0 listed on Inventory | YES | ACB 020815; ACB 020837 | NO | N/A |
| 65 | G-468726 | 1985 | 1 | Albert Spraggins | YES | YES | ACB 020861-76; ACB 020879-84; ACB 020886-902; ACB 020904-16; ACB 020918-22; ACB 020924-42; ACB 020965-67; ACB 020981-82; ACB 021004-06 | YES | NO - additional entries after 2/7/1986 (ACB 020864 in Inv. File; CRIM.DEF FILES - FIELDS 044380 in PD file) | YES | ACB 020966-20967 | YES | ACB 020861; ACB 020896; ACB 020898; ACB 020908 | NO | N/A | YES | ACB 020862-20864 | NO | 15 GPRs in file, 14 listed on Inventory 7 Handwritten notes in file, 0 listed on Inventory 3 To-from memos in file, 2 listed on Inventory | YES | ACB 020861; ACB 020866; ACB 020868; ACB 020896; ACB 020898; ACB 020907-09; ACB 020920; ACB 020928 | YES | ACB 020899; ACB 020916; ACB 020924 |
| 80 | G-468726 | 1985 | 1 | Maurice Spraggins | YES | YES | ACB 020861-76; ACB 020879-84; ACB 020886-902; ACB 020904-16; ACB 020918-22; ACB 020924-42; ACB 020965-67; ACB 020981-82; ACB 021004-06 | YES | NO - additional entries after 2/9/1986 (ACB 020864 in Inv. File; CRIM.DEF FILES - FIELDS 044567 in PD file) | YES | ACB 020925-20937 | YES | ACB 020861; ACB 020896; ACB 020898; ACB 020907; ACB 020908-20909; ACB 020920; ACB 020928 | YES | ACB 020899; ACB 020916; ACB 020924 | YES | ACB 020862-20864 | NO | 24 Handwritten notes in file, 14 listed on Inventory 3 To-from memos in file, 2 listed on Inventory | YES | ACB 020861; ACB 020866; ACB 020868; ACB 020896; ACB 020898; ACB 020907-09; ACB 020920; ACB 020928 | YES | ACB 020899; ACB 020916; ACB 020924 |

| | | | | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | | | | | | | | | | |
| 60 | G-385135 | 1985 | 1 | Earlin Turner | YES | NO | N/A | YES | ACB 018163; ACB 018174; ACB 018191; ACB 018196-18207 | YES | ACB 018161 | NO | N/A | 18152-18156; 18157; 18188-18189; 18193-18194; Photos, Black Cap, and GSR kit (18187); Person (18195); 18160; 18162; 18173; Case Assignment Slip (18146) Lab Report (18150-18151) Recovered Property Disposition Tracer (18158) Waiver of Extradition (18167) Form 101 (18168) Body Diagram (18190) Inv. File Control (19192) Arrest Warrant (18209) Complaint (18210) |
| 61 | G-401782 | 1985 | 1 | Dwayne Cheers | YES | NO | N/A | YES | ACB 018871; ACB 018881-18887 | YES | ACB 018851; ACB 018872-75; ACB 018882; ACB 018885 | NO | N/A | 18855-18856; 18878-18880; Crime Scene Photos & Physical Evidence (18840; 18876-18877) Brown Handled Butcher Knife (18844-18845) Fingerprints (18853-18854); 18841; Lab Report (18842-18843; 18846) Body Diagram (18850) Witness Statement (18863-18867) Complaint (18868) Arrest Report (18869) Form 101 (18870) Inv. File Control (18888) Copy of Envelope (18891) State of IL ID (18892-18893) Identification (18894) Food Stamp Issuance Doc. (18895) |
| 62 | G-405711 | 1985 | 1 | Wardell Gates | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 63 | G-446754 | 1985 | 1 | Edward Terrett | YES | NO | N/A | YES | ACB 020135-20137; ACB 020148 | YES | ACB 020136; ACB 020156 | NO | N/A | 20132-20134; Photos (20155); Inv. File Control (20111) Arrest Information (20113) Supp Report COD (20120-20121) Mail (20130-20131) Witness Statement (20138-20146) Body Diagram (20147) |
| 64 | G-456900 | 1985 | 1 | Larry Buchanan | YES | NO | N/A | YES | ACB 020857-20858 | YES | ACB 020815; ACB 020837 | NO | N/A | 20823-20829; 20835-20836; Photos & Crime Scene Evidence (20820-20821; 20856) Photos (20853-20854); Receipt for Exhibits (20814) Lab Report (20830-20831) Body Diagram (20832) Witness Statement (20838-20847) Form 101 (20855) Inv. File Control (20859); 20811-20812 |
| 65 | G-468726 | 1985 | 1 | Albert Spraggins | YES | NO | N/A | YES | ACB 020925-20937; ACB 020966-20967; ACB 020977 | YES | ACB 020861; ACB 020866; ACB 020868; ACB 020896; ACB 020898; ACB 020907-09; ACB 020920; ACB 020928 | YES | ACB 020899; ACB 020916; ACB 020924 | 20938-20942; 20904-20906; 20978; 21003; 21005; Photos (20902; 20979) Photos & Cardboard Wadding (20921; 21004) Printed & Photographed (21006); Person (20865-20867; 20914-20915); 20887; 20889; 20891; 20895; 20897; 20919; 20922; Case Assignment Slip (20863) Inv. File Control (20869) FBI Identification Record (20873; 20890) Form 101 (20884) Arrest Report (20886; 20911-20913; 20918) Arrest Control Set (20888) Arrest Info (20892) Campaign Poster (20910) Arrest Warrant (20945) Complaint (20946) Body Diagram (20965) Witness Statement (20983-21002) |
| 80 | G-468726 | 1985 | 1 | Maurice Spraggins | YES | NO | N/A | YES | ACB 020925-20937; ACB 020966-20967; ACB 020977 | YES | ACB 020861; ACB 020866; ACB 020868; ACB 020896; ACB 020898; ACB 020907-09; ACB 020920; ACB 020928 | YES | ACB 020899; ACB 020916; ACB 020924 | 20938-20942; 20904-20906; 20978; 21003; 21005; Photos (20902; 20979) Photos & Cardboard Wadding (20921; 21004) Printed & Photographed (21006); Person (20865-20867; 20914-20915); 20887; 20889; 20891; 20895; 20897; 20919; 20922; Case Assignment Slip (20863) Inv. File Control (20869) FBI Identification Record (20873; 20890) Form 101 (20884) Arrest Report (20886; 20911-20913; 20918) Arrest Control Set (20888) Arrest Info (20892) Campaign Poster (20910) Arrest Warrant (20945) Complaint (20946) Body Diagram (20965) Witness Statement (20983-21002) |

**IDENTIFYING INFORMATION**

**PERMANENT RETENTION FILE COMPARISON**
*Items in the Investigative File missing from the Permanent Retention File*

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON — Items in the Investigative File missing from the Criminal Defense Attorney File | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
| 66 | G-482955 | 1985 | 3 | Howard Wiley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 021018-21023 | NO | 24 Handwritten notes in file, 14 listed on Inventory; 3 To-from memos in file, 2 listed on Inventory | YES | ACB 021155; ACB 021157; ACB 021206; ACB 021245-21263; ACB 021272; ACB 021289 | YES | ACB 021073; ACB 021188; ACB 021190 |
| 67 | G-483470 | 1985 | 1 | Michael McMillan | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 021311; ACB 021313 | NO | 3 Handwritten notes in file, 0 listed on inventory | YES | ACB 021373 | YES | ACB 021345; 021407 |
| 68 | G-501974 | 1985 | 1 | Willie Cunningham | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 021770 | NO | 2 Handwritten notes in file, 0 listed on Inventory | YES | ACB 021787; ACB 021790 | NO | N/A |
| 69 | H-024109 | 1986 | 4 | Sidney Hines; Sammy Walker; Arthur Alexander | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 028493 – 28494; ACB 028481 – 28483 | NO | 11 Handwritten notes in file, 1 listed on Inventory; 1 To-from memo in file, 0 listed on Inventory | YES | ACB 028365; ACB 028412; ACB 028418; ACB 028435; ACB 028442; ACB 028444; ACB 028492; ACB 028506; ACB 028526; ACB 028565; ACB 028581; ACB 028583; ACB 028602 | YES | ACB 028 |
| 70 | H-349049 | 1986 | 4 | Jesse Avery; Robert Divine | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 028655 – 28656 | NO | 13 GPRs in file, 12 on inventory | NO | N/A | NO | N/A |
| 71 | H-435581 | 1986 | 4 | Jettie Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 028718 | YES | N/A | NO | N/A | NO | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

## PERMANENT RETENTION FILE COMPARISON
### Items in the Investigative File missing from the Permanent Retention File

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-/FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-/FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 66 | G-482955 | 1985 | 3 | Howard Wiley | YES | NO | N/A | YES | ACB 021264-21307 | YES | ACB 021155; ACB 021157; ACB 021206; ACB 021245-21263; ACB 021272; ACB 021289 | YES | ACB 021075; ACB 021188; ACB 021190 | 21084-21097; 21229-21243; Elimination Prints (21109; 21164); Manila Envelope (21116); Photos (21225; 21229); Crime Scene/Physical Evidence (21227); Person (21033-21049); Crime Scene (21051-21073); 21110; 21192-21194; 21202; 21205; 21207-21213; Case Assignment Slip (21015-21017); Inv. File Control (21024); Envelope (21025); Cook County Hospital Card (21026-21027); Business Card (21028); IL Driver's License (21029-21032); Photo No. (21050); Bureau of Detectives Memo (21074); IL Torture Inquiry & Relief Commission Subp. (21076-21077); Lab Report (21079-21081; 21099-21100; 21114-21115; 21138-21139; 21176-21177); Arrest Info (21101; 21214-21215; 21220-21221; 21237); Supp Report (21082-21084; 21112; 21113; 21140-21142; 21186-21187); Major Crime Worksheet (21107-21108; 21178-21179); Latent Fingerprint Exam. Report (21117-21118); Body Diagram (21145; 21148; 21151; 21193-21201); Receipt for Exhibits (21156; 21165; 21222-21223); Witness Statement (21167-21175); Continuation of Narrative w/ additional notes (21182); Arrest Report (21189; 21244); Case Report (21191-21192); Fingerprints (21217-21218); Rifling Class Characteristics (21224) |
| 67 | G-483470 | 1985 | 1 | Michael McMillan | YES | NO | N/A | YES | ACB 021347-21348; ACB 021396-21401 | NO | N/A | YES | ACB 021349; ACB 021402 | 21324-21331; 21336-21344; 21386-21388; 21407-21408; Photos & Crime Scene Evidence (21320; 21413-21414); Finger & palmprints (21409-21410); Photos of Vehicle (21411-21412); 21321-21322; 21345; 21350-21358; 21377-21385; Case Assignment Slip (21312); Consent to Search (21346; 21391); Body Diagram (21363); Diagram (21373); Arrest Info (21381); Witness Statement (21389-21390); Vehicle Tow Report (21392); Major Crime Worksheet (21394-21396; 21416-21417); Form 101 (21403); Inv. File Control (21418) |
| 68 | G-501974 | 1985 | 1 | Willie Cunningham | YES | NO | N/A | YES | ACB 021782-21791 | YES | ACB 021787; ACB 021790 | NO | N/A | 21776-21779; 21781; Photos & Crime Scene Evidence (21773; 21792); 21774; Body Diagram; Inv. File Control (21806) |
| 69 | H-024109 | 1986 | 4 | Sidney Hines; Sammy Walker; Arthur Alexander | YES | NO | N/A | YES | ACB 028378 – 28380; ACB 028429; ACB 028443; ACB 028457 – 28465; ACB 028519; ACB 028525; ACB 028527 – 28529; ACB 028540 – 28542; ACB 028585 – 28592; ACB 028603 – 28605; ACB 028624 – 28642 | YES | ACB 028365; ACB 028412; ACB 028418; ACB 028435; ACB 028442; ACB 028444; ACB 028492; ACB 028506; ACB 028526; ACB 028565; ACB 028581; ACB 028583; ACB 028602 | YES | ACB 028403 | Inventory # 236873: 28544; Inventory # 249759: 28595; Inventory # 249762: 28597; Inventory # 249756: 28623; Inventory # 271160: 28424; Inventory # 271122: 28430; Inventory # 271101: 28452; Inventory # 271103: 28453; Inventory of Things Seized in Search: 28566; 28598; 28375-28376; 28521; 28611; Person: 28486 – 28490; 28645; 28492 – 28653; Scene: 28485; 28647 – 28651; 28423; 28428; 28431 – 28432; 28454; 28555; 28557 – 28559; 28561; 28564; 28566; 28600 – 28601; 28612; Court Attendance Report: 28369 – 28372; 28394; 28397 – 28401; 28400; 28497; Request for Identification Photos: 28502 – 28503; Name Card: 28504; Latent Fingerprint Examination Report: 28505; Request for Latent Fingerprint Comparison: 28367 – 28368; 28377; 28404; 28441; Case control slip: 28506; Missing/Found Person Case Report: 28907; 28516; Arrest Report: 28387; 28433 – 28434; 28431; 28530; 28554; 28556; 28560; 28562; 28567; 28599; 28606; Court Complaint Transmittal Listing: 28531; Release of Person in Custody: 28543; Form 101: 28382; 28402; 28552 – 28553; Statement: 28466 – 28479; 28568 – 28579; Arrest Information: 28445; 28580; 28382 – 28583; 28594; Body Diagram: 28384; Gang Arrest Information: 28593; Case Assignment Slip: 28566; To-From: 28403; Chicago Daily Bulletin: 28413 – 28414; 28419 – 28422; Arrest Warrant: 28417; Stop Order or Cancellation Request: 28427; Material Submitted for Use in the Daily Bulletin: 28440; Fingerprint Check (Only): 28455; Investigative File Control: 28484 |
| 70 | H-309049 | 1986 | 4 | Jesse Avery; Robert Divine | YES | NO | N/A | YES | ACB 028703 – 28714 | NO | N/A | NO | N/A | 28658 – 28661; 28683; Investigative File Control 28657; 28716; Court Attendance Report: 28662; Arrest Information Slip: 28682; Arrest Report: 28685 – 28686; Statement: 28687 – 28702; Envelope: 28715 |
| 71 | H-435581 | 1986 | 4 | Jettie Williams | YES | NO | N/A | NO | N/A | NO | N/A | NO | N/A | Inventory # 12599835: 28728; Inventory # 12599886: 28730; Inventory of things seized in search: 28729; 28731; Arrest Report: 28720 – 28721; Identification Check Procedure: 28723; Crime Scene Processing Report: 28732; Crime Laboratory Report: 28733; Hospitalization Case Report: 28734; Supplementary Report: 28735 – 28742 |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| IDENTIFYING INFORMATION | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON *Items in the Investigative File missing from the Criminal Defense Attorney File* | | | | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
| 72 | H-465163 | 1986 | 2 | Omar Saunders Bradford Marcelliuss Duane Roach Eddie Harris | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 028043 - 47 | NO | 41 To-from memos in file, 0 listed on Inventory | YES | ACB 028241 | YES | ACB 028211; 028242 – 28254; ACB 028255 – 28256; ACB 028267 – 28268; ACB 028286 – 28287; ACB 028289 – 28290 – 28304; ACB 028305 – 28307; ACB 028314 – 28315; ACB 028318 – 28319; ACB 028326 – 28328; ACB 028335 – 28336; ACB 028349 – 28351; ACB 028352 |
| 73 | J-381525 | 1987 | 4 | Albert Buckles | YES | YES | ACB 046797; ACB 046837; ACB 046839 –51; ACB 046853; ACB 046855-80; | NO | N/A | YES | ACB 046839 – 46842; ACB 046875 - 46877 | YES | ACB 046843; ACB 046845; ACB 046848; ACB 046853; ACB 046855 | NO | N/A | YES | ACB 046797 | NO | 7 GPRs in file, 4 listed on Inventory 5 Handwritten notes in file, 0 listed on Inventory | YES | ACB 046843 | NO | N/A |
| 74 | J-418229 | 1987 | 1 | Mervyn Wright | YES | YES | ACB 046883-91; ACB 046920; ACB 046926; ACB 046932-46; ACB 046949-52; ACB 046954-75; ACB 047012-13; ACB 047958-59 | NO | N/A | YES | *ACB 046934 *ACB 046940 *ACB 046942-945 *ACB 046954-956 *ACB 046958-959 *ACB 046961-968 *ACB 046970 *ACB 046974-975 | YES | *ACB 046886 *ACB 046936-937 *ACB 046941 *ACB 046946 *ACB 046950 *ACB 046952 *ACB 046957 *ACB 046960 *ACB 046969 *ACB 046973 *ACB 047013 | NO | N/A | YES | ACB 046883 - 46885 | NO | 22 GPRs in file, 3 listed on Inventory 15 Handwritten notes in file, 5 listed on Inventory | YES | ACB 046882; ACB 046886; ACB 046927; ACB 046931; ACB 046937-39; ACB 046950; ACB 046952; ACB 046973; ACB 047013; ACB 047053 | YES | ACB 046949; ACB 047049; ACB 047053 |
| 75 | J-486857 | 1987 | 4 | Kevin Murray Tyrone Washington | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 047135-47137 | UNKNOWN | Cover of file states "Duplicate file, can't find original." Appears to be a copy of the Permanent Retention File, so unable to evaluate whether inventory is complete, because most items on the inventory are not in the file | NO | N/A | NO | N/A |
| 76 | J-510242 | 1987 | 4 | Juan Maldonado | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 047141-47142 | NO | 8 Handwritten notes in file, 0 listed on Inventory | YES | ACB 0 47139-40; ACB 0 47147; ACB 0 47207; ACB 0 47209; ACB 0 47214 | YES | ACB 047 |
| 77 | K-300724 | 1988 | 4 | Alex Aleman | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 047286-47287 | NO | 4 Handwritten notes in file, 0 listed on Inventory | YES | ACB 047289; ACB 047291; ACB 047303; ACB 047356 | NO | N/A |

Case: 1:23-cv-04438 Document #: 383-39 Filed: 04/06/26 Page 280 of 433 PageID #:18901

| | IDENTIFYING INFORMATION | | | PERMANENT RETENTION FILE COMPARISON — Items in the Investigative File missing from the Permanent Retention File | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |

| No. | Records Div. No. | Year | Area | Defendant(s) | Perm file? | Inv inventory in perm? | Inventory match? | GPR missing? | Bates GPR | HW missing? | Bates HW | To-from missing? | Bates to-from | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 72 | H-465163 | 1986 | 2 | Omar Saunders, Bradford Marcelliuss, Duane Roach, Eddie Harris | YES | NO | N/A | YES | ACB 028140 – 28169; ACB 028181; ACB 028289 | YES | ACB 028241 | YES | ACB 028214; ACB 028242 – 28245; AB 028255 – 28256; ACB 028266 – 28268; ACB 028286 – 28287; ACB 028290 – 28291; ACB 028293; ACB 028305 – 28306; ACB 028314 – 28315; ACB 028318 – 28319; ACB 028326 – 28330; ACB 028333 – 28336; ACB 028349 – 28351; ACB 028357 | 28078 – 28087; 28091 – 28099; 28177 - 28178; Supp Reports (28048-28076); Arrest Report (28077; 28088; 28090; 28122 – 28123; 28179 – 28180; 28182 – 28186); Moving of Arrestee out of & into arrest (28089); Illinois Sate Police Division of Forensic Science (28100 – 28120; 28307 - 28312); Form 101 (28121); Lab Corporation of America (28124; 28131); Grand Jury Subpoena (28125); Daily Major Incident Log (28126 – 28127); Consenting Party (28128; 28133); Affidavit (28129 – 28130); Forensic Identity Testing (28132); Order for use of an eavesdropping device (28134); Matter of judicial approval form (28135); Consent to collect biological and/or hair standards (28136 – 28138; 28193 – 28196; 28288); To-from Memo Central Homicide (28170 – 28172; 28187 – 28192; 28197; 28212 – 28213; 28215 - 28240); Chicago Police Department Name Check Report (28173 – 28174); Arrestee History (28175-28176); Case Fact Sheet (28198 – 28202); Lori Roscetti PowerPoint (28203 – 28211); Police Narrative (28246 – 28254; 28257 – 28265); Cook County Jail Visitor Records (28269 – 28285); Person Locator (28292); Subpoena (28294); Cellmark Diagnostics (28295 – 28304; 28321; 28352; 28364); Newspaper Article (28313; 28320); Chicago Tribune Article (28316 – 28317); Circuit Court of Cook County Criminal Division Fax Cover (28322; 28353; 28358); Agreed Order (28323 – 28325; 28354 – 28356; 28359 - 28361); Department of Police Letter (28331); City of Dallas letter (28332); Arrest Information (28348); HUB travel Center booking locator (28362); City of Chicago Letter (28363) |
| 73 | J-381525 | 1987 | 4 | Albert Buckles | YES | NO | N/A | YES | ACB 046839-46842; ACB 046875-46877 | YES | ACB 046848 | NO | N/A | 46798-46802; 46837-46838; 46849-46851; Fingerprints on survival knife (46805); Photos & Blood Sample (46852); Photos (46854); Lab Reports (46803-46804); Form 101 (46821); Witness Statement (46822-46836); Diagram (46843); Firearms Receipt & Worksheet (46844); Body Diagram (46846); Fired Evidence Report (46847); CHESS Memo (46857); Supp Reports (46858-46874; 46878-46880) |
| 74 | J-418229 | 1987 | 1 | Mervyn Wright | YES | NO | N/A | YES | ACB 046934; ACB 046940 – 46946; ACB 046954 – 46970; ACB 046974 - 46975 | YES | ACB 046882; ACB 046886; ACB 046927; ACB 046931; ACB 046937-39; ACB 046950; ACB 046952; ACB 046973; ACB 047013; ACB 047053 | YES | ACB 046948; ACB 047049; ACB 047051 | Inventory # 420962: 46976; Inventory # 420962: 46978; Inventory # 420961: 46979; 46981; Inventory # 420960: 46982; 46984; Inventory # 420959: 46985; 46987; Inventory # 420958: 46988; 46990; Inventory # 420956: 46991; 46993; Inventory # 420957: 46994; 46996; Inventory # 440677: 46997; 46999; Inventory # 440678: 47000; 47001; Inventory # 435676: 47074; 47076 – 47077; Inventory # 435675: 47078; 47080 ;47081; Inventory # 438562: 47082; 47084; Inventory of things seized in search: 46977; 46980; 46983; 46986; 46989; 46992; 46995; 46998; 47002; 47075; 47079; 47083; 46909 – 46910; 46918 – 46925; 47012; 47014; 47072 - 47073; Scene: 46887 – 46891; Other: 46935 - 46936; 46912 – 46933; 46927; 47058 - 47059; Court Attendance Report: 46892 – 46898; 46902 – 46903; 46907 – 46908; 46911 – 46917; 46928; Motion to suppress statement: 46899 – 46901; Subpoena: 46904 – 46905; 46929; Arrest Information: 46906; 46949; 46951; 46971; Request for Latent Fingerprint Comparison: 46926; 46947; 47050; The University of Chicago Hospitals map: 46930; Arrest Report: 46953; 47052; 47055; Statement: 47003 – 47011; 47051 - 47048; Body diagram: 47029; 47070; Patient Record: 47054; Release of Person in Custody: 47056 - 47057 |
| 75 | J-486857 | 1987 | 4 | Kevin Murray, Tyrone Washington | YES | YES | YES | NO | N/A | NO | N/A | NO | N/A | N/A |
| 76 | J-510242 | 1987 | 4 | Juan Maldonado | YES | NO | N/A | YES | ACB 047198-47213; ACB 047230; ACB 047237-47241 | YES | ACB 0 47139-40; ACB 0 47147; ACB 0 47207; ACB 0 47209; ACB 0 47214 | YES | ACB 0 47187 | 47177-47186; 47196; 47227-47229; Fingerprints (47223); Photos (47225); 47195; Arrest Information (47180); Request for Ballistics Comparison (47188-47189); Traffic Accident Report (47190-47191); Vehicle Tow Report (47192); Arrest Report (47193); Cable Communications Inc. Bill (47197); Release of Person in Custody (47215); Preliminary Fired Evidence Report (47216); Line-Up Report (47217); Body Diagram (47220) |
| 77 | K-300724 | 1988 | 4 | Alex Aleman | YES | NO | N/A | YES | ACB 047293-47302; ACB 047324; ACB 047335; ACB 047338 | YES | ACB 047289; ACB 047291; ACB 047303; ACB 047356 | NO | N/A | 47339-47345; 47320-47321; 47327; 47350; Photos, Blood Samples (47304); 47353; 47365; Inv. File Control (47288); Watch Assignment Sheet (47290); Form 101 (47292); Body Diagram (47317); Arrest Warrant (47346-47347); Arrest Report (47351); Supp Report (47354-47355); Copy of Attorney Business Card (47363); Copy of Request to stop questioning until lawyer present (47364) |

| IDENTIFYING INFORMATION | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON *Items in the Investigative File missing from the Criminal Defense Attorney File* | | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
| 78 | K-562024 | 1988 | 4 | Robert McAllister Joseph Bravieri Richard Zuniga | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 047370-74732 | NO | 24 GPRs in file, 19 listed on Inventory 10 Handwritten notes in file, 0 listed on Inventory | YES | ACB 047377; ACB 047386; ACB 047401-09; ACB 047437; ACB 047536; ACB 047555 | YES | ACB 047... |
| 79 | M-139566 | 1989 | 4 | Miller Holston | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 047559 | NO | 2 Handwritten notes in file, 0 listed on Inventory | YES | ACB 047563; ACB 047566 | NO | N/A |

| IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 78 | K-562024 | 1988 | 4 | Robert McAllister Joseph Bravieri Richard Zuniga | YES | YES | No • CITY-PRF-03180 = ACB 047370 except PRF only has 3 entries instead of the ACB 15. PRF ends with "Copy to Unit 164" on 1/4/89. • Entries from 1/5/89 to 8/22/89 are missing from PRF file. Unlisted Entries in PRF: • Evidence Report (Date of Entry (DOE) 1/5/89 – Report Date 12/28/88), • Crime Lab Photos (DOE 1/13/89), • GOCR (DOE 1/26/89 – Report Date 12/18/88), • Request for Analysis (DOE 1/30/85 – Report Date 1/9/89), • Supp. Report (DOE 2/23/89 – Report Date 2/10/89), • Property Inventory and Xerox Prop. Inventory w/corrections (DOE 6/4/89 - Report Date 6/5/89), • Receipt for Exhibit (DOE 6/4/89), • Postmortem (DOE 6/27/89), • Postmortem (DOE 7/13/89 – Tox. Report Date 12/26/88), • Supp. Crime Lab (DOE 8/22/89 – Report Date 8/15/89), • Supp. Crime Lab (DOE – None) | YES | ACB 047373-47378; ACB 047433-47438; ACB 047442-47455 | YES | ACB 047377; ACB 047386; ACB 047401-09; ACB 047437; ACB 047536; ACB 047555 | YES | ACB 047473 | 47416-47432; 47440-47441; 47463; 47476-47477; 47534-47535; 47539-47550; Pertinent Physical Evidence (47384) Photos & Blood Vial (47385-47387) Cards (47388-47390) Fingerprints & Shotgun (47521); Person (47554); 47456; 47508-47512; 47553; Arrest Information (47379-47380) Arrest Report (47391-47397) Complaint for Search Warrant (47398-47408) Search Warrant (47410-47415) Request for Analysis (47464; 47474-47475; 47518; 47531; 47551) Witness Statement (47468-47472; 47513-47517) Body Diagram (47488-47490; 47495) Address Book Copy (47556-47557) |
| 79 | M-139566 | 1989 | 4 | Miller Holston | YES | NO | No • CITY-PRF-03272 = ACB 047823 except PRF has 6 entries instead of the ACB 13 entries • PRF Inventory ends with "Copy to Unit 164" on 11/29/89. • Entries from 12/1/90 to 6/10/90 are missing. Unlisted Entries in PRF • GOCR (DOE 12/1/90 – Report Date 11/18/90) • Property Inventory (DOE 12/1/90) • Postmortem (DOE 1/10/90 – Report Date 12/7/89 – Tox. Report Date 12/6/89) • Subpoena (DOE 1/23/90 – Subpoena Date 1/16/90) • Subpoena (DOE 2/8/90 – Subpoena Date 2/6/90) • Crime Lab Report (DOE 2/8/90 – Report Date 2/5/90) • Subpoena (DOE 6/10/90 – Subpoena Date 6/1/90) | YES | ACB 047560-47562 | YES | ACB 047563; ACB 047566 | NO | N/A | 47616-47621; 47571-47582; 47610-47611; Photo ID (47568) Photos & Paper Bag with Victim belongings (47569) Photos & Sealed Envelope (47570); Person (47623-47625); 47564-47565;Arrest Report (47567) Form 101 (47583) Body Diagram (47586) Witness Statement (47597-47599) Lab Report (47612-47614) |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON<br>*Items in the Investigative File missing from the Criminal Defense Attorney File* | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | | | |
| IDENTIFYING INFORMATION | | | | | | | | | | | | | | | | | | | | |
| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
| 80 | M-510728 | 1989 | 4 | Leroy Lyons | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 047780 | NO | 4 To-from memos in file, 3 listed on Inventory | NO | N/A | YES | ACB 04778_ 047786; 047809; A__ 047_81 |
| 81 | M-534290 | 1989 | 4 | Gerardo Degollado David Estrada Juan Portillo | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 047823-24784 | NO | 4 Handwritten notes in file, 0 listed on Inventory | YES | ACB 047826; ACB 047828; ACB 047852; ACB 047856; ACB 047858; ACB 047860; ACB 047889; ACB 047891; ACB 047893; ACB 047922; ACB 047956 | NO | N/A |

Case: 1:23-cv-04438 Document #: 383-39 Filed: 04/06/26 Page 284 of 433 PageID #:18905

| IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 80 | M-510728 | 1989 | 4 | Leroy Lyons | YES | NO | No • CITY-PRF-03339 = ACB 047627 except PRF has 15 entries instead of the ACB 20 entries. PRF ends with GOCR on 12/19/85 • Entries from 2/2/90 to 3/21/90 are missing from PRF file Unlisted Entries in PRF: • Postmortem (Date of Entry (DOE) 2/2/90 – Report Date 1/9/90) • ASA Subpoena (DOE 2/13/90 – Subpoena Date 1/24/90) • Subpoena (DOE 3/12/90 – Supoena Date 3/1/90) • Receipt for Analysis (DOE 3/21/90 – "Date Turner Over" 12/6/89 – Result date 3/7/90) • Lab Report (DOE 3/21/90 – Report Date 3/8/90) | YES | ACB 047818-47819 | NO | N/A | YES | ACB 047781; ACB 047786; ACB 047809; ACB 047811 | 47812-47817; 47805-47806; 47810; Illinois Bell Records (47774-47778; 47782-47785; 47808) Court Notification (47779) Form 101 (47787) Arrest Report (47788) Body Diagram (47804) Court Complaint Transmittal (47807) |
| 81 | M-534290 | 1989 | 4 | Gerardo Degollado David Estrada Juan Portillo | YES | YES | No • CITY-PRF-03272 = ACB 047823 except PRF has 6 entries instead of the ACB 13 entries • PRF Inventory ends with "Copy to Unit 164" on 11/29/89. • Entries from 12/1/90 to 6/10/90 are missing. Unlisted Entries in PRF • GOCR (DOE 12/1/90 – Report Date 11/18/90) • Property Inventory (DOE 12/1/90) • Postmortem (DOE 1/10/90 – Report Date 12/7/89 – Tox. Report Date 12/6/89) • Subpoena (DOE 1/23/90 – Subpoena Date 1/16/90) • Subpoena (DOE 2/8/90 – Subpoena Date 2/6/90) • Crime Lab Report (DOE 2/8/90 – Report Date 2/5/90) • Subpoena (DOE 6/10/90 – Subpoena Date 6/1/90) | YES | ACB 047842-47846; ACB 047929-47938 | YES | ACB 047826; ACB 047828; ACB 047852; ACB 047856; ACB 047858; ACB 047860; ACB 047889; ACB 047891; ACB 047893; ACB 047922; ACB 047956 | NO | N/A | 47944-47949; 47830; 47872; 47941-47942; 47851; 47855; 47857; Release of Person in Custody (47827; 47861) Body Diagram (47832; 47904) Form 101 (47847) Arrest Report (47848-47850; 47853-47854; 47859) Witness Statement (47862-47870) Vehicle Tow Report (47871) ID Record Request (47921) |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON — Items in the Investigative File missing from the Criminal Defense Attorney File | | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEPENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
| 82 | M-539997 | 1989 | 4 | Peter Guzaldo | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 047959-47960 | NO | 4 Handwritten notes in file; 0) listed on Inventory | YES | ACB 047972; ACB 047982; ACB 047992 | NO | N/A |
| 83 | M-544975 | 1989 | 4 | Liddale Jones | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 048023 | NO | 2 Handwritten notes in file; 0) listed on Inventory | YES | ACB 048028 | NO | N/A |
| 84 | M-560742 | 1989 | 4 | Fredy Roberson | YES | YES | ACB 047627-28; ACB 047632; ACB 047660; ACB 047662; ACB 047666; ACB 047673; ACB 047677 | NO | N/A | NO | N/A | YES | *ACB 047662 *ACB 047666 | NO | N/A | YES | ACB 047627 | NO | 2 Handwritten notes in file; 0) listed on Inventory | YES | ACB 047662; ACB 047666 | NO | N/A |
| 85 | M-568343 | 1989 | 4 | Steve Jones Perry Lewis | YES | YES | ACB 048059-60; ACB 048130-33; ACB 048135; ACB 048137-42 | YES | NO - additional entries after 8/8/1990 (ACB 048059-48060 in the - File; CRIM.DEF FILES FIELDS 050064, CRIM.DEF FILES - FIELDS 050212 in PD file) | NO | N/A | NO | N/A | NO | N/A | YES | ACB 048059-60 | NO | 2 Handwritten notes in file; 0) listed on Inventory | YES | ACB 048062; ACB 048064; ACB 048140; ACB 048142 | NO | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| IDENTIFYING INFORMATION | | | | | | | PERMANENT RETENTION FILE COMPARISON *Items in the Investigative File missing from the Permanent Retention File* | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 82 | M-539997 | 1989 | 4 | Peter Guzaldo | YES | NO | No • CITY-PRF-03404 = ACB 048144 except PRF has 8 entries instead of the ACB 16 entries. PRF ends with Subpoena on 12/19/89 • Entries from 12/26/89 to 3/9/91 are missing from PRF file Unlisted Entries in PRF: • GOCR (Date of Entry (DOE) 12/26/89 – Report Date 12/10/89) • To-From Request for Ballistics (DOE 12/26/89 – Report Date 12/20/89) • Property Inventories (DOE 12/26/89) • Postmortem (DOE 1/10/90 – Report Date 1/2/90 – Tox. Report Date is 12/27/89) • Request for Ballistics Comparison (DOE 1/26/90 – Report Date 12/20/89) • ASA Subpoena (DOE 2/13/90 – Subpoena Date 2/6/90) • Subpoena (DOE 6/15/90 – Subpoena Date 6/8/90) • IR Sheet (DOE 3/9/91) | YES | ACB 047971-47981 | YES | ACB 047972; ACB 047982; ACB 047992 | NO | N/A | 48012-48014; 47985-47988; 47999-48001; 47989-47991; 47995; Form 101 (47983; 48007) Arrest Report (47993; 48006) Request for Analysis (48011) |
| 83 | M-544975 | 1989 | 4 | Liddale Jones | YES | NO | N/A | YES | ACB 048036-48037 | YES | ACB 048028 | NO | N/A | 48049-48054; 48033-48035; 48040; Request for Analysis (48031) Form 101 (48038; 48046) Arrest Report (48039) Supp Report (48042) Defendant Release Order (48045) |
| 84 | M-566742 | 1989 | 4 | Fredy Roberson | YES | YES | No • CITY-PRF-03339 = ACB 047627 except PRF has 15 entries instead of the ACB 20 entries. PRF ends with GOCR on 12/19/85 • Entries from 2/2/90 to 3/21/90 are missing from PRF file Unlisted Entries in PRF: • Postmortem (Date of Entry (DOE) 2/2/90 – Report Date 1/9/90) • ASA Subpoena (DOE 2/13/90 – Subpoena Date 1/24/90) • Subpoena (DOE 3/13/90 – Supoena Date 3/1/90) • Receipt for Analysis (DOE 3/21/90 – "Date Turner Over" 12/8/89 – Result date 3/7/90) • Lab Report (DOE 3/21/90 – Report Date 3/8/90) | YES | ACB 047661-47670 | YES | ACB 047662; ACB 047666 | NO | N/A | 47634-47637; 47671; 47638-47641; 47651-47653; 47660; Body Diagram (47649) Form 101 (47654) Complaint (47655) Arrest Report (47656) Witness Statement (47657-47658) Recording Tape Hold Request (47659) Request for Analysis (47673) Lab Report (47675-47676) |
| 85 | M-568343 | 1989 | 4 | Steve Jones Perry Lewis | YES | YES | No • 2nd Page of Inventory (8 entries) Missing from PRF File (ACB 048059) • PRF Inventory Ends with subpoena on 12/21/89. • Entries from 12/21/89 to 3/9/91 missing from PRF file Unlisted Entries in PRF: • 2 GPRs (Date of Entry (DOE) 12/21/89 – Supervisor Approval 12/19/89) • Supp. Reports (DOE 12/21/89 – Supervisor Approval 12/18/89) • Postmortem (DOE 2/2/90 – Report Date 12/30/89 – Tox. Report Date 12/27/89) • Subpoena (DOE 2/6/90 – Subpoena Date 1/29/90) • Supp. Report (DOE 8/8/90 – Report Date 7/26/90) • GOCR (DOE 8/27/90 – Report Date 8/22/90) • IR Sheet (DOE 3/9/91) | YES | ACB 048061-48067; ACB 048118-48119 | YES | ACB 048062; ACB 048064; ACB 048140; ACB 048142 | NO | N/A | 48123-48128; 48068-48072; 48087-48089; 48134; Person (48137-48141); 48090-48091; 48135; Body Diagram (48094) Form 101 (48109-48110) Arrest Report (48113; 48115) Supp Report (48114; 48120-48122; 48130) Case Report (48132-48133) |

28 of 62

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 86 | M-569727 | 1989 | 4 | John Avery | YES | YES | ACB 048144-46; ACB 048149; ACB 048159; ACB 048179-80 | YES | NO - additional entries after 12/26/1989 (ACB 048144 in Invest. File; CRIM.DEF FILES - FIELDS 045941 in PD File) | NO | N/A | NO | N/A | NO | N/A | YES | ACB 048144 | NO | 3 To-from memos/request for ballistics in file, 2 listed on Inventory; Medical Examiner Report | NO | N/A | YES | ACB 048159; 048167; 048179 |
| 87 | M-580592 | 1989 | 4 | Elmer Carrillo David Duarte | YES | YES | ACB 048204; ACB 048216; ACB 048316-27 | YES | NO - additional entries after 1/9/1990 (ACB 048182-48183 in Inv. File; CRIM.DEF FILES - FIELDS 051064-51065 in PD file) | NO | N/A | YES | *ACB 048204 *ACB 048216 *ACB 048323 *ACB 048327 | NO | N/A | YES | ACB 048182-48183 | NO | 11 Handwritten notes in file, 0 listed on Inventory | YES | ACB 048204; ACB 048216; ACB 048233; ACB 048235; ACB 048237; ACB 048323; 48327 | YES | ACB 048 |
| 88 | M-587998 | 1989 | 4 | Darryl Milton Tony Allen Cleve Jackson Robert Brown Tyrone Brown Darryl Milton | YES | YES | ACB 048329-30; ACB 048333; ACB 048345; ACB 048364; ACB 048386; ACB 048406-07; ACB 048419-22 | NO | N/A | NO | N/A | YES | ACB 048345; ACB 048364; ACB 048386; ACB 048422 | NO | N/A | YES | ACB 048329 | NO | 4 Handwritten notes in file, 1 listed on Inventory | YES | ACB 048345; ACB 048364; ACB 048386; ACB 048422 | YES | ACB 048 |
| 89 | M-590700 | 1989 | 4 | Ricky Icenberg | YES | YES | ACB 047679-80; ACB 047694; ACB 047696; ACB 047751; ACB 047765; ACB 047767-72 | YES | NO - additional entries after 4/11/1990 (ACB 047679-47680 in Inv. File; CRIM.DEF FILES - FIELDS 052463-52464 in PD file) | NO | N/A | YES | ACB 047694; ACB 047696; ACB 047751 | NO | N/A | YES | ACB 047679-80 | NO | 4 Handwritten notes in file, 0 listed on Inventory | YES | ACB 047694; ACB 047696; ACB 047698; ACB 047751; ACB 047768 | YES | ACB 047 |
| 90 | D-322218 | 1999 | 4 | Rodolfo Garcia Robert Salinas Sergio Ledesma Monico Orozco Philip Deavilla | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 004143-145 | NO | Subpoenas –Streetfiles Handwritten Statements Handwritten Notes Photos –Person | YES | ACB 004497 ACB 004582 ACB 004247 ACB 004249 ACB 04251-252 ACB 004256 ACB 004272 ACB 004326 ACB 004457 ACB 004461 | NO | N/A |
| 91 | D-192218 | 1999 | 4 | Steven Spears Dion Dorn | YES | YES | ACB 003680; ACB 003740-54; ACB 003768; ACB 003844; ACB 003842-43; ACB 003848-51; ACB 003859-83 | NO | N/A | YES | ACB 003844 | YES | ACB 003695; | NO | N/A | YES | ACB 003680 | NO | Search Consent General Offense Case Report Subpoena – Streetfiles Sup. Report Crime Scene Proc. Reports Property Inventories GPRs Body Diagrams Photos – Scene/Body | NO | N/A | NO | N/A |
| 92 | D-579065 | 1999 | 4 | Jimmy Velasquez | YES | YES | ACB 004923-25; ACB 004931-38; ACB 005007; ACB 005009-10; ACB 005022-25 | NO | N/A | YES | ACB 005009-10; ACB 005007; ACB 005023; ACB 005022-24 | YES | ACB 004930; ACB 004941; ACB 004975; ACB 004984; ACB 004922; ACB 005036; | NO | N/A | YES | ACB 004823-924 | NO | Handwritten Notes Subpoena Streetfiles Property Inventories | YES | ACB 005036 ACB 005024 ACB 005007 | NO | N/A |
| 93 | D-131199 | 1999 | 4 | Juan Mendez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 002998-999 | NO | Subpoena - Streetfiles | NO | N/A | NO | N/A |
| 94 | D-145734 | 1999 | 4 | Refugio Gomez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 003118-120 | NO | Subpoena –Streetfiles Biz Card Handwritten Notes | YES | ACB 003139 ACB 003142 ACB 003165 | NO | N/A |
| 95 | D-146057 | 1999 | 4 | Hector Medina | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 003375-379 | NO | Subpoenas -Streetfiles Handwritten Notes To- from Memo Photos – Scene/Body | YES | ACB 003573 ACB 003575 ACB 003577-578 | YES | ACB 003 |
| 96 | D-454658 | 1999 | 4 | Raymond Vera Ricardo Raygoza Francisco Rodriguez Frank Arenibar | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 004732-734 | NO | Subpoenas Streetfiles Request for Evidence ID Photographs | NO | N/A | NO | N/A |
| 97 | D-724882 | 1999 | 4 | Tanya McWilliams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 005044 | NO | Handwritten Note | YES | ACB 0050669 | NO | N/A |
| 98 | F-475-960 | 2000 | 4 | Juan Cordova | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 007450-451 | NO | Subpoenas- Streetfiles | NO | N/A | NO | N/A |
| 99 | F-405-633 | 2000 | 4 | Joe Jackson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 007198-199 | NO | Subpoenas- Streetfiles Handwritten Notes | YES | ACB 007218-219 | NO | N/A |

Case: 1:23-cv-04438 Document #: 203-39 Filed: 04/06/24 Page 287 of 433 PageID #:18004

Case: 1:23-cv-04438 Document #: 383-39 Filed: 04/06/26 Page 288 of 433 PageID #:18905

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 86 | M-569727 | 1989 | 4 | John Avery | YES | YES | No • CITY-PRF-03404 = ACB 048144 except PRF has 8 entries instead of the ACB 16 entries. PRF ends with Subpoena on 12/19/89 • Entries from 12/26/89 to 3/9/91 are missing from PRF file Unlisted Entries in PRF: • GOCR (Date of Entry (DOE) 12/26/89 – Report Date 12/10/89) • To-From Request for Ballistics (DOE 12/26/89 – Report Date 12/20/89) • Property Inventories (DOE 12/26/89) • Postmortem (DOE 1/10/90 – Report Date 1/2/90 – Tox. Report Date is 12/27/89) • Request for Ballistics Comparison (DOE 1/26/90 – Report Date 12/20/89) • ASA Subpoena (DOE 2/13/90 – Subpoena Date 2/6/90) • Subpoena (DOE 6/15/90 – Subpoena Date 6/8/90) • IR Sheet (DOE 3/9/91) | NO | N/A | NO | N/A | YES | ACB 048159; ACB 048167; ACB 048176 | 48171–48175; 48146; 48149; 48168–48170; 48179; Body Diagram (48156) Case Report pages 1 & 2 (48161-48162) |
| 87 | M-580592 | 1989 | 4 | Elmer Carrillo David Duarte | YES | NO | N/A | YES | ACB 048192; ACB 048198-48205; ACB 048211-48220; ACB 048222-48236 | YES | ACB 048204; ACB 048216; ACB 048233; ACB 048235; ACB 048237; ACB 048323; 48327 | YES | ACB 048187 | 48312-48314; 48188-48191; 48209-48210; Person (48317-48320); 48184-48185; 48197; 48221; 48311; 48321-48326; Arrest Info (48186) Form 101 (48208) Release of Person in Custody (48238) Body Diagram (48245) Witness Statement (48276-48291) Arrest Report (48292-48293) |
| 88 | M-587998 | 1989 | 4 | Darryl Milton Tony Allen Cleve Jackson Robert Brown Tyrone Brown Darryl Milton | YES | NO | N/A | YES | ACB 048331; ACB 048344; ACB 048362-48365; ACB 048369; ACB 048379-48381 | YES | ACB 048345; ACB 048364; ACB 048386; ACB 048422 | YES | ACB 048388 | 48408-48413; 48338-48340; 48349; 48389-48390; 48423; Body Diagram (48342) Line-Up Info (48348) Form 101 (48350; 48371; 48382) Arrest Report (48352-48353; 48370; 48383; 48385) Request for Analysis (48378) Permission to Search (48384; 48387) Witness Statement (48391-48396) Lab Report (48414-48415) ID Card (48419-48420) Typed Note (48421) |
| 89 | M-590700 | 1989 | 4 | Ricky Icenberg | YES | NO | N/A | YES | ACB 047689-47697; ACB 047716-47722 | YES | ACB 047694; ACB 047696; ACB 047698; ACB 047751; ACB 047768 | YES | ACB 047681 | 47761-47764; 47682-47684; 47686; Person (47767-47772); Body Diagram (47688) Witness Statement (47733-47735) Form 101 (47743; 47756) Arrest Warrant (47744-47745; 47757-47758) Complaint (47746-47748) Consent to Search (47749) Arrest Report (47750; 47754) |
| 90 | D-322218 | 1999 | 4 | Rodolfo Garcia Robert Salinas Sergio Ledesma Monico Orozco Philip Deavilla | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 91 | D-192218 | 1999 | 4 | Steven Spears Dion Dorn | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 92 | D-579065 | 1999 | 4 | Jimmy Velasquez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 93 | D-131199 | 1999 | 4 | Juan Mendez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 94 | D-145734 | 1999 | 4 | Refugio Gomez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 95 | D-146057 | 1999 | 4 | Hector Medina | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 96 | D-454658 | 1999 | 4 | Raymond Vera Ricardo Raygoza Francisco Rodriguez Frank Arenibar | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 97 | D-724882 | 1999 | 4 | Tanya McWilliams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 98 | F-475-960 | 2000 | 4 | Juan Cordova | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 99 | F-405-633 | 2000 | 4 | Joe Jackson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago. Index of Basement Files, 1983-1989, 1999-2006

## CRIMINAL DEFENSE ATTORNEY FILE COMPARISON — Items in the Investigative File missing from the Criminal Defense Attorney File

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO/FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO/FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 100 | F-731010 | 2000 | 4 | Eric Brocks / Johnny Sims | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 007787 | YES | N/A | NO | N/A | NO | N/A |
| 101 | F-746059 | 2000 | 1 | Jermaine Washington | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 007831 | NO | Photos – Scene/Body | NO | N/A | NO | N/A |
| 102 | G-032399 | 2001 | 1 | Latoya Jones / Diane Wiley | YES | YES | ACB 009209-10; ACB 009215-20; ACB 009264-77; ACB 009282-86; ACB 009288-302; ACB 009313-34; ACB 009365-66; ACB 009369; ACB 009409-13 | NO | N/A | NO | N/A | NO | N/A | NO | N/A | YES | ACB 009209-9210 | NO | Photos – Person; Daily Major Incident Log; To-From Memo; Felony Minutes- Form 101; Child Abuse Investigation/Placement Report; Consent to Search Form | NO | N/A | YES | ACB 009[...] |
| 103 | G-082465 | 2001 | 1 | Andre Richardson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 009545-9546 | YES | N/A | NO | N/A | NO | N/A |
| 104 | G-108432 | 2001 | 1 | Rasson Davis / Gregory Brown | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 010196-10197 | NO | Handwritten notes (10286-10288; 10300) | YES | ACB 010287-10289; ACB 010300; ACB 010339 | NO | N/A |
| 105 | G-118582 | 2001 | 1 | Stanton Adams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 010563 | NO | Handwritten notes (10715-10717; 10725-10727) | YES | ACB 010686, ACB 010715-10717, ACB 010721-10722, ACB 010734 | NO | N/A |
| 106 | G-128509 | 2001 | 1 | Leonard Suggs | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 010777-10779 | NO | Handwritten notes (10851-10854, 10867; 10869; 10882-10887; 10889-10892) | YES | ACB 010851-10852, ACB 010854, ACB 010858, ACB 010867, ACB 010869, ACB 010882-10887, ACB 010889-10892, ACB 010917 | YES | ACB 010858; 010908-[...] |
| 107 | G-142235 | 2001 | 4 | Brian Robinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 010999-1000 | NO | Handwritten notes (11005; 11051); Subpoena (11001) | YES | ACB 011051, ACB 011148 | NO | N/A |
| 108 | G-152113 | 2001 | 1 | Tirrell Marshall / Aaron Givens | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 011361-11362 | NO | Handwritten notes (11529); Crime Scene Photos (11366-11406) | NO | N/A | NO | N/A |
| 109 | G-168213 | 2001 | 1 | Shakina Feazell / Dion Banks | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 011979-11981 | NO | Handwritten notes (12064-12067) Subpoena (12202; 12203) | YES | ACB 012155-12156 | YES | ACB 012178 |
| 110 | G-187460 | 2001 | 4 | Arnold Paris | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 012381-12382 | NO | GPR (12385) | NO | N/A | NO | N/A |
| 111 | G-188311 | 2001 | 1 | Denny McGee | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 012525-12528 | NO | Handwritten note (12681; 12735; 12779) GPR (12706) | YES | ACB 012681, ACB 012735, ACB 012739, ACB 012779, ACB 012794 | NO | N/A |
| 112 | G-188820 | 2001 | 1 | Tyrone Sanders | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 012881-12883 | NO | GPRs (13038-13063) Handwritten notes (13061-13065) | YES | ACB 012972, ACB 012976, ACB 013002, ACB 013061-13062, ACB 013064-13065, ACB 013102 | NO | N/A |
| 113 | G-190057 | 2001 | 1 | Donald Mann | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 013146 | NO | To-From Memo (13173-13174) | NO | N/A | YES | ACB 013173-13174 |
| 114 | G-221780 | 2001 | 1 | Maurice Forest | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 013572-13573 | NO | Handwritten note (13609; 13644; 13723-13724) | YES | ACB 013605, ACB 013609, ACB 013644, ACB 013723-13724, ACB 013726 | NO | N/A |
| 115 | G-226841 | 2001 | 1 | Carl Jones / Andre Jackson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 013742-13743 | NO | Handwritten note (13981; 14005; 14054); 63 GPRs inventoried, 71 in the file. | YES | ACB 014005 | NO | N/A |
| 116 | G-248938 | 2001 | 1 | Jeffrey Hester | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 014469-14471 | NO | To-From Memo (14541); Handwritten note (14688) | YES | ACB 014594-14599; ACB 014688 | YES | ACB 01[...] |
| 117 | G-259121 | 2001 | 1 | Kevin Jackson | YES | NO | N/A | YES | YES | NO | N/A | NO | N/A | NO | N/A | NO | N/A | N/A | N/A | NO | N/A | NO | N/A |
| 118 | G-261213 | 2001 | 1 | Samer Iruti | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 014926-14927 | NO | Handwritten note (15026; 15039) | NO | N/A | NO | N/A |
| 119 | G-266841 | 2001 | 1 | Timothy Malone | YES | YES | ACB 15162-15164; ACB 15179-15180; ACB 015186; 15183-15184; ACB 15191-195; ACB 015199-200; ACB 015265; ACB 015268; ACB 015270; ACB 015281 | NO | N/A | YES | *ACB 015194-195 *ACB 015268 *ACB 015281 | YES | *ACB 015263 *ACB 015270 | YES | ACB 015192 | YES | ACB 015162 | NO | Photo- Person | NO | N/A | NO | N/A |
| 120 | G-268444 | 2001 | 1 | Isaiah Brady | YES | YES | ACB 015506; ACB 015661; ACB 015670; ACB 015601; ACB 015602-71; ACB 015660-69; ACB 015726-35; ACB 015675-79; ACB 015689-700; ACB 015551; ACB 015584-85; ACB 015591-92; ACB 015701-02; ACB 015623; ACB 015641; ACB 015672-74; ACB 015686-87; ACB 015703-04 | YES | NO - additional entries after 1/10/2002 (PD file - CRUM.DEF.FILES FIELDS 025609-10; 1m. File - 15506-15507) | YES | ACB 015603; ACB 015642-15671 | YES | ACB 015661; ACB 015670 | NO | N/A | YES | ACB 015506-15507 | NO | Handwritten note (15661; 15670) | NO | N/A | YES | ACB 015591; ACB 015661; ACB 015670 |
| 121 | G-276602 | 2001 | 1 | Thomas Reed | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 015763-15764 | NO | Handwritten note (15994) To-from Memo w/ handwritten note (16000) | YES | ACB 015994, ACB 015998, ACB 016002 | NO | N/A |
| 122 | G-311269 | 2001 | 1 | Tracy Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 016402-16403 | NO | Case Report (16542-16543) | NO | N/A | N/A | N/A |
| 123 | G-332669 | 2001 | 1 | Carlos Corona | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 016883-16884 | NO | Handwritten note (16996) | YES | ACB 016996, ACB 017000, ACB 017029, ACB 017038, ACB 017042 | NO | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 100 | F-731010 | 2000 | 4 | Eric Brocks Johnny Sims | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 101 | F-746059 | 2000 | 1 | Jermaine Washington | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 102 | G-032399 | 2001 | 1 | Latoya Jones Diante Wiley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 103 | G-082465 | 2001 | 1 | Andre Richardson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 104 | G-108432 | 2001 | 1 | Rasson Davis Gregory Brown | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 105 | G-118582 | 2001 | 1 | Stanton Adams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 106 | G-128509 | 2001 | 1 | Leonard Suggs | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 107 | G-142325 | 2001 | 4 | Brian Robinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 108 | G-152113 | 2001 | 1 | Tirrell Marshall Aaron Givens | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 109 | G-168213 | 2001 | 1 | Shakina Feazell Dion Banks | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 110 | G-187460 | 2001 | 4 | Arnold Paris | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 111 | G-188311 | 2001 | 1 | Donny McGee | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 112 | G-188820 | 2001 | 1 | Tyrone Sanders | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 113 | G-190057 | 2001 | 1 | Donald Mann | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 114 | G-221780 | 2001 | 1 | Maurice Forest | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 115 | G-226841 | 2001 | 1 | Carl Jones Andre Jackson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 116 | G-248938 | 2001 | 1 | Jeffory Hester | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 117 | G-259321 | 2001 | 1 | Kevin Jackson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 118 | G-261213 | 2001 | 1 | Samer Ituni | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 119 | G-266841 | 2001 | 1 | Timothy Malone | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 120 | G-268444 | 2001 | 1 | Isaiah Brady | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 121 | G-276602 | 2001 | 1 | Thomas Reese | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 122 | G-311269 | 2001 | 1 | Tracy Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 123 | G-322669 | 2001 | 1 | Carlos Corona | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 124 G-326467 | 2001 | 1 | Anthony Mason Edward Ware George Frison Eddie Baker | YES | YES | ACB 017073-075; ACB 017077; ACB 017079-116; ACB 017118-55; ACB 017157-161; ACB 17178; ACB 17182-87; ACB 017195; ACB 017198; ACB 017201; ACB 017232; ACB 017241; ACB 017256; ACB 01265; ACB 017266-275; ACB 017277-82; ACB 017300-302; ACB 017317-318; ACB 017360-361; ACB 017374; ACB 017376 | NO | N/A | YES | ACB017300-302, ACB017317-318, ACB017360-361 | YES | ACB017154-155, ACB017185, ACB017374 | NO | N/A | YES | ACB 017073-075 | NO | Complaints for Preliminary Examination Handwritten Notes Criminal History ISP Submission Photos -Scene/Body Request for Evidence Identification Photographs | YES | ACB 017154-155 ACB 017185 ACB 017370-371 | NO | N/A |
| 125 G-330755 | 2001 | 1 | Pyreese Waller Jermaine Roberson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 017382-17383 | NO | To-from Memo (17452) Handwritten note (17552) | YES | ACB 017548, ACB 017552 | YES | ACB 017452 |
| 126 G-356804 | 2001 | 1 | James House | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 017766-17767 | NO | Supp Report, July 14, 01 (17841-17842) | NO | N/A | NO | N/A |
| 127 G-380402 | 2001 | 4 | Jose Jimenez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 017987-17988 | NO | Handwritten note (18046) | YES | ACB 018015-18016, ACB 018046-18047 | NO | N/A |
| 128 G-389122 | 2001 | 1 | Kenneth Gayden | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 018226-18227 | NO | Daily Major Incident Logs (18346-18347) | NO | N/A | NO | N/A |
| 129 G-390651 | 2001 | 1 | Francisco Rodriguez Julio Camacho | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 018350-18351 | NO | Handwritten notes (18407-18410) | YES | ACB 018407-18410, ACB 018469 | YES | ACB 018470 |
| 130 G-397986 | 2001 | 1 | Stacy Samuels | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 018514 | NO | Daily Major Incident Log (18518) Request for Evidence (18519-18520) | NO | N/A | NO | N/A |
| 131 G-399481 | 2001 | 1 | Desmond Vinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 018559-18561 | NO | Handwritten note (18770) | YES | ACB 018729, ACB 018770 | YES | ACB 018 |
| 132 G-406405 | 2001 | 1 | Santana McCree | YES | YES | ACB 018902; ACB 018942; ACB 019026; ACB 019028-30; ACB 019051-052 | YES | NO - additional entries after 1/14/2002 (ACB018902 in Inv. File; CRIM.DEF FILES - FIELDS 007060 in PD file) | NO | N/A | YES | ACB 019146 | YES | ACB019024, ACB019028 | YES | ACB 018901-902 | NO | Hospitalization Case Report Handwritten Note IL Torture Commission Files Photos- Scene/Body Photos-Person | YES | ACB 019084 | NO | N/A |
| 133 G-419125 | 2001 | 1 | Francisco Gutierrez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 019191-19193 | NO | Handwritten note of crime scene diagram (19351) | YES | ACB 019328, ACB 019351, ACB 019381 | NO | N/A |
| 134 G-425608 | 2001 | 1 | Ernest Motes | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 019458-19460 | NO | Handwritten note (19630; 19632; 19716) Photocopies (19665-19667) | YES | ACB 019667, ACB 019716 | NO | N/A |
| 135 G-434632 | 2001 | 1 | Barabara Rolark | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 019725-19726 | NO | Typed Memo (19813-19818) Subpoena (19874) | NO | N/A | NO | N/A |
| 136 G-443474 | 2001 | 1 | Salvador Rico | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 019876-19877 | NO | Handwritten note (20030; 20032) | NO | N/A | NO | N/A |
| 137 G-447444 | 2001 | 1 | Derrick Crawford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 020158 | NO | Daily Major Incident Log (20237) Handwritten note (20240; 20321) Supp Report CC (20241-20250) | YES | ACB 020321 | NO | N/A |
| 138 G-450601 | 2001 | 1 | Margaret Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 020327-20328 | NO | Daily Major Incident Log (20361) Handwritten note (20408) | NO | N/A | NO | N/A |
| 139 G-451387 | 2001 | 1 | Ubex Lopez Richard Gacho | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 020455-20456 | NO | Handwritten note (20541) | YES | ACB 020460, ACB 020463, ACB 020541 | NO | N/A |
| 140 G-456492 | 2001 | 1 | Filimon Resendez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 020565-20566 | NO | Handwritten note (20620; 20688; 20692; 20721; 20723; 20731-20736; 20742; 20764; 20767; 20779-20789) To-from Memo (20683-20690; 20710-20713) | YES | ACB 020620-20621, ACB 020631, ACB 020688, ACB 020692, ACB 020721, ACB 020723, ACB 020731-20736, ACB 020742, ACB 020764, ACB 020767, ACB 020779, ACB 020781, ACB 020783-20789 | YES | ACB 020683-20690, ACB 020710- |
| 141 G-491442 | 2001 | 1 | Edward Pleasant | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 021420-21421 | NO | Daily Major Incident Log (21573-21575) | NO | N/A | NO | N/A |
| 142 G-497018 | 2001 | 1 | Gerald Henry | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 021577-21578 | NO | Case Report (21649-21650) | NO | N/A | NO | N/A |
| 143 G-506663 | 2001 | 4 | Miguel Garcia | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 021808-21811 | NO | Handwritten note (21858; 21864; 22064-22065; 22078; 22081-22083) To-from Memo w/ photo of poss. Offender (22066) | YES | ACB 021858, ACB 021864, ACB 021868, ACB 021875-21880, ACB 021896, ACB 022064-22065, ACB 022067, ACB 022069, ACB 022074-22075, ACB 022078-22079, ACB 022081-22083 | NO | N/A |
| 144 G-541859 | 2001 | 1 | Alan Coleman | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 022139 | NO | Witness Statements (22206-22234) | NO | N/A | NO | N/A |
| 145 G-543889 | 2001 | 1 | Bennie Teague | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 022261-22262 | NO | Daily Major Incident Log (22330-22331) Body Diagram (22384) Attorney IDs and notes (22370-22371) | YES | ACB 022370-22376 | NO | N/A |
| 146 G-547890 | 2001 | 1 | Juan Macias Sergio Jimenez Christopher Kuhar | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 022495 | NO | Handwritten note (22632; 22662) Inv. Alerts (22620; 22621) | YES | ACB 022632 | NO | N/A |
| 147 G-554146 | 2001 | 1 | Leroy Washington | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 022656-22657 | NO | Handwritten note (22757; 22760; 22762) To-from Memo (22761) | YES | ACB 022742, ACB 022755-22757, ACB 022762 | YES | ACB 022755, ACB 022758-22760 |
| 148 G-556311 | 2001 | 4 | Roberto Barrera | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 022824-22825 | NO | Handwritten note (22831) ISP Criminal History Record Info (22827-22829) | NO | N/A | NO | N/A |
| 149 G-567131 | 2001 | 1 | Charles Walker Michael Harris | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 022950-22951 | NO | Handwritten note (23130; 23178; 23188; 23226) Daily Major Incident Log (23028-23030) | YES | ACB 023134, ACB 023178, ACB 023226 | NO | N/A |

Case: 1:25-cv-04438 Document #: 283-39 Filed: 04/09/25 Page 291 of 433 PageID #:19902

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

## PERMANENT RETENTION FILE COMPARISON
### Items in the Investigative File missing from the Permanent Retention File

| | IDENTIFYING INFORMATION | | | | | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | | | | | | | | | |
| 124 | G-326467 | 2001 | 1 | Anthony Mason / Edward Ware / George Frison / Eddie Baker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 125 | G-330755 | 2001 | 1 | Pyeese Waller / Jermaine Robertson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 126 | G-356804 | 2001 | 1 | James House | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 127 | G-380402 | 2001 | 4 | Jose Jimenez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 128 | G-389122 | 2001 | 1 | Kenneth Gayden | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 129 | G-390651 | 2001 | 1 | Francisco Rodriguez / Julio Camacho | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 130 | G-397986 | 2001 | 1 | Stacy Samuels | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 131 | G-399481 | 2001 | 1 | Desmond Vinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 132 | G-406405 | 2001 | 1 | Santana McCree | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 133 | G-419125 | 2001 | 1 | Francisco Gutierrez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 134 | G-425608 | 2001 | 1 | Ernest Mates | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 135 | G-434632 | 2001 | 1 | Barabara Rolark | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 136 | G-443474 | 2001 | 4 | Salvador Rico | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 137 | G-447444 | 2001 | 1 | Derrick Crawford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 138 | G-450601 | 2001 | 1 | Margaret Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 139 | G-451387 | 2001 | 1 | Ubex Lopez / Richard Gacho | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 140 | G-456492 | 2001 | 1 | Filimon Resendez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 141 | G-491442 | 2001 | 1 | Edward Pleasant | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 142 | G-497018 | 2001 | 1 | Gerald Henry | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 143 | G-506663 | 2001 | 4 | Miguel Garcia | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 144 | G-541859 | 2001 | 1 | Alan Coleman | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 145 | G-543889 | 2001 | 1 | Bennie Teague | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 146 | G-547890 | 2001 | 1 | Juan Macias / Sergio Jimenez / Christopher Kuhar | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 147 | G-554146 | 2001 | 1 | Leroy Washington | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 148 | G-556311 | 2001 | 4 | Roberto Barrera | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 149 | G-567131 | 2001 | 1 | Charles Walker / Michael Harris | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

Case: 1:23-cv-04438 Document #: 285-30 Filed: 04/06/24 Page 293 of 433 PageID #:19014

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 150 | G-570120 | 2001 | 1 | Crisino Bravo / Filiberto Bravo | YES | YES | ACB 023264; ACB 023268-307; ACB 023309-351; ACB 023366; ACB 023369-70; ACB 023379; ACB 023382; ACB 023386-388; ACB 023392; ACB 023402; ACB 023412-417; ACB 23421; ACB 023427-28; ACB 023432; ACB 023446-447; ACB 23456; ACB 023460-468; ACB 023469-71 | NO | N/A | YES | *ACB 023402 *ACB 023412-417 *ACB 023421 *ACB 023432 *ACB 023438 *ACB 023427 | YES | ACB 023370 | NO | N/A | YES | ACB 023264 | NO | Photos – Person / Photos – Scene/Body / Biz. Card / Handwritten Note / Subpoena –Defense / Daily Major Incident Log | YES | ACB 023370 | NO | N/A |
| 151 | G-575283 | 2001 | 1 | Andrzej Konopacki | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 023474 | NO | Daily Major Incident Log (23477; 23536) / Handwritten note (23554; 23559) | NO | N/A | NO | N/A |
| 152 | G-578724 | 2001 | 1 | Tramel Foreman | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 023608-23610 | NO | Handwritten note (23614; 23751) / Daily Major Incident Log (23613-23615) | YES | ACB 023696, ACB 023751, ACB 023760 | NO | N/A |
| 153 | G-592219 | 2001 | 1 | Raul Lemus | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 023801-23803 | NO | Handwritten note (23878; 23934-23936) | YES | ACB 023934-23936 | NO | N/A |
| 154 | G-602617 | 2001 | 1 | Kimberley Hood | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 024047 | NO | 3 to-from memos are listed and there are 4 in the file. (24062; 24106-24108) | NO | N/A | YES | ACB 024062, 024106-24108 |
| 155 | G-630073 | 2001 | 1 | Iran Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 024118-24119 | NO | GPRs - 2 are listed and there are 25 in the file. (24267-24295) / Handwritten notes (24270; 24272; 24296; 24318) | YES | ACB 024270, ACB 024296, ACB 024318 | NO | N/A |
| 156 | G-630295 | 2001 | 1 | Terry Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 024369-24374 | NO | 2 Handwritten notes listed, 4 in file (24439; 24686-24687; 24737) | YES | ACB 024439, ACB 024686, ACB 024737 | NO | N/A |
| 157 | G-632707 | 2001 | 1 | Baruch Shaw | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 024743-24745 | NO | 0 GPRs listed in the inventory, 55 in the file (24771-24818) / Handwritten note (24751) | YES | ACB 024834, ACB 024836, ACB 024840 | YES | ACB 024835, 024842-2... |
| 158 | G-648246 | 2001 | 1 | Helen Kos | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 024984-24986 | NO | Handwritten note (25089; 25091; 25093; 25127) | YES | ACB 025091, ACB 025093, ACB 025127 | NO | N/A |
| 159 | G-655145 | 2001 | 1 | Earl Herron | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 025281-25282 | NO | Inv. File Control (25285) | NO | N/A | NO | N/A |
| 160 | G-656885 | 2001 | 1 | Larry Simpson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 025436-25437 | NO | Handwritten/drawn sketch (25603; 25607) | YES | ACB 025603, ACB 025607 | NO | N/A |
| 161 | G-670379 | 2001 | 1 | Devale Holman / Sandy Williams / Ebonie Gadison | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 025617-25619 | NO | Handwritten note (25741; 25788) | YES | ACB 025687, ACB 025788 | NO | N/A |
| 162 | G-678089 | 2001 | 1 | Omarr Teague | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 025963-25964 | NO | Inv. File Control (26034) / 64 Photos (25969-26033) / Handwritten note (26139) | NO | N/A | NO | N/A |
| 163 | G-686446 | 2001 | 1 | Jason Davis / Mario Garcia / Hector Flores | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 026145-26147 | NO | 10 Handwritten notes in file, 2 listed on Inventory | YES | ACB 026226, ACB 026252, ACB 026257, ACB 026311, ACB 026396, ACB 026423, ACB 026434, ACB 026436, ACB 026438, ACB 026440, ACB 026483 | NO | N/A |
| 164 | G-688481 | 2001 | 1 | Terry Powe | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 026524-26525 | NO | Inv. File Control (26528) / Photos (26530-26546) / Community Alert Flyer (26611) | YES | ACB 026610 | NO | N/A |
| 165 | G-691809 | 2001 | 1 | Johnnie Hill | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 026747-26748 | NO | 2 Handwritten notes in file, 0 listed on Inventory | YES | ACB 026832, ACB 026895 | NO | N/A |
| 166 | G-694725 | 2001 | 4 | Jermaine Jackson / Peter Lawrence / Byron Jones | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 007899-7901 | NO | To-from Memo (7902; 8047) / Typed Witness List with Handwritten notes (7904) / Handwritten map (8081) | YES | ACB 007902-7904, ACB 008081 | YES | ACB 008... |
| 167 | G-694885 | 2001 | 1 | William Lyles | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 026934-26935 | NO | Inv. File Control (26966) / Photos (26939-26965) | NO | N/A | NO | N/A |
| 168 | G-701363 | 2001 | 4 | Erik Argueta | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 008168-8170 | NO | Handwritten note (8266) / Attorney Business Card (8303) / (Note: it appears something on line 23, page 8170 was white-out.) | NO | N/A | NO | N/A |
| 169 | G-705434 | 2001 | 1 | Norman McIntosh | YES | YES | ACB 027080-082; ACB 027085-104; ACB 027106-135; ACB 027136-137; ACB 027139-77; ACB 027183-187; ACB 027193-197; ACB 027204-205; ACB 027222; ACB 027231-233; ACB 027246-47; ACB 027250; ACB 027255-257; ACB 027280; ACB 027283-84 | NO | N/A | YES | ACB027231-233, ACB027246-247 | YES | ACB 027222 | NO | N/A | YES | ACB 027080-082 | NO | Outreach Ministry Card / Handwritten Note / Photos - Scene/Body / Daily Major Incident Log | YES | ACB 027222 | NO | N/A |
| 170 | G-708133 | 2001 | 1 | Kevin McGraw | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 027316-27317 | NO | Miranda Warning with Handwritten note (27432) | NO | N/A | NO | N/A |
| 171 | G-722334 | 2001 | 1 | Renetta Braboy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 027436 | NO | To-from Memo with Handwritten note (27490) / 3 Handwritten notes in file, 0 listed on Inventory | NO | N/A | NO | N/A |
| 172 | G-751124 | 2001 | 1 | Jorge Mendez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 027627 | NO | State's Ex. 1 Photo (27658) / 1 Handwritten note in file, 0 listed on Inventory | NO | N/A | NO | N/A |
| 173 | G-759169 | 2001 | 1 | Arthur Shanklin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 027720-27722 | NO | 33 GPRs in file, 32 listed on Inventory / 1 Handwritten note in file, 0 listed on Inventory | YES | ACB 027879 | NO | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON Items in the Investigative File missing from the Permanent Retention File | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 150 | G-570120 | 2001 | 1 | Crisino Bravo Filiberto Bravo | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 151 | G-575283 | 2001 | 1 | Andrzej Konopacki | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 152 | G-578724 | 2001 | 1 | Tramel Foreman | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 153 | G-592219 | 2001 | 1 | Raul Lemus | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 154 | G-602617 | 2001 | 1 | Kimberley Hood | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 155 | G-630073 | 2001 | 1 | Iran Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 156 | G-630295 | 2001 | 1 | Terry Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 157 | G-632707 | 2001 | 1 | Baruch Shaw | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 158 | G-648246 | 2001 | 1 | Helen Kos | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 159 | G-655145 | 2001 | 1 | Earl Herron | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 160 | G-656885 | 2001 | 1 | Larry Simpson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 161 | G-670379 | 2001 | 1 | Devale Holman Sandy Williams Ebonie Gadison | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 162 | G-678089 | 2001 | 1 | Omarr Teague | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 163 | G-686446 | 2001 | 1 | Jason Davis Mario Garcia Hector Flores | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 164 | G-688481 | 2001 | 1 | Terry Powe | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 165 | G-691809 | 2001 | 1 | Johnnie Hill | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 166 | G-694725 | 2001 | 4 | Jermaine Jackson Peter Lawrence Byron Jones | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 167 | G-694885 | 2001 | 1 | William Lyles | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 168 | G-701363 | 2001 | 4 | Erik Argueta | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 169 | G-705434 | 2001 | 1 | Norman McIntosh | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 170 | G-708133 | 2001 | 1 | Kevin McGraw | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 171 | G-722334 | 2001 | 1 | Renetta Braboy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 172 | G-751124 | 2001 | 1 | Jorge Mendez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 173 | G-759169 | 2001 | 1 | Arthur Shanklin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON — Items in the Investigative File missing from the Criminal Defense Attorney File | | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
| 174 | G-763-171 | 2001 | 4 | Andres Martinez / William Peltner | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 008362-8365 | NO | 64 GPRs in file, 62 listed on Inventory; 2 To-from memos in file, 0 listed on Inventory | YES | ACB 008440-8444, ACB 008759 | YES | ACB 008447 |
| 175 | G-776686 | 2001 | 1 | LaTonya Starnes | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 027956 | NO | Inv. File Control (27961); 2 Hospitalization Case Reports in file, 1 listed on Inventory Photos (28013-28040) | NO | N/A | NO | N/A |
| 176 | HH-101153 | 2002 | 1 | Henry Ingram | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 028753-28754 | NO | ACB 028752: Folder Cover; ACB 028756: Homicide File Review; ACB 028758-762: Crim. History Snukey; ACB 028766-767: Lab Report; ACB 028768-69: ISP to-from; ACB 028770: Investigative File Control; ACB 028781: By-Card; ACB 028811-812, ACB 028829, ACB 028834, ACB 028922, ACB 028948, ACB 028974: Handwritten notes; ACB 028866-67: Firearm Recovery Report; ACB 028977, ACB 029016: Envelope; ACB 028978-015, ACB 029018-038, ACB 029040-046: Photos Scene; ACB 029017, ACB 029039: Photo Scene Card | YES | ACB 028811-28812, ACB 028869, ACB 048894, ACB 048899, ACB 048900 | YES | 028868 ACB |
| 177 | HH-105486 | 2002 | 1 | Marcus Robinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 029048-29049 | NO | No Not Listed: ACB 029047: Folder Cover; ACB 029050: Homicide File Review; ACB 029051: Investigative File Control; ACB 029052: Daily Major Incident Log; ACB 029093: Handwritten note | YES | ACB 029130 | YES | ACB 0291?? |
| 178 | HH-112360 | 2002 | UNK | Lawrence Bradley / Ivan Thomas / Byron Nelson / Corey Hodges / Jerome Weathers | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | N/A | N/A | NO | N/A | N/A | N/A |
| 179 | HH-112848 | 2002 | 1 | Montrois Hinton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 029287-29289 | NO | ACB 029286: Folder Cover; ACB 029291: Homicide File Review; ACB 029292-306: Scene/Body Photo; ACB 029307: Scene Card Photo; ACB 029308: Investigative File Control; ACB 029310, ACB 029314: Daily Major Incident Log; ACB 029409: Handwritten Note | NO | N/A | YES | ACB 029311 |
| 180 | HH-123814 | 2002 | 1 | Ardell NeNeal / Roderick Smith | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 029542-29544 | NO | ACB 029541: Folder Cover; ACB 029545: Homicide File Review; ACB 029546: Envelope; ACB 029547-570: Scene/Body Photo; ACB 029571: Investigative File Control; ACB 029575, ACB 029577, ACB 029581, ACB 029583: Moving of Arrestee; ACB 029627-628: Crime Scene Processing Report and copy (only one listed in inventory) | NO | N/A | NO | N/A |
| 181 | HH-131667 | 2002 | 1 | Antoine Sanders | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 029768-29770 | NO | Handwritten Notes Photos - Scene/Body | YES | ACB 029847, ACB 029846-887 | NO | N/A |
| 182 | HH-138499 | 2002 | 1 | Reginald Plemister | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 029976-29978 | NO | ACB 030242: Folder Daily Major Incident Log Photos | NO | N/A | N/A | N/A |
| 183 | HH-154152 | 2002 | 1 | Eric Nichols | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 030243-245 | NO | ACB 030246: Homicide File Review; ACB 030247, ACB 030421: Envelope; ACB 030248-250, ACB 030252-265: Scene/Body Photo; ACB 030251: Scene Card Photo; ACB 030266: Investigative File Control; ACB 030441: Moving of Arrestee; ACB 030432-435: Major Crime Worksheet; ACB 030444-445, ACB 030447-448: Investigative Alerts; ACB 030302, ACB 030304, ACB 030306, ACB 030315, ACB 030322, ACB 030345, ACB 030354, ACB 030397, ACB 030408, ACB 030413: Handwritten Notes | YES | ACB 030302, ACB 030304, ACB 030306, ACB 030315, ACB 030323 | NO | N/A |
| 184 | HH-158954 | 2002 | 1 | Victor Wright | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | NO | N/A | YES | ACB 048948-950 | NO | To-From memo Daily Major Incident List | YES | ACB 049154 | NO | N/A |
| 185 | HH-175723 | 2002 | 1 | Maurice Brown | YES | YES | ACB 049213-236, ACB 049240, ACB 049243, ACB 049245, ACB 049264, ACB 049266-267, ACB 049306-308, ACB 049350, ACB 049385, ACB 049387, ACB 049394-95, ACB 049397, ACB 049399 | NO | N/A | NO | N/A | YES | ACB049383, ACB049385, ACB049387 | N/A | N/A | YES | ACB 049236-237 | NO | GPR Handwritten Note Photos - Scene/Body Daily Major Incident Log | YES | ACB 049387, ACB 049385 | NO | N/A |
| 186 | HH-249596 | 2002 | 1 | Armando Cruz | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 049404-49406 | NO | Daily Major Incident Felony Minutes 101s Photos - Scene/Body Arrest Report | NO | N/A | N/A | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **IDENTIFYING INFORMATION** | | | | | **PERMANENT RETENTION FILE COMPARISON** *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | | |
| 174 | G-763-171 | 2001 | 4 | Andres Martinez William Pelmer | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 175 | G-776686 | 2001 | 1 | LaTonya Starnes | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 176 | HH-101153 | 2002 | 1 | Henry Ingram | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 177 | HH-105486 | 2002 | 1 | Marcus Robinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 178 | HH-112360 | 2002 | UNK | Lawrence Bradley Iran Thomas Byron Nelson Corey Hodges Jerome Weathers | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 179 | HH-112848 | 2002 | 1 | Montreis Hinton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 180 | HH-123814 | 2002 | 1 | Ardell NcNeal Roderick Smith | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 181 | HH-131667 | 2002 | 1 | Antoine Sanders | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 182 | HH-138499 | 2002 | 1 | Reginald Flemister | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 183 | HH-154152 | 2002 | 1 | Eric Nichols | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 184 | HH-158954 | 2002 | 1 | Victor Wright | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 185 | HH-175723 | 2002 | 1 | Maurice Brown | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 186 | HH-249096 | 2002 | 1 | Armando Cruz | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

## CRIMINAL DEFENSE ATTORNEY FILE COMPARISON
*Items in the Investigative File missing from the Criminal Defense Attorney File*

### IDENTIFYING INFORMATION / CRIMINAL DEFENSE ATTORNEY FILE COMPARISON

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-/FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-/FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 187 | HH-257532 | 2002 | 1 | Curtis Baldwin | NO | N/A | | | N/A | N/A | | | | | N/A |
| 188 | HH-263021 | 2002 | 1 | Joseph Murchison, Steven Brandon | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 189 | HH-270572 | 2002 | 1 | Ernesto Flores, Rogelio Guerra | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 190 | HH-279592 | 2002 | 1 | Ron Turner, Jarmichael Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 191 | HH-280024 | 2002 | 1 | Andrew Robinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 192 | HH-280696 | 2002 | 1 | Willie Murray, John Murray | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 193 | HH-285733 | 2002 | 1 | DeShunta Young | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 194 | HH-296357 | 2002 | 1 | Jesus Munoz-Padilla | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 195 | HH-301377 | 2002 | 1 | Jermaine Evans | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 196 | HH-316330 | 2002 | 1 | Victor Rivera | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 197 | HH-321998 | 2002 | 1 | Michael Wordlow | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 198 | HH-347787 | 2002 | 1 | Kendrick Jackson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 199 | HH-358668 | 2002 | 1 | James Mitchell, Marcel White, Christopher Peoples, Lawrence Harper | YES | YES | ACB 031270-295, ACB 031307-309; ACB 031311-322; ACB 031325-40; 031342-92; 031387-91; 031394-397; 031399-453; ACB 031455-489; 031491-495; 031499-453; ACB 031500-538; 031559-55; 031583-86. | NO | N/A | YES | *ACB 031329, *ACB 031358-361, *ACB 031419-427, *ACB 031429, *ACB 031491-495, *ACB 031497, *ACB 031500-511, *ACB 031513-517 | YES | *ACB 031327, *ACB 031330, *ACB 031496, *ACB 031499, *ACB 031512, *ACB 031484 (on an investigative alert) | ACB 031294, ACB 031295 |

### INVESTIGATIVE FILE INFORMATION

| # | DEFENDANT(S) | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-/FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-/FROM MEMOS IN THE FILE |
|---|---|---|---|---|---|---|---|---|---|
| 187 | Curtis Baldwin | YES | ACB 049738-49740 | NO | ACB 049737: Folder Cover; ACB 049741: Homicide File Review; ACB 049742: Investigative File Control; ACB 049743: Envelope; ACB 049744-770, ACB 049773-792: Scene/Body Photos; ACB 049771-772: Scene Card Photos; ACB 049793-794: Daily Major Incident Log; ACB 049877, ACB 049906: Handwritten Note; ACB 049923: Moving of Arrestee; ACB 049878: License Plate; ACB 049897: Arrest Report; ACB 049844-845 and ACB 049824-825: ISP forensic report and copy of report, only listed once in inventory | YES | ACB 049896 | NO | |
| 188 | Joseph Murchison, Steven Brandon | YES | ACB 050033-50034 | NO | Clear Data Inventory, Recovered Reports, Daily Major Incident Log, Photos - Scene/Body | NO | N/A | NO | |
| 189 | Ernesto Flores, Rogelio Guerra | YES | ACB 050135-50137 | NO | ACB 050134: Folder Cover; ACB 050138: Homicide File Review; ACB 050139-142: Daily Major Incident Log; ACB 050143, ACB 050019: Handwritten Note; ACB 050144-145: Investigative File Control; ACB 050225: Biz Card; ACB 050320, ACB 050261: Envelope; ACB 050021, ACB 050031, ACB 050337-338, ACB 050362, ACB 050388, ACB 050379, ACB 050380-381: Scene Card Photo; ACB 050322-330, ACB 050365-367, ACB 050369-378, ACB 050380-389, ACB 050392-395: Scene/Body Photo; ACB 050390-391: Scene Card Photo; ACB 050400-401: Crime Scene Proc: Report and copy (only listed once) | YES | ACB 050143 | NO | |
| 190 | Ron Turner, Jarmichael Williams | YES | ACB 050510-50511 | NO | ACB 050425-426: Folder Cover; ACB 050427, ACB 050428, ACB 050560: Envelope; ACB 050429-489, ACB 050491-492, ACB 050494-496: Scene Card Photos; Scene/Body Photos (only 4 scene card photos listed but 63 scene photos present); ACB 050497: Investigative File Control; ACB 050498-500: Daily Major Incident Log; ACB 050501-504, ACB 050506-509: To-/From Memo; ACB 050505, ACB 050556, ACB 050588, ACB 050620, ACB 050626: Handwritten Note; ACB 050552, ACB 050606: Arrest Report; ACB 050558-559: Viewer's Map (14-Can Photo Smith only 1 listed but 2 present); ACB 050575-576, ACB 050592: Arrestee History Photo; ACB 050584, ACB 050605: Photo Person; ACB 050591: Investigative Alert | YES | ACB 050505, ACB 050588, ACB 050626 | YES | ACB 050501, ACB 050506, ACB 050507, ACB 050508, ACB 050509 |
| 191 | Andrew Robinson | YES | ACB 050660-50662 | NO | Handwritten Notes; Photos - Body | YES | ACB 050907-908 | NO | |
| 192 | Willie Murray, John Murray | YES | ACB 030468-30469 | NO | Daily Major Incident Log; Handwritten Notes; Name/Check Report; Moving of Arrestee | YES | ACB 030509, ACB 030530, ACB 030575 | NO | |
| 193 | DeShunta Young | YES | ACB 050933-50935 | NO | Daily Major Incident Photos - Scene/Body; ISP Forensics Report | YES | ACB 051100, ACB 051105 | NO | |
| 194 | Jesus Munoz-Padilla | YES | ACB 051188-51190 | NO | Daily Major Incident Photos - Scene/Body; Handwritten Notes; Property Inventory; Felony Minutes - 101 | YES | ACB 051424, ACB 051440-447 | YES | |
| 195 | Jermaine Evans | YES | ACB 030616-30617 | NO | Daily Major Incident Log; Lost and Found Case Report | NO | N/A | NO | |
| 196 | Victor Rivera | YES | ACB030795-30796 | NO | Photos, Photo Array, SOS Search, Leads Responses | YES | ACB 030987, ACB 031052, ACB 031054, ACB 031055 | NO | |
| 197 | Michael Wordlow | YES | ACB 031073 | NO | Daily Major Incident Log; Photos - Scene/Body; Handwritten Note; Biz Cards | YES | ACB 031140, ACB 031136 | NO | |
| 198 | Kendrick Jackson | YES | ACB 031210 | NO | Daily Major Incident Log; Photos - Scene/Body; Written Statements; Handwritten Notes; GPR; Supp. Report | YES | ACB 031243 | NO | |
| 199 | James Mitchell, Marcel White, Christopher Peoples, Lawrence Harper | YES | ACB 031307-309 | NO | Photos - Scene/Body; Daily Major Incident Log; II. Torture Inquiry Documents; Handwritten Notes | YES | ACB 031330, ACB 031327, ACB 031512 | NO | |

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 187 | HH-257532 | 2002 | 1 | Curtis Baldwin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 188 | HH-263021 | 2002 | 1 | Josheph Murchison Steven Brandon | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 189 | HH-270572 | 2002 | 1 | Ernesto Flores Rogelio Guerra | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 190 | HH-279592 | 2002 | 1 | Ron Turner Jarmichael Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 191 | HH-280024 | 2002 | 1 | Andrew Robinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 192 | HH-280696 | 2002 | 1 | Willie Murray John Murray | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 193 | HH-285733 | 2002 | 1 | DeShanta Young | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 194 | HH-296357 | 2002 | 1 | Jesus Munoz-Padilla | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 195 | HH-301377 | 2002 | 1 | Jermaine Evans | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 196 | HH-316330 | 2002 | 1 | Victor Rivera | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 197 | HH-321998 | 2002 | 1 | Michael Wordlow | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 198 | HH-347787 | 2002 | 1 | Kendrick Jackson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 199 | HH-358668 | 2002 | 1 | James Mitchell Marcel White Christopher Peoples Lawrence Harper | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

40 of 62

Case: 1:23-cv-04438 Document #: 383-30 Filed: 04/06/24 Page 299 of 433 PageID #:19026

| | IDENTIFYING INFORMATION | | | | CRIMINAL DEFENSE ATTORNEY FILE COMPARISON *Items in the Investigative File missing from the Criminal Defense Attorney File* | | | | | | | | | | | INVESTIGATIVE FILE INFORMATION | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
| 200 | HH-361418 | 2002 | 1 | Michael Smith | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 051605 | NO | ISP Forensics Lab Report Handwritten Note Daily Major Incident Log Photos- Scene/Body Supp. Reports GPRs Photos- Person Criminal History Reports Written Statements Investigative Alerts Arrest Report Subpoenas | YES | ACB 051601 | NO | N/A |
| 201 | HH-367441 | 2002 | 1 | Hananiah Dukes Larry Williams Damien Braboy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 051831-51832 | NO | Daily Major Incident Log Photos- Scene/Body Handwritten notes | YES | ACB 051887 | NO | N/A |
| 202 | HH-367666 | 2002 | 1 | Terrance Edwards | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 052085-52087 | NO | Daily Major Incident Log Photos- Scene/Body | NO | N/A | NO | N/A |
| 203 | HH-377524 | 2002 | 1 | el Lateef Mannie | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 052317 | NO | Daily Major Incident Log Photos- Scene/Body | NO | N/A | NO | N/A |
| 204 | HH-414131 | 2002 | 1 | Robert Paschall | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 052389-52390 | NO | Moving of Arrestee Photos- Person Supp. Report Daily Major Incident Log | YES | ACB 052391-392 | NO | N/A |
| 205 | HH-447119 | 2002 | 1 | Kevin Frazier | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 052580 | NO | Supp. Report GPR Photo- Scene/Body | NO | N/A | NO | N/A |
| 206 | HH-447396 | 2002 | 1 | Bernard Allen | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 052694-52695 | NO | Handwritten Notes GPRs (inventory has it listed but they left a space for # of GPRs) Daily Major Incident Log Photos- Scene/Body | YES | ACB 052770 ACB 052772 | NO | N/A |
| 207 | HH-500856 | 2002 | 4 | James Hardy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 052794-52797 | NO | Photos- Tapes GPRs Body Diagram | NO | N/A | NO | N/A |
| 208 | HH-505945 | 2002 | 1 | Maurice McGee | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 053150 | NO | Daily Major Incident Log Photos- Person Memo | NO | N/A | NO | N/A |
| 209 | HH-522403 | 2002 | 1 | Emil Lee | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 053307 | NO | Handwritten Notes Daily Major Incident Log Photos- Scene | YES | ACB 053342 ACB 053344 ACB 053346 | NO | N/A |
| 210 | HH-524796 | 2002 | 1 | Marcus Cureton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 053427-428 | NO | Photos- Person Photos- Scene/Body Daily Major Incident Log Non-Chicago Police Dept. Pages | NO | N/A | NO | N/A |
| 211 | HH-525230 | 2002 | 1 | Shonita Roach | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 053585 | NO | Daily Major Indicent Log GPR | NO | N/A | NO | N/A |
| 212 | HH-529070 | 2002 | 1 | Douglas Bowman Dwon Alexander | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 053654-53655 | NO | Photos- Scene/Body Daily Major Incident Log Photos- Scene/Body | YES | ACB 053785 | NO | N/A |
| 213 | HH-546846 | 2002 | 1 | Antonio Fort Robert Tucker Roosevelt Lawrence James Ousley Lamont Motes Ricky Lawson Henry Lawrence | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 053789-53791; ACB 054195-197 | NO | Photos Scene/Body Photos Person Handwritten Note Form 101 Property Inventory 10009628 Handwritten Notes (2) Memo Major Crime Worksheet Daily Major Incident Report | YES | ACB 054228 ACB 054277 ACB 054354 ACB 054389 | NO | N/A |
| 214 | HH-551686 | 2002 | 1 | Romelle Jones | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 054570-54571 | NO | Photos- Scene/Body Daily Major Incident Log Property Inventory Handwritten Note | NO | N/A | NO | N/A |
| 215 | HH-572150 | 2002 | 1 | Rafel Baltazar Jesus Zaragoza | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 054664-54665 | NO | Photos- Scene/Body Handwritten Note | YES | ACB 054829 | NO | N/A |
| 216 | HH-576930 | 2002 | 1 | Sedronio Alonso Celestino Chavez Urbano Perez Juan Alverez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 054934-54935 | NO | Photos – Scene/Body GPRs Handwritten Notes Daily Major Incident Log | YES | ACB 055009 | NO | N/A |
| 217 | HH-609705 | 2002 | 1 | Jose Luera Pierre Montanez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 055256 | NO | Daily Major Incident Log Arrestee History/ Mugshot Leads Reports Notice of Disclosure Request for Non-Published Telephone Information Felony Minute Sheet- Form 101 ID Card Criminal History GPRs Supp. Reports | NO | N/A | NO | N/A |
| 218 | HH-614198 | 2002 | 1 | Larry Monroe Otis Blackmun | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 055313-55315 | NO | Biz Cards Handwritten notes Daily Major Incident Log Felony Minute Sheet –Form 101 | YES | ACB 055392 ACB 055426 | NO | N/A |
| 219 | HH-617694 | 2002 | 1 | Ronald Funches | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 055500-55501 | NO | Photos– Scene/Body Handwritten Notes To-From Memo Daily Major Incident Log | YES | ACB 055499 ACB 055539-542 ACB 055564-565 | YES | ACB 055471 |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 200 | HH-361418 | 2002 | 1 | Michael Smith | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 201 | HH-367441 | 2002 | 1 | Hananiah Dukes Larry Williams Damien Braboy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 202 | HH-367666 | 2002 | 1 | Terrance Edwards | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 203 | HH-377524 | 2002 | 1 | el Lateef Mannie | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 204 | HH-414131 | 2002 | 1 | Robert Paschall | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 205 | HH-447119 | 2002 | 1 | Kevin Frazier | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 206 | HH-447396 | 2002 | 1 | Bernard Allen | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 207 | HH-500856 | 2002 | 4 | James Hardy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 208 | HH-505945 | 2002 | 1 | Maurice McGee | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 209 | HH-522403 | 2002 | 1 | Emil Lee | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 210 | HH-524796 | 2002 | 1 | Marcus Cureton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 211 | HH-525230 | 2002 | 1 | Shonita Roach | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 212 | HH-529070 | 2002 | 1 | Douglas Bowman Dwon Alexander | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 213 | HH-546846 | 2002 | 1 | Antonio Fort Robert Tucker Roosevelt Lawrence James Ousley Lamont Motes Ricky Lawson Henry Lawrence | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 214 | HH-551686 | 2002 | 1 | Romelle Jones | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 215 | HH-572150 | 2002 | 1 | Rafel Baltazar Jesus Zaragoza | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 216 | HH-576930 | 2002 | 1 | Sedronio Alonso Celestino Chavez Urbano Perez Juan Alverez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 217 | HH-609705 | 2002 | 1 | Jose Luera Pierre Montanez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 218 | HH-614198 | 2002 | 1 | Larry Monroe Otis Blackmun | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 219 | HH-617694 | 2002 | 1 | Ronald Funches | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

### CRIMINAL DEFENSE ATTORNEY FILE COMPARISON
*Items in the Investigative File missing from the Criminal Defense Attorney File*

| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 220 | HH-618363 | 2002 | 1 | Darksith Travis | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 055649-55650 | NO | Photos–Scene/Body; Handwritten Note; Daily Major Incident Log | YES | ACB 055734 | NO | N/A |
| 221 | HH-635313 | 2002 | 1 | Joseph Booker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 056062-56063 | NO | Photos–Scene/Body; Handwritten Note | NO | N/A | NO | N/A |
| 222 | HH-660094 | 2002 | 1 | Janene Clay | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 056255 | NO | Daily Major Incident Log; Photos–Scene/Body | YES | ACB 056344 | NO | N/A |
| 223 | HH-690739 | 2002 | 1 | Scott Aranian | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 056385-56386 | NO | Daily Major Incident Log; Photos–Scene/Body | NO | N/A | NO | N/A |
| 224 | HH-749335 | 2002 | 1 | Devon Terrell | YES | YES | ACB 056507-U0; ACB 056512-524; ACB 056532, ACB 056546; ACB 056564; ACB 056579-81; ACB 056610; ACB 056616 | NO | N/A | NO | N/A | YES | ACB056589, ACB056564, ACB056610 | NO | N/A | YES | ACB 056510 | NO | Handwritten notes; Daily Major Incident Log | YES | ACB 056615, ACB 056610, ACB 056564-567 | NO | N/A |
| 225 | HH-767627 | 2002 | 1 | Jaber Ahmad | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 056090-56091 | NO | Photos–Scene/Body; Daily Major Incident Log; Repot of Postmortem Examination | NO | N/A | NO | N/A |
| 226 | HH-783159 | 2002 | UNK | Neptali Perdomo | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 056878-56879 | NO | Supp. Report | NO | N/A | NO | N/A |
| 227 | HH-811146 | 2002 | 1 | Antonio Richmond | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB057055-56056 | NO | Handwritten Notes; Photos–Scene/Body; Daily Major Incident Log | YES | ACB 057093 | NO | N/A |
| 228 | HH-818229 | 2002 | 1 | Christian Dalton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 057186 | NO | Photos–Scene; Photos–Person; Daily Major Incident Log; Handwritten Note; Supp. Report | YES | ACB 057269 | NO | N/A |
| 229 | HH-823907 | 2002 | 1 | Jajuan Hale | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 057348-57350 | NO | Photos–Scene; Handwritten Notes | YES | ACB 057435 | NO | N/A |
| 230 | HH-842054 | 2002 | 1 | Xavier Edwards | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 057631-57632 | NO | Photos–Scene/Body; School Schedule | YES | ACB 057638 | NO | N/A |
| 231 | HH-844492 | 2002 | 1 | Gregory Minniefield | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 057865-57866 | NO | Photos–Scene/Body; Timeline; A&A Work Product; Daily Minute | YES | ACB 057973 | NO | N/A |
| 232 | HH-858534 | 2002 | 1 | Choice Enge / Jerome Howard | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 058054-58056 | YES | N/A | NO | N/A | NO | N/A |
| 233 | HH-858682 | 2002 | 1 | David Hernandez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 058339-58340 | NO | Photos–Scene/Body; Handwritten Notes; Photos–Person | YES | ACB 058408 | NO | N/A |
| 234 | HH-860642 | 2002 | 1 | Shellie Pakula | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 058549-58550 | NO | Photos–Scene/Body; Lab Report; Handwritten Note | YES | ACB 058603 | NO | N/A |
| 235 | HH-860835 | 2002 | – | James Freeman | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 089966-99969 | NO | Invest. Alerts; Complaint for Prelim. Examination; Felony Minutes; Photos–Scene/Body; Warrant; Daily Major Incident Log | YES | ACB 090016-017, ACB 090155, ACB 090211, ACB 090260, ACB 090261, ACB 090319-321, ACB 090300-302 | NO | N/A |
| 236 | HJ-102484 | 2002 | – | Anthony Houston / Jimmie Walls | YES | NO | N/A | YES | YES | NO | N/A | NO | N/A | NO | N/A | YES | ACB 031564-31566 | NO | 3 property inventory items on inventory, 0 in file | NO | N/A | NO | N/A |
| 237 | HJ-117531 | 2003 | A/1 | Jane Ashby | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 031834 – 31835 | NO | 0 handwritten notes on inventory, 6 handwritten notes in file | YES | ACB 031899 | NO | N/A |
| 238 | HJ-117559 | 2003 | A/1 | Onecimo Guereca / Jose Melgoza / Oscar Corral / Jose Nieves | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 032083 - 32086 | NO | 0 handwritten notes on inventory, 6 handwritten notes in file | YES | ACB 032083, ACB 032104 | NO | N/A |
| 239 | HJ-143625 | 2003 | – | David Giacomelli Sr | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 032237 - 32239 | NO | 3 Detective Notes on inventory, 11 handwritten notes in file | YES | ACB 032542 - 32544, ACB 032546 | YES | ACB 032379 - 32380 |
| 240 | HJ-145451 | 2003 | – | Charles Harper | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 032658 - 32659 | NO | 0 handwritten notes on inventory, 1 handwritten note in file | YES | ACB 032687 | NO | N/A |
| 241 | HJ-150596 | 2003 | 1 | Gabriel Stephens / Neysa Benning | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 032841 – 32842 | NO | 20 GPRS on inventory, 17 in the file; 0 handwritten notes on the inventory, 2 in the file; 0 To-From Memos on the inventory, 6 in the file | YES | ACB 032866, ACB 032880, ACB 032882 | YES | ACB 032880, 32883 |
| 242 | HJ-169496 | 2003 | 1 | Bee Pittman | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 032986 - 32987 | NO | 0 handwritten notes on inventory, 5 in file. File indicated "problem loading this page" for pages 184-205 in pdf | YES | ACB 033035, ACB 033047, ACB 033097, ACB 033103, ACB 033111 | NO | N/A |
| 243 | HJ-211373 | 2003 | 1 | Telvin Shaw | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 033216 - 33217 | NO | 0 handwritten notes on inventory, 3 handwritten notes in file | YES | ACB 033339, ACB 033341, ACB 033354 - 33355 | NO | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON — Items in the Investigative File missing from the Permanent Retention File | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 220 | HH-618363 | 2002 | 1 | Darkeith Travis | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 221 | HH-635313 | 2002 | 1 | Joseph Booker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 222 | HH-660094 | 2002 | 1 | Janene Clay | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 223 | HH-690739 | 2002 | 1 | Scott Aramian | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 224 | HH-749335 | 2002 | 1 | Devon Terrell | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 225 | HH-767627 | 2002 | 1 | Jaber Ahmad | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 226 | HH-783159 | 2002 | UNK | Neptali Perdomo | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 227 | HH-811146 | 2002 | 1 | Antonio Richmond | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 228 | HH-818229 | 2002 | 1 | Chrishun Dalton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 229 | HH-823907 | 2002 | 1 | Jajuan Hale | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 230 | HH-842054 | 2002 | 1 | Xavier Edwards | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 231 | HH-844492 | 2002 | 1 | Gregory Minniefield | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 232 | HH-858534 | 2002 | 1 | Choice Enge Jerome Howard | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 233 | HH-858682 | 2002 | 1 | David Hernandez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 234 | HH-860642 | 2002 | 1 | Shellie Pakula | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 235 | HH-860835 | 2002 | 1 | James Freeman | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 236 | HJ-102484 | 2002 | 1 | Anthony Houston Jimmie Walls | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 237 | HJ-117531 | 2003 | A/1 | Jane Ashby | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 238 | HJ-117559 | 2003 | A/1 | Onecimo Guereca Jose Melgoza Oscar Corral Jose Nieves | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 239 | HJ-143625 | 2003 | 1 | David Giocondi Sr | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 240 | HJ-145451 | 2003 | 1 | Charles Harper | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 241 | HJ-158056 | 2003 | 1 | Gabriel Stephens Neysa Benning | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 242 | HJ-169496 | 2003 | 1 | Bee Pittman | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 243 | HJ-211373 | 2003 | 1 | Telvin Shaw | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

44 of 62

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

**CRIMINAL DEFENSE ATTORNEY FILE COMPARISON**
*Items in the Investigative File missing from the Criminal Defense Attorney File*

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 244 | HJ-211691 | 2003 | 1 | Frederick Smith | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 033423 | NO | 19 GPRs on inventory, 8 in file | YES | ACB 033339; ACB 033341; ACB 033354 – 33355 | NO | N/A |
| 245 | HJ-228346 | 2003 | — | Antonio Shaw; Anthony Mitchel; John Fulton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 033496 – 33497 | NO | 0 To-From Memos on inventory, 4 in the file; 0 Handwritten Notes on inventory, 2 in file | YES | ACB 033604 – 33605 | NO | N/A |
| 246 | HJ-239255 | 2003 | 1 | Dominique Johnson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 033664 – 33665 | NO | 0 Daily Major Incident Logs on inventory, 2 in file | YES | ACB 033604 – 33605 | NO | N/A |
| 247 | HJ-243231 | 2003 | 1 | Lee Murphy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 033834 – 33837 | NO | 126 GPRs on inventory, 119 in file | YES | ACB 033920; ACB 033926; ACB 033978 – 33979; ACB 034007; ACB 034170 – 34172; ACB 034189 | YES | ACB 034… |
| 248 | HJ-256409 | 2003 | — | Cedric House | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 058690 – 58691 | NO | 24 GPRs listed on inventory, 22 in file (unless two pages of handwritten notes in between the GPRs are counted as GPRs); 0 Handwritten notes on inventory, 2 in file; 9 Supplementary Reports listed on inventory, 11 in file | YES | ACB 058757; ACB 058759 | NO | N/A |
| 249 | HJ-257094 | 2003 | 4 | Churnill Woods; Otha Woods | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 058955 – 58956 | NO | 0 Handwritten Notes on inventory, 4 in file | YES | ACB 059078; ACB 059093; ACB 059095 | NO | N/A |
| 250 | HJ-274500 | 2003 | 1 | Roger Padilla | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 059154 – 59155 | NO | 14 Handwritten Notes on inventory, 1 in file | YES | ACB 059162 | NO | N/A |
| 251 | HJ-284434 | 2003 | 1 | Donnell Bolden; Christopher Bates; Daryl Grayson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 059422 – 59424 | NO | 0 Handwritten Notes on inventory, 2 in file | YES | ACB 059488 | NO | N/A |
| 252 | HJ-307187 | 2003 | 1 | Jessie Williams; Perry Higgins; Eric Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 059670 – 59671 | NO | 34 GPRs on inventory, 33 in file (final page with set of GPRs is a handwritten note; inventory may have added handwritten note as a GPR. If so, 34 GPRs, if not 33 GPRs); 0 Handwritten notes on inventory, 1 in file (see assumption in first bullet point); 0 Daily Major Incident Logs on inventory, 1 in file | YES | ACB 059726 | NO | N/A |
| 253 | HJ-307851 | 2003 | 1 | Michael Warfield | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 059861 – 59862 | NO | 0 Handwritten Note on inventory, 1 in file; 3 property inventory on inventory, 1 in file | YES | ACB 059893 | NO | N/A |
| 254 | HJ-310383 | 2003 | 1 | Lessie Shields | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 059984 – 59985 | NO | 0 To-From Memos on inventory, 2 in file | NO | N/A | YES | ACB 059998; 59999 |
| 255 | HJ-320635 | 2003 | 1 | Anthony Pitchford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 060122 – 60123 | NO | 22 GPRs on inventory, 19 in file (final 3 pages with the set of GPRs is a handwritten note; inventory may have added handwritten note as a GPR. If so, 22 GPRs, if not 19 GPRs); 0 Handwritten notes on inventory, 3 in file (see assumption in first bullet point); 0 Daily Major Incident Log on inventory, 1 in file | YES | ACB 060199 – 60201; ACB 060226 | NO | N/A |
| 256 | HJ-324514 | 2003 | 1 | Cleofis Bassett; George Anderson; Leon Brown | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 060323 – 60325 | NO | 0 To-From Memos on inventory, 3 in file; 0 Handwritten notes on inventory, 13 in file | Yes | ACB 060322; ACB 060361 – 60362; ACB 060366; ACB 060387 – 60389; ACB 060394 – 60395; ACB 060396; ACB 060420; ACB 060422 | YES | ACB 060… 60323 |
| 257 | HJ-366143 | 2003 | 1 | Leivante Adams | YES | YES | ACB 060015-64; ACB 060702; ACB 060720-723; ACB 060733-738; ACB 060764-65; ACB 060803-832 | NO | N/A | NO | N/A | YES | *ACB 060702; *ACB 060764-765 | NO | N/A | YES | ACB 060323 – 60325 | NO | Handwritten notes on inventory, 5 in file | YES | ACB 060702; ACB 060726 – 60728; ACB 060764; ACB 060802 | NO | N/A |
| 258 | HJ-376892 | 2003 | 1 | Dexter Bailey; Samuel Frieson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 080830 – 80831 | NO | 0 Daily Major Incident Log on inventory, 1 in file | YES | ACB 080980 | NO | N/A |
| 259 | HJ-399272 | 2003 | 1 | Eddie Mosley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 081026 – 81027 | YES | 0 Handwritten notes on inventory, 8 in file | YES | ACB 081116 | NO | N/A |
| 260 | HJ-400029 | 2003 | 1 | Larry Gilbert | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 081245 – 81248 | NO | 6 property inventory reports on inventory, 2 in file; 55 GPRs on inventory, 54 in file (final page with the set of GPRs is a handwritten note; inventory may have added handwritten note as a GPR. If so, 55 GPRs, if not 54 GPRs); 0 Handwritten notes on inventory, 31 in file (see assumption in previous bullet point) | YES | ACB 081293 | NO | N/A |
| 261 | HJ-410134 | 2003 | 1 | Jian Tan | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 081531 – 81532 | NO | 0 Daily Major Incident Log on inventory, 118 in file; 0 Photographs on inventory, 118 in file | NO | N/A | NO | N/A |
| 262 | HJ-440488 | 2003 | 1 | Frank Quiroz; Lazaro Zapata | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 081777 – 81778 | NO | 0 Major Incident Report Log on inventory, 1 in file; 0 Scene photos on inventory, 55 in file | YES | ACB 081822 | NO | N/A |
| 263 | HJ-492443 | 2003 | 1 | Natalio Ramirez; Daniel Aguirre; Octavia Anima; Jesus Sanchez; Miguel Nunez; Pablo Aguilar | YES | YES | ACB 081969; ACB 081991-92; ACB 081993-996; ACB 082052; ACB 082173-277 | YES | YES | NO | N/A | YES | ACB 082052 | YES | ACB 081991 | YES | ACB 081997-001 | NO | FOIA Request; Supp. Report; Photos - Person; Daily Major Incident Log; Handwritten Notes | No | N/A | YES | 8249924… |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | | | | | | PERMANENT RETENTION FILE COMPARISON | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **IDENTIFYING INFORMATION** | | | | | | *Items in the Investigative File missing from the Permanent Retention File* | | | | | | |
| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 244 | HJ-211691 | 2003 | 1 | Frederick Smith | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 245 | HJ-228346 | 2003 | 1 | Antonio Shaw Anthony Mitchell John Fulton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 246 | HJ-239255 | 2003 | 1 | Dominique Johnson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 247 | HJ-243231 | 2003 | 1 | Lee Murphy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 248 | HJ-256409 | 2003 | 1 | Cedric House | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 249 | HJ-257094 | 2003 | 1 | Charnell Woods Otha Woods | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 250 | HJ-274500 | 2003 | 4 | Roger Padilla | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 251 | HJ-284434 | 2003 | 1 | Donnell Bolden Christopher Bates Darryl Grayson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 252 | HJ-307187 | 2003 | 1 | Jessie Williams Perry Higgins Eric Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 253 | HJ-307851 | 2003 | 1 | Michael Warfield | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 254 | HJ-310383 | 2003 | 1 | Lessie Shields | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 255 | HJ-320635 | 2003 | 1 | Anthony Pitchford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 256 | HJ-324514 | 2003 | 1 | Cleodis Bassett George Anderson Leon Brown | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 257 | HJ-366143 | 2003 | 1 | Leivante Adams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 258 | HJ-376892 | 2003 | 1 | Dexter Bailey Samuel Frieson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 259 | HJ-399272 | 2003 | 1 | Eddie Mosley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 260 | HJ-400029 | 2003 | 1 | Larry Gilbert | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 261 | HJ-410134 | 2003 | 1 | Jian Tan | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 262 | HJ-440488 | 2003 | 1 | Frank Quiroz Lazaro Zapata | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 263 | HJ-492443 | 2003 | 1 | Natalio Ramirez Daniel Aguirre Octavia Anima Jesus Sanchez Miguel Nunez Pablo Aguilar | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

**CRIMINAL DEFENSE ATTORNEY FILE COMPARISON** — *Items in the Investigative File missing from the Criminal Defense Attorney File*

For every row below, all columns in the "CRIMINAL DEFENSE ATTORNEY FILE COMPARISON" section (ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE?; BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS; DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET?; DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE?; ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE?; BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS; ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE?; BATES NUMBERS FOR MISSING HANDWRITTEN NOTES; ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE?; BATES NUMBERS FOR MISSING TO-FROM MEMOS) are **N/A**.

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 264 | HJ-499310 | 2003 | 4 | Randy Allen / Derrick Thomas | NO | YES | ACB 082621 - 82424 | NO | 52 pages of Handwritten Notes on inventory, 49 pages in file | NO | N/A | YES | ACB 082698 |
| 265 | HJ-505759 | 2003 | 1 | Mark Scott | NO | YES | ACB 082701 - 82702 | NO | 0 Crime Scene Photos on inventory, 63 in file | YES | ACB 082757 - 82758 | NO | ACB 082698 / ACB 082748 |
| 266 | HJ-518923 | 2003 | 1 | James Wheeler | NO | YES | ACB 082874 - 82875 | NO | 0 Crime Scene Photos on inventory, 29 in file | NO | N/A | NO | N/A |
| 267 | HJ-527506 | 2003 | 1 | Edwin Harris / Milton Love / Goran Kotur | NO | YES | ACB 083016 - 83017 | NO | 0 Handwritten Notes on inventory, 1 in file / 0 Daily Major Incident Log, 1 in file | YES | ACB 083102 | NO | N/A |
| 268 | HJ-545448 | 2003 | 1 | Antonio Thomas / Toney Cole / Timophy Fulton | NO | YES | ACB 083209 - 83211 | NO | 45 GPRs on inventory, 44 in file / 0 handwritten notes on inventory, 3 in file / 0 photos on inventory, 8 in file | YES | ACB 083284 / ACB 083303 / ACB 083385 | NO | N/A |
| 269 | HJ-547936 | 2003 | 1 | Edward Maholmes | NO | YES | ACB 083482 - 83483 | NO | 32 GPRs on inventory, 29 in file / 0 handwritten notes on inventory, 3 in file / 0 Daily Major Incident Log on inventory, 1 in file | YES | ACB 083538 - 83540 | YES | ACB 083808 |
| 270 | HJ-591782 | 2003 | 1 | Gregory Carr / Frederick Bagley | NO | YES | ACB 083646 - 83650 | NO | 39 GPRs on inventory, 38 in file / 0 Handwritten notes on inventory, 1 in file / 0 Daily Major Incident Log on inventory, 1 in file | YES | ACB 083808 | NO | N/A |
| 271 | HJ-623228 | 2003 | 1 | Jose Echevarria | NO | YES | ACB 084079 - 84080 | NO | 29 GPRs on inventory, 28 in file / 0 Handwritten Notes on inventory, 2 in file | YES | ACB 084093 / ACB 084122 - 84123 | NO | N/A |
| 272 | HJ-640575 | 2003 | 1 | Sergio Tzintzun | NO | YES | ACB 084207 - 84208 | NO | 28 GPRs on inventory, 17 in file / 0 Handwritten Notes on inventory, 12 in file / 0 Daily Major Inventory File On inventory, 0 in inventory | YES | ACB 084272 / ACB 084276 - 84278 / ACB 084284 / ACB 084286 / ACB 084288 - 84290 / ACB 084292 - 84294 / ACB 084296 / ACB 084301 | NO | N/A |
| 273 | HJ-647205 | 2003 | 1 | Arthur Foote / Derrick Hackett | NO | YES | ACB 084408 - 84410 | NO | 53 GPRs on inventory, 52 in file / 0 Handwritten Notes on inventory, 1 in file / 0 Daily Major inventory File On inventory, 0 in inventory / 0 To-From Memos on inventory, 1 in file | YES | ACB 084539 | YES | ACB 084407 / 84440 / ACB 084411 / ACB 084441 |
| 274 | HJ-661717 | 2003 | 1 | Sandra Stowers | NO | YES | ACB 034312 - 34313 | NO | 0 Daily Major Incident Log on inventory, 1 in file | NO | N/A | NO | N/A |
| 275 | HJ-661366 | 2003 | 1 | Johnny Moore | NO | YES | ACB 034397 - 34398 | NO | 0 Handwritten Notes on inventory, 2 in file / 0 Daily Major Incident Log on inventory, 1 in file | YES | ACB 034444 / ACB 034472 | NO | N/A |
| 276 | HJ-664232 | 2003 | 1 | Anthony Jackson / Clayon Sims | NO | YES | ACB 084757 - 84758 | NO | 51 GPRs on inventory, 49 in file / 0 Handwritten Notes on inventory, 4 in file / 0 Daily Major Log on inventory, 1 in file | YES | ACB 084890 - 84891 / ACB 084893 / ACB 084918 | YES | ACB 084893 / 8475 |
| 277 | HJ-671123 | 2003 | UNK | Timothy Thomas | NO | NO | N/A | N/A | 19 GPRs on inventory, 29 in file / 0 To-From Memos on inventory, 2 in file | NO | N/A | NO | UNK |
| 278 | HJ-673789 | 2003 | 1 | Markeith Jenkins | NO | YES | ACB 069904 | NO | — | YES | ACB 069997 | YES | ACB 069909 / 6990 |
| 279 | HJ-676387 | 2003 | 1 | Albert Demaguia | NO | YES | ACB 084982 - 84983 | NO | 0 Handwritten Notes on inventory, 1 in file | YES | ACB 085017 - 85018 | NO | N/A |
| 280 | HJ-678090 | 2003 | 1 | Dante Brown / Dwight Allen | NO | YES | ACB 085061 - 85063 | NO | 47 GPRs on inventory, 41 in file / 0 Handwritten Notes on inventory, 8 in file / 0 Daily Major Log on inventory, 2 in file | YES | ACB 085109 - 85112 / ACB 085114 / ACB 085116 / ACB 085209 | YES | ACB 085114 / ACB 085209 |
| 281 | HJ-687964 | 2003 | 1 | Gena O'Shaughnessy / James Gusich | NO | YES | ACB 085305 - 85307 | NO | 0 Handwritten Notes on inventory, 2 in file | YES | ACB 085407 / ACB 085516 | NO | N/A |
| 282 | HJ-689560 | 2003 | 1 | Charles Rice | NO | YES | ACB 085621 - 85622 | YES | N/A | NO | N/A | NO | N/A |
| 283 | HJ-733462 | 2003 | 1 | Rosendo Ruiz / Lazaro Gutiierrez | NO | YES | ACB 085729 | NO | 0 Daily Major Incident Log on inventory, 1 in file / 9 Cook County Sheriff's Incident Reports on inventory, 1 in file | YES | ACB 085727 / ACB 085844 | NO | N/A |
| 284 | HJ-734895 | 2003 | 1 | Kendrick Gray | NO | YES | ACB 085884 | NO | 0 Daily Major Incident Log on inventory, 1 in file / 0 Crime Scene Photos on inventory, 27 in file | NO | N/A | NO | N/A |
| 285 | HJ-737306 | 2003 | 1 | Israel Ramirez / Jose L Gonzalez / Salvador Contreras | NO | YES | ACB 086049 - 86052 | NO | 42 GPRs on inventory, 41 in file / 0 Handwritten Notes on inventory, 8 in file | YES | ACB 086066 / ACB 086089 / ACB 086091 - 86092 / ACB 086099 / ACB 086106 / ACB 086123 / ACB 086157 / ACB 086160 / ACB 086268 | NO | N/A |
| 286 | HJ-745468 | 2003 | 1 | Valerie Pudin / Joseph Martinez | NO | YES | ACB 086408 - 86409 | NO | 47 GPRs on inventory, 32 in file / 0 Handwritten Notes on inventory, 8 in file | YES | ACB 086451 / ACB 086544 - 86549 | NO | N/A |
| 287 | HJ-757826 | 2003 | 4 | Mahendra Anderson / Micah Anderson | NO | YES | ACB 034571 - 34572 | NO | 33 GPRs on inventory, 32 in file / 0 Handwritten Notes on inventory, 1 in file | YES | ACB 034617 / ACB 034625 | NO | N/A |

Case: 1:23-cv-04438 Document #: 383-39 Filed: 04/06/26 Page 306 of 433 PageID #:19029

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **IDENTIFYING INFORMATION** | | | | | **PERMANENT RETENTION FILE COMPARISON** *Items in the Investigative File missing from the Permanent Retention File* | | | | | | | | | |
| 264 | HJ-499310 | 2003 | 4 | Randy Allen Derrick Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 265 | HJ-505759 | 2003 | 1 | Mark Scott | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 266 | HJ-518923 | 2003 | 1 | James Wheeler | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 267 | HJ-527506 | 2003 | 1 | Edwin Harris Milton Love Goran Kotur | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 268 | HJ-545448 | 2003 | 1 | Antonio Thomas Toney Cole Timothy Fulton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 269 | HJ-547936 | 2003 | 1 | Edward Maholmes | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 270 | HJ-591782 | 2003 | 1 | Gregory Carr Frederick Bagley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 271 | HJ-623228 | 2003 | 1 | Jose Echevarria | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 272 | HJ-640575 | 2003 | 1 | Sergio Tzintzun | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 273 | HJ-647205 | 2003 | 1 | Arthur Foote Derrick Hatchett | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 274 | HJ-661717 | 2003 | 1 | Sandra Stowers | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 275 | HJ-664136 | 2003 | 1 | Johnny Moore | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 276 | HJ-664232 | 2003 | 1 | Anthony Jackson Clayton Sims | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 277 | HJ-671123 | 2003 | UNK | Timothy Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 278 | HJ-673789 | 2003 | 1 | Markeith Jenkins | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 279 | HJ-676387 | 2003 | 1 | Albert Domagala | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 280 | HJ-678090 | 2003 | 1 | Dante Brown Dwight Allen | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 281 | HJ-687964 | 2003 | 1 | Gena O'Shaughnessy James Gusich | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 282 | HJ-689560 | 2003 | 1 | Charles Rice | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 283 | HJ-733462 | 2003 | 1 | Rosendo Ruiz Lazarro Guitierrez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 284 | HJ-734895 | 2003 | 1 | Keidrick Gray | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 285 | HJ-737306 | 2003 | 1 | Israel Ramirez Jose L. Gonzalez Salvador Contreras | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 286 | HJ-745468 | 2003 | 1 | Valerie Padin Joseph Martinez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 287 | HJ-757826 | 2003 | 4 | Mahendra Anderson Micah Anderson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

**CRIMINAL DEFENSE ATTORNEY FILE COMPARISON** — Items in the Investigative File missing from the Criminal Defense Attorney File

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 288 | HJ-776575 | 2003 | 1 | Lamont Douglas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 061092 - 61093 | NO | 49 GPRs on inventory, 38 in file / 0 Handwritten Notes on inventory, 4 in file | YES | ACB 061157, ACB 061162, ACB 061238, ACB 061241 | YES | ACB 06[…] |
| 289 | HJ-793204 | 2003 | 1 | Darren Johnson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 061327 - 61328 | NO | 0 Daily Major Incident Logs on inventory, 1 in file | NO | N/A | NO | N/A |
| 290 | HJ-795462 | 2003 | 1 | Michael Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 061406 | NO | 0 Daily Major Incident Log on inventory, 1 in file | NO | N/A | NO | N/A |
| 291 | HJ-796729 | 2003 | 1 | Juan Boone | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 061663 - 61665 | NO | 44 GPRs on inventory, 43 in file / 0 Handwritten Notes on inventory, 2 in file / 14 inventory reports on inventory, 3 in file / 0 Daily Major Incident Logs on inventory, 1 in file | YES | ACB 061790, ACB 061799 | YES | ACB 06[…] |
| 292 | HJ-831700 | 2003 | 1 | Santiago Torres | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 061876 - 61878 | NO | 0 Handwritten Notes on inventory, 3 in file | YES | ACB 061993, ACB 062022, ACB 062025 | NO | N/A |
| 293 | HJ-834810 | 2003 | 2 | Mickey Mason / Renwick Wells | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 034751 - 34752 | NO | 0 Handwritten Notes on inventory, 2 in file / 0 Clear Data Warehouse Arrestee History on inventory, 1 in file | YES | ACB 034786, ACB 034804 | NO | N/A |
| 294 | HJ-845688 | 2003 | 4 | David Washington / Kenya Henry | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 034920 - 34921 | NO | 0 Handwritten Notes on inventory, 1 in file / 0 Detective Division Progress Report on inventory, 1 in file / 0 Investigative Alerts on inventory, 1 in file / 0 Major Crime Scene Report on Inventory, 1 in file | YES | ACB 034961 | NO | N/A |
| 295 | HK-000106 | 2004 | 1 | Daniel Bowen / Dennis McArdle | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 037325 - 37326 | NO | Handwritten notes (37370, 37387, 37463, 37483, 37490) | YES | ACB 037386-37387, ACB 037483, ACB 037490, ACB 037511 | NO | N/A |
| 296 | HK-106793 | 2004 | 1 | Phillip Hartsfield / Mohammed Abukhdeir | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 035124 - 35125 | NO | Copy of Receipt & handwritten notes (35169) / Handwritten note (35226) | YES | ACB 035169, ACB 035194-35196, ACB 035217-35218, ACB 035226-35227, ACB 035235-35236 | NO | N/A |
| 297 | HK-142414 | 2004 | 1 | Anthony Evans | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 035272 - 35273 | NO | Inv. File Control (35267) / Daily Major Incident Log (35268-35270) | NO | N/A | NO | N/A |
| 298 | HK-148852 | 2004 | 1 | Steven Myers / Timothy Brewer | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 035439 - 35440 | NO | Inv. File Control (35437) / Daily Major Incident Log (35438) | YES | ACB 035488-35489, ACB 035567 | YES | ACB 03553[…] |
| 299 | HK-158502 | 2004 | 1 | Oliver Crawford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 037577 - 37580 | NO | 2 Handwritten notes in file, 0 listed on Inventory (37744, 37867) | YES | ACB 037744, ACB 037759-37760, ACB 037788, ACB 037815-37816, ACB 037819, ACB 037827, ACB 037840, ACB 037848 | NO | N/A |
| 300 | HK-165467 | 2004 | 1 | Dominique Dennis | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 035622 - 35625 | NO | 1 Handwritten note in file, 0 listed on Inventory (35681) | YES | ACB 035681, ACB 035701, ACB 035703, ACB 035708, ACB 035810, ACB 035815, ACB 035819-35820, ACB 035823, ACB 035824, ACB 035883, ACB 035885, ACB 035898-35904 | NO | N/A |
| 301 | HK-195199 | 2004 | 1 | Morris Hawkins | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 037911 - 37912 | NO | 2 To-from memos in file, 0 listed on Inventory | NO | N/A | NO | N/A |
| 302 | HK-196935 | 2004 | 1 | Juvenal Reyes | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 038094 | NO | Inv. File Control (38089) / Daily Major Incident Log (38090-38093) | NO | N/A | NO | N/A |
| 303 | HK-211174 | 2004 | 1 | Navon Foster / Laquita Calhoun / Katherine Calhoun / Terence Jones / Lakesha Collins / Jeanette Daniels | YES | YES | ACB 038165, ACB 038166-167, ACB 038171-175, ACB 038177-188, ACB 038189, ACB 038202-214, ACB 038216-217, ACB 038219, ACB 038232, ACB 038265-86 | NO | N/A | YES | ACB038202-214, ACB038189, ACB038177-188 | YES | ACB038298 | YES | ACB038219 | YES | ACB 038166 - 38167 | YES | N/A | Yes | 38376, 38457-38459, 38487, 38490-38491, 38541-38542, 38549-38552, 38554 | No | N/A |
| 304 | HK-222787 | 2004 | 1 | Jerry Cooks | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 038356 - 38359 | NO | 3 Handwritten notes in file, 0 listed on Inventory (38490, 38541, 38554) | YES | ACB 038376, ACB 038457-38459, ACB 038487, ACB 038490-38491, ACB 038541-38542, ACB 038549-38552, ACB 038554 | NO | N/A |
| 305 | HK-223040 | 2004 | 1 | Dennis Edwards | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 038611 - 38612 | NO | Major Crime Scene Reports (38701-38704) | YES | ACB 038672-38674 | NO | N/A |
| 306 | HK-224777 | 2004 | 1 | Juan Pena | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 038795 - 38796 | NO | Daily Major Incident Log (38778-38780) | NO | N/A | NO | N/A |
| 307 | HK-230941 | 2004 | 1 | Glenn Miles | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 038917 - 38918 | NO | 3 Handwritten notes in file, 0 listed on Inventory (38961, 39011, 39012) | YES | ACB 038961, ACB 039011-39012 | NO | N/A |
| 308 | HK-238478 | 2004 | 1 | Tythia Thigpen / Jamal White | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 039174 - 39175 | NO | Inv. File Control (39099) / Request for Evidence ID Photos (39167) / 1 To-from memo in file, 0 listed on Inventory (39444) | YES | ACB 039172-39173, ACB 039233 | NO | N/A |
| 309 | HK-245772 | 2004 | 1 | Thomas Flowers | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 039445 - 39446 | NO | Inv. File Control (39596) Major Crime Scene Reports (39752-39755) | YES | ACB 039605, ACB 039637 | YES | ACB 03[…] |
| 310 | HK-253794 | 2004 | 1 | Malvin Washington | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 039599 - 39601 | NO | ISP Submission (35986) | NO | N/A | YES | ACB 039605, ACB 039637 |
| 311 | HK-284640 | 2004 | 1 | Lamont Griffin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 035980 | NO | N/A | NO | N/A | NO | N/A |
| 312 | HK-316879 | 2004 | 1 | Sergio Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 039886 - 39887 | NO | Crime Scene Photos (39799-39884) | NO | N/A | NO | N/A |
| 313 | HK-359543 | 2004 | 1 | Dorial Valentine | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 039989 - 39990 | NO | Inv. File Control (39985) / Daily Major Incident Log (39988) | NO | N/A | YES | ACB 0399[…] |
| 314 | HK-377605 | 2004 | 1 | Marcelo Gonzaga / Elijah Santiago | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 040236 - 40240 | NO | 10 To-from memos in file, 0 listed on Inventory (40177-40188) | YES | ACB 040247, ACB 040395 | YES | ACB 0401[…] |
| 315 | HK-378694 | 2005 | 1 | Ronnie Carpenter | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 040678, ACB 040682, ACB 040587; ACB 040601, ACB 040612 | NO | Homicide Case Folder Table of Contents / Photos- Scene/Body / Major Incident Notification Detail | NO | N/A | NO | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON — Items in the Investigative File missing from the Permanent Retention File | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 288 | HJ-776575 | 2003 | 1 | Lamont Douglas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 289 | HJ-793204 | 2003 | 1 | Darren Johnson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 290 | HJ-795462 | 2003 | 1 | Michael Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 291 | HJ-796729 | 2003 | 1 | Juan Boone | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 292 | HJ-831700 | 2003 | 1 | Santiago Torres | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 293 | HJ-834810 | 2003 | 2 | Mickey Mason / Renwick Wells | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 294 | HJ-845688 | 2003 | 4 | David Washington / Kenya Henry | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 295 | HK-000106 | 2004 | 1 | Daniel Bowen / Dennis McArdle | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 296 | HK-106793 | 2004 | 1 | Phillip Hartsfield / Mohammed Abukhder | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 297 | HK-142414 | 2004 | 1 | Anthony Evans | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 298 | HK-148852 | 2004 | 1 | Steven Myers / Timothy Brewer | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 299 | HK-158502 | 2004 | 1 | Oliver Crawford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 300 | HK-165467 | 2004 | 1 | Dominique Dennis | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 301 | HK-195199 | 2004 | 1 | Morris Hawkins | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 302 | HK-196935 | 2004 | 1 | Juvenal Reyes | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 303 | HK-211174 | 2004 | 1 | Navon Foster / Laquita Calhoun / Katherine Calhoun / Terence Jones / Lakesha Collins / Jeanette Daniels | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 304 | HK-222787 | 2004 | 1 | Jerry Cooks | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 305 | HK-223040 | 2004 | 1 | Dennis Edwards | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 306 | HK-224777 | 2004 | 1 | Juan Pena | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 307 | HK-238041 | 2004 | 1 | Glenn Miles | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 308 | HK-238478 | 2004 | 1 | Tythia Thigpen / Jamal White | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 309 | HK-245772 | 2004 | 1 | Thomas Flowers | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 310 | HK-253794 | 2004 | 1 | Malvin Washington | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 311 | HK-284640 | 2004 | 1 | Lamont Griffin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 312 | HK-316879 | 2004 | 1 | Sergio Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 313 | HK-359543 | 2004 | 1 | Dorial Valentine | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 314 | HK-377605 | 2004 | 1 | Marcelo Gonzaga / Elijah Santiago | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 315 | HK-378604 | 2005 | 1 | Ronnie Carpenter | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 316 | HK-404487 | 2004 | 1 | RL Brooks | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 040746-40747 | NO | Daily Major Incident Log (40742-40745) 1 To-from memo in file, 0 listed on Inventory (40815) | NO | N/A | NO | N/A |
| 317 | HK406407 | 2004 | 1 | Delvie Turpin | YES | YES | ACB 040847-900; ACB 040905; ACB 040910; ACB 040918; ACB 040923; ACB 040928-930; ACB 040956; ACB 040962-968; ACB 040992-016; ACB 041017-034; ACB 041036; ACB 041038; ACB 041040; ACB 041042-49 | NO | N/A | YES | *ACB 040992-005 *ACB 041033 | YES | ACB 041032 | NO | N/A | YES | ACB 040886-887 | NO | Handwritten Note Photos – Scene/Body Daily Major Incident Log | YES | ACB 041032 | NO | N/A |
| 318 | HK416661 | 2004 | 1 | Donnell Johnson | YES | YES | ACB 041052; ACB 041055-98; ACB 041106; ACB 0411099-100; ACB 041140; ACB 041188; ACB 041237-44 | NO | N/A | NO | N/A | YES | ACB041140, ACB051188 | YES | ACB041237-244 | YES | ACB 041099-041100 | NO | To-From Memos Major Incident Notification Detail | NO | N/A | YES | ACB 041237-244 |
| 319 | HK431410 | 2004 | 1 | William Hull | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 041283-41284 | NO | 7 Handwritten notes in file, 0 listed on Inventory (41367, 41370-41372, 41374, 41380, 41403) | YES | ACB 041367, ACB 041370-41372, ACB 041374, ACB 041380 | YES | ACB 041380 |
| 320 | HK440539 | 2004 | 1 | Tyrone Gill | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 041573-41575 | NO | Handwritten note (41746) | YES | ACB 041690, ACB 041746 | NO | N/A |
| 321 | HK-449083 | 2004 | 1 | Jamell Murphy Melvin Williams Noah Wilson | YES | YES | ACB 041773-74; ACB 042002; ACB 041755; ACB 041924; ACB 041883-88; ACB 041876- ACB 041881; ACB 041882; ACB 041777 | NO | N/A | YES | *ACB 041777 | NO | N/A | NO | N/A | YES | ACB 041773-41774 | NO | Inv. File Control (41755) Daily Major Incident Log (41767-41771) | YES | ACB 041857 | NO | N/A |
| 322 | HK-457513 | 2004 | 1 | Juan Rodriguez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 042029-42031 | NO | Handwritten note (42082) | NO | N/A | NO | N/A |
| 323 | HK-457942 | 2004 | 1 | Vincent Hudson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 062065-62066 | NO | Inv. File Control (62062) Daily Major Incident Log (62063-62064) | NO | N/A | NO | N/A |
| 324 | HK-459545 | 2004 | 1 | Somailla Green | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 062212 | NO | Inv. File Control (62188) Daily Major Incident Log (62209-62211) | NO | N/A | NO | N/A |
| 325 | HK-465885 | 2004 | 1 | Cuahtemoc Padilla | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 062345 | NO | Handwritten note (62373) | YES | ACB 062373 | NO | N/A |
| 326 | HK-470751 | 2004 | 1 | Verna Colbert | YES | YES | ACB 062434; ACB 062436; ACB 062437; ACB 062438; ACB 062439-40; ACB 062441-43; ACB 062444-45; ACB 062446; ACB 062447-49; ACB 062450; ACB 062451; ACB 062563-64; ACB 062572; ACB 062598; ACB 062639 | NO | N/A | NO | N/A | YES | ACB 062437 | YES | ACB 062438, ACB 062446 | YES | ACB 062441-443 | NO | Photos – Scene/Body Daily Major Incident Log To-from Memo Subpoena – Defense | NO | N/A | YES | ACB 062438 |
| 327 | HK-479167 | 2004 | 1 | William Smith James Massey Deandre Greer Samuel Dupree | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 062696-62697, ACB 062700 | NO | Handwritten notes (62987, 63003) | YES | ACB 063003 | NO | N/A |
| 328 | HK-483176 | 2004 | 1 | Arthur Dent Romelle Coleman Ashley Miller | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 063058-63059 | NO | To-from memos (63054, 63055, 63057) Handwritten notes (63126-63131, 63170, 63213-63215) | YES | ACB 063126-63131, ACB 063213-63215 | YES | ACB 063054 |
| 329 | HK-487688 | 2004 | 1 | Daniel Bradford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 036059-36060 | NO | Inv. File Control (36054) Daily Major Incident Log (36055-36058) | NO | N/A | NO | N/A |
| 330 | HK-500451 | 2004 | 1 | Tenaro Williams Virgil Daniel | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 036186-36187 | NO | 27 GPRs in file, 26 listed on Inventory | NO | N/A | NO | N/A |
| 331 | HK-526394 | 2004 | 1 | Sheena Rucker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 036407-36410 | NO | Handwritten note (36556, 36721) To-from memo (36675) | YES | ACB 036721 | NO | N/A |
| 332 | HK-526818 | 2004 | 1 | Juan Munoz | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 036905 | NO | Handwritten note (36965, 36971, 36980, 36986, 36997, 37015) | YES | ACB 036965, ACB 036971, ACB 036980, ACB 036986, ACB 036997, ACB 037017 | NO | N/A |
| 333 | HK-528598 | 2004 | 1 | Anthony Burns | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 037029-37030 | NO | Inv. File Control (37028) Request for Evidence ID Photos (37027) | NO | N/A | NO | N/A |
| 334 | HK-539094 | 2004 | 1 | Antoine Ford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 037208-37209 | NO | Handwritten note (37247) | YES | ACB 037247 | NO | N/A |
| 335 | HK-558373 | 2004 | 1 | Brandyn Anderson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 063253-63254 | NO | Handwritten note (63274) To-from memo (63275) | YES | ACB 063274, ACB 063284 | YES | ACB 063275 |
| 336 | HK-564062 | 2004 | 1 | Troy Frieson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 063406-63407 | NO | Property Inv. No. 10422889 (63560) | NO | N/A | NO | N/A |
| 337 | HK-564454 | 2004 | 1 | Kimothy Randall Russell Armfield Tyrene Nelson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 063622-63624 | NO | To-from memo (63625) Handwritten note (63665) | YES | ACB 063665 | YES | ACB 063625 |
| 338 | HK-593970 | 2004 | 1 | Tharine Partee | YES | YES | ACB 063941-942; ACB 063944-945 | NO | N/A | YES | ACB064104 | NO | N/A | NO | N/A | YES | ACB 063944-63945 | No | Handwritten Note Daily Major Incident Log | YES | ACB 064103 | NO | N/A |
| 339 | HK-598867 | 2004 | 1 | Elliot Herron Joe Cobbins | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 064220-64224 | NO | Handwritten notes (64289, 64291, 64311) | YES | ACB 064289, ACB 064311 | NO | N/A |
| 340 | HK-628944 | 2004 | 1 | Rayvonne Wilson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 064691-64692 | NO | To-from memos (64682-64690) | NO | N/A | YES | ACB 064682-64690 |

| | | | | PERMANENT RETENTION FILE COMPARISON | | | | | | | | |
| | IDENTIFYING INFORMATION | | | | Items in the Investigative File missing from the Permanent Retention File | | | | | | | |
| RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 316 | HK-404487 | 2004 | 1 | RL Brooks | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 317 | HK406407 | 2004 | 1 | Delvie Turpin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 318 | HK416661 | 2004 | 1 | Donnell Johnson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 319 | HK431410 | 2004 | 1 | William Hull | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 320 | HK440539 | 2004 | 1 | Tyrone Gill | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 321 | HK-449083 | 2004 | 1 | Jamell Murphy Melvin Williams Noah Wilson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 322 | HK-457513 | 2004 | 1 | Juan Rodriguez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 323 | HK-457942 | 2004 | 1 | Vincent Hudson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 324 | HK-459545 | 2004 | 1 | Somailla Green | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 325 | HK-465885 | 2004 | 1 | Cuahtemoc Padilla | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 326 | HK-470751 | 2004 | 1 | Verna Colbert | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 327 | HK-479167 | 2004 | 1 | William Smith James Massey Deandre Greer Samuel Dupree | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 328 | HK-483176 | 2004 | 1 | Arthur Dent Romelle Coleman Ashley Miller | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 329 | HK-487688 | 2004 | 1 | Daniel Bradford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 330 | HK-500451 | 2004 | 1 | Tenaro Williams Virgil Daniel | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 331 | HK-526394 | 2004 | 1 | Sheena Rucker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 332 | HK-526818 | 2004 | 1 | Juan Munoz | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 333 | HK-528598 | 2004 | 1 | Anthony Burns | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 334 | HK-539094 | 2004 | 1 | Antoine Ford | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 335 | HK-558373 | 2004 | 1 | Brandyn Anderson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 336 | HK-564062 | 2004 | 1 | Troy Frieson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 337 | HK-564454 | 2004 | 1 | Kimothy Randall Russell Armfield Tyrene Nelson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 338 | HK-593970 | 2004 | 1 | Tharine Partee | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 339 | HK-598867 | 2004 | 1 | Elliot Herron Joe Cobbins | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 340 | HK-628944 | 2004 | 1 | Rayvonne Wilson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS IN THE FILE? |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 341 | HK-639684 | 2004 | 1 | Christopher Walton / Michael Walton / Devon Terrell | YES | YES | ACB 064841, ACB 064932-937, ACB 064941-948, ACB 064952-958, ACB 064959-961, ACB 064962, ACB 064969-982, ACB 064985-987, ACB 065007, ACB 065077, ACB 065080-081, ACB 065082-585, ACB 065086-087, ACB 065094 | NO | N/A | NO | N/A | NO | N/A | YES | ACB064980-982 | YES | ACB 064980-64982 | NO | Original CCase Incident Report / Major Incident Notification Detail / Court Complaint / Photos – Scene/Body | NO | N/A | NO | N/A |
| 342 | HK-647145 | 2004 | 1 | Markiesha Wells | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 065193 | NO | Inv. File Control (65191) / Daily Major Incident Log (65192) | NO | N/A | NO | N/A |
| 343 | HK-663121 | 2004 | 1 | Antoine Burton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 065334-65335 | NO | Handwritten note (65324) | YES | ACB 065361, ACB 065424 | NO | N/A |
| 344 | HK-669797 | 2004 | 1 | Merrell Steele / Larry Steele | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 065515-65516 | NO | Inv. File Control (65511) / Daily Major Incident Log (65512-65514) | NO | N/A | NO | N/A |
| 345 | HK-683108 | 2004 | 1 | Robert Curry | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 065645-65646 | NO | 25 GPRs in file, 24 listed on Inventory | NO | N/A | NO | N/A |
| 346 | HK-701076 | 2004 | 1 | Harold Ivey | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 065848-65850 | NO | Handwritten note (65889) | YES | ACB 065889, ACB 065993, ACB 065994 | NO | N/A |
| 347 | HK-746784 | 2004 | 1 | Andrew Binion | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 066139-66141 | NO | Inv. File Control (66137) / Daily Major Incident Log (66138) | NO | N/A | NO | N/A |
| 348 | HK-763869 | 2004 | 1 | Anthony Riley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 066356-66358 | NO | Inv. File Control (66353) / Daily Major Incident Log (66354-66355) | YES | ACB 066465 | NO | N/A |
| 349 | HK-776079 | 2004 | 1 | Shevona Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 066683-66684 | NO | Handwritten note (66713) / To-from memos (66814) | YES | ACB 066712-66713, ACB 066774 | NO | N/A |
| 350 | HK-788723 | 2004 | 1 | Juan Delatorre / Steven Nevarez / Alejandro Mota / Jerry Reboles / Antonio Rincon | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 067024-67027 | NO | To-from memos (67022-67023) / Handwritten note (67176, 67245) | YES | ACB 067176, ACB 067245 | YES | ACB 067022-67023, ACB 067024 |
| 351 | HK-792194 | 2004 | 1 | Iesha Walker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 067461-67462 | NO | Inv. File Control (67587) / Daily Major Incident Log (67810) | NO | N/A | NO | N/A |
| 352 | HK-798753 | 2004 | 1 | Dantroy R. Chambliss | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 067810-67813 | NO | Handwritten notes (67871-67874, 69059, 69070, 69079) | Yes | ACB 067871-67874, ACB 068059, ACB 068070, ACB 068079, ACB 068118, ACB 068120, ACB 068142 | YES | ACB 067984 |
| 353 | HK-811031 | 2004 | 1 | Max McCoy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 068220-68221 | NO | Inv. File Control (68159) / Daily Major Incident Log (68217-68219) | NO | N/A | YES | ACB 068219 |
| 354 | HK-811135 | 2004 | 1 | Darryl Conway | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 068377 | NO | Inv. File Control (68344) / Daily Major Incident Log (68375-68376) | NO | N/A | NO | N/A |
| 355 | HK-823687 | 2004 | 4 | Fernando Noguez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 068449 | NO | Homicide File Supervisor's Check List (68448) / Inv. File Control (68450) / Subpoenas (68451-68454) | YES | N/A | NO | N/A |
| 356 | HL-202732 | 2005 | 1 | Curtis Viverette | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 042238-42239 | NO | Major Incident Notification Detail / Handwritten Note | YES | ACB 042327 | NO | N/A |
| 357 | HL-219488 | 2005 | 1 | Muhammad Faheem | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 042490-42492 | NO | Biz Card / To-From Memos / Scene/Body Photos | NO | N/A | YES | ACB 042482, ACB 042483, ACB 042484 |
| 358 | HL-227322 | 2005 | 1 | Patrice Black | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 042800 | NO | Handwritten Notes / Photos - Scene/Body / Daily Major Incident Notification Detail / Major Incident Notification Detail | YES | ACB 042799, ACB 042837, ACB 042838 | NO | N/A |
| 359 | HL-236577 | 2005 | 1 | John Smurlo | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 042952-42953 | NO | Photos - Scene/Body | NO | N/A | NO | N/A |
| 360 | HL-242938 | 2005 | 1 | Daniel Olivares | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 043151-43153 | NO | Photos – Persons / Photos – Scene/Body / Handwritten Notes / ISP Forensics-Lab Report | YES | ACB 043287, ACB 043357, ACB 043358, ACB 043379, ACB 043382 | NO | N/A |
| 361 | HL-260858 | 2005 | 1 | Edwin Foster / Marshall Simmons | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 068555-68555 | NO | GPRs / Supp. Report / Handwritten Notes / Photos - Scene/Body / Daily Major Incident Log / Handwritten Notes | YES | ACB 068680, ACB 068757, ACB 068761, ACB 068765 | NO | N/A |
| 362 | HL-291491 | 2005 | 1 | Michael Parish | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 068935-68936 | NO | Handwritten Notes / Supp. Report / Major Incident Notification Detail / Photos – Scene/Body / 2nd GSCR same except Data Enter DD Area 1 stamp | YES | ACB 068978 | NO | N/A |
| 363 | HL-307618 | 2005 | 1 | Christopher Butler / Robert Kennedy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 069142-69144 | NO | Receipt / Major Incident Notification Detail / Photos- Scene/Body | NO | N/A | NO | N/A |
| 364 | HL-326591 | 2005 | 1 | Brian Weston / Travis Weston | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 069434-69439 | NO | Handwritten note / Major Incident Notification Detail / Photos - Scene/Body | YES | ACB 069557, ACB 069611, ACB 069612, ACB 069776, ACB 069777 | NO | N/A |
| 365 | HL-336784 | 2005 | 1 | Leroy Wilson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 069969-69972 | NO | Handwritten note / Moving of Arrestee / Major Incident Notification Detail / Photos Scene/Body | YES | ACB 070014, ACB 070113, ACB 070206, ACB 070229 | NO | N/A |
| 366 | HL-359332 | 2005 | 1 | Antwan Rogers | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 086596-86597 | NO | Major Incident Notification Detail / Photos- Scene/Body | NO | N/A | NO | N/A |

| | IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON<br>*Items in the Investigative File missing from the Permanent Retention File* | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 341 | HK-639684 | 2004 | 1 | Christopher Walton Michael Walton Devon Terrell | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 342 | HK-647145 | 2004 | 1 | Markiesha Wells | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 343 | HK-663121 | 2004 | 1 | Antoine Burton | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 344 | HK-669797 | 2004 | 1 | Morrell Steele Larry Steele | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 345 | HK-683108 | 2004 | 1 | Robert Curry | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 346 | HK-701076 | 2004 | 1 | Harold Ivey | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 347 | HK-746784 | 2004 | 1 | Andrew Binion | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 348 | HK-763869 | 2004 | 1 | Anthony Riley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 349 | HK-776079 | 2004 | 1 | Shevona Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 350 | HK-788723 | 2004 | 1 | Juan Delatorre Steven Nevarez Alejandro Mota Jerry Rebeles Antonio Rincon | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 351 | HK-792194 | 2004 | 1 | Iesha Walker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 352 | HK-798753 | 2004 | 1 | Dantony R. Chamblis | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 353 | HK-811031 | 2004 | 1 | Max McCoy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 354 | HK-811135 | 2004 | 1 | Darryl Conway | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 355 | HK-823687 | 2004 | 4 | Fernando Noguez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 356 | HL-202732 | 2005 | 1 | Curtis Viverette | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 357 | HL-219488 | 2005 | 1 | Muhammad Faheem | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 358 | HL-227322 | 2005 | 1 | Patrice Black | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 359 | HL-236577 | 2005 | 1 | John Smurlo | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 360 | HL-242938 | 2005 | 1 | Daniel Olivares | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 361 | HL-260858 | 2005 | 1 | Eduain Foster Marshall Simmons | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 362 | HL-291491 | 2005 | 1 | Michael Parish | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 363 | HL-307618 | 2005 | 1 | Christopher Butler Robert Kennedy | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 364 | HL-326591 | 2005 | 1 | Brian Weston Travis Weston | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 365 | HL-336784 | 2005 | 1 | Leroy Wilson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 366 | HL-355032 | 2005 | 1 | Antwan Rogers | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | **IDENTIFYING INFORMATION** HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | **CRIMINAL DEFENSE ATTORNEY FILE COMPARISON** *Items in the Investigative File missing from the Criminal Defense Attorney File* ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | **INVESTIGATIVE FILE INFORMATION** DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 367 | HL-361793 | 2005 | 1 | Kevin Smith | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 086725-86726 | NO | Major Incident Notification Detail<br>Photos- Scene/Body | YES | ACB 086783 | NO | N/A |
| 368 | HL-370043 | 2005 | 1 | Levester Hill | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 086982-86984 | NO | Major Incident Notification Detail<br>Photos- Scene/Body<br>Biz. Card<br>Handwritten Notes<br>Subpoena (copy but with different handwritten notes)<br>To-From Memos<br>Release of Liability | YES | ACB 087039<br>ACB 087041<br>ACB 087044 | YES | ACB 086989<br>ACB 086990 |
| 369 | HL-371164 | 2005 | 1 | Armon Bailey | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 087227-87229 | NO | Major Incident Notification Detail<br>Receipt<br>Subpoena (copy but with different handwritten notes) | NO | N/A | NO | N/A |
| 370 | HL-373670 | 2005 | 1 | Milton Howard | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 087431 | NO | Photos- Scene/Body<br>Supp. Report | NO | N/A | NO | N/A |
| 371 | HL-385610 | 2005 | 1 | Charles Littlejohn | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 070320-70321 | NO | Major Incident Notification Detail<br>Handwritten Note<br>Machinist Lodge Schedule | YES | ACB 070387 | NO | N/A |
| 372 | HL-387017 | 2005 | 1 | Brian Fields<br>Carl Warren | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 070529-70530 | NO | Moving of Arrestee<br>Photos- Scene | NO | N/A | NO | N/A |
| 373 | HL-393632 | 2005 | 1 | Larry Carter | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 070708 | NO | Subpoena (Copy of one in file with different handwritten notes)<br>Major Incident Notification Detail<br>Photos – Scene/Body | NO | N/A | NO | N/A |
| 374 | HL-399677 | 2005 | 1 | Louis Lashley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 070875-70876 | NO | Handwritten Note<br>Photos – Scene/Body<br>Original Case Incident Report<br>To From Memo<br>Major Incident Notification Detail | NO | N/A | NO | N/A |
| 375 | HL-407548 | 2005 | 1 | Antoine Evans | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 071050-71053 | NO | Photos- Scene/Body | YES | ACB 071346 | YES | ACB 071069<br>ACB 071070<br>ACB 071070 |
| 376 | HL-448514 | 2005 | 1 | Jarrell Brown | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 071417; ACB 071422; ACB 071438;<br>ACB 071449; ACB 071455; ACB 071459;<br>ACB 071462; ACB 071481 | NO | Supervisory Homicide Audit<br>Photos-Scene<br>Major Incident Notification Detail<br>Homicide Case Folder Table of Contents | NO | N/A | NO | N/A |
| 377 | HL-484055 | 2005 | 1 | Raul Lopez<br>Michael Nieto | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 071541; ACB 071551; ACB 071575;<br>ACB 071584; ACB 071604; ACB 071608;<br>ACB 071625; ACB 071680; ACB 071699;<br>ACB 071707; ACB 071765; ACB 071780 | NO | Major Incident Notification Detail<br>Homicide Case Folder Table of Contents<br>Crime Scene Processing Report<br>Handwritten Notes<br>Property Inventory | YES | ACB 071741<br>ACB 071751 | NO | N/A |
| 378 | HL-484812 | 2005 | 1 | Francisco Quezada | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 072201; ACB 072213; ACB 072229;<br>ACB 072244; ACB 072253; ACB 072281;<br>ACB 072288 | NO | Photos – Scene/Body<br>Major Incident Notification Detail<br>Homicide Case Folder Table of Contents<br>CPD Criminal Histories<br>Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 379 | HL-486965 | 2005 | 1 | Jeremiah Fallon | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 072372; ACB 072377; ACB 072420;<br>ACB 072430; ACB 072459; ACB 072462;<br>ACB 072470; ACB 072476; ACB 072517;<br>ACB 072533; ACB 072540; ACB 072578 | NO | Major Incident Notification Detail<br>Homicide Case Folder Table of Contents<br>Photos- Scene/Body<br>Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 380 | HL-489874 | 2005 | 1 | Sergio Mendoza<br>Jesus Mendoza | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 087533; ACB 087538; ACB 087638;<br>ACB 087650; ACB 087662; ACB 087666;<br>ACB 087670; ACB 087687; ACB 087717;<br>ACB 087763; ACB 087771; ACB 087775;<br>ACB 087787; ACB 087830; ACB 087841;<br>ACB 087895; ACB 087924; ACB 087961;<br>ACB 087998; ACB 088019; ACB 088023;<br>ACB 088047 | NO | Major Incident Notification Detail<br>Homicide Case Folder Table of Contents<br>Photos- Scene/Body<br>Supervisory Homicide Audit Review<br>Handwritten notes | YES | ACB 087814<br>ACB 087818 | NO | N/A |
| 381 | HL-504078 | 2005 | 1 | Julio Guerrero | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 088074; ACB 088099; ACB 088113;<br>ACB 088121; ACB 088131; ACB 088138;<br>ACB 088145; ACB 088190 | NO | Major Incident Notification Detail<br>Homicide Case Folder Table of Contents<br>Biz. Card<br>Supervisory Homicide Audit Review<br>Photos – Person<br>Photos – Scene/Body | NO | N/A | NO | N/A |
| 382 | HL-509628 | 2005 | 1 | Reginald Webb | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 072627; ACB 072636; ACB 072652;<br>ACB 072663; ACB 072680; ACB 072697;<br>ACB 072711; ACB 072724; ACB 072752 | NO | Major Incident Notification Detail<br>Biz. Card<br>Photo – Scene/Body<br>Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 383 | HL-516150 | 2005 | 1 | Tony Moore | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 072899; ACB 072905; ACB 072920;<br>ACB 072933; ACB 072847; ACB 072952;<br>ACB 072955; ACB 072971; ACB 072982;<br>ACB 072988 | NO | Supp. Reports<br>Major Incident Notification Detail<br>Homicide Case Folder Table of Contents<br>Handwritten Notes<br>Supervisory Homicide Audit Review<br>Photos – Scene/Body | YES | ACB 072990-004 | NO | N/A |
| 384 | HL-519786 | 2005 | 1 | Marcos Garcia | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 073056; ACB 073085; ACB 073096;<br>ACB 073123; ACB 073131; ACB 073134;<br>ACB 073141; ACB 073175; ACB 073185;<br>ACB 073192; ACB 073207; ACB 073213 | NO | Major Incident Notification Detail<br>Homicide Case Folder Table of Contents<br>General Offense Case Report<br>Photos – Scene/Body | NO | N/A | NO | N/A |
| 385 | HL-526827 | 2005 | 1 | Deangelo Norwood | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 073355; ACB 073362; ACB 073470;<br>ACB 073483; ACB 073491; ACB 073499;<br>ACB 073505; ACB 073517; ACB 073525;<br>ACB 073530; ACB 073566 | NO | Major Incident Notification Detail<br>Homicide Case Folder Table of Contents<br>Receipt<br>Supervisory Homicide Audit Review | YES | ACB 073536<br>ACB 073547 | NO | N/A |
| 386 | HL-527629 | 2005 | 1 | Timothy Fountain | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 073651; ACB 073660; ACB 073749;<br>ACB 073772; ACB 073817-73818; ACB<br>073850; ACB 073864; ACB 073909; ACB<br>073914 | NO | Major Incident Notification Detail<br>Homicide Case Folder Table of Contents<br>Photos – Scene/Body<br>Handwritten Note<br>I.D Card | YES | ACB 073866<br>ACB 073868 | YES | ACB 073759<br>ACB 073759<br>ACB 073759 |

Case: 23-cv-04430 Document #: 383-20 Filed: 04/06/24 Page 313 of 433 PageID #:18030

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

56 of 62

**PERMANENT RETENTION FILE COMPARISON**
*Items in the Investigative File missing from the Permanent Retention File*

| | IDENTIFYING INFORMATION | | | | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | | | | | | | | | | |
| 367 | HL-361793 | 2005 | 1 | Kevin Smith | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 368 | HL-370043 | 2005 | 1 | Levester Hill | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 369 | HL-371164 | 2005 | 1 | Armon Bailey | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 370 | HL-373670 | 2005 | 1 | Milton Howard | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 371 | HL-385610 | 2005 | 1 | Charles Littlejohn | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 372 | HL-387017 | 2005 | 1 | Brian Fields / Carl Warren | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 373 | HL-393632 | 2005 | 1 | Larry Carter | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 374 | HL-399677 | 2005 | 1 | Louis Lashley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 375 | HL-407548 | 2005 | 1 | Antoine Evans | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 376 | HL-448514 | 2005 | 1 | Jarrell Brown | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 377 | HL-484055 | 2005 | 1 | Raul Lopez / Michael Nieto | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 378 | HL-484812 | 2005 | 1 | Francisco Quezada | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 379 | HL-486965 | 2005 | 1 | Jeremiah Fallon | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 380 | HL-489874 | 2005 | 1 | Sergio Mendoza / Jesus Mendoza | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 381 | HL-504078 | 2005 | 1 | Julio Guerrero | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 382 | HL-509628 | 2005 | 1 | Reginald Webb | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 383 | HL-516150 | 2005 | 1 | Tony Moore | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 384 | HL-519786 | 2005 | 1 | Marcos Garcia | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 385 | HL-526827 | 2005 | 1 | Deangelo Norwood | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 386 | HL-527629 | 2005 | 1 | Timothy Fountain | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago. Index of Basement Files, 1983-1989, 1999-2006

## CRIMINAL DEFENSE ATTORNEY FILE COMPARISON
*Items in the Investigative File missing from the Criminal Defense Attorney File*

For every record below, the following **CRIMINAL DEFENSE ATTORNEY FILE COMPARISON** columns are all **N/A**: Are Investigative Materials Missing From The Defense Attorney File?; Bates Numbers For Missing Investigative Materials; Does The Defense Attorney File Contain An Inventory Sheet?; Does The Inventory Sheet In The Defense Attorney File Match The Inventory Sheet In The Basement File?; Are General Progress Reports From The Basement File Missing From The Defense Attorney File?; Bates Numbers For Missing General Progress Reports; Are Handwritten Notes From The Basement File Missing From The Defense Attorney File?; Bates Numbers For Missing Handwritten Notes; Are To-From Memos From The Basement File Missing From The Defense Attorney File?; Bates Numbers For Missing To-From Memos. In addition, for every record **Has Criminal Defense Attorney File Been Produced? = NO**, **Does The Basement File Include An Inventory? = YES**, and **Is The Inventory Complete? = NO**.

### IDENTIFYING INFORMATION / INVESTIGATIVE FILE INFORMATION

| # | Records Division Year Number | Year | Area | Defendant(s) | Bates Number For Inventory | Examples Of Items Missing From Inventory | Are There Handwritten Notes In The File? | Bates Numbers For Handwritten Notes | Are There To-From Memos In The File? | Bates Numbers For To-From Memos |
|---|---|---|---|---|---|---|---|---|---|---|
| 387 | HL-534365 | 2005 | 1 | Michael Thorpe | ACB 073946; ACB 073953; ACB 073973; ACB 073979; ACB 073984; ACB 073988; ACB 073998; ACB 074048; ACB 074052; ACB 074095; ACB 074096; ACB 074108; ACB 074140; ACB 074148 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review; Photos – Scene/Body | NO | N/A | NO | N/A |
| 388 | HL-543584 | 2005 | 1 | Clara Taylor | ACB 074217; ACB 074221; ACB 074242; ACB 074249; ACB 074256; ACB 074260; ACB 074270; ACB 074277; ACB 074311 | To-From Memos; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Handwritten Notes; Photos – Scene/Body | YES | ACB 074281-284; ACB 074293; ACB 074294; ACB 074297; ACB 074299; ACB 074301-305; ACB 074313 | YES | ACB 074281-284; ACB 074293; ACB 074294; ACB 074297; ACB 074299; ACB 074301-305; ACB 074313 |
| 389 | HL-543691 | 2005 | 1 | Encelino Callegos | ACB 043442; ACB 043450; ACB 043494; ACB 043507; ACB 043508; ACB 043548; ACB 043563; ACB 043568; ACB 043580; ACB 043609; ACB 043613; ACB 043617; ACB 043624; ACB 043663 | Request for Identification of Photos; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review | YES | ACB 043628; ACB 043655 | NO | N/A |
| 390 | HL-555626 | 2005 | 1 | Jamual Collier | ACB 043691; ACB 043696; ACB 043729; ACB 043742; ACB 043750; ACB 043757; ACB 043764; ACB 043785; ACB 043812; ACB 043849 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Handwritten Notes; Supervisory Homicide Audit Review; Photos – Scene/Body | YES | ACB 043833 | NO | N/A |
| 391 | HL-567137 | 2005 | 1 | St Patrick Trusty | ACB 043908; ACB 043922; ACB 043942; ACB 043952; ACB 043963; ACB 043970; ACB 043975; ACB 043984; ACB 043991; ACB 044019 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Handwritten Notes; Photos – Persons; Photos – Scene/Body | YES | ACB 044012 | NO | N/A |
| 392 | HL-573680 | 2005 | 1 | Darnell Crume; Thomas Curtis; John Shields; Marvin Stone | ACB 044105; ACB 044118; ACB 044160; ACB 044171; ACB 044178; ACB 044182; ACB 044218; ACB 044238; ACB 044252; ACB 044258; ACB 044290; ACB 044314 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Photos – Scene/Body | YES | ACB 044240; ACB 044294 | NO | N/A |
| 393 | HL-604727 | 2005 | 1 | Justin Love | ACB 074364; ACB 074371; ACB 074403; ACB 074408; ACB 074419; ACB 074427; ACB 074435; ACB 074449; ACB 074476; ACB 074483; ACB 074507 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Photos – Scene/Body; Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 394 | HL-612170 | 2005 | 1 | Jose Elizondo | ACB 074612; ACB 074624; ACB 074638; ACB 074664; ACB 074697; ACB 074705; ACB 074710; ACB 074736; ACB 074801; ACB 074813; ACB 074819; ACB 074822; ACB 074871 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Photos – Scene/Body; To-From Memos; Handwritten Notes | YES | ACB 074837-838; ACB 074841; ACB 074848-849; ACB 074855; ACB 074865 | YES | ACB 074837-838; ACB 074841; ACB 074848-849; ACB 074855; ACB 074865 |
| 395 | HL-617116 | 2005 | 4 | Apolinar Hernandez | Area Central Basement 0000003 | Homicide File Supervisor's Check List; General Offense Case Report | NO | N/A | NO | N/A |
| 396 | HL-619201 | 2005 | 4 | Andres Rojas | Area Central Basement 0000002; Area Central Basement 0000004 | Homicide File Supervisor's Check List; Subpoenas APD and ASA; Photos – Scene/Body; Photos – Person | YES | Area Central Basement 0000009 | NO | N/A |
| 397 | HL-628024 | 2005 | 1 | Wardell Nugent | ACB 074896; ACB 074899; ACB 074916; ACB 074921; ACB 074931; ACB 074939; ACB 074945; ACB 074953 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review; Photos – Scene | NO | N/A | NO | N/A |
| 398 | HL-641342 | 2005 | 1 | Jose Salcedo | ACB 075025; ACB 075031; ACB 075059; ACB 075062; ACB 075086; ACB 075098; ACB 075101; ACB 075119; ACB 075127; ACB 075133; ACB 075136; ACB 075157 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Photos – Video Stills; Photos – Scene/Body; Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 399 | HL-656289 | 2005 | 1 | Brian Grosbhy | ACB 075221; ACB 075227; ACB 075237; ACB 075282; ACB 075297; ACB 075316; ACB 075327; ACB 075330; ACB 075348; ACB 075356 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Aerial Map; Supervisory Homicide Audit Review; Photos – Scene/Body | YES | ACB 075377 | NO | N/A |
| 400 | HL-662200 | 2005 | 1 | Raul Gomez | ACB 075496; ACB 075502; ACB 075529; ACB 075556; ACB 075614; ACB 075620; ACB 075626; ACB 075649; ACB 075656; ACB 075713 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Photos – Scene/Body; Handwritten Notes; Subpoena; Supervisory Homicide Audit Review | YES | ACB 075663-664; ACB 075751-755 | NO | N/A |
| 401 | HL-669557 | 2005 | 1 | Emil Kozeluh; Christopher Kronenberger | ACB 075891-75894 | Personal Count Notification Details; Major Incident Notification Detail; Handwritten Notes | YES | ACB 075973; ACB 076102-103; ACB 076107; ACB 076115 | YES | ACB 075971; ACB 076102-103; ACB 076107; ACB 076115 |
| 402 | HL-673823 | 2005 | 1 | Dasmen Thomas | ACB 076310; ACB 076320; ACB 076361; ACB 076370; ACB 076393; ACB 076406; ACB 076421; ACB 076442; ACB 076462; ACB 076471; ACB 076475; ACB 076486; ACB 076510 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Court Complaint Transmittal Listing; Photos – Scene/Body | NO | N/A | NO | N/A |
| 403 | HL-710670 | 2005 | 1 | Daniel Zavala; Alfonso Ochoa; Jesus Sandoval | ACB 076641; ACB 076649-76650; ACB 076817; ACB 076832; ACB 076842; ACB 076869; ACB 076876; ACB 076884; ACB 076902; ACB 076914; ACB 076923; ACB 076941 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review; Photos – Scene/Body | NO | N/A | NO | N/A |
| 404 | HL-722490 | 2005 | 1 | Jonathan Brooks | ACB 077003; ACB 077047; ACB 077058; ACB 077071; ACB 077080; ACB 077087; ACB 077093 | Major Incident Notification Detail; Homicide Case Folder Table of Contents; To-From Memos; Supervisory Homicide Audit Review; Photos – Person; Photos – Scene/Body | NO | N/A | YES | ACB 076969 |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

## PERMANENT RETENTION FILE COMPARISON
### Items in the Investigative File missing from the Permanent Retention File

| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 387 | HL-534365 | 2005 | 1 | Michael Thorpe | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 388 | HL-543584 | 2005 | 1 | Clara Taylor | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 389 | HL-543691 | 2005 | 1 | Eriodino Callegos | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 390 | HL-555606 | 2005 | 1 | Jamaal Collier | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 391 | HL-567137 | 2005 | 1 | St Patrick Trusty | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 392 | HL-573690 | 2005 | 1 | Darnell Crume Thomas Curtis John Shields Marvin Stone | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 393 | HL-604727 | 2005 | 1 | Justin Love | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 394 | HL-612170 | 2005 | 1 | Jose Elizondo | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 395 | HL-617116 | 2005 | 4 | Apolinar Hernandez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 396 | HL-619201 | 2005 | 4 | Andres Rojas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 397 | HL-628024 | 2005 | 1 | Wardell Nugen | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 398 | HL-641342 | 2005 | 1 | Jose Salcedo | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 399 | HL-656289 | 2005 | 1 | Brian Goolsby | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 400 | HL-662200 | 2005 | 1 | Raul Gomez | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 401 | HL-669557 | 2005 | 1 | Emil Kozehah Christopher Kronenberger | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 402 | HL-673823 | 2005 | 1 | Dasmen Thomas | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 403 | HL-710670 | 2005 | 1 | Daniel Zavala Alfonso Ochoa Jesus Sandoval | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 404 | HL-722490 | 2005 | 1 | Jonathan Brooks | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

IDENTIFYING INFORMATION

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

## CRIMINAL DEFENSE ATTORNEY FILE COMPARISON
*Items in the Investigative File missing from the Criminal Defense Attorney File*

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-/FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-/FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-/FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-/FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 405 | HL-808159 | 2005 | 1 | Michael Nieto | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 088300; ACB 088304; ACB 088321; ACB 088332; ACB 088340; ACB 088345; ACB 088363; ACB 088378; ACB 088386 | NO | Major Incident Notification Detail; Handwritten Notes; Supervisory Homicide Audit Review | YES | ACB 088408-413 | NO | N/A |
| 406 | HM-100890 | 2006 | 1 | Lonnell Payne | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 077232-77233; ACB 077288; ACB 077303; ACB 077325; ACB 077332; ACB 077340; ACB 077426; ACB 077433; ACB 077447; ACB 077450; ACB 077498; ACB 077551 | NO | Photos – Scene/Body; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Handwritten Notes; Receipt; ASA Subpoena for Streetfiles; Supervisory Homicide Audit Review | YES | ACB 077354; ACB 077494; ACB 077513-520; ACB 077544; ACB 077545 | NO | N/A |
| 407 | HM-148888 | 2006 | 1 | Nicholas Izguerra | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 077647; ACB 077656; ACB 077683; ACB 077693; ACB 077711; ACB 077716; ACB 077738; ACB 077754; ACB 077775 | NO | Photos – Scene/Body; Photos – Persons; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 408 | HM-182777 | 2006 | 1 | Ariel Bueno | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 077817; ACB 077825; ACB 077842; ACB 077848; ACB 077862; ACB 077866; ACB 077873; ACB 077881; ACB 077886; ACB 077891 | NO | Criminal History; Investigative Alert; Photos – Person; Photo – Scene; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 409 | HM-199438 | 2006 | 1 | Christopher Sodaro | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 088477; ACB 088487; ACB 088517; ACB 088522; ACB 088536; ACB 088542; ACB 088545; ACB 088565; ACB 088673; ACB 088626; ACB 088635 | NO | Supplement Report; Photos – Person; Photos – Scene; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Handwritten Notes | YES | ACB 088562; ACB 088586; ACB 088638; ACB 088649; ACB 088651; ACB 088654-655; ACB 088665; ACB 088668; ACB 088673; ACB 088681; ACB 088686-687; ACB 088891-694 | NO | N/A |
| 410 | HM-208287 | 2006 | 1 | Derrick Lemon | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 088787; ACB 088796; ACB 088832; ACB 088846; ACB 088858; ACB 088864; ACB 088872; ACB 088905; ACB 088915; ACB 088918; ACB 088921; ACB 088948; ACB 088957 | NO | Photos – Scene/Body; Major Incident Notification Detail; Homicide Case Folder Table of Contents | NO | N/A | NO | N/A |
| 411 | HM-231046 | 2006 | 1 | Jennifer Reeves | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 089046; ACB 089053; ACB 089098; ACB 089123; ACB 089136; ACB 089149; ACB 089164; ACB 089174; ACB 089180; ACB 089195; ACB 089198; ACB 089264; ACB 089290 | NO | Photos – Scene/Body; Polygraph DVD; Digital Recording of DVD Receipt; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Handwritten Note; Supervisory Homicide Audit Review | YES | ACB 089209 | NO | N/A |
| 412 | HM-232296 | 2006 | 1 | Marlin Garner; Frederick Deese | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 077964; ACB 077974; ACB 077995; ACB 078001; ACB 078015; ACB 078027; ACB 078060; ACB 078071; ACB 078080; ACB 078127 | NO | Facsimile Message; SOS Search; Court Notification Summary Report; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review; Photos – Person | YES | ACB 078097; ACB 078101; ACB 078102 | YES | ACB 078099; ACB 078100; ACB 078115 |
| 413 | HM-264904 | 2006 | | Eddie Fenton; Tyriyani Underwood; Jameelah Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 078151; ACB 078164; ACB 078182; ACB 078203; ACB 078251; ACB 078357; ACB 078428; ACB 078432; ACB 078436; ACB 078443; ACB 078511; ACB 078523; ACB 078596; ACB 078608-609 | NO | IDOC Inmate Searches; Bureau of Prisons Services Deployment; Operations Center; Criminal Histories; Clear Data Warehouse Charges & Photos; DL/ID Image Retrieval; Arrest Report; Investigative Alerts; Photos – Person; Handwritten Note; CCDOC Inmate Report; CHESS Memo; Memo; Photos – Scene; Major Incident Notification Detail; Homicide Case Folder Table of Contents | YES | ACB 078310; ACB 078460 | NO | N/A |
| 414 | HM-278309 | 2006 | 1 | Bruce Ervin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 078885; ACB 078901; ACB 078929; ACB 078938; ACB 078961; ACB 078973; ACB 079009; ACB 079025; ACB 079029; ACB 079032; ACB 079038; ACB 079104 | NO | Photos – Scene/Body; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review | YES | ACB 078897; ACB 079060 | NO | N/A |
| 415 | HM-304212 | 2006 | 1 | Ariel Bueno | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 079191; ACB 079195; ACB 079221; ACB 079227; ACB 079281; ACB 079287; ACB 079291; ACB 079299; ACB 079306; ACB 079357 | NO | Photos – Scene/Body; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 416 | HM-307550 | 2006 | 1 | Jorge Flores | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 079407; ACB 079419; ACB 079440; ACB 079455; ACB 079476; ACB 079487; ACB 079496; ACB 079503; ACB 079511 | NO | Photos – Person; Photos – Scene/Body; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 417 | HM-318752 | 2006 | 1 | David Aguilera | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 079623; ACB 079634; ACB 079663; ACB 079667; ACB 079677; ACB 079685; ACB 079690; ACB 079699; ACB 079715; ACB 079732; ACB 079738; ACB 079775 | NO | Request for Evidence from ERPS; Attorney Cards; Photos – Scene/Body; Major Incident Notification Detail; Homicide Case Folder Table of Contents; Supervisory Homicide Audit Review | NO | N/A | NO | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

**PERMANENT RETENTION FILE COMPARISON**
*Items in the Investigative File missing from the Permanent Retention File*

| | IDENTIFYING INFORMATION | | | | | PERMANENT RETENTION FILE COMPARISON | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 405 | HL-808159 | 2005 | 1 | Michael Nieto | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 406 | HM-100890 | 2006 | 1 | Lonnell Payne | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 407 | HM-148888 | 2006 | 1 | Nicholas Ezguerra | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 408 | HM-182777 | 2006 | 1 | Ariel Bueno | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 409 | HM-199438 | 2006 | 1 | Christopher Sodaro | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 410 | HM-208287 | 2006 | 1 | Derrick Lemon | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 411 | HM-231046 | 2006 | 1 | Jennifer Reeves | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 412 | HM-232296 | 2006 | 1 | Marlin Garner, Frederick Deese | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 413 | HM-264904 | 2006 | 1 | Eddie Fenton, Tytyana Underwood, Jameelah Williams | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 414 | HM-278309 | 2006 | 1 | Bruce Ervin | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 415 | HM-304212 | 2006 | 1 | Ariel Bueno | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 416 | HM-307550 | 2006 | 1 | Jorge Flores | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 417 | HM-318752 | 2006 | 1 | David Aguilera | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| # | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS CRIMINAL DEFENSE ATTORNEY FILE BEEN PRODUCED? | ARE INVESTIGATIVE MATERIALS MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING INVESTIGATIVE MATERIALS | DOES THE DEFENSE ATTORNEY FILE CONTAIN AN INVENTORY SHEET? | DOES THE INVENTORY SHEET IN THE DEFENSE ATTORNEY FILE MATCH THE INVENTORY SHEET IN THE BASEMENT FILE? | ARE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE DEFENSE ATTORNEY FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | DOES THE BASEMENT FILE INCLUDE AN INVENTORY? | BATES NUMBER FOR INVENTORY | IS THE INVENTORY COMPLETE? | EXAMPLES OF ITEMS MISSING FROM INVENTORY | ARE THERE HANDWRITTEN NOTES IN THE FILE? | BATES NUMBERS FOR HANDWRITTEN NOTES | ARE THERE TO-FROM MEMOS IN THE FILE? | BATES NUMBERS FOR TO-FROM MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 418 | HM-341097 | 2006 | 1 | Prince Ford, Antonio Rush, Bruce Garrett, Juan Booker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 079863; ACB 079873; ACB 079910; ACB 079915; ACB 079952; ACB 079970; ACB 079982; ACB 079999; ACB 080089; ACB 080110; ACB 080120; ACB 080157 | NO | •Investigator Alert / Criminal History / Handwritten Note / ISP Forensics Lab Reports / Memo / Photos – Scene/Body / Homicide Case Folder Table of Contents / Supervisory Homicide Audit Review | YES | ACB 080057 | NO | N/A |
| 419 | HM-353304 | 2006 | 1 | Ronald Livingston | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 080265; ACB 080271; ACB 080371; ACB 080378; ACB 080415; ACB 080444; ACB 080448; ACB 080466; ACB 080486; ACB 080497; ACB 080526; ACB 080542 | NO | ASA Subpoena for Stenofiles / Copy Request Inventory Desk / Photos – Scene/Body / ISP Laboratory Report / Major Incident Notification Detail / Supervisory Homicide Audit Review | No | N/A | NO | N/A |
| 420 | HM-366735 | 2006 | 1 | Benjamin Cooley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 080620; ACB 080629; ACB 080678; ACB 080683; ACB 080701; ACB 080713; ACB 080735; ACB 080746; ACB 080753; ACB 080785 | NO | Handwritten Notes / Supervisory Homicide Audit Review / Major Incident Notification Detail / Homicide Case Folder Table of Contents / Photos - Scene/Body | Yes | ACB 080617; ACB 080755; ACB 080769 | NO | N/A |
| 421 | HM-367019 | 2006 | 1 | Lewis Robinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 044429; ACB 044437; ACB 044461; ACB 044464; ACB 044475; ACB 044484; ACB 044499; ACB 044507 | NO | Supervisory Homicide Audit Review / Major Incident Notification Detail / Homicide Case Folder Table of Contents / Photos- Scene/Body | No | N/A | NO | N/A |
| 422 | HM-372012 | 2006 | 1 | Daniel Avitia | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 044590; ACB 044600; ACB 044625; ACB 044632; ACB 044669; ACB 044676; ACB 044685; ACB 044721; ACB 044751; ACB 044762; ACB 044812 | NO | Photos – Scene/Body / Major Incident Notification Detail / Homicide Case Folder Table of Contents / Handwritten Note | Yes | ACB 044779 | NO | N/A |
| 423 | HM-414793 | 2006 | 1 | Lorenzo Wilson, Paris Gosha, Eirka Ray | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 044907; ACB 044926; ACB 044978; ACB 045005; ACB 045018; ACB 045027; ACB 045046; ACB 045067; ACB 045073; ACB 045118; ACB 045124; ACB 045130 | NO | Major Incident Notification Detail / Homicide Case Folder Table of Contents / Photos – Scene/Body / Supp. Report | NO | N/A | NO | N/A |
| 424 | HM-419168 | 2006 | 1 | Edwon Carter | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 045187; ACB 045203; ACB 045260; ACB 045265; ACB 045301; ACB 045317; ACB 045322; ACB 045349; ACB 045374; ACB 045382 | NO | •Handwritten Notes / Receipts / Photos – Scene/Body / Major Incident Notification Detail / Homicide Case Folder Table of Contents / Supervisory Homicide Audit Review | YES | ACB 045387; ACB 045388; ACB 045447; ACB 045448 | NO | N/A |
| 425 | HM-445290 | 2006 | 1 | Clarence Mosely | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 045500; ACB 045512; ACB 045543; ACB 045559; ACB 045619; ACB 045626; ACB 045640; ACB 045654; ACB 045696; ACB 045711; ACB 045717; ACB 045733 | NO | •Handwritten Notes / Photos - Scene / Major Incident Notification Detail / Homicide Case Folder Table of Contents / Supervisory Homicide Audit Review | NO | N/A | NO | N/A |
| 426 | HM-449389 | 2006 | 1 | Darnell Lane | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 045819; ACB 045830; ACB 045868; ACB 045905; ACB 045919; ACB 045936; ACB 045969; ACB 045973; ACB 045979; ACB 046022 | NO | Photos – Scene/Body / DVD / Major Incident Notification Detail / Homicide Case Folder Table of Contents / Supervisory Homicide Audit Review | YES | ACB 045983; ACB 045996; ACB 045998 | NO | N/A |
| 427 | HM-478600 | 2006 | 1 | Jose Soto | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 046117; ACB 046125; ACB 046151; ACB 046177; ACB 046191; ACB 046222; ACB 046249; ACB 046255; ACB 046263 | NO | Handwritten Notes / Photos – Persons / Photos – Scene/Body / Major Incident Notification Detail / Homicide Case Folder Table of Contents / Supervisory Homicide Audit Review | YES | ACB 046275; ACB 046276 | NO | N/A |
| 428 | HM-492478 | 2006 | | Jermaine Lewis | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 046430; ACB 046445; ACB 046471; ACB 046476; ACB 046492; ACB 046503 | NO | Crime Scene Processing Report / Towed Vehicle Disposition / ISP Telephone Conversation Record / Handwritten Notes / GPRs / Line Up Sheets / Attorney ID Cards / Photos – Persons / Photos – Scene/Body / Major Incident Notification Detail / Homicide Case Folder Table of Contents / Supervisory Homicide Audit Review | YES | ACB 046525; ACB 046540; ACB 046559 | NO | N/A |
| 429 | HM-501773 | 2006 | 1 | Carlos Rivera | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | YES | ACB 046640; ACB 046646; ACB 046685; ACB 046691; ACB 046708; ACB 046721; ACB 046724; ACB 046736; ACB 046743; ACB 046782 | NO | Photos – Persons / Photos – Scene/Body / Major Incident Notification Detail / Homicide Case Folder Table of Contents / Supervisory Homicide Audit Review | NO | N/A | NO | N/A |

Fields v. City of Chicago, Index of Basement Files, 1983-1989, 1999-2006

| | IDENTIFYING INFORMATION | | | | PERMANENT RETENTION FILE COMPARISON _Items in the Investigative File missing from the Permanent Retention File_ | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | RECORDS DIVISION NUMBER | YEAR | AREA | DEFENDANT(S) | HAS A PERMANENT RETENTION FILE BEEN PRODUCED? | IS THE INVESTIGATIVE FILE INVENTORY IN THE PERMANENT RETENTION FILE? | DOES THE INVENTORY IN THE PERMANENT RETENTION FILE MATCH THE INVENTORY IN THE BASEMENT FILE? | ARE THE GENERAL PROGRESS REPORTS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING GENERAL PROGRESS REPORTS | ARE HANDWRITTEN NOTES FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING HANDWRITTEN NOTES | ARE TO-FROM MEMOS FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE? | BATES NUMBERS FOR MISSING TO-FROM MEMOS | OTHER INVESTIGATIVE MATERIAL FROM THE BASEMENT FILE MISSING FROM THE PERMANENT RETENTION FILE |
| 418 | HM-341097 | 2006 | 1 | Prince Ford Antonio Rush Bruce Garrett Juan Booker | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 419 | HM-353304 | 2006 | 1 | Ronald Livingston | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 420 | HM-366735 | 2006 | 1 | Benjamin Cooley | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 421 | HM-367019 | 2006 | 1 | Lewis Robinson | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 422 | HM-372012 | 2006 | 1 | Daniel Avitia | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 423 | HM-414793 | 2006 | 1 | Lorenzo Wilson Paris Gosha Erika Ray | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 424 | HM-419168 | 2006 | 1 | Edwon Carter | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 425 | HM-445290 | 2006 | 1 | Clarence Mosely | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 426 | HM-449389 | 2006 | 1 | Darnell Lane | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 427 | HM-478600 | 2006 | 1 | Jose Soto | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 428 | HM-492478 | 2006 | 1 | Jermaine Lewis | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| 429 | HM-501773 | 2006 | 1 | Carlos Rivera | NO | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

# *Michael Brasfield and Associates, Inc.*

641 Olele Point Road
Port Ludlow, WA 98365

Phone: 360-301-4465
E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**
No. 12 CV 4428

# ATTACHMENT I

*Michael Brasfield and Associates, Inc.*

641 Olele Point Road
Port Ludlow, WA 98365

Phone: 360-301-4465
E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**James Kluppelberg v. Jon Burge and City of Chicago, et al.**
No. 1:13-cv-03963

**Report of Plaintiff's Expert – Michael D. Brasfield**

**January 5, 2016**

### A. Introduction

Gayle Horn with the law firm of Loevy & Loevy, representing the plaintiff in this matter, contacted and retained me to review the appropriateness of the actions of numerous employees of the City of Chicago, specifically as they relate to matters stemming from the arrest and eventual incarceration of James Kluppelberg for allegedly setting fire to a residential structure on March 24, 1984 that resulted in the deaths of 6 individuals. These events cover a 29-year period, beginning in March 1984 and ending in August 2013 when Kluppelberg was exonerated and declared innocent of the crimes for which he was convicted.

Based on my review of the materials provided to me, I have concluded to a reasonable degree of professional certainty that certain individual defendants and the City of Chicago failed to conduct even a cursory investigation of the facts prior to arresting Mr. Kluppelberg and causing him to be charged. Physical abuse, including assault, was utilized to obtain a false confession. Additionally, based on false evidence from Duane Glassco and others, the evidence in the record leads me to conclude that the defendants manufactured and falsified evidence and manipulated witnesses using improper police interrogation tactics, all in violation of accepted police procedures.

Defendants also withheld critically relevant information from Kluppelberg and his counsel, In fact, it was not until August 2014, during this civil litigation, that the City produced the investigative file created by the Area 3 detectives in 1984. That file, referred to as the "New File," contained exculpatory information and was not disclosed to Kluppelberg prior to his criminal trial.

In my opinion, the City of Chicago created an environment where officers could ignore police department policies, proper police practices, and the law with impunity and that such behavior was not only tolerated, but also encouraged. The evidence from this case demonstrates that even though the Chicago Police Department ("CPD") had formal written standards for

1

homicide investigations, as a matter of unofficial policy or widespread practice, the defendants in this case were permitted to repeatedly violate those written standards and other commonly accepted police investigative practices. My opinions and the facts upon which I base my opinions are discussed in greater detail below.

I have been an active-duty municipal and/or county law enforcement official for approximately 39 years. I retired from active governmental service in 2009. I have served as the Chief of Police of the Fort Lauderdale Police Department, the Assistant Chief of the Seattle Police Department, and the elected Sheriff of Jefferson County, Washington. Over the last 20 years I have also been actively engaged as a consultant, trainer, and case reviewer in matters related to law enforcement. An overview of my qualifications follows in a later portion of this opinion. Over the past nine years, I have testified and been qualified as a police practices expert in numerous state and federal courts for both plaintiffs and defendants. My testimony has been both on behalf of and against law enforcement personnel.

I set forth the FRPC 26 list of cases in which I have testified as Attachment A; the material I reviewed with respect to this case in Attachment B; my rate of compensation in Attachment C; and my detailed resume in Attachment D.

I reserve the right to alter and supplement my opinions and/or form additional opinions regarding this case upon disclosure to me of any further information or documentation related to this case.

## B. Expert Witness Qualifications

I began my 41-year law enforcement career in 1968 as a patrol officer with the City of Mercer Island, Washington. In 1969, I joined the Seattle Police Department and served Seattle as a police officer, detective, sergeant, lieutenant, captain, major, and assistant chief. In addition to uniformed patrol, my investigative assignments as a detective included traffic, homicide investigation, burglary and theft, and vice (gambling and prostitution). As a sergeant, I served in patrol, the tactical squad, and internal investigations. As a lieutenant, I served as a watch commander in charge of 50 patrol officers, and later as the commander of the Washington State Criminal Justice Training Commission's Basic Law Enforcement Academy for 2 years. This academy was responsible for developing and providing the initial law enforcement training for all commissioned law enforcement officers in Washington State. As a captain, I served as commander at both the downtown and north precincts, with responsibility for over 125 officers at each location. I also served as the commander of the Internal Investigations section of the Seattle Police Department for 2 years. I was the major in command of the inspectional services division for 4 years. This division was responsible for developing, implementing, and monitoring departmental policies and procedures. This division was also responsible for developing and administering a budget in excess of $120 million. My last 5 years with the Seattle Police Department were served as assistant chief in command of the support services bureau. I was responsible for, and oversaw the activity of, nine uniquely different divisions including: internal investigations; training; personnel, intelligence; crime prevention; communications; records & evidence; data processing; and fiscal, property, & fleet management.

2

In this capacity I routinely served as the acting Chief of Police. I retired from the agency in 1995.

I was selected by the City of Fort Lauderdale as its Police Chief in 1995. The 33-square-mile city has a full time resident population of 165,000. An estimated additional 60,000 "snow bird" residents return to second homes in the city during the 6-month winter season. Fort Lauderdale serves as the seat of government for the county of 1.5 million and is in the heart of a diverse tri-county (Dade, Broward, and Palm Beach) population of 4 million. As one of the premier tourist destinations in South Florida, over 12 million passengers come through the airport each year. The ocean port handles the second largest number of cruise ship sailings in the world. Fort Lauderdale serves as the governmental and business hub of the County. The Fort Lauderdale Police Department had a budget of $60 million and consisted of 500 sworn positions and 300 civilian positions. In 2000, the department received 600,000 calls for service, dispatched over 200,000 of those calls, made over 20,000 arrests, and issued 65,000 traffic citations. The Department is now nationally recognized as an innovative leader in the field of community policing and was one of only a handful of cities nationwide to be selected as a Community Policing Demonstration Site by the Department of Justice. I oversaw the operation of the only municipal jail in the state of Florida. Under my tenure, Fort Lauderdale became the first major agency to obtain accreditation. After over 6 years as the police chief of Fort Lauderdale, I retired from law enforcement a second time and returned to the Seattle area in the fall of 2001.

After retiring as Chief of the Fort Lauderdale Police Department I returned to my retirement home in Washington State. After a year and a half I chose to run for, and was elected to, the office of Jefferson County Sheriff. I served in that capacity for over 6 years, and retired from active-duty law enforcement for the third (and final) time in the spring of 2009.

As both a Police Chief (6 years) and Sheriff (6 years), I have reviewed and approved policy and procedures of every kind. These included (but are not limited to) criminal investigations, maintenance of police records, complaints against police officers, training, supervision, and discipline. I believe that of specific relevance to this case is that I was the chair of the Washington State Board on Law Enforcement Training, Standards, and Education. Through that position I regularly examined and reviewed issues and criteria that define standards and norms related to the practice and administration of law enforcement practices and operations. I also served 2 years as Commander of the Washington State Basic Law Enforcement Academy in Burien, Washington. In that position I was responsible for the administration of the training program provided to all Washington State Law Enforcement Officers. This was also my role as the Assistant Chief of the Seattle Police Department responsible for in-service and advanced training at the Academy over a subsequent 5-year period. Finally, for 6 years, I was the Commander of the Seattle Police Department's Inspectional Services Division and responsible for the development, formulation and updating all police policy and procedures, including those involved in proper investigation procedures.

As an independent consultant and sub-contractor, I have completed on-site visits to analyze 6 major U.S. city police agencies (Boston, Baltimore, Memphis, Oxnard, Cleveland & Seattle) to evaluate community policing in public housing. I have also served as a visiting

3

management assessor for the cities of New Orleans (LA), Columbus (OR), Portland, (OR), San Francisco (CA), Bremerton (WA). Upon my return to Seattle in 2001, I provided contract professional services as a consultant and program director for the non-profit South Downtown Foundation. I had responsibility for administering several million dollars for improving public safety in the International District, SoDo, and Pioneer Square neighborhoods of Seattle. In this capacity I coordinated efforts with the City of Seattle, the Seattle Police Department, and various interest and civic groups in the area.

As Sheriff of Jefferson County, I held a gubernatorial appointment to the Washington State Sentencing Guidelines Commission, serving as the only law enforcement official on this body of judicial, legislative, and executive-branch representatives. I also chaired the Washington State Criminal Justice Training Commission's Board on Law Enforcement Training, Standards, and Education. Members of this board monitored and evaluated the training of police officers and participated in law enforcement decertification hearings.

Over the last 40 years I have received extensive, specialized professional training in nearly all areas of law enforcement. There has been particular emphasis in the areas of training, internal investigations, criminal investigations, traffic homicide investigations, use of force, ethics, and police liability. I was awarded "life member" status with the International Association of Chiefs of Police in 2005. I was also awarded "life member" status with the Washington Association of Sheriffs and Police Chiefs in 2009. I am also a "life member" of the National Sheriffs Association. I have also been a member of the Washington State Sheriffs Association and served on the executive board of that organization.

During my career, I have been required to investigate and/or review hundreds of internal investigations. I have supervised hundreds of officers, and have had to review their compliance with standards of behavior and integrity. As both a supervisor, and later a commander of internal investigations with the Seattle Police Department, I have reviewed and evaluated the thoroughness of well over hundreds of such investigations. As a police chief and as a sheriff, I have had the ultimate responsibility of passing judgment on such actions by law enforcement officers in situations ranging from traffic stops to fatal shootings.

I received a Bachelor of Arts degree in Criminal Justice from the University of Washington in Seattle. I also am a graduate of the Senior Management Institute for Police (SMIP) of the Police Executive Research Forum.

I have been retained in over 65 lawsuits as a police practices expert witness - approximately 66% for law enforcement defendants and 33% for civil rights plaintiffs or individuals claiming injury by law enforcement officers. These include federal district courts in Illinois, Pennsylvania, Florida, Washington State, Idaho, Oregon, Colorado, and Louisiana, and state courts in Washington, Alaska, California, Oregon, Arizona, Pennsylvania, Florida, Wyoming, Texas, and Kentucky.

4

## I. Background Facts Relating to Fire at 4448 S. Hermitage and Subsequent Investigations

### A. Brief Overview of Facts Relating to Investigation of James Kluppelberg and Fire at 4448 S. Hermitage

In the early morning hours of March 24, 1984, a fire erupted in the vacant first floor of a three-story apartment building on Chicago's South Side.

The fire ripped through the building, killing 28 year old Elva Lupercio and her five children, Santos, 10; Sonia, 8; Christobel, 6; Yadira, 4; and Anabel, 3, who lived on the second floor. Elva's husband, Santos, managed to escape, but suffered a fractured skull and severe burns.

The fire destroyed the building, located at 4448 South Hermitage Avenue, as well as an adjacent building and damaged another, but no one else was injured. The cause of the fire was listed as undetermined due to extensive burning and the collapse of the building. The fire (investigation) was closed as "apparent accidental"[1] by detective Lawrence Tuider.

At the time of the fire, investigations of this type were conducted by the Chicago Police Department (CPD) Bomb and Arson Unit. The Bomb and Arson Unit found that the cause and origin of the fire at 4448 South Hermitage could not be determined due to the extensive destruction of the building and the absence of an accelerant[2]. In April of 1984 the CPD closed the case as non-criminal, "apparent accidental fire deaths".[3]

On March 23, 1984, about 15 hours before the fire at 4448 South Hermitage broke out, a house nearby at 4504 South Marshfield burned to the ground[4]. The fire then spread to the buildings adjacent to 4504 South Marshfield. To even the most casual observer, the similarities between the fire at 4504 South Marshfield and 4448 South Hermitage (2 blocks away) are obvious. For instance, they both occurred within hours of each other and within 2 blocks of each other, and both fires were of a magnitude that they spread to adjacent buildings. Fire and Arson detective Wayne Micek[5] was listed as being one of the personnel assigned to the investigation of the Marshfield fire.

The person responsible for setting the Marshfield fire was a woman by the name of Isabel Ramos[6] (age 38 at the time of the 1984 fires). Ramos lived at her aunt's home at 4640 South Marshfield at the time of the fires. Ramos was also reported to have been under medical care for mental health issues. Ramos admitted to setting the fire at 4504 South Marshfield, for which she was ultimately convicted.[7] She said that she spent the next 12 hours or more wandering around to different bars on Ashland Avenue. Ramos was interviewed in connection with the Marshfield

---

[1] National Registry of Exonerations. University of Michigan Law School. Maurice Possley. Before June 2012.
[2] CPD #F-105-510 (CITY-KLUP_004367)
[3] CPD Supplementary Report to #F-105-510 dated 4/13/1984 (CITY-KLUP_000562-564)
[4] CPD #F-104-537 (CITY-KLUP_004358-4363)
[5] Ibid, (CITY-KLUP_004361)
[6] CPD Report - #F-105-510 (CITY-KLUP_004316) dated 3/24/1984
[7] Ibid, (CITY-KLUP_004317)

5

fire, the fire at 4448 S. Hermitage, and yet another fire in the neighborhood that happened the same week as the other two fires.[8] Ramos told investigating officers during this interview that she "may have set" other fires besides the Marshfield fire but because of her intoxicated condition she could not remember specifically having set it. A number of individuals responsible for investigating the Lupercio/Hermitage fire were well aware of all three fires and that they had occurred in a short temporal and geographic proximity to each other. Information about Isabel Ramos being questioned regarding the 4448 S. Hermitage fire was shared with detectives Lawrence Tuider and McKinley[9].

A police report[10] also made reference to another possible suspect, a 13 to 14 year old teenager named "Ritchie" who claimed that he had helped set the fire at 4448 South Hermitage (Lupercio family residence) fire, and that he lived at 4437-4435 South Marshfield.

There was also a "tip" that "James Crockenburg" might have been involved in the Lupercio fire[11]. This "tip" was also referenced in his arrest report for the Lupercio fire.[12]

In November of 1987, over three and a half years after the fire, an individual by the name of Duane Glassco (age 19 at the time of the fire) was arrested by CPD for burglary, theft, and violation of probation. During his interrogation by the police in December 1987, he allegedly volunteered a statement that he had information that James Kluppelberg had been responsible for starting the fatal fire that killed the Lupercio family members.[13] It should be noted that Glassco had previously dated a woman by the name of Dawn Gramont. Gramont had later dated James Kluppelberg and Glassco had reason to dislike Kluppelberg. Glassco's statement to police included facts that were objectively false, and appear to have been based on a desire to reduce jail time on his charges, and in retaliation for the Kluppelberg – Gramont relationship.

Also in December of 1987, James Kluppelberg (age 18 at the time of the fire) reported a fire in which 2 vehicles had been burned at 820 West Belle Plaine Avenue on the north side of Chicago. Kluppelberg was a working as a security guard at the location of the vehicle fires. It should be noted that the car fires were over 3 years and 15 miles removed from the fires of 1984 described above.

Bomb & Arson Detectives Leonard Rolston and John Schmitz brought Kluppelberg in on a pretext to talk about the car fires. According to Kluppelberg, they actually began questioning him about the Lupercio/Hermitage fatality fire that occurred more than 3 years earlier. During their interrogation of Kluppelberg, the detectives claim that he supposedly provided a voluntary confession to not only the car fires, but also to the fire on South Hermitage that killed members of the Lupercio family. Kluppelberg initially denied involvement in the fatal fire of 1984. Kluppelberg alleged that he was beaten by officers during his interrogation and eventually

---

[8] Micek Dep at 33
[9] CPD Report - #F-105-510, (CITY-KLUP_004315)
[10] Chicago Police Department report contained in what has been described as the "new file". Page 3 – BATES CITY-KLUP_004314
[13] Glassco Testimony, P544

6

confessed to avoid further abuse. His beating by the police was litigated in a motion to suppress, which the criminal court granted.[14]

> MR. STOIOFF: Is the Court passing on the credibility of the officers visa vie (sic) their saying they did not beat him?
> THE COURT: Of course. It is obvious the defendant was mistreated by the police.

Kluppelberg's then girlfriend, Dawn Gramont (age 18 at the time of the fatality fire), was also taken into custody by the police. She informed them that Kluppelberg could not have started the fatal fire, because he was with her at the time. However, after continued police interrogation (which she claimed included physical assault) she then allegedly volunteered a statement implicating Kluppelberg in the fire.

In January of 1988, Kluppelberg was charged with arson and 6 counts of murder. In November of 1988, as noted above, Kluppelberg's alleged confession was suppressed by a Cook County judge based on objective medical evidence of serious injury to Kluppelberg believed to be caused by CPD investigators at the time of his interrogation. The judge noted that there was bruising around Kluppelberg's kidney area and that he was urinating blood when he was screened at the jail after his police interrogation. The judge concluded that Kluppelberg had been beaten by police and that his confession was coerced.[15]

In January 1989, Kluppelberg was placed on trial. The prosecution asked for the death penalty. In July 1989, a Cook County Circuit Judge Loretta Hall Morgan found him guilty in the non-jury trial. At sentencing in March 1990, Judge Morgan rejected the prosecution's request for the death penalty, but did sentence him to life in prison without parole.

After unsuccessful appeals Kluppelberg filed a post-conviction petition in May 2008, based on a significant disclosure of new evidence, both scientific, objective, and witness related. Over the next 3 years, attorneys for Kluppelberg worked within the courts for his exoneration. The State's Attorney continued to resist these efforts, but finally in May 2012 they declared that they did not feel that they could meet the burden of proof against Kluppelberg. A Cook County Circuit Court Judge then vacated the convictions and the charges were dismissed.

At the end of May 2012, after nearly 25 years in prison, Kluppelberg was released. In August 2013 Kluppelberg was granted a "Certificate of Innocence" by Judge Michael Hale.

In my experience, neither prosecutors nor criminal courts judges lightly vacate homicide convictions or enter declarations that a previously convicted murderer is in fact completely innocent of the crimes for which he had been convicted.

---

[14] Motion to suppress findings (P000221) 11/15/1988
[15] Ibid

7

**B. Detailed Timeline and Overview of Individuals Involved in Case**

On March 23, 1984 there was a fire in the area of 4504 South Marshfield Avenue. The fire began at approximately 3:45 pm, and continued sporadically through the afternoon, evening, and into the following early morning hours. The suspect in the fire at 4504 S. Marshfield, Isabel Ramos, was not arrested by police until 10:15 am on the morning of March 24, 1988.

On March 23, 1984 there was an arson fire at 1840 West 46th Street. The suspect in this fire was identified as Steven Slepawic. This fire was reported at approximately 11:15 pm.

Both the "Ramos" fires and the "Slepawic" fire were within a few blocks of the Lupercio/Hermitage fire.

CPD patrol officers Bakanski and McGuire and others began producing the initial reports[16] related to the Lupercio/Hermitage fire on March 24, 1984 at 4:00 am. That initial report as well as companion reports generated and included in the "permanent retention file" provided detailed lists of those governmental (police, fire, medical examiner, etc.) officials present during the response and immediate investigation efforts. It should be noted that nowhere in the detailed lists do the names of fire officials William Alletto or Frances Burns (defendants) appear. Deputy Fire Commissioner Alltman is listed as the fire official in charge[17]. Detectives (defendants) George Jenkins, John Nelson, and Lawrence Tuider are listed.[18]

A death investigation report[19] of the Lupercio/Hermitage fire was prepared by CPD Bomb and Arson detective George Jenkins on March 25, 1984. In his report he stated while doing a canvas of the fire location, "a citizen" had informed him that an individual in the crowd watching the fire was overheard to say that he had been involved in starting the fire. The "citizen" told Jenkins that the person was Richard Shields (age 13). Detective Jenkins, along with detective John Nelson later interviewed Shields and his mother at the 9th precinct. The detectives determined that what Shields had actually said was related to earlier television reports describing a woman running around in the area of the fire with a gasoline can. No further steps were taken and the detectives indicated that they had no other investigative leads and requested that the investigation be reassigned to another watch.

Another report was prepared by CPD Bomb and Arson detective Kenneth Urbon on a CPD Bureau of Investigative Services form submitted on March 26, 1984.[20] In this report Urbon stated that due to the extensive burning and collapse of the building the cause and origin of the fire could not be determined. He went on to state that there was no indication of an extremely hot fire since there was no beading to the copper wires in the building. The building owner was interviewed and he stated that he had never had any problems with any of the tenants and that to his knowledge no one in the building was having any problems, and knew of no reason why anyone would want to set fire to the building. Urbon's investigative partner was Dennis Guest.

---

[16] CPD Reports - #F-105-510 (CITY-KLUP_000539-548)
[17] CPD Bomb and Arson Supplementary Report #F-105-510 (CITY-KLUP_000550)
[18] Ibid, (CITY-KLUP_000550)
[19] Ibid, (CITY-KLUP_000551-552)
[20] CPD Bureau of Investigative Services (CITY-KLUP_000553-000556)

8

An additional supplementary report[21] was prepared on April 4, 1984 by CPD Bomb and Arson detective E. O'Donnell. In the report, O'Donnell indicates that 2 separate tips had been received. One anonymous caller claimed that the person responsible for the Lupercio/Hermitage fire was a Ricardo Rodriguez, a "Streets" gang member. Rodriguez agreed to take a polygraph examination. The examiner determined that Rodriguez was not responsible and had no knowledge of the fire. The other anonymous tip was received through the CPD "We-Tip" program and claimed that the person responsible was a James Kluppelberg.[22] Kluppelberg was also picked up but claimed he had nothing to do with the fire and was in a nearby home with his girlfriend, Dawn Gramont. O'Donnell reported that although Kluppelberg refused to take a polygraph, Gramont confirmed that he had been home with her at the time of the Lupercio/Hermitage fire. O'Donnell closed his report with the statement "At this time there is not any evidence to indicate that either Ricardo Rodriguez or James Kluppelberg was responsible for the (Lupercio/Hermitage) fire."

Another supplementary report[23] was written by Officer David Allen on April 10, 1984. He was dispatched to Holy Cross Church to recover an anonymous threatening letter that had been sent to Oscar Siller, a surviving victim of the Lupercio/Hermitage fire. The unsigned letter, written in Spanish, had a Chicago postmark. The letter writer claimed that Siller was responsible for the fire and that he would be both dead and turned into immigration.

A supplementary report[24] of the Lupercio/Hermitage fire was also prepared by CPD Area 3 Violent Crime detective Lawrence Tuider on April 13, 1984. The report category is checked as "non-criminal" and reviews the investigatory steps taken, including examination of the scene, CPD laboratory evidentiary test results, medical examiner's reports, interviews with fire and police involved, etc. The report concluded that there was no evidence in the laboratory results of any type of accelerant[25], no evidence of arson, and that on scene CPD bomb and arson investigators had no idea as to the cause of the fire. A canvas of the neighborhood had been done, and there were no indication of foul play. Detective Tuider requested that the case be classified as "closed, apparent accidental fire deaths." The report was approved on April 14, 1984 by a Sergeant Owen.

In December 1987, Glassco spoke with police about the 4448 S. Hermitage fire, approximately three and a half years after it occurred. He was in jail, facing charges.

In January of 1988, detectives Rolston and Schmitz brought Kluppelberg into the police station for questioning about the 4448 S. Hermitage fire. He had been working at a security guard at the time and had reported two car fires at work. He was brought to the station purportedly to be interviewed about those fires. After he was brought to the station, Kluppelberg alleges that he was beaten and forced into providing a false confession to the arson-murder.

---

[21] CPD Supplementary Report to #F-105-510 dated 4/4/1984 (CITY-KLUP_000557-559)

[22] ███████████████████████████████████

[23] CPD Supplementary Report to #F-105-510 dated 4/10/1984 (CITY-KLUP_000560-561)

[24] CPD Supplementary Report to #F-105-510 dated 4/13/1984 (CITY-KLUP_000562-564)

[25] CPD #F-105-510 (CITY-KLUP_004367)

On January 27, 1988 detectives Rolston and Schmitz produced a supplementary report[26] that stated that James Kluppelberg had been indicted by the Cook County Grand Jury for 18 Counts of Murder, 7 Counts of Attempted Murder, and 3 Counts of Arson for the Lupercio/Hermitage fire. An arrest warrant was issued for Kluppelberg on the charges and the warrant was delivered to the Cook County Jail where Kluppelberg was currently being held.

On January 29, 1988 detectives Foley and Kelly produced another supplementary report[27] that served to conclude the investigative efforts of the CPD in the Lupercio/Hermitage fire. The report lists detectives Foley, Kelly, Rolston, Schmitz, J. Smith, and J. Rusnak as arresting officers. The report lists CFD Battalion Chief William Alletto and CFD Deputy Chief Frances Burns (both of the Office of Fire Investigations) as having been interviewed. The report also indicates that an "oral statement" was taken from Kluppelberg, and that both oral and written statements were taken from Gramont and Glassco. The detectives stated that when they originally attempted to interview Kluppelberg, he had spoken with a lawyer and refused to talk with the detectives. Foley and Kelly claim in their report that they "had occasion" to attend a meeting (no date given) with ASA Warnick, ASA Rather, detectives Rolston and Schmitz. Foley and Kelly claim that as a result of that meeting they "had occasion" to interview fire officials Alletto and Burns. Alletto and Burns orally claimed that on the night of the Lupercio/Hermitage fire they conducted their own investigation (to which they were neither assigned nor authorized) and had concluded (but never reported to anyone) that the Lupercio/Hermitage fire was an incendiary arson fire. Foley and Kelly also included oral statements attributed to Gramont and Glassco that they knew, or should have known, to be false. They concluded their report stating that the case was "Cleared and Closed".

On March 24, 1988 Area 3 Violent Crimes detectives Thomas Ptak and Michael Duffin produced a supplementary report[28] claiming remarks made by Kluppelberg while they were doing an in-custody transport of Kluppelberg. The alleged remarks had no objective relationship to the Lupercio/Hermitage fire, but appeared to have been solicited in an attempt to enhance the case against Kluppelberg.

On February 2, 1989 detectives Foley and Kelly produced yet another supplementary report[29] claiming that they had been contacted by Thomas Brittain and that he had additional information regarding Kluppelberg's involvement in the Lupercio/Hermitage fire. Thomas Brittain claimed that he had been in the Cook County Jail with Kluppelberg sometime in March of 1988, and that while Brittain, Kluppelberg, another unknown male, and a 4th man (only described as Hispanic) were sharing a cell, the Hispanic man had a newspaper clipping about the Lupercio/Hermitage fire and he asked Kluppelberg if he had done it. According to Brittain's alleged story, Kluppelberg denied any involvement, but when the other 2 men left the cell, Kluppelberg stated that he started the Lupercio/Hermitage fire by accident and also claimed responsibility for the 2 car fires while he was a security guard. It should be noted that Brittain never provided this information to the detectives earlier, and that the detectives never obtained any type of written or recorded statement from Brittain.

---

[26] CPD Supplementary Report to #F-105-510 dated 1/27/1988 (CITY-KLUP_000575)
[27] CPD Supplementary Report to #F-105-510 dated 1/29/1988 (CITY-KLUP_000576-582)
[28] CPD Supplementary Report to #F-105-510 dated 3/24/1988 (CITY-KLUP_000583-584)
[29] CPD Supplementary Report to #F-105-510 dated 2/2/1989 (CITY-KLUP_000585-586)

### C. The New File

In August 2014, the City produced a New File. That New File was not disclosed to the prosecutor prior to Kluppelberg's criminal trial and therefore was not disclosed to Kluppelberg either.[30]

The New File was the original Area 3 1984 Investigative File for the investigation into the fire and deaths at 4448 S. Hermitage.

The New File contains significant material not in the permanent retention file or in the 1988 Area 3 Investigative File. For example, it includes an unsigned and undated handwritten investigative note[31], in which a neighbor (Minerva Harast) living at 4452 South Hermitage Avenue stated that the Lupercio/Hermitage building had "extension cords all over basement floor in home where fire had killed the people – used to get hot when it rained – people last lived in the basement about 2 months ago". In a continuation of the investigative note[32], a resident of the Lupercio building (Oralya Siller) was quoted as saying "thinks fire stated [*sic*] in basement, doesn't know how".

Also in the New File, there was, on an interview form,[33] a note was made by an officer (signature unreadable, possibly star #7699 or #7649), that an unnamed individual identified Nain Saadeh as possibly having had an argument with one of the Lupercio/Hermitage fire victims. On another interview form,[34] a note was made by apparently the same officer, that an unnamed individual identified Abda Kater as possibly having had an argument with one of the Lupercio/Hermitage fire victims. Yet another interview form[35] was produced by a sergeant (star #1347), indicating that an unknown Arab youth had created friction between his family and the Siller family.

The New File also contained information about an additional possible suspect[36] identified as Steven M. Slepawic. He was arrested for an arson fire which occurred at 1840 West 46th Street at about the same time and just a few blocks from the Lupercio/Hermitage fire.

Finally, the New File contained information about Isabel Ramos. Specifically, the New File contains an internal memo, sometimes referred to as a "to-from," from Detectives Smith and Brankin to Detectives Tuider and McKinley giving an update on their efforts to gather information about Isabel Ramos.[37] Other documents in the New File indicate that Area Three detectives interviewed Ramos about the 4448 S. Hermitage fire, and demonstrated that she was a suspect in that fire who in total had been interviewed at least two times by the Chicago Police Department.

---

[30] City's Resp. to Plaintiff's Third Set of Request to Admit Nos. 4, 8, 12, 16, 20, 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64.
[31] New File, (CITY-KLUP_004329)
[32] Ibid, (CITY-KLUP_004330)
[33] Ibid, (CITY-KLUP_004347)
[34] Ibid, (CITY-KLUP_004350)
[35] Ibid, (CITY-KLUP_004354)
[36] Ibid, (CITY-KLUP_004355-4356)
[37] Smith Dep 50-51, 99 -100.

11

**D. James Kluppelberg (age 18 at time of Lupercio/Hermitage fire)**

Over 3 and a half years after the Lupercio/Hermitage fire, James Kluppelberg was working as a security guard in Chicago. He reported[38] 2 separate car fires to the CPD in December of 1987. Kluppelberg was later arrested and charged with 2 counts of arson in connection with these car fires. Detectives Leonard Rolston and John Schmitz completed a Bomb and Arson Worksheet report[39] on January 12, 1988.

Subsequently, detectives Leonard Rolston and John Schmitz produced a report[40] on January 13, 1988 claiming that while they had Kluppelberg in their custody they obtained a verbal statement of guilt from him related to the Lupercio/Hermitage fire. Although the report does not specifically give the date of Kluppelberg's alleged oral statement, the report indicates that Kluppelberg repeated his statement to ASA Larry Axelrood on January 12, 1988. The detective's report of Kluppelberg's "confession" consisted entirely of a 25 line, 1 paragraph "verbatim" recounting of his alleged oral statement. A copy of the report was routed to Area 3 Violent Crimes detectives. The supplementary report also claims that an anonymous tip had been received in 1984 that Kluppelberg was responsible for the Lupercio/Hermitage fire.[41]

However, Kluppelberg claims that during his interrogation he was severely beaten while he was handcuffed with his hands behind his back.[42] Kluppelberg claims that Rolston and Schmitz threw him to the floor and punched him in the back and kicked him in the kidney area. Kluppelberg claims that the detectives threatened to continue their assault on him unless he confessed. He claims to avoid any further beating, he falsely confessed.

In addition to his own sworn testimony[43], support for Kluppelberg's claim of being beaten comes from corrections officer Francis Huber[44], attorney Marshall Weinberg[45], and ex-wife Bonnie Hileman.[46] This is further supported by the finding of Judge Robert Collins in the ruling[47] to suppress made by Kluppelberg to the police based on the mistreatment of him by the police.

After the supposedly "voluntary" confession obtained by Rolston and Schmitz, Kluppelberg was processed at the jail for his arrest related to the Lupercio/Hermitage fire. While in the jail, Kluppelberg was found doubled over and urinating blood. The doctor that treated him diagnosed him with trauma and a hematoma to his lower back and kidneys.[48] This information

---

[38] CPD RD's #J 545-732 and J 545-864 referenced in CPD Bomb and Arson Worksheet Report #F-105-510, dated 1/12/1988 (CITY-KLUP_000587) and CPD Supplementary Report #F-105-510 dated 1/13/1988 (CITY-KLUP_000608)

[39] CPD Bomb and Arson Worksheet Report to #J 545-732; #J 545-864; #F-105-510, dated 1/12/1988 (CITY-KLUP_000587)

[40] CPD Supplementary Report to #F-105-510 dated 4/13/1984 (CITY-KLUP_000565-566)

[41] ████████████████████████████████████

[42] James Kluppelberg deposition (3/31/15), page 83

[43] James Kluppelberg motion to suppress testimony (P186-199)

[44] Francis Gerard Huber motion to suppress testimony (P157-161) and Deposition at 85-88 on 4/29/2015

[45] Marshall Weinberg motion to suppress testimony (P161-174) and deposition at 74-86 and 102-104 on 5/20/2015

[46] Bonnie Hileman (Kluppelberg) motion to suppress testimony (P174-182) and deposition at 59-61 on 5/14/2015

[47] Motion to suppress findings (P000221) 11/15/1988

[48] Cook County Jail medical record (CITY-KLUP_3289-3290)

12

was presented at his motion to suppress, which led the court to exclude his so-called "confession".

On January 18, 1988, detectives Rolston and Schmitz submitted another supplementary report[49] indicating that they had been directed (no date or time of request shown) by ASA Jeff Warnick, the head of the special prosecutions arson unit, to interview 15 additional individuals, in particular the 5 individuals that were supposed to be in the apartment located at 1748 West 45th Street on the night of the Lupercio/Hermitage fire. Those 5 individuals were 1) James Kluppelberg; 2) Duane Glassco; 3) Dawn Gramont; 4) Michel Brittain; and 5) Don Brittain. The other 10 were either individuals that lived near the scene of the fire, individuals that had known Kluppelberg, his ex-wife, his mother, and employer, etc. It is apparent from reading the 5-page report that the information sought by ASA Warnick flowed from information provided to him by either/or both detectives (Rolston and Schmitz). None of the interviews were recorded in any manner, and were provided directly by the detectives in their report. The detectives claimed that they were all obtained at separate times and locations, but no times or locations were included in the report.

Kluppelberg's alleged oral and unrecorded statement contained glaring factual errors that could not have been true and/or conflicted with objective facts, known information, and other's statements. For example, Kluppelberg's scenario of how the fire started – in the living room with a bunch of papers – is physically impossible as demonstrated by Dr. Ogle.[50] In addition, Santos Lupercio testified that the back door to the first floor apartment was locked on the night of the fire, and there is nothing in Kluppelberg's confession to explain how he was able to open a locked door.[51]

### E. Duane Glassco (age 19 at time of Lupercio/Hermitage fire)

On the night of the Lupercio/Hermitage fire, Duane Glassco was visiting with Dawn Gramont and James Kluppelberg in their apartment located at 1748 West 45th Street. He acknowledged that he had been drinking and had taken drugs. He was interviewed during the 1984 investigation of the fire, but at no time did he implicate James Kluppelberg as being involved in the fire. James Kluppelberg did not participate in taking drugs or alcohol.[52]

As stated earlier, in November of 1987 Glassco was arrested by CPD for burglary, theft, and violation of probation. According to his trial testimony, in December 1987 Glassco allegedly volunteered a statement that he had information that James Kluppelberg had been responsible for starting the Lupercio/Hermitage fire.

Glassco subsequently recanted his statements and gave a sworn affidavit stating that he had not seen Kluppelberg coming and going from the Lupercio/Hermitage building. He also stated that it would have been impossible to see the building from his attic apartment because

---

[49] CPD Supplementary Report to #F-105-510 dated 1/18/1988 (CITY-KLUP_000567-571)

[50] Dr. Russell Ogle Expert Report (08/03/2015) pages 17-18; Dr. Russell Ogle Expert Report (5/23/08) at pages 6-7.

[51] Santos Lupercio Deposition (05/15/2015) pages 34-35

[52] Kluppelberg Dep 340-41; Michelle Brittain Dep. 16-17; JGS 723- July 9, 2013: Kluppelberg COI testimony

another building stood in the way. Aerial photographs confirmed that his original claim of what he saw would have been impossible.

Glassco also later admitted that Kluppelberg had never said that he had set the fire and that Glassco agreed to implicate Kluppelberg to escape prison time on the charges he was facing at the time.[53] He also said he was angry at Kluppelberg at the time because he had begun dating Glassco's former girlfriend.

Glassco lied during Kluppelberg's trial. Some specific examples include:
- Testimony of Charles Petrosus at motion for new trial[54] details the relative sizes of dwellings relative to the Lupercio/Hermitage fire. Establishes that Glassco could not have observed anyone (including Kluppelberg) from the attic window.
- Testimony of Ronald Cerevic at motion for new trial[55] details that Glassco could not have observed anyone (including Kluppelberg) from the attic window.
- Testimony of Dawn Gramont at motion for new trial[56] details that the attic window was actually boarded up at the time of the Lupercio/Hermitage fire.
- Aerial photos[57] of buildings in and around the Lupercio/Hermitage fire demonstrate Glassco's inability to see what he claimed to have seen from the attic window.
- Testimony of Duane Glassco[58] himself, including acknowledgement[59] to an Assistant State's Attorney that aerial photographs indicated that he could not have seen what he claimed to have seen from the attic window. Similar admissions were contained in a subsequent interview[60] with the same Assistant State's Attorney.

Glassco's original statement given to Foley and Kelly (as well as the ASAs) contained glaring factual errors that could not have been true and/or conflicted with objective facts, known information, and other's statements.

During his deposition in this litigation, Glassco recanted his recantation and went back to his original trial testimony. That testimony, however, is implausible for the reasons identified above; namely, that he could not have seen what he said he saw from the attic window.

### F. Dawn Gramont (age 18 at time of Lupercio/Hermitage fire)

After Kluppelberg was taken to the police station initially and interrogated about the 4448 S. Hermitage fire, detectives Rolston and Schmitz interviewed his one-time girlfriend, Dawn Gramont. According to their brief summary of her statements, she told them that she and Kluppelberg had a fight and that she observed him leaving the house, "shut[ing] off" the street lights, and then returning home and saying there was a fire.[61]

---

[53] Affidavit of Duane Glassco 5/17/2008 Exhibit 02
[54] Motion for new trial (P607-830) 3/16/1990, pages 731-762
[55] Ibid, pages 776-777
[56] Ibid, pages 792-794
[57] Glassco deposition exhibits 3 and 4
[58] Affidavit of Duane Glassco 5/17/2008 Exhibit 01
[59] Branigan Investigative Report - Exhibit 05 (P5825-5827) 6/23/2010 page 2
[60] Branigan Investigative Report - Exhibit 06 (P5823-5824) 9/13/2010 pages 2-3
[61] CPD Supplementary Report to #F-105-510 dated 1/18/1988 (CITY-KLUP_000567-571)

14

About a week and a half after Kluppelberg's arrest by Rolston and Schmitz, Gramont was interviewed again, this time by Area 3 Violent Crimes detectives William Foley and William Kelly. The "interview" does not indicate the actual date of the interview. ███████████ ████████████████ ███████████ the interview apparently took place on January 22, 1988. The detectives memorialized an oral statement allegedly made by her in a CPD Supplementary Report[63] with a submittal date of January 24, 1988. A copy of the report was routed to Bomb and Arson investigator Leonard Rolston. The 3-page report claims that the detectives (Foley and Kelley) had "re-interviewed" Gramont, and "…after apprising her of the facts and circumstances of this investigation…" she allegedly claimed that she had not originally told all of the facts and that she now wanted to tell everything. In the report, the detectives claim that Gramont described knowledge of Kluppelberg's involvement in the Lupercio/Hermitage fire. The report goes on to say that after the interview Gramont was taken to the office of ASA Bruce Rather (assigned to Bomb and Arson cases), and that she was then taken to testify in front of a grand jury. The detectives did not prepare and/or produce any signed written statement by Gramont.

Gramont's alleged oral and unrecorded statement given to Foley and Kelly (as well as the ASA's) contained glaring factual errors that could not have been true and/or conflicted with objective facts, known information, and other's statements.



---

[62] ██████████████████████████████████
[63] CPD Supplementary Report to #F-105-510 dated 1/24/1988 (JGS 3216)
[64] ██████████████████████████████████
██ ████████████████
██ ████████████████

15



.[67]

There are also other supporting references to corroborate that Gramont was coerced:

- Her testimony[68] at trial refuting her grand jury testimony;
- Her explanation[69] of the circumstances relating to her grand jury testimony;
- Her testimony[70] regarding her OPS complaint;
- Bonnie Hileman deposition[71] testimony;
- Her original statement to police, during the 1984 interview, which did not implicate James Kluppelberg in the fire;
- ███████████████████████████

From the time of initially learning of Gramont's claim that she had been forced to lie in front of the grand jury, ████████████████████████████████████████████████████████████████████████████████████████████

---

██████████[2]

[68] Transcript of Kluppelberg's trial dated 7/14/1989 (PL448-454)
[69] Ibid, (P475-477)
[70] Ibid, (P477)
[71] Bonnie Hileman deposition 5/14/2015, pages 83-86

### G. Donald Brittain (age 14 at time of Lupercio/Hermitage fire)

Detectives claim that Donald Brittain stated that he was with the Kluppelberg, Gramont, Glassco, and his sister, Michelle Brittain on the night of the fire, and that during that night Kluppelberg left the apartment once or twice and that he was carrying pliers. He couldn't remember if the streetlights were out, however. He remembered that Dawn Gramont and Kluppelberg had an argument earlier in the evening and said they were throwing pots and pans at each other. He stated that after Kluppelberg entered the apartment, he waited about 10 minutes and walked to the kitchen window and pulled back the curtains telling everyone "there's a fire". He confirmed that he and the other men assisted Gramont's landlord out of his building.

Donald Brittain was listed as a person to be interviewed in the supplementary report[76] that detectives Foley and Kelly produced to document their interview with Gramont.

Donald Brittain did not testify at Kluppelberg's criminal trial.

### H. Michelle Brittain (age 17 at time of Lupercio/Hermitage fire)

Detectives claim that Michelle Brittain stated that she was with Kluppelberg, Gramont, Glassco, and her brother, Donald Brittain on the night of the fire. According to the detectives' version, she remembered Kluppelberg leaving the apartment and then later returning. A few minutes later, she heard fire engines. Kluppelberg told the group that there was a fire. She stated that she immediately looked outside and observed a fire at 4448 South Hermitage with flames at least 20 feet high. Michelle stated to Kluppelberg "you act like you started that fire", and Kluppelberg just smiled at her. She stated that she did not remember whether the streetlights were off or on. She stated that the fire was just too big for someone to have come into the house without seeing it. She also stated that on the night of the fire she thinks Kluppelberg tried to get some board-up business.

At her deposition, however, Michelle Brittain testified that she had no information that Kluppelberg had ever set the fire at Hermitage and he had never told her that he had set the fire.[77] She further denied that she ever spoke to Kluppelberg about the fire or saw him smiling when discussing the fire.[78] She also expressly disavowed ever telling the police that: (a) Kluppelberg started the fire; (b) that she ever said to Kluppelberg that "you act like you started that fire;" (c) that Kluppelberg smiled at her when she said that; and (d) that she saw Kluppelberg trying to get some board up business that night.[79] Michelle Brittain said that when she spoke to the police about the fire they told her that Kluppelberg had been in jail before for starting fires and that Kluppelberg was responsible for the Hermitage fire.[80]

As such, Michelle Brittain's statement given to Foley and Kelly contained glaring factual

---

[76] ██████████████████████████████████████████

[77] Michelle Brittain Deposition (01/14/2015) page 7.

[78] Ibid 37, 39, 42

[79] Ibid 50-52, 55-57.

[80] Ibid 52-53.

errors that were not true and/or conflicted with objective facts, known information, and others' statements.

## I.   Battalion Chief William Alletto and Deputy Chief Frances Burns

Alletto and Burns related that they had occasion to conduct an investigation into the cause and origin of the fire that occurred at 448 South Hermitage Street on March 24, 1984.[81] They claimed that their investigation revealed that the fire was an incendiary fire and that this was evidenced by the volume and intensity of the fire, as well as the burn patterns found at the scene. The also stated that they eliminated any other cause of the fire and that the absence of any fire load and the volume and intensity and speed of the fire led then to the conclusion that this was an incendiary fire, arson. In conclusion they related that they were of the opinion that the point of origin was the rear 2/3rds of the first floor of the building located at 4448 So Hermitage Street. Alletto and Burns then turned over to the detectives a series of photographs taken the day of the fire, these photographs were of the scene and the victims as they appeared on the date of this incident.

Although the CPD Bomb and Arson investigation had clearly stated that the fatality fire did not indicate the presence of an accelerant[82], and because of the total destruction of the building no cause could be determined, questionable and unscientific statements were garnered from 2 fire officials (William Alletto and Frances Burns). Neither Alletto nor Burns were actually assigned to the fatality fire at the time. Nonetheless, they both provided oral statements 4 years later that claimed that they had observed burn patterns and that the fatality fire was the result of arson.

## II.   Background on City's File Creation, Maintenance and Preservation Policies

### A. Organization of Chicago Police Department in the 1980s

In 1980, the Bureau of Investigative Services in the CPD was reorganized.[83] The Bureau of Investigative Services housed the Detective Division (in addition to Organized Crime, Youth Division and an administrative section).[84]

As a result of the reorganization, the Detective Division was now split into six geographical areas (Areas One through Six) and two subject matters (*i.e.*, Violent Crimes, Property Crimes).[85] The geographical areas were consolidated into two Field Groups: Field Group South consisted of Areas 1, 2 and 3 and Field Group North consisted of Areas 4, 5 and 6.[86]

---

[81] CPD Supplementary Report to #F-105-510 dated 1/29/1988 (CITY-KLUP_000576-582)
[82] CPD #F-105-510 (CITY-KLUP_004367)
[83] Hickey 64. Unless otherwise noted, all references to Hickey are to his July 2014 deposition.
[84]  City Klup 2208
[85] Brezcek Test. P4530-31
[86] City Klup 2205-08

18

From January 1981 through 1988, the Bureau of Investigative Services was headed by a Deputy Superintendent.[87] The Detective Division was headed by a Chief; each Field Group was headed by a Deputy Chief; and each Area was headed by an Area Commander.[88]

In addition to the two Field Groups, the Detective Division also included a Special Activities Group. A Deputy Chief was in charge of Special Activities. Special Activities included Bomb & Arson, which was headed by a Commander.[89]

### B. Street Files

#### 1. Definition/Usage:

"Street files" – also referred to as "working files," "running files" or even "unit files" – were separate investigative files maintained by detectives in each area.[90] Street files were considered the personal property of the detectives working on the case. There was no formal place to keep a street file: some would be kept on tables, coat racks and some in filing cabinets or desk drawers.[91]

Street files were used by detectives to communicate steps taken, steps to be taken and the personal opinions of one detective to another.[92] The files contained notes, memos and bits of information on the case.[93] The files also contained "other Case and Supplementary Reports pertaining to non-related cases which are utilized in suspect elimination and identification."[94] Finally, the files contained victims' personal papers (e.g., a telephone book) or messages (e.g., telephone messages).[95]

The City's witness, James K. Hickey, testified that the practice of using working files existed at least since 1977 when he arrived at Area 1 homicide in August 1977.[96] Similarly, John Stibich testified at the *Palmer* hearing that when he was a commanding officer in Area 4 (from December 1974 to December 1977), Area 4 homicide had a practice of creating and using a working file.[97] Following Hickey's sampling of the various violent crimes units in 1982, Hickey determined that each of the Area violent crimes units used street files.[98]

---

[87] Hickey 49
[88] City Klup 2208
[89] Hickey 49; City Klup 2208
[90] Brady & Tolliver, P2458; Stibich Test. P4463
[91] Brady & Tolliver, P2458; Hickey 112
[92] Brady & Tolliver, P2458; Stibich Memo, P2455-56; Hickey 196-197, 214-18
[93] Brady & Tolliver, P2458-59; Stibich Memo, P2455-56; Stibich Test. P4499-4500; Hickey 163, 214-18
[94] Brady & Tolliver, P2459; Stibich Memo, P2455-56, Hickey, 164-66, 214-18
[95] Brady & Tolliver, P2459; Hickey 195
[96] Hickey 187
[97] Stibich Test. P4460-65
[98] Hickey 187, 219-20

## 2. The George Jones Prosecution

In 1981, 12 year-old Sheila Pointer was raped and bludgeoned to death; her 10 year-old brother Purvy was beaten unconscious in their homes.[99] George Jones – a senior at a nearby high school, editor of the school newspaper and nicknamed "Bookworm" – was ultimately arrested and prosecuted for the crime. During the CPD investigation of the Pointer murder, detectives learned numerous pieces of information that would have been exculpatory or impeaching of witnesses accusing Jones but each of which was placed in the street file and not disclosed to the prosecutor.[100]

In particular, one detective, Frank Laverty, documented information including that (1) Purvy told him there were two assailants and both were wearing stocking masks and (2) that there was strong evidence that someone other than Jones committed the crime.[101] Laverty had thought that the prosecution of Jones had been abandoned but in the Spring of 1992, Laverty read about it in the newspaper.[102] Laverty went to his Commander to tell him that an innocent person was being prosecuted, but got no response. He then went directly to Jones' criminal defense attorney and told the attorney about the street file. The State's Attorney then dropped all charges against Jones.[103] Rather than commend Laverty, he was charged with a disciplinary infraction for failing to advise the State's Attorney that he was going to testify for the defense, transferred out of the detective division, ostracized by his peers and given a series of menial tasks.

After the charges against him were dismissed, Jones filed a civil lawsuit. He was awarded a substantial amount in damages for the violation of his rights. Notably, among other things, the jury found that the City was liable to Jones for its custom of maintaining "street files" that were withheld from the State's Attorney and therefore unavailable as a source of exculpatory information.[104]

## 3. The Palmer Litigation

On April 16, 1982, shortly after Jones' prosecution, plaintiffs filed a class action seeking to prevent the use of street files.[105] Immediately following the filing, the plaintiffs moved for a temporary restraining order (TRO). A TRO was issued on April 20, 1982 and then amended on September 24, 1982 to require CPD to preserve all street files and documents formerly placed in street files.[106] The TRO was amended after allegations arose that the detectives were violating

---

[99] *Jones v. City of Chicago*, 856 F.2d 985, 988 (7th Circuit 1988)
[100] Ibid (at 988-991)
[101] Ibid (at 990-91)
[102] Ibid (at 991)
[103] Ibid. (at 991)
[104] Ibid. (at 995-96).
[105] *Palmer v. City of Chicago*, No. 82 C 2349 at P2648-69.
[106] Ibid (at P2649-50)

the letter and spirit of the initial TRO by keeping investigative writings and files as their personal property and therefore not subject to CPD control.[107]

Judge Shadur oversaw the preliminary injunction hearing. Judge Shadur found the following (among other things):

- CPD has never provided its detectives or other personnel with guidelines as to the extent to which Official Reports (which Judge Shadur defined as case reports, supplementary reports, closing reports, etc.) had to embody information in Unofficial Reports (defined as notes, witness interviews, Major Crime Worksheets, memoranda, etc.). In particular, Judge Shadur found that "Official Reports have sometimes been prepared from the perspective of what fits the preparer's concept of the crime, so they omit information that – though highly relevant and sometimes exculpatory of the defendant charged with the offense – the preparer does not deem 'pertinent'"[108]
- Existence of Unofficial Reports was well known throughout CPD. Files containing these Reports were referred to as "street files," "running files," "office files" or "working files."
- Not all potentially exculpatory information contained in the investigative materials is necessarily included in Official Reports. There has been and is no police rule, regulation, procedure or practice that specifically required all exculpatory information to be placed in Official Reports and transmitted to the Records Division for permanent retention.[109] Nor was or is there a satisfactory procedure for monitoring whether all exculpatory information is transmitted to Central Records.
- Prior to the *Palmer* litigation, the CPD responded to requests for documents as follows:
  - In response to a subpoena, CPD produced only Official Reports maintained at headquarters along with photographs and lab reports. CPD did not produce Unofficial Reports maintained at the Area or in the possession of individual detectives.[110]
  - In response to a defendant's discovery motion, Assistant State's Attorneys (ASAs) ordered by phone Official Reports. Records Division employees responded to these requests and made no effort to contact individual Areas or other units or divisions of the CPD for Unofficial Documents.[111]

Judge Shadur ruled that the exclusion of potentially exculpatory information from Official Reports "was not random or infrequent."[112] In fact, by the City's admission, there were over 300 street files at various Areas. Judge Shadur likewise found that the use of street files created a "grave risk" of non-disclosure of exculpatory information and granted the preliminary injunction.

---

[107] Ibid (P2650).
[108] Ibid P2652-53
[109] Ibid P2655
[110] Ibid P2657
[111] Ibid P2657
[112] Ibid P2658

On appeal, the Seventh Circuit reversed Judge Shadur in part, although it did order the CPD to preserve and produce street files for those plaintiffs who had been convicted of felonies.[113] It vacated the preliminary injunction in all other respects because the court either found that the plaintiffs lacked standing or should ask for relief in the state courts. It did not dispute the actual factual findings that Judge Shadur made.

### C. Chicago Police Department Response to the Problem of "Street Files"

#### 1. Teletype

Immediately after the courts issued a TRO in the *Palmer* litigation, on April 20, 1982, the CPD issued a teletype.[114] The teletype parroted the language of the TRO and stated that "the contents of all police department investigative files known as office, unit, or working files and sometimes referred to as 'street or running' files will be kept intact. No documents, materials, or notes shall be removed from these files."[115] As noted above, the Court later amended the language of the TRO when the plaintiffs claimed that detectives were maintaining investigative writings and files as their personal property to avoid the mandate of the TRO.

#### 2. Detective Division Notice 82-2

In addition, the CPD issued Detective Division Notice 82-2 on April 19, 1982.[116] This was the first written directive to the CPD on the subject of working files and only went out to the Detective Division.[117] As Hickey has explained, Notice 82-2 was "a quick and dirty document" designed to implement the TRO but was "not very workable".[118] The thrust of Notice 82-2 was preservation: it created a term called Unit Investigative File and mandated that Files had to be preserved. But Notice 82-2 was silent about what had to go into that File; it did not require detectives to put notes or memos into Unit Investigative Files; and it did not specify whether detectives had to preserve notes or memos that were not in the file.[119]

In fact, Commander Stibich explained that it was the prevailing view that if a detective kept his own personal notes or memos – or considered those to be his personal property – then those notes or memos did not have to be put in the file and detectives could do whatever they wanted with those notes or memos, including destroying them.[120] Based on this and other testimony, Judge Shadur found that the CPD response to Notice 82-2 was to apply the TRO in "an improperly restrictive and grudging manner, under which detectives could consider their investigative writings as their personal property (and thus not 'under Detective Division control') and therefore outside the preservation requirements of Notice 82-2."[121]

---

[113] *Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985); Special Order 83-2A at City Klup 4884.
[114] Hickey 201
[115] P2454
[116] P2450-52; Hickey 212
[117] Hickey 212
[118] Hickey 221, 224; Brzezcek Test. P4560
[119] P2450-52; Hickey 212-13
[120] Stibich Test. P4511-13
[121] P2658-59

### 3. Special Order 83-1

Detective Division Notice 82-2 was replaced by Special Order 83-1. Special Order 83-1 applied only to Violent Crimes field investigations.[122] According to Hickey, it covered Bomb and Arson was well as of January 13, 1983.[123] Special Order 83-1 defined certain terms and created procedures for documenting and preserving documents relating to an investigation. Special Order 83-1 defined the term "Investigative File" and created something called an Investigative File Case Folder to secure documents relating to a criminal investigation. According to the terms of Special Order 83-1, an Investigative File Case Folder was to be created either when certain categories of violent crimes occurred or when a violent crime investigation resulted in an arrest and approval of felony charges.[124] Special Order 83-1 also created an "Investigative File Inventory Sheet" to identify documents placed in the Investigative File.[125] Serving as an index, the Inventory Sheet was to be forwarded to the Records Division anytime felony charges were lodged.[126] Finally, Special Order 83-1 created General Progress Reports ("GPRs").[127] GPRs were to be used to write handwritten notes and memoranda.

Unlike Notice 82-2, Special Order 83-1 created an affirmative obligation for detectives to submit handwritten notes or investigative materials for review and inclusion in the investigative file. It also mandated that detectives transcribe relevant information previously recorded on a GPR, Major Incident Worksheet or other miscellaneous document on an official Department case report form (supplementary, general offense case reports).[128]

In reviewing Special Order 83-1, Judge Shadur identified several deficiencies with the Special Order, including:

- Unless the crime being investigated fit one of the categories identified in V(A)(1), a Violent Crime supervisor did not have to create an Investigative Case File Folder unless and until the offender was arrested and felony charges were approved. According to Judge Shadur, this continued to pose the same type of risk that information would not be retained and disclosed because there was nothing to prevent against selective retention he found.[129]
- Special Order 83-1 did not provide any guidance or mandate that detectives record all relevant investigative information in V(B).[130]
- Special Order 83-1 did not include information to ensure that any detective who has or receives information relating to a violent crime field investigation not assigned to him will forward the information to the assigned detective for investigation and inclusion in the Investigative File Case Folder[131]; and

---

[122] P2472-76
[123] Hickey 224, 243
[124] Special Order 83-1, V(A)(1) & (2)
[125] Special Order 83-1 IV(D)
[126] Special Order 83-1, IV(D)
[127] Special Order IV(E); Hickey 170
[128] Special Order V(B)(1) & (2), P2474-75
[129] P2663
[130] P2663
[131] P2664

23

- Special Order 83-1 omits any provision defining the CPD's duty or procedure in responding to a criminal subpoena or request by the State's Attorney to produce information relating to a criminal proceeding.[132]

### 4. Special Order 83-2

On May 2, 1982, Special Order 83-2 was issued. According to Hickey, Special Order 83-2 was designed to "tighten up on the procedures [in Special Order 83-1] and actually improve it where possible."[133] Three of the changes in Special Order 83-2 were (1) a requirement that detectives create records reflecting all relevant information, V(B)(1); (2) a requirement that where a detective receives information about another crime, he or she pass that information along to the detective investigating that other crime, V(B)(6); and (3) that a copy of the Investigative File Inventory Sheet will be transmitted to either the Office of Legal Affairs (in case of a subpoena from a criminal defendant) or the State's Attorney's Office (in case of a discovery motion) so that one copy of the Inventory Sheet is disclosed to defense counsel in a criminal case, V(B)(6).[134] Hickey also testified that one of the improvements of Special Order 83-2 was the creation of an Investigative File Control Card, IV(F).[135] This Control Card was supposed to act like a library card so that the Investigative File could be accounted for.

While Special Order 83-2 clarified some issues left unaddressed by 83-1, there were still liabilities in the failure to mandate certain actions. For example, there is nothing in the language of Special Order 83-2 about the content of supplementary reports; that is, what information you have to include in a supplementary report beyond that which is "relevant."[136] Relevance, is of course, subjective and as Commander Stibich testified, what is relevant to one detective may not be relevant to another.[137] In fact, Hickey testified that a detective would only have to put information in a supplemental report if the detective deemed it pertinent at the time that detective wrote the supplemental report – and not at the time that he received it.[138]

In addition, like its predecessors, Special Order 83-2 provided no guidance on how information should be communicated or documented when one detective learns something about a crime being investigated by another detective; or when one unit learns something about a crime that is also being investigated by another unit. While V(B)(6) codifies the obligation to "forward" information about a crime to the assigned detective, it does not require either detective – the detective passing along the information or the receiving detective – to create a document with the information.[139] Relatedly, Hickey testified that CPD policy did not require suspects who had been eliminated through investigative activity to be documented in any way.[140] Similarly, even where the detective passing along the information may have created a document

---

[132] P2664
[133] Hickey 228
[134] City_Klup_3149-53
[135] Hickey 228-29
[136] Hickey 238; Hickey [2015] 20
[137] Stibich P4517
[138] Hickey [2015] 24-25, 33
[139] Hickey 236-37
[140] Hickey 237-38

memorializing that information – *e.g.*, a memorandum or GPR – there is no requirement in Special Order 83-2 that that memorandum or GPR be distributed to other detectives or units investigating that crime.[141]

Finally, while the Investigative File Inventory Sheet is designed to be used as an index of documents in the file, that Sheet must be sent to records or distributed beyond the Area/Unit only if felony charges are placed IV(D); V(B)(6)). So in a case like Kluppelberg's, even if the policy were followed, the inventory for the 1984 Area 3 investigative file would not have been sent to Records in 1984 (although one should have been sent in 1988). In addition, if the Inventories only have to be filled out and sent at the issuance of charges – as opposed to filled out contemporaneously – there is a risk that documents will be left off the inventories that the detective no longer deems relevant or that are potentially harmful to the prosecution's case. That leaves far too much discretion to the individual detective on what to include once the investigative story is complete. Likewise, if any investigation is done after charges have been lodged, there is no provision in 83-2 to require the detective to fill out or send an additional copy of the updated inventory to Records. Finally, 83-2 was still limited to "violent crimes field investigations" so the inventory that was created would only include documents created or received by the Violent Crimes Unit (and since there were no provisions for sharing documents – Violent Crimes would potentially receive little else apart from official documents from the Crime Lab, Medical Examiner, etc.). As such, the inventory was a woefully inadequate document for ensuring that parties received notice of documents generated during a criminal investigation.

### 5. Special Order 86-3

Effective May 29, 1986, the CPD issued Special Order 86-3. Special Order 86-3 largely replicates its predecessor with some minor adjustments, most of which actually limited, rather than expanded, the safeguards for ensuring complete disclosures to prosecutors and defense attorneys. For example, it more explicitly limits the creation of Investigative File Case Folders to homicides and where felony charges have been approved; it eliminates the forwarding of the Investigative File Inventory Sheet to the Office of Legal Affairs or State's Attorney upon receipt of a criminal subpoena or discovery motion; it eliminates the requirement that handwritten notes or other investigative materials be submitted "promptly (normally at the end of each tour of duty)" and just states that they must be turned in; and modifies the retention schedule.

Special Order 86-3 creates VI, titled "Inspection." That section requires "[e]xempt members of the Detective Division" to "conduct periodic, unscheduled inspections of the subject files to ensure compliance." According to Stibich, however, even prior to Special Order 86-3 (or its prior iterations), supervisors were supposed to review files to make sure all pertinent information is included.[142] But he had no idea when, how often or in what manner such inspections were conducted. Likewise, the City has produced no documentation that any such inspections were ever conducted or how they could be conducted by exempt members with no knowledge of individual cases without spending a substantial amount of time reviewing files and

---

[141] Hickey [2015] 39, 43, 46
[142] Stibich Test. P4504-05

comparing documents. The City's Rule 30(b)(6) representative testified that no audits were done subsequent to Special Order 82-2.[143]

<h3 style="text-align:center">6. Standard Operating Procedures (SOP) 1988</h3>

In 1988, Chief of Detectives John Townsend wrote a Standard Operating Procedures. Chapter 18 deals with Investigative Files. Chapter 18 contains "no substantive changes of any kind" from Special Order 86-3.[144] Indeed, as Hickey explained, there are different schools of thought on whether to have Special Orders or one large manual and this SOP codifies for investigative files the policy that was already in place from Special Order 86-3.[145] It was not intended to effect a policy change.

## III.    Professional Homicide Investigation Standards

Homicide cases and investigations in police agencies across the United States are given priority and resources not normally provided to other types of investigations. More experienced, trained and knowledgeable detectives are assigned. Their investigations result in detailed documentation, commonly referred to as "murder books" in some jurisdictions. These investigative records provide a step by step record of all evidence gathered, all witnesses interviewed, statements taken, leads followed (whether productive or not), medical records, autopsy photographs and reports, photographs of the crime scene, wound descriptions, weapon (gun, bullet, shell, knife, vehicle, objects, etc.) analysis, chain of custody and evidence logs, vehicle impounds, search warrant applications and returns. It is not uncommon for a typical murder investigation to contain many hundreds (and often times thousands) of pages – even if there is thought to be a "known" suspect. There are well-established criteria and a broad range of literature for these practices. Relying entirely on a single "eyewitness" as a basis for police presenting a charge of homicide is an indication of an unprofessional homicide investigation.

Professional investigation and documentation are critically important for a number of reasons, some of which include but are not limited to:

- Case integrity
- Continuity of investigation
- Supervisory oversight
- Facilitation of case management
- Inclusion of investigative notes and investigators actions
- Ensuring thoroughness of the investigation
- Allowing other investigators to assist or replace initial investigators
- Providing a "paper trail" of what steps were taken (or not taken)
- Focusing on important aspects of the case
- Identifying what remains to be done and what has already been done and by whom
- Eliminating suspicion from some possible initial suspects
- Providing sufficient information to identify and arrest a suspect

---

[143] Hickey Dep 213.
[144] Hickey *Rivera*, pages 250-51
[145] Hickey 178-180; SOP, Chapter 18 at P6497-6502

- Providing insight for prosecutor considering charges
- Providing an objective basis for charging and trying the suspect
- Providing an objective basis for the court to determine challenges
- To have a single document for discovery and disclosure (Brady rule)

These standards were in place by 1984.

## IV.    Individual, Supervisory & Institutional Failures in Kluppelberg Investigation

The "investigation" of Kluppelberg by the Chicago Police Department, and the named defendants, including various police officers and supervisors employed by the City was: 1) conducted in such a manner that it necessarily produced the wrongful arrest, charging and conviction of James Kluppelberg, and/or; 2) was conducted in a manner so unprofessional and unconcerned about finding out what actually happened as to ensure the same outcomes. Even by the most forgiving of standards, practice, and criteria, the investigative documents of the Chicago Police Department in this matter were lacking any semblance of a professional and thorough investigation.

### Opinion #1: Detectives Rolston and Schmitz Unlawfully Coerced a Confession From Mr. Kluppelberg

I have learned through my professional experience that false or coerced confessions are obtained - intentionally or inadvertently - in a three-step process. First, investigators misclassify an innocent person as guilty; they next subject him to a guilt-presumptive, accusatory interrogation that invariably involves lies about evidence and often the repeated use of implicit and explicit promises and threats as well; and then, once the investigator has elicited a false admission, they pressure the suspect to provide a post admission narrative that they jointly shape, often supplying the innocent suspect with the (public and nonpublic) facts of the crime. These have been referred to as the misclassification error, the coercion error, and the contamination error.[146]

A closer examination of the purported "confession" of Kluppelberg to the Lupercio/Hermitage fire highlights for me the way in which these errors occurred in this case, as well as the statements of Glassco and Gramont. In this particular case, the misclassification error is simply put, the investigators at once deciding, without any objective or scientific evidence, that Kluppelberg was guilty. The coercion error consists of the extended, unprofessional interrogations where the detectives proceeded to utilize coercive techniques that eventually left the individuals in this case to feel that they had no alternative but to either falsely confess, or give false testimony regarding Kluppelberg. The contamination error involved the detectives pressuring each individual to finally agree to a particular scenario by offering specific information about the fire and the activities surrounding them.

Mr. Kluppelberg was one among a number of people who was coerced into giving a false confession at Area 3. A 1990 review by the City was initiated and concluded that there was

---

[146] Garrett B: Judging innocence. Colum L Rev 108:55–142 (2008); Leo R: Police Interrogation and American Justice. Harvard University Press (2008).

27

systematic abuse and torture of at least 118 detainees between 1971 and 1982 in Areas 2 & 3.[147] The investigation detailed specific instances involving "shocking", "hanging", and "bagging" of detainees.

*"In the matter of alleged physical abuse, the preponderance of the evidence is that abuse did occur and that it was systematic. The time span involved covers more than ten years. The type of abuse described was not limited to the usual beating, but went into such esoteric areas as psychological techniques and planned torture. The evidence presented by some individuals convinced juries and appellate courts that personnel assigned to Area 2 engaged in methodical abuse.*

*The number of incidents in which an Area 2 command member is identified as an accused can lead to only one conclusion. Particular command members were aware of the systematic abuse and perpetuated it either by actively participating in same or failing to take any action to bring it to an end. This conclusion is also supported by the number of incidents in which the Area 2 offices are named as the location of the abuse."*[148]

The review and investigation was supported and endorsed by the Chief Administrator of the Office of Professional Standards, and forwarded to the Superintendent of the Chicago Police Department.[149] The transmittal memorandum to the Superintendent concludes by stating:

*"Both investigators have done a masterful job of marshalling the facts in this intensive and extensive project and their conclusions are compelling."*[150]

Like the allegations in the 1990 review, here, Kluppelberg was physically coerced into giving a false confession: He was beaten so badly that he was later urinating blood. Using physical abuse to secure a confession is not only contrary to professional standards, but also unlikely to produce a reliable or factually accurate statement. Indeed, here, the "facts" in Kluppelberg's confession were physically impossible or contrary to the evidence. For example, as Dr. Ogle has explained, the fire could not have started in the front room as Kluppelberg confessed. Nor does Kluppelberg's confession explain in any way how he would have gotten into a locked back door to set the fire.

Finally, the detectives' claims that he spontaneously volunteered a confession to this fire years later is further undermined by the fact that when Kluppelberg was interviewed under non-coercive settings in 1984, he was willing to answer all questions and did not implicate himself in any way in the fire. He was interviewed by both O'Donnell and Rolston in 1984, but released without any charges being filed against him.[151]

---

[147] History of Allegations of Misconduct By Area 2 Personnel – Chicago Police Department, Sanders-Goldston (1990) P007167-P007278

[148] Ibid, page P007172

[149] Ibid, page P007167

[150] Ibid, page P007167

[151] Rolston Testimony P285; Rolston Dep, page 215

Based on the foregoing, the conduct of Rolston and Schmitz is not consistent with what a reasonable police officer would have done. No reasonable police officer would have coerced Kluppelberg into giving a false confession and sought permission for felony murder and arson charges based on that coerced confession. Likewise, and as described more fully below, no reasonable police officer would have coerced Dawn Gramont and relied on that false, coerced statement to seek felony charges. Finally, reasonable police practices would have involved scrutinizing Glassco's statements heavily, in light of his numerous vulnerabilities as a witness, and seeking out reliable corroborating evidence before relying on it as evidence of guilt.

**Opinion #2: It was Improper for the Defendants to Coerce Dawn Gramont**

In addition to coercing Kluppelberg, I reviewed evidence in this case that Gramont alleged that she was also coerced. In particular, Gramont alleged that Detective Foley threatened her and her children at the police facility and then shoved and struck her at the ASAs office.

It is improper to threaten and physically assault a witness. Any detective in 1988 would have known as much. Doing so not only undermines the veracity of the witness' information, but also the entire investigation. If detectives need to resort to coercion to corroborate evidence that their suspect committed a crime, then they are not conducting a proper investigation.

In addition, Gramont alleged that Foley told her in detail what she was going to say in front of the Grand Jury to implicate Kluppelberg. It is also improper to feed a witness information and fabricate their testimony. This is against all basic policing standards.



As noted above, Gramont's coerced statement included facts later objectively proven as false, and they also included bizarre and implausible facts such as that James Kluppelberg climbed up the street light pole to disconnect it.

**Opinion #3: The Detectives in 1988 Failed to Follow-Up on Leads From 1984**

The original finding of the cause of the Lupercio/Hermitage fire was appropriately classified as "noncriminal" and "apparent accidental" deaths. However, when detectives decided to re-open a closed case it was professionally and legally incumbent on them to consider at least the other 8 possible suspects, not just Kluppelberg. Based on the original (1984) records they included:

---

[152] Goldston/Sanders Report, P7167-7264 (finding systemic pattern of abuse notwithstanding numerous unfounded or not sustained OPS complaints).

- Isabel Ramos[153]
- Richard Shields[154]
- Oscar Siller[155]
- Ricardo Rodriguez[156]
- Nain Saadeh[157]
- Abda Kater[158]
- Steven Slepawic[159]
- Unknown Arab youth[160]

It is particularly important in investigating cold cases to at least consider suspects that have been previously identified. In fact, one of the first things the defendants should have done is review the written record that was created in 1984. That would have led them to identify these individuals.

They also failed to investigate further the witness statements indicating that there were accidental causes of the fire, such as dangerous wiring.

In this case, the detectives handling the case in 1988 testified that they would have searched for and reviewed all available documentation from the 1984 investigation into the case. The New File would have been available to them because depositions and documentation indicate that it was still at Area 3 when the detectives re-investigated the case.[161] There is certainly no evidence that the New File was removed from Area 3 at any time prior to James Kluppelberg's prosecution, and in fact, it is likely that the New File remained at Area 3 until the area closed in 1992 and all of its boxes were shipped to the records division for storage.

As a result, the failure to conduct any meaningful investigation into any of these individuals or alternate causes upon re-opening the case was improper. Likewise, the failure to disclose the identities of any of these potential alternative leads or suspects to the prosecutor was also improper.

**Opinion #4: The Defendants Failed to Fully and Properly Document and/or Record Their Investigation**

Throughout the investigation, the Defendants failed to fully and properly document and/or record their investigation. Those failures included the following:

---

[153] "new file" (CITY-KLUP_004358-4364)

[154] "new file" (CITY-KLUP_004314)

[155] CPD Supplementary Report to #F-105-510 dated 4/10/1984 (CITY-KLUP_000560-561)

[156] CPD Supplementary Report to #F-105-510 dated 4/4/1984 (CITY-KLUP_000557-559)

[157] "new file" (CITY-KLUP_004347)

[158] "new file" (CITY-KLUP_004350)

[159] "new file" (CITY-KLUP_004355-4356)

[160] "new file" (CITY-KLUP_004354)

[161] Michael Colander deposition, (6/24/2015) pages 29-30 and 44; Andrew Robertson Deposition (6/25/2015) pages 32-34; Joseph Perfetti deposition (6/11/2015) pages 90-93; Janet McCarthy Deposition (12/09/2015) pages 53-54, 62-63; Rolston Test. at Pretrial P301

30

- Failure to fully and properly conduct, document, and/or record interviews
- Missing and merging of investigative dialogue often precludes ability to actually know which officer (who) did what, when, where, how and why
- Failure to accurately (if at all) identify dates, times, locations, and individuals present for significant events (statements, investigatory actions, etc.)
- Investigative "tunnel vision" by Rolston and others
- No signed or recorded Miranda warnings
- No documentation of Kluppelberg's or "witnesses" statements, either audio, visual, or written
- Reliance on witness as sole evidence in investigation, arrest and charging
- Failure to examine, document, and photograph "line of sight" positions and angles
- Virtually no chronological documentation of investigative steps taken
- No review or retention of incoming 911 call recording(s)
- No review or retention of dispatch or responding unit call recordings
- No signed and sworn statements by the investigating officers
- Missing and merging of investigative dialogue often precludes ability to actually know which officer (who) did what, when, where, how and why
- Failure to document removal and use of investigative notebook ("green card")
- Failure to maintain and complete investigation contents ("yellow card)

In addition to those very basic failures, the Defendants also failed to include in supplementary reports and therefore, in the permanent retention file or in the 1988 Area 3 investigative file, information about other crimes that might be related, or even other possible suspects, which the Defendants allegedly eliminated. This includes no documentation that:

- Detective Micek told B&A detectives working on the Hermitage investigation that Ramos said she may have set other fires but she was too drunk to remember. This information was not memorialized in any supplemental or other report in any file relating to the Hermitage Fire investigation. Defendant Micek testified that he would have disclosed this information to both B&A detectives working on the Hermitage fire as well as the Area 3 detectives investigating the Hermitage fire.[162]

- The Defendants were aware of two other fires close in time and proximity to the Hermitage fire: the "Ramos" fire at 4504 S. Marshfield and the "Slepawic" fire at 1840 W 46th Street. No documentation of these fires was included in a supplemental report or other document in the permanent retention file or 1988 A3 Hermitage Fire files.

- Supplementary reports expressly omitted critical information contained in the handwritten notes about the case. For example, Detective Tuider's closing report did not contain any information contained in Dets. Smith and Brankin's internal memo to him.

---

[162] Wayne Micek Deposition (06/10/2015) pages 27, 29-30, 48-49, 58-59.

Police files should include information about alternative suspects or information about how certain suspect's were allegedly eliminated. That is particularly true in case like Kluppelberg where one of the suspects does not deny that she may have set the fire at 4448 S. Hermitage, but simply said she was too drunk to remember. That information was exculpatory. The fact that the Defendants alleged that they discounted it for inexplicable reasons (which are not documented in the police file) does not make it less exculpatory or eliminate the duty to document and communicate that information in the Hermitage file.

Similarly, the Defendants failure to include information that Minerva Harast provided the detectives about the dangerous wiring in the basement in any supplementary report or on an official form was improper. That is because by failing to put that information into a supplementary report or on an official police form the Defendants failed to ensure that it would be retained and disclosed to the prosecution. In fact, in this case what was disclosed to the prosecution regarding Minerva Harast was misleading: In Detective Tuider's report, he stated that Harast knew nothing, when in fact she knew about the dangerous wiring – a potential source of an electrical fire.[163] He was apparently never reprimanded for this mischaracterization. And, actually, his decision to handle the Harast statement by omitting and misrepresenting it in the supplementary report was made possible by the inadequate special orders put into effect after the street files litigation.

**Opinion #5: The Defendants Failed to Follow-Up on and Attempt to Corroborate Duane Glassco's Statement**

Duane Glassco gave his statement, grand jury testimony, and testimony at trial in exchange for what appear to be two deals: one on his possession of a stolen motor vehicle burglary charge in 1988 and another on his violation of probation in 1989.[164] Whenever a witness is getting a benefit in exchange for his testimony, the police need to be very careful in analyzing whether what he or she is saying is true and can be corroborated. That is no less true for Duane Glassco.

It is also apparent that when a witness is giving a statement about a crime years later, the police must be careful to corroborate it as memories can fade over the years and it raises a red flag about why the information was not communicated sooner.

Instead of doing follow up to determine whether Glassco's statement could be corroborated, the Defendants coerced a statement out of Dawn Gramont and a false confession out of James Kluppelberg.

Had the Defendants instead done even a cursory investigation, they would have figured out that what Glassco was saying was physically impossible; that is, that you could not see the back door of 4448 S. Hermitage from the attic window at 1748 W. 45th Street. In fact, even visiting the scene – which would be ordinary protocol in a cold case investigation – would have shown them as much. So would talking to Charles Petrosus or any of the other persons who lived

---

[163] Dr. Russell Ogle Expert Report (Aug. 3, 2015)
[164] Theodore Adams Expert Report (Aug. 3, 2015); Glassco Trial Testimony, at P497-498, 545-548

in the area at the time of the fire. The inability to see the back door should have in turn raised red flags about what Glassco was saying and the truth of what he was alleging.

In addition, according to Defendant Rolston's testimony during pretrial motion hearings, the 1984 arson worksheet had Glassco's name on it. The detectives were interviewing a lot of people in 1984, and very likely interviewed Glassco. Had Glassco said anything inculpating Kluppelberg (or even anything of value), the detectives would have documented it. But no such documentation exists.

The detectives' failure to do this basic investigation was improper. It demonstrates not only a lack of appropriate follow-up, but also tunnel vision in seeking out the conviction of Kluppelberg.

**Opinion #6: The Defendants Failed to Disclose Exculpatory and Impeaching Information**

In 1988 and 1989 (and in 1984), the police were aware of their duties to disclose exculpatory and impeaching information. That was a basic police requirement.

Here, the Defendants failed to comply with that requirement. In particular, Defendants Rolston and Kelly failed to disclose: (a) the New File; (b) information about Isabel Ramos and in particular, the statement that she may have set additional fires but was too drunk to remember; (c) the information that Minerva Harast provided to the police about dangerous wiring; (d) the names of other alternate suspects contained in the New File; and (d) any notes that Burns allegedly took.

All of that information should have been turned over because it would not only have been relevant to the case, but also exculpatory and/or impeaching.

For example, in the New File, there was evidence of potential alternative perpetrators: Not only did the New File discuss Isabel Ramos, but it also discussed individuals named: Abda Kater and Nain Saadeh, who had arguments with the Lupercio/Hermitage fire victims; and Steven Slepawic who was arrested for an arson at 1840 W. 46th Street. Information about alternative suspects should be routinely turned over because it is exculpatory. Similarly, Ramos' statement that she may have set other fires but was too drunk to remember was obviously exculpatory and should have been turned over to the prosecutor as a matter of course. Because Ramos was credibly linked to a nearby fire, said she may have set other fires, and was not able to deny responsibility for the fire, her identity and statements were particularly valuable and may have been introduced as credible, non-speculative evidence of an alternate suspect.

There was also evidence in the New File that would have impeached Burns' trial testimony that he eliminated all electrical causes of the fire. The same would be true of any notes that Burns took at 4448 S. Hermitage.

The fact that the New File was not turned over can be explained in part because it fit all of the criteria of a "street file." As described above, "street files," alternatively called "working files" or "running files," were files that were kept by the detectives and not disclosed to the prosecutors. According to the Department, street files typically included "various notes, memos

33

and bits of information on the case . . . which are used to communicate steps taken, steps to be taken, and personal opinions of one Detective to another."[165]

In particular, "the main component of a 'Street File' is the memorandum sheet or 'memo.'"[166] "Additionally, the 'Street Files' contain other case and supplementary reports pertaining to non-related cases which are utilized in suspect elimination and identification."[167] "Personal notes of the Detectives, used to compile the investigation, are also inserted into the 'Street File.'"[168]

Street files were used "[a]s a forum for different detectives to give their respective view points, opinions, conjectures, suppositions and 'gut feelings'"; to document "the [*sic*] creditability of witnesses and/or suspects;" to document "[a] listing of leads undertaken (sometimes false) (not included in official reports); to document "[a] listing of information which later proves to be erroneous or given to detectives for self-serving purposes;" and "to document "[a] listing of information that later proves to be worthless and does not become an integral part of the investigation/court presentation."[169]

Based on CPD's own definition of a "street file," I opine that the New File was a street file. It contained "Case and Supplementary Reports" pertaining to both Isabel Ramos and Steven Slepawic: two other suspects who were reportedly identified and eliminated. It also included the identification of suspects Abda Kater and Nain Saadeh. Further, the New File contained personal notes of the Detectives, including notes relating to Minerva Harast and the extension cords all over the basement. Finally, it contained at least two memoranda relating to the case, which demonstrated some of the steps taken and to be taken. None of these documents were included in the files that were disclosed to the prosecutor nor was any of this information put into a supplementary report and thereby made part of the permanent retention file. In short, it was all kept secret, just as a street file would be.

That failure to disclose the New File or even the information in it was particularly troubling for two reasons: (1) as discussed above, it would have been available to Area 3 detectives re-investigating the case in 1988 and the detectives doing the 1988 investigation would have reviewed it if it was available; and (2) even apart from the New File, the information contained therein – particularly about Isabel Ramos – would have been available to B&A detectives re-investigating the Hermitage fire in 1988.

As to point (1), Detective Kelly testified that when he investigated the case in 1988 he would have gone and looked for any documents on the case – that would include viewing the Area investigative file, ordering the Records Division file, and seeking out the old investigative file.[170] That is expected and understandable, as detectives handling homicide cases will seek to familiarize themselves with the investigation that occurred on the case, what evidence and witnesses were gathered, what suspects were eliminated, what leads were not followed up on,

---

[165] Memo to Raymond Clark from Sgt. Thomas Brady, at P2457-58

[166] Memo to Raymond Clark from Sgt. Thomas Brady, at P2459.

[167] Ibid

[168] Ibid

[169] Memo to Raymond Clark from John Stibitch, at P2455. P2455-56

[170] Kelly Dep. [2015] pages 28-30

etc. I am aware that the City of Chicago is claiming that the New File would have been removed from Area 3 prior to 1988. However, I do not believe this is the case. There is no evidence in the record to support that claim, such as disposal applications, disposal certificates, or any label that the file or the box contained it were marked for destruction. As a matter of standard police procedure, records from a criminal investigation would not simply be destroyed without careful procedures being followed. It is a serious business to destroy police records, even pursuant to retention schedules, and departments have rules to follow, such as ensuring that the applicable state records commission authorized the scheduled destruction, that the file is appropriate labeled prior to destruction, and that someone has reviewed the file and confirmed that it should be purged. There is testimony that Area 3 kept closed files in its office.[171] It also appears that investigative files regarding violent crimes investigations were not normally purged.[172] The RD file for this case was not subject to permanent retention until it was re-classified in 1988 as a homicide, and yet the department did not take any steps to purge the RD file between 1984 and 1988, which further indicates that there was no routine purging that affected the records pertaining to the Hermitage fire investigation.

There is other evidence that the Area 3 detectives investigating the fire in 1988 obtained recordsf beyond what was in the Records Division file. The Area 3 file that was produced in this litigation, which was identified as being from the 1988 investigation, contains police reports from 1984 that do not bear the "permanent retention" or "records division" stamps on them, which indicates that these copies did not come from the permanent retention file. For instance, the copies of the reports by Detectives Urbon and Jenkins in the Area 3 file contain only a "Bomb & Arson" stamp on them.

The record strongly indicates that Kelly and his partner Foley had access to the documents in the New File.

With regard to point (2), Detective Rolston testified during Kluppelberg's pretrial proceedings that he had done work on the fire in 1984.[173] He further testified that he reviewed some reports from 1984 around the time he questioned Kluppelberg in 1988 – including the we-tip report, which is not in the permanent retention file and was created in 1984.[174] In addition, Rolston testified to having reviewed in 1988 three pages of notes from B&A Detective O'Donnell and Stan Cerdaj; those also would not have been the type of document to be a part of a unit RD or permanent retention file and in fact are not in the permanent retention file for the Hermitage fire.[175] Finally, Rolston would have known about Isabel Ramos in 1984, when he was working on the Hermitage case. This is because the Hermitage fire was a major investigation in 1984, and much of the department was at one point or another working on it.[176] Rolston testified at the suppression hearing that he canvassed the neighborhood looking for information.[177] The detectives in Bomb & Arson were well aware that a woman had been brought to the station as a

---

[171] McCarthy Dep 113
[172] Colander Dep 39; Robertson Dep 66; McCarthy Dep 165-166
[173] P272
[174] P285-86
[175] P295
[176] P272
[177] P303

suspected serial arsonist, to be interviewed about the Hermitage fire and the other area fires.[178] It is reasonable to infer that Rolston – when re-investigating the Hermitage fire in 1988 –had access to whatever investigative file B&A created in 1984.[179]

The City has not produced in this litigation any investigative file for Bomb & Arson.

According to Detective Micek, that file should and would have included information about Isabel Ramos. Micek testified that he would have told B&A detectives investigating the Hermitage Fire about Ms. Ramos and the information that she provided to him.[180] There is no reason, therefore, why this information was not disclosed to the prosecutor.

**Opinion #7: Failure to Attempt to Resolve Differences Between B&A and Office of Fire Investigations (OFI) Regarding the Cause and Origin of the Fire**

When the Hermitage Fire was originally investigated in 1984, the B&A Unit – who was in charge of conducting that investigation – found that the cause of the fire could not be determined due to the total destruction of the building. In addition, the B&A found that there was no sign of an accelerant used.

Four years later, B&A was still in charge of making cause determinations. Nonetheless, when the Hermitage fire was re-investigated in 1988, instead of relying on B&A for that cause determination, the Defendants sought out OFI. This was particularly strange because Defendant Rolston had been part of the B&A team that investigated the Hermitage Fire in 1984 (and determined that the cause and origin could not be determined). It was also strange because it appeared that B&A and OFI had a strained relationship, as both were covering the same turf. B&A thought that OFI was quick to find a fire incendiary; and OFI thought that B&A was ruling too many fires undetermined.[181]

Moreover, I saw nothing in the materials I reviewed that suggested that B&A and OFI ever tried to resolve the differences in their cause determinations. According to OFI's policies, whenever there was a dispute between OFI and B&A about a cause and origin determination, the two units were supposed to meet so that they could reach a mutual agreement.[182] No such discussion occurred here. Rather, B&A (Rolston) simply accepted OFI''s contrary conclusion notwithstanding the fact that he – as part of the B&A 1984 Hermitage team – had reached a contrary finding four years earlier. There was no new evidence in 1988 that would have enabled OFI to reach a contrary determination about the cause of the fire without being in direct conflict with what the 1984 Hermitage team found: in fact, the burn patterns were all apparent and available to the B&A detectives at the scene in 1984. Failing to try to account for these differing conclusions was in error – especially because B&A and not OFI was in charge in 1984.

---

[178] Micek Dep at 58-59
[179] P301
[180] Micek Dep 58-59
[181] Alletto Dep 73-75
[182] Memo, April 18 1986: JGS 7012-7018

**Summary: Officers' deficiencies in this investigation include, but are not limited to:**

- incomplete and misleading reports
- Failure to complete necessary reports
- Intentional and willful actions reflective of "tunnel vision" against the criminal defendant
- Intentional and willful omissions designed to protect the case that the detectives were building
- Bogus documentation
- Criminal conspiracy

No explanation or justification was given for the lack of continuity in this homicide investigation. Bomb and Arson detectives began the investigation, but it was soon being investigated by Violent Crime detectives. There was no supervisory oversight, other than signing documents. Detectives exchanged information but there did not appear to be any coordination of these efforts, nor any policy requiring that information be stored in each area's investigative files or across relevant RD numbers.

The defendants will undoubtedly claim that any "minor" oversights, inconsistencies, or mistakes were unimportant. The truth of the matter remains that they create a cumulative portrait on either incompetence or malice. Any reviewing supervisor should have immediately noted the telltale signs of such.

There exists a broad range of literature, accepted policies and practices, and professional references that accentuate many of these shortcomings. A small sampling of organizations involved with these efforts includes, but is not limited to:

- International Association of Chiefs of Police (IACP)
- Police Executive Research Forum (PERF)
- National Sheriffs' Association (NSA)
- Commission on Accreditation for Law Enforcement Agencies (CALEA)
- National Institute of Justice (NU)
- Americans for Effective Law Enforcement (AELE)
- Bureau of Justice Assistance (BJA) o Program Evaluation
- Community Oriented Policing Services (COPS)
- Municipal Services and Research Center (MSRC)
- Police and Law Enforcement Performance Standards and Levels of Service
- National Security Standards (NSS - previously the Law Enforcement Standards Office)

## V. The Role of the Chicago Police Department

In my opinion the City of Chicago and the Chicago Police Department have demonstrated the following deficiencies in this specific case, as well as across similar cases such that the deficiencies amount to a pattern and practice:

- Failure to establish clear and unequivocal standards for investigations
- Failure to apply standards department wide for all divisions and units
- Deficient policies and practices
- Failure to investigate
- Failure to train
- Failure to supervise
- Failure to track and monitor
- Failure to discipline

Each will be discussed in more detail below.


## Opinion #8: Failure to Train on Homicide Investigations

Training is one of the most important responsibilities in any law enforcement agency. Among other things, training serves a number of basic objectives:

- Well-trained personnel are better prepared to act professionally and correctly
- Training results in greater efficiency and effectiveness
- Training encourages agency internal cooperation and compliance with policies
- Ensures appropriate police actions
- Provides safeguards for being legally accountable for actions of personnel relative to:
    - Individual rights
    - Evidence control
    - Brady disclosure
    - Documentation
    - Investigation integrity

The officers involved in the arrest and prosecution of Kluppelberg were not provided with the training necessary for their duties and responsibilities. Of all the defendants, only Ptak's record shows that he actually attended a homicide investigation class, and that was in 1969. He is also credited with a homicide investigation "in-service" training in 1980. However Ptak was only peripherally involved in 1988 by way of producing a dubious and non-investigatory supplementary report.[183] Of the remaining officers, only Jenkins' and Vega's records list credit for an "in service" homicide investigation class in 1984. Neither Rolston nor Schmitz had any recognized homicide investigation training.

In particular, detective Rolston acknowledged in his deposition that he had only been involved in only a few (1-3) prolonged investigations while he was an arson investigator[184] over a 12-year period.[185]

---

[183] CPD Supplementary Report to #F-105-510 dated 3/24/1988 (CITY-KLUP_000583-584)
[184] Rolston deposition 5/8/2015, pages 110-111
[185] Ibid, page 120

Similar to other state and agency standards, the Illinois Law Enforcement Training and Standards Board rules, Sec. 10.11 (50 ILCS 705110.11), states:

> *"Training; death and homicide investigation. The Illinois Law Enforcement Training and Standards Board shall conduct or approve a training program in death and homicide investigation for the training of law enforcement officers of local government agencies and coroners. Only law enforcement officers and coroners who successfully complete the training program may be assigned as lead investigators in death and homicide investigations and coroner's investigations, respectively. Satisfactory completion of the training program shall be evidenced by a certificate issued to the law enforcement officer or coroner by the Illinois Law Enforcement Training and Standards Board."*

Although this Illinois standard may or may not have been in place at the time, a review of the detectives' training records suggests that no such certificate was ever issued to the detectives in this case by the Illinois Law Enforcement Training and Standards Board, as required by Illinois law. Also, based on the detectives' descriptions of their training from their depositions, it appears that little, if any, specialized (as opposed to "on the job") homicide investigation training was ever provided to them prior to their undertaking the murder investigation in this case.

In 1984, and 1988, the need for such training would have been obvious, as would the fact that the failure to do so would lead to egregious errors. That is particularly true because without any formal training, the only training that detectives would get would be on-the-job training from other detectives who themselves had had no formal training; in other words, they would just be learning and then repeating the mistakes of their predecessors.

**Opinion #9: Failure to Supervise and Intervene**

In this case, supervisors failed to actively monitor, review, direct and control the unfolding re-opening of the "investigation" of the Lupercio/Hermitage fire being conducted by multiple organizational units under their respective CPD commands (including involvement of the Chicago Fire Department, although in a quasi-official capacity).

CPD's supervisors and leadership knew, or should have known, of the improper and unacceptable methods of practices of their detectives in general, and of these specific detectives at issue in this case in particular. These supervisors failed to intervene, control, cause to cease, restrain, correctively train, or otherwise cause the misconduct to cease.

Three practices stand out in particular: First, the failure to require the detectives to put any information about Ramos or Harast into a supplementary report that would become part of the file. According to the Special Orders, the detectives were required to transcribe from memoranda or handwritten notes information that was relevant onto a supplementary report. There can be no legitimate dispute that information that someone else may have set the fire or that there may have been an alternative cause of the fire was relevant within the meaning of the

39

Special Orders. Yet, at no time did a supervisor request that this information be put onto a supplemental report.

Second, Sergeant Olivieri was the same Bomb and Arson sergeant overseeing both the Hermitage and Marshfield fires. At a minimum, Sergeant Olivieri should have put Detective Micek's report regarding Isabel Ramos' oral statement into the file for the Hermitage fire. This is particularly so because according to the detectives' testimony – and in particular, Rolston's testimony during Kluppelberg's pretrial proceedings – the B&A investigation of the Hermitage Fire was never closed. Sergeant Olivieri should have also had B&A detectives investigating the Hermitage fire write a supplementary report about Micek's conversation with Ramos and her confession that she may have set other fires, since Hickey testified that a supplementary report with a different RD number would never go into the permanent retention file. By having the detectives write up a separate supplementary report under the Hermitage fire RD number, the information would be sure to end up in the RD file for the Hermitage fire.

Third, there was no discipline and oversight of Detective Rolston during the time that Kluppelberg was fighting against the murder and arson charges. Rolston had 11 CR files lodged against him including:

- CR 1021145: CR alleging that Rolston threatened to kill a civilian
- CR 195704: CR alleging that Rolston failed to submit a supplementary report for an arson to which he was assigned and failed to interview a victim or seek out witnesses. This CR was sustained.
- CR 172573: CR alleging that Rolston conducted a warrantless search and physically assaulted and threatened complainant and her daughter;
- CR 205961: CR alleging that Rolston filed a false report. This CR was sustained.
- CR 231334: CR alleging that Rolston coerced complainant's son into signing a false confession by physically assaulting him with a shock device and giving him a black eye
- CR 243166: CR alleging that Rolston physically assaulted a suspect, including punching in the chest and pushing up against a wall, and denied suspect his right to an attorney
- CR 254170: CR alleging that during an interrogation, Rolston choked, pointed a gun, grabbed a suspect's arm and threw him to the floor and denied suspect medical attention.
- CR 268507: CR alleging that Rolston wrote out a false report. This CR was sustained.
- CR 293963: CR alleging that Rolston falsely arrested a suspect and coerced him into singing a false confession. Note: In this CR, Rolston stated that he did not remember the incident due to an ongoing medical condition, which impacts his memory.

These CRs demonstrate that Rolston had a repeated pattern of assaulting suspects and witnesses and filing false reports. While he was disciplined on three occasions, he should have been subject to much stronger and more aggressive corrective action. This is particularly true in light of the seriousness of the allegations against him – including physically assaulting suspects as he did with Kluppelberg, failing to submit a supplementary report, and writing false reports.

Failing to impose sufficient discipline will lead detectives to believe that they can commit additional misconduct without facing real consequences.

**Opinion #10: The City's Practice of Keeping Parallel "Street Files" Is Improper**

The practice of street files as described above was extremely problematic. It meant that detectives kept parallel files in their possession or in the Area that had different documents and potentially different information in them. As demonstrated by the Jones and Palmer litigation, that information could be highly exculpatory or at a minimum, impeaching and therefore was required to be disclosed to the criminal defendant. By keeping a separate set of files over which the CPD had insufficient control, there was no guarantee that information would be turned over to the prosecutor, and therefore turned over to the defendant. To the contrary, Judge Shadur found that the parallel file system was creating a "grave risk" of non-disclosure.

It is also worth noting that according to testimony of both Stibich and Hickey, the practice of using street files appears to have been entrenched within the Department. Stibich testified that the practice existed when he started at Area 4 in 1974, and Hickey testified that it was in existence in 1977 when he started at Area 1. As Hickey explained, the mindset was not to turn over notes, and not to put certain investigative materials in the working file into the Records Division file.[186] When Hickey conducted his sampling of files at the Areas, he found that all of the Areas had a practice of using a working file and not retaining that file.[187] In fact, Hickey testified that the practice of using street files was a citywide practice and that street files were used on a regular basis.[188] For that reason, perhaps, Judge Shadur found that the street files practice was not infrequent or irregular.

I have become professionally familiar with these issues in my examination of this and other cases in which I have been retained. Although regularly put on notice through lawsuits and depositions, the CPD has made only superficial attempts to resolve the street files problem, and unsurprisingly, those attempts have proven to be unsuccessful in remedying these issues. They include:

- Detective Division Notice 82-2 (Detective Division Notice - File Control)[189]
- Special Order 83-1 (Detective Division Special Order – File Control)[190]
- Special Order 83-2 (Detective Division Special Order – Investigative Files)[191]
- Special Order 86-3 (Detective Division Special Order – Investigative Files)[192]

---

[186] Hickey 171
[187] Hickey 187
[188] Hickey 219-20
[189] Special Order 82-2.pdf
[190] Special Order 83-1.pdf
[191] Special Order 83-2.pdf
[192] Special Order 86-3.pdf

41

I will discuss the deficiencies in the Special Orders in greater detail below.

These issues have been noted in the past by the courts when they have discussed the problem of street files and identified problems with Special Order 83-1, for example. The discussions in the Palmer v. City of Chicago case[193] are representative and consistent with my professional experience, as well as my observations in this specific case:

- The maintenance of multiple, separate investigative files - "Official Files" (Permanent Retention) vs. "Street Files" (Personal, and/or Working, and/or Street Files);
- Lack of file integrity and security of files;
- Insufficient or non-existent chain of evidence and/or custody;
- Willful failure to disclose and produce all records to prosecutors, defense attorney, and court (Brady Rule) - not only in the initial process and trial, but in subsequent "re-investigations" and appeals, as well as in civil litigation; and
- The continual utilization of unit or division specific directives, notices, and special orders fails to recognize the involvement of other CPD entities that may, or may not, be bound by those directives.

These deficiencies are contrary to the generally accepted practices for an essential aspect of police control, which is monitoring, accountability, and following written policies. The material that I have reviewed allows me to opine that any reasonable officer or supervisor in the Chicago Police Department would reasonably believe that it was acceptable for them to ignore any written policies that did exist. Street file supplementary reports[194] all show the continued use of street files after the Special Orders were enacted, as is further discussed below. This is further shown in CPD Assistant Director James Hickey's deposition.

What has been identified by the parties as the "New File" provides further evidence of this. Certain acknowledgements by the defendants[195] make it clear that in this case disclosure was problematic. Key documents contained in the New File were never given by the police to the prosecutor or the criminal defendants' attorneys. Deposition testimony[196] [197] [198] and documents[199] indicate that the "New File" was sent to the Records Division in 1992 when Area 3 closed (and was not sent prior and was also not scheduled for destruction as the City claimed earlier). This is important because it means that the "New File" was in Area 3 when the Lupercio/Hermitage fire was investigated in 1988.

Documents[200] [201] in the "New File" did not conform to Special Order 83-2 and in particular to section V. – B. relative to handwritten notes, "To/From" memos, and the backs of Major Incident Work Sheets not being in a supplemental report. In addition, inventories were

---

[193] Judge Milton Shadur opinion in Palmer v. Negron. 3/31/1983 (P2648-2669) pages 1-22.
[194] Dockets 212-3 and 212-4
[195] City's Responses to RTA No. 3 (Nos. 5,8,9,12,13,16,21,24,25,28,57, 60, 61, 64)
[196] Joseph Perfetti deposition, (6/11/2015) pages 90-92
[197] Michael Colander deposition, (6/24/2015) pages 29-30 and 44
[198] Andrew Robertson deposition, (6/25/2015) pages 28-34
[199] Plaintiff's Motion for Extension of Fact Discovery Regarding New File and Area 3 boxes, Exhibits K & L
[200] James Hickey deposition, (6/9/2015) pages 222-223
[201] City's Fourth Amended Responses to Seventh Set of Interrogatories

42

incomplete and there was no indication that they were ever sent to records for inclusion in the permanent retention file. A full review of my findings is below.

### A.  Homicide and Pallet File Review

The failure to properly document and turn over the critical investigative materials in Kluppelberg was not an anomaly. Rather, it was an example of the Chicago Police Department's widespread practice of maintaining multiple files and relying on informal and unofficial notes to document investigations.

It is my understanding that the City produced a total of 660 post-January 1, 1983 homicide investigative files from Area 3, covering 619 RD numbers, and that those files were produced to Plaintiff on a rolling basis.  Of those 660 files, I reviewed approximately 25%, which consisted of 164 investigative files provided to me by Plaintiff's attorneys, and which spanned 1983 – 1991 the entire period of time covered by the City's production (post-January 1, 1983, when the relevant special orders came into effect). I was given corresponding permanent retention files for fifteen investigative files, which I also reviewed.  In my experience, a sample of this size is sufficient to analyze and draw conclusions about police practices.

My charge was to examine each of these files, not necessarily for the quality (or lack thereof) of the individual investigations, but for any observations and conclusions that I might make as to material deviations from the relevant CPD policies.  As important was to evaluate this material in the context of normal and accepted police practices designed to ensure that all material produced during major criminal investigations is readily accessible, complete, discoverable, and in a format as to be actually useful and discoverable.

Based on my review, it is apparent that systematic and widespread practices within the Chicago Police Department did not comply with the new policies promulgated after the *Palmer* litigation.  Specifically, detectives routinely documented critical investigative materials solely on unofficial forms, did not complete the prescribed official forms designed to ensure file integrity, and kept incomplete inventories of the investigative file. In my professional opinion, the files both individually and in aggregate, support my opinions that from 1983 onward, there was (a) inadequate and deficient policies pertaining to records standardization, integration, maintenance, retention, indexing, and discovery; (b) no apparent department-wide meaningful effort to provide training on those policies that were promulgated; (c) no thorough, methodical, and regular monitoring for adherence to those policies; (d) no corrective action, either administratively or through discipline, for any violations of those policies, and; (e) a clear pattern and practice of condoning, if not encouraging these failures. These practices precluded meaningful discovery by defendants.

### 1.  Repeated instances of not using official forms to ensure file integrity

Nearly every case I reviewed had handwritten notes, on blank pages rather than on official forms. Moreover, those notes were consistently undated, provided no context for how they were acquired, and contained no signature to identify the author. (e.g. City-Klup_49820). The use of official police reports is critical to ensuring that investigative information is

discoverable, and the failure to use official reports undermines the integrity of the investigative files: As discussed above, if material is not actually documented and included in official police reports, there is no way to know that it ever existed, how it was acquired, who acquired it, where it was acquired, and when it was acquired. As importantly, there is no chain of custody and no case integrity. The material is then susceptible to manipulation, interpretation, and loss.

In addition to the above-described routine failures to record material information on official police reports, such that they would be discoverable, my review of the 164 files revealed other failures to implement CPD policy, creating additional opportunities for materials to be lost or manipulated, and thus withheld from the criminal defendant. Though the Chicago Police Department had designed certain forms to ensure file integrity, the files reveal that there was a widespread practice of disregarding these forms.

1) **Major Crime Worksheet** (example at Bates 38802): These forms are a creature of the Detective Division Violent Crimes Unit. They provide the "who, where, what, when" (but not necessarily the why). They provide the starting point and one of the best sources of initial discovery. The Major Crime Worksheet is missing from a significant number of the cases that I reviewed, establishing a clear negative pattern and practice of disregard.

2) **Investigative Case File Control** (example at Bates 38755): This form is designed to maintain case integrity and chain of custody of investigative files. It is common during an investigation for a file to be routinely removed for a multitude of legitimate reasons (crime lab, consultation with other units, review by prosecutor, court appearances, etc.) The case file control form documents the file's movements so that it is clear whether and when information may have been copied or removed. In most of the cases that I reviewed they are either missing, have so few entries as to be unbelievable, or have not entries at all – an impossibility. This is another critically important form for discovery purposes because it should reveal all the individuals that may have contributed to the file, including from other divisions or units. The failure to systematically utilize them properly, and the concurrent institutional failure to enforce compliance, indicates a pattern and practice.

3) **Supervisory (Chain of Command) Review** (example at Bates 52919 / 53066): This form is designed to document that the chain of command responsible for overseeing the investigation and compliance with relevant departmental policies and procedures has actually done so. Most of the files that I reviewed either was missing the form, had only a single signature, or in the example had no signatures as all. That is, there is essentially no documentation of supervisory review in the investigative files. This clearly demonstrates a willful disregard among supervisors for ensuring that detectives were following the policies.

4) **Detective Division Personnel Form** (example at Bates 59648): This sheet is designed to quickly track and identify detective division employees, where they are assigned, working hours, and equipment. It does not necessarily account for officers from other units. Regardless, in the majority of the cases reviewed, this form is missing altogether. This prevents realistic and effective discovery of potential police witnesses.

44

5) **Case Assignment Slip** (example at Bates 38531): The Case Assignment Slip is designed to document initial detective(s) assigned and conclusion status. These are key individuals to seek out in discovery for depositions. Again, enough of these forms are missing to demonstrate a clear pattern and practice of disregard for the policy.

Nothing in the material that I have reviewed indicates that these patterns and practices were ever identified, acted upon, or corrected. While there are rare exceptions where the material is much better preserved and presented, they are the distinct minority. If you were to randomly access any of the files that I reviewed, you will find the deficiencies are across the board and form a pattern and practice that demonstrates an institutional decision to ignore the requirements put in place after *Palmer*.

### 2. Material information was repeatedly omitted from official police reports.

The failure to use official forms properly, as described above, prevents material information from making its way to the criminal defendants. The case files I reviewed (100%) are replete with examples of handwritten pages and informal memos between detectives containing potentially exculpatory information. These handwritten notes contained critical investigative information, including: 1) Leads on different or additional avenues of investigation (Bates 120228; 120374[202]); 2) Names or descriptions of possible alternative suspects (Bates 118848); 3) Names or descriptions of additional witnesses (Bates 120368; 120386[203]); 4) Names or descriptions of possible alibi witnesses; 5) References to other CPD or outside law enforcement involvement in the investigation; and 6) Handwritten diagrams, scene and area maps, evidence locations. (Bates 128084; 120221). These citations are examples and not an exhaustive list of instances where these trends were seen.

Even more troubling, in the vast majority of the cases that I reviewed, there is no companion entry on official CPD forms that documents this critical information, leaving this potentially exculpatory information solely in handwritten notes or in informal memos. Some examples of these omissions include:

- Frank Rhodes was murdered on May 27, 1985 and the investigation of that homicide was assigned Records Division number F-417-457. As part of their investigation, officers conducted a lineup with six witnesses in an attempt to identify the offender. The official Supplemental Report describing the lineup states that two of the witnesses positively identified James Williams, the suspect. *See* Bates 068528-29. The investigative file, at Bates 68550-51, however, also contains an informal to/from memo between detectives discussing the lineup. That informal memo describes how Ivan Massey, another witness who viewed the lineup, expressly stated that Williams was not the offender. The official police reports, however, contain no record of Massey's statement.

---

[202] Handwritten Notes state that a witness, Kevin Williams was to be interviewed.
[203] Handwritten notes list Myron Coleman as a witness to the shooting.

45

- In the investigation assigned Records Division number G-197-882, an informal to/from memo at Bates 90817, dated August 24, 1985 describes a statement from a witness named Fred Ward implicating an alternate suspect. Specifically, Ward told the detectives that Eddie Flowers murdered the victim as retaliation for the victim's earlier theft of a major drug dealer, Melvin Summers. Another to/from memo at Bates 90845 and 90862 describes a statement from Lamont White, in which he similarly describes a contract on the victim's head by White. It does not appear that these witness accounts were reproduced in the official Supplemental Reports. In fact, it appears that the only other mention of Flowers is in a second to/from memo at Bates 90923 and in handwritten General Progress Report notes created on May 27, 1985—five weeks before the to/from memo containing Ward's statement—but that report does not describe Flowers' potential involvement in the murder. See Bates 90988-89

- In the homicide investigation assigned Records Division number H-045-796, several handwritten notes and an informal to/from memo seem to implicate three people in the murder: Cheryl Williams, Darryl Smith, and Victor Dennis. (Bates 92423, 92427, 92502, and 92573). Yet, it appears that their connection the investigation is never explained in the official reports. Similarly, a handwritten note at Bates 92478 describes a woman named "Birdie" making the 911 call to report the homicide. The reporting witness is clearly of interest to an investigator, and should always be disclosed to the defendant. Yet, the official reports do not appear to include any details about the 911 call or any description of "Birdie."

- The investigative file associated with the January 24, 1987 homicide of Miguel Morales, Records Division number J-03-340, contains several informal to/from memos documenting alternate suspects and critical witness information, which was not included in official reports. First, a memo at Bates 93037-38 documents officers' visit to the Perez household. Two brothers, Carlos and Jose Perez are listed in the supplemental reports as witnesses. The memo lists a third brother, Thomas Perez, who assists the officers in locating a sawed-off shotgun within the Perez family's apartment. Thomas's name and his role in finding the shotgun appear to have been omitted from the supplemental reports. A second to/from memo at Bates 93042 describes an interview with Dianna Mayorda, the victim's girlfriend. Mayorda reported that she had previously dated a man named Valentino Rivera, that Rivera was jealous of the victim, and that Rivera had stated "he was going to get the victim" as recently as December 1986. But the supplemental report that purportedly documents Mayorda's interview, omits any mention of Rivera. (Bates 92981-82; 93125-26) Rather, the supplemental report states that, other than describing her relationship with the victim, and his past difficulty with Latin King gang members "she could add no more" to the investigation. Bates 92982; 93126. Finally, a third to/from memo, at Bates 93043, states that two witnesses after looking at photographs, made a possible identification of Joseph Russo as the offender. It does not appear that Russo's name is mentioned in the official reports, let alone the fact that he was identified as a potential alternate suspect.

- While investigating a shooting, under Records Division number G-007-315, the detectives took notes of an interview with a witness named Monique Lawrence on a General Progress Report at Bates 83132. She reported that she saw Keith Harden and a second man walking down 56th street. She specifically noted that both men were wearing "big hats like skull caps," but she was still able to identify Harden, whom she knew. Neither her name nor her statement appears in the official reports. Moreover, the fact that both men were wearing large hats—and that their faces may have been obscured— is omitted from the official the official reports.

- At Bates 44318-19, there is a handwritten statement in one person's handwriting, likely the witness's, but that statement is continued in the detective's handwriting. And, it is only in the detective's handwriting that the suspect is identified by name.

- After investigating the November 3, 1985 murder of John Vasquez, officers charged Adolfo Valdez and Francisco Sanchez on a theory that Vasquez was shot as part of a gang rivalry. Notes from an interview with Dawn Drew, however, provide an alternative motive and theory. Drew reported that on Thursday, October 31, 1985 at about 2:00 AM the victim came to her house to talk, and though he looked beat up, he didn't want to say much about what happened. Vasquez explained "that his brother went off on him" and that his family was kicking him out. Drew also explained that the victim was trying to get out of the gang and wanted to move out of state with her, but to leave the gang, he needed to be "violated," that is gang members would beat him up. That was scheduled to happen on Saturday, on 51st street. The victim was shot at 5116 S. Throop at 2:40 AM Sunday, November 3rd. Those notes of Drew's statement are contained only at Bates 84648, in an informal to-from memo between detectives, and it does not appear that Drew's name is included in any of the official reports.

### 3. The Investigative Files themselves are incomplete

The investigative files themselves are consistently incomplete and often reflect the fact that investigative information is contained in multiple locations, rather than in one comprehensive file. The police investigative role is to search for and document facts – all facts regardless of where those facts fit into some pre-conceived theory of the investigation. Not all facts, information, or individuals will necessarily enhance the prosecution of an identified suspect. Nonetheless, those facts have to be included in the investigation. There is nothing to prevent the investigators from offering explanatory information that puts that information in perspective. It must be included – in fairness to the victims, the prosecutor, the defense, the court, and the jurors. The judge will eventually rule on what is relevant and admissible. To meet the needs of police agencies and the courts, case files must be maintained in a manner that make them secure, but accessible, and the case contents should be arranged in an orderly and consistent manner. As a corollary, all of the information must be inventoried, indexed, or documented in such a manner as to be easily located and the content inventory clearly understood.

It is standard police practice for major investigations to have one lead detective who is in charge of compiling all investigative materials. That way, once charges are filed, everything that does exist from the investigation is complete, identifiable, inventoried, and maintained in its entirety in a central location. Whether it is referred to as a permanent retention file, a "murder book", a completed investigation, an open investigation, or something else. Everything should be in one package that can be located and produced – for whatever reason it is needed.

While acknowledging that investigations vary in complexity, number of victims and suspects (if any), volume of evidence, vehicle involved, etc., any specific investigative file would be expected to have at least 15 or more specific types of documents, regardless of disposition or arrest. To have a homicide occur, police respond, and detectives assigned would produce at least the following forms and/or documents, and in turn they would be placed on the investigative file inventory and a copy of the inventory would be placed in the permanent retention file. These inventoried items would include:

1. Investigative file inventory sheet / CP 23-121 (that would be in both the IF and the PR files)
2. Case Assignment & Weapon characteristics form / CPD 11-418
3. Major Crime Worksheet / CPD 23-483
4. Homicide File Review form / No form #
5. Investigative File control form / CPD 23-124
6. Case Disposition / computer generated
7. General Offense Reports / CP 11-380
8. Supplementary Reports / CP 11-411
9. General Progress Reports / CPD 23-122
10. Medical Post Mortem Report
11. Cause of Death Report
12. Medical Examiner Toxicology Report
13. Medical Examiner Inventory / F-808
14. Crime Scene Processing Report / CPD 21-949
15. Property & Evidence Inventory forms / CPD 34-523
16. Intra Department Envelopes (to–from tracking) / CPD 11-174
17. CPD "rap sheets" / CPD 31-903 (chronological record of arrests by CPD of victim &/or suspects)
18. State and Federal "rap sheets"

In addition, in cases where there are identified suspects, at least the following forms and/or documents would be in the investigative file, and in turn they would be placed on the investigative file inventory and a copy of the inventory would be placed in the permanent retention file. These additional inventoried items would include:

1. Arrest Warrant / No form #
2. Arrest Reports / CPD 11-420
3. Arrest Info Card / CPD 11-430

48

4. Photos / arrest, in-custody, crime scene, interview, etc.
5. Statements / No form #
6. Court Attendance form / CP 11-555
7. States Attorney Felony Minutes forms / Referred to as "101's"

In addition, in <u>cases where there are no known suspects initially</u>, the investigative file would be expected to contain at least the following forms and/or documents that would be inventoried in the investigative file, and in turn they would be placed on the investigative file inventory and a copy of the inventory would be placed in the permanent retention file. These additional inventoried items would include:

1. Vehicle Tow Reports / CP 11-413
2. Handwritten notes (not on CPD forms) / No form #
3. Handwritten statements (not on CPD forms) / No form #
4. To-From memos (not on CPD forms) / No form #
5. Group line up photos / no such photos found in any files examined
6. Field Contact Cards / CPD 21-101
7. Fugitive Arrest Receipt form / CPD 31-273
8. Stop and Hold paperwork / CPD 31-961
9. Identification Sheet / CPD 22-467
10. Criminal Records Search summary / computer generated
11. Driver's & Motor Vehicle Records / computer generated
12. Juvenile Field Arrest Reports / CPD 11-421
13. Preliminary Fired Evidence Report / CP33-405
14. Request for Analysis – Receipt for Exhibit / CPD 33-100
15. Crime Laboratory Reports / CPD 33-103
16. Search Warrant Affidavits and Returns /
17. Grand Jury Subpoenas / CR 34A
18. Crime Pattern Reports / computer generated
19. Offender Listing by Address / computer generated
20. Victim Listing by Parameters / computer generated
21. Miscellaneous Incident Exception Report / CPD 11-419
22. Court Notifications / CPD 11-554
23. Court Complaint Transmittal Listing form / CPD 11-551
24. Extradition documents / no form #
25. Xerox images of miscellaneous evidence (matchbooks, keys, vehicle registrations, family photos, etc.)

The files I reviewed, however, clearly demonstrate that the investigative files do not serve as this central repository for information. My review of the files revealed numerous cases where information that should be included was absent from the investigative file, suggesting that it may have been lost or stored in separate files. Examples of such missing information include:

49

- No explanation on photographs, such as when or where the photo was taken, who is depicted in the photograph or why the detectives believe it is relevant to the investigation. (e.g. 120234; 120536-120560). The missing information suggests that the paperwork, notes, or other investigative materials that led to the photograph was maintained separately from the investigative files and was not included in the investigative file.

- Missing reports including ballistic reports, AFIS reports, crime lab reports, CAD and 911 reports.

- Missing forms, such as missing property inventories and Major Crime Worksheets. For example, RD D-304-807, Bates 09501-096049, contains no Major Crimes Worksheet.

- Other missing forms or documents including missing medical records, missing property inventory forms, or missing search warrant affidavits, and missing search warrant returns

- Lack of itemized, detailed, chronological investigative steps

- Some cases have investigatory computer generated phone records, in others they are hand written by an unknown investigator but not included in official reports, suggesting that the original source for the phone records was stored separately or not properly retained.

- Similarly, in some files there are handwritten summaries of criminal records (e.g. Bates 46636), but no reference in official forms, and no official printout, implying that the source of the information was stored separately

- Blank or missing chain of command homicide review forms (Bates 52919 & 53066)

- Many, many totally illegible pages not explainable by "bad copies" (Bates 45369-45307-45297)

- Most missing crime scene photos, suggesting that the reports from Crime Scene technicians were not included in the investigative file. For example, the investigation under N-238-887 includes an Evidence Report at Bates 0671161 that documents 6 different photographs taken of the crime scene. Those photographs do not appear in the investigative file.

In some instances, the investigative file specifically referenced a piece of evidence, a statement, or other information, but the corresponding evidence or statement was not documented in the file. E.g.

- References in handwritten notes to the involvement of other units or outside agencies, but not included in official reports, and involvement not described ("ATF dropped off info")

- No live lineup photos, where there are lineup reports. For example, at Bates 067136, a line-up report documents a live lineup for the investigation under RD N-238-887 and states that photographs were taken by Detective Moser, but there are no photographs in

50

the investigative file. Under RD number G-500-512, reports at Bates 091761 and 091803 note that photographs were taken of a lineup, but no lineup photographs appear in the investigative file.

- Reports mentioned (often in handwritten notes) that were not referred to in official reports, and not included in file. For example, at Bates 078838 a Supplemental Report states that the suspect took a polygraph test and failed, yet there is no corresponding Crime Lab Report from the Crime Laboratory Division Polygraph Unit documenting the polygraph test or results.

- Evidence reports documenting specific photographs taken as part of the investigation, but photographs are not included in the investigative file. In the investigation under RD N-213-223, an evidence report at Bates 066853 lists photographs taken of the scene, and of the victim's wounds. A crime scene report in that case, at Bates 066794, states that a technician was assigned to take photographs of a pair of eyeglasses and the box they were found in. The report lists 9 photographs taken of the glasses. None of the photos listed in these reports are included in the investigative file.

- Reference to other units or outside agencies processing evidence, but no documentation in official reports and not results, and no chain of custody. For example, a handwritten note at Bates 091866 states that a technician from the Firearms Section stated that two metal fragments that had been recovered were "partial bullet possible '38" and "cannot be compared." But there is no corresponding report from the Firearms Section in the investigative file, indicating that the documents produced by that section were maintained separately from the investigative file.

- Numerous Xeroxed handwritten spacer/filler pages with A3/VC, which would indicate other sources for relevant documents that may, or may not, have been included (Bates 066798; 067122; 91794). Other examples include listing detective's names and unit numbers on blank pages, suggesting that information is coming from other, unidentified sources. (Bates 091857; 091864).

Other, miscellaneous deficiencies in the files include:

- Suspicious "corrections" on transcribed sworn statements. For example,Bates 59722 includes a reference to "Miracle" the dog which, would have actually been explored in the interview.
- Unrelated (Union negotiations, news articles) non-case material interspersed in folders

These repeated and consistent failures to properly document and include all investigative information within the investigative file, demonstrates the Chicago Police Department's top down pattern and practice of failing to seriously try to correct bad practices or overcome the harmful outcomes shown in prior relevant successful litigation against CPD.

51

To further exacerbate these issues, the CPD maintains and utilizes a multitude of often conflicting, confusing and duplicative documents and nomenclature that make tracking and documenting material often difficult and/or impossible:

- GPR (general progress reports)
- GIS (gang information supplementary reports)
- DDSF (detective division street files)
- DR (daily report)
- SR (supplemental report)
- MIW (major incident worksheet)
- AR (activity report)
- GOCR (general offense case report)
- ICFF (investigative case file report)
- IFI (Investigative File Inventory)
- MDR (miscellaneous document repository)
- RD (police report)
- "Humper" (daily activity report)
- "Serafini" reports (ad-hoc)
- DDSO (detective division special orders)
- DGO (department general orders)
- CRU (case report unit)

### 4. Permanent Retention Files Contain Limited Information

Nor can the permanent retention files, which are stored centrally within the Records Division, serve as the central repository for investigative information. By design, the PRFs do not include all investigative materials. The PRFs that I reviewed demonstrate that the PRF provides an incomplete picture of an investigation.

I was provided with digital copies of 15 permanent retention (PR) files, along with the corresponding 15 investigative files from Area 3 – Violent Crimes. The 30 files contained a total of 1,867 pages. I examined, compared and contrasted the 15 permanent retention files with their corresponding investigative files (IF).

Although all of the investigative files had the required inventory sheet, only 47% (7 of the 15) of the permanent retention files contained the required copy.

The comparative ratio of file sizes (pages) in the permanent retention files compared to the investigative files ranged from as low as 11.65% to a high of 54.29%. The permanent retention files contained no handwritten notes, GPRs, or to/from memos between detectives, which means that information contained solely in those unofficial reports (and not transcribed onto supplementary reports) is not included in the permanent retention files. The comparative ratio of file sizes, and the failure to include handwritten notes, is a symptom of the unchecked discretion allowed individual detectives and units in determining what is, or more importantly,

52

what is not placed into supplementary reports and the permanent retention file, regardless of the Chicago Police Department's deficient policies.

The department's policy of failing to include handwritten notes or to/from memos and other internal, unofficial documents in the records division file also means that defendants may not be able to accurately identify the source of a statement. For example, at Bates 44318-19, there is a handwritten statement in one person's handwriting, but that is continued in the detective's handwriting, and that now identifies the suspect by name when the witness had not.

The investigative file inventories that were included in the PRF were often incomplete. Items routinely missing from inventory lists included in the PRF included:

Handwritten names, addresses, vehicle license plates, phone numbers, physical descriptions, dates, unknown abbreviations, symbols, other case numbers, and miscellaneous notes were found throughout most of the investigative files. These types of items were found written across official forms, on plain paper, and on file folder covers. Most were not referenced or located in any permanent retention file inventories, and may have had value for discovery purposes.

Some specific noted discrepancies:

**E-467-516**: The IF contained 46 pages and the PR contained 13 pages (28.26%). A copy of a 1-page inventory (25 entries) form was found in the Permanent Retention File as required. 22 items were entered by the same individual on the same date. The inventories in the Investigative File and PR file do not match: The Investigative File contains 2 pages of Inventory, and has a total of 28 items. The missing 3 items pertain to Court Attendance Sheets, FAX Cover Sheet, and Medical Post-Mortem. The Post-Mortem report would be very important for discovery. In addition, the required inventory sheet omitted reference to a number of other items contained in the investigative file. Some, but not all of the un-inventoried items included the Case Assignment sheet; Investigative File control; Case Disposition; Post Mortem Report; General Offense Report; Arrest Report; Identification Sheet; Laboratory and Evidence Sheets; Search Warrant Inventories; etc. All very important for discovery.

**J-433-864**: NO INVENTORY SHEET IN PR. The IF contained 64 pages and the PR contained 15 pages (23.44%). There was a 2-page inventory (26 entries) form in the Investigative file. However, this is one of the 8 (out of 15) Permanent Retention Files that did not contain a copy of the Investigative File Inventory form. Therefore, a request for discovery would NOT show what was purported to be in the investigative file and discovery would be significantly restricted.

**J-500-287**: NO INVENTORY SHEET IN PR. The IF contained 109 pages and the PR contained only 19 pages (17.43%). There was a 2-page inventory (40 entries) form in the Investigative file. However, this is one of the 8 (out of 15) Permanent Retention Files that did not contain a copy of the Investigative File Inventory form. Therefore, a request

for discovery would NOT show what was purported to be in the investigative file and discovery would be significantly restricted.

**K-108-072:** The IF contained 157 pages and the PR contained 26 pages (16.56%). A copy of a 1-page inventory (25 entries) was found in the Permanent Retention File as required. It itemizes 21 items as General Progress Notes; 3 items as Written Notes; and 1 item as Diagram. All 25 items were entered by the same individual on the same date. The Investigative File actually contains 3 pages of Inventory, containing 70 items. Some of these missing items are very important to discovery, such as line-ups, crime laboratory reports, evidence sheets, statements, handwritten notes with names of witnesses, suspects, etc. Other significant items contained in the investigative file were NOT shown on the in the inventory Some, but not all of the un-inventoried items included the Case Assignment Sheet; Felony Minutes; Major Crime worksheet; Investigative File control; Case Disposition; Cause of Death Report; Post Mortem Report; Statements; Arrest Report; Arrest Warrant; Statements; Miscellaneous photos; Evidence & Lab Reports, etc. All would be very important for discovery.

**K-189-303**: The IF contained 88 pages and the PR contained 15 pages (17.05%). A copy of a 2-page inventory (33 entries) was found in the Permanent Retention File as required. The Investigative File also contains 3 pages of Inventory, but has a total of 38 items. The missing 5 items pertain to the SA case disposition and Court Attendance Sheets. Other significant items contained in the investigative file were NOT shown on the in investigative file. Some, but not all of the un-inventoried items included Case Assignment Sheet; the Major Crime worksheet; Investigative File control; Case Disposition; Court Attendance Reports; Miscellaneous photos; etc. All are very important for discovery.

**K-369-369**: The IF contained 70 pages and the PR contained 19 pages (27.14%). A copy of a 2-page inventory (29 entries) was found in the Permanent Retention File as required. It itemizes 16 items as General Progress Notes; 2 items as Written Notes; 1 as Medical Examiner Report, and 1 item as an evidence sheet. All 20 of these noted items were entered by the same individual on the same date. The Investigative File also contains 2 pages of Inventory, but has a total of 35 items. The missing 6 items pertain to the SA case disposition, Court Attendance Sheets, and Report of Post-Mortem. The Post-Mortem report would be very important for discovery. Some, but not all of the un-inventoried items included Case Assignment Sheet; Case Disposition; Court Attendance Reports; Preliminary Fired Evidence; etc. All are very important for discovery.

**M-049-190**: The IF contained 144 pages and the PR contained 35 pages (24.31%). A copy of a 3-page inventory (67 entries) was found in the Permanent Retention File as required. However, the Investigative File Inventory has a total of 70 items. The missing 3 items pertain to the Medical Examiner Report, SA case disposition and Court Attendance Sheets. The Medical Examiner Report would be very important for discovery. Some, but not all of those un-inventoried items included Case Assignment Sheet; Investigative File control; Case Disposition; Court Attendance Reports;

Supplementary Reports; Grand Jury Subpoena; Crime Scene Processing Report; Miscellaneous photos; etc. All are very important for discovery.

**M-050-920**: The IF contained 58 pages and the PR contained 19 pages (32.76%). A copy of a 2-page inventory (30 entries) was found in the Permanent Retention File as required. The first page has 20 entries with 5 empty rows. 19 items were entered by the same individual on the same date, and 10 items were entered by another individual on page 2 on a different date. However, the 2nd page of the inventory with 10 items appears to be for an unrelated case (M-050-978). The Investigative File also contains 2 pages of Inventory, but has a total of 31 items. The 5 empty rows on the first page have been filled in (medical examiner's report; court attendance; subpoenas; and lab reports). The second page has 6 pages and does not have a case file number. It contains court attendance documents and the SA final deposition. The omitted reference to the medical examiner's report would be very important for discovery. Some, but not all of those un-inventoried items included Case Assignment Sheet; Case Disposition; Court Attendance Reports; Post-Mortem Report; Arrest Report; General Progress Report; etc. All are very important for discovery.

**M-051-29**: The IF contained 71 pages and the PR contained 26 pages (36.62%). A copy of a 2-page inventory (33 entries) was found in the Permanent Retention File as required. It itemizes 12 items as General Progress Notes. 25 items were entered by the same individual on the same date. The Investigative File also contains 2 pages of Inventory, but has a total of 35 items. The missing 2 items pertain to subpoenas and medical examiner's report. The omitted reference to the medical examiner's report would be very important for discovery. Some, but not all of those un-inventoried items included Case Assignment Sheet; Investigative File control; Supplementary Reports; Court Attendance Reports; Post-Mortem Report; Miscellaneous photos; etc. All are very important for discovery.

**M-227-539**: NO INVENTORY SHEET IN PR. The IF contained 140 pages and the PR contained 31 pages (22.14%). There was a 3-page inventory (52 entries) form in the Investigative file. However, this is one of the 8 (out of 15) Permanent Retention Files that did not contain a copy of the Investigative File Inventory form. Therefore, a request for discovery would NOT show what was purported to be in the investigative file and discovery would be significantly restricted.

**M-487-817**: NO INVENTORY SHEET IN PR. The IF contained 35 pages and the PR contained 19 pages (54.29%). There was a 1-page inventory (13 entries) form in the Investigative file. However, this is one of the 8 (out of 15) Permanent Retention Files that did not contain a copy of the Investigative File Inventory form. Therefore, a request for discovery would NOT show what was purported to be in the investigative file and discovery would be significantly restricted.

**M-490-308**: NO INVENTORY SHEET IN PR. The IF contained 76 pages and the PR contained 22 pages (28.95%). There was a 2-page (37 entries) inventory form in the

55

Investigative file.  However, this is one of the 8 (out of 15) Permanent Retention Files that did not contain a copy of the Investigative File Inventory form.  Therefore, a request for discovery would NOT show what was purported to be in the investigative file and discovery would be significantly restricted.

**N-180-889**: NO INVENTORY SHEET IN PR.  The IF contained 266 pages and the PR contained 31 pages (11.65%).  There was a 2-page inventory (31 entries) form in the Investigative file.  However, this is one of the 8 (out of 15) Permanent Retention Files that did not contain a copy of the Investigative File Inventory form.  Therefore, a request for discovery would NOT show what was purported to be in the investigative file and discovery would be significantly restricted.

**N-540-560**: NO INVENTORY SHEET IN PR.  The IF contained 130 pages and the PR contained 25 pages (19.23%).  There was a 3-page inventory (73 entries) form in the Investigative file.  However, this is one of the 8 (out of 15) Permanent Retention Files that did not contain a copy of the Investigative File Inventory form.  Therefore, a request for discovery would NOT show what was purported to be in the investigative file and discovery would be significantly restricted.

**P-174-126**: NO INVENTORY SHEET IN PR.  The IF contained 80 pages and the PR contained 18 pages (22.50%).  There was a 2-page inventory (39 entries) form in the Investigative file.  This is about the best inventory form of the 15 that were examined in this group.  However, this is also one of the 8 (out of 15) Permanent Retention Files that did not contain a copy of the Investigative File Inventory form.  Therefore, a request for discovery would NOT show what was purported to be in the investigative file and discovery would be significantly restricted.

Finally, the Permanent Retention files do not always include all of the "official" documents produced in a case.  For example,

**RD K-108-072**: 14731: Supplemental Report that discusses the arrest of the defendant was not part of permanent retention file.  14755-14758: Defendant statement, that was not part of permanent file, including additional details of the defendant's account of the events on the night of the murder, as well as the fact he knew the victim as "Stony."

**RD: N-540-560**: 12483: Supplemental Report that is missing from the official record. It discusses detectives locating the defendant in Texas and transporting him back to Chicago.

### 5.  Inventories incomplete or no indication sent to Records Division

Finally, the City claims that, even if investigative information is contained in multiple files, rather than in a central location, the investigative file inventories serve as a backstop to ensure that all investigative materials are discoverable.  In my opinion, however, the investigative file inventories are essentially worthless to ensure discovery.

First, as discussed above, less than half of the PRFs that I reviewed included inventories, undermining any inference that defendants routinely had access to those inventories.

Second, even if defendants did have access to the inventories, those inventories do not comprehensively or accurately document the contents of the files. The vast majority of the investigative case file inventory forms were either so generic as to be worthless, for example including overly generic entries, such as "GPR" with no date, number of pages, or author. Inventories were also incomplete as it pertains to handwritten items, or were missing all together (e.g.City_Klup_38750) In some instances, they cross reference another case file that is not included (e.g. City_Klup_53064)

Plaintiff's attorneys provided me with an index of the 660 investigative files, 515 of which were marked as containing inventories. That index also documented whether, in the files that contained inventories, the inventories accurately documented the contents of the investigative file. In other words, whether the number and type of documents contained in the file matched the entries on the inventory, or whether there were documents in the file that were missing from the inventory. With the index sorted by RD number, I spot-checked approximately 10% of the 515 files with inventories, by selecting one file out of every 10-15, reaching a total of 49 files. I found the Plaintiff's attorneys' characterization to be accurate in each case. Based on the complete index of the 660 files, I conclude that 82% of the files (540/660) had an incomplete or missing inventory. And of the files with inventories, 76% of the inventories inaccurately documented the contents of the investigative file.

I also noted that documents were often added to the inventory long after they were initially created. In some instances, investigative file inventories were not created until after an offender had been charged. For example:

**E-467-516**: The defendant was arrested December 11, 1983, the same day as the offense and charged the next day, Dec. 12. On the Investigative File inventory there are 22 entries made on Dec. 28, 1983 by the same person and there are 3 more from Jan. 22, 1984.

**J-555-952**: The offense took place on December 28, 1987, and began as an aggravated battery investigation. The victim died January 4, 1988 and the defendant was arrested the same day for murder. But the ASA rejected charges. It isn't until January 7, 1988 that anything is entered on the investigative file inventory, and the vast majority (38/45) of the entries were made the same day.

**N-238-887:** Offense occurred May 27, 1990 and first Supplemental Report is produced by May 28, 1990 (Bates 67143) documenting interviews with 5 witnesses and a canvass of the neighborhood. There are also several GPRs from May 27-30 (Bates 67189-67202). Willie Benson was arrested on May 29, 1990 but was released without charging. Maurice Davis was arrested and charged on May 30, 1990. Officers continued investigating Benson, but he was never charged. Though the investigation resulted in charges on May 30, 1990 detectives did not begin keeping an inventory until June 6, when a single individual entered the first 50 entries on the inventory.

57

The delay in creating an inventory for the investigative file reveals three problems. One, it again demonstrated the amount of discretion that officers could exercise when deciding what to put into the investigative file: if the inventory is only created after an individual is charged, detectives can exercise discretion over what they deem relevant at the end of an investigation. Second, if the documents are not logged on the inventory until after the charges are brought, that indicates that documents are being stored in other, undisclosed locations during the course of the investigations, which was precisely the problem the special orders sought to address. Finally, if detectives obtain additional information after charges are brought, they may add material to the investigative file without having to update the inventory in the Records Division.

The same deficiencies in inventories that I saw in the homicide files infected the files in Kluppelberg's case. First, there is no inventory in the Kluppelberg PRF at all. That is, there is no inventory from any Bomb & Arson investigative file (presuming that there was once one) nor is there a copy of the inventory for the Area 3 1988 investigative file. Nor does the PRF include is an inventory from the 1984 Area 3 investigative file—although no such inventory would have been required to be included in the Records Division file pursuant to Special Order 83-2 because no charges were lodged against Kluppelberg following the 1984 investigation. Instead, the case was closed as noncriminal, apparent accidental deaths. This again demonstrates how the gap in the policy creates a significant problem – particularly for cold cases like Kluppelberg's where a re-investigation of the case is done years later (and without regard to the initial investigation). Because the PRF, by design, does not contain all documents in any given file, without including a copy of each and every inventory for each and every investigative file in the PRF, there is no guarantee that a criminal defendant will even be aware that other investigative files exist.

Second, the 1988 Area 3 investigative file is incomplete. In particular

- There are only are only 3 "written note" entries on the inventory, but 6 full pages with handwritten notes in the file (see pages 55, 57, 62, 66, 68, 105/108 [same]). Plus, there are a large number of handwritten notes on scraps of paper/folders (e.g., pages 113-16, 119-129 (it appears that a lot of these notes are written on the back of case assignment slips)
- Grand jury subpoena at pages 120-21 is not listed
- Major Crimes Worksheet at pages 104/107 is not listed
- Inventory lists just "photo" but there are 11 photographs (pages 136-46)

Also, the way that the Inventory documents the 9th District supplementary reports and B&A reports makes it very difficult to tell if they are all included in the file. The entries for those reports do not list the date of the supplementary reports, and the supplementary reports are split up throughout the file. As such, even if the Inventory is not missing these reports, it certainly would have been hard for another officer or an attorney to figure out exactly how many and which reports are reflected on the inventory and whether they received a complete copy of those reports.

Third, the inventory in the "New File" is incomplete.

- It lists 9 pages of "written notes" but there are at least 11 pages (pages 11/19 [same], 18, 20-22, 24, 26-29, 49
- It lists 2 pages of GPRs, but there are 3 pages of GPRs (pages 15-17)
- Also, the inventory just lists "RD 104537" but there are 7 pages, comprising 2 or 3 documents with that RD number, so the inventory provides no indication about what documents "RD 104537" refers to (pages 41-47)
- Similarly, the inventory just lists as an entry "RD 105358" but it does not tell provide any detail about which documents under that RD number are included.

Fourth, the 1988 Area 3 investigative file inventory appears to have been filled out entirely on one day – February 2, 1988, again revealing a gap in the CPD's policies: Pursuant to the Special Orders, there was no requirement that inventories be filled out contemporaneously. Moreover, inventories did not need to be sent to the Records Division until charges were lodged. As a result, this left too much discretion to the individual detective to determine what to retain in the file – and hence what would go onto the inventory – at the end of his or her investigation.

As such, even had a criminal defense attorney received the investigative file inventories – which in this case were not even part of the PRF – they were wholly incomplete and an insufficient mechanism to ensure that a criminal defense attorney was either put on notice of or provided with a complete set of documents. There is no reason to think that this aspect of the Kluppelberg case different in any significant way from how other similar cases were handled, based on my review of the homicide files, as well as the depositions in this case.

## Opinion #11: The Special Orders Issued Were a Deficient Cure to the Problem of Street Files

Although then-Superintendent Richard Brzezcek testified that the problem of street files and the preservation of investigative documents was CPD's responsibility – and notwithstanding that this problem was a "big deal" – the CPD response was wholly inadequate.[204] According to Brzezcek, the only change that CPD made in the immediate aftermath of the street files problem was Notice 82-2.[205] That Notice, however, was wholly deficient as a mechanism to eliminate the use of street files, and was followed by a series of special orders, described above, that were also deficient. Moreover, despite the fact that the use of street files was deeply ingrained within CPD – or at least within the detective division – there was little training offered and virtually no oversight to ensure elimination of the practice.

### A. Importance of the Issue

It is fair to say that in any agency some matters are considered "high risk" to the institution and are always brought to the head of the agency's (and his/her command staff's) attention. They can range from wide spread threats to public safety (patterns of violent crime, terrorism, etc.), to officer involved shootings, to high-risk policies (use of force, police pursuits,

---

[204] Brzezcek Test. 4577-78; Hickey 205-207
[205] Brzezcek 4574-75

etc.), and to such "mundane" things as risk management (adverse findings in law suits). Any responsible Police Chief, Police Superintendent, or Sheriff in the United States has regularly scheduled staff meetings to be briefed on such matters. Here, as Hickey has acknowledged, the issue of "street files" was a big deal. Brzeczek and other high-ranking officials within the CPD were aware of the problem, and as Brzeczek testified, took accountability for them.

The problem of "street files" should not only have been at the forefront of policymakers' attention in 1982 and 1983, but should have continued even after the Special Orders were enacted (and the updated Special Order 86-3 suggests that personnel were aware of their continuing obligation to monitor the issue). Based on my experience, when you run a police department of this size, policymakers are aware of department-wide issues of a very serious nature. Particularly when an issue results in court-action – like the street files problem did – that would be an issue of a very serious nature. As a result, policymakers would have and should have kept themselves apprised of whether and how the issue was resolving .

### B. Judge Shadur identified problems with the language and scope of the orders, which was not corrected

In his opinion, Judge Shadur identified several areas in which Special Order 83-1 fell flat. In particular, and as described above, he found that 83-1 should also include the following provisions:

- The CPD should open an Investigative File Case Folder in *all* violent crime field investigations not just in certain categories of cases or once felony charges or approved.
- Take and maintain *complete* notes of all relevant matters during the course of an investigation.
- Direct any detective who receives information relating to a violent crime investigation that is not assigned to him to forward the information he receives to the detective in charge of the case;
- Transmit two copies of the Investigative File Inventory Sheet to the Office of Legal Affairs of the Department of the Cook County State's Attorney's Office whenever a subpoena or discovery motion is received so that one copy can be given to defense counsel; and
- Assure that the CPD's Training Division develop a program to educate detectives in the new procedures.[206]

These changes, however, were not enacted with Special Order 83-1.

### C. CPD Response Still Allowed For Multiple Files With Different Content

In fact, even where later Special Orders did address some of the deficiencies identified by Judge Shadur, they still fell short. First, the Special Orders still allowed there to be multiple files with different documents and different content in multiple places. This practice – particularly given the history of the street files practice – was unacceptable.

---

[206] *Palmer v. City of Chicago*, 755 F.2d 560 (7th Cir. 1985), P 2532

In fact, in reviewing the materials provided, I identified at least three different files that would be created relating to any criminal investigation even once the Special Orders regarding file creation, maintenance and preservation were issued. First, there would be a permanent retention file in the Records Division. According to Hickey, this file would contain only supplementary reports, general offense case reports and the arrest report filed under the accompanying RD number.[207] Second, there would be a unit RD file: Hickey testified that this was a slim file kept in the homicide drawer at the Area to identify that there is a case open.[208] Like the permanent retention file, it would contain all the known official police reports: original case offense report, supplementary reports, and reports sent to the investigative unit from support units.[209] Third, there would be the investigative file maintained by the area or any specialized unit.[210] This file would contain documents that individual detectives assigned to investigate the case have determined should be in there.[211]

As noted above, none of the files had to have the same documents in them: In fact, by design, they did not.[212] Likewise, Hickey admitted that the files did not even necessarily have the same *information* in them.[213]

The problems created by such an unwieldy system are obvious: It creates the potential for information and documents to go missing because they are not centrally controlled. For example, in this case, the Bomb & Arson investigative file has not been found or produced.

Moreover, because the files are designed to be different and to be retained in different locations, there is no way to ensure that the investigative file – which is retained at the Area – is produced during any criminal prosecution. As described more fully below, if there is no guarantee that any documents beyond those maintained at the Records Division are produced during a criminal prosecution, then whatever different information is in the investigative file – potentially exculpatory or impeaching – will never reach the hands of the criminal defendant.

### D. There was Too Much Discretion Given to Detectives About What to Document and How to Document

In addition to the problem of multiple files, the Special Orders do not sufficiently dictate what information needs to be recorded. Rather, the Orders allow for substantial discretion on what information to document – and even how to document that information.

#### 1. The Special Orders Left it Up to the Detective to Determine What to Document

---

[207] Hickey [2015] 22-23, 95-96
[208] Hickey 115-16
[209] Hickey 115-16; S.O. 86-3
[210] Hickey 297-300
[211] Hickey 297-300
[212] See for examples Hickey [2015] describing documents that would go in the investigative file but not in the permanent retention file at 71-72, 81, 91, 94, 100, 103, 105, 108-110
[213] Hickey [2015] at 100

The Special Orders provide no instruction on what has to go into a supplementary report. Notwithstanding the fact that the supplementary report was the official CPD police report that would be retained at Records Division and therefore disclosed to the prosecutor and defense, the Special Orders are silent on what must be included in this critical document.[214]

Moreover, while the Special Orders explain that a detective is required to record all relevant information and transcribe relevant information on a GPR or memo into an official report, the Special Orders nowhere explain what is "relevant." As the former Commander of Area 3 testified, what is relevant to one detective may not be relevant to another detective.[215] Moreover, Hickey testified that "relevant" is limited in scope. In particular, Hickey explained that information is relevant and therefore has to be recorded or transcribed pursuant to the Special Orders *only* if it is still relevant at the time that a detective is writing up his or her supplementary report and if the detective gives that information some credence.[216]

The failure to provide some guidance on the meaning of "relevance" and the narrow interpretation of relevance adopted by the City gave detectives far too much discretion in what had to be documented. This is particularly true because the status quo had previously been not to record or document information – at least not on official documents that would be maintained by CPD and disclosed to the prosecution and defense. As a result, to overcome this culture – and this citywide practice – CPD had to be explicit in its requirements and provide direct guidance about what did or did not have to be documented; it is not enough to leave it up to the individual officer. When that is done in circumstances like the one at issue here, the bad practices of the past tend to repeat themselves.

### 2. No Requirement to Document Elimination of Suspects

In fact, what I found particularly troubling in reviewing the materials relevant to this case is the fact that the Special Orders did not require detectives to document the identity of or investigative steps taken to eliminate particular suspects. After the Laverty disclosure and Jones litigation, the CPD undertook its own internal audit and identified as one of the main components of "street files" documents (be it memos or case or supplementary reports from other crimes) that are "utilized in suspect elimination and identification . . . ."[217] (In fact, one of Laverty's "street files" memos dealt with a possible alternative offender.) As Hickey explained, substantive efforts were going undocumented as part of the investigative storyline.[218] Nonetheless, the CPD did nothing to address this identified problem.

Indeed, Hickey testified that it was not the policy of the CPD to require detectives to document suspects who were eliminated.[219] To the contrary, it was permissible and consistent with the Special Orders not to document the identity or investigative steps taken to eliminate a suspect if a detective did not think that information was relevant or if the detective discounted it

---

[214] Hickey [2015] 20
[215] Stibich Test. P4500, 4505, 4515-17
[216] Hickey 339; Hickey [2015] 24-25, 33, 61, 90-91
[217] Brady & Tolliver P2459; Hickey 165-66
[218] Hickey 165
[219] Hickey 237-38

for some reason.[220]  In this case, that policy meant that none of the 1984 detectives investigating the Hermitage Fire (be they Bomb and Arson or Area 3) had to document information about Isabel Ramos – including her oral statement to Detective Micek – if they discounted it or if they determined it was not relevant because the case was closed as a noncriminal fire. Stated differently, as a result of the City's policy, the detectives were not required to include critical information about an alternative offender in any supplementary report or other official document in Kluppelberg's case. That is simply improper and unacceptable.

### 3.  No Requirement that Documents be Shared

Relatedly, the Special Orders and CPD's response to the street files problem failed to sufficiently address the sharing of information between and among different units. Special Order 83-1 was completely silent on detectives sharing information about cases between and among each other. While Special Orders 83-2 and 86-3 contained a provision requiring detectives to share information, that provision was deficient because it provided no guidance on how that sharing was to take place and what information was to be memorialized where.

As Hickey explained, Special Order 83-2 obligated a detective investigating case A with information about case B to turn over that information to the detective investigating case B. But the Order (and 86-3 that followed) did not require either detective to create a document with the information about case B; it could simply be communicated orally.[221]

Moreover, the Special Orders were silent on distribution.[222] In other words, CPD had no policy on how or when to share documents between and among units. That meant that different units investigating the same crime were not required to share documents, even if those documents may have been highly pertinent to the crime.[223] So a GPR, memo or supplementary report created by Area 3 might not make into the Bomb and Arson investigative file for the same crime.

Worse yet, CPD policy also did not require a copy of a supplementary report listed under the RD for case A to go into the official file for case B even if it discussed information relevant to case B because the supplementary report was listed under the RD number for case A.[224] According to Hickey, documents were filed based on RD number without reference to their content.[225] In this case, that meant that CPD policy did not require a copy of Detective Micek's report documenting Isabel Ramos' oral statement to him to go into any – let alone the official – file for the Hermitage fire because that report was listed under the RD number for the Marshfield fire.

---

[220] Hickey 339; Hickey [2015] at 66-67
[221] Hickey 236-37
[222] Hickey [2015] 39
[223] Hickey [2015] 43, 46
[224] Hickey 356-58; Hickey [2015] 95
[225] Hickey 356-58

By compartmentalizing documents in this way and failing to require document sharing between and among detective units, there is a grave risk that critical information – even if orally communicated from one detective to the next – is not going to make its way to the prosecution or defense.

### 4. Still Permissible to Use Non-Official Forms

Finally, in addition to providing detectives with too much discretion about what to document, the Special Orders also provided detectives with too much discretion about how to document information – at least as applied in practice. Hickey testified that if a detective writes down his investigative activity on any piece of paper – regardless of whether it is on an official format – and that paper makes its way into the investigative file, the detective has satisfied Special Order 83-1 and 83-2.[226] Indeed, during his testimony, Hickey repeatedly explained that as long as information was documented, the format of that documentation – whether it is on a GPR or interwatch memoranda – was not relevant and the document would be accepted.[227] Likewise, Hickey testified that detectives were still permitted to take notes on blank forms.[228]

From what I can tell from my review of the pallet and homicide files, there were innumerable examples of memos or notes taken on a blank piece of paper. In no instance, did there appear to be a request to re-transcribe that information onto a GPR – and in some instances, the non-conforming or non-official document was the only place that the information appeared (e.g., it was not transcribed onto a case or supplementary report). This is in line with Hickey's testimony that as long as the information was written down, it was accepted as compliant with the order.

The problem with this approach is that it signals that the old ways – the ways of street files that the CPD should have been trying to correct – are acceptable. It creates a slippery slope: first allowing detectives to use non-official forms, then allowing them to keep the documents or a parallel file for their own use, and then keeping that information out of any official file. It is not only that best practices require enforcement of Special Orders to give them teeth, but also, given the circumstances here, strict adherence was necessary to create a new culture and practice so that detectives would not fall back into the old unlawful habit of using street files.

### E. Limited in Scope

Another way in which the Special Orders were defective is their limited scope: they only applied to detectives (and violent crimes detectives at that). For example, although multiple squads, units, divisions, etc. might be routinely involved in a homicide investigation, Special Orders 83-1 and 86-3 were directed only to detectives and not to gang crimes or other police officers. This resulted in, and apparently continues to result in, conflicting and incomplete investigative practices in serious crimes.

In fact, Hickey testified that he raised the fact that Special Order 83-1 was only addressed

---

[226] Hickey 373
[227] Hickey [2015] 21, 67, 73-74, 78
[228] Hickey [2015] 67

to the Detective Division and that the Department might want to look beyond the detective division to see if the problem extended to other units.[229] In fact, at some point, Hickey suggested that perhaps Research and Development and Auditing Internal Controls Division should get involved because there may be department-wide implications to the use of street files.[230] But there was no response from the chain of command to Hickey's concerns and CPD never looked to see if the problem of street files went beyond the Detective Division. This failure to look beyond the detectives – notwithstanding the fact that they worked closely with other units in investigating crimes – was deficient.

### F.      There was No Mechanism to Ensure Complete Response to Subpoena or Motion for Discovery

Finally, the Special Orders were deficient because there was no mechanism put into place in the Special Orders to ensure that the CPD provided a complete response – and produced *all* documents – when it received a subpoena, motion for discovery, or request from prosecutors.

According to Hickey, when a request for investigative documents is made to the Chicago Police Department, that request goes to the Records Division, Subpoena Service Unit.[231] A sergeant was in charge of the Subpoena Service Unit, and that sergeant reported to the assistant director and director of the Records Division.[232] It was the Record Division director's responsibility to set policy at the Subpoena Service Unit.[233]

The Chicago Police Department had no written policy that he was aware of dictating how the Subpoena Service Unit should search for documents responsive to a subpoena or request for records.[234] In addition, there were no directives addressing "policies, safe checks, [or] procedures . . . to ensure that when a request came in either by a subpoena or by an informal request from and Assistant State's Attorney . . . that all of the necessary information including exculpatory information was provided by the subpoena services unit in response to that request."[235]

The subpoena service unit was staffed by non-sworn personnel with the title "clerk."[236] There was no formal training of personnel assigned to respond to subpoenas.[237] Whether all of the different units that worked on a given investigation were searched for documents responsive to a subpoena depended in large part on the discretion and experience of the personnel searching for the documents, such that a subpoena for all documents under a certain RD number would not necessarily result in the production of all documents corresponding to that particular investigation.[238] Hickey described the Subpoena Service Unit's effort to respond to document

---

[229] Hickey 207-208
[230] Hickey 208
[231] Hickey 358
[232] Hickey, *Rivera v. Guevara, et al.*, No. 12 C 4428, pages 146-47
[233] Ibid, pages 159-60
[234] Ibid, pages 36-37
[235] Ibid, page160
[236] Ibid, pages 147-48
[237] Ibid, page 39
[238] Ibid, pages 43-46

requests as an "art."[239] He acknowledged that it is possible in a case with multiple units working on the same investigation that the subpoena could only go to one of those units.[240]

All of this was true as well with respect to requests for documentsmade by the Cook County State's Attorney's Office to the Chicago Police Department.[241] This system was in place before Mr. Kluppelberg's conviction and continued in force until after the year 2000.[242]

Though Hickey testified that in some cases, the Subpoena Service Unit would produce copies of the general offense case report, supplementary reports, and arrest reports that were in the records division, he acknowledged that it is possible in Kluppelberg's case in particular that the Subpoena Service Unit would have sent a request for documents to Area 3 but not to Bomb and Arson.[243]

This system, or lack thereof, for responding to requests for documents and producing investigative materials, including exculpatory information, is deficient. Because there are multiple files in multiple locations pursuant to the Special Orders and CPD's design, there is an acute need for policies, practices and training to ensure that exculpatory information was produced to prosecutors and criminal defendants. Indeed, the judge in the *Palmer* litigation had expressly identified the risk of constitutional violations from the City's failure to have policies to ensure that information from investigative and working files were produced to prosecutors and criminal defendants. Yet, even afterward the City failed to put in place the requisite policies, practices and training. (*See supra*; *see also* City's Response to Seventeenth Requests for Production, Nos. 1 and 3, *Rivera*) We know in Kluppelberg's case, for example, that the New File was not produced. The events in the *Palmer* litigation – and Kluppelberg's case –are examples of what happens when the City lacks policies to ensure that exculpatory and/or impeaching evidence is turned over.

## Opinion #12: The City Failed to Provide Proper Training and Oversight on Special Orders Designed to Eliminate Street Files

The testimony and documents that I have reviewed in this case (and to some extent, in other cases involving the CPD in which I have rendered opinions) establish a pervasive pattern and practice by the Chicago Police Department of issuing critically important orders, but then failing to provide proper training and oversight on those orders.

When you have a practice as ingrained as the street files practice was, it is simply not sufficient to have one training session to ensure that the old practices are eliminated and new practices are adopted. Hickey testified that he provided a one-time training to about 1,000 detectives.[244] He said each training session was done in groups of 30-40 people, and lasted

---

[239] Ibid, page 162; Hickey 362-63
[240] Hickey 362-63
[241] Hickey, *Rivera*, page 125
[242] Ibid, pages 151-53
[243] Hickey 359-61
[244] Hickey 308-309

approximately 3 hours.[245] During that three hour training session, he went over Special Order 83-1. One training session was wholly insufficient to try to change a decades-long practice. In fact, Hickey testified that the years after Special Order 83-1, he learned that unit detectives were reverting back to carrying their own files on the street separate and apart from the file maintained by CPD.[246] Nothing, however, was done about this.

In addition, there was testimony from the detectives that there was confusion not only about whether personal notes had to be retained, but also about whether the Special Orders applied to the entire detective division or just to violent crimes.[247] This confusion underscores the importance of training – beyond simply the three hours that were given.

Similarly, there was no oversight to ensure that detectives were following the Special Orders. In fact, documents that I reviewed in conjunction with this report, suggest just the opposite: that detectives were continuing to submit documents that were not compliant with the Special Orders and that the street file practice continued, yet no discipline or corrective action was taken.

On a department-wide scale, there was no action taken whatsoever to ensure that the Special Orders were being followed. As Hickey explained, although he did a sampling prior to the Special Orders being issued, he did not do one at any time after Notice 82-2 and was not aware of anyone else conducting such an audit.[248] On a more individual scale, Hickey testified that members of the police department were supposed to conduct inspections pursuant to Special Order 83-2 but Hickey has no idea if they actually conducted such investigations.[249] Similarly, Commander Stibich testified that supervisors were supposed to review files but he had no idea how often, when or the manner in which that review was conducted.[250]

In fact, it appears that there was no oversight to ensure that the Special Orders were being enforced and that the street files practice was eliminated. This is particularly troubling given the importance and scope of the problem and is certainly deficient. You cannot expect a department-wide, decades-long practice to be eliminated overnight by simply issuing an order that was read at roll call a few times. You have to take more action to ensure that the practice ceases to continue.

## Opinion #13: The City's Failure to Document How Cases are Interconnected

Testimony and documents indicate a negligent pattern and practice by the Chicago Police Department of allowing separate units to work on essentially the same cases, but not formally requiring timely sharing and recording of information developed.

---

[245] Hickey 309
[246] Hickey 321, 327
[247] Micek 2015 dep, page 22
[248] Hickey 160-61, 166, 167
[249] Hickey 375-76.
[250] Stibich 4504-05

The detective investigatory failures that have been identified throughout my report above demonstrate to me that at least as of March 1984 to July 1989, the Chicago Police Department failed to promulgate clear standards for all aspects of investigations, that the standards that they had promulgated were deficient in numerous ways, that it failed to properly train its officers in the application of those standards, that it failed to supervise and enforce the policies, practices, and procedures that it had issued, that it failed to discipline officers or detectives when they violated these policies, practices, and procedures, and that as an institution it had an intentional and willful indifference to whether the policies were or were not followed.

In particular, and as described more fully above, the CPD failed to:

- Implement requirements for document sharing, including among and within units investigating the same case;
- Implement requirements for documenting information that is shared among and within units; and
- Implement requirements that documents that are created as part of the investigation into case A but relevant to case B make it into the investigative and permanent retention files for case B

In Kluppelberg's case, these deficiencies meant that (a) information about Isabel Ramos never made it into the permanent retention file for the Hermitage fire; (b) Isabel Ramos' oral confession given to and memorialized by Detective Micek never made it into the Area 3 investigative file or the permanent retention file for the Hermitage Fire. In addition, because the Bomb and Arson investigative file has never been produced, it is possible that documents in that file were not part of the 1984 Area 3 investigative file and vice-versa. Because detectives used their working files to store information in real time about the on-going homicide investigation, it is entirely possible – and likely – that their area investigative files contained information about leads and alternate suspects from other cases that they could safely omit from the official report and still comply with policy.

### Opinion #14: The City's Failure to Properly Retain Files

I was also very concerned to learn that important portions of the City's original files were "missing". In fact, the City has yet to produce the Bomb & Arson Investigative file in this case notwithstanding the fact that there almost assuredly was one. Likewise, the first time the New File was produced to Kluppelberg was in this civil litigation in 2014: It was never produced to the prosecutor or to Kluppelberg during the criminal proceedings.

The integrity of police investigatory files is a central requirement of department policies, procedures and the law. These policies, procedures, and laws are specifically designed to protect defendants from evidence not being produced to them (and the integrity of the files also protects the police officers from false accusations that they have withheld material or conducted an insufficient investigation). Here, files that were not disclosed, but belatedly found (despite very clear policies that when such cases result in convictions, those materials are to be retained).

Based on my professional experience and the importance that all such materials be retained after a conviction occurs (and especially a murder conviction), <u>this should not and must not happen</u>.

After every murder conviction, there are numerous appeals, post-conviction filings (both state and federal), re-investigations, and, possibly integrity reviews. Therefore, it is vital that all files that relate to a murder investigation or trial be carefully preserved for future proceedings. The fact that these files were missing from CPD's retained files is both extraordinary and unacceptable. Indeed, I have been told that some of the City's own witnesses have admitted that such missing files are violations.

The relevance of vital materials that were missing suggests that the direct violation of the City (and presumably the County's) policies that these records be maintained was not uncommon. It further causes suspicion whether all of the information about exculpatory materials were or were not turned over to the prosecutors and/or defense counsel as required.

The belated discovery by CPD of what has been described as the "New File"[251] is consistent with the pattern and practice that I have observed in similar cases involving the failure to produce relevant records to prosecutors, defendants, courts, and plaintiffs. The casual treatment of essential records by detectives, supervisors, commanders, and the CPD compounds the operational and administrative integrity of investigatory notes, files, reports, and records. To have a dysfunctional system that allows multiple documents to not be included in the same case, and/or related cases is professionally inexcusable. It is obvious that the Marshfield (Ramos) fire investigation material was "scattered" and incomplete in one central location. Some Ramos material was included in Area 3 Violent Crime unit files, some in Bomb and Arson unit files, Area 3 street/working files, Bomb and Arson street/working files, and some (but certainly not all) in the Permanent Retention file. The same deficiency holds true in like regards for the Lupercio/Hermitage fire investigation.

### Opinion #15: Use of Street Files Continued Even After Enactment of Special Orders

#### A. Evidence of Street Files in Other Cases

The continued use of street files has been documented in several other cases throughout the City of Chicago. Nathson Fields was convicted of the double murder of Jerome Smith and Talman Hickman in 1986.[252] Fields' conviction was thrown out after a court granted his petition for post-conviction relief, but he was re-tried in 2009 and acquitted.[253] He then filed a civil rights lawsuit against the City of Chicago in 2011, and during discovery for the civil lawsuit, a street file "of over a hundred pages of police reports concerning the Smith/Hickman murders was located in a nondescript file cabinet at the Area 1 police station, along with files relating to other murders."[254]

---

[251] City's amended answers to plaintiff's 7th set of interrogatories (11/17/2014)
[252] Fields v. City of Chicago, Memorandum Opinion and Order, page 2
[253] Ibid at 3
[254] Ibid at 7

Another street file was disclosed in civil litigation about Jacques Rivera's conviction for the murder of Felix Valentin. Rivera discovered that Area Five had a Detective Division street file containing 30 pages of police reports and documents related to the Valentin homicide investigation that had not been disclosed to him during his criminal proceedings.[255]

Similarly, in another homicide investigation in Area Six, a 1992 supplementary report explained that "[a] copy of this case report was obtained and placed into the street file for future reference."[256] And, a memorandum authored by the Commander of the Area Six Detective Division in 1989 – six years after Special Order 83-1 – enclosing a document located during a search of "street files" in a homicide investigation.[257] In transmitting those documents to the Director of the Records Division, the memorandum explained that the enclosed reports "would not be part of the [record division] file" in the case.[258]

### B. Street File in Kluppelberg's Case

Likewise, the failure to properly document and turn over the New File to Kluppelberg was not an anomaly. Rather, it was an example of the Chicago Police Department's continued use of street files. As noted above, based on the Department's definition of a "Street File," I opine that the New File was a Street File.

**Opinion #16: Failure to take any after-action internal review of what happened**

After Cook County Circuit Court Judge Rickey Jones vacated Kluppelberg's conviction and Judge Michael McHale issued a Certificate of Innocence, the CPD should have undertaken an internal review; its failure to do so is not proper. This is especially true when one considers the evidence that the detectives had in 1984 and still have regarding other possible suspects.

The Chicago Police Department's apparent conscious decision to not investigate its detectives' failures and its own failures with respect to the 1987-1988 investigation, and its failure to re-open the fire investigation once the innocence of Kluppelberg was determined by the court, provides additional support for the conclusion that CPD does not have an interest in learning and correcting what went so terribly wrong in this case or in bringing closure to the deaths of the Lupercio family. An unbiased and professional review of the material produced in discovery during this case would, in my opinion, have led a responsible and professional police organization to proactively take the lead in re-opening the investigation into the deaths of the Lupercio family. The Department owes this at least to the victims and the victims' families, but also to the entire community it polices to ensure that these types of failures to not repeat again and again and again.

---

[255] Rivera v. Guevara, No. 12 CV 4428, Supplemental Mem. in Support of Plaintiff's Mot. to Compel Prod. of Street File Doc., Dckt No. 99

[256] Docket 212-3

[257] Docket 212-4

[258] Ibid.

Relatedly, there was a belated discovery of 4 pallets of CPD records[259] said to contain:

1. Investigative files for arson, criminal sexual assaults, sexual offender, aggravated battery, battery, aggravated assault, theft, burglary, robbery, kidnapping, death investigation, suicide, intimidation, and justified homicide;
2. A single box of homicide files in which the defendant was acquitted;
3. Copies of thousands of individual case reports in sequential order;
4. Court notification books and arrest books;
5. Administrative documents such as control books, arrest tabulations, monthly crime summaries, details, daily arrest records, drivers' license inspections, election duty roster, homicide data sheets, in-service training course, shotgun certifications, and health insurance claims forms.

The documents, when dated, appear to fall between 1983 and 1994, and should have resulted in a search, evaluation, documentation, indexing, and (where appropriate) notification of contents to each and every individual defendant in any past or current CPD cases, regardless of conviction. There is nothing in the material that I reviewed that would indicate that this has been done. Similarly, the CPD should have determined why the pallets were there and whether this was part of a larger problem of files going missing or being improperly filed (such as the files found in the basement in Area Central in the Fields litigation, which also included files from Area 3[260]).

## Concluding Statement

I have provided my opinions based upon my training, experience, and after a careful evaluation of the totality of circumstances in this matter. I utilized all of the facts and data known to me, and applied generally accepted police management principles and methods. From a police management perspective the failure of each defendant to act in a lawful and professional manner caused Kluppelberg unnecessary harm. In addition, the City of Chicago's widespread practice of encouraging, condoning and at best, ignoring officers' violations of appropriate procedures, practices and law caused Kluppelberg harm.

Confessions, especially those obtained from individuals after lengthy interrogations, are all notoriously suspect. To have a police agency base an entire homicide investigation and charge request solely on confessions and/or coerced witness statements alone, without *any* corroborating or physical evidence, is practically unheard of. Absent any physical evidence, motive, or material circumstances, the case is worthless and no experienced investigator or prosecutor would have

---

[259] City's amended answers to plaintiff's 7th set of interrogatories (11/17/2014), pages 10-11
[260] Samuel Brown Testimony, *Fields v. City of Chicago*, 10-cv-1168 at 2321:
    Q: In the basement of Area 1, there's also homicide files for Area 4; is that correct?
    A. Yes, there are.
    Q. And there's homicide files for Area 3; is that correct?
    A. Yes.
    Q. And these are homicide investigatory files; isn't that correct?
    A. Yes, it is.

proceeded in these circumstances without the required additional evidence needed to corroborate the statements.

The circumstances of taking and creating such statements are too easily abused by the investigators because it is the investigators who control all of the information that is being developed, and this is especially true when they do so, as in this case, without audio recording, without video recordings, without any other proper records of the specific times and information that the various components of the interrogation occurred.

Here, far too many standard operating procedures for police department investigations were not followed. Information as simple and straightforward as documenting how much of the period that someone is being held they were they actually questioned, when such questioning sessions began and ended, and a summary of what was addressed and said in each session should be summarized and preserved by any competent and trained detective.

Considering all of the facts that the Detectives assert regarding James Kluppelberg's initial arrest, voluntary cooperation, delay in questioning, voluntary admission of guilt, speed of such admission once questioning began, no attorney being present, the complete lack of corroboration of any of the statements made by Kluppelberg (other than the supposed corroboration of subsequent "witness statements" that the detectives obtained), as well as the provable false facts contained in Kluppelberg's supposedly voluntary statement, I find it highly improbable that the scenario played out the way detectives assert, and based on my experience I instead identify in this investigation many of the telltale signs of the detectives having a pre-determined outcome that they wanted to achieve for purposes of the investigation, and they proceeded to intentionally and wrongfully arrest, interrogate, and coerce false and concocted confession from Kluppelberg and of the so-called "witnesses" for the purpose of clearing a murder investigation they had not yet solved and which they were not, as of that time, taking all required steps to try to solve. In my professional opinion, the detectives' acts and omissions were professionally inexcusable and unconscionable.

In sum, it is my professional opinion to a reasonable degree of professional certainty in the law enforcement community, and based on longstanding and well-accepted law enforcement practices, that the defendant detectives in this case arrested and caused to be charged James Kluppelberg, even though they had no reasonable and supported basis to believe he was involved in the deaths of members of the Lupercio family, and that they intentionally and wrongfully undertook the numerous acts and omissions identified throughout this report for the purpose of clearing an open investigation and removing this individual from the streets of Chicago. I am not aware of any valid basis on which these detectives reasonably obtained Kluppelberg's alleged "confession", or the allegedly corroborative "witness statements" of others, or for recommending that he be charged and prosecuted for the Lupercio deaths.

I reserve the right to supplement or modify this report and my opinions expressed in the report to the extent that additional information is presented to me and to the extent permitted by rules.

72

Pursuant to 28 U.S.C Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

_____

Michael D. Brasfield

**Attachment A - Court Experience**

Report of Plaintiff's Expert – Michael D. Brasfield

**James Kluppelberg v. Jon Burge and City of Chicago, et al.**
No. 1:13-cv-03963

**Compliance with Federal Rule of Procedure 26 (a) (2) (B)**
**Testimony at Trial or Deposition for Preceding Four Years**

I have either testified at trial or deposition as a witness in Federal, State, and Local Courts throughout my law enforcement career. These appearances have been in both civil and criminal matters. I have appeared in Federal District Courts in Fort Lauderdale, Miami, Seattle, and Tacoma. Civil litigation involving all types of police procedures and practices have included the use of force; police pursuits; deadly force; negligent selection, training, and retention; as well as class action and Federal Section 1983 civil rights cases. Specifically, testimony and/or deposition over the last four years are as follows:

- In the United States District Court (District of Colorado) - Schneider v. City of Grand Junction Police Department, et al. - Civil Action No. 10-cv-01719-MSK-KLM – For Plaintiff – Violation of Constitutional Rights.
- In the United States District Court (Eastern District of Washington) – Creach v. Spokane County, et al. – Cause No. 2:2011cv00432 – For Defendant – 42:1983 Civil Rights Act. - Fatal shooting by police officer.
- In the Superior Court of the State of Washington (Spokane County) – Glidden v. City of Spokane Valley, et al. – Cause No. 11-2-04437-2 – For Defendant – Police Shooting - Negligent training, supervision, retention.
- In the United States District Court (Northern District of Illinois, Eastern Division) – April Ortiz – Cause No. 04-CV-7423 – For Plaintiff – 42 USC, 1983 - Denial of Medical Care.
- In the United States District Court (Eastern District of Washington) – Duncan v. Liberty Lake – Cause No. 2:2012cv00219 – For Defendant – Violation of Civil Rights.
- In the United States District Court (Eastern District of Washington) - Thoma v. City of Spokane – Cause No. CV-12-156-EFS – For Defendant – 42 U.S.C. Sec. 1983
- In the United States District Court (Western District of Washington) – Theoharis v. Rongen – Cause No. 2:13-cv-01345-RAJ – For Plaintiff – 42 U.S.C Sec. 1983 – Excessive and Unreasonable Force and Unreasonable Search and Seizure.
- In the Court of Common Pleas of Allegheny County, Pennsylvania – Commonwealth of Pennsylvania v. Leon Ford – Cause No. CC201303273 – For Defendant - Multiple criminal charges.
- In the Superior Court for the State of Alaska (Anchorage) – Boshears v. State of Alaska – Cause No. 3AN-13-07970CI – For Plaintiff – Negligence of Duty.
- In the United States District Court (Northern District of Illinois, Eastern Division) – Percy Coleman v. City of Chicago – Cause No. 12C-10061 – For Plaintiff – 42 USC, 1983 – Wrongful Death.

- In the United States District Court (Northern District of Illinois, Eastern Division) – Deon Patrick v. City of Chicago – Cause No. 14C-3658 – For Plaintiff – 42 USC, 1983 – Wrongful Conviction.
- In the United States District Court (Eastern District of Washington) – Goehring v. City of Kennewick – Cause No. 4:14-CV-5104-RMP – For Defendant – Violation of Civil Rights.

In addition, I have provided my expert opinion, reviewed, consulted, or been retained in civil litigation related matters for plaintiffs and defense attorneys or governmental entities over 50 times in the last 10 years in Riverside County (CA), Trinity County (CA), Prescott County (AZ), Chicago (IL), Garland (TX), Bradley County (TN), Hazard (KY), Clallam County (WA), Franklin County (WA), Reno (NV), Unalakleet (AK), Whatcom County (WA), Albany (OR), Jackson (MS), Seattle (WA), Columbia (SC), and Sweetwater County (WY).

75

**Attachment B - Report of Material Reviewed**

Plaintiff's Expert – Michael D. Brasfield

**James Kluppelberg v. Jon Burge and City of Chicago, et al.**
No. 1:13-cv-03963

I have been provided and reviewed the following documents and materials concerning this case:

- First Amended Complaint (4/10/2014) – 23 pages
    - 134.Amended Complaint.pdf
- William Alletto deposition transcript (3/2/2015) – 353 pages
    - Alletto, William - Vol.pdf
- Area File (circa 1988) – 95 pages
    - area file.pdf
- Jon Burge deposition transcript (5/6/2014) – 145 pages
    - Burge Dep Transcript.pdf
- City's amended answers to plaintiff's 7th set of interrogatories (11/17/2014) – 14 pages
    - City Amended Answers to Plaintiff INT 7.pdf
- City's response to plaintiff's 2nd set of requests for admissions (6/16/2014) – 14 pages
    - City Response to Plaintiff RTA 2.pdf
- Fire Investigation Report #F104537 (3/23/1984) – 8 pages
    - CITY-KLUP_000683-CITY-KLUP_000690.pdf
- Fire Investigative Inventory file #F104537 (circa 1984) – 11 pages
    - CPDREV_00000196.pdf
- Victor M. Vega-Valentin deposition transcript (4/11/2014) – 220 pages
    - DEPOSITION OF VICTOR VEGA VALENTIN.pdf
- Michael Duffin deposition transcript (6/23/2014) – 172 pages
    - Duffin, Michael - Vol_ I.pdf
- James Kluppelberg deposition transcript (3/31/2015) – 429 pages
    - James Kluppelberg 03-31-1015.fullprint.pdf
    - James Kluppelberg 03-31-2015.index.pdf
- George Jenkins deposition transcript (5/12/2014) – 289 pages
    - Jenkins, George - Vol_ I.pdf
- William Kelly deposition transcript (2/4/2015) – 399 pages
    - Kelly, William - Vol.pdf
- Wayne Micek deposition transcript (4/16/2014) – 356 pages
    - Micek, Wayne - Vol.pdf
- Wayne Micek deposition transcript (6/10/2015) – 72 pages
    - 108907 Micek, Wayne K. 061015 fullprint.pdf
- Wayne Micek deposition index (6/10/2015) – 14 pages
    - 108907 Micek, Wayne K. 061015 index.pdf
- John Nelson deposition transcript (4/17/2014) – 126 pages

76

- o   Nelson, John - Vol.pdf
- Lawrence Tuider deposition transcript (4/18/2014) – 254 pages
  - o   Tuider, Lawrence - Vol.pdf
- Kenneth Urbon deposition transcript (7/2/2014) – 276 pages
  - o   Urbon, Kenneth - Vol_full.pdf
- Duane Glassco deposition transcript (7/18/2014) – 169 pages + 87 exhibit pages
  - o   GLASSCO, DUANE.pdf
  - o   Exhibits 1 through 11
- Branigan Investigative Report - Exhibit 05 (P5825-5827) 6/23/2010 – 3 pages
  - o   P5825-5827.pdf
  - o   Branigan Investigative Report - Exhibit 06 (P5823-5824) 9/13/2010 – 3 pagesP5822-5824.pdf
- Rolston deposition transcript (5/8/2015) – 474 pages
  - o   Rolston.pdf
  - o   Leonard Ralston 05-08-2015.index.pdf
- Permanent Retention file (3/24/1984 & onward) – 49 pages
  - o   permanent retention file.pdf
- New File (3/24/1984 & onward) – 60 pages
  - o   new file .PDF
- John Smith deposition transcript (6/17/2015) – 226 pages
  - o   John Smith exhibit 1 – 58 pages
  - o   John Smith exhibit 2 – 2 pages
  - o   John Smith exhibit 3 – 4 pages
  - o   John Smith exhibit 4 – 4 pages
  - o   John Smith exhibit 5 – 3 pages
  - o   John Smith exhibit 6 – 1 page



- Francis Huber deposition transcript (4/29/2015) and attachments - 170 pages
  - o   1 Huber 042915-1.pdf (5)
  - o   2 Huber 042915-2.pdf (1)
  - o   3 Huber 042915-3.pdf (1)
  - o   4 Huber 042915-4.pdf (1)
- Chicago Police Personnel Training Records (CITY-KLUP_000475-523) – 49 pages

- - Jon Burge (1)
  - Leonard Ralston (2)
  - John Schmitz (12)
  - James Farley (2)
  - William Kelly (9)
  - Thomas Ptak (2)
  - Kenneth Urbon (2)
  - Michael Duffin (1)
  - George Jenkins (1)
  - John Nelson (9)
  - Victor Vega (1)
  - Wayne Micek (6)
  - Denis Guest (1)
- Leonard Rolston – Chicago Police Personnel File (JGS 2979-3051) – 73 pages
- Palmer v. City of Chicago,  Case No. 82C 2349 – 3,312 pages
  - P2477-5788 (Palmer v. City of Chicago).pdf
- Chicago Police Department Special Orders – 17 pages
  - Special Order 82-2.pdf (3)
  - Special Order 83-1.pdf (5)
  - Special Order 83-2.pdf (5)
  - Special Order 86-3.pdf (4)
- Standard Operating Procedure Chapter 18
- General Order 82-15 (City_Klupp_2205-08) – 4 pages
  - General order 82-15.pdf
- Memo, April 18 1986 (JGS 7012-7018)
- CPD Supplementary Report – Lassiter Homicide #T 532-804 (11/23/1992) – 2 pages
  - 212-3.Ex C.pdf
- CPD "To-From" memo regarding Manuel Rivera (10/19/1989) – 1 page
  - 212-4.Ex D.pdf
- Kluppelberg Trial Transcript documents – 892 pages
  - P1-240.pdf
  - P241-431.pdf
  - P432-606.pdf
  - P607-830.pdf
  - P831-892.pdf
- Andrew Robertson deposition (6/25/2015) – 87 pages
  - 124692 Robertson.Andrew 062515.fullprint.pdf
- Michelle Brittain deposition (1/14/2015) – 186 pages
  - Brittain, Michelle.pdf
- City's Second Amended Responses and Objections (12/18/2014) – 15 pages
  - City 2nd Amd Objections and Responses to Plaintiff's INT 7.pdf
- City's Fourth Amended Responses and Objections (6/26/2015) – 15 pages
  - Fourth Amended Objections and Responses to Plaintiff's Seventh Set of Interrogatories to the Defendant City of Chicago.pdf
- James Hickey deposition – Part 1 (7/29/2014) – 290 pages
  - Hickey (pt1).pdf

78

- James Hickey deposition – Part 2 (7/31/2014) – 118 pages
  - Hickey (pt2).pdf
- Russell Ogle report (5/23/2008) – 14 pages
  - P2406-2419 (Ogle Report).pdf
- Joseph Perfetti deposition (6/11/2015) – 179 pages
  - Perfetti, Joseph.pdf
- Isabel Ramos statement (3/24/1984) – 1 page
  - Ramos statement (CITY-KLUP_926).pdf
- City's Third Amended Objections and Responses (6/23/2015) – 14 pages
  - Third Amended Objections and Responses to Plaintiff's Seventh Set of Interrogatories to the Defendant City of Chicago.pdf
- Verification – City's 4th Amended O&R by CPD Sgt. Galen T. Caldwell (undated) – 1 page
  - Verification, Fourth Amended Objections and Responses to Plaintiff's Seventh Set of Interrogatories to the Defendant City of Chicago.pdf
- Verification - City's 3rd Amended O&R by CPD Sgt. Galen T. Caldwell (undated) – 1 page
  - Verification, Third Amended Objections and Responses to Plaintiff's Seventh Set of Interrogatories to the Defendant City of Chicago.pdf
- City's Fourth Amended Responses to Seventh Set of Interrogatories
- Old Area 3 Files (6/30/2015) – 46 pages
  - 260-11.Ex K.pdf
- Third and California Area 3 Files (6/30/2015) – 8 pages
  - 260-11.Ex L.pdf
- Bonnie Kluppelberg deposition (5/14/2015) – 67 pages
  - 051415bonnie_hileman_cond_N_ex.pdf
- Marshall Weinberg deposition (5/20/2015) – 256 pages
  - 125593 Weinberg.Marshall 052015.fullprint.pdf
- O&R to Plaintiff's Third Set of Requests for Admissions (11/17/2015) – 16 pages
  - City Objections and Response to Plaintiff's RTA 3.pdf
- Jail Medical Record by Cermak Health Service - 17 pages
  - CITY KLUP 3286-3302.pdf
- Michael Colander deposition (6/24/2015) – 146 pages
  - 124690 Colander.Michael 062415.fullprint.pdf
- James Hickey deposition (6/9/2015) - 160 pages
  - 108851 Hickey-James K. 060915.fullprint.pdf
- James Hickey deposition, Rivera v. Guevara (6/10/14) – 62 pages
  - Hickey Dep Rivera v. Guevara (6-10-14) (condensed).pdf
- James Hickey deposition, Rivera v. Guevara (5/6/14) – 43 pages
  - Hickey Dep Rivera v. Guevara Part 1 (5-6-14) (condensed).pdf
- Andrew Robertson Deposition (6/25/15) – 87 pages
  - Robertson.Andrew   062515.fullprint.pdf
- Janet McCarthy Deposition (12/09/2015) – 188 pages
  - McCarthy.Janet   120915.fullprint.pdf
- Santos Lupercio Deposition (05/15/2015) – 76 pages

- o Santos Lupercio   05-15-2015.fullprint.pdf
- Chicago OPA report to CPD Superintendent (Goldston – Sanders 11/2/1990) – 98 pages
  - o P7167-7264 Goldston_Sanders.Report (00000002).pdf
- 118 Documented Burge Area 2 and 3 Torture Victims 1972-1991 – 14 pages
  - o P7265-7278 Documented-TorturesurvivorsunderBurge (00000002).pdf
-
- National Registry of Exonerations. University of Michigan Law School. Maurice Possley. Before June 2012
- Garrett B: Judging innocence. Colum L Rev 108:55–142 (2008); Leo R: Police Interrogation and American Justice. Harvard University Press (2008).
- P2453-2476.pdf
  - o Teletype
  - o Brady & Tolley Memo
  - o Memo to Raymond Clark from Sgt. Brady
  - o Memo to Raymond Clark from John Stibich
- Report of Theodore Adams (8/3/2015)
- Samuel Brown Testimony, *Fields v. City of Chicago*, 10-cv-1168 (4/22/2014) – 43 pages
  - o Brown Testimony 04-22-2014  FIELDS V CITY Trial 4-22-14.pdf
- City of Chicago's Amended Response to Plaintiff's Seventeenth Set of Requests to Produce Documents (3/27/2015) – 6 pages
  - o DOC17 City's Amended Response, Rivera v. Guevara.pdf
- Supplemental Memorandum in Support of Plaintiff's Motion to Compel Production of Street Files, *Rivera v. Guevara*.
  - o 99.Supp Mem re Street Files.pdf
- Memorandum Opinion and Order, *Fields v. City of Chicago* (2/6/2014) – 30 pages
  - o Memorandum Opinion Order, Fields v. City of Chicago.pdf
- *Jones v. City of Chicago*, 856 F.2d 985, 988 (7th Circuit 1988)
  - o Production Letters from City2015.09.02 - Production Letter to Plaintiff.pdf
  - o 2015.09.15 Production Letter to Plaintiff.pdf
  - o 2015.09.18 - Production Letter to Plaintiff.pdf
  - o 2015.09.22 - Production Letter to Plaintiff.pdf
  - o 2015.10.05 - Production Letter to Plaintiff.pdf

- o 2015.10.20 - Production Letter to Plaintiff.pdf
  - o 2015.10.27 - Production Letter to Plaintiff.pdf
  - o 2015.11.02 - Production Letter to Plaintiff.pdf
  - o 2015.08.11 - Production Letters to Plaintiff.pdf
  - o 2015.08.18 Production Letter to Plaintiff.pdf
  - o 2015.08.25 Production Letter to Plaintiff.pdf
  - o 2015.08.28 Production Letter to Plaintiff.pdf
- Major Crime Worksheets – 1,073 pages
  - o City 29562-29714 (Major Crime Worksheets).pdf -153 pages
  - o City 29744-29986 (Major Crime Worksheets).pdf – 228 pages
  - o City 32719-32896 (Major Crime Worksheets).pdf – 150 pages
  - o City 33032-33176 (Major Crime Worksheets).pdf – 131 pages
  - o City 33317-33560 (Major Crime Worksheets).pdf – 244 pages
  - o City 33712-33873 (Major Crime Worksheets).pdf – 162 pages
  - o City 34315-32316 (Major Crime Worksheets).pdf – 2 pages
  - o City 34618-34620 (Major Crime Worksheets).pdf – 3 pages
- Pallet Files – 20,348 pages
  - o CITY-KLUP_012298 - 13988.pdf – 1,470 pages
  - o CITY-KLUP_013999 - 15021.pdf – 1,023 pages
  - o CITY-KLUP_015022 - 15959.pdf – 855 pages
  - o CITY-KLUP_015960 - 17766.pdf – 1,517 pages
  - o CITY-KLUP_017767 - 20564.pdf – 2,226 pages
  - o CITY-KLUP_020565 - 21448.pdf – 773 pages
  - o CITY-KLUP_021449 - 23234.pdf – 1,287 pages
  - o CITY-KLUP_023235 - 23251.pdf – 17 pages
  - o CITY-KLUP_023266 - 25742.pdf – 1,786 pages
  - o CITY-KLUP_025743 - 26494.pdf – 513 pages
  - o CITY-KLUP_026495 - 27804.pdf – 811 pages
  - o CITY-KLUP_027805 - 27862.pdf – 58 pages
  - o CITY-KLUP_027683 - 27954.pdf – 91 pages
  - o CITY-KLUP_027955 - 34766.pdf – 6,746 pages
  - o CITY-KLUP_034793 - 34899.pdf – 107 pages
  - o CITY-KLUP_034900 - 35293.pdf – 394 pages
  - o CITY-KLUP_035294 - 35754.pdf – 461 pages
  - o CITY-KLUP_035754 - 35768.pdf – 15 pages
  - o CITY-KLUP_035769 - 35821.pdf – 53 pages
  - o CITY-KLUP_035822 - 35912.pdf – 91 pages
  - o CITY-KLUP_035915 - 35922.pdf – 8 pages
  - o CITY-KLUP_035923 - 35926.pdf – 4 pages
  - o CITY-KLUP_035927 - 35946.pdf – 20 pages
  - o CITY-KLUP_035947 - 35964.pdf – 18 pages
  - o CITY-KLUP_035965 - 35968.pdf – 4 pages

- Homicide Files, 19,687 pages
  - o CITY-KLUP_012472- CITY-KLUP_012601 (130 pages)
  - o CITY-KLUP_012602- CITY-KLUP_012681 (80 pages)

- o CITY-KLUP_013009- CITY-KLUP_013054 (46 pages)
- o CITY-KLUP_013055- CITY-KLUP_013130 (76 pages)
- o CITY-KLUP_013131- CITY-KLUP_013165 (35 pages)
- o CITY-KLUP_013228- CITY-KLUP_013493 (266 pages)
- o CITY-KLUP_013494- CITY-KLUP_013581 (88 pages)
- o CITY-KLUP_013582- CITY-KLUP_013651 (70 pages)
- o CITY-KLUP_013652- CITY-KLUP_013715 (64 pages)
- o CITY-KLUP_013716- CITY-KLUP_013859 (144 pages)
- o CITY-KLUP_013860- CITY-KLUP_013917 (58 pages)
- o CITY-KLUP_013918- CITY-KLUP_013988 (71 pages)
- o CITY-KLUP_013999- CITY-KLUP_014138 (140 pages)
- o CITY-KLUP_014585- CITY-KLUP_014693 (109 pages)
- o CITY-KLUP_014694- CITY-KLUP_014850 (157 pages)
- o CITY-KLUP_038100-CITY-KLUP_038170 (71 pages)
- o CITY-KLUP_038174-CITY-KLUP_038335 (162 pages)
- o CITY-KLUP_038530-CITY-KLUP_038747 (218 pages)
- o CITY-KLUP_038748-CITY-KLUP_038805 (58 pages)
- o CITY-KLUP_038852-CITY-KLUP_039044 (193 pages)
- o CITY-KLUP_039045-CITY-KLUP_039178 (134 pages)
- o CITY-KLUP_040549-CITY-KLUP_040695 (147 pages)
- o CITY-KLUP_040808-CITY-KLUP_040913 (106 pages)
- o CITY-KLUP_041296-CITY-KLUP_041350 (55 pages)
- o CITY-KLUP_042005-CITY-KLUP_042086 (82 pages)
- o CITY-KLUP_042583-CITY-KLUP_042635 (53 pages)
- o CITY-KLUP_044272-CITY-KLUP_044353 (82 pages)
- o CITY-KLUP_045227-CITY-KLUP_045386 (160 pages)
- o CITY-KLUP_045462-CITY-KLUP_045507 (46 pages)
- o CITY-KLUP_045877-CITY-KLUP_046179 (303 pages)
- o CITY-KLUP_046180-CITY-KLUP_046245 (66 pages)
- o CITY-KLUP_046246-CITY-KLUP_046452 (207 pages)
- o CITY-KLUP_046604-CITY-KLUP_046754 (151 pages)
- o CITY-KLUP_046895-CITY-KLUP_046945 (51 pages)
- o CITY-KLUP_047010-CITY-KLUP_047072 (63 pages)
- o CITY-KLUP_047142-CITY-KLUP_047220 (79 pages)
- o CITY-KLUP_047599-CITY-KLUP_047672 (74 pages)
- o CITY-KLUP_048286-CITY-KLUP_048354 (69 pages)
- o CITY-KLUP_048578-CITY-KLUP_048662 (85 pages)
- o CITY-KLUP_048788-CITY-KLUP_048891 (104 pages)
- o CITY-KLUP_048892-CITY-KLUP_049048 (157 pages)
- o CITY-KLUP_049370-CITY-KLUP_049508 (139 pages)

- o CITY-KLUP_049644-CITY-KLUP_049783 (140 pages)
- o CITY-KLUP_049784-CITY-KLUP_049805 (22 pages)
- o CITY-KLUP_049806-CITY-KLUP_049868 (63 pages)
- o CITY-KLUP_049869-CITY-KLUP_049926 (58 pages)
- o CITY-KLUP_049927-CITY-KLUP_049971 (45 pages)
- o CITY-KLUP_049972-CITY-KLUP_050077 (106 pages)
- o CITY-KLUP_050162-CITY-KLUP_050261 (100 pages)
- o CITY-KLUP_052914-CITY-KLUP_053061 (148 pages)
- o CITY-KLUP_053062-CITY-KLUP_053082 (21 pages)
- o CITY-KLUP_053829-CITY-KLUP_054142 (314 pages)
- o CITY-KLUP_057568-CITY-KLUP_057703 (136 pages)
- o CITY-KLUP_058409-CITY-KLUP_058493 (85 pages)
- o CITY-KLUP_059646-CITY-KLUP_059920 (275 pages)
- o CITY-KLUP_060061-CITY-KLUP_060238 (178 pages)
- o CITY-KLUP_060602-CITY-KLUP_060728 (127 pages)
- o CITY-KLUP_061456-CITY-KLUP_061584 (129 pages)
- o CITY-KLUP_061646-CITY-KLUP_061703 (58 pages)
- o CITY-KLUP_061704-CITY-KLUP_061977 (274 pages)
- o CITY-KLUP_063019-CITY-KLUP_063129 (111 pages)
- o CITY-KLUP_063698-CITY-KLUP_063859 (162 pages)
- o CITY-KLUP_064951-CITY-KLUP_065093 (143 pages)
- o CITY-KLUP_065094-CITY-KLUP_065241 (148 pages)
- o CITY-KLUP_066750-CITY-KLUP_066931 (182 pages)
- o CITY-KLUP_067103-CITY-KLUP_067221 (119 pages)
- o CITY-KLUP_067746-CITY-KLUP_067862 (117 pages)
- o CITY-KLUP_068502-CITY-KLUP_068648 (147 pages)
- o CITY-KLUP_069103-CITY-KLUP_069236 (134 pages)
- o CITY-KLUP_069841-CITY-KLUP_070212 (372 pages)
- o CITY-KLUP_072893-CITY-KLUP_072975 (83 pages)
- o CITY-KLUP_074112-CITY-KLUP_074168 (57 pages)
- o CITY-KLUP_078824-CITY-KLUP_078899 (76 pages)
- o CITY-KLUP_079909-CITY-KLUP_080047 (139 pages)
- o CITY-KLUP_080048-CITY-KLUP_080138 (91 pages)
- o CITY-KLUP_081746-CITY-KLUP_081800 (55 pages)
- o CITY-KLUP_082233-CITY-KLUP_082319 (87 pages)
- o CITY-KLUP_082608-CITY-KLUP_082674 (67 pages)
- o CITY-KLUP_082921-CITY-KLUP_083052 (132 pages)
- o CITY-KLUP_083100-CITY-KLUP_083174 (75 pages)
- o CITY-KLUP_083346-CITY-KLUP_083429 (84 pages)
- o CITY-KLUP_083690-CITY-KLUP_083774 (85 pages)

- o CITY-KLUP_083775-CITY-KLUP_083861 (87 pages)
- o CITY-KLUP_083862-CITY-KLUP_083976 (115 pages)
- o CITY-KLUP_083977-CITY-KLUP_084035 (59 pages)
- o CITY-KLUP_084036-CITY-KLUP_084211 (176 pages)
- o CITY-KLUP_084212-CITY-KLUP_084322 (111 pages)
- o CITY-KLUP_084323-CITY-KLUP_084331 (9 pages)
- o CITY-KLUP_084475-CITY-KLUP_084550 (76 pages)
- o CITY-KLUP_084551-CITY-KLUP_084696 (146 pages)
- o CITY-KLUP_084697-CITY-KLUP_084785 (89 pages)
- o CITY-KLUP_084786-CITY-KLUP_084820 (35 pages)
- o CITY-KLUP_084821-CITY-KLUP_084902 (82 pages)
- o CITY-KLUP_085003-CITY-KLUP_085097 (95 pages)
- o CITY-KLUP_085098-CITY-KLUP_085168 (71 pages)
- o CITY-KLUP_085400-CITY-KLUP_085448 (49 pages)
- o CITY-KLUP_085733-CITY-KLUP_086006 (274 pages)
- o CITY-KLUP_086535-CITY-KLUP_086599 (65 pages)
- o CITY-KLUP_086600-CITY-KLUP_086806 (207 pages)
- o CITY-KLUP_086807-CITY-KLUP_087006 (200 pages)
- o CITY-KLUP_087007-CITY-KLUP_087233 (227 pages)
- o CITY-KLUP_087522-CITY-KLUP_087776 (255 pages)
- o CITY-KLUP_087893-CITY-KLUP_088022 (130 pages)
- o CITY-KLUP_090378-CITY-KLUP_090439 (62 pages)
- o CITY-KLUP_090495-CITY-KLUP_090647 (153 pages)
- o CITY-KLUP_090648-CITY-KLUP_090705 (58 pages)
- o CITY-KLUP_090706-CITY-KLUP_090788 (83 pages)
- o CITY-KLUP_090789-CITY-KLUP_091033 (245 pages)
- o CITY-KLUP_091100-CITY-KLUP_091309 (210 pages)
- o CITY-KLUP_091310-CITY-KLUP_091399 (90 pages)
- o CITY-KLUP_091400-CITY-KLUP_091534 (135 pages)
- o CITY-KLUP_091752-CITY-KLUP_091903 (152 pages)
- o CITY-KLUP_091904-CITY-KLUP_091998 (95 pages)
- o CITY-KLUP_092090-CITY-KLUP_092579 (490 pages)
- o CITY-KLUP_092795-CITY-KLUP_092955 (161 pages)
- o CITY-KLUP_092956-CITY-KLUP_093138 (183 pages)
- o CITY-KLUP_093139-CITY-KLUP_093210 (72 pages)
- o CITY-KLUP_095901-CITY-KLUP_096049 (149 pages)
- o CITY-KLUP_100702-CITY-KLUP_100839 (138 pages)
- o CITY-KLUP_100937-CITY-KLUP_100987 (51 pages)
- o CITY-KLUP_100988-CITY-KLUP_101052 (65 pages)
- o CITY-KLUP_101053-CITY-KLUP_101134 (82 pages)

- o CITY-KLUP_101218-CITY-KLUP_101264 (47 pages)
- o CITY-KLUP_101265-CITY-KLUP_101359 (95 pages)
- o CITY-KLUP_101360-CITY-KLUP_101472 (113 pages)
- o CITY-KLUP_101527-CITY-KLUP_101626 (100 pages)
- o CITY-KLUP_101891-CITY-KLUP_102011 (121 pages)
- o CITY-KLUP_102012-CITY-KLUP_102092 (81 pages)
- o CITY-KLUP_106385-CITY-KLUP_106483 (99 pages)
- o CITY-KLUP_106484-CITY-KLUP_106598 (115 pages)
- o CITY-KLUP_106599-CITY-KLUP_106686 (88 pages)
- o CITY-KLUP_106913-CITY-KLUP_106977 (65 pages)
- o CITY-KLUP_107190-CITY-KLUP_107313 (124 pages)
- o CITY-KLUP_107314-CITY-KLUP_107316 (3 pages)
- o CITY-KLUP_108879-CITY-KLUP_108952 (74 pages)
- o CITY-KLUP_109068-CITY-KLUP_109165 (98 pages)
- o CITY-KLUP_112167-CITY-KLUP_112430 (264 pages)
- o CITY-KLUP_112431-CITY-KLUP_112688 (258 pages)
- o CITY-KLUP_112809-CITY-KLUP_112879 (71 pages)
- o CITY-KLUP_115405-CITY-KLUP_115475 (71 pages)
- o CITY-KLUP_115476-CITY-KLUP_115546 (71 pages)
- o CITY-KLUP_115547-CITY-KLUP_115632 (86 pages)
- o CITY-KLUP_115633-CITY-KLUP_115692 (60 pages)
- o CITY-KLUP_115693-CITY-KLUP_115931 (239 pages)
- o CITY-KLUP_116047-CITY-KLUP_116131 (85 pages)
- o CITY-KLUP_116132-CITY-KLUP_116228 (97 pages)
- o CITY-KLUP_116229-CITY-KLUP_116329 (101 pages)
- o CITY-KLUP_116330-CITY-KLUP_116570 (241 pages)
- o CITY-KLUP_116571-CITY-KLUP_116649 (79 pages)
- o CITY-KLUP_116722-CITY-KLUP_116797 (76 pages)
- o CITY-KLUP_116798-CITY-KLUP_116865 (68 pages)
- o CITY-KLUP_117003-CITY-KLUP_117099 (97 pages)
- o CITY-KLUP_117255-CITY-KLUP_117369 (115 pages)
- o CITY-KLUP_118545-CITY-KLUP_118802 (258 pages)
- o CITY-KLUP_118803-CITY-KLUP_118920 (118 pages)
- o CITY-KLUP_118921-CITY-KLUP_119083 (163 pages)
- o CITY-KLUP_119551-CITY-KLUP_119712 (162 pages)
- o CITY-KLUP_119815-CITY-KLUP_120009 (195 pages)
- o CITY-KLUP_120032-CITY-KLUP_120099 (68 pages)
- o CITY-KLUP_120100-CITY-KLUP_120285 (186 pages)
- o CITY-KLUP_120286-CITY-KLUP_120395 (110 pages)
- o CITY-KLUP_120396-CITY-KLUP_120562 (167 pages)

- o CITY-KLUP_120563-CITY-KLUP_120682 (120 pages)
- o CITY-KLUP_127549-CITY-KLUP_127560 (12 pages)

- Permanent Retention Files
  - o CITY-KLUP_034900 - 35293 (394 pages)

- Sample for Inventories, 5402 pages
  - o CITY-KLUP_038174-CITY-KLUP_038335 (162 pages)
  - o CITY-KLUP_039725-CITY-KLUP_039837 (113 pages)
  - o CITY-KLUP_040549-CITY-KLUP_040695 (147 pages)
  - o CITY-KLUP_041701-CITY-KLUP_041734 (34 pages)
  - o CITY-KLUP_042005-CITY-KLUP_042086 (82 pages)
  - o CITY-KLUP_042520-CITY-KLUP_042582 (63 pages)
  - o CITY-KLUP_043248-CITY-KLUP_043288 (41 pages)
  - o CITY-KLUP_043541-CITY-KLUP_043612 (72 pages)
  - o CITY-KLUP_043741-CITY-KLUP_043848 (108 pages)
  - o CITY-KLUP_044890-CITY-KLUP_044914 (25 pages)
  - o CITY-KLUP_047440-CITY-KLUP_047491 (52 pages)
  - o CITY-KLUP_047888-CITY-KLUP_047995 (108 pages)
  - o CITY-KLUP_048224-CITY-KLUP_048285 (62 pages)
  - o CITY-KLUP_049167-CITY-KLUP_049369 (203 pages)
  - o CITY-KLUP_049644-CITY-KLUP_049783 (140 pages)
  - o CITY-KLUP_053829-CITY-KLUP_054142 (314 pages)
  - o CITY-KLUP_057356-CITY-KLUP_057567 (212 pages)
  - o CITY-KLUP_059995-CITY-KLUP_060060 (66 pages)
  - o CITY-KLUP_061361-CITY-KLUP_061455 (95 pages)
  - o CITY-KLUP_062745-CITY-KLUP_062904 (160 pages)
  - o CITY-KLUP_064390-CITY-KLUP_064483 (94 pages)
  - o CITY-KLUP_065529-CITY-KLUP_065556 (28 pages)
  - o CITY-KLUP_066358-CITY-KLUP_066432 (75 pages)
  - o CITY-KLUP_067103-CITY-KLUP_067221 (119 pages)
  - o CITY-KLUP_069322-CITY-KLUP_069406 (85 pages)
  - o CITY-KLUP_072976-CITY-KLUP_073241 (266 pages)
  - o CITY-KLUP_073302-CITY-KLUP_073375 (74 pages)
  - o CITY-KLUP_077873-CITY-KLUP_077908 (36 pages)
  - o CITY-KLUP_078029-CITY-KLUP_078075 (47 pages)
  - o CITY-KLUP_080604-CITY-KLUP_080798 (195 pages)
  - o CITY-KLUP_081673-CITY-KLUP_081745 (73 pages)
  - o CITY-KLUP_082374-CITY-KLUP_082450 (77 pages)
  - o CITY-KLUP_082608-CITY-KLUP_082674 (67 pages)

- o CITY-KLUP_084475-CITY-KLUP_084550 (76 pages)
- o CITY-KLUP_087007-CITY-KLUP_087233 (227 pages)
- o CITY-KLUP_101473-CITY-KLUP_101526 (54 pages)
- o CITY-KLUP_102012-CITY-KLUP_102092 (81 pages)
- o CITY-KLUP_108879-CITY-KLUP_108952 (74 pages)
- o CITY-KLUP_111659-CITY-KLUP_111857 (199 pages)
- o CITY-KLUP_115693-CITY-KLUP_115931 (239 pages)
- o CITY-KLUP_115932-CITY-KLUP_115989 (58 pages)
- o CITY-KLUP_116229-CITY-KLUP_116329 (101 pages)
- o CITY-KLUP_116650-CITY-KLUP_116721 (72 pages)
- o CITY-KLUP_118498-CITY-KLUP_118544 (47 pages)
- o CITY-KLUP_118545-CITY-KLUP_118802 (258 pages)
- o CITY-KLUP_119551-CITY-KLUP_119712 (162 pages)
- o CITY-KLUP_120563-CITY-KLUP_120682 (120 pages)
- o CITY-KLUP_127673-CITY-KLUP_127687 (15 pages)
- o CITY-KLUP_128264-CITY-KLUP_128387 (124 pages)
- Index of Inventories
  - o All Inventories Index.xls

- Multiple files per RD number, 3701 pages
  - o CITY-KLUP_037920-CITY-KLUP_038062 (143 pages)
  - o CITY-KLUP_046946-CITY-KLUP_046965 (20 pages)
  - o CITY-KLUP_048892-CITY-KLUP_049048 (157 pages)
  - o CITY-KLUP_049644-CITY-KLUP_049783 (140 pages)
  - o CITY-KLUP_049784-CITY-KLUP_049805 (22 pages)
  - o CITY-KLUP_049806-CITY-KLUP_049868 (63 pages)
  - o CITY-KLUP_049869-CITY-KLUP_049926 (58 pages)
  - o CITY-KLUP_049927-CITY-KLUP_049971 (45 pages)
  - o CITY-KLUP_049972-CITY-KLUP_050077 (106 pages)
  - o CITY-KLUP_052914-CITY-KLUP_053061 (148 pages)
  - o CITY-KLUP_053062-CITY-KLUP_053082 (21 pages)
  - o CITY-KLUP_057356-CITY-KLUP_057567 (212 pages)
  - o CITY-KLUP_059218-CITY-KLUP_059432 (215 pages)
  - o CITY-KLUP_068649-CITY-KLUP_068649 (1 pages)
  - o CITY-KLUP_068650-CITY-KLUP_068859 (210 pages)
  - o CITY-KLUP_072504-CITY-KLUP_072715 (212 pages)
  - o CITY-KLUP_072716-CITY-KLUP_072892 (177 pages)
  - o CITY-KLUP_076551-CITY-KLUP_076613 (63 pages)
  - o CITY-KLUP_076614-CITY-KLUP_076656 (43 pages)
  - o CITY-KLUP_076959-CITY-KLUP_077000 (42 pages)

- o CITY-KLUP_077001-CITY-KLUP_077133 (133 pages)
- o CITY-KLUP_077134-CITY-KLUP_077266 (133 pages)
- o CITY-KLUP_077681-CITY-KLUP_077765 (85 pages)
- o CITY-KLUP_077796-CITY-KLUP_077872 (77 pages)
- o CITY-KLUP_084036-CITY-KLUP_084211 (176 pages)
- o CITY-KLUP_084323-CITY-KLUP_084331 (9 pages)
- o CITY-KLUP_106348-CITY-KLUP_106384 (37 pages)
- o CITY-KLUP_106385-CITY-KLUP_106483 (99 pages)
- o CITY-KLUP_107146-CITY-KLUP_107189 (44 pages)
- o CITY-KLUP_107190-CITY-KLUP_107313 (124 pages)
- o CITY-KLUP_107314-CITY-KLUP_107316 (3 pages)
- o CITY-KLUP_113595-CITY-KLUP_113668 (74 pages)
- o CITY-KLUP_113669-CITY-KLUP_113670 (2 pages)
- o CITY-KLUP_115547-CITY-KLUP_115632 (86 pages)
- o CITY-KLUP_120032-CITY-KLUP_120099 (68 pages)
- o CITY-KLUP_126893-CITY-KLUP_126928 (36 pages)
- o CITY-KLUP_127421-CITY-KLUP_127431 (11 pages)
- o CITY-KLUP_127432-CITY-KLUP_127447 (16 pages)
- o CITY-KLUP_127448-CITY-KLUP_127457 (10 pages)
- o CITY-KLUP_127458-CITY-KLUP_127468 (11 pages)
- o CITY-KLUP_127469-CITY-KLUP_127499 (31 pages)
- o CITY-KLUP_127527-CITY-KLUP_127548 (22 pages)
- o CITY-KLUP_127549-CITY-KLUP_127560 (12 pages)
- o CITY-KLUP_127561-CITY-KLUP_127576 (16 pages)
- o CITY-KLUP_127688-CITY-KLUP_127709 (22 pages)
- o CITY-KLUP_127710-CITY-KLUP_127889 (180 pages)
- o CITY-KLUP_128445-CITY-KLUP_128514 (70 pages)

CITY-KLUP_128515-CITY-KLUP_128530 (16 pages)

**Attachment C – Compensation**

Report of Plaintiff's Expert – Michael D. Brasfield

**James Kluppelberg v. Jon Burge and City of Chicago, et al.**
No. 1:13-cv-03963

My compensation for work related to this case is $300 per hour, with a four hour minimum. Deposition and trial testimony is billed at a flat rate of $1200 for up to four hours. After four hours, the hourly rate of $300 is charged. Time spent traveling and waiting to testify is considered billable time. Reasonable expenses may be charged with prior approval.

**Attachment D - Resume**

Report of Plaintiff's Expert – Michael D. Brasfield

**James Kluppelberg v. Jon Burge and City of Chicago, et al.**
No. 1:13-cv-03963

### Education:

Bachelor of Arts, Police Administration - University of Washington, Seattle, WA

Senior Management Institute for Police - Police Executive Research Forum, Washington, D.C.

### Professional Experience:

#### 2003-2009    Elected Sheriff of Jefferson County, Washington

After retiring for a second time, and returning to the small rural county that I had chosen as my permanent retirement home, I ran for public office. This 1,815 square mile, predominantly rural county has a full time resident population of 26,000. The Jefferson County Sheriff's Office, established in 1853, is one of the oldest law enforcement organizations in the state of Washington. The Sheriff's Office budget for fiscal year 2008 was $4.5 million. The Office has 50 employees and a large network of volunteers and reserve deputies. I was re-elected to a 2nd term which began on January 1, 2007 by an 80% majority. I retired from this office in March 2009.

#### 2001 – 2003   Consultant and Program Director - South Downtown Foundation

Responsibility for administering several million dollars for improving public safety in the International District, SoDo, and Pioneer Square neighborhoods of Seattle. Coordinated efforts with the City of Seattle, the Seattle Police Department and various interest and civic groups in the area.

#### 1995-2001    Police Chief of Fort Lauderdale, Florida

The 33 square mile city has a full time resident population of 165,000. An estimated additional 60,000 "snow bird" residents return to second homes in the city during the 6-month winter season. Fort Lauderdale serves as the seat of government for a county of 1.5 million and is in the heart of a diverse tri-county (Dade, Broward, and Palm Beach) population of 4 million. As one of the premier tourist destinations in South Florida, over 12 million passengers come through the airport each year. The ocean port handles the second largest number of cruise ship sailings in the world. Fort Lauderdale serves as the governmental and business hub of the County.

90

The City employed a workforce of 2,600 employees and operated with a budget of over $334 million. IAFF, FOP, and AFSCME Unions represent the fire, police, and general employees, respectively. The Fort Lauderdale Police Department had a budget of $60 million and consisted of 500 sworn positions and 300 civilian positions. In 2000 the department received 600,000 calls for service, dispatched over 200,000 of those calls, made over 20,000 arrests, and issued over 65,000 traffic citations. The Department is now nationally recognized as an innovative leader in the field of community policing and was one of only a handful of cities nationwide to be selected as a Community Policing Demonstration Site by the Department of Justice. Oversaw and operated the only municipal jail in the state of Florida.

A small sampling of initiatives undertaken over the 6 years includes:

- First large municipal police agency in Florida to receive accreditation
- Automobile anti-theft tactics that have reduced auto thefts by nearly 35% in one year
- Aggressive property crime reduction efforts in the area of strengthened pawn shop record sharing and accountability
- Partnerships with State Probation and Parole staff in "Ride Along Programs" with our patrol officers to remove violators from the community
- Establishment of "Citizens on Patrol" in specially marked vehicles to enhance public safety
- Aggressive enforcement of traffic and "quality of life" ordinances to help neighborhoods
- Establishment of a Nuisance Abatement Board to address drug and prostitution activity
- Significant reduction in alarm false dispatches to allow increased proactive patrol
- Innovative anti-prostitution and anti-gang programs
- Federal "Weed & Seed" designation, which has allowed us to partner with a wide range of community and governmental entities
- Thirteen sessions of the Citizen Police Academy - a 3 month, 35 hour program
- Summer COPJAM activities for at risk youth
- Truancy and curfew programs which have dramatically reduced the rate of property crimes

In 1997 undertook a city financed $10 million technology enhancement initiative for the Department. Half of it was for a new state of the art Computer Aided Dispatch (CAD) and Record Management System (RMS), and the other half for network servers, individual personal computers, Geographical Information System (GIS), Automated Fingerprint Identification System (AFIS), internet access, bar coding for property control and evidence, and the largest law enforcement deployment of handheld, pen based, Motorola Forte' computers for patrol officers.

During my 6 year tenure, we successfully competed and received nearly $8 million in Federal and State grants. More than forty percent of the grant funds have gone into non-

91

traditional community and social service support programs, in lieu of police personnel and hardware.

During my tenure there was a dramatic improvement in the relationship between our unions and management. We successfully negotiated two (3 year) contracts without incident or rancor. Although there has been an increase in professional expectations of accountability for our employees, disciplinary appeals to arbitration had been all but eliminated.

### 1990-1995    Assistant Chief - Seattle Police Department

An appointive, exempt position reporting directly to the Chief of Police - acted as the Executive Assistant Chief of the Department and commanded the Support Bureau. The Police Department employed over 1,875 personnel and had an annual budget of $120 million.

Responsible for and oversaw the activity of nine uniquely different divisions including: Training; Internal Investigations; Crime Prevention: Intelligence; Communications; Personnel; Records & Evidence; Data Processing; and Fiscal, Property, & Fleet Management. As the Executive Assistant Chief, was responsible for the day-to-day operation of the agency including authority for hiring, discipline, and administrative decisions. In addition, acted as primary management labor relations and contract negotiator with 12 labor unions. This bureau employed approximately 100 sworn and 450 civilians. Served as the Seattle Police Department's jail liaison executive, as well as jail contract negotiator. Routinely served as acting Chief of Police.

### 1986-1990    Major

An appointive, exempt position - command of SPD Inspectional Services Division, reported directly to the Chief of Police. Coordinated and implemented strategic planning for the entire Department and conducted periodic performance inspections of Departmental units. Oversaw the preparation of the Department's budget, as well as the formulation of departmental rules, policies, and procedures. Acted as liaison with elected officials and community groups.

### 1984-1985    Captain

Command of SPD North Precinct. Responsible for Patrol operations in an area of the city that encompassed a population of 200,000 people and a uniformed force of 130 officers. The precinct contained over a dozen unique communities including the University of Washington. Routinely served as acting Patrol Major overseeing all four patrol precincts - 550 sworn personnel.

**1982-1983    Captain**

Command of SPD Internal Investigations Section, reported directly to the Chief of Police.  Responsible for overseeing the investigation of alleged misconduct of nearly 2,000 sworn and civilian members of the Department.

**1980-1981    Captain**

Command of SPD West Precinct.  Responsible for Patrol Operations in the downtown core of the city.  Major league sports facilities, waterfront maritime industries, transportation, and financial, retail and business headquarters serving a daytime population of 300,000 -command of 150 sworn officers.

**1978-1979    Lieutenant**

Commander of Basic Recruit Training.  Responsible for the operation and administration of the recruit training for SPD as well as the contract recruit training with the Washington State Criminal Justice Training Commission for over 100 law enforcement agencies state-wide.  Average recruit population on campus of 140 in 4 concurrent classes, as well as a multi-agency training staff.  Also served for a brief period as a patrol watch commander in the downtown business area.

**1975 – 1977    Sergeant**

Served as supervisor in the following:  Patrol - uniformed patrol operations; Special Patrol Unit - plain clothes tactical response to priority crime problems, deployment at unusual occurrences, dignitary protection; Internal Investigations Section - investigation of citizen, departmental, and criminal allegations of police misconduct.

**1972 – 1975    Detective**

Served in the following:  Accident Investigation Section - plain clothes follow-up investigation of hit-run, serious injury and fatality motor vehicle accidents; Burglary Section - investigated serious crimes directed against property; Vice Section - investigated organized crime, prostitution, pornography, liquor, and gambling activities, and engaged in extended undercover assignments.

**1968-1971    Patrol Officer**

Started with Mercer Island (WA) P.D. in 1968, and then began career with Seattle P.D. in 1969.

93

**Training (small sampling):**

- Police Liability and the Management of Police Discipline - Americans for Effective Law Enforcement
- Police Technology and Efficiency - International Association of Chiefs of Police
- Total Quality Management - The Institute for Quality Service
- Assessment Center Operations and Management - Federal Bureau of Investigation
- Executive Development - Federal Bureau of Investigation
- Incident Command System – National Incident Management System – Through Level 4
- Gambling Enforcement and Supervision - Washington State Gambling Commission
- Labor Relations and Negotiations - Federal Bureau of Investigation and Washington Association of Cities
- Hazardous Materials Incident Management - National Highway Transportation Safety Board
- Dignitary Protection Management and Supervision - U.S. Secret Service
- Supervision of Auto Theft Investigation - National Auto Theft Bureau
- Police Traffic Supervision - Northwestern Traffic Institute
- Municipal Budget Management - Office of Management and Budget
- Training for Trainers - Washington State Criminal Justice Training Commission
- Managing Computer Operations - Department of Administrative Services
- Investment in Excellence - The Pacific Institute
- Organized and White Collar Crime - The University of Washington
- Management of Computer Fraud Investigations - USWEST

**Law Enforcement Committees & Membership:**

**National:**

- International Association of Chiefs of Police – Honorary Life Member
- Police Executive Research Forum – Past Committee Co-Chair
- National Sheriffs' Association – Life Member
- American Correctional Association - Member

**State:**

- Appointed by the Governor and served as the only law enforcement member of the Washington State Sentencing Guidelines Commission (August 2003 – 2008)
- Appointed to, and served as the chair of the Washington State Board on Law Enforcement Training Standards and Education (March 2003 – 2008)
- Homicide Investigation Tracking System (HITS) Advisory Board (May 2003 – 2006)
- Executive Board member of the Washington State Sheriffs' Association (May 2006 – 2008)

94

- Washington Association of Sheriffs and Police Chiefs – Honorary Life Member

**Local:**

- Past chair of Jefferson County Domestic Violence/Sexual Assault Program
- Member of the Peninsula College Criminal Education Program Board
- Executive Board of Olympic Peninsula Narcotics Enforcement Task Force
- Executive Board of JeffCom 911 Communications System
- Jefferson County Law & Justice Council
- Olympic Law Enforcement Executives Association

**Achievements (sampling):**

- Past Co-Chair of Private Sector Liaison Committee - International Association of Chiefs of Police
- Coordinator for successful federal grant application on Community Policing Program (N.I.J.)
- National Institute of Justice Symposium on Closed Circuit Television for deterrence and investigation of crime - Washington, DC
- National Institute of Justice Symposium on Metro Area Drug Strategies - Washington, DC
- Coordinator for federal grant application on Narcotics Strategies in Public Housing
- Coordinator for federal grant application on Targeting Young Adult Gang Leaders
- Federal Bureau of Investigation - National Law Enforcement Budget Advisory Group - Appointed by the Director of the F.B.I.
- Broward County Chiefs' Association - President and Steering & Training Committees
- Southeast Florida Drug Task Force - Board of Directors
- Metropolitan Broward County Organized Crime Intelligence Unit - Board of Directors
- Florida Police Chiefs' Association - Ethics Committee
- Visiting management assessor for cities of New Orleans (LA), Columbus (OH), Portland, (OR), San Francisco (CA), Bremerton (WA)
- Contract consultant (KOBA Associates) for peer review of NIJ grant work on the establishment of Computer Crimes Units
- Contract consultant (Federal Housing & Urban Development Grant) to visit and analyze 6 major U.S. cities (Boston, Baltimore, Memphis, Oxnard, Cleveland & Seattle) police agencies and community policing in public housing
- Subject matter and best practices expert on law enforcement personnel selection, screening, and back grounding – USIS Investigative Solutions Conference
- Developed statewide law enforcement employment screening and back grounding model for the Washington Association of Sheriffs and Police Chiefs
- Oversight responsibility for acquisition of Computer Aided Dispatch and Mobile Digital Terminal System

- Oversight responsibility for acquisition of Comprehensive Shared Records Management System
- Oversight responsibility for acquisition of Jail Booking Video Imaging System
- Oversight responsibility for management of computerized Patrol Deployment Model
- Responsibility for design and construction oversight, acceptance and start-up of new police precinct facility
- Evaluation of Detective Decentralization Program and Detective Case Management System
- Acquisition of Geo-based Automated Mapping System

## Selected Publications:

- Contributor - National Institute of Justice - Off-Duty Police Employment Practices
- Citation - Federal Bureau of Investigation article on joint Police-Community Partnerships
- Author of national and state articles - alarm reduction issues and strategies
- Author of several historical articles - homicides of police officers

## Prior Law Enforcement & Community Service:

- Major City Chiefs - Human Resources sub-committee
- Washington State Chiefs & Sheriffs - Information Technology sub-committee
- Mayor's Task Force on Street People and the Homeless
- Selection and oversight committee for Police Department Management Study consultant contract
- Selection and oversight committee for Police-Citizen Complaint Process consultant contract
- Executive Member - South Florida Regional Law, Safety, and Justice Committee
- Automated Fingerprint Identification System / Jails - On-site benchmark testing & nationwide visitation team
- Health Service and Police Community Based Alcohol Triage Program
- King County Executive - Jail Advisory Committee (JCWG)
- City of Seattle - Deferred Compensation Plan provider selection and oversight
- Evaluation and Selection Committee - RFP responses for design of new municipal campus
- Seattle Police Department - reorganization committee that resulted in Departmental restructuring
- Explorer Scout Law Enforcement Program
- United Way of Broward County - Board of Directors
- Broward County Commission on Substance Abuse - Chair, Board of Directors
- Broward County Juvenile Justice Advisory Board
- Broward County Substance Abuse Policy Advisory Board
- Broward Workshop - Criminal Justice Committee

96

- Florida Department of Law Enforcement - UCR Advisory Committee
- Alarm Association of Florida / Law Enforcement - Board of Directors (1996-1997)

97

**Supplement to Expert Report of Michael Brasfield**

**Attachment E – Bibliography of Background Source Materials**

     Following is a list of source materials that describe generally accepted policing practices, including at the relevant time period. The practices described include but are not limited to record-keeping, file maintenance, report writing, conducting homicide investigations, witness interrogations, supervision, etc.

     This list of reference materials is not intended to be exhaustive and is supplemented by my extensive experience with police practices, including my familiarity with the policies used by other police departments nationwide, as well as industry standards established by organizations like the International Association of Chiefs of Police.

<u>Reference Materials Generally</u>

Death Investigation: A Guide for the Scene Investigator
U.S. Department of Justice /Office of Justice Programs / National Institute of Justice

Crime Scene Investigation: A Guide for Law Enforcement
U.S. Department of Justice /Office of Justice Programs / National Institute of Justice

Homicide Guide
International Association of Chiefs of Police

Los Angeles Police Department SOP for Homicide Investigations
http://www.lapdonline.org/lapd_manual/volume_4.htm#710
Murder Book 710.30

Promoting Effective Homicide Investigations
Police Executive Research Foundation

Homicide Investigation Standard Operating Procedures
John M. Howell – Police Executive Forum

Homicide Process Mapping – Best Practices for Increasing Homicide Clearances
A Project of the U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Assistance

Practical Homicide Investigation Checklist and Field Guide, Second Edition
Vernon J. Geberth

Techniques of Crime Scene Investigation (now in 8th edition)
Barry A.J. Fisher

Homicide investigation; practical information for coroners, police officers, and other

investigators
Snyder, LeMoyne

Practical Cold Case Homicide Investigations Procedural Manual
Richard H. Walton

Death Investigation: Systems and Procedures
Randy Hanzlick

Forensic Pathology – Practical Aspects of Criminal and Forensic Investigations
Dominick DiMaio & Vincent J. M. DiMaio

Death Scene Investigation: A Field Guide
Scott A. Wagner

Death Investigator's Handbook – Volumes 1 & 2
Louis N. Eliopulos

Cold Case Homicides: Practical Investigative Techniques
Richard H. Walton

Homicide Scene Investigation – A Manual For Public Prosecutors
http://www.justiceacademy.org/iShare/Library-Training/Homicide-Scene-Manual.pdf

Death Scene Checklist Sheet
http://www.insidethetape.com/Jan-2011-EATH%20SCENE%20CHECKLIST%20SHEET.PDF

References that Largely Pre-Date Kluppelberg Investigation

Dr. Henry Faulds (1843-1930). A towering figure in the history of forensic sciences, it was Faulds who first recognized the value of fingerprints to criminal identification. The Faulds scrapbooks include research notes, original drawings and studies of fingerprint patterns and typology, as well as correspondence with individuals and crime fighting organizations around the world, dating from the (late 1870's) until shortly before the doctor's death in 1930.

International Association for Identification (www.theiai.org) founded in the (1915).

- *Sparks from the Anvil* 1933-1937
- IAI Newsletter 1940-1951
- ID News Aug 1951 - 1987
- *Journal of Forensic Identification* (JFI) 1988 - 2013

Locard, E. L'Enquete Criminelle et les Methodes Scientifique. Paris: Ernest Flammarion, (1920).

Homicide investigation; Frankel, Harold A. (1931)

Criminology – Robert H. Gault Northwestern University (1932)

La police scientifique. les homicides.--Les vols.--Les incendies criminels.--Les faux.--La fausse monnaie. Bischoff, Marc (1938)

Homicide investigation; practical information for coroners, police officers, and other investigators,

by Snyder, LeMoyne (1944, 1950, 1959, 1967, 1977)

Law of Belligerent Occupation - The Judge Advocate General's School (1945)

Techniques of Crime Scene Investigation (now in 8th edition) originally published in (1949)

Techniques of Crime Scene Investigation is a classic book on how to use forensic science to investigate crimes. The text was first published in Swedish in 1949 by Chief Superintendent Arne Svensson, director of the Laboratory, Criminal Investigation Department, and Superintendent Otto Wendel, Criminal Investigation Department, Stockholm, Sweden. In 1955 it was printed in English as Crime Detection and then revised into a second, expanded American Edition under the title Techniques of Crime Scene Investigation in 1965. In 1981 I was invited to revise it in a third edition and subsequently into fourth, fifth, sixth, seventh and eighth editions.

Kirk, P. L. *Crime Investigation*. New York: Interscience, John Wiley & Sons (1953).

The detection of secret homicide; a study of the medico-legal system of investigation of sudden and unexplained deaths. Havard, John D. J. (1960)

Institute on Homicide Investigation Techniques / presented by the Southwestern Law Enforcement Institute, Dallas, Texas; general editor: Robert A. Wilson. (1961)

Practical homicide investigation. With an introd. by William P. Maheady. (1961)

> "We have learned the lesson of history, ancient and modern, that a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses than a system which depends on extrinsic evidence independently secured through skillful investigation." *Escobedo v. Illinois*, 378 U.S. 478, 488–489 (1964)

Thorwald, J. Crime and Science. Harcourrt, Brace & World, Inc.: New York, [LC Cat. no. 67-20323]. (1966)

Police Detective Function (W.S.U.) by V. A. Leonard (1970)

Murder investigation. Oughton, Frederick (1971)

Fox, Richard H. and Carl L. Cunningham. Crime Scene Search and Physical Evidence Handbook.

Washington, D.C.: U.S. Department of Justice, National Institute of Justice, (1973).

Homicide: investigative techniques, by Daniel J. Hughes. (1974)

Kirk, P.L. *Crime Investigation*, *2nd Edition*. New York: John Wiley & Sons, (1974).

Police: the investigation of violence / Keith Simpson (1978)

Smyth, F. *Cause of Death: The Story of Forensic Science*. Van Nostrand Rheinhold Company: New York, [ISBN 0-442-20041-2]. (1980)

Zonderman, J. Beyond the Crime Lab: The New Science of Investigation. John Wiley & Sons: New York, [ISBN 0-471-62296-6]. (1980)

Homicide investigation standards textbook / Joseph C. DeLadurantey, Daniel R. Sullivan. (1980)

Saferstein, *R. Forensic Science Handbook, Volumes I, II, III*. Englewood Cliffs, N.J.: Prentice-Hall, (1982/1988/1993).

DeForest, P.R., R.E. Gaensslen, and H.C. Lee. *Forensic Science: An Introduction to Criminalistics*. New York: McGraw-Hill, Inc., (1983).

Rosenfield, I.; Ziff, E. van Loon, B. DNA for Beginners. Writers and Readers Publishing, Inc. [ISBN 0-86316-023-9, pkb.]. (1983)

Practical homicide investigation: tactics, procedures, and forensic techniques / Vernon J. Geberth. (1983)

_Michael D. Brasfield_

Signature

February 19, 2016

Date

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUES RIVERA, | ) | |
| | ) | Case No. 12 C 4428 |
| Plaintiff, | ) | |
| | ) | Hon. Joan B. Gottschall, |
| v. | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | Hon. Mary M. Rowland, |
| | ) | Magistrate Judge |
| Defendants. | ) | |
| | ) | JURY TRIAL DEMANDED |

**EXHIBIT B TO THE DECLARATION OF MICHAEL BRASFIELD**

### *Michael Brasfield and Associates, Inc.*

641 Olele Point Road                     Phone: 360-301-4465
Port Ludlow, WA 98365                     E-mail: brasfield@commandscene.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**Jacques Rivera v. Guevara, et al.**
No. 12 CV 4428

# ATTACHMENT D

## Michael D. Brasfield - Curriculum Vitae

### Education:

Bachelor of Arts, Police Administration - University of Washington, Seattle, WA

Senior Management Institute for Police - Police Executive Research Forum, Washington, D.C.

### Professional Experience:

#### 2003-2009    Elected Sheriff of Jefferson County, Washington

After retiring for a second time, and returning to the small rural county that I had chosen as my permanent retirement home, I ran for public office. This 1,815 square mile, predominantly rural, county has a full time resident population of only 26,000. The Jefferson County Sheriff's Office, established in 1853, is one of the oldest law enforcement organizations in the state of Washington. The Sheriff's Office budget for fiscal year 2008 was $4.5 million. The Office has 50 employees and a large network of volunteers and reserve deputies. I was re-elected to a 2nd term which began on January 1, 2007 by an 80% majority. I retired from this office in March 2009.

#### 2001 – 2003    Consultant and Program Director - South Downtown Foundation

Responsibility for administering several million dollars for improving public safety in the International District, SoDo, and Pioneer Square neighborhoods of Seattle. Coordinated efforts with the City of Seattle, the Seattle Police Department and various interest and civic groups in the area.

#### 1995-2001    Police Chief of Fort Lauderdale, Florida

The 33 square mile city has a full time resident population of 165,000. An estimated additional 60,000 "snow bird" residents return to second homes in the city during the 6-month winter season. Fort Lauderdale serves as the seat of government for a county of 1.5 million and is in the heart of a diverse tri-county (Dade, Broward, and Palm Beach) population of 4 million. As one of the premier tourist destinations in South Florida, over 12 million passengers come through the airport each year. The ocean port handles the second largest number of cruise ship sailings in the world. Fort Lauderdale serves as the governmental and business hub of the County.

The City employed a workforce of 2,600 employees and operated with a budget of over $334 million. IAFF, FOP, and AFSCME Unions represent the fire, police, and general employees, respectively. The Fort Lauderdale Police Department had a budget of $60 million and consisted of 500 sworn positions and 300 civilian positions. In 2000 the department received 600,000 calls for service, dispatched over 200,000 of those calls, made over 20,000 arrests, and issued over 65,000 traffic citations. The Department is

1

now nationally recognized as an innovative leader in the field of community policing and was one of only a handful of cities nationwide to be selected as a Community Policing Demonstration Site by the Department of Justice. Oversaw and operated the only municipal jail in the state of Florida.

A small sampling of initiatives undertaken over the 6 years includes:

- First large municipal police agency in Florida to receive accreditation
- Automobile anti-theft tactics that have reduced auto thefts by nearly 35% in one year
- Aggressive property crime reduction efforts in the area of strengthened pawn shop record sharing and accountability
- Partnerships with State Probation and Parole staff in "Ride Along Programs" with our patrol officers to remove violators from the community
- Establishment of "Citizens on Patrol" in specially marked vehicles to enhance public safety
- Aggressive enforcement of traffic and "quality of life" ordinances to help neighborhoods
- Establishment of a Nuisance Abatement Board to address drug and prostitution activity
- Significant reduction in alarm false dispatches to allow increased proactive patrol
- Innovative anti-prostitution and anti-gang programs
- Federal "Weed & Seed" designation, which has allowed us to partner with a wide range of community and governmental entities
- Thirteen sessions of the Citizen Police Academy - a 3 month, 35 hour program
- Summer COPJAM activities for at risk youth
- Truancy and curfew programs which have dramatically reduced the rate of property crimes

In 1997 undertook a city financed $10 million technology enhancement initiative for the Department. Half of it was for a new state of the art Computer Aided Dispatch (CAD) and Record Management System (RMS), and the other half for network servers, individual personal computers, Geographical Information System (GIS), Automated Fingerprint Identification System (AFIS), internet access, bar coding for property control and evidence, and the largest law enforcement deployment of handheld, pen based, Motorola Forte' computers for patrol officers.

During my 6 year tenure, we successfully competed and received nearly $8 million in Federal and State grants. More than forty percent of the grant funds have gone into non-traditional community and social service support programs, in lieu of police personnel and hardware.

During my tenure there was a dramatic improvement in the relationship between our unions and management. We successfully negotiated two (3 year) contracts without incident or rancor. Although there has been an increase in professional expectations of

2

accountability for our employees, disciplinary appeals to arbitration had been all but eliminated.

### 1990-1995    Assistant Chief - Seattle Police Department

An appointive, exempt position reporting directly to the Chief of Police - acted as the Executive Assistant Chief of the Department and commanded the Support Bureau. The Police Department employed over 1,875 personnel and had an annual budget of $120 million.

Responsible for and oversaw the activity of nine uniquely different divisions including: Training; Internal Investigations; Crime Prevention: Intelligence; Communications; Personnel; Records & Evidence; Data Processing; and Fiscal, Property, & Fleet Management. As the Executive Assistant Chief, was responsible for the day-to-day operation of the agency including authority for hiring, discipline, and administrative decisions. In addition, acted as primary management labor relations and contract negotiator with 12 labor unions. This bureau employed approximately 100 sworn and 450 civilians. Served as the Seattle Police Department's jail liaison executive, as well as jail contract negotiator. Routinely served as acting Chief of Police.

### 1986-1990    Major

An appointive, exempt position - command of SPD Inspectional Services Division, reported directly to the Chief of Police. Coordinated and implemented strategic planning for the entire Department and conducted periodic performance inspections of Departmental units. Oversaw the preparation of the Department's budget, as well as the formulation of departmental rules, policies, and procedures. Acted as liaison with elected officials and community groups.

### 1984-1985    Captain

Command of SPD North Precinct. Responsible for Patrol operations in an area of the city that encompassed a population of 200,000 people and a uniformed force of 130 officers. The precinct contained over a dozen unique communities including the University of Washington. Routinely served as acting Patrol Major overseeing all four patrol precincts - 550 sworn personnel.

### 1982-1983    Captain

Command of SPD Internal Investigations Section, reported directly to the Chief of Police. Responsible for overseeing the investigation of alleged misconduct of nearly 2,000 sworn and civilian members of the Department.

### 1980-1981    Captain

3

Command of SPD West Precinct. Responsible for Patrol Operations in the downtown core of the city. Major league sports facilities, waterfront maritime industries, transportation, and financial, retail and business headquarters serving a daytime population of 300,000 -command of 150 sworn officers.

### 1978-1979    Lieutenant

Commander of Basic Recruit Training. Responsible for the operation and administration of the recruit training for SPD as well as the contract recruit training with the Washington State Criminal Justice Training Commission for over 100 law enforcement agencies state-wide. Average recruit population on campus of 140 in 4 concurrent classes, as well as a multi-agency training staff. Also served for a brief period as a downtown watch commander in the downtown business area.

### 1975 – 1978    Sergeant

Served as supervisor in the following: Patrol - uniformed patrol operations;; Internal Investigations Section - investigation of citizen, departmental, and criminal allegations of police misconduct; Special Patrol Unit - plain clothes tactical response to priority crime problems, deployment at unusual occurrences, dignitary protection.

### 1972 – 1975    Detective

Served in the following: Accident Investigation Section - plain clothes follow-up investigation of hit-run, serious injury and fatality motor vehicle accidents; Burglary Section - investigated serious crimes directed against property; Vice Section - investigated organized crime, prostitution, pornography, liquor, and gambling activities, and engaged in extended undercover assignments.

### 1968-1971    Patrol Officer

Started with Mercer Island (WA) P.D. in 1968, and then began career with Seattle P.D. in 1969.

**Training (small sampling):**

- Police Liability and the Management of Police Discipline - Americans for Effective Law Enforcement
- Police Technology and Efficiency - International Association of Chiefs of Police
- Total Quality Management - The Institute for Quality Service
- Assessment Center Operations and Management - Federal Bureau of Investigation
- Executive Development - Federal Bureau of Investigation
- Incident Command System – National Incident Management System – Through Level 4
- Gambling Enforcement and Supervision - Washington State Gambling Commission

4

- Labor Relations and Negotiations - Federal Bureau of Investigation and Washington Association of Cities
- Hazardous Materials Incident Management - National Highway Transportation Safety Board
- Dignitary Protection Management and Supervision - U.S. Secret Service
- Supervision of Auto Theft Investigation - National Auto Theft Bureau
- Police Traffic Supervision - Northwestern Traffic Institute
- Municipal Budget Management - Office of Management and Budget
- Training for Trainers - Washington State Criminal Justice Training Commission
- Managing Computer Operations - Department of Administrative Services
- Investment in Excellence - The Pacific Institute
- Organized and White Collar Crime - The University of Washington
- Management of Computer Fraud Investigations – USWEST
- National Center for Missing and Exploited Children - Alexandria, VA

## Law Enforcement Committees & Membership:

### National:

- International Association of Chiefs of Police – Honorary Life Member
- Police Executive Research Forum – Subscribing Member
- National Sheriffs' Association – Life Member
- American Correctional Association – Member
- American Jail Association – Member
- Crisis Intervention Team International - Member

### State:

- Appointed by the Governor and served as the only law enforcement member of the Washington State Sentencing Guidelines Commission (August 2003 – 2008)
- Appointed to, and served as the chair of the Washington State Board on Law Enforcement Training Standards and Education (March 2003 – 2008)
- Homicide Investigation Tracking System (HITS) Advisory Board (May 2003 – 2006)
- Executive Board member of the Washington State Sheriffs' Association (May 2006 – 2008)
- Washington Association of Sheriffs and Police Chiefs – Honorary Life Member

### Local:

- Past chair of Jefferson County Domestic Violence/Sexual Assault Program
- Member of the Peninsula College Criminal Education Program Board
- Executive Board of Olympic Peninsula Narcotics Enforcement Task Force
- Executive Board of JeffCom 911 Communications System
- Jefferson County Law & Justice Council

- Olympic Law Enforcement Executives Association

**Achievements (sampling):**

- Past Co-Chair of Private Sector Liaison Committee - International Association of Chiefs of Police
- Coordinator for successful federal grant application on Community Policing   Program (N.I.J.)
- National Institute of Justice Symposium on Closed Circuit Television for deterrence and investigation of crime - Washington, DC
- National Institute of Justice Symposium on Metro Area Drug Strategies - Washington, DC
- Coordinator for federal grant application on Narcotics Strategies in Public Housing
- Coordinator for federal grant application on Targeting Young Adult Gang Leaders
- Federal Bureau of Investigation - National Law Enforcement Budget   Advisory Group - Appointed by the Director of the F.B.I.
- Broward County Chiefs' Association - President and Steering & Training Committees
- Southeast Florida Drug Task Force - Board of Directors
- Metropolitan Broward County Organized Crime Intelligence Unit - Board of Directors
- Florida Police Chiefs' Association - Ethics Committee
- Visiting management assessor for cities of New Orleans (LA), Columbus (OH), Portland, (OR), San Francisco (CA), Bremerton (WA)
- Contract consultant (KOBA Associates) for peer review of NIJ grant work on the establishment of Computer Crimes Units
- Contract consultant (Federal Housing & Urban Development Grant) to visit and analyze 6 major U.S. cities (Boston, Baltimore, Memphis, Oxnard, Cleveland & Seattle) police agencies and community policing in public housing
- Subject matter and best practices expert on law enforcement personnel selection, screening, and back grounding – USIS Investigative Solutions Conference
- Developed statewide law enforcement employment screening and back grounding model for the Washington Association of Sheriffs and Police Chiefs
- Oversight responsibility for acquisition of Computer Aided Dispatch and Mobile Digital Terminal System
- Oversight responsibility for acquisition of Comprehensive Shared Records Management System
- Oversight responsibility for acquisition of Jail Booking Video Imaging System
- Oversight responsibility for management of computerized Patrol Deployment Model

6

- Responsibility for design and construction oversight, acceptance and start-up of new police precinct facility
- Evaluation of Detective Decentralization Program and Detective Case Management System
- Acquisition of Geo-based Automated Mapping System

**Selected Publications:**

- Contributor - National Institute of Justice - Off-Duty Police Employment Practices
- Citation - Federal Bureau of Investigation article on joint Police-Community Partnerships
- Author of national and state articles - alarm reduction issues and strategies
- Author of several historical articles - homicides of police officers

**Prior Law Enforcement & Community Service:**

- Major City Chiefs - Human Resources sub-committee
- Washington State Chiefs & Sheriffs - Information Technology sub-committee
- Mayor's Task Force on Street People and the Homeless
- Selection and oversight committee for Police Department Management Study consultant contract
- Selection and oversight committee for Police-Citizen Complaint Process consultant contract
- Executive Member - South Florida Regional Law, Safety, and Justice Committee
- Automated Fingerprint Identification System / Jails - On-site benchmark testing & nationwide visitation team
- Health Service and Police Community Based Alcohol Triage Program
- King County Executive - Jail Advisory Committee (JCWG)
- City of Seattle - Deferred Compensation Plan provider selection and oversight
- Evaluation and Selection Committee - RFP responses for design of new municipal campus
- Seattle Police Department - reorganization committee that resulted in Departmental restructuring
- Explorer Scout Law Enforcement Program
- United Way of Broward County - Board of Directors
- Broward County Commission on Substance Abuse - Chair, Board of Directors
- Broward County Juvenile Justice Advisory Board
- Broward County Substance Abuse Policy Advisory Board
- Broward Workshop - Criminal Justice Committee
- Florida Department of Law Enforcement - UCR Advisory Committee
- Alarm Association of Florida / Law Enforcement - Board of Directors (1996-1997)

7

INDEX OF FILES RELIED UPON BY BRASFIELD

FILED UNDER SEAL

Homicide Investigative Files Produced at RFC2127-RFC16401

| | | | |
|---|---|---|---|
| G025122 | H376814 | M020288 | N237929 |
| G028593 | H422157 | M027036 | N262285 |
| G063126 | H487637 | M079435 | N267450 |
| G067109 | J052070 | M127008 | N363181 |
| G069345 | J053513 | M165445 | N413068 |
| G077193 | J075073 | M184949 | N414150 |
| G129819 | J080925 | M245807 | N475901 |
| G159909 | J117497 | M258570 | N513129 |
| G235531 | J139200 | M264219 | N517875 |
| G256674 | J209456 | M287641 | N581836 |
| G303248 | J215119 | M381429 | N592324 |
| G317267 | J252204 | M400227 | P025834 |
| G317507 | J353821 | M538914 | P025950 |
| G321911 | J355220 | M541953 | P028950 |
| G382131 | J369257 | M546558 | P049272 |
| G418721 | J388481 | M550042 | P051734 |
| G451229 | J409858 | M551461 | P054396 |
| G471800 | J423347 | M556260 | P060434 |
| H064504 | J478062 | M558552 | P128067 |
| H091575 | K103034 | M579697 | P129569 |
| H094573 | K176170 | M588005 | P141860 |
| H095844 | K197321 | M599001 | P175665 |
| H100760 | K205158 | N016505 | P190627 |
| H105557 | K227675 | N018105 | P218019 |
| H126865 | K285989 | N028256 | P251800 |
| H167635 | K292921 | N050133 | P272087 |
| H172729 | K314297 | N053000 | P310965 |
| H174403 | K417078 | N114280 | P317758 |
| H193697 | K419172 | N133637 | P342256 |
| H208106 | K455932 | N162782 | P348565 |
| H265414 | K466033 | N176796 | P372509 |
| H279780 | K468422 | N192214 | P402641 |
| H316198 | K502173 | N201263 | P474894 |
| H323287 | K530917 | N203334 | P526822 |
| H375595 | K575912 | | |

Criminal Defense Files

| J209456 (JR-L205069 - JR-L206061) | N028256 (JR-L207967 - JR-L208332) | N162782 (JR-L227919 - JR-L228812) | P272087 (JR-L212423 - JR-L212489) |

| P526822 (JR-L212490 - JR-L212757) | M258570 (JR-L223600 - JR-L224210) |

Permanent Retention Files

| J209456 (RFC160510- RFC160549) | N028256 (RFC162327- RFC162389) | P272087 (RFC163445- RFC163473) | P526822 (RFC163728- RFC163753) |

| M258570 (RFC161784- RFC161828) | N162782 (RFC162531- RFC162577) |