**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN HERNANDEZ and ROSENDO HERNANDEZ | ) ) | |
| | ) | Case No.    23-cv-1737 |
| *Plaintiffs*, | ) ) | |
| *v.* | ) ) | Hon. Jeremy C. Daniel |
| | ) | |
| REYNALDO GUEVARA, GERI LYNN YANOW, as special representative of the ESTATE OF ERNEST HALVORSEN, JOSEPH MIEDZIANOWSKI, JOEL BEMIS, GERI LYNN YANOW, as special representative of the ESTATE OF ROBERT DEGRAFF, ROBERT BIEBEL, and the CITY OF CHICAGO. | ) ) ) ) ) ) ) ) ) ) | Magistrate Heather McShain |

**DEFENDANT JOSEPH MIEDZIANOWSKI'S MEMORANDUM IN SUPPORT**
**OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant, JOSEPH MIEDZIANOWSKI, by and through his attorneys, Johnson & Bell, Ltd., pursuant to the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Northern District of Illinois, respectfully submits his Memorandum in Support of his Motion for Summary Judgment, seeking judgment on all claims against him in Plaintiffs' Amended Complaint (Dkt, 58). Defendant respectfully seeks to incorporate herein by reference his Local Rule 56.1(a)(3) Statement of Undisputed Material Facts, filed concurrently with this memorandum.

## I.    INTRODUCTION

This lawsuit arises from the arrest, prosecution, and conviction for first-degree murder of the Plaintiffs, Juan and Rosendo Hernandez, for the June 27, 1997, murder of Jorge Gonzalez. (Dkt. 58).  It is undisputed that there is no evidence that Joseph Miedzianowski, a former Chicago police officer, was at the scene of the murder, that he played any official role in the investigation

1

of the murder, that he participated, in any official way, in the arrest of the plaintiffs for the murder, or that he played any official role in the prosecution of the plaintiffs for the murder. Nevertheless, Plaintiffs allege, generally, that Miedzianowski framed, or was part of a conspiracy to frame, them.

Plaintiffs' eleven count Amended Complaint against the City of Chicago and the individual defendants sets forth the following claims: Count I, a § 1983 Due Process claim against the defendants, including Miedzianowski, for fabrication of evidence that was later used against Plaintiffs at trial; Count II, a § 1983 Malicious Prosecution/Unlawful Detention claim against the defendants, including Miedzianowski; Count III, a § 1983 Failure to Intervene claim against the defendants, including Miedzianowski; Count IV, a § 1983 claim against the defendants, including Miedzianowski, for Conspiracy to violate the Constitutional rights of the plaintiffs; Count V, a *Monell* claim against the City of Chicago; Count VI, a state law claim for Malicious Prosecution against the defendants, including Miedzianowski; Count VII, a state law claim for Intentional Infliction of Emotional Distress against the defendants, including Miedzianowski; Count IX[1], a state law claim for Willful and Wanton Conduct against the defendants, including Miedzianowski; Count X, a state law conspiracy claim against the defendants, including Miedzianowski; Count XI, a *Respondeat Superior* claim against the City of Chicago, and Count XII, a state law claim for Indemnification against the City of Chicago.

In addition to Miedzianowski, Plaintiffs have sued multiple police officer defendants, and those police officer defendants are concurrently filing motions for summary judgment. In the interests of judicial efficiency, Miedzianowski seeks to adopt, and incorporate by reference, the statements of fact made by his co-defendants, and the substantive arguments made in those summary judgment motions. The specific portions of the memorandum filed by Defendants

---

[1] There is no Count VIII in the Plaintiff's Amended Complaint.

2

Biebel, Bemis, *et al.,* that Miedzianowski seeks to adopt and incorporate are: Argument sections II, III, IV(A), IV(B), VI, VII, VIII, and IX[2]. Miedzianowski seeks summary judgment on Plaintiffs' claims against him for the same reasons identified in these sections of his co-defendants' motion. This motion, brought by Miedzianowski separately, asserts facts and arguments specific to Miedzianowski.

