## IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JUAN HERNANDEZ and ROSENDO HERNANDEZ, | ) ) ) | Case No. 23 CV 01737 |
| Plaintiffs, | ) ) | Hon. Jeremy C. Daniel Magistrate Heather K. McShain |
| v. | ) ) | |
| REYNALDO GUEVARA, et.al, | ) ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## DEFENDANTS' JOINT LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, the City of Chicago, Reynaldo Guevara, Geri Lynn Yanow as Special Representative of defendant Ernest Halvorsen (deceased) and Robert DeGraff (deceased), Robert Biebel, and Joel Bemis, (collectively "Defendants"), by and through their undersigned attorneys, hereby submit the following statement of material facts pursuant to Local Rule 56.1 in support of their motion for summary judgment.

### JURISDICTION AND VENUE

1.     This matter is brought pursuant to 42 U.S.C. §1983 and Illinois law. This Court has jurisdiction over Juan Hernandez's ("Juan") and Rosendo Hernandez's ("Rosendo") (collectively, "Plaintiffs") federal claims pursuant to 28 U.S.C. §1331, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367. **(Ex. 1 (Amended Complaint) at ¶¶ 19-20).**

2.     Venue is proper under 28 U.S.C. § 1391(b). **(Ex. 1 at ¶ 21).**

### PARTIES

3.     Plaintiffs were arrested, prosecuted and convicted of the June 27, 1997, murder of

1

Jorge "Jungle" Gonzalez ("Jorge") and attempt murder of Juan "Shorty Red" Carlos Cruz ("Cruz"). **(Ex. 1 at ¶¶ 29, 111, 118-19.; Ex. 11 (Cruz Testimony, Rosendo Trial Trans., 8/10/99) at 6:18-20; Ex. 17 (Cruz Dep.) at 42:4-6).**

4.     At all relevant times, Defendant Reynaldo Guevara ("Guevara"), was a detective with the Chicago Police Department ("CPD") and assigned to Area 5 Violent Crimes Unit. **(Ex. 1 at ¶ 23; Ex. 20 (Guevara Testimony, Juan Trial Trans. II, 11/15/01) at 212:22-213:2).**

5.     At all relevant times, Defendant Joel Bemis ("Bemis"), was an officer with the CPD and assigned to the 025 District gang team. **(Ex. 1 at ¶ 23 45-46; Ex. 34 (Bemis Dep.) at 84:11-85:1).**

6.     At all relevant times, Defendant Robert Biebel ("Biebel"), was a sergeant with the CPD and assigned to Area 5 Detective Division. **(Ex. 1, at ¶ 23; Ex. 35 (Biebel Dep.) at 20:19-25).**

7.     At all relevant times, Defendant Robert DeGraff ("DeGraff"), was a sergeant with the CPD and assigned to the 025 District gang team. **(Ex. 1, ¶ 45-46; Ex. 34 at 82:2-14).** DeGraff is deceased and Geri Lynn Yanow was appointed by this Court to serve as Special Representative for DeGraff. **(Ex. 1 at ¶ 25).**

8.     At all relevant times, Defendant Ernest Halvorsen ("Halvorsen"), was a detective with the CPD and assigned to Area 5 Violent Crimes Unit. **(Ex. 1 at ¶ 23; Ex. 19 (Guevara Dep.) at 10:9-11:1).** Halvorsen is deceased and Geri Lynn Yanow was appointed by this Court to serve as Special Representative for Halvorsen. **(Ex. 1 at ¶ 24).**

9.     At all relevant times, Defendant Joseph Miedzianowski ("Miedzianowski"), was an officer with the CPD and assigned as a gang crimes specialist to the Gang Crimes North Unit. **(Ex. 1 at ¶ 23; Ex. 36 (Miedzianowski Dep.) at 74:2-77:1).**

10.     Defendant City of Chicago is an Illinois municipal corporation that employed Defendants Guevara, Bemis, Biebel, Halvorsen, DeGraff and Miedzianowski at the time of the events

giving rise to this suit. **(Ex. 1 at ¶ 27).**

11.    At all relevant times Defendants Guevara, Bemis, Biebel, Halvorsen, and DeGraff were acting under color of law and within the scope of their employment. (**Ex. 1 at ¶ 28).**

## PLAINTIFFS AND THE SPANISH COBRAS

12.    In June of 1997, Juan and Rosendo Hernandez were members of the street gang the Spanish Cobras. **(Ex. 37 (Juan Dep.) at 70:12-71:3; Ex. 38 (Rosendo Dep.) at 47:19-48:2).** Juan's nickname was "Poochie" and Rosendo's nickname was "Junebug." **(Ex. 37 at 30:16-19; Ex. 38 at 24:12-14).**

13.    In June of 1997, the Spanish Cobras were at war with the Maniac Latin Disciples ("MLDs"). **(Ex. 38 at 60:6-15; Ex. 41 (Violante Testimony, Juan Hernandez Trial, 11/15/01) at 108:6-11; Ex. 5 (Jose Testimony, Juan Trial Trans. II, 11/14/01) at 177:17-23).**

## THE MURDER OF JORGE AND ATTEMPT MURDER OF CRUZ

14.    Jorge, 18 years old, was shot and killed at around 11:00 p.m. on June 27, 1997, in front of Jesus Gonzalez's ("Jesus") and Maribel Gutierrez's ("Maribel") house at 2208 N. Mobile in Chicago, Illinois. **(Ex. 1, at ¶¶ 29-30, 33; Ex. 9 (Jesus Testimony, Juan Trial Trans. I, 3/8/00) at 40:9-13).** Jorge's nickname was "Jungle." **(Ex. 2 (Nancy Testimony, Rosendo Trial Trans., 8/9/99) at 94:24-95:12, 98:9-13).**

15.    Around 11:00 p.m. on June 27, 1997, Jorge had been hanging out with his family and friends on two neighboring porches at 2208 and 2212 N. Mobile. **(Ex. 2 at 94:24-95:12, 95:19-96:11, 96:22-98:13; Ex. 3 (Nancy Testimony, Juan Trial Trans. II, 11/14/01) at 75:22-23, 77:13-18, 77:24-78:6, 78:9-12; Ex. 4 (Jose Testimony, Rosendo Trial Trans., 8/10/99) at 97:20-98:15, 99:18-100:1, 100:19-21, 123:9-11; Ex. 5 at 168:15-169:14, 169:17-170:23; Ex. 8 (Jesus Testimony, Rosendo Trial Trans., 8/9/99) at 155:15-156:13, 156:16-19, 156:20-157:2, 157:8-12; Ex. 11 at 5:18-6:15, 6:23-7:3, Ex. 13 (Maribel Testimony, Rosendo Trial 8/9/99) at 191:10-21, 192:1-193:15).** At

the time of the shooting, Nancy Gonzalez ("Nancy"), Maribel, and Cruz were hanging out on the porch of 2208 N. Mobile. **(*Id.*)** Jesus and Daniel Violante ("Violante") were hanging out on the porch of 2212 N. Mobile. **(*Id.*)** Jorge had also been hanging out on the porch of 2212 N. Mobile but, shortly before the shooting, had gone over to the yard in front of 2208 N. Mobile to change the music on the radio. **(*Id.*; Ex. 3 at 81:8-18; Ex. 11 at 8:1-6, Ex. 13 at 193:16-194:2).**

16. In 1997, Violate was a member of the MLDs, and his nickname was "Congo." **(Ex. 40 (Violante Testimony, Rosendo Trial Trans., 8/10/99) at 51:17-52:11).**

17. Jose and Jesus saw a large purple four door vehicle slowly pass by the residences twice. **(Ex. 4 at 101:10-102:20, 104:1-3; Ex. 5 at 172:5-173:5, 174:5-11; Ex. 8 at 157:22-158:15, 159:9-19; Ex. 9 (Jesus Testimony, Juan Hernandez Trial 1, 3/8/00) at 43:6-44:12).**

18. Shortly after 11:00 p.m. on June 27, 1997, a group of three men approached 2208 and 2212 N. Mobile,. Two of the men were  waived gang signs and represented themselves as members of the MLDs. **(Ex. 1 at ¶¶  29-31; Ex. 40 at 58:7-59:1, 60:10-61:13; Ex. 4 at 104:17-105:17; Ex. 5 at 175:18-176:5; Ex. 8 at 161:4-162:10; Ex. 10 (Jesus Testimony, Juan Trial Trans. II, 11/15/01) at 50:17-51:22; Ex. 9 at 46:14-47:11; Ex. 11 at 8:24-9:2, 9:16-21, 10:12-11:9).**

19. Violante represented back to the men that he was a member of the MLDs. **(Ex. 1 at ¶¶ 31-32; Ex. 40 at 61:14-17; Ex. 8 at 163:2-23; Ex. 10 at 52:11-15; Ex. 9 at 52:12-20; Ex. 11 at 10:12-11:9).**