As the Court will see, Miedzianowski's name does not appear on any police reports related to the underlying murder. His name does not appear in any documents or transcripts related to the prosecution of the plaintiffs for the Gonalez murder. He did not testify at the plaintiffs' criminal trials, and nothing about the plaintiffs or the underlying murder was raised at Miedzianowski's own criminal trial, which led to a conviction for which Miedzianowski is now serving life in prison.

Nevertheless, Plaintiffs stretch to tie Miedzianowski to their case through the statements of one witness, Fred Rock, a convicted co-conspirator of Miedzianowski. Rock's first recorded statement to anyone about Miedzianowski's alleged involvement in a plot to frame the plaintiffs came twenty-one years after the murder, and long after the plaintiffs were convicted. While Rock's story has evolved since then, with additional, and different, details added along the way, his statements are not enough to keep Miedzianowski in this case past summary judgment. For the reasons stated below, Miedzianowski is entitled to summary judgment, and all of the claims against him should be dismissed.

## II.     SUMMARY OF FACTS RELEVANT TO MIEDZIANOWSKI

On June 27, 1997, Jorge Gonzalez was shot and killed by two gunmen at 2208 N. Mobile in Chicago. (Defendant Miedzianowski L.R. 56.1(a)(3) Statement of Material Facts ("SOF") ¶ 12). Members of the Chicago police department investigated the murder, and eventually, Juan and

---

[2] Defendant is adopting and incorporating in this fashion to comply with this Court's incorporation rules in its standing order on summary judgment.

Rosendo Hernandez, brothers and members of the Spanish Cobra street gang, were arrested and charged. (SOF ¶¶ 4-9; 12-20). Joseph Miedzianowski, was not officially involved in the police response to the shooting, was not officially involved in the investigation of the shooting, was not officially involved in any witness interviews, and is not mentioned in any official document related to the investigation. (SOF ¶¶ 12-20).

The Hernandez brothers were prosecuted by the Cook County State's Attorney's Office. (SOF ¶¶ 21-26). Rosendo was tried before a jury and was convicted on August 12, 1999. (SOF ¶¶ 21-22). Juan was tried by a jury and was convicted on November 19, 2001. (SOF ¶¶ 24-25). Miedzianowski was not a witness at either trial and his name was not mentioned, once, during either trial. (SOF ¶¶ 23, 26).

On January 18, 2018, twenty-one years after the murder, nineteen years after Rosendo Hernandez was convicted, and seventeen years after Juan Hernandez was convicted, Plaintiffs' counsel obtained an affidavit from Fred Rock, a convicted felon, in which Rock claimed, for the first time in any recorded statement, that Miedzianowski mentioned that he wanted to "get" or "frame" Juan Hernandez, also known as "Poochie," because of a dispute over drugs. (SOF ¶¶ 27-33). Rock, in his affidavit, did not explain for what crime Miedzianowski planned to "get" or "frame" Juan Hernandez, he did not mention Rosendo Hernandez at all, he did not explain whether or how Miedzianowski followed through on these alleged threats; nor did he mention the murder of Jorge Gonzalez or that the threatened "framing" resulted in charges for that crime. (SOF ¶¶ 27-32).

Rock claimed, in his affidavit and elsewhere, that, as early as 1998, he told his story to Brian Netols, the Assistant United States Attorney who prosecuted both Miedzianowski and Rock, but Netols denies that happened, and explained that, if it had, it would have become the focus of

his investigation into Miedzianowski.  (SOF ¶¶ 33-34).  Rock testified against Miedzianowski in March of 2001, which would have been a perfect time to talk about his alleged scheme to frame the Hernandez brothers, given that his plea agreement required him to tell the "whole truth," and that he was cooperating for a reduced sentence, but he never mentioned anything about Miedzianowski planning to frame Juan Hernandez, or anyone else, for a crime.  (SOF, ¶¶ 35-36).