20. The two men then indicated their affiliation with the rival gang, the Spanish Cobras, and drew guns on the group, firing at Violante, Jorge, and Cruz, killing Jorge and wounding Cruz before fleeing down Mobile. **(Ex. 1 at ¶¶ 32-34; Ex. 40 at 61:21-63:3; Ex. 4 at 111:23-113:4, 115:4-7; Ex. 5 at 183:3-18, 184:9-185:10, 186:16-22; Ex. 8 at 165:1-3, 165:24-166:19, 167:24-168:10; Ex. 10 at 56:17-59:2, 59:8-19; Ex. 9 at 54:17-55:24, 56:4-9; Ex. 11 at 12:5-14, 12:19-14:7, 16:13-17:12).**

4

**THE WITNESSES**

21.     **Nancy:** Shortly before the shooting, Nancy observed three men approaching the two houses at 2208 and 2212 N. Mobile. **(Ex. 2 at 98:24-100:13, 132:4-15, 133:2-7; Ex. 3 at 79:23-80:16, 102:15-17).** Nancy observed one of the individuals walk up to 2212 N. Mobile saying "Maniac Love, Disciple Love." **(Ex. 2 at 100:14-102:19, 136:20-137:5; Ex. 3 at 81:19-83:10, 102:15-23, 103:3-9).** Nancy saw Violante come down from the porch to meet the individual and "represent" that he also was a member of the MLDs. **(Ex. 2 at 100:14-102:5, 136:20-137:5; Ex. 3 at 82:5-83:20, 102:24-103:8).** Nancy then heard the man say "D.K. Cobra Love," take out a gun, and point it at Violante. **(Ex. 2 at 101:1-102:22, 136:20-137:5; Ex. 3 at 83:11-85:14, 103:7-9).** Nancy saw Violante jump the fence between 2208 N. Mobile and 2212 N. Mobile and run away as the man shot toward Violante. **(Ex. 2 at 102:6-103:2, 104:1-12-; Ex. 3 at 84:20-86:2, 103:23-104:11, 107:5-7).** Nancy then observed the man fire toward Cruz, who was attempting to run into the house at 2208 N. Mobile, and then begin shooting toward Jorge in the front yard of 2208 N. Mobile. **(Ex. 2 at 104:7-106:7, 138:2-16; Ex. 3 at 86:14-87:6, 87:17-20, 105:22-24).** At that time, Nancy saw a second man from the group shoot at Jorge. **(Ex. 2 at 105:7-106:7; Ex. 3 at 87:10-13)**. Nancy saw Jorge fall to the ground. **(Ex. 2 at 138:8-18).**

22.     **Jose:** Shortly before the shooting, Jose observed three men approach their group on foot from the corner of Palmer and Mobile. **(Ex. 4 at 104:16-105:7, 125:5-8; Ex. 5 at 175:16-19.)** The three men were throwing up a fork, dropping the Cobra, and saying "Maniac" and "Cobra Killer." **(Ex. 4 at 105:8-14, 106:12-13, 125:12-22, 126:10-13, 126:23-127:1, 127:20-128:2; Ex. 5 at 176:2-5, 177:3-6).** Jose saw two of the men stop at 2208 N. Mobile and one of the individuals continue on to 2212 N. Mobile and approach Violante. **(Ex. 4 at 108:9-12, 109:10-14, 125:23-126:9; Ex. 5 at 178:14-22; Ex. 6 (Jose PC Testimony, 6/8/22) at 217:13-21).** Violante met the man at the bottom of the steps at 2212 N. Mobile and saw the man throw up the fork to represent that he was a MLD. **(Ex. 4**

5

at 127:20-24; Ex. 5 at 179:9-181:12, 207:23-208:3).** Jose saw the man pull out a gun and point it at Violante. **(Ex. 4 at 110:10-14, 128:11-20; Ex. 5 at 181:19-23, 183:6-9).** Violante then jumped the fence between 2208 and 2212 N. Mobile and Jose heard the man fire twice at Violante. **(Ex. 4 at 111:21-113:1, 129:17-130:19, 132:7-9; Ex. 5 at 183:10-184:4, 207:8-10).** Jose then saw the man who shot at Violante and a second man both shoot at Jorge. **(Ex. 4 at 113:2-115:3, 132:10-133:1; Ex. 5 at 184:9-185:18, 207:11-15, Ex. 6 at 237:2-238:13, Ex. 7 (Jose Dep.) at 106:16-21, 115:2-7, 115:12-19).**

23. **Jesus:** Shortly before the shooting, Jesus observed three men walking toward them turning onto Mobile from Palmer saying something like "Disciple" and "Cobra Killer." **(Ex. 8 at 160:22-161:10, 161:14-24; Ex. 9 at 46:13-18, 47:1-9, 49:8-17, 50:3-5).** Jesus saw one of the men come up to Violante in front of 2212 N. Mobile and another man stop in front of 2208 N. Mobile. **(Ex. 8 at 162:5-10; Ex. 9 at 50:6-51:16; Ex. 10 at 50:19-51:17, 70:15-17).** Violante responded to the man by saying "Disciple," and then the man pulled out a gun and pointed it at Violante. **(Ex. 8 at 163:5-164:13, 181:1-14, 183:13-16; Ex. 9 at 51:17-52:20, 52:24-53:20, 101:11-13; Ex. 10 at 53:11-15, 54:4-8, 71:11-15).** Violante jumped the fence between 2208 and 2212 N. Mobile and one of the men fired two shots at Violante. **(Ex. 8 at 164:19-165:3, 184:13-185:3, 185:6-13; Ex. 9 at 53:22-54:19, 58:9-12, 104:9-15; Ex. 10 at 54:17-55:2, 72:4-11).** Jesus could see the man in front of 2208 N. Mobile pointing a gun at Jorge. **(Ex. 8 at 165:4-166:8; Ex. 9 at 54:20-55:8).** Violante then saw the man who shot at Violante walk in front of 2208 N. Mobile and shoot at Cruz. **(Ex. 8 at 166:14-23).** Jesus then ran inside the house at 2212 N. Mobile. **(Ex. 8 at 166:20-167:3; Ex. 9 at 54:20-55:8).** The last thing Jesus saw before going inside was the second man standing in the grass in front of 2212 N. Mobile pointing a gun at Jorge. **(Ex. 8 at 167:4-11, 186:5-186:8; Ex. 10 at 55:11-12, 56:1-4, 56:16-59:2, 72:23-73:12, 76:15-16).** When Jesus went inside, he heard six or seven more gunshots. **(Ex. 8 at 167:12-20; Ex. 9 at 55:10-13).**

24.     **Cruz:** Shortly before the shooting, Cruz observed three people coming toward them from Palmer yelling "Disciple Love" and "Cobra Killer." **(Ex. 11 at 8:22-9:21, 29:1-10; Ex. 12 (Juan Carlos Cruz Testimony, Juan Trial Trans. II, 11/15/01) at 149:4-15, 151:5-11).** The three individuals spread out, one going towards 2212 N. Mobile, one standing in front of 2208 N. Mobile to Cruz's right, and the third individual staying by the fence at the end of 2208 N. Mobile. **(Ex. 11 at 10:12-11:3, 12:23-13:9, 30:9-13, 30:20-31:2; Ex. 12 at 150:3-7, 153:12-154:3, 169:22-170:8, 171:1-7).** As the first individual walked toward 2212 N. Mobile, Violante walked to meet him in the yard, threw up the pitchfork, and said "Disciple Love," at which time the man threw down the fork, said "Cobra Love," and pulled out his gun and pointed it at Violante. **(Ex. 11 at 11:1-9, 12:5-22, 31:3-16, 41:13-42:9; Ex. 12 at 151:5-19, 152:19-153:11, 170:12-18, 173:8-12, 174:3-5).** Cruz then saw the second man in front of 2208 N. Mobile pull out a gun and point it toward Jorge. **(Ex. 11 at 13:10-15; Ex. 12 at 154:20-155:9, 174:3-16).** When Cruz saw the guns, he turned around, pushed Maribel through the door at 2208 N. Mobile, and ran through the door behind her. (**Ex. 11 at 13:19-14:2, 37:9-21; Ex. 12 at 154:20-155:9, 174:3-16).** As he went through the door, Cruz heard about three gunshots, then heard about five more gunshots when he was inside the house. **(Ex. 11 at 14:3-16, 37:22-38:1; Ex. 12 at 155:10-24).** When Cruz went back outside, he realized he had been shot in the leg. **(Ex. 11 at 15:21-16:19, 17:1-15; Ex. 12 at 157:19-159:11).**