Rock later told his story two more times on the record.  (SOF ¶¶ 37-61).  First, in a hearing on Plaintiffs' petition for post-conviction relief, Rock testified he heard Miedzianowski and Defendant Guevara discussing "setting up" or "getting" Juan Hernandez.  (SOF ¶¶ 38-39).  He did not testify that, prior to their arrests, he heard or knew anything about the nature of the crime for which Plaintiffs would be "set up," and he admitted he didn't know any details about the crime or what would be or was done to "get" or "set up" the Hernandez brothers.  (SOF ¶¶ 38-44).  Rock added the new detail, not found in his affidavit, that Miedzianowski told him, after the plaintiffs were arrested, that Juan Hernandez was arrested for a murder near Fullerton and Keeler, but Rock did not testify that anyone, including Miedzianowski, said Juan Hernandez or Rosendo Hernandez were framed for that specific murder.  (SOF, ¶¶ 41-44).  This makes sense, because the intersection of Fullerton and Keeler is more than two miles from where the Gonzalez murder, for which the Hernandez brothers were convicted, actually happened.  (SOF ¶ 62).

The next, and last, time Rock testified about Miedzianowski and his alleged involvement in a scheme to frame the Hernandez brothers was in this case, at his deposition.  (SOF ¶¶ 45-62).  There, Rock testified about three occasions on which he had discussions with Miedzianowski about "getting" Juan Hernandez.  *Id*.  Two of those discussions, according to Rock, involved Defendant Guevara.  *Id*.  All three conversations happened spontaneously and involved Miedzianowski simply blurting out his desire to "get" or "frame" Juan Hernandez.  *Id*.  None of

5

Rock's testimony about these conversations involved comments by anyone else, as Rock explained that Guevara never said anything, and neither did Rock. (SOF, ¶¶ 49-58). In this deposition testimony, for the first time, Rock claimed that Miedzianowski told him about the murder near Fullerton and Keeler before (not after as in his previous testimony) the Hernandez brothers were arrested, and Rock linked that specific murder to a plan to "set up Poochie and his brother," Rosendo. (SOF ¶¶ 45-58). A plan to specifically "set up" Rosendo was never mentioned by Rock before this deposition testimony. (SOF ¶¶ 27-61). Rock does not know anything about the murder at Fullerton and Keeler, and he was not asked to help in this plan, nor was he expected to do anything. (SOF ¶¶ 60-61).

Miedzianowski, for his part, denied knowing the Hernandez brothers, and denied any and all involvement, in any way, with a plan to "get" or "frame" them. (SOF, ¶¶ 63-66). He also denied having any involvement in, or knowledge of, the investigation of the plaintiffs and the murder of Jorge Gonzalez. (SOF, ¶¶ 63-66).

It is clear the only evidence that exists connecting Miedzianowski to either of the plaintiffs is the statements Rock claims Miedzianowski made to him. There is nothing else. Plaintiff's expert, Thomas Tiderington, confirmed this. Tiderington authored a lengthy expert report in this case, in which he identified all the materials he reviewed. (SOF, ¶¶ 67-70). He reviewed the Chicago police department investigative file, the transcripts of the criminal trials of Juan and Rosendo Hernandez, countless depositions, and documents from the criminal prosecution of Miedzianowski and others. (SOF ¶¶ 13-20, 67-70). He even reviewed wiretap transcripts from the federal investigation into Miedzianowski. (SOF, ¶¶ 69-70). At his deposition he testified that, despite this considerable review, he is not aware of any police reports with Miedzianowski's name on them. (SOF, ¶¶ 13-20). Nor is he aware of any documents indicating Miedzianowski was

involved in the police investigation into the Hernandez brothers. (SOF, ¶¶ 13-20). Nor is he aware of any wiretap evidence, from Miedzianowski's criminal case, indicating that Miedzianowski was involved in framing the Hernandez brothers, or anyone else, for murder. (SOF ¶¶ 69-70).

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012). While the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986), "that duty does not extend to drawing inferences that are supported only by speculation or conjecture." *Swetlik v. Crawford,* 738 F.3d 818, 829 (7th Cir. 2013); *McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986); *see Holmes v. City of Chi.*, 63 F. Supp. 3d 806, 812 (N.D. Ill. 2014). Rather, "the non-moving party must set forth specific facts showing a genuine issue for trial." *Abrego v. Wilkie*, 907 F.3d 1004, 1011-12 (7th Cir. 2018) (citing *Matsushita*, 475 U.S. at 587). The plaintiff "must present affirmative evidence" to defeat a properly supported motion for summary judgment. *Henning v. O'Leary,* 477 F.3d 492, 496 (7th Cir. 2007) *citing Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

Summary judgment is the "put up or shut up" moment in litigation, in which the non-moving

7

party will prove their case. *Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007*), citing Anderson*, 477 U.S. at 247-248. As to any issue on which a Plaintiff bears the ultimate burden of proof, he is obligated to identify *evidence* that would permit a jury to find in his favor. *Roberts v. Broski*, 186 F.3d 990, 995 (7th Cir. 1999) (citing *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994)).