25.     **Maribel:** Shortly before the shooting, Maribel observed three men coming toward her house from Palmer saying "gang things." **(Ex. 13 at 194:3-5; Ex. 14 (Maribel Testimony, Juan Trial Trans., 11/14/01) at 39:2-40:15, 41:3-5, 51:10-18, 52:14-53:5).** When they got to her house, Maribel saw one of the men talking to Violante, saying "Maniac Love," indicating he was a MLD. **(Ex. 13 at 195:9-196:9; Ex. 14 at 41:6-9, 42:1-12, 53:16-23, 54:6-10).** Maribel heard Violante say he was a MLD too. **(Ex. 13 at 196:1-9; Ex. 14 at 41:6-9, 42:1-12, 53:16-23, 54:6-10).** Then the guy said "Maniac Killer" and pulled out a gun. **(Ex. 13 at 196:11-15; Ex. 14 at 41:6-9, 42:13-18, 54:11-14).** At the time,

the two other men were in front of Maribel's house at 2208 N. Mobile. **(Ex. 13 at 196:19-22).** When

Maribel saw the gun, she ran inside the house where she heard shots. **(Ex. 13 at 196:23-197:11, 197:21-24, 206:22-24; Ex. 14 at 42:24-43:17, 54:19-21, 59:17-60:10).** Maribel never got a good look at any of

the shooters' faces. **(Ex. 13 at 197:15-20).**

## INITIAL POLICE RESPONSE

26.      Detectives Bernard Brennand and Michael Mason responded to the scene of the

shooting. **(Ex. 43 (Mason Dep.) at 71:11-25; Ex. 44 (Mason, Brennan, Wannicky Supp. 6/28/97) at 3-4).**

27.      After the shooting, the witnesses, including Jose Gonzalez, Jesus Gonzalez, Maribel

Gutierrez, Nancy Gonzales, and Daniel Violante were brought to Area 5 and interviewed by

Detectives Bernard Brennan and Michael Mason. **(Ex. 43 at 69:22-70:2, 70:17-71:3; Ex. 44 at 5-7).**

28.      The initial description given by eyewitnesses Juan Carlos Cruz, Jose Gonzalez, Jesus

Gonzalez, Maribel Gutierrez, Nancy Gonzalez, and Daniel Violante included  that the shooters were

male Hispanics, approximately 17 years old, 5'07"-5'09," 150-170 pounds, bald/short hair and "clean

shaven . . . white short-sleeve shirts." **(Ex. 44 at 2, 5-7; Ex. 43 at 89:9-14, 96:22-97:22, 100:19-101:24).**[1]

---

[1] In support of their Motion for Summary Judgment and L.R. 56.1. Statement of Material Facts, Defendants cite herein to various relevant police reports as evidence of some of the actions taken by Defendant  Detectives during the investigation, as well as the effect third-party statements had on the officers and the bases for probable cause. Police reports used in such fashion are admissible in evidence as business records and public records. *Cairel v. Alderden*, 821 F.3d 823, 830-31 (7th Cir. 2016)(under Fed. R. Evid. 801(c)(2), court can consider statements in police reports because statements offered only to establish probable cause: "To the extent the officers reported statements made by others – the robbery victims – those statements were not hearsay because they were not offered to prove that they were true…The statements by the victims were offered instead to show the officers had probable cause to arrest plaintiffs…"); see also *Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir. 2000)(same). Moreover, Defendants anticipate the appropriate witnesses will testify to their actions consistent with the substance of the reports. Accordingly, these reports are appropriate to cite as authority in support of Defendants' Motion for Summary Judgment and L.R. 56.1 Statement of Material Facts. *Winskunas v. Birnbaum*, 23 F.3d 1264, 1268 (7th Cir. 1994) (summary of anticipated oral testimony at trial appropriate for summary judgment).

## OFFICER BEMIS RECEIVES A TIP

29. The next day, on June 28, 1997, Bemis received an anonymous call at the 025 District police station, in which the caller stated that "Junebug" and "Poochie," Spanish Cobras from the Fullerton and Kilbourn sect of Spanish Cobras, were the shooters. **(Ex. 28 (Halvorsen Supp. 7/1/97) at 3; Ex. 25 (Bemis Testimony, Rosendo Trial Trans., 8/15/99) at 160:23-161:12; Ex. 26 (Bemis Testimony, Juan Trial Trans. II, 11/15/01) at 186:21-187:17).**

30. Bemis recognized the street names as belonging to Rosendo (Junebug) and Juan (Poochie). **(Ex. 28 at 3; Ex. 25 at 158:13-160:13; Ex. 26 at 188:9-190:7, 200:5-17.)**

31. Bemis and his partner gathered pictures of Juan, Rosendo, and ten "filler" photographs. **(Ex. 25 at 161:13-162:21; Ex. 26 at 187:24-188:5, 190:8-19.)**

32. DeGraff learned of the anonymous tip. **(Ex. 28 at 3; Ex. 18 (Guevara Testimony, Rosendo Trial Trans., 8/11/99) at 37:15-39:3, 62:10-13; Ex. 25 at 161:13-162:21; Ex. 26 at 187:20-23, 187:24-5, 190:8-23).**

## DETECTIVES ADMINISTER PHOTO ARRAYS

33. On June 29, Sgt. Biebel assigned Guevara and Halvorsen to the investigation. **(Ex. 28 (Halvorsen Supp. 7/1/97) at 3; Ex. 18 at 36:20-37:3; Ex. 20 at 213:3-13.)**

34. That same day, Guevara and Halvorsen drove Cruz, Jose and Jesus to Area 5 and showed them known Spanish Cobra photo books—not including the brothers. **(Ex. 28 at 3; Ex. 18 at 37:4-37:11; Ex. 20 at 214:14-215:8; Ex. 9 at 74:9-76:9, 120:8-120:20, 121:1-121:10.)** None made an identification. (**Ex. 28 at 3; Ex. 9 at 74:9-76:9, 120:8-120:20, 121:1-121:10.)**

35. On June 29, 1997, DeGraff informed Guevara and Halvorsen of the anonymous tip received by Bemis. **(Ex. 28 at 3; Ex. 18 at 37:15-39:3, 62:10-62:13; Ex. 20 at 215:9-215:17, 215:23-216:1; Ex. 25 at 161:13-162:20; Ex. 26 at 187:20-187:23, 187:24-187:5, 190:8-190:23).**

36.     DeGraff gave Guevara and Halvorsen the twelve black and white photos he received from Bemis, consisting of a photo of Juan, a photo of Rosendo, and ten filler photos to use in a photo array. **(Ex. 18 at 37:15-39:3, 62:10-62:13; Ex. 20 at 216:2-216:21, 3:6-3:19; Ex. 25 at 161:13-162:10, 162:11-162:21, 165:1-165:23; Ex. 26 at 187:24-187:5, 190:8-190:23, 192:18-194:15).**

37.     On June 29, 1997, at 6:00 p.m., Jose, Jesus, and Cruz separately viewed a photo array administered by Guevara at Area 5 consisting of Juan, Rosendo and ten fillers. **(Ex. 28 at 3; Ex. 4 at 116:21-118:16, 133:20-24; Ex. 5 at 189:22-190:23, 195:1-195:16, 212:24-213:4; Ex. 6 at 180:3-181:18, 191:13-191:19, 268:21-269:1, 269:22-270:4, 271:8-13, 295:5-8; Ex. 7 at 143:13-24; Ex. 8 at 169:18-171:2, 178:2-4; Ex. 9 at 58:18-59:6, 60:1-12, 71:18-72:2; Ex. 10 at 61:6-9, 62:12-14; Ex. 11 at 18:16-21; Ex. 12 at 160:18-161:16, 162:4-6; Ex. 18 at 36:20-37:14, 39:4-8, 59:9-20, 59:24-60:3).** The photos were laid out on a table in random order. **(Ex. 28 at 3; Ex. 5 at 217:10-12; Ex. 6 at 295:5-8; Ex. 8 at 170:12-171:2, 178:2-4; Ex. 9 at 58:18-59:6, 60:5-12, 71:18-72:2; Ex. 10 at 84:3-5; Ex. 12 at 165:11-12, 175:21-176:4; Ex. 18 at 39:10-17, 40:4-6; Ex. 20 at 3:6-19, 23:14-17, 24:12-25:2, 25:13-16, 216:22-217:11, 217:16-18, 218:1-5).**

38.     Jose was shown the photo array and the police asked Jose if he recognized anyone. **(Ex. 5 at 189:22-190:23, 195:1-116, 212:24-213:4; Ex. 7 at 143:13-24).** Jose identified Juan and Rosendo from the photographs as the shooters. **(Ex. 4 at 116:21-118:16, 133:20-24; Ex. 5 at 190:24-192:10, 195:17-196:19, 218:2-4; Ex. 6 at 180:3-181:18, 268:21-269:1, 269:22-270:4, 271:8-271:13; Ex. 7 at 147:10-20, 152:13-16; Ex. 18 at 41:1-19; Ex. 20 at 217:19-218:5).**