## IV.   ARGUMENT

**1.    There is no evidence that Miedzianowski fabricated anything, let alone any evidence that was used against Plaintiffs at their trials, so Count I must be dismissed against him.**

In Count I, Plaintiffs allege that the defendants, including Miedzianowski, violated his due process rights by:  1) fabricating witness statements falsely implicating them in the Gonzalez murder; 2) failing to "correct" the fabricated evidence that they knew to be false when it was used against them in their criminal cases; 3) procuring supposed eyewitness identifications of Plaintiff by using unduly suggestive procedures and causing these identifications to be used at Plaintiffs' trial, and 4) withholding exculpatory evidence. (Dkt. 58, ¶¶166-172).

A due process fabrication claim is an assertion "that the accused was convicted and imprisoned based on knowingly falsified evidence, violating his right to a fair trial and thus depriving him of liberty without due process." *Patrick v. City of Chicago,* 974 F.3d 824, 835 (7th Cir. 2020). To establish his claim, Plaintiffs must prove: (1) the defendant knowingly fabricated evidence against him, (2) the evidence was used at his criminal trial, (3) the evidence was material, and (4) that he was damaged as a result. *Brown v. City of Chicago,* 633 F. Supp. 3d 1122, 1156 – 57 (N.D. Ill. 2022).

"The suppression of material, exculpatory evidence in a criminal case violates due process" under *Brady*. *See Moran v. City of Calumet*, 2022 WL 17173891 at *4 (7th Cir. Nov. 23, 2022). "To prevail on a *Brady* claim against an officer, a plaintiff must show that (1) the evidence is favorable to him; (2) the evidence was concealed by the officer; and (3) the concealed evidence resulted in prejudice." *Jones v. York*, 34 F.4th 550, 559 (7th Cir. 2022) (internal quotation marks omitted). To show concealment Plaintiff must demonstrate: (1) a failure to disclose known evidence in time for a criminal defendant to make use of it; and (2) the evidence was not otherwise available to the defendant through reasonable diligence. *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014); *Bielanski v. County of Kane*, 550 F.3d 632, 645 (7th Cir. 2008) ("*Brady* evidence can be handed over on the eve of trial or even during trial so long as the defendant is able to use it to his or her advantage."). "Concealed evidence is prejudicial—or material—if there is a reasonable probability that the outcome would have been different if the evidence had been disclosed." *Jones*, 34 F.4th at 559 (internal quotation marks omitted). "Police officers 'discharge their *Brady* duty by turning over exculpatory evidence to the prosecutor.'" *Moran*, 2022 WL 17173891 at *5 (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 512 (7th Cir. 2015)).

Defendant Miedzianowski is entitled to summary judgment on Plaintiffs' due process claims in Count I, whether they are based on fabrication of evidence, whether they are brought pursuant to *Brady,* or whether they are brought pursuant to any other theory, because there has been no evidence identified, anywhere in the record, that Miedzianowski was personally involved in fabricating any specific evidence, that he participated in any witness identifications, or that he withheld, or had an opportunity to withhold, anything. (SOF ¶¶ 4-70). He was not involved in the investigation into, the arrest of, or the prosecution of, the Plaintiffs. (SOF ¶¶ 4-26, 63-70). He wasn't even associated, by anyone, to this case for twenty-one years. (SOF ¶ 27). When he was,

9

belatedly, implicated in a vague plot to frame Juan Hernandez, it was by one witness, Fred Rock. (SOF, ¶¶ 27-70). All of Rock's accusations, which evolved over time, were non-specific. *Id*. They did not include any allegations of specific evidence fabricated by Miedzianowski, any specific witnesses influenced by Miedzianowski, or any specific evidence withheld by Miedzianowski. *Id*. The best Rock could provide was a vague plot by Miedzianowski, and sometimes Guevara, to "get," "frame," or "set up," Juan Hernandez. *Id*. The story of this plot was later expanded by Rock to include Rosendo Hernandez as a victim, and to provide some details about a crime location, but it never included details about what was done to frame the plaintiffs, who framed them, or for what they were framed. *Id.*