39.     The police did not tell Jose who to pick out from the photo array or do anything to indicate who Jose should select from the photos. **(Ex. 4 at 134:18-135:2; Ex. 5 at 199:16-20; Ex. 6 at 181:19-22; Ex. 7 at 171:2-6; Ex. 18 at 70:12-19; Ex. 20 at 14:24-15:8).** Jose felt no pressure to identify anyone from the photo array. **(Ex. 5 at 199:16-20).**

40.     Jesus was shown the photo array and asked if he could pick out the shooters. **(Ex. 10 at 83:21-24).** Jesus identified Juan and Rosendo in the photo array. **(Ex. 8 at 170:8-11, 171:3-20; Ex. 9 at 60:13-63:7, 111:24-112:3, 116:4-8, 116:16-18; Ex. 10 at 65:23-67:9, 84:1-2; Ex. 18 at 40:7-40:24; Ex. 20 at 2:12-18, 3:23-4:3).**

41.     The detective conducting the photo array did not tell Jesus who to pick out. **(Ex. 9 at 62:2-63:1; Ex. 10 at 62:19-21, 83:18-20, 91:14-17; Ex. 18 at 70:12-19; Ex. 20 at 14:24-15:8).**

42.     When Cruz viewed the photo array, he identified Juan as the man that stood by and pulled the gun on Violante and Rosendo as the man who stood by and pulled the gun on Jorge. **(Ex. 11 at 18:22-19:24, 20:2-9; Ex. 12 at 161:17-162:3, 164:4-165:10; Ex. 20 at 2:21-3:1, 3:23-4:3).**

43.     After Jose, Jesus and Cruz made the identifications in the photo arrays, a stop order was issued for Plaintiffs. **(Ex. 28 at 4; Ex. 25 at 162:1-162:8).**

44.     On June 30, 1997, at approximately 7:30 p.m., Halvorsen and Guevara went to Jorge's wake at 2914 N. Central Ave. and showed the same photo array to Nancy. **(Ex. 28 at 4; Ex. 2 at 110:5-112:21; Ex. 18 at 42:20-43:14, 43:15-44:10, 62:16-20; Ex. 20 at 4:12-18, 5:7-16, 26:2-4.)**

45.     Halvorsen and Guevara asked Nancy to look at all 12 photos and asked if she recognized anyone. **(Ex. 28 at 4; Ex. 2 at 111:22-112:3; Ex. 3 at 89:20-91:4, 93:14-94:20, 112:14-113:3, 118:6-119:10, Ex. 20 at 26:11-23, 27:11-13).** Nancy identified Rosendo as being one of the shooters. **(Ex. 28 at 4; Ex. 2 at 111:22-113:14; Ex. 3 at 89:20-91:4, 93:14-94:20, 112:14-113:3, 118:6-119:10; Ex. 20 at 5:14-6:1, 6:6-15, 27:14-20).**

46.     The detectives did not tell Nancy who to pick out in the photo array. **(Ex. 3 at 91:5-7; Ex. 18 at 44:11-17, 70:12-19).**

### JUAN AND ROSENDO SURRENDER

47.     After the photo identifications, Bemis spoke with Kent Brody ("Brody"), the attorney for Juan and Rosendo, and Brody stated he would arrange for Juan and Rosendo to surrender

11

themselves at the 025 District at 9:30 p.m. on June 30, 1997. **(Ex. 28 at 4; Ex. 37 at 210:21-211:22; Ex. 45 (Brody Dep.) at 36:6-41:17).**

48.     At 10:00 p.m. on June 30, 1997, Juan and Rosendo surrendered themselves at the 025 District with their attorney, Brody. **(Ex. 28 at 4; Ex. 37 at 214:7-9; Ex. 45 at 41:13-42:8, 44:1-13).**

## WITNESSES IDENTIFY PLAINTIFFS IN LINEUPS

49.     On June 30, 1997, at 11:30 p.m., Nancy, Jose, Jesus, and Cruz separately viewed two lineups, one lineup containing Juan and five fillers and another lineup containing Rosendo and five different fillers. **(Ex. 28 at 4-5; Ex. 29 (Lineup Supp 7/1/97 - RH Lineup) at 1-2; Ex. 30 (Lineup Supp 7/1/97 - JH Lineup) at 1-2; Ex. 2 at 113:15-116:4; Ex. 3 at 91:12-92:5; Ex. 4 at 118:17-120:4; Ex. 5 at 192:11-193:6, 218:5-10, 221:5-7; Ex. 6 at 182:9-18, 280:10-12, 299:18-20, 299:15-300:6; Ex. 7 at 152:20-153:1; Ex. 8 at 171:21-173:18; Ex. 9 at 66:20-70:5; Ex. 10 at 63:9-18; Ex. 11 at 20:21-21:2; Ex. 12 at 162:7-20; Ex. 18 at 47:5-8, 47:9-49:5, 52:1-52:3; Ex. 20 at 8:2-9:1, 9:7-13, 11:6-21).**

50.     Brody was permitted to stand with his clients and the fillers during the administration of the lineups. **(Ex. 45 at 50:9-50:12).** Juan and Rosendo were permitted to choose their spot in the lineups. **(*Id.* at 50:13-50:16; Ex. 46 (Kent Brody Testimony, Juan Heranndez Trial II, 11/16/01) at 39:19-39:22).** None of the people in the lineup were instructed to do anything suggestive. **(Ex. 45 at 50:17-23; Ex. 46 at 39:23-40:2).**

51.     Guevara conducted the lineups by finding fillers and showing Nancy Gonzalez, Jose Gonzalez, Daniel Violante, Juan Carlos Cruz, and Jesus Gonzalez the lineups. **(Ex. 18 at 47:5-53:20; Ex. 20 at 8:2-13, 11:6-11:10).**

52.     When Nancy viewed the lineups, the detective asked Nancy if she recognized anyone. **(Ex. 2 at 117:7-11; Ex. 3 at 92:11-13).** Specifically, Nancy recalls the detective saying: "Now, if you don't see nobody that you recognize, you know, don't point at anybody. We know that right now, you know, you're hurt and maybe a lot of people want somebody to go in in [sic] jail for what they did,

just – if you don't see somebody that you recognize, just say, I don't see nobody and that was it." **(Ex. 15 (Nancy Dep.) at 206:12-207:12).**

53. In the lineup which contained Juan, Nancy told the detective that she "thought" she recognized one of the men in the lineup as one of the shooters, and told the detective that she "thought" she recognized one of the other individuals in the lineup as the man who may have been present but was just standing there. (**Ex. 2 at 114:13-115:20; Ex 18 at 49:6-18; Ex. 20 at 10:10-14, 30:12-17**). Specifically, Nancy picked out the individual that was in the fourth position as being the man she thought she saw talking to Violante, and the man that was in the third position as being the third individual who was just standing there, not shooting. **(Ex. 3 at 96:19-97:15, 121:8-16, 124:17-125:3; Ex. 18 at 49:6-18; Ex. 20 at 10:10-14, 30:12-17).** Juan was, in fact, in the fourth position in that lineup. **(Ex. 30 at 2; Ex. 18 at 49:6-18; Ex. 20 at 13:6-11).**

54. In the lineup containing Rosendo, Nancy identified Rosendo as the man who shot Jorge. **(Ex. 2 at 115:24-116:18; Ex. 3 at 91:12-92:5, 92:6-8, 95:22-96:18, 119:11-21; Ex. 18 at 52:10-19; Ex. 20 at 11:22-12:2, 12:19-22, 12:23-13:3).**

55. The detectives did not tell Nancy who to pick in the lineup. **(Ex. 3 at 92:9-10; Ex. 15 at 278:6-10; Ex. 18 at 70:12-19; Ex. 20 at 15:9-12).**

56. Jose identified Juan and Rosendo in the separate lineups as the two shooters. **(Ex. 4 at 118:17-120:4; Ex. 5 at 193:18-22, 196:20-198:4, 218:13-16; Ex. 6 at 182:9-18, 280:10-12, 299:15-300:6; Ex. 18 at 49:19-50:6, 52:10-19; Ex. 20 at 9:14-18, 12:3-6, 12:19-13:3).**

57. When Jose viewed the lineups, the officer conducting the lineup did not tell Jose anything about the people standing in the lineup, did not tell Jose who to pick out, and did not do anything to suggest to Jose who he should pick. **(Ex. 5 at 194:17-20; Ex. 6 at 182:16-183:18, 183:24-184:2, 185:12-186:11, 186:15-17, 191:23-192:1, 283:17-283:19, 299:15-300:2; Ex. 7 at 170:7-12, 171:7-**

**17; Ex. 18 at 70:12-19; Ex. 20 at 15:9-12).** Jose felt no pressure to make an identification in either lineup; no one was pressuring him to make an identification. **(Ex. 6 at 303:21-304:22).**