The authority cited above requires that, for a due process fabrication claim to succeed, the evidence fabricated, or withheld in the case of a *Brady* violation, must be identified, and it must have been used to deprive a plaintiff of his liberty, or, if concealed, the concealment must result in prejudice. Realistically, Plaintiffs cannot say Miedzianowski did any of these things, because no specific evidence can be identified by Plaintiffs as evidence that was fabricated or withheld by Miedzianowski. Plaintiffs are presenting vague allegations about what Miedzianowski said, with nothing more, and are asking the Court to conclude that Miedzianowski did in fact frame the plaintiffs. As the Court knows, at summary judgment, a non-moving party is not "entitled to the benefit of inferences that are supported only by speculation or conjecture." *Boss v. Castro,* 816 F.3d 910, 916 (7th Cir. 2016). If evidence used to contradict the officers' account, "requires [the court] to make logical leaps rather than reasonable inferences," such evidence is insufficient to overcome summary judgment. *King v. Hendricks County. Commissioners,* 954 F.3d 981, 986 (7th Cir. 2020).

Finally, personal involvement in an alleged constitutional deprivation is a predicate requirement for § 1983 liability. *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (the individual defendant must have caused or participated in a constitutional deprivation); *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 614 (7th Cir. 2002). There is no evidence that Miedzianowski was personally involved in due process violation here. His alleged words are not enough. Simply put, there is no evidence that Miedzianowski was involved in fabricating or withholding anything, and that is fatal to Plaintiffs' due process claims against him.

**2.** **Plaintiffs' Unlawful Pretrial Detention Claim (Count II) and state law Malicious Prosecution Claim (Count VI) fail due to a lack of evidence against Miedzianowski.**

Allegations that a plaintiff was prosecuted without probable cause are analyzed under the Fourth Amendment's prohibition on unreasonable seizures. *Thompson v. Clark,* 596 U.S. 36, 43–44 (2022); *see also Lee*, 127 F.4th 666, 676 (7th Cir. 2024); *Washington v. City of Chicago*, 98 F.4th 860, 863–64 (7th Cir. 2024). Plaintiffs must show, among other things "that the prosecution was instituted without probable cause . . . " *Jackson v. Wojcik*, No. 23 C 2027, 2024 WL 2209192, at *5 (N.D. Ill. May 14, 2024) (internal quotation marks omitted) (citing *Thompson v. Clark*, 596 U.S. 36, 43–44 (2022)). To prove an Illinois malicious prosecution claim, Plaintiffs must show: "(1) [they were] subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendants instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Martinez v. City of Chi.*, 900 F.3d 838, 849 (7th Cir. 2018).

As noted above, personal involvement is required for liability to attach in a § 1983 claim, such as Plaintiffs' unlawful detention claim here. *Pepper,* 430 F.3d at 810. In a federal malicious prosecution claim, a plaintiff must demonstrate, at a minimum, that a particular defendant caused

11

the pre-trial seizure by instituting the prosecution. See *Jackson*, 2024 WL 2209192, at \*5 (N.D. Ill. May 14, 2024) (dismissing a defendant where the complaint failed to allege how he instituted criminal charges). Likewise, in Illinois, a defendant must proximately cause the commencement or continuance of criminal proceedings for a Plaintiff to succeed on a claim for malicious prosecution. *Beaman v. Freesmeyer,* 131 N.E.3d 488, 494-500 (Ill. 2019). To determine proximate cause in this context, "the court must examine whether the defendants played a significant role in the plaintiff's prosecution." *Id;* see also *Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1271 (N.D. Ill. 2021) (the significant role determination includes individuals who "engaged in wrongful or bad-faith conduct that was instrumental in the commencement or continuation of the criminal prosecution.") (citations omitted).