58. In the lineups, Jesus identified Rosendo as the man he saw pointing the gun at Jorge and Juan as the man who shot at Violante. **(Ex. 8 at 171:21-173:18; Ex. 9 at 66:20-70:5; Ex. 10 at 64:12-14, 67:10-69:3; Ex. 18 at 49:19-50:6, 52:10-19; Ex. 20 at 10:5-9, 12:19-13:3).**

59. Neither the detective nor anyone else told Jesus who to pick out of the lineups. **(Ex. 9 at 68:7-9, 69:21-23; Ex. 10 at 64:12-16, 65:1-2; Ex. 18 at 70:12-9, Ex. 20 at 15:9-12).**

60. When Cruz viewed the lineups, the detective asked him to look carefully and see if he had seen anyone who was out there on the night of the shooting. **(Ex. 11 at 23:1-9).** Cruz identified Juan as the person he saw standing by and pulling the gun on Violante, and Rosendo as the man who pulled the gun on Jorge. **(Ex. 11 at 21:9-23:4; Ex. 12 at 162:21-163:12, 165:15-166:20; Ex. 18 at 49:19-50:6. 52:10-19; Ex. 20 at 9:24-10:4; 12:11-14, 12:19-13:3).**

61. Maribel was never able to make an identification of anyone. **(Ex. 47 (Maribel Gutierrez Dep.) at 93:11-13).** At no time did Maribel feel pressure from her family or police to make an identification. **(*Id.* at 153:4-16).**

### INTERVIEWS OF JUAN AND ROSENDO

62. After the lineups, on July 1, 1997, Rosendo was interviewed by Guevara with his attorney, Brody, present. **(Ex. 28 at 5-6; Ex. 38 at 142:5-17, 143:7-9, 144:21-145:8).**

63. After Rosendo's interview, Juan was interviewed by Guevara with his attorney, Brody, present, memorialized in a report by Halvorsen. **(Ex. 28 at 6; Ex. 37 at 227:2-15; Ex. 21 at 93:17-23).**

64. After these initial interviews, Assistant State's Attorneys ("ASA') Heather Brualdi and George Andrews from the Felony Review Unit of the Cook County State's Attorney's Office

14

("CCSAO") arrived at Area 5 at approximately 3:45 a.m. on July 1. **(Ex. 28 at 6; Ex. 24 (Brualdi and Andrews Stipulation, Juan Trial Trans. II, 11/19/97) at 99:19-100:3).**

65.     Juan and Rosendo's parents, Esther and Rosendo, Sr., Hernandez were interviewed by Guevara and ASAs Brualdi and Andrews. **(Ex. 28 at 6).**

66.     Rosa Solis, a family friend and Juan's alibi, was also interviewed by Guevara. **(Ex. 28 at 7-8)**.

67.     On July 1 at 3:45 a.m., Juan was interviewed by Guevara, ASA Brualdi and ASA Andrews in the presence of Brody. **(Ex. 28 at 8; Ex. 24 at 99:19-100:3).**

68.     Around the same time, Rosendo was also interviewed by Guevara, ASA Bruadli and ASA Andrews in the presence of Brody. **(Ex. 28 at 8).**

69.     ASAs Brualdi and Andrews also interviewed Nancy, Jose, Violante, Cruz and Jesus. **(Ex. 28 at 6).**

70.     After the interviews, ASA Brualdi approved charges of First-Degree Murder. **(Ex. 28 at 8).**

## PLAINTIFFS' PRETRIAL PROCEEDINGS

71.     On July 31, 1997, in *People v. Juan Hernandez and Rosendo Hernandez*, 97 CR 21329, a Cook County grand jury returned a true bill indicting Plaintiffs for the First-Degree Murder of Jorge, Attempt First-Degree Murder of Violante, Attempt First-Degree Murder of Cruz, Aggravated Battery with a Firearm, and Aggravated Discharge of a Firearm. **(Ex. 48 (*People v. Juan Hernandez and Rosendo Hernandez*, 97 CR 21329, Indictment)).**

72.     Guevara and Violante testified in the grand jury proceedings. **(Ex. 49 (July 29, 1997, GJ Trans., *People v. Juan Hernandez and Rosendo Hernandez*)).**

## WITNESS TAMPERING OF VIOLANTE

73. During the pendency of Juan and Rosendo's criminal proceedings for the murder of Jorge, and while incarcerated in the Cook County Department of Corrections, Juan reached an agreement with another inmate, Oscar Soto, who was a member of the MLDs, to get recant affidavits from the eyewitnesses that had identified Juan and Rosendo in the June 27, 1997, shooting. **(Ex. 37 at 251:5-9, 252:4-253:23, 257:24-265:10).**

74. On May 15, 1998, Violante signed an affidavit stating that he "accused both Juan C. Hernandez and Rosendo Hernandez Jr. out of retaliation and pressure from the gang. I never saw Juan C. Hernandez and Rosendo Hernandez Jr. at the scene of the murder of Jorge Gonzalez and attempted murder of Juan Carlos Cruz." **(Ex. 50 (Violante Aff.)).**

75. An investigation conducted by the CCSAO and the CPD uncovered the conspiracy between the Spanish Cobras and MLDs. **(Ex. 51 (CCSAO 6/3/1998 Investigative Report) at CCSAO_001492-001493; Ex. 52 (CCSAO 6/19/1998 Investigative Report) at CCSAO_001505; Ex. 53 (Area 5 Supp. Report, 10/20/1998) at CCSAO_001509-001516).**

76. Violante was interviewed by ASAs Galivan and Nikolich and testified on June 3, 1998 and December 30, 1998, both under oath, in front of two separate grand juries in an obstruction of justice investigation about the events surrounding his affidavit. **(Ex. 54 (June 3, 1998, GJ Trans.) at 5:24-39:4; Ex. 51; Ex. 77 (Dec. 30, 1998, GJ Trans.)).**

77. In his June 3, 1998 testimony, Violante testified that he picked Juan and Rosendo out of a lineup as the individuals who killed Jorge. **(Ex. 54 at 15:12-15:18).**

78. Violante further testified that the contents of the affidavit were not true; rather, the information he gave to police and that he testified to in the July 1997 grand jury proceedings was true. **(Ex. 54 at 36:20-37:13).**

79.     In his December 30, 1998 testimony, Violante again testified that he picked Juan and Rosendo out of a lineup as the individuals who killed Jorge. **(Ex. 77 at 4:2-18).**

80.     Violante explained in his December 30, 1998 testimony that he "didn't have no choice" and that he "would get a violation" if he disobeyed the order to sign the statement. **(Ex. 77 at 14:9-21).**

81.     On April 16, 1999, Esther Hernandez ("Esther"), Rosendo Hernandez Sr. ("Rosendo Sr."), and one MLD were indicted for obstruction of justice for their role in the conspiracy to obtain the recant affidavits**. (Ex. 55 (Certified Statement of Conviction, *People v. Esther Hernandez*, 99CR0938402), Ex. 56 (Certified Statement of Conviction, *People v. Rosendo* Hernandez, Sr., 99CR0938403); Ex. 57 (Certified Statement of Conviction *People v. Patrick Cruz*, 99CR0938405); Ex. 77 at 9:22-10:8 (confirming Patrick Cruz is an MLD)).**

82.     On March 9, 2001, Esther and Rosendo  Sr., pled guilty to obstruction of justice for their role in obtaining the recantation affidavits. **(Ex. 55 at 12; Ex. 56 at 12).**

83.     MLD Patrick "Fat Boy" Cruz pled guilty to obstructing service of process for his role in obtaining Violante's recant affidavit. **(Ex. 57 at 10; Ex. 77 at 9:22-10:8).**

### ROSENDO IS TRIED AND CONVICTED

84.     At Rosendo's criminal trial, on August 9, 1999, Nancy identified Rosendo as the individual she saw shooting at Jorge. **(Ex. 2 at 106:11-107:1.)**

85.     At Rosendo's criminal trial, Jose identified Rosendo one of the two men who shot Jorge. **(Ex. 4 at 105:20-106:4, 108:9-22, 113:5-114:9, 114:13-15).**

86.     At Rosendo's criminal trial, Jesus identified Rosendo as the man he saw standing in front of 2208 N. Mobile pointing a gun at Jorge before Jesus ran inside the house. **(Ex. 8 at 162:5-22, 165:4-166:8, 167:4-11, 186:5-10).**

87. At Rosendo's criminal trial, Cruz testified that he saw Rosendo reach for his gun and point it at Jorge before Cruz ran inside the house and heard gunshots. **(Ex. 11 at 9:22-10:10, 13:7-14:7).**

88. Halvorsen, DeGraff, and Biebel did not testify in any of Rosendo's criminal proceedings, including the criminal trial. **(Ex. 27 (Criminal Trial Indices)).**