As argued above, there is no evidence in the record here to support these claims against Miedzianowski. The evidence shows he played <u>NO</u> role in the arrest or prosecution of the plaintiffs. The documents in this case show that he was not a part of Plaintiffs' arrest or prosecutions. (SOF, ¶¶ 4-26, 63-69). Plaintiffs' own expert has confirmed it. (SOF, ¶¶ 13-20, 67-70). At most, Plaintiffs have evidence, albeit highly questionable evidence, that Miedzianowski said he didn't like Juan Hernandez, that he wanted to "get" or "frame" him, and that he might have shared his feelings with Guevara. (SOF, ¶¶ 12-70). There is nothing in the record indicating that he did anything to act on these alleged words. Plaintiffs' case against him amounts to: "Miedzianowski allegedly said some things about Juan Hernandez, and Juan Hernandez was arrested and prosecuted, so the arrest and prosecution of Juan Hernandez and Rosendo Hernandez must have occurred as a result of what Miedzianowski said." (SOF, ¶¶ 12-70).

The Plaintiffs, on summary judgment, are entitled to reasonable inferences; they are not entitled to summary-judgment-defeating presumptions of misconduct based merely on

12

accusations. *See Linne v. Adams*, 525 F. App'x 442, 445 (7th Cir. 2013) (an "accusation" "does not create a genuine issue of material fact," as the "inference" such an accusation seeks "is not reasonable"). Plaintiffs' theory that Miedzianowski was involved, with nothing more, cannot cause these claims against Miedzianowski to survive summary judgment, and they must be dismissed.

3.      **Miedzianowski is entitled to summary judgment on Plaintiffs' Failure to Intervene Claim at Count III due to a lack of evidence of his presence and/or a reasonable opportunity for him to intervene.**

To succeed on a §1983 claim for failure to intervene, Plaintiffs must allege facts to show that Miedzianowski had reason to know that a constitutional violation was about to be or was being committed and that he had "a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). A defendant may be personally liable if he knows about the conduct and has either facilitated it, approved it, or condoned it. *Weathers v. City of Chicago*, No. 02 C 3611, 2005 WL 241384, at *6 (N.D. Ill. Jan. 31, 2005). Police officers who were not present on the scene cannot be held liable for failing to intervene in another officer's unconstitutional acts. See *Yang*, 37 F.3d at 285 (holding that failure-to-intervene claim requires plaintiff to show that an officer was "present" and had a "realistic opportunity to intervene to prevent the harm from occurring.").

It is undisputed that Miedzianowski was not present for any of the events that form the basis of Plaintiffs' underlying constitutional claims. (SOF, ¶¶ 12-26, 63-70). As a result, he did not have a reasonable opportunity to prevent any of the alleged violations from occurring. Plaintiffs' failure to intervene claim is not supported by any evidence and must be dismissed against Miedzianowski.

4.      **Plaintiff's Conspiracy Claims (Count VI & X) Must Also Fail Due to a Lack of Evidence.**

13

Count VI alleges a federal claim for conspiracy and Count X alleges a state law conspiracy claim. These claims are derivative of Plaintiffs' due process claim in Count I and "unlawful detention" and malicious prosecution claims in Counts II and VI. (Dkt. 58, ¶¶ 191-196). Therefore, if those claims fail against Miedzianowski, either for the reasons stated above or for the reasons stated in, and adopted from, the motions for summary judgment filed by Miedzianowski's co-defendants, the conspiracy claims fail as well. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008); *See also Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019)("Coleman's conspiracy, failure to intervene, and municipal liability claims each depend on proof of an underlying constitutional violation. Because Coleman has failed to present evidence supporting an underlying violation, defendants are entitled to summary judgment on Coleman's derivative claims as well.") *citing Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018).

To establish liability for a conspiracy under § 1983, Plaintiffs must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Under Illinois law, a civil conspiracy requires, "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused the injury to the Plaintiff. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) *citing McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999). An agreement is a "necessary and important" element of this cause of action, and "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017).