89. At Rosendo's criminal trial, Bemis testified about his knowledge of the MLDs and the Spanish Cobras, that he received a call, and after the call, he and his partner gathered photographs of Juan and Rosendo and ten filler photographs and gave them to his sergeant, about his knowledge of Juan and Rosendo's involvement with the Spanish Cobras, his attempt to locate Juan and Rosendo at their last known address, and his conversation with Juan and Rosendo's attorney, Brody, to arrange for their surrender. **(Ex. 25 at 151:21-152:5, 158:13-160:3, 160:23-164:1, 164:6-165:23, 175:3-176:7).**

90. No police reports were entered into evidence at Rosendo's criminal trial. **(Ex. 22 (Impound Order, Rosendo Hernandez Trial, 6/24/02)).**

## JUAN IS TRIED AND CONVICTED

91. At Juan's first criminal trial in March of 2000, Jesus identified Juan as the man who shot at Violante. **(Ex. 9 at 50:22-51:8, 53:2-54:19, 58:9-12, 104:9-15).**

92. Juan's first criminal trial resulted in a mistrial after 1 day of testimony, because Juan's attorney, Richard Beuke, had previously represented Guevara. **(Ex. 1 at ¶ 104; Ex. 58 (Juan Trial Trans. I, Mistrial Excerpt 03/09/2000 at 25:12-18)).**

93. At Juan's second trial, in November of 2001 Jesus testified and, again, identified Juan as the man who walked over to and shot at Violante and Jorge. **(Ex. 10 at 52:24-53:9, 56:16-59:2, 71:11-20 72:23-73:12, 76:15-20).**

94. At Juan's second criminal trial, Jose identified Juan as the man who pulled a gun and fired at Violante and one of the two men who shot Jorge. **(Ex. 5 at 179:9-180:10, 181:19-182:3, 183:6-185:18).**

95. At Juan's second criminal trial, Cruz identified Juan as the man he saw pull out a gun and point it at Violante before Cruz ran inside and heard gunshots. **(Ex. 12 at 154:4-155:24, 174:3-21).**

96. At Juan's second criminal trial, Bemis again testified about his knowledge of the MLDs and the Spanish Cobras, that he received a phone call, that after that call he and his partner gathered photographs of Juan and Rosendo and ten fillers he provided to Sgt. DeGraff, about his knowledge of Juan and Rosendo's involvement with the Spanish Cobras, his attempt to locate Juan and Rosendo at their last known address, and his conversation with Juan and Rosendo's attorney, Brody, to arrange for their surrender. Bemis did not testify that the caller identified Juan and Rosendo as the shooters. **(Ex. 26 at 185:22-186:9, 186:21-188:5, 188:9-194:15, 198:19-24, 199:9-19, 200:5-17).**

97. Halvorsen, DeGraff, and Biebel did not testify at any of Juan Hernandez's criminal proceedings, including either of the two criminal trials. **(Ex. 27).**

98. No police reports were entered into evidence at Juan's second criminal trial in November 2001. **(Ex. 23 (Impound Order, Juan Hernandez Trial II, 6/24/02)).**

99. At Juan's second trial, Guevara testified that Nancy made a tentative identification of Juan in the lineup. Juan's attorney showed Guevara a Supplemental Lineup Report and a Lineup Supplemental Report authored by Halvorsen to impeach him by questioning Guevara about the fact that the Supplemental Reports indicated that Nancy had made no identification in the lineup containing Juan. The Supplemental Report itself was not published to the jury. **(Ex. 20 at 27:11-28:2, 28:10-29:14, 31:7-33:12).**

100. At Juan's second trial, Guevara testified that the only people present for Juan's second interview were Juan, an assistant state's attorney, and Guevara. Juan's attorney showed Guevara Halvorsen's Cleared/Open Supplemental Report to establish that the ASA Andrews, ASA Brualdi, and Brody were also present for those interviews, to which Guevara then agreed. (**Ex. 21 (Guevara Testimony, Juan Trial Trans. II, 11/19/01) at 93:9-95:16).** Thereafter, Juan's attorney introduced evidence by stipulation of the testimony for ASAs Brualdi and Andrews, wherein it was stipulated that these ASAs would testify that during the second interview Juan told her that on June 27, 1997, he was at Rosa's Pizza and did not get home until 12:30 a.m. on June 28, 1997. **(Ex. 24 at 99:19-100:17).**

101. The police reports regarding Guevara's interviews of Esther Hernandez, Rosendo Hernandez, Sr., and Rosa Solis were not admitted at Juan or Rosendo's trials. **(Ex. 22; Ex. 23).**

102. Plaintiffs' defense attorneys were in possession of the Violante affidavit at the time of Plaintiffs' criminal trials, but chose not to use the affidavit. **(Ex. 59 (Motions in Limine, Rosendo Tr. Trans. 08/06/1999) at 5:13-6:08; Ex. 60 (Motions in Limine, Juan Tr. Trans. 11/13/2001) at 18:19-20:22).**

## NANCY, JOSE, JESUS, AND CRUZ MAINTAIN THEIR IDENTIFICATIONS OF PLAINTIFFS

103. Nancy has never recanted her identification of Rosendo, but instead, she testified that no police officer told her to identify Rosendo, and is still confident in the identifications she made in the criminal case. **(Ex. 15 at 58:8-13, 278:1-10, 285:7-18).**

104. Sometime before her deposition when she was served with a subpoena, Nancy was also shown a photo by Plaintiffs' counsel of who Plaintiffs' counsel claims is the real killer, and she did not recognize the man. **(Ex. 15 at 285:24-286:15).**

105. Jose maintains that he identified Juan and Rosendo because those are the men he recognized as shooting at Jorge, Violante, and Cruz on June 27, 1997. **(Ex. 7 at 170:7-12).** Jose also maintains, still today, that no police officer suggested or coerced him to identify Juan or Rosendo, that

20

he was not pressured by police to make an identification, and that no one told him what to testify to at the criminal trials. **(Ex. 6 at 181:19-182:2, 182:16-183:18, 183:24-184:2, 185:12-186:11, 186:15-187:6, 187:11-188:24, 191:23-192:1, 270:16-21, 283:17-19, 299:15-300:23, 301:16-302:14, 303:3-18, 303:21-304:22; Ex. 7 at 171:2-6, 171:13-17).**

106.     Still today, Jesus (i) insists on the truthfulness of his testimony at Juan and Rosendo's trials, (ii) maintains that his identifications were consistent with his memory of the shooters, and (iii) agrees that no officer directed him to choose a particular person in a lineup or a photo array. **(Ex. 16 (Jesus Dep.) at 190:4-7, 190:18-196:12).**

107.     As of the date of Cruz's deposition on June 2, 2025, Cruz no longer remembered the events of June 27, 1997, but still maintains his testimony at Juan and Rosendo's criminal trials was true. **(Ex. 17 (Cruz Dep.) at 54:14-18, 54:20-55:4, 186:12-189:19, 196:14-23).**

## DANIEL VIOLANTE'S CRIMINAL TRIAL TESTIMONY

108.     Violante testified on July 29, 1997, under oath, before the grand jury, about the events of June 27, 1997, including the murder of Jorge. **(Ex. 49 at 2:22-23, 3:12-11:1).**

109.     In his July 29, 1997, grand jury testimony, Violante testified he went to Area 5 on the night of June 30, 1997, viewed multiple lineups, and identified two individuals out of those lineups as two of the individuals on the scene on the night of June 27, 1997. **(Ex. 49 at 10:11-11:1).**

110.     Violante testified, under oath, on August 10, 1999, in the case of *People v. Rosendo Hernandez*, 97-CR-21329. **(Ex. 40 at 50:2-12).**

111.     In his August 10, 1999, testimony, Violante testified that at approximately 11:00PM on the night of June 27, 1997, he was at 2212 Mobile with Jesus and Jose. He also testified that Jorge was at one point at 2212 Mobile. Further, he testified that Nancy, Maribel, and Cruz, were next door at 2208 Mobile. **(Ex. 40 at 54:8-22, 55:7-56:9).**

112.    In his August 10, 1999, testimony, Violante testified that after a "purplish" color car passed by twice, he observed "some guys walk up." **(Ex. 40 at 56:19-57:8, 58:7-10).**

113.    In his August 10, 1999, testimony, Violante, that after the car passed, he saw some guys walking up from Palmer, and then stood in front of 2208 Mobile. **(Ex. 40 at 58:7-23).**

114.    In his August 10, 1999, testimony, Violante identified Rosendo as one of the individuals he saw walk up from Palmer and stand in front of 2208 Mobile. **(Ex. 40 at 59:4-15).**

115.    In his August 10, 1999, testimony, Violante testified he saw Rosendo approach where Jorge was. (**Ex. 40 at 59:13-60:12).**

116.    In his August 10, 1999, testimony, Violante testified that another individual came toward him at 2212 Mobile, asked if "they were all gangbangers," represented that he was a "MLD" and that Violante represented back that Violante was a MLD. **(Ex. 40 at 60:13-17).**