14

"Although the existence of a conspiracy may be established through circumstantial evidence, the evidence may not be speculative." *Chi. Title,* 125 F. Supp. 3d at 781. "Moreover, the circumstantial evidence 'must be clear and convincing.'" *Id*. (quoting *McClure v. Owens Corning Fiberglas Corp*., 188 Ill. 2d 102, 134 (Ill. 1999)). "A conspiracy claim cannot survive summary judgment if the allegations are vague, conclusory and include no overt acts reasonably related to the promotion of the alleged conspiracy." *Amundsen v. Chic. Park Dist.,* 218 F.3d 712, 718 (7th Cir. 2000); *Rueter v. MasterCard Intern., Inc.,* 397 Ill.App.3d 915, 928 (5th Dist. 2010).

Here, the evidence forwarded by Plaintiffs to support their claims of conspiracy against Miedzianowski are two statements reported, belatedly, by Fred Rock, which were allegedly made by Miedzianowski in Guevara's presence. (SOF, ¶¶ 38-62). Significantly, although Rock claims to have heard Miedzianowski say that he and Guevara were going to "get" or "frame" Juan Hernandez, Guevara never said anything during these discussions. (SOF, ¶¶ 53-54, 57-58). Aside from Rock's, convenient for Plaintiffs, recollection of these allegedly conspiratorial statements, his testimony about these discussions is otherwise extremely short on details. Rock initially testified that, while he overheard discussions about "getting" or "setting up" Juan Hernandez, he didn't hear anything about a specific crime, such as murder, until after the Hernandez brothers were arrested. (SOF, ¶¶ 38-44). Rock said that he later learned from Miedzianowski that Juan was arrested for a murder that occurred at Fullerton and Keeler[3], but Rock didn't know anything else about it, and no one said anything about Juan being framed for that murder, or how it was done. (SOF, ¶¶ 41-44). In subsequent testimony, Rock added some details, including where the discussions between him, Miedzianowski, and Guevara took place. (SOF, ¶¶ 45-62). Also, for the first time, he testified that the discussion about the murder and Fullerton and Keeler took place

---

[3] A location more than two miles from the actual address of the murder for which the plaintiffs were arrested. (SOF ¶ 62).

before the plaintiffs were arrested and Rock added that Miedzianowski said Guevara was going to help him get not only Juan, but also Rosendo Hernandez. (SOF, ¶¶ 56-59). Even with these changes, Rock admitted that he didn't know anything about the murder to which Miedzianowski was allegedly referring, and Rock said nothing about what was done, by Miedzianowski or anyone else, to further this alleged scheme. (SOF, ¶¶ 39-62).

Through these claims, Plaintiffs are asking the Court to make an inferential leap from vague statements of a desire to "get" one of them, without any real details, to an agreement to frame them for a specific murder that was never actually mentioned. (SOF, ¶¶ 39-62). The alleged statements completely lack specificity on the method that the plaintiffs would be framed, whether the alleged framing happened, or the crime for which the framing would occur. *Id*. The description of the "discussions" of the framing also lacks any confirmation by the other party to the "discussion," Guevara, who, according to Fred Rock, didn't say anything at all. (SOF, ¶¶ 51-62). Plaintiffs' evidence of a conspiracy is the opposite of clear and convincing, and these claims should fail.

## V.    CONCLUSION[4]

As mentioned above, courts have explained, repeatedly, that summary judgment is the put up or shut up moment in a lawsuit. *Goodman, supra*. For the reasons stated above, Plaintiffs have not put up enough evidence about Defendant Miedzianowski to survive summary judgment. At most, Miedzianowski said things that expressed a desire to "get" Juan Hernandez. Even if taken as true, without more than those statements, Miedzianowski cannot be liable to Plaintiffs. Defendant Miedzianowski respectfully requests summary judgment in his favor on all Plaintiffs' claims against him.

---

[4] The two remaining claims against Defendant Miedzianowski, Intentional Infliction of Emotional Distress at Count VII and Willful and Wanton Conduct at Count IX, should be dismissed against him for the reasons stated in the summary judgment motion filed by the individual defendants. As mentioned above, for efficiency purposes, Defendant Miedzianowski requests to adopt and incorporate those arguments.

Dated: April 6, 2026               Respectfully Submitted,

                                   /s/ Brian P. Gainer
                                   One of the Attorneys for Defendant Joesph
                                   Miedzianowski

Brian P. Gainer
JOHNSON & BELL, LTD.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
Tel: (312) 372 0770
Fax: (312) 372-9818
Email: gainerb@jbltd.com