117.    In his August 10, 1999, testimony, Violante testified that after Violante represented he was a MLD, the individual said "Disciple Killer, Cobra Love," pulled a gun from his side and pointed the gun at Violante's stomach. Violante then took off and jumped the fence.  **(Ex. 40 at 61:16-62:19).**

118.    In his August 10, 1999, testimony, Violante testified that after he jumped the fence, he heard 6 or 7 gunshots. **(Ex. 40 at 62:23-63:6).**

119.    In his August 10, 1999, testimony, Violante testified that he eventually came back to the front of 2212 Mobile, where he found Jorge in the grass by 2208 Mobile with blood on his face and he was unresponsive. **(Ex. 40 at 63:12-64:15).**

120.    In his August 10, 1999, testimony, Violante testified that he spoke to detectives at Grand and Central and during that conversation, he described the individual he saw that night standing by Jorge as Rosendo. **(Ex. 40 at 64:18-66:9).**

121.    In his August 10, 1999, testimony, Violante testified that while at Jorge's wake on June 30, detectives came to the wake and showed him some photographs, at which time he picked out two

22

photographs: one of the individual he saw go up to Jorge, and one of the individual that pointed a gun at him and shot at him. **(Ex. 40 at 66:17-69:14).**

122.     In his August 10, 1999, testimony, Violante testified that after the wake on June 30, he went to Area 5 and viewed two physical lineups where he again picked out the individual he saw go up to Jorge and the individual who pointed a gun at Violante. **(Ex. 40 at 69:15-71:24).** The individual he picked out of the lineup that he saw go up to Jorge was Rosendo. **(Ex. 40 at 71:12-24).**

123.     Violante testified, under oath, on November 15, 2001, in the case of *People v. Juan Hernandez,* 97-CR-21329. **(Ex. 41, Nov. 15, 2001, Trial. Trans., *People v. Juan Hernandez*, at 95:10-95:19).**

124.     In his November 15, 2001, testimony, Violante identified Juan as one of the individuals he saw on the night of June 27, 1997, who approached Violante with a gun. **(Ex. 41 at 111:8-111:24).**

125.     In his November 15, 2001, testimony, Violante testified that two officers came to George's wake, showed him black and white photographs, and that he recognized two of the individuals as the individuals that went up to 2208 Mobile and came up to Violante at 2212 Mobile. **(Ex. 41 at 113:16-115:19).**

126.     In his November 15, 2001, testimony, Violante testified that later that same night, he went to the police station, viewed two lineups, and picked Rosendo and Juan out of the lineups as two of the individuals he saw on the night of the June 27, 1997, shooting. **(Ex. 41 at 115:20-119:1).**

127.     In his November 15, 2001, testimony, Violante testified that when he viewed the lineups, he was with one police officer, and the police officer did not talk to him about who to pick out of the lineup. **(Ex. 41 at 119:2-119:8).**

128.     In his November 15, 2001, testimony, Violante testified that People's Group Exhibit 6, were the same photographs he reviewed at George's wake. **(Ex. 41 at 119:9-119:15).**

129. In his November 15, 2001, testimony, Violante testified that he picked out People's Exhibit 6-A and 6-L, and that he told detectives the individual in 6-A was in front of 2208 Mobile, and the individual in 6-L pointed the gun at him**. (Ex. 41 at 119:16-120:17).**

130. In his November 15, 2001, testimony, Violante testified when he looked at the black and white pictures with the police officers at the wake, no one told him who to pick out of the pictures. **(Ex. 41 at 122:11-18).**

131. In his November 15, 2001, testimony, Violante testified when he viewed the lineups, no one told him who to pick out and he was not able to talk to any of his friends after they had looked at the lineup but before he looked at the lineup. **(Ex. 41 at 122:19-123:1).**

## JUAN'S RECORDED IDOC CALLS

132. After his conviction, and while Juan was incarcerated in the Illinois Department of Corrections, he made a call on a recorded line to an individual named Sam Perez. **(Ex. 61 (Audio Transcription of IDOC, JGS_Hernandez 24838-24878)).**

133. In that phone call, Juan tells Perez that "we found Congo." **(Ex. 61 at JGS_Hernandez 24852:5-8).**

134. In that phone call, Juan tells Perez that "Flaco" found Congo in Bloomington, that "Flaco" knows Congo's girlfriend on Facebook, and that "Flaco" passed the information on to Juan's mother. **(Ex. 61  at JGS_Hernandez 24852:5-24862:4).**

135. In that phone call, Juan and Perez laugh about Juan's mother accidentally sending a friend request to Violante's girlfriend. **(Ex. 61 at JGS_Hernandez 24856:10-18).**

136. In that phone call,  Juan tells Perez that a state's attorney told his parents that if they had "one of the witnesses changing the story, your sons would already be at home," and that Congo would be the best one [to flip] because he "signed [a recant] in '98." **(Ex. 61 at JGS_Hernandez 24857:15-24859:6).**

24

**PLAINTIFFS' POST CONVICTION PROCEEDINGS**

137.    On April 18, 2018, Plaintiffs filed a joint amended/successive petition for post-conviction relief alleging: (i) actual innocence; (ii) that Guevara had a pattern of misconduct; and (iii) that Guevara and Miedzianowski conspired to frame the brothers. **(Ex. 62 (Joint Amended/Successive Petition for Post-Conviction Relief at Hernandez 014136-014199)).**

138.    The State opposed the motion, and a motion hearing was held in June of 2022. **(Ex. 63, People's Motion to Dismiss *Pro Se* and Supplemental Petitions for Post-Conviction Relief at Hernandez 014356-014367; Ex. 64 (Post-Conviction Hearing, 06/06/2022) at Hernandez 000406-000770; Ex. 65 (Post-Conviction Hearing, 06/07/2022) at Hernandez 000772-001075; Ex. 66 (Post-Conviction Hearing, 06/08/2022) at Hernandez 001077-001426).**

139.    At the motion hearing on June 6, 2022, Violante testified for Plaintiffs that he never saw any faces and never identified Plaintiffs in the underlying criminal case. Specifically, Violante testified in the post-conviction proceedings that: (i) he picked out the Plaintiffs because Jorge's family had pointed them out and they were in jail; (ii) he did not recall how he learned Jorge's family picked out Plaintiffs; (iii) he did not remember if he made an identification from photographs; (iv) he does not remember if he ever made an identification to police; (v) he could not recall if any police officer told him or suggested to him who to identify; (vi) he kept telling police he did not see any faces; and (vii) that he does not recall what specific police officers he spoke to. He also testified to signing his 1998 affidvait voluntarily, which Plaintiffs' introduced as an exhibit. **(Ex. 64 at 129:8-17 (made sense because family picked out the Hernandez brothers), 130:18-23 (did not learn from anyone that family picked them out), 132:18-23 (does not recall how learned Hernandez brothers were identified by family), 133:15–135:6 (signing affidavit), 166:14-16 (Q. Did detectives tell you who you should ID? A. I don't recall) 153:1-8 (Q. You did make an id from photos, right? A. I don't remember. Q. are you saying you did not make an ID? A. I am saying I don't remember….**

25

**Q. Is it possible you did? A. I don't recall), 161:23-162:3 (Q. Are you saying today that you never made an ID? A. No. Q. You're just saying you don't remember? A. I don't remember), 125:8-10 (Did not remember which officers he spoke to), 126:14-127:23 (Q. Was there particular photos detectives focused on. A. I don't remember)).**

140. After the hearing, the court granted Plaintiffs motion and ordered a new trial, but the State elected not to retry the brothers, and the charges were dismissed via *nolle prosequi* on July 14, 2022. **(Ex. 67 (Post-Conviction Hearing, 07/14/2022 Post-Conviction Hearing) at 13:20-24; 14:2-16) at Hernandez 001519-001537).**

## PLAINTIFFS' DISCOVERY RESPONSES

141. Plaintiffs contend that Bemis fabricated the anonymous call. **(Ex. 1 at ¶¶ 45-46; Ex. 68 (Plaintiff Juan Hernandez's Responses to Defendant Joel Bemis's First Set of Interrogatories) No. 1; Ex. 31 (Juan Hernandez Supplemental Responses to Guevara's First Interrogatories) No. 4; Ex. 69 (Plaintiff Juan Hernandez's Second Supplemental Responses to Defendant Joel Bemis's First Set of Interrogatories) No. 1; Ex. 70 (Plaintiff Juan Hernandez's Supplemental Responses to Defendant Joel Bemis's First Set of Interrogatories) No. 20; Ex. 71 (Plaintiff Rosendo Hernandez's Responses to Defendant Joel Bemis's First Set of Interrogatories) No. 1; Ex. 32 (Rosendo Herandez Supplemental Responses to Guevara's First Interrogatories) Nos. 4-5.**

142. Plaintiffs contend that Defendants fabricated the eyewitness's testimony and identifications. **(Ex. 1 at ¶¶ 48-54; Ex. 68 No. 1; Ex. 31 No. 4; Ex. 69 No. 1; Ex. 70 No. 20; Ex. 71 No. 1; Ex. 32 No. 5).**

143. Plaintiffs contend that Defendants fabricated police reports, specifically police reports related to Plaintiffs' alibis and Brody's presence in the lineups. **(Ex. 1 at ¶¶ 55-57; Ex. 68 No. 1; Ex. 31 No. 4; Ex. 69 No. 1; Ex. 71 No. 1; Ex. 32 No. 5).**

144. Plaintiffs were asked to identify any all suppressed materials, and aside from referring to "notes," "physical evidence," "reports," and "other records," indicating that "the crimes were committed by someone else," including "five separate witness descriptions of the true perpetrators—none of which match [Plaintiffs]," they only contend the following evidence was suppressed at their criminal trials: (a) Evidence pointing to alternate suspects; (b) Daniel Violante's eyewitness description; (c) Evidence regarding Plaintiffs' alibis; and (d) Movants' own misconduct, including that they manufactured identifications and engaged in a criminal conspiracy to traffic narcotics. **(Ex. 1 at ¶¶ 101; 103; 138; Ex. 68 No. 1; Ex. 31 No. 4; Ex. 69 No. 1; Ex. 71 No. 1; Ex. 32 No. 5).**

145. In response to Guevara's contention interrogatory requesting Plaintiffs to identify exculpatory or impeachment evidence they claim was suppressed by Guevara, Plaintiffs list a series of Bates-stamped documents that were produced during discovery: RFC-Hernandez 5117-5648, RFC-Hernandez 20971-29077, RFC-Hernandez 29282-30867, JGS-Hernandez 18416-18854, JGS_Hernandez 23683-24282. **(Ex. 31 No. 5; Ex. 32 No. 5.)** These documents consist of various investigative reports, court records, and transcripts from the federal investigation and prosecution of Miedzianowski and various other Chicago Police Department personnel, as well as a deposition transcript from the civil case of *Maysonet v. Guevara.* **(Ex. 33 (Bates (Group Exhibit))**. Of these more than 11,000 pages of documents, there is not a single reference to Plaintiffs or the Jorge Gonzalez murder investigation, nor is there any statements, testimony, or evidence anywhere in these records that Guevara was in fact a part of Miedzianowski's criminal conspiracy. **(*Id.*)** The deposition transcript from *Maysonet v. Guevara* of retired CPD officer from the Confidential Investigations Section, James Doody, stated that he "recall[s] no evidence of Guevara being involved with the Miedzianowski conspiracy at all." **(Ex. 33 at JGS-Hernandez 24245:9-10).**

## ADDITIONAL FACTS RELATED TO HALVORSEN, BEMIS, DEGRAFF AND BIEBEL

146. Halvorsen did not participate in the line-ups. **(Ex. 18 (Guevara Testimony, Rosendo Trial Trans., 8/11/99) at Hernandez 20371:1-8; Ex. 20 at Hernandez 16791:2-16792:9**

147. Halvorsen was not present for the interviews of Plaintiffs, Plaintiffs' family members or any eyewitnesses. **(Ex. 18 (Guevara Testimony, Rosendo Trial Trans., 8/11/99) at Hernandez 20351:11-20352:21; Ex. 38 (Rosendo Dep.) at 143:7-9, 164:21-165:16; Ex. 37 (Juan Dep.) at 227:2-12, 235:11-18; Ex. 39 (Esther Hernandez Dep.) at 91:12-20; Ex. 42 (Rosendo Hernandez, Sr. Dep.) at 58:12-19).**

148. Bemis's only role in Jorge Gonzalez homicide investigation was receiving the anonymous tip, gathering photographs used for the photo arrays, and attempting to bring Juan and Rosendo into Area 5 for questioning, which he testified to at Plaintiffs' trials and that he maintains was truthful at his deposition . **(Ex. 25 (Bemis Testimony, Rosendo Trial Trans., 8/11/99) at Hernandez 22231:1-21; Ex. 34 at 282:24–283:11 )**

149. Bemis never went by the nickname "B-man." **(Ex. 34 at 436:14-20).**

150. Bemis knew James Benson to go by the nickname "B-Man." **(Ex. 34 at 436:21-25).**

151. Bemis never went to the Megamall because he was not allowed in the area and did not even know what the Megamall was. **(Ex. 34 at 439:7-22, 442:2-16).**

152. Bemis has never met Miedzianowski. **(Ex. 34 at 15:15-21; Ex. 36 (Miedzianowski Dep.) at 236:25-237:2).**

153. In her deposition, Jondalyn Fields testified that an officer nicknamed "B-man" was with Guevara in 1994 when they came to her home to arrest her then boyfriend, Peter Cotto, and that she saw "B-man" hanging out at the Megamall with Miedzianowski and she did not know the last name of the officer. **(Ex. 72 (Fields Dep.) at 44:1-8; 133:19-22; 217:16-218:3; 394:6-400:5).**

154. Jondalyn Fields admitted that she could not say with certainty whether "B-man" was an officer named Breman, Bemis, or Benson. **(Ex. 72 at 394:6-400:5).**

155. Miedzianowski denied knowing Bemis. **(Ex. 36 at 236:25-237:2).**

156. DeGraff's only involvement in the Jorge Gonzalez investigation was informing Guevara and Halvorsen of the tip received by Bemis and providing them with the photographs obtained by Bemis and his partner. **(Ex. 1 at ¶ 47; Ex. 28 (Halvorsen Supp. 7/1/97) at 3-4).** DeGraff otherwise was not involved in the criminal investigation or Plaintiffs' criminal proceedings. **(Ex. 73 (ASA Galivan Dep.) at 14:1-4; 137:12-15;; Ex. 1 at ¶ 47; Ex. 28 (Halvorsen Supp. 7/1/97) at 3-4).**

157. Sgt. Biebel was not involved in the homicide investigation at all. **(Ex. 35 at 48:10-16).** Sgt. Biebel's role was limited to approving police reports drafted by detectives. **(Ex. 35 at 26:25-27:12, 44:12-45:19).**

158. Biebel signed the following reports: (i) Dets. Brennan and Mason's canvass and initial interview supplementary report, approved on June 28, 1997; (ii) Dets. Brennan and Mason's GPRs related to their canvass and initial interviews, approved on June 28, 1997; (iii) Det. Wodnicki's GPRs related to his initial interviews, approved on June 28, 1997; (iv) the crime scene processing reports related to the lineups (no approval date noted); (v) Guevara and Halvorsen's lineup reports, approved on July 6, 1997; (vi) Guevara and Halvorsen's cleared/open supplementary report, approved July 7, 1997; and (vii) an inventory supplementary report submitted by Det. Brennan, approved on October 28, 1997. **(Ex. 35 (Biebel Dep. Exhibits 3, 4, 10, 2, 7, 6, 9)).**

159. As a supervisor, it was Sgt. Biebel's responsibility to make sure that the classification of the reports was correct. **(Ex. 35 at 26:25-27:12, 44:12-45:19).**

160. Sgt. Biebel played no role in Plaintiffs' criminal prosecutions. **(Ex. 35 at 48:25-49:5; 49:19-50:1)**

29

## PLAINTIFFS IDENTIFIED WITNESSES PACHECO, BANDAMO AND VILARO WHO PROVIDE ALTERNATE THEORY YEARS LATER

161.     Nelson Pacheco testified at his deposition that he was unwilling to speak with anyone about information he had regarding William Vilaro until one of Plaintiffs' counsels, Dan Stohr, convinced him to come forward in 2017. **(Ex. 74 (Pacheco Dep.) at 93:2-95-1).**

162.     Desiree Bandamo testified that the first time she spoke to anyone regarding an incident in 1997 with William Vilaro was sometime in 2016, when Stohr reached out to her nearly twenty years after the investigation. **(Ex. 75 (Bandamo Dep.) at 13:1-10; 163:19-164:10; 102:3-103:14).**

163.     William Vilaro was deposted in this matter on April 15, 2025, and testified in his deposition that he knew "nothing" about the shooting at 2208 and 2212 N. Mobile that resulted in Jorge's death. **(Ex. 76 (Vilaro Dep.) at 27:13-22; 51:19-52:4; 58:3-23).**

Respectfully submitted,

BORKAN & SCAHILL, LTD.

/s/ Graham P. Miller
*One of the Attorneys for Defendant Reynaldo Guevara*

Steven B. Borkan
Timothy P. Scahill
Graham P. Miller
Christiane E. Murray
Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603

THE SOTOS LAW FIRM, P.C.

/s/ Kyle Christie

*One of the Attorneys for Defendants Robert Biebel, Joel Bemis, and Geri Lynn Yanow, as Special Representative for Ernest Halvorsen, deceased and Robert DeGraff, deceased*

James G. Sotos
Josh M. Engquist
Jeffrey R. Kivetz
Kyle T. Christie
Jeffrey C. Grossich
Kylie R. Dodd
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